1  LATHAM & WATKINS LLP
      Daniel M. Wall (Bar No. 102580)
2     Christopher S. Yates (Bar No. 161273)
      Sadik Huseny (Bar No. 224659)
3  505 Montgomery Street, Suite 2000
   San Francisco, California 94111-6538
4  Telephone: (415) 391-0600
   Facsimile: (415) 395-8095
5  Email: Dan.Wall@lw.com
   Email: Chris.Yates@lw.com
6  Email: Sadik.Huseny@lw.com

7  Attorneys for Defendant
   APPLE INC.
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  ROBERT PEPPER, STEPHEN H.               CASE NO. C 11-06714-JW
    SCHWARTZ, EDWARD W. HAYTER,
13  and HARRY BASS on behalf of themselves  RELATED CASES NOS.
    and all others similarly situated,          C 07-05152-JW
14                                               C 12-00259-JW
                      Plaintiffs,
15                                          **DEFENDANT APPLE'S NOTICE OF**
           v.                               **MOTION AND MOTION TO DISMISS;**
16                                          **MEMORANDUM OF POINTS AND**
    APPLE INC.,                             **AUTHORITIES IN SUPPORT THEREOF**
17
                      Defendant.            Date:     April 16, 2012
18                                          Time:     9:00 AM
                                            Place:    Courtroom 9, 19th Floor
19
20                                          The Honorable Chief Judge James Ware

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ........................................... 2

III. PROCEDURAL AND FACTUAL HISTORY .............................................. 2

IV. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN
    AN INDISPENSABLE PARTY ..................................................................... 6

    A.  Legal Standard ..................................................................................... 6

    B.  This Court's Prior Rulings In iPhone Cases Indicate That ATTM Is
        An Indispensable Party In This Case ................................................... 7

    C.  ATTM Is A Necessary Party Under Rule 19(a) .................................. 8

    D.  Joinder Of ATTM Is Feasible ........................................................... 13

    E.  ATTM Is An Indispensable Party Under Rule 19(b) ......................... 13

    F.  Plaintiffs' Attempted Jurisdiction Manipulation Itself Supports
        Dismissal Under Rule 19 .................................................................. 16

V.  CONCLUSION ............................................................................................ 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011)................................................................................ 3

*Dollens v. Target Corp.,*
    No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477
    (N.D. Cal. Dec. 5, 2011) ..................................................................... 10, 11

*EEOC v. Peabody Western Coal Co.,*
    610 F.3d 1070 (9th Cir. 2010) .................................................................... 6

*Envirotech Corp. v. Bethlehem Steel Corp.,*
    729 F.2d 70 (2d Cir. 1984)......................................................................... 16

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.,*
    224 F.R.D. 661 (W.D. Wash. 2004) .......................................................... 13

*First Nat'l Montana Bank of Missoula v. Federal Leasing, Inc.,*
    110 F.R.D. 675 (D. Mt. 1986)............................................................. 10, 14

*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,*
    960 F. Supp. 701 (S.D.N.Y. 1997)............................................................. 16

*Haas v. Jefferson Nat'l Bank of Miami Beach,*
    442 F.2d 394 (5th Cir. 1971) ......................................................... 10, 11, 14

*In re Apple & ATTM Antitrust Litig.,*
    No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270
    (N.D. Cal. July 8, 2010)................................................................................ 3

*In re Apple & ATTM Antitrust Litig.,*
    No. C 07-05152 JW, 2011 U.S. Dist. LEXIS 138539
    (N.D. Cal. Dec. 1, 2011) ...................................................................... passim

*In re Apple & ATTM Antitrust Litig.,*
    No. C 07-05152 JW, 2012 U.S. Dist. LEXIS 16505
    (N.D. Cal. Feb. 1, 2012)................................................................................ 4

*In re Apple iPhone 3G Prods. Liab. Litig.,*
    728 F. Supp. 2d 1065 (N.D. Cal. 2010) ...................................................... 7

*In re Apple iPhone 3G Prods. Liab. Litig.,*
    No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532
    (N.D. Cal. Dec. 1, 2011) ...................................................................... passim

*In re Toyota Motor Corp.,*
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................. passim

*In re Toyota Motor Corp.,*
    No. 8:10ML 02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360
    (C.D. Cal. Nov. 30, 2011)....................................................................... 10, 14

*KnowledgePlex, Inc. v. Placebase, Inc.*,
   No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915
   (N.D. Cal. Dec. 17, 2008) ............................................................................... 9, 13, 15

*Laker Airways, Inc. v. British Airways, PLC*,
   182 F.3d 843 (11th Cir. 1999) ................................................................. 10, 11, 12, 15

*Makah Indian Tribe v. Verity*,
   910 F.2d 555 (9th Cir. 1990) ........................................................................................ 6

*McDonald v. Gen. Mills, Inc.*,
   387 F. Supp. 24 (E.D. Cal. 1974) .............................................................................. 10

*Newcal Indus., Inc. v. IKON Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ..................................................................................... 2

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
   No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288
   (N.D. Cal. Jan. 25, 2007) ........................................................................................... 11

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ................................................................................... 10

*PC Specialists, Inc. v. Micros Systems, Inc.*,
   No. 10-CV-78 JLS (WVG), 2011 U.S. Dist. LEXIS 88088
   (S.D. Cal. Aug. 9, 2011) ........................................................................................ 9, 13

*Philippines v. Pimentel*,
   553 U.S. 851 (2008) .................................................................................................... 15

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) .................................................................................................... 14

*Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*,
   584 F.3d 253 (6th Cir. 2009) ....................................................................................... 9

*Shell Oil Co. v. Aetna Cas. & Sur. Co.*,
   158 F.R.D. 395 (N.D. Ill. 1994) ................................................................................ 14

*Shermoen v. United States*,
   982 F.2d 1312 (9th Cir. 1992) ........................................................................... 6, 13, 16

*Sulit v. Slep-Tone Entm't*,
   No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258
   (N.D. Cal. Nov. 20, 2007) .......................................................................................... 13

*Syufy Enters. v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir. 1986) ..................................................................................... 14

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) ....................................................................................................... 10

**STATUTES**

15 U.S.C. § 2 .................................................................................... 4, 10, 12, 14

iii

28 U.S.C. § 1292(b) ................................................................................... 3

28 U.S.C. § 1447(e) ................................................................................. 10

**RULES**

Fed. R. Civ. Proc. 12(b)(7) ................................................................... 2, 6

Fed. R. Civ. Proc. 19(a) ..................................................................... passim

Fed. R. Civ. Proc. 19(b) ........................................................ 6, 13, 14, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE'S MOTION TO DISMISS
CASE NUMBER: C 11-06714-JW

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 16, 2012, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Courtroom 9, 19th Floor, at 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable James Ware, Defendant Apple Inc. will, and hereby does, move the Court for an order dismissing Plaintiffs' Complaint pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers and records in the related case, *In re Apple & ATTM Antitrust Litigation*, the other documents filed in connection with this motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

## RELIEF SOUGHT

Defendant Apple Inc. seeks an order dismissing Plaintiff's Complaint for failure to join an indispensible party.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Court has already seen this case—and has already held that Plaintiffs' claims are so intertwined with the AT&T Mobility LLC ("ATTM") service contract that Plaintiffs must arbitrate their claims in accordance with the terms of that service contract.  *See In re Apple & ATTM Antitrust Litigation*, No. C 07-055152 JW, 2011 U.S. Dist. LEXIS 138539, at *26 (N.D. Cal. Dec. 1, 2011).  In a brazen attempt to avoid that ruling, the same plaintiffs' counsel filed the present action, which alleges the *same* conspiracy to monopolize and monopolization claims as the earlier litigation.[1]  Plaintiffs make the *same* "aftermarket" claims and make the *same* contention that Apple conspired with ATTM to make ATTM a "monopolist" in the alleged aftermarket for iPhone voice and data services.  *Pepper* Complaint ¶¶ 97-101; *see also id.* ¶¶ 24-28.  Just as before, the present case centers on whether Plaintiffs gave "contractual consent" to allegedly being "lock[ed] . . . into using ATTM as their voice and data service provider."  *Pepper* Complaint ¶ 8 ("Summary of Claims").  Indeed, the alleged failure to obtain "contractual consent" is the first supposedly common question of law and fact that Plaintiffs assert justifies class treatment.  *Id.* ¶ 73.

The only difference between the cases is that Plaintiffs dropped ATTM as a named defendant and have eliminated express references to ATTM's wireless service agreement in an effort to end-run the Court's earlier rulings and force the Court to consider—for a third time— whether arbitration is appropriate.  Setting aside for the moment the propriety of filing successive identical cases to attempt to circumvent earlier rulings, the question before the Court is whether ATTM is a necessary party which must be joined for this case to proceed.  The answer, given Plaintiffs' allegations and the Court's earlier rulings, is clear:  ATTM is both a necessary party which can be joined and an indispensible party.  Indeed, this Court has already rejected similar ploys to attempt to avoid arbitration through "cosmetic modifications" to

---

[1]   Plaintiffs themselves stipulated that this case is related to *In re Apple & ATTM Antitrust Litigation*.  *See* Dkt. No. 562.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

complaints to avoid reference to ATTM. *In re Apple iPhone 3G Prods. Liab. Litig.*, No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *13 (N.D. Cal. Dec. 1, 2011) (hereinafter "*iPhone 3G*"). The allegations make clear that ATTM is a necessary party under Federal Rule of Civil Procedure 19, *both* because it is the alleged monopolist with which Apple supposedly conspired *and* because ATTM's wireless service contract is key to the case. Either of these grounds alone would be sufficient to establish that ATTM is a necessary party. Together, the conclusion is undeniable: Plaintiffs' claims must be dismissed under Rule 12(b)(7) unless they join ATTM as a defendant.[2]

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether ATTM is a necessary party and therefore must be joined; and

2. Whether ATTM is an indispensable party without which this case cannot proceed.

## III.   PROCEDURAL AND FACTUAL HISTORY

In 2007, the same counsel who currently represent Plaintiffs Pepper *et al.* filed a putative antitrust class action against Apple and ATTM. Plaintiffs alleged that Apple and ATTM conspired to monopolize the so-called "aftermarket" for iPhone voice and data service. *See* Revised Consolidated Amended Class Action Complaint ("RCAC"), Dkt. No. 109. As this Court recently explained, Plaintiffs' central allegation was that "although they were of the expectation that they would be under contract with ATTM for two years, they were unaware that Apple and ATTM had agreed, without Plaintiffs' knowledge or consent, to make ATTM the exclusive provider of voice and data services for the iPhone for five years." *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *5.

Seeking class certification, Plaintiffs argued that under *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038 (9th Cir. 2008), Apple and ATTM were liable for aftermarket monopolization unless consumers had contractually agreed to ATTM's exclusivity for the full "five-year" term of the Apple-ATTM agreement. Plaintiffs argued that "[b]ecause Plaintiffs and

---

[2]   If Plaintiffs choose to amend and add ATTM as a defendant or the Court orders joinder, Apple (and ATTM) will file a motion to enforce the Court's earlier rulings and to compel arbitration of Plaintiffs' claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

all other Class members signed the *same integrated two-year service contracts*, whether they *contractually agreed* to give monopoly power to Apple and ATTM in the iPhone voice and data aftermarket . . . can and should be answered the same way for everyone." Pls. Reply Mem. In Support of Class Cert., Dkt. No. 422 at 1, 10 (emphasis in original). Plaintiffs urged that the iPhone box and other Apple disclosures, ATTM's advertisements, and other information available to consumers were "utterly irrelevant" because the terms of the ATTM wireless service agreement were all that mattered. *Id.* at 2.

This Court accepted Plaintiffs' arguments and representations about the nature of their claims, holding that the issue "can be analyzed on a class-wide basis" in terms of "whether the purchase of an iPhone constitutes a binding contractual agreement to consume Apple-approved applications and ATTM's voice and data services in the aftermarket." *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270, at *35-36 (N.D. Cal. July 8, 2010).

After the Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), ATTM and Apple moved to compel arbitration and to decertify the class. The Court granted ATTM's motion to compel arbitration. The Court also agreed with Apple that "the requirements for equitable estoppel are met in this case"—indeed, that "Plaintiffs are now estopped from contending otherwise," because "Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts," and because "Plaintiffs themselves have alleged that there is a 'relationship' between ATTM and Apple" of the kind that justifies estoppel under the relevant precedents. *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *26-28.

Plaintiffs moved for reconsideration and also sought § 1292(b) certification on multiple issues. The Court denied Plaintiffs' motion for reconsideration and requests for § 1292(b) certification on several issues, but concluded that there was cause for an interlocutory appeal limited to "whether a non-signatory defendant may assert equitable estoppel against a signatory

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

plaintiff."  *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2012 U.S. Dist. LEXIS 16505, at *5, 21 (N.D. Cal. Feb. 1, 2012).  That petition is pending.

After the Court issued its December 1 Order granting Defendants' motion to compel arbitration, the same plaintiffs' counsel filed this action.  The *Pepper* Complaint ("Complaint" or "Complt.") is essentially identical to the RCAC; the only real change is that Plaintiffs have dropped ATTM as a defendant and avoided express references to ATTM's service agreement in a transparent attempt to sidestep this Court's ruling that these claims must be arbitrated.  But relying on euphemisms—alleging that class members "purchased" or "paid for" voice and data service from ATTM, rather than stating that they contracted with ATTM for such services—does not help Plaintiffs.  Since Plaintiffs make the same voice and data service aftermarket monopolization claim—which, again, supposedly turns on the "contractual consent" of consumers—it should be no surprise that ATTM and its wireless service agreement play a central role in this case, just as they did in *In re Apple & ATTM Antitrust Litigation*.

As before, Plaintiffs define their putative class by reference to those who "paid for voice and data service from ATTM," which for the period at issue was "the exclusive provider of cell phone voice and data services for iPhone customers . . . ."  Complt. ¶¶ 1-2, 70.[3]  Each named plaintiff is alleged to have "paid for ATTM voice and data service for his iPhone at ATTM's stated rates during the Class Period."  Complt. ¶¶ 12-15; *id.* ¶ 25 ("Each Plaintiff also purchased wireless voice and data services from ATTM for their iPhones.").  For many putative class members, both the iPhone and the voice and data service were purchased directly from ATTM.  *See id.* ¶ 23 ("the iPhone was sold at both Apple's and ATTM's retail and online stores"); *id.* ¶ 62, ¶ 11 n.1 ("with respect to [4 of the 5 models of the iPhone]," Apple and ATTM have a "traditional carrier-handset manufacturer arrangement whereby ATTM simply purchases the hand-sets from Apple").

---

[3]  *Compare In re Apple & ATTM Antitrust Litigation*, 2011 U.S. Dist. LEXIS 138539, at *4 ("In this case, Plaintiffs are purchasers of Apple iPhones and subscribers to cellular service from AT&T Mobility ('ATTM').").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

And, just as before, Plaintiffs' central claim in this case is that, in violation of Section 2 of the Sherman Act,

> Apple knowingly and intentionally conspired with ATTM with the specific intent to monopolize the iPhone Voice and Data Services Aftermarket. In furtherance of the conspiracy, Apple and its co-conspirator agreed without Plaintiffs' knowledge or consent to make ATTM the exclusive provider of voice and data services for the iPhone for five years, contrary to Plaintiffs' reasonable expectations that they could switch at any time to another carrier in the first two years that they owned their iPhone after paying the $175 early termination fee, and without charge after that period.

Complt. ¶ 97; *id.* ¶¶ 8-9 ("Apple . . . conspir[ed] with ATTM to monopolize the aftermarket for voice and data services for iPhones").[4] The supposed conspiracy turns on whether consumers provided "contractual consent to the five-year Exclusivity Agreement between Apple and ATTM, the effect of which was to lock consumers into using ATTM as their voice and data service provider, even if they wished to discontinue their use of ATTM service[.]" *Id.* ¶ 8. ATTM's wireless service agreement (the vehicle for consumers' "contractual consent") is again the key to the case, according to Plaintiffs.

In both complaints, Plaintiffs allege wrongdoing in ATTM's service of its iPhone voice and data customers. *Compare* Complt. ¶ 8 (the "'unlock code' that would enable the consumers to use a service other than ATTM" was not made available to them, "even though ATTM routinely provides such unlock codes for other types of cell phones"), ¶¶ 28, 44-45 (same), ¶ 55 ("Apple and ATTM agreed to enforce ATTM's exclusivity by installing SIM card Program Locks on all iPhones and agreeing never to disclose the unlock codes to iPhone customers"),

---

[4]  *Compare In re Apple & ATTM Antitrust Litigation*, 2011 U.S. Dist. LEXIS 138539, at *5 ("Plaintiffs allege that Apple, Inc. ('Apple') and ATTM entered into an undisclosed agreement under which the two companies agreed that for a period of time, all iPhones sold by Apple would be configured so that purchasers in the United States would be required to sign a cellular service agreement with ATTM. Plaintiffs allege that although they were of the expectation that they would be under contract with ATTM for two years, they were unaware that Apple and ATTM had agreed, without Plaintiffs' knowledge or consent, to make ATTM the exclusive provider of voice and data services for the iPhone for five years. Further, Plaintiffs allege that this agreement between Apple and ATTM was contrary to Plaintiffs' reasonable expectation that they would be under contract with ATTM for only two years, and could switch at any time to another carrier after paying an early termination fee. Finally, Plaintiffs allege that because the arrangement was undisclosed and extended beyond the initial disclosed terms, the arrangement violates the Sherman Act.").

*with* RCAC ¶ 3 ("Defendants have unlawfully prevented iPhone customers from exercising" their alleged right "to use the network of their carrier of choice" by "locking the iPhones and refusing to give customers the software codes needed to unlock them"), ¶¶ 7, 33, 40-41 (same), ¶¶ 69-70 ("AT&TM and Apple unlawfully agreed that the iPhone would not be unlocked under any circumstances").

In short, it is plain from the face of the Complaint that ATTM plays a central role in the *Pepper* case—just as it did in *In re Apple & ATTM Antitrust Litigation*.

## IV.  THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

### A.  Legal Standard

Under Rule 12(b)(7), a complaint must be dismissed if it fails to join an indispensable party.  Fed. R. Civ. Proc. 12(b)(7).  The court must first consider whether a party is "necessary" under Federal Rule of Civil Procedure 19(a)—whether the court can accord "'complete relief . . . among existing parties" or "whether the absent party has a 'legally protected interest' in the subject of the suit" that will be impaired or impeded, or that creates a risk of inconsistent obligations.  *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).  The court must next determine (1) whether the necessary party can be joined, and, if it cannot be joined, (2) whether that party is indispensable such that in "equity and good conscience," the case must be dismissed.  *Id.*; *iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *7-8.  This inquiry is "'a practical one and fact specific,'" and considers prejudice to the existing and absent parties. *Shermoen*, 982 F.2d at 1317 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)); *see also* Fed. R. Civ. Proc. 19(b).  The Court's decision on whether joinder of ATTM is required, and whether dismissal is warranted if ATTM is not joined, will be reviewed for abuse of discretion.  *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010).

Here, it is clear that joinder is feasible because Plaintiffs already named ATTM as a defendant in the essentially identical case of *In re Apple & ATTM Antitrust Litigation*, filed in this Court.  *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *16 (holding that "joinder of ATTM is feasible" because "ATTM was named as a Defendant in each iteration of the

Complaint prior to the current one").

**B.    This Court's Prior Rulings In iPhone Cases Indicate That ATTM Is An Indispensable Party In This Case**

This Court's prior rulings—specifically in the context of the relationship between Apple, ATTM, and iPhone users—indicate that the question whether ATTM is an indispensable party turns on the extent to which claims raised against Apple are "intertwined" with or "inextricably tied" to claims implicating ATTM.

In a separate case relating to iPhones and ATTM voice and data service, this Court dismissed the claims against Defendant ATTM as preempted by federal law. *iPhone 3G*, 728 F. Supp. 2d 1065, 1076 (N.D. Cal. 2010). This Court then held that the claims against Apple were likewise preempted because "the claims alleged against Defendant Apple are inextricably tied to the claims alleged against Defendant ATTM." *Id.* The finding that the claims against Apple were "inextricably tied" to those against ATTM was based, among other things, on Plaintiffs' allegations that "Defendants acted together to deceive Plaintiffs . . . ." *Id.* Consequently, this Court concluded that "it is unable to reasonably separate Plaintiffs' claims to pertain only to Defendant Apple." *Id.*

The Court further held that "this case cannot proceed against Defendant Apple alone because Defendant ATTM is an indispensable party." *Id.* The Court "could not proceed without ATTM in 'equity and good conscience' because any adjudication of claims as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure," an issue central to claims assertable against ATTM under federal law. *Id.* In a subsequent order, this Court made clear that the analysis of the intertwined nature of the claims against Apple and ATTM also supported its finding that ATTM was an indispensable party. *See iPhone 3G*, No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *10-11 (N.D. Cal. Dec. 1, 2011). In other words, this Court's finding of indispensability in *iPhone 3G* turned largely on the extent to which the claims were inseparably intertwined with the absent party. And, this Court rejected efforts to avoid arbitration by artful deletions of references to ATTM. *Id.* at *13 ("Plaintiffs have simply deleted references to ATTM that appeared in their previous

Complaint without altering the gravamen of their allegations. These cosmetic modifications to the Complaint are unavailing").

In the earlier version of this case, *In re Apple & ATTM Antitrust Litigation*, discussed *supra*, this Court held that the RCAC's claims against Apple are "intertwined" with the ATTM service agreement: "as to the 'intertwining' of claims, Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts." *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *26 (finding that Apple may invoke equitable estoppel to compel Plaintiffs to arbitrate against Apple as well, pursuant to the ATTM service agreement). This Court noted that Plaintiffs sought class certification on the grounds that common issues exist because "'Plaintiffs and all other Class members signed the *same integrated two-year service contracts*,' which means that 'whether they *contractually agreed* to give monopoly power to Apple and ATTM in the iPhone voice and data aftermarket . . . can and should be answered the same way for everyone.'" *Id.* at 27 n.22 (emphasis Plaintiffs').

This case alleges the same aftermarket claims as *In re Apple & ATTM Antitrust Litigation*. In addition, Plaintiffs once again base their case on whether consumers gave "contractual consent" to being "unable to switch" from ATTM to another carrier. Complt. ¶ 73; *id.* ¶¶ 8, 26, 27, 83, 97 (same). Plaintiffs' "cosmetic modifications" to the Complaint by deleting direct references to the ATTM service agreement does not change the fact that Plaintiffs' claims are intertwined with ATTM and its service agreement. Because the ATTM service agreement is enmeshed in this dispute and cannot be "reasonably separate[d]," ATTM is an indispensable party. *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *10-11.

## C.     ATTM Is A Necessary Party Under Rule 19(a)

Rule 19(a) requires the joinder of a party who has an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest. Fed. R. Civ. Proc. 19(a)(1)(B)(i).

ATTM has multiple interests relating to this action, any of which would be impaired by litigating this case in its absence.  First, this case turns on the ATTM service agreement.  Courts routinely find that parties to a contract have an interest protected by Rule 19(a) where the litigation would require interpretation of the contract.  *See KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915, at *12-15 (N.D. Cal. Dec. 17, 2008) (holding absentee Vinq necessary because "Vinq is a party to both the [contracts] that form the basis of Plaintiff's claims, and any interpretation of those agreements as a practical matter may impair Vinq's rights or obligations"); *PC Specialists, Inc. v. Micros Systems, Inc.*, No. 10-CV-78 JLS (WVG), 2011 U.S. Dist. LEXIS 88088, at *8-9 (S.D. Cal. Aug. 9, 2011); *Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation.").

Plainly, ATTM has an interest relating to the subject matter of this litigation because the ATTM wireless service agreement is at the heart of this case.  Specifically, that agreement's precise terms, conditions, obligations, and disclosures will be the focus of the litigation. Throughout the Complaint, Plaintiffs raise the question whether consumers gave "contractual consent" to being "unable to switch to a competing voice and data service provider . . . ." Complt. ¶ 73; *id.* ¶¶ 8, 26, 27, 83, 97 (same); *id.* ¶ 2 ("The Plaintiffs and other class members who purchased iPhones did not agree to use ATTM for five years" but were obligated to do so "contrary to those users' knowledge, wishes and expectations.").  Plaintiffs characterize the operative ATTM wireless service agreement that "ATTM offered iPhone purchasers [as an] industry standard monthly voice and data service that could be terminated at any time prior to two years for a fee . . . ." *Id.* ¶ 54.  Plaintiffs further complain that "ATTM . . . charged iPhone consumers a fee for terminating their voice and data service within the first two years" which "was not justifiable" and that the "benefits of the termination fee were also illusory . . . ." *Id.* ¶ 58.  They also take issue with "ATTM's excessive international roaming charges . . . ." *Id.* ¶ 68.  Plaintiffs' claims cannot be resolved without interpreting, construing, and making factual findings about the ATTM wireless service agreement that each class member signed, so ATTM is a necessary party which must be joined if feasible.

9

Furthermore, ATTM indisputably has an interest in this litigation because Plaintiffs claim that *ATTM is the alleged unlawful monopolist* in the charged "conspiracy to monopolize" the so-called iPhone voice and data aftermarket.  To prove a conspiracy to monopolize in violation of 15 U.S.C. § 2, Plaintiffs must show four elements:  (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury.  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Rule 19 and cases applying it are clear that, for a "conspiracy to monopolize" claim under Section 2, the alleged monopolist itself must be joined.  While there is no generic requirement to join *all* joint tortfeasors or co-conspirators as defendants, *see Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990), in a Section 2 claim the alleged monopolist is more than an ordinary joint tortfeasor. It is, by necessity, "an active participant in the allegations . . . critical to the disposition of the important issues in the litigation," so its interests in participating are recognized and protected under Rule 19(a).  *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999) (citing *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971)).

The *Haas* case, followed by courts in this Circuit, holds that an absent party is necessary under Rule 19(a) where "the absent party is more than a key witness, but also an active participant in the allegations that are critical to the disposition of the litigation."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 905-06 (C.D. Cal. 2011) (citing *Haas*); *see also Toyota*, No. 8:10ML 02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360, at *149, 153 (C.D. Cal. Nov. 30, 2011) (same); *First Nat'l Montana Bank of Missoula v. Federal Leasing, Inc.*, 110 F.R.D. 675, 678 (D. Mt. 1986) ("As an 'active participant' in the matters at issue, Amperif meets the criteria in Rule 19(a)(2) as a party to be joined if feasible.") (citing *Haas*); *McDonald v. Gen. Mills, Inc.*, 387 F. Supp. 24, 38 (E.D. Cal. 1974) ("As noted in the case of *Haas v. Jefferson National Bank*, 442 F.2d 394 (5th Cir. 1971), a party is considered indispensable when it is more than a key witness, but is an active participant in the alleged cause of action."); *cf. Dollens v. Target Corp.*, No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477, at *3-4 (N.D. Cal. Dec. 5, 2011)

(allowing joinder under 28 U.S.C. § 1447(e), by way of a Rule 19(a) analysis, where it was alleged that Ms. Moya "is a joint tortfeasor who was an active participant in the allegations that are critical to the disposition of the important issues of the case").[5]  In a claim for conspiracy to monopolize, the alleged monopolist is, by definition, an "active participant in the alleged cause of action"—if not the star of the show.

The *Haas* rule follows naturally from Rule 19(a)(1)(B)(i), which requires joinder if an absent party has "an interest relating to the subject of the action" and proceeding without the absent party would "as a practical matter impair or impede the person's ability to protect the interest."  As the *Toyota* court explained, nonparties who are alleged to have been "active participants" in the cause of action "have an interest in the litigation because each respective entity's liability will necessarily be at issue."  785 F. Supp. 2d at 906.  *Accord Dollens*, 2011 U.S. Dist. LEXIS 139477, at *4 ("Target's liability turns primarily on Ms. Moya's conduct . . . [so] adjudication with respect to Target . . . would necessarily require the court to evaluate Ms. Moya's conduct in a manner that would surely implicate her interests. *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) (finding plaintiff's antitrust claims required the court to evaluate a third party's conduct, 'thereby substantially implicating its interests').").

The *Laker Airways v. British Airways* case, cited in *Dollens*, is instructive.  Laker alleged that British Airways conspired with nonparty ACL to monopolize air service between Miami and London.  182 F.3d at 845.  In its Rule 19(a) analysis, the court noted that ACL's interests "are more significant than those of a routine joint tortfeasor."  *Id.* at 847-48.  "In order to prove its antitrust claims, Laker would be required to show that ACL acted in other than an independent manner.  Such a ruling would surely implicate the interests of ACL," whose appointment as landing and take-off slot coordinator requires neutral behavior.  *Id.* at 848.  Citing to *Haas*, the

---

[5]  *But see Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288, *7-8 (N.D. Cal. Jan. 25, 2007) (in response to defendants' reliance on the *Haas* "active participant" exception, the court stated, without support or citation, that "[t]here is no such exception in the Ninth Circuit").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Laker Airways* court noted that "a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." *Id.* (finding that "ACL would certainly be considered an active participant in the allegations").

Here, Plaintiffs' allegation of a "conspiracy to monopolize the iPhone Voice and Data Services Aftermarket in Violation of Section 2 of the Sherman Act," *see* Complt. ¶¶ 96-101, leaves no doubt that ATTM was allegedly an "active participant in the allegations that are critical to the disposition of the litigation." *See Toyota*, 785 F. Supp. 2d at 906. Plaintiffs claim, among other things, that:

- ATTM "entered into a secret five-year contract" with Apple to further the alleged conspiracy to make ATTM a monopolist, Complt. ¶ 2;
- ATTM improperly withheld "unlock codes" from iPhone users despite "ATTM routinely provid[ing] such unlock codes for other types of cell phones," *id.* ¶ 8;
- ATTM charged an "early termination fee [that] was not justifiable," *id.* ¶ 58;
- ATTM's alleged monopoly allowed it to charge allegedly "excessive international roaming charges," *id.* ¶ 68; and
- ATTM "forced [customers] to pay supracompetitive prices for iPhone voice and data services." *Id.* ¶ 100.

As the alleged monopolist in the claimed conspiracy to monopolize, and the principal actor in much of the conduct challenged by Plaintiffs, ATTM has an interest in the resolution of these and other issues in this litigation. Resolving them in ATTM's absence would, as a practical matter, impair ATTM's ability to protect its interests, for example in any current or future related arbitration or litigation. *See Toyota*, 785 F. Supp. 2d at 906-07 ("A judgment entered against the named Toyota Defendants might have a preclusive effect on the unnamed foreign entities and weaken their bargaining position and/or impair their ability to protect their own interests in any current and future litigation."). Therefore, ATTM is a necessary party which is required to be joined if feasible. *See* Fed. R. Civ. Proc. 19(a).

**D.      Joinder Of ATTM Is Feasible**

Joinder of ATTM is clearly feasible because Plaintiffs already named ATTM as a defendant in the earlier, substantively identical complaint in *In re Apple & ATTM Antitrust Litigation*.  *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *16 (holding that "joinder of ATTM is feasible" because "ATTM was named as a Defendant in each iteration of the Complaint prior to the current one").  Therefore, this Court should not even reach the Rule 19(b) analysis.  *See PC Specialists*, 2011 U.S. Dist. LEXIS 88088, at *10 ("Because [necessary party] TIG Global can be joined in the present case, the Court need not determine if TIG Global is an indispensable party."); *accord iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *16-17; *KnowledgePlex*, 2008 U.S. Dist. LEXIS 103915, at *13-15.  Nevertheless, for the sake of completeness we include below a discussion of the Rule 19(b) factors, showing that ATTM is also an "indispensable party" under 19(b).

**E.      ATTM Is An Indispensable Party Under Rule 19(b)**

Since it is a necessary party, if ATTM cannot be joined or Plaintiffs refuse to join ATTM, the Court must consider whether, in equity and good conscience, the case must be dismissed.  *Shermoen*, 982 F.2d at 1317.  The Court may consider (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  *Id.* at 1318-19; Fed. R. Civ. Proc. 19(b).  There are multiple bases upon which to find that the Rule 19(b) factors require a finding of indispensability, as ATTM is both a contracting party and the alleged monopolist at the center of this case.

"As a general rule, courts construing contracts require that parties to the contract be joined to litigation that may impair their rights under that contract."  *Sulit v. Slep-Tone Entm't*, No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258, at *6 (N.D. Cal. Nov. 20, 2007).  Indeed, as another court of this circuit put it, "a contracting party is a paradigm of an indispensable party."

13

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 666 (W.D. Wash. 2004). Here, a judgment rendered in ATTM's absence would prejudice ATTM, because it "will have lost the opportunity to present [its] arguments regarding the interpretation of [its contracts] at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated." *See Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 401 (N.D. Ill. 1994); *accord Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) (concluding that a court's decision may still impair the rights of an absent party, even if it is not binding on that party).

There is also substantial prejudice to ATTM from litigation in its absence over the "conspiracy to monopolize" claim. The analysis of prejudice under 19(b) is essentially the same as the analysis of impairment of interest under 19(a)(1)(B)(i). *See Haas*, 442 F.2d at 398-99 ("In our view, the first factor [of 19(b)] tracks the considerations of 19(a)" and "supplies weighty reason for a finding of indispensability"); *Toyota*, 2011 U.S. Dist. LEXIS 151360, at *163 ("a finding of prejudice under Rule 19(b) suggests that proceeding without [the absent parties] would be against equity and good conscience"); *First Nat'l Montana Bank of Missoula*, 110 F.R.D. at 678 ("Many of the factors outlined in 19(b) overlap with considerations analyzed under 19(a).").

ATTM would be prejudiced if the antitrust allegations in this case were judicially resolved in ATTM's absence. For example, Plaintiffs allege that "Apple knowingly and intentionally conspired with ATTM" to create a monopoly in ATTM by "agree[ing] . . . to make ATTM the exclusive provider of voice and data services for the iPhone for five years . . . ." Complt. ¶ 97. But proof of just one alleged co-conspirator's scienter is insufficient. The Ninth Circuit has stated that "we know of no authority that a Section 2 conspiracy may be established without some showing that *more than one of the alleged co-conspirators* had at least some awareness that the underlying conduct was anticompetitive or monopolistic." *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1001 (9th Cir. 1986) (emphasis added). Because Plaintiffs' allegations of conspiracy involve only Apple and ATTM, Plaintiffs would have to show that both Apple *and* ATTM had such actual awareness that the alleged conduct at issue was

14

anticompetitive or monopolistic. Apple, in turn, could prevail by showing that *ATTM*, but *not Apple*, had the requisite scienter. *See Toyota*, 785 F. Supp. 2d at 908 (noting that, "[d]espite the obvious community of interest" between defendants and absent parties, "those interests may diverge at trial," for example if defendants "attempt to show that the absent entities are responsible for the alleged defective design").

Beyond its litigation interests, failure to join ATTM would prejudice its business interests. Plaintiffs allege that "ATTM unlawfully achieved an economically significant degree of market power in the iPhone Voice and Data Services Aftermarket" and that this "resulted in increased prices in the iPhone Voice and Data Services Aftermarket and, thus, harmed competition generally in that market." Complt. ¶¶ 98-99. A factual finding in ATTM's absence that ATTM "unlawfully achieved . . . market power" and "harmed competition" would damage ATTM's business interests. *See Toyota*, 785 F. Supp. 2d at 908 ("Even though a finding by this Court that the unnamed entities' products are defective and/or unsafe would not be binding on the unnamed foreign entities, a judgment against [the present defendants] regarding the safety of the vehicles identified in Plaintiffs' complaint speaks directly and adversely to the quality of the unnamed entities' products.") (finding indispensability); *KnowledgePlex*, 2008 U.S. Dist. LEXIS 103915, at *14 ("While this Court's judgment would not bind Vinq as an absent party, it might well affect Vinq's rights and business reputation."); *Laker Airways*, 182 F.3d at 849 (finding ACL indispensable given the substantial prejudice "that would inure to ACL as a nonjoined party if a court were to determine that ACL acted improperly"). Since ATTM is the party which contracted with Plaintiffs for iPhone voice and data services and is the alleged monopolist in this case, ATTM would be prejudiced by a resolution of Plaintiffs' claims in its absence.

The other Rule 19(b) considerations likewise support a finding of indispensability. The prejudice to ATTM may not be lessened through limitations on relief, because it flows from the inevitable interpretation of ATTM's contract and determination of the lawfulness or propriety of ATTM's alleged conduct. Once those determinations have been made in ATTM's absence, the damage will have been done. In addition, rendering judgment in ATTM's absence would not be adequate because claims against ATTM would remain outstanding. *See Philippines v. Pimentel*,

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

553 U.S. 851, 870 (2008) ("whether a judgment rendered without the absent party would be adequate" refers to "the public stake in settling disputes by wholes, whenever possible"). Finally, Plaintiffs have an adequate remedy if this action is dismissed for nonjoinder, because they may arbitrate their claims against both Apple and ATTM. This Court, as well as the Supreme Court, has already ruled that the arbitral forum is adequate for resolution of these claims. *See In re Apple & ATTM Antitrust Litigation*, 2011 U.S. Dist. LEXIS 138539, at *17-18, 30 (granting ATTM's and Apple's motions to compel arbitration). Unless ATTM is joined, in equity and good conscience this case must be dismissed. *See Shermoen*, 982 F.2d at 1317.

### F. Plaintiffs' Attempted Jurisdiction Manipulation Itself Supports Dismissal Under Rule 19

Because ATTM is a necessary party and joinder is feasible, ATTM must be made a party to this case. Fed. R. Civ. Proc. 19(a). Plaintiffs' failure to do so, however, was not simple inadvertence. Dissatisfied with the Court's ruling in *In re Apple & ATTM Antitrust Litigation* that this matter must be arbitrated, Plaintiffs' counsel has filed what is essentially the same case but without ATTM as a named defendant. Not surprisingly, courts reject such efforts to "attempt to manipulate jurisdiction by dropping [parties] with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court." *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 76 (2d Cir. 1984); *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 710 (S.D.N.Y. 1997) ("Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal forum.").

## V. CONCLUSION

ATTM is a necessary party to claims involving its service agreement and a supposed conspiracy to make it the monopolist of the alleged iPhone voice and data services aftermarket. As a result, the Court should dismiss this action under Rule 19 of the Federal Rules of Civil Procedure unless ATTM is joined as a party.

16

Dated:  March 2, 2012

Respectfully submitted,

LATHAM & WATKINS LLP
Daniel M. Wall
Christopher S. Yates
Sadik Huseny

By _____/s/ Christopher S. Yates_____
Christopher S. Yates
Attorneys for Defendant APPLE INC.

SF\898628

17

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO