FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
ALEXANDER H. SCHMIDT (*pro hac vice*)
schmidt@whafh.com
MICHAEL LISKOW (243899)
liskow@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

Counsel for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT PEPPER, STEPHEN H. SCHWARTZ, EDWARD W. HAYTER, and HARRY BASS on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:11-cv-06714 JW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS** <br><br> DATE: April 23, 2012 <br> TIME: 9:00 a.m. <br> DEPT.: 9, 19th Floor <br> JUDGE: Hon. Chief Judge James Ware |

# TABLE OF CONTENTS

**PAGE**

I.  ISSUES TO BE DECIDED ...................................................................................1

II.  INTRODUCTION ...........................................................................................1

III.  STATEMENT OF FACTS ...............................................................................3

IV.  ARGUMENT ..................................................................................................5

    A.  Legal Standards ......................................................................................5

    B.  ATTM Is Not A "Necessary" Party Under Rule 19(a) ...........................6

        1.  ATTM's Presence In This Litigation Is Not Required
            To Accord Complete Relief Among The Existing Parties............................6

        2.  ATTM Has Not Claimed Any Legally Protected Interest
            In The Subject Of This Litigation, And It Has No Such
            Interest That Might Be Harmed By A Judgment Against Apple.................11

        3.  ATTM's Service Contract Is Not Part Of This Case And
            The Court Will Not Need To Construe It ......................................15

        4.  ATTM'S Joinder Is Not Feasible..................................................18

    C.  Even If ATTM Were A Necessary Party, It Is Not An "Indispensable"
        Party Under Rule 19(b) ...........................................................19

    D.  Apple, Not These Plaintiffs, Is Engaged In Jurisdiction Manipulation ...................22

V.  CONCLUSION...............................................................................................23

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Agron, Inc. v. Lin,*
  No. 03-05872, 2004 U.S. Dist. LEXIS 26605 (C.D. Cal. Mar. 16, 2004).....................................6

*Appling v. State Farm Mutual Automobile Insurance Co.,*
  340 F.3d 769 (9th Cir. 2003) .........................................................................13

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Resources, Inc.,*
  299 F.3d 1007 (9th Cir. 2002) ....................................................................9, 10

*Beltz Travel Service, Inc. v. International Air Transport Association,*
  620 F.2d 1360 (9th Cir. 1980) ....................................................................1, 7

*Brocklesby Transport, Division of Kingsway Transports, Ltd. v. Eastern States Escort Services,*
  No. 86-9270, 1990 U.S. Dist. LEXIS 10015 (S.D.N.Y. Aug. 6, 1990).......................................13

*Clinton v. Babbitt,*
  180 F.3d 1081 (9th Cir. 1999) .......................................................................5

*Collins v. D.R. Horton, Inc.,*
  505 F.3d 874 (9th Cir. 2007) .......................................................................13

*Cont'l Cas. Co. v. Am. Nat. Ins .Co.,*
  417 F.3d 727 (7th Cir. 2005) .......................................................................18

*Dollens v. Target Corp.,*
  No. 11-03265 RMW, 2011 U.S. Dist. LEXIS 139477 (N.D. Cal. Dec. 5, 2011) .......................10

*El Ranco, Inc. v. First National Bank,*
  406 F.2d 1205 (9th Cir. 1968), *cert. denied*, 396 U.S. 875 (1969)....................................6

*Envirotech v. Bethlehem Steel,*
  729 F.2d 70 (2d Cir. 1984)..........................................................................22

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.,*
  224 F.R.D. 661 (W.D. Wash. 2004) ..................................................................17

*First Nat'l Montana Bank v. Fed. Leasing, Inc.,*
  110 F.R.D. 675 (D. Mont. 1986).....................................................................9, 10

*Georgia v. Pennsylvania R.R.*,
   324 U.S. 439 (1945)........................................................................................................6

*Global Discount Travel Serv., LLC v. TWA*,
   960 F. Supp. 701 (S.D.N.Y. 1997) ...............................................................................23

*Grumman Sys. Support Corp. v. Data Gen. Corp.*,
   125 F.R.D. 160 (N.D. Cal. 1988) (Smith, J.).................................................................7

*Haas v. Jefferson National Bank of Miami Beach*,
   442 F.2d 394 (5th Cir. 1971) .........................................................................................9

*Homeco Dev. v. Markborough Props., Ltd.*,
   709 F. Supp. 1137 (S.D. Fla. 1989) ..............................................................................7

*In re Apple & AT&TM Antitrust Litigation*,
   No. 07-05152, 2011 U.S. Dist. LEXIS 138539 (N.D. Cal. Dec. 1, 2011)........................ *passim*

*In re Apple iPhone 3G Products Liability Litigation*,
   728 F. Supp. 2d 1065 (N.D. Cal. 2010) .....................................................................14

*In re Apple iPhone 3G Products Liability Litigation*,
   No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532 (N.D. Cal. Dec. 1, 2011)...... *passim*

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
and Products Liability Litigation*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ...............................................................10, 11

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
and Products Liability Litigation*,
   No. 10-02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360 (C.D. Cal. Nov. 30, 2011).....10, 11

*KnowledgePlex, Inc. v. Placebase, Inc.*,
   No. C 08-4267 JF, 2008 U.S. Dist. LEXIS 103915 (N.D. Cal. Dec. 17, 2008) ...................17, 21

*Kristian v. Comcast*,
   446 F.3d 25 (1st Cir. 2006)....................................................................................21, 22

*Laker Airways, Inc. v. British Airways, PLC*,
   182 F.3d 843 (11th Cir. 1999) .........................................................................8, 9, 20

*Lawlor v. Nat. Screen Serv. Corp.*,
   349 U.S. 322 (1955)........................................................................................................7

*Marks v. San Francisco Real Estate Board*,
   No. C-71 369 ACW, 1974 U.S. Dist. LEXIS 8777 (N.D. Cal. Apr. 29, 1974)............................6

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. C 3:11-cv-06714 JW

*McDonald v. Gen. Mills, Inc.,*
   387 F. Supp. 24 (E.D. Cal. 1974)......................................................................................9

*Metro. Life Ins. Co. v. O'Malley,*
   392 F. Supp. 2d 1042 (N.D. Ill. 2005) ........................................................................18

*Newcal Industries v. Ikon Office Solution,*
   513 F.3d 1038 (9th Cir. 2008) ....................................................................................16

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,*
   331 F. Supp. 92 (C.D. Cal. 1971) ......................................................................6, 7, 21

*Oculus Innovative Scis., Inc. v. Nofil Corp.,*
   No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288 (N.D. Cal. Jan. 25, 2007)...........5, 8

*Parklane Hosiery Co., Inc. v. Shore,*
   439 U.S. 322 (1979)....................................................................................................13

*PC Specialists, Inc. v. Micros Sys.,*
   No. 10-CV-78 JLS, 2011 U.S. Dist. LEXIS 88088 (S.D. Cal. Aug. 8, 2011)............17

*Philippines v. Pimentel,*
   553 U.S. 851 (2008)....................................................................................................19

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
   390 U.S. 102 (1968)......................................................................................................5

*Schnabel v. Lui,*
   302 F.3d 1023 (9th Cir. 2002) ......................................................................................5

*School District v. Secretary of the United States Department of Education,*
   584 F.3d 253 (6th Cir. 2009) ......................................................................................18

*Shell Oil Co. v. Aetna Cas. & Sur. Co.,*
   158 F.R.D. 395 (N.D. Ill. 1994)..................................................................................18

*Sulit v. Slep-Tone Entm't,*
   No. 06-00045, 2007 U.S. Dist. LEXIS 89258 (N.D. Cal. Nov. 19, 2007) .................17

*Standard Oil Co. v. Moore,*
   251 F.2d 188 (9th Cir. 1957), *cert. denied*, 356 U.S. 975 (1958)................................6

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ........................................................................................7

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. C 3:11-cv-06714 JW

*Syufy Enterprises v. American Multicinema, Inc.*,
    793 F.2d 990 (9th Cir. 1986) ...............................................................................20

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
    173 F.3d 915 (4th Cir. 1999) ...................................................................................5

*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990)......................................................................................................8

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981)........................................................................................1, 7, 13

*Thomas, Head and Greisen Emps. Trust v. Buster*,
    95 F.3d 1449 (9th Cir. 1996) ...........................................................................11, 21

*U.S. v. Allegheny-Ludlum Industries, Inc.*,
    517 F.2d 826 (5th Cir. 1975) ...................................................................................5

*U.S. v. Bowen*,
    172 F.3d 682 (9th Cir. 1999) .........................................................................*passim*

*U.S. ex rel. Morongo Band of Mission Indians v. Rose*,
    34 F.3d 901 (9th Cir. 1994) ..............................................................................11, 12

*U.S. v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940)...............................................................................................1, 6

*Valley Power Sys. v. GE*,
    CV 11010726 CAS (JCx), 2012 U.S. Dist. LEXIS 26228 (C.D. Cal. Feb. 27, 2012) ...............18

*Walker Distrib. Co. v. Lucky Lager Brewing Co.*,
    323 F.2d 1 (9th Cir. 1963) ........................................................................................6

*Wash. v. Am. Pipe & Constr. Co.*,
    280 F. Supp. 802 (W.D. Wash. 1968)........................................................................7

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*,
    668 F.2d 1014 (9th Cir. 1982) ..................................................................................6

### STATUTES AND RULES

Clayton Antitrust Act of 1914
    15 U.S.C. §§ 12-27 ........................................................................................1, 7, 13

Digital Millennium Copyright Act of 1998
    17 U.S.C. §§ 1201, *et seq*...........................................................................................3

Federal Rules of Civil Procedure

12(b)(3) ................................................................................................................18
12(b)(6) ................................................................................................................16
12(b)(7) ..............................................................................................................1, 5
19 .................................................................................................................. *passim*
19(a) ..........................................................................................................1, 5, 8, 11
19(a)(1)(A) ........................................................................................................5, 6
19(a)(1)(B) ..................................................................................................5, 6, 11
19(a)(1)(B)(i) ................................................................................................12, 13
19(a)(1)(B)(ii) ....................................................................................................13
19(a)(3) ................................................................................................................18
19(a)(2)(ii) .............................................................................................................9
19(b) ..................................................................................................1, 5, 6, 19
19(b)(1) ................................................................................................................20
19(b)(2) ................................................................................................................21
19(b)(3) ................................................................................................................20
19(b)(4) ................................................................................................................22

Sherman Antitrust Act of 1890

15 U.S.C. §§ 1, *et seq.* ............................................................................1, 7, 13, 22

U.S.C.

28 U.S.C. § 1447(e) ............................................................................................10

## OTHER AUTHORITIES

7 Wright & Miller

§ 1623 ..................................................................................................................7

Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter and Harry Bass ("Plaintiffs") hereby oppose the motion by Defendant Apple Inc. ("Apple") to dismiss Plaintiffs' Complaint.

## I.   ISSUES TO BE DECIDED

**A.**   Is nonparty AT&T Mobility LLC ("ATTM") a necessary party pursuant to Federal Rule of Civil Procedure 19(a)?

**B.**   If so, is ATTM an indispensible party pursuant to Rule 19(b) such that this case must be dismissed?

## II.   INTRODUCTION

Apple does not challenge the legal sufficiency of Plaintiffs' claim that it injured millions of iPhone consumers by conspiring with ATTM to monopolize the iPhone voice and data services aftermarket in violation of the federal antitrust laws. Instead, Apple feebly offers two reasons why ATTM is a purported "necessary" party: (i) "because it is the alleged monopolist with which Apple supposedly conspired," and (ii) "because ATTM's wireless service contract is key to the case." Apple Br. at 2, 9-10. Neither argument withstands scrutiny. Under well-settled law, ATTM is not a necessary party within the meaning of Rule 19, and therefore Apple's motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) should be denied.

*First*, more than 70 years of binding Supreme Court and Ninth Circuit precedent firmly establishes that a plaintiff injured by an antitrust conspiracy may pursue *any* conspirator, regardless of the role he played in the conspiracy, for the *entire* harm he has suffered, and the failure to join another co-conspirator does not impede his ability to obtain complete relief. *See U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-54 (1940) (antitrust conspirators are liable for the acts of their co-conspirators); *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980). Moreover, since there is no right of contribution among co-conspirators, the absence of any of them as a party does not at all prejudice the one named as a defendant. *See Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638-47 (1981) (federal courts have refused to imply right of contribution among antitrust violators under Sherman Act or Clayton Act). ATTM's non-joinder does not impair the Court's ability to accord complete relief

1  between the parties now before it.

2  *Second*, ATTM's service contract is ***not*** "key to the case." *See* Apple Br. at 2, 5. The

3  contract that is "key" to this case is the secret, five-year agreement between Apple and ATTM to

4  monopolize the aftermarket for iPhone wireless service, ***to which no Plaintiff and no absent***

5  ***Class member ever agreed***. ¶¶ 2, 8, 26, 61.[1] These Plaintiffs have pled viable antitrust claims

6  against Apple without making any allegations about ATTM's service contract. Tellingly,

7  although it concedes that the Complaint includes no "express references to ATTM's wireless

8  service agreement," Apple Br. at 1, Apple has ***not*** moved on that basis to dismiss the Complaint

9  for failure to state a claim or plead an essential fact.[2] If Apple had even a colorable argument that

10  ATTM's contract were a necessary element of Plaintiffs' antitrust claims, much less a "key to the

11  case," it would have moved to dismiss on that basis. That Apple has not done so belies its

12  argument that ATTM's contract is "key" to anything except Apple's own misguided attempt to

13  avoid this Court's jurisdiction.

14  Nor is ATTM an "indispensible party" under Rule 19. Apart from vague and generalized

15  speculation, Apple has not identified any concrete interest of ATTM that might be adversely

16  affected by a judgment ***against Apple*** in this action. Moreover, ATTM has not sought to intervene

17  in this action to protect its own interests. Far from it, when ATTM was a co-defendant with Apple

18  in the related action, *In re Apple & AT&TM Antitrust Litig.*, No. 07-05152 JW (N.D. Cal.), it

19  vigorously sought to be dismissed as a party in favor of arbitration. Quite obviously, ATTM

20  wants no part of this litigation, and Apple's claim that ATTM must be joined to protect ATTM's

21  interests rings hollow.[3]

22  _____

23  [1]     All paragraph references ("¶"), unless otherwise indicated, refer to the Class Action Complaint (the "Complaint") filed on December 29, 2011.

24  [2]     The omission of any reference to ATTM's contract is no mere "cosmetic modification" to
25  any prior complaint. *See* Apple Br. at 1 (citing *In re Apple iPhone 3G Prods. Liab. Litig.*, No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *13 (N.D. Cal. Dec. 1, 2011)). Rather,
26  these Plaintiffs chose *ab initio* not to name ATTM as a defendant and not to rely on ATTM's service agreement in any way to assert their claims in this case.

27  [3]     While Apple devotes the bulk of its brief to pointing out that this Complaint is similar to
28  one filed by nine other plaintiffs in the *In re Apple & ATTM Antitrust Litig.*, No. 07-cv-05152 JW

Because ATTM is neither a necessary nor an indispensible party, Apple's motion to dismiss must be denied. These Plaintiffs have an absolute right under the antitrust laws and Rule 19 to sue only Apple and recover all their losses from Apple alone. Plaintiffs' decision not to sue ATTM along with Apple – because Plaintiffs can recover all their damages from Apple and cannot afford to arbitrate their individual claims against ATTM – is a legitimate exercise of that absolute right.

## III.     STATEMENT OF FACTS

Apple launched the iPhone on or about June 29, 2007. ¶¶ 2, 22. Prior to the launch, Apple entered into a secret five-year agreement with ATTM (the "Apple/ATTM Agreement") that made ATTM the exclusive provider of cellular voice and data service for iPhone customers for five years. ¶¶ 2, 24. As part of the Apple/ATTM Agreement, Apple shared in ATTM's revenues and profits. ¶¶ 2, 53. Apple and ATTM never have disclosed the duration of the Apple/ATTM Agreement to the public or even to their own sales and customer service employees. ¶¶ 2, 26, 61.

Plaintiffs purchased voice and data service with ATTM that could be terminated at any time (subject only to an early termination payment during the first two years of service). ¶¶ 25, 54. Plaintiffs have not agreed to use ATTM for any number of years, and have not agreed to forego their rights to terminate their voice and data service with ATTM at any time and switch to another cellular service provider. ¶¶ 2, 8, 26, 61. The Apple/ATTM Agreement, however, required iPhone users to use ATTM for the entire period of ATTM's exclusivity. ¶¶ 2, 8, 54-55.

Under the Apple/ATTM Agreement, Apple retained exclusive control over the design, features, and operating software for the iPhone. ¶¶ 4, 56. To help enforce ATTM's exclusivity, Apple programmed and installed software locks on each iPhone that prevents the purchaser from switching to another carrier that competes with ATTM to provide cell phone voice and data services. ¶¶ 3, 8, 44-47, 55, 59. Under an exemption to the Digital Millennium Copyright Act of

(N.D. Cal.), which this Court recently referred to arbitration, the fact that two cases are similar *is totally irrelevant to the indispensible party analysis*. Apple has not cited a single case – and Plaintiffs submit there is none – where the similarity of the complaints in two different actions has been a pertinent factor under Rule 19.

1998, however, cell phone consumers have an absolute legal right to modify their phones to use the network of their carrier of choice. ¶¶ 3, 49-50. Apple has unlawfully prevented iPhone customers from exercising that legal right by locking the iPhones and refusing to give customers the software codes needed to unlock them. ¶¶ 3, 51, 55, 59. Among other injurious effects, iPhone consumers have incurred supra-competitive service charges for iPhone voice and data service and have been unable to use local carriers while traveling abroad and have consequently been forced to pay exorbitant roaming charges – amounting to thousands of dollars per trip – to ATTM and Defendant Apple. ¶¶ 7, 9-10, 30, 45, 55, 62, 68, 81. Through Apple's refusal to unlock the iPhones, Apple has unlawfully stifled competition, reduced output and consumer choice, and artificially increased prices in the aftermarket for iPhone voice and data service. ¶¶ 3, 7-8, 45-46, 59, 81.

To enhance its iPhone revenues, Apple has created a number of software programs, called "applications," such as ring tone, instant messaging, Internet access, video and photography enabling software, which can be downloaded and used by iPhone owners. ¶ 4. In March 2008, Apple released a "software development kit" ("SDK") for the stated purpose of enabling independent software developers to design third party applications for use on the iPhone. ¶ 5. For an annual fee of $99, the SDK allows developers to submit applications to be distributed through Apple's applications market, the "iTunes App Store." *Id.* If the application is not made available for free in the App Store, Apple collects 30% of the sale of each application, with the developer receiving the remaining 70%. *Id.* Throughout the Class Period, Apple refused to "approve" any application by a developer who did not pay the annual fee or agree to Apple's apportionment scheme. *Id.* Apple has also unlawfully discouraged iPhone customers from downloading unauthorized competing applications software (called "third party applications") by telling customers that Apple will void and refuse to honor the iPhone warranty of any customer who has downloaded such unauthorized applications. ¶¶ 5-6. Through these actions, Apple has unlawfully stifled competition, reduced output and consumer choice, and artificially increased prices in the aftermarket for iPhone software applications. ¶ 7.

# IV. ARGUMENT

## A. Legal Standards

Federal Rule of Civil Procedure 12(b)(7) permits a defendant to assert the "failure to join a party under Rule 19" by motion before filing a responsive pleading. Fed. R. Civ. P. 12(b)(7). Dismissal of an action for failure to join an indispensible party "is a drastic remedy ... which should be employed only sparingly." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 112 n.10 (1968)); *see also U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 877 (5th Cir. 1975) (dismissal for non-joinder is a "drastic and disfavored remedy"). "Defendants bear the burden of persuasion in arguing for dismissal under Rule 19." *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288, at *6 (N.D. Cal. Jan. 25, 2007) (Illston, J.) (citing *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999)).

Rule 19 "provides a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party." *U.S. v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). *First*, the Court must determine whether the absent party is "necessary." *Id.* A party is "necessary" under Rule 19 in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action ***and*** the absent party is "so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If the Court determines that the absent party is not necessary, the inquiry ends and the motion to dismiss should be denied. *Schnabel v. Lui*, 302 F.3d 1023, 1031 (9th Cir. 2002) ("Because the partnership is not a necessary party under the standard of Rule 19(a), it cannot be indispensable under Rule 19(b).") (citing Fed. R. Civ. P. 19(b)).

*Next*, if the absent party is "necessary," the Court must determine whether joinder is "feasible." *Bowen*, 172 F.3d at 688 (citing Fed. R. Civ. P. 19(a) & (b)). *Finally*, if joinder is not "feasible," the Court must decide whether the absent party is "indispensable," *i.e.*, whether in

"equity and good conscience," the action can continue without it. *Bowen,* 172 F.3d at 688 (citing Fed. R. Civ. P. 19(b)).

## B.    ATTM Is Not A "Necessary" Party Under Rule 19(a)

ATTM is not a necessary party because: (i) the Court can afford Plaintiffs complete relief without ATTM's presence; and (ii) ATTM has not claimed a legally protected interest relating to the litigation and, even if it had, the disposition of this action in its absence will not impair or impede ATTM from protecting its interest or leave Apple subject to the risk of incurring double, multiple or otherwise inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(A) & (B).

### 1.    ATTM's Presence In This Litigation Is Not Required To Accord Complete Relief Among The Existing Parties

ATTM is not needed as a defendant for the Court to fashion complete relief between the parties. Under binding Supreme Court and Ninth Circuit law, all antitrust conspirators are jointly liable for the acts of their co-conspirators. *Socony-Vacuum*, 310 U.S. at 253-54; *Beltz*, 620 F.2d at 1366-67 (citing *Socony-Vacuum*); *El Ranco, Inc. v. First Nat'l Bank*, 406 F.2d 1205, 1216 (9th Cir. 1968), *cert. denied*, 396 U.S. 875 (1969); *Standard Oil Co. v. Moore*, 251 F.2d 188, 211 (9th Cir. 1957), *cert. denied*, 356 U.S. 975 (1958). Therefore, antitrust plaintiffs may sue only one co-conspirator and can recover all of their damages caused by the conspiracy from that lone defendant. *Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 436 (1945); *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*, 668 F.2d 1014, 1053 (9th Cir. 1982) (plaintiffs "not required to sue all of the alleged conspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy") (citation omitted); *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 8 (9th Cir. 1963) ("plaintiff need not sue all conspirators; he may choose to sue but one") (citation omitted); *Agron, Inc. v. Lin*, No. 03-05872, 2004 U.S. Dist. LEXIS 26605, at *40 (C.D. Cal. Mar. 16, 2004) ("plaintiff is not required to name all co-conspirators when bringing suit") (citing *William Inglis & Sons*, 668 F.2d at 1052-53).[4]

---

[4]    *See also Marks v. San Francisco Real Estate Board*, No. C-71 369 ACW, 1974 U.S. Dist. LEXIS 8777, at *6 (N.D. Cal. Apr. 29, 1974) ("All parties to a conspiracy are joint tort-feasors, and the plaintiff in an antitrust conspiracy suit may choose to bring his action against as many or as few of the conspirators as may desire.") (citations omitted); *Occidental Petroleum Corp. v.*

If Apple is found liable for conspiring with ATTM to monopolize the voice and data services aftermarket, Plaintiffs can recover 100% of their damages from Apple, and they are not required to name ATTM as a defendant. Apple has not argued otherwise. Moreover, Apple has no claim for indemnification or contribution against ATTM, its co-conspirator. *Tex. Indus.*, 451 U.S. at 638-47 (no right of contribution among antitrust violators under Sherman Act or Clayton Act). Again, Apple has not argued otherwise. Thus, there is no dispute that the Court can accord complete relief among the parties already before it.

Citing no authority to refute this firmly-established law, Apple instead ***implies*** that ATTM is necessary because ***it*** (rather than Apple) is "the alleged monopolist" whose participation in the voice and data service aftermarket is challenged in the litigation. Apple Br. at 2 & 10. No authority supports Apple's argument. To the contrary, Ninth Circuit precedent firmly establishes that an antitrust plaintiff can recover all of his damages from a single defendant ***regardless of the role of that conspirator in the conspiracy***. *See Beltz*, 620 F.2d at 1366-67 ("If Beltz can establish the existence of a conspiracy in violation of the antitrust laws and that appellees were a part of such a conspiracy, appellees will be liable for the acts of all members of the conspiracy in furtherance of the conspiracy, ***regardless of the nature of appellees' own actions***.") (emphasis added); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("'Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability.'") (quoting *Beltz*, 620 F.2d at 1367). That ATTM was the participant in the wireless

---

*Buttes Gas & Oil Co.*, 331 F. Supp. 92, 105 (C.D. Cal. 1971) ("antitrust co-conspirators need not be joined") (citation omitted); *Wash. v. Am. Pipe & Constr. Co.*, 280 F. Supp. 802, 804 (W.D. Wash. 1968) ("It is well established that co-conspirator, joint tort-feasors are jointly and severally liable for their acts. Accordingly, numerous courts have held that an antitrust plaintiff need not sue all possible defendants but may choose which of the conspirators he will make party to the action.") (footnotes omitted); *Grumman Sys. Support Corp. v. Data Gen. Corp.*, 125 F.R.D. 160, 165 (N.D. Cal. 1988) ("antitrust co-conspirators … are ***not*** indispensable parties to the antitrust action under Rule 19. Rather, as with joint tortfeasors, an antitrust action may proceed against any combination of co-conspirators.") (emphasis added) (citing 7 WRIGHT & MILLER SECTION 1623, pp. 346-48; *Lawlor v. Nat. Screen Serv. Corp.*, 349 U.S. 322 (1955)); *Homeco Dev. v. Markborough Props., Ltd.*, 709 F. Supp. 1137, 1139 (S.D. Fla. 1989) ("courts in antitrust cases recognize that co-conspirators are jointly and severally liable for all damages occasioned by their illegal acts").

service aftermarket is legally irrelevant to Apple's liability, and does not make ATTM a necessary party under Rule 19.

Apple concedes that an antitrust plaintiff need not join all the co-conspirators to obtain complete relief. Apple Br. at 10. *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999), which Apple cites in support of a supposed "active participant" exception to this well-established rule, is an outlier that has not been accepted in the Ninth Circuit. As Apple concedes, the ***Ninth Circuit recognizes no such exception to this general rule***. Apple Br. at 11 n.5 (citing *Oculus*, 2007 U.S. Dist. LEXIS 8288, at *7-8). In *Oculus*, Judge Illston denied a Rule 19 motion because, according to the Advisory Committee Notes to Rule 19(a), "'a tortfeasor with the usual "joint-and-several" liability is merely a ***permissive*** party to an action against another with like liability.'" *Oculus*, 2007 U.S. Dist. LEXIS 8288, at *7 (emphasis added) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). In an antitrust case such as this, where one co-conspirator is fully liable for all the harm caused by the conspiracy regardless of its degree of participation, it makes no difference whether the absent party was the "active participant" or not.[5]

Furthermore, the Eleventh Circuit recognized that its decision in *Laker Airways* was driven by the unique facts of that case. After noting the widely held view that joint tortfeasors do ***not*** need to be joined in one lawsuit, the Eleventh Circuit concluded that the particular non-party in that case, a company ("ACL") appointed by the British government to coordinate take-off and landing slots at British airports, had interests that were "more significant than those of a routine joint tortfeasor." *Laker Airways*, 182 F.3d at 848. Because of that unique fact, the Eleventh Circuit determined that ACL's ***continued existence***, which was predicated on its "neutrality" in coordinating the airport "slots," was in jeopardy.[6] The court determined that ACL was a necessary

---

[5]    Apple's "active participant" argument overlooks the fact that it, too, was an active participant in the conspiracy to monopolize the voice and data aftermarket. For example, Plaintiffs allege that Apple not only withheld the unlock codes from iPhone consumers who tried to switch carriers (¶¶ 3, 51, 55, 59), it also programmed the iPhones to stop working if they were used on any wireless network other than ATTM's (¶¶ 3, 8, 44-47, 55, 59).

[6]    The United Kingdom's enabling legislation mandates "that the Secretary of State for Transport withdraw its approval of an appointed coordinator if its behavior is not neutral." *Id.* at 848.

party not because it was the "active participant," but rather because an adverse decision in the case might put it out of business. A judgment against Apple poses no similar existential threat to ATTM, whose interest in this case is no greater than that of a "routine joint tortfeasor."[7] By its own terms, *Laker Airways* is not relevant here.

None of the other cases cited by Apple is any more relevant. *Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d 394 (5th Cir. 1971), is easily distinguished because it was not an antitrust case and it did not involve joint tortfeasors. The named defendant in *Haas* risked "'incurring double, multiple, or otherwise inconsistent obligations'" if the non-party shareholder, whose potential claim competed with that of the plaintiff, were not joined. *Id.* at 398 (quoting Fed. R. Civ. P. 19(a)(2)(ii)). Here, ATTM obviously does not have a competing claim *against* Apple. Moreover, since Apple and ATTM have no contribution or indemnification rights, Apple does not face any risk of double or multiple exposure or inconsistent obligations (nor does Apple claim that it does).

*McDonald v. Gen. Mills, Inc.*, 387 F. Supp. 24 (E.D. Cal. 1974) and *First Nat'l Montana Bank v. Fed. Leasing, Inc.*, 110 F.R.D. 675 (D. Mont. 1986), are not antitrust cases and are distinguishable for the same reason. In *McDonald*, an employment discrimination case, the absent party was necessary to "avoid inconsistent relief or sole responsibility" on the part of the defendant. 387 F. Supp. 2d at 38. The antitrust laws allow Apple alone to be held liable to Plaintiffs for the entire harm caused by the conspiracy, and a judgment against it will satisfy

---

[7] An "active participant" exception would be illogical in an antitrust conspiracy case because it is an exception that would swallow the widely-accepted general rule that an antitrust plaintiff need sue only one conspirator. Furthermore, each antitrust co-conspirator is by definition an "active participant" in the conspiracy that is the basis for the claim. This Court should not recognize an exception, which has never been approved by the Ninth Circuit, based on one factually unique Eleventh Circuit case when the result would be contrary to decades of Supreme Court and Ninth Circuit antitrust precedent permitting a plaintiff to sue only one co-conspirator. Rather, the Court is compelled by the antitrust laws to separate Plaintiffs' claims against Apple from those against ATTM and to afford complete relief to Plaintiffs as against Apple alone. *See Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014-15 (9th Cir. 2002) (complete relief was possible where relief was available regardless of the absent party's participation).

Plaintiffs' claims without any risk of an inconsistent adjudication against ATTM. Likewise, in *First Nat'l Montana Bank*, the absent party (another shareholder whose potential claim competed with the plaintiff shareholder's claim) was found to be necessary in a breach of contract case to prevent the risk that the defendant would shoulder all of the liability "in the event that an indemnity action is unsuccessful." 110 F.R.D. at 678. Since there is no right of indemnification between antitrust conspirators like Apple and ATTM, and because ATTM has no competing potential claim against Apple, those concerns are inapposite here.

*Dollens v. Target Corp.*, No. 11-03265 RMW, 2011 U.S. Dist. LEXIS 139477 (N.D. Cal. Dec. 5, 2011) (Whyte, J.), a slip-and-fall case where the plaintiff sought to amend her complaint to substitute a Target employee as a "Doe" defendant, was decided under 28 U.S.C. § 1447(e), not under Rule 19. As Judge Whyte noted, "[w]hile [the employee] may not be strictly necessary as a party, however, courts have found that amendment under § 1447(e) is a ***less restrictive standard*** than Rule 19 and joinder may be permitted where the proposed defendant is closely related to the cause of action." *Id.* at *4 (emphasis added) (citation omitted). The Court permitted the plaintiff to join the employee under the relaxed standard. *Id.* at *7. Of course, Plaintiffs are not seeking to join ATTM here, and Apple has not moved under section 1447(e). The Court should not consider Apple's Rule 19 motion under that less restrictive, inapplicable standard.

Finally, the *Toyota* decisions, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 785 F. Supp. 2d 883 (C.D. Cal. 2001), and *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 10-02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360 (C.D. Cal. Nov. 30, 2011), arose in a product liability and deceptive marketing case, ***not*** an antitrust case. The defendants, domestic Toyota entities, moved to dismiss the action in the absence of Toyota's foreign subsidiary or affiliated entities (over which the court lacked jurisdiction). The court found the foreign Toyota entities were necessary parties because they, ***not*** the domestic Toyota defendants, were responsible for the manufacture, distribution, design, and repair of the allegedly defective vehicles, as well as the improper marketing practices. *Toyota*, 785 F. Supp. 2d at 905; *Toyota*, 2011 U.S. Dist. LEXIS 151360, at *160-61. If the plaintiffs were to prevail, the

court could not grant them complete relief because the domestic parent could not be held liable for the actions of the absent foreign subsidiary or affiliated entities. 785 F. Supp. 2d at 906. Here, there is no such relationship between Apple and ATTM. In addition, because Apple can be held liable to Plaintiffs for the full amount of their damages and has no claim for indemnification or contribution against ATTM, the Court can grant complete relief between the parties already before it.[8]

### 2. ATTM Has Not Claimed Any Legally Protected Interest In The Subject Of This Litigation, And It Has No Such Interest That Might Be Harmed By A Judgment Against Apple

ATTM is not a necessary party under Rule 19(a) because it has not "claim[ed] an interest related to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Under binding Ninth Circuit precedent, "[j]oinder is contingent . . . upon an initial requirement that the *absent party* claim a legally protected interest relating to the subject matter of the action." *Bowen*, 172 F.3d at 689 (where absent party was aware of the action and chose not to claim an interest, joinder was unnecessary) (emphasis added and omitted) (internal quotations and citation omitted). ATTM is fully aware of this litigation: indeed, it stipulated that this case is related to the earlier action. *See In re Apple & AT&TM Antitrust Litig.*, No. 07-05152 JW, ECF No. 562. However, it has not sought to intervene as a party here, nor has it claimed any interest in this litigation. When, as here, the Court can afford complete relief without the absent party and the absent party itself does *not* claim an interest in the action, the absent party is not "necessary" under Rule 19.[9]

---

[8]    In *Toyota*, the district court also was concerned about concurrent litigation pending against one of the absent foreign entities. *Toyota*, 2011 U.S. Dist. LEXIS 151360, at *163-64 n.16 ("Of additional concern is the separate putative class action currently pending against Toyota Canada, Inc., which Plaintiffs do not address."). There is no separate class action now pending against ATTM asserting these antitrust claims.

[9]    *See also Thomas, Head and Greisen Emps. Trust v. Buster*, 95 F.3d 1449, 1460 n.18 (9th Cir. 1996) (absent party was not indispensable because it "had not claimed an interest in [the defendant's] limited partnership interest at the time of the default judgment"); *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994) ("inappropriate for one defendant to attempt to champion [the] absent party's interests" when absent party "did not feel that it was necessarily in his interest to remain a party in this action").

In fact, ATTM has made clear that it does not wish to defend similar antitrust claims in this Court (or any other) by insisting in the related case that any claims against it must be sent to arbitration. Ultimately, ATTM successfully moved to compel arbitration in *In re Apple & AT&TM Antitrust Litigation*, No 07-05152 JW, ECF Nos. 115, 504. Under the circumstances, it is inappropriate for Apple to champion ATTM's purported "interests." *See Bowen*, 172 F.3d at 689 (district court did not err in finding joinder "unnecessary" because "Sterilization Systems was aware of this action and ***chose not to claim an interest***") (emphasis added) (citation omitted).

In *Rose*, the Ninth Circuit viewed with skepticism a similar motion to dismiss for failure to join another defendant, holding that "it is inappropriate for one defendant to attempt to champion an absent party's interests .... Miller's voluntary dismissal indicates that Miller himself did not feel that it was necessarily in his interest to remain a party in this action. ***This is the best evidence that Miller's absence would not impair or impede his ability to protect his interests***." 34 F.3d at 908 (emphasis added). Here, the "best evidence" that ATTM's absence will not impair or impede its ability to protect its own interests is: (i) its decision not to seek to intervene in this case, and (ii) its effort to be dismissed from the related litigation in favor of arbitration.

Apple is not genuinely concerned with ATTM's ability to protect its interests. Rather, Apple is trying to force ATTM to be joined as a defendant to defend claims that have not been asserted against ATTM in this case before this Court (where ATTM does not want to be) in order to invoke the arbitration clause in ATTM's service contract – a defense which Apple does not believe it can assert in ATTM's absence. *See* Apple Br. at 2 n.2 (if ATTM is joined as a defendant, "Apple (and ATTM) will file a motion to enforce the Court's earlier rulings and to compel arbitration of Plaintiffs' claims"). As in *Rose*, Apple's ***real*** motive here is securing the dismissal of the action against it, not in protecting ATTM. *Rose*, 34 F.3d at 908 n.6 ("Rose is only interested in securing dismissal of the action against him, not in joining Miller.").

Because ATTM has not claimed any interest in the subject of this litigation, the Court can end the "necessary party" inquiry here. Even if ATTM had claimed an interest in this action, however, it still would not be a necessary party because the litigation will not impair or impede ATTM's ability to protect any interest cognizable under Rule 19. *See* Fed. R. Civ. P.

19(a)(1)(B)(i). If ATTM is found in this case to have conspired with Apple, neither Plaintiffs nor any other iPhone consumer will be able to use that finding to prejudice ATTM in a separate action or arbitration. Neither *res judicata* nor collateral estoppel can be used against ATTM in a subsequent proceeding based upon this litigation because ATTM is not a party to this litigation.[10] Rather than being impeded or impaired, ATTM's interests are ***better*** served by ***not*** being a defendant in this action since if Plaintiffs prevail they will recover all of their damages from Apple and ***ATTM will essentially become immune***.[11]

Furthermore, as discussed in Section B.1 above, if Apple is found liable to Plaintiffs, it has no right of contribution against ATTM, so it will not be able to use an adverse finding here in a claim over against ATTM. *See Tex. Indus.*, 451 U.S. at 638-47 (neither Sherman Act nor Clayton Act confers right of contribution among antitrust violators).

Nor will ATTM's absence leave Apple "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). "One of the purposes of joinder under Rule 19 is to protect the defendant from multiple suits by joining all parties whose claims are necessary for a full adjudication on the merits of a particular claim." *Brocklesby Transp., Div. of Kingsway Transps., Ltd. v. E. States Escort Servs.*, No. 86-9270, 1990 U.S. Dist. LEXIS 10015, at *5 (S.D.N.Y. Aug. 6, 1990). Surely, Apple would have no liability to ATTM if Apple alone is held liable to these Plaintiffs and the Class in this action. Indeed, Apple does not contend that *it* will suffer any prejudice from ATTM's absence, conceding that this factor is inapplicable here.

---

[10] Traditional *res judicata* and collateral estoppel require the same parties or their privies in both actions. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979). Even offensive and defensive non-mutual collateral estoppel require that the party being estopped must have litigated and lost the issue in a prior action. *Id.*; *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003). "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery*, 439 U.S. at 327 n.7 (citations omitted). Since ATTM is not a party, nothing litigated and lost by Apple can be used against ATTM in a subsequent litigation. Once again, Apple does not argue otherwise.

[11] Once these Plaintiffs and absent Class members recover their damages from Apple, they will not be able to recover them again from ATTM.

Apple is not more liable in ATTM's absence, nor would it be less liable in ATTM's presence. To the extent Apple suggests that liability for conspiracy to monopolize is a matter of degree, it has cited no cases to support this point, and it cannot do so in light of the well-settled principle that co-conspirators are equally and fully liable regardless of their level of participation.

Apple's heavy reliance on this Court's decisions in the *In re Apple iPhone 3G Products Liab. Litig.*, No. 09-02045 JW, is entirely misplaced. On April 2, 2010, the Court found that ATTM was an indispensible party in that case because "any adjudication of claims as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure" and because "much of the remedy sought by [the plaintiffs] would require participation by ATTM." *In re Apple iPhone 3G Prods. Liab. Litig.*, 728 F. Supp. 2d 1065, 1076 (N.D. Cal. 2010) ("April 2, 2010 Order").[12] On December 1, 2011, the Court reiterated that it already found ATTM an indispensable party in that case because "the 'gravamen of [plaintiffs'] allegations is that any defect in the iPhone 3G merely exacerbated the poor quality of service resulting from ATTM's allegedly deficient 3G network infrastructure,'" "'any adjudication of claims as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure'" and it was therefore "'unable to reasonably separate

---

[12] The plaintiffs in that case sought an injunction preventing Apple *and ATTM* from continuing to advertise their "false and misleading statements regarding the iPhone 3G" and compelling them to make "disclosures and/or disclaimers on the outside of the iPhone boxes or advertising material."). *See In re Apple iPhone 3G Products Liab. Litig.*, No. 09-02045 JW, Master Administrative Consolidated Amended Complaint, ECF No. 44, at ¶ 185. The relief requested by Plaintiffs in this case does not require the Court to fashion any relief affecting ATTM. Moreover, *In re Apple iPhone 3G Products Liab. Litig.* is a product liability case, not an antitrust case. While ATTM and Apple are jointly and severally liable in that case for the false misrepresentations they each made about the capacity of ATTM's 3G network, they have contribution rights against each other. If those plaintiffs in the product liability action were allowed to sue only Apple and obtained a judgment against Apple, Apple could make a claim for indemnification or contribution in a subsequent case against ATTM, which cannot happen here. For that reason, *ATTM* has an interest in how Apple defends the iPhone 3G case that it does not have here, where it cannot be sued for indemnification or contribution. Moreover, in the iPhone 3G case there is a risk to Apple of inconsistent adjudications if it were compelled to sue ATTM in a separate case. After being held liable to the plaintiffs in the product liability case, it might nonetheless lose its claim for indemnification or contribution in a subsequent case against ATTM. None of those risks is present here.

---

Plaintiffs' claims to pertain only to Defendant Apple.'" *In re Apple iPhone 3G Products Liab. Litig.*, 2011 U.S. Dist. LEXIS 138532, at *10 (quoting April 2 Order, 728 F. Supp. 2d at 1076).

None of those facts, or anything like them, is present here. The Court will not need to make any factual findings in this case about the sufficiency of ATTM's wireless network, nor does Apple contend otherwise. Apple's only contention as to why the claims against Apple purportedly cannot be adjudicated in ATTM's absence is that "Plaintiffs' claims are intertwined with ATTM and its service agreement" and the "ATTM service agreement is enmeshed in this dispute." Apple Br. at 8. However, as shown in Section III above and Section B.3 below, far from being the "gravamen" of Plaintiffs' Complaint or "key to the case," ATTM's service agreement *has nothing whatsoever to do* with Plaintiffs' aftermarket monopolization claims. Plaintiffs' claims against Apple are therefore separable and ATTM is not a necessary party.

Moreover, none of the remedies sought by these Plaintiffs will require ATTM's participation. As discussed fully in Section B.1 above, Apple is responsible to Plaintiffs for 100% of their damages, meaning that Plaintiffs can achieve a full monetary recovery without ATTM's participation. In addition, as Plaintiffs allege, *Apple* possesses the unlock codes and has withheld them from Plaintiffs to enforce the antitrust conspiracy. ¶¶ 3, 51, 55, 59. Thus, Plaintiffs can obtain the unlock codes from Apple, without involving ATTM in the equitable relief either.

### 3. ATTM's Service Contract Is Not Part Of This Case And The Court Will Not Need To Construe It

At the core of Apple's argument is its constant refrain that ATTM's service contract is "key to the case," such that Plaintiffs' antitrust claims are "intertwined" with ATTM and its service agreement. However, as Apple itself admits, *ATTM's contract is not part of this case*. Apple Br. at 1 (Plaintiffs "have eliminated express references to ATTM's WSA.").

The plaintiffs in the related action, *In re Apple & AT&TM Antitrust Litig.*, were unable to convince this Court that their antitrust claims were not dependent upon ATTM's service contract because their complaint and subsequent filings included numerous references to it. By sharp contrast, to prove beyond dispute that their antitrust claims *do not depend at all* upon ATTM's service contract, *these* Plaintiffs, in *this* action, have not included any allegations concerning the

agreement in **their** Complaint. Apple reluctantly concedes there are no "express references to ATTM's wireless service agreement" in the Complaint. Apple Br. at 1.

Apple never explains (or even tries to explain) how a contract that is ***not even mentioned*** in a Complaint can possibly be "key to the case." Simply stated, it cannot. Instead, Apple seizes upon the similarity of many of the facts alleged in this case to the related action to blur the otherwise sharp distinction between the two cases. The other case, *In re Apple & AT&TM Antitrust Litig.*, is completely irrelevant to this Court's analysis under Rule 19. Plainly, as it concedes, Apple seeks ATTM's joinder not for any purpose recognized by Rule 19, but rather as a vehicle to enforce against these Plaintiffs in this case the Court's Order in the related case compelling those other plaintiffs to arbitrate their individual claims. Apple Br. at 2 n.2. Apple's desire to utilize ATTM's arbitration clause to immunize ***itself*** from liability does not make ATTM a "necessary" party under Rule 19.

ATTM's service contract is not "key" to this case, any more so than Apple's own iTunes Terms of Service is "key" to it. Rather, ***the five-year exclusivity agreement between Apple and ATTM*** is the gravamen of this monopolization case. ¶¶ 2, 4, 8, 23, 26, 45, 52-62, 73. If the antitrust claims in this case "turned on" ATTM's service contract, as Apple argues (Apple Br. at 4, 5, 9), Plaintiffs would have been required to plead the contract in support of their claims. If Apple genuinely believed its own oft-repeated argument, it surely would have moved to dismiss the Complaint under Rule 12(b)(6) for failure to plead a material (indeed, "key") fact. Apple has not done so because, as it well knows, Plaintiffs' claims do not depend upon ATTM's service contract in the least.

Because ATTM's service contract is not pertinent to Plaintiffs' claims, the Court will not be required to construe it. Apple argues that ATTM's agreement relates to whether these Plaintiffs consented to a restraint in the voice and data aftermarket. Apple Br. at 4 and 5.[13] Neither Apple nor ATTM ever have contended that iPhone purchasers contractually agreed in ATTM's service

---

[13]     Under *Newcal Industries v. Ikon Office Solution*, 513 F.3d 1038, 1048 (9th Cir. 2008), the relevant question is whether Apple and ATTM possessed "market power that arises solely from contractual rights that consumers knowingly and voluntarily give to the defendant."

contract to give them monopoly power in the aftermarkets. Plaintiffs allege only that they agreed to standard monthly voice and data service (for two years, not five years), which they could terminate at any time (subject to an early termination fee during the first two years).[14] Plaintiffs need not rely upon the ATTM service contract to prove either fact, since the two-year duration of the ATTM service agreement *and* the early termination fee are and have been disclosed and readily available on ATTM's website at all relevant times. *See* Declaration of Rachele R. Rickert In Support Of Opposition To Defendant Apple Inc.'s Motion To Dismiss, ("Rickert Decl."), Exs. A-K. Moreover, these facts are not in dispute: *Apple and ATTM have already judicially admitted* in their Answers in the related litigation that *all iPhone customers were required sign a two-year service contract to obtain ATTM wireless service*. Rickert Decl., Ex. L (*In re Apple & AT&TM Antitrust Litig.*, No. 07-05152 JW, Answer of Defendant AT&T Mobility LLC (ECF No. 188)), ¶ 30; *Id.*, Ex. M (Answer of Defendant Apple Inc. (ECF No. 152)), ¶¶ 30, 79. ATTM also admitted in its Answer that "iPhone customers incur a $175 Early Termination Fee if they cancel their ATTM service plan prior to expiration of their two-year service agreement." *Id.*, Ex. L, ¶ 83.

Despite Apple's argument, the Court will not need to refer to ATTM's service contract, let alone interpret or construe it, in this case. The cases Apple cites that require all parties to the contract to be joined when a court must interpret the contract are, therefore, irrelevant.[15]

---

[14]     *See* ¶ 54 ("ATTM offered iPhone purchasers industry standard monthly voice and data service that could be terminated at any time prior to two years for a fee"); ¶ 58 ("ATTM … charged iPhone consumers a fee for terminating their voice and data service within the first two years."); ¶ 97 ("Apple and its co-conspirator agreed without Plaintiffs' knowledge or consent to make ATTM the exclusive provider of voice and data services for the iPhone for five years, contrary to Plaintiffs' reasonable expectations that they could switch at any time to another carrier in the first two years that they owned their iPhone after paying the $175 early termination fee, and without charge after that period.")

[15]     None of the cases cited by Apple (App. Br. at 9, 13-15) are antitrust cases or involve joint tortfeasors but are instead largely breach of contract cases where one party to the contract has brought an action either to "void a contract" or "determine rights and obligations under [the] contract." *PC Specialists, Inc. v. Micros Sys.*, No. 10-CV-78 JLS, 2011 U.S. Dist. LEXIS 88088, at *7, 8 (S.D. Cal. Aug. 8, 2011); *see also KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF, 2008 U.S. Dist. LEXIS 103915 (N.D. Cal. Dec. 17, 2008) (Fogel, J.) (breach of contract and copyright action); *Sulit v. Slep-Tone Entm't*, No. 06-00045, 2007 U.S. Dist. LEXIS 89258 (N.D. Cal. Nov. 19, 2007) (Jenkins, J.) (breach of contract and copyright dispute between two software

1    Since ATTM is not a necessary party, Apple's motion should be denied.[16]

2    ### 4.    ATTM'S Joinder Is Not Feasible

3        Even if ATTM were a necessary party, its joinder is not feasible because it surely would

4    move to compel arbitration of the claims against it.  Since this Court has already granted a motion

5    to compel arbitration by ATTM in the related case, *In re Apple & AT&TM Antitrust Litigation*,

6    No. 07-5152 JW, 2011 U.S. Dist. LEXIS 138539, it is practically certain that it would compel

7    arbitration as to ATTM in this case as well.  Thus, even if it were joined as a defendant, ATTM

8    would be dismissed for improper venue.  *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727,

9    733 (7th Cir. 2005) (case dismissed for improper venue because forum selection clause in contract

10   required arbitration outside of district); *Valley Power Sys. v. GE*, CV 11010726 CAS (JCx), 2012

11   U.S. Dist. LEXIS 26228 (C.D. Cal. Feb. 27, 2012) (same); *Metro. Life Ins. Co. v. O'Malley*, 392

12   F. Supp. 2d 1042, 1045 (N.D. Ill. 2005) (granting motion to dismiss for improper venue under

13   Rule 12(b)(3) because proper venue was before arbitrator).  Because ATTM has objected to being

14   sued in court and has insisted that claims against it must be individually arbitrated (and the Court

15   has agreed), the Court would dismiss ATTM in any event for improper venue, making ATTM's

16   joinder not feasible under Rule 19(a)(3).[17]

17

18   _____

     companies); *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395 (N.D. Ill. 1994) (breach of

19   contract); *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661 (W.D. Wash.
     2004) (breach of contract action).  Apple also cites a concurring opinion in *School District v.*

20   *Secretary of the United States Department of Education*, 584 F.3d 253 (6th Cir. 2009), for the
     unremarkable statement that "all parties to a contract are necessary in an action challenging its

21   validity or interpretation," but the majority opinion held that the absent parties were not necessary

22   parties because they declined to participate in the proceedings, just as ATTM has here.  *Id.* at 303.
     Here, these Plaintiffs do not seek to void ATTM's service contract or to determine any rights or

23   obligations under it.

24   [16]    ATTM also is not a necessary party because it is not alleged to have conspired with Apple
     to monopolize the applications aftermarket.  ¶¶ 85-95.  Apple alone is alleged to have monopolized

25   that aftermarket.  And again, Apple does not argue otherwise.

26   [17]    Apple's argument that joinder is feasible "because Plaintiffs already named ATTM as a

27   defendant in the essentially identical case of *In re Apple & ATTM Antitrust Litigation*," Apple Br.
     at 6 (citing *In re Apple iPhone 3G Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 138532, at *16), is

28   unavailing.  As Apple well knows, these Plaintiffs were not plaintiffs in the prior case, and they

### C. Even If ATTM Were A Necessary Party, It Is Not An "Indispensable" Party Under Rule 19(b)

Since, as a practical matter, ATTM cannot be joined as a defendant in this action, the Court must consider whether it is "indispensable" under Rule 19(b), meaning its participation is so important that, in "equity and good conscience," the action cannot continue without it. *See Bowen,* 172 F.3d at 688 (citing Fed. R. Civ. P. 19(b)). Rule 19(b) lists four factors for the court to consider when deciding whether a matter must be dismissed in the absence of a necessary party that cannot feasibly be joined:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). None of these factors makes ATTM "indispensable" here.

*First,* as Plaintiffs have shown in Section B.2 above, any judgment against Apple rendered in ATTM's absence will not prejudice ATTM since it cannot be used against ATTM in any subsequent court or arbitration proceeding. Apple cannot seek contribution from ATTM in this antitrust case. Nor would Plaintiffs or any other iPhone consumer be able to use an adverse judgment in this case against ATTM in a subsequent case because: (i) *res judicata* and collateral estoppel both require ATTM to have already litigated and lost in this action before any adverse judgment here can be used against it in a subsequent action; and (ii) Plaintiffs can recover all of their damages from Apple since Apple and ATTM are jointly and severally liable. This latter reason is also why a judgment against Apple in ATTM's absence would be fully adequate.[18] *See*

---

never have named ATTM as a defendant here. These Plaintiffs chose not to name ATTM as a defendant and not to allege ATTM's service contract in this case.

[18] *Philippines v. Pimentel,* 553 U.S. 851 (2008), cited by Apple, is not an antitrust case, does not involve joint tortfeasors or co-conspirators, and is factually unique because it involved a human rights class action implicating numerous complex issues such as sovereign immunity.

Section B.1 above. Thus, a judgment rendered in ATTM's absence will **not** prejudice ATTM or the existing parties in the least and will be fully adequate. *See* Fed. R. Civ. P. 19(b)(1) and (3).

Apple has not identified any genuine risk of prejudice to ATTM absent its joinder. Its contention that ATTM "is a contracting party" and therefore needs to be joined is a red herring since, as demonstrated in Section B.3 above, ATTM's service contract is not in issue in this case, these Plaintiffs do not seek to enforce or invalidate it, its terms are not in dispute, and, in any event, ATTM already has **admitted** to what the contract says. Thus, even if the service contract were relevant here, ATTM has disclaimed any interest in arguing how its contract should be interpreted in this case.

Apple's argument that because ATTM is "the alleged monopolist at the center of this case," an adverse finding regarding ATTM's *scienter* in this action would prejudice ATTM or impair its interests ignores the inability of anyone, including Apple, to use such a finding against ATTM in any subsequent action or arbitration since ATTM is not a party here and Apple cannot seek contribution. *See* section B.2 above. Finally, Apple's vague, conclusory assertion that an adverse judgment here would harm ATTM's "business interests" is unavailing. Apple does not explain how ATTM's business interests would be harmed or even attempt to make any showing that such harm is likely. As explained in Section B.1 above, the Eleventh Circuit's *Laker Airways* case involved unique facts that are not present here; a judgment against Apple will not threaten ATTM's existence. *See Laker Airways*, 182 F.3d at 848.

ATTM is a large, sophisticated corporation represented by some of the nation's best law

---

*Syufy Enterprises v. American Multicinema, Inc.*, 793 F.2d 990 (9th Cir. 1986), also cited by Apple, is easily distinguished. In that case, the Ninth Circuit held that Syufy could not be liable for conspiring with **unnamed** co-conspirators to monopolize the film distribution market because there was no evidence that any of its co-conspirators "had at least some awareness that the underlying conduct was anticompetitive or monopolistic." *Id.* at 1001. *Syufy* did not involve Rule 19 and it did not discuss "necessary" or "indispensable" parties at all. Had the **unnamed** co-conspirators been necessary or indispensable under Rule 19, the Ninth Circuit would have said so in its opinion. Instead, the Court considered only the merits of Syufy's liability, expressing no concern that a finding that the unnamed co-conspirators were "aware" of Syufy's wrongdoing might be reached in their absence. If Apple's argument were correct, an antitrust plaintiff's well-established right to sue only one conspirator for all his damages would be invalidated.

firms, and it is fully aware of this litigation. If it believed that its business interests were threatened by the action, it would have sought to intervene to protect those interests. For that same reason, it would not have sought to be dismissed from the related litigation in favor of arbitration.

Any conspirator theoretically could experience the same vague, generalized business harm that Apple presumes ATTM might suffer here whenever a plaintiff successfully sues its co-conspirator under the antitrust laws. Yet, as explained fully in Section B.1 above, an antitrust plaintiff has an absolute right to sue only one conspirator for all the harm caused by the conspiracy. *KnowledgePlex Inc.*, 2008 U.S. Dist. LEXIS 103915, at \*14, which Apple cites, is distinguishable because it was a breach of contract case that did not involve joint tortfeasors or co-conspirators and the parties to the contract were not prohibited from seeking contribution from one another, as ATTM and Apple are here. Moreover, the absent party in that case consented to the Court's jurisdiction, and therefore "could be joined if necessary," *id.* at \*12, unlike ATTM's decision to seek to compel arbitration of all claims against it.

While Apple has not raised any legitimate prejudice that may be caused to ATTM in its absence, even if it were true that ATTM's service contract had to be interpreted in this case – which it does ***not*** – ATTM will not be prejudiced, as the Court will be able to fashion an appropriate order that provides full relief to the parties in this case without impairing ATTM's ability to continue to defend itself in any individual arbitrations that may be filed against it. *See* Fed. R. Civ. P. 19(b)(2); *see also Thomas, Head and Greisen,* 95 F.3d at 1460 n.18 (the "district court was able to craft appropriate and meaningful relief in the absence of Westwood which, as we have discussed, did not prejudice Westwood's property rights.") (citation omitted); *Occidental Petroleum*, 331 F. Supp. 92 (finding that the foreign government co-conspirators, even if necessary parties, were not indispensible parties because the court could shape relief to prevent prejudice to their interests).[19]

---

[19] The Advisory Committee on the Federal Rules of Civil Procedure states in its Note on the 1966 Amendment to Rule 19 that even when adjudication of the controversy may "adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent

*Finally*, Plaintiffs would not have an adequate remedy should this Court dismiss the case for failure to join ATTM. *See* Fed. R. Civ .P. 19(b)(4). Because of this Court's recent Order compelling arbitration of the plaintiffs' claims against ATTM and Apple in the related litigation, *In re Apple & AT&TM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, if the Court dismisses this case, these Plaintiffs will have no way to pursue their antitrust claims against either Apple or ATTM. "The prosecution of a complex antitrust lawsuit, either in court or in arbitration, requires the outlay of substantial financial resources." *Kristian v. Comcast*, 446 F.3d 25, 52 (1st Cir. 2006). Antitrust cases require "an elaborate factual inquiry" that entails millions of dollars of attorneys' time and hundreds of thousands or millions of dollars in expert fees. *Id.* at 58. Without expert witness testimony, antitrust claims are "effectively precluded," and because the plaintiff's individual damages are extremely small compared to the huge cost of investigating and prosecuting an individual claim, "retaining expert witnesses is completely unrealistic and impractical on an individual claim basis." *Id.* Even though reasonable attorneys' fees are awarded to successful antitrust plaintiffs, few if any attorneys would risk investing the "large initial outlay in time and money" and lost "opportunity costs" required to investigate and prosecute a claim where the recovery "at most is a few thousand dollars. Then, factoring in the uncertainty of success, the appeal for an attorney to take on an individual plaintiff's antitrust claim shrinks even further." *Id.* at 59 & n.21.

These Plaintiffs' antitrust claims are no exception to the basic rules. These Plaintiffs have weighed the costs and risks and have concluded that they simply could not afford to bring this enormously expensive Section 2 aftermarket monopolization case as individual arbitrations against ATTM. Therefore, they validly exercised their right to sue Apple alone in court.

## D. Apple, Not These Plaintiffs, Is Engaged In Jurisdiction Manipulation

Apple's last argument, that these Plaintiffs are engaged in "jurisdiction manipulation," is entirely meritless. In *Envirotech v. Bethlehem Steel*, 729 F.2d 70 (2d Cir. 1984), cited by Apple

---

recovery by the absent person," these factors "do not themselves negate the court's power to adjudicate as between the parties who have been joined." Fed. R. Civ. P. 19 advisory committee's note.

(Apple Br. at 18), the Second Circuit affirmed the dismissal of a breach of contract case after refusing to allow the real party in interest to be dropped as a named *plaintiff* in order to preserve diversity jurisdiction. The action was commenced by a subsidiary of Envirotech. Envirotech was later joined when Bethlehem Steel counterclaimed against Envirotech and its subsidiary. Envirotech's joinder destroyed diversity jurisdiction, and Bethlehem Steel sought to dismiss Envirotech to preserve jurisdiction. The Second Circuit affirmed the district court's refusal to allow the case to proceed in the absence of the real party in interest. *Id.* at 76 n.7

Likewise, *Global Discount Travel Servs., LLC v. TWA*, 960 F. Supp. 701 (S.D.N.Y. 1997), also cited by Apple, was dismissed because the absent party, an affiliate of the named *plaintiff* that was owned in common, directly or indirectly, by Karl Ichan, was *the* entity that entered into the ticket agency contract in dispute in the case. The court found that the absent contracting party, rather than its assignee (the named plaintiff), was the party whose rights were in dispute and in whose absence complete relief could not be accorded. *Id.* at 708.

These Plaintiffs never have asserted any claim against ATTM, they have not sought to dismiss ATTM to preserve the Court's jurisdiction, and they are entitled to complete relief against Apple. If any party is guilty of "jurisdiction manipulation" here, it is *Apple*, who seeks to drag ATTM into this case against its wishes solely for Apple and ATTM to move to dismiss the action in favor of arbitration. The Court should not countenance Apple's jurisdiction manipulation.

## V.   CONCLUSION

For all the reasons stated above, Plaintiffs request the Court deny Apple's motion to dismiss.

DATED: March 16, 2012

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
RACHELE R. RICKERT

_____/s Rachele R. Rickert_____
RACHELE R. RICKERT

750 B. Street, Suite 2770
San Diego, California 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

| | |
|---|---|
| 1 | WOLF HALDENSTEIN ADLER<br>    FREEMAN & HERZ LLP |
| 2 | MARK C. RIFKIN<br>ALEXANDER H. SCHMIDT |
| 3 | MICHAEL LISKOW<br>270 Madison Avenue |
| 4 | New York, New York 10016<br>Telephone: 212/545-4600 |
| 5 | Facsimile: 212/545-4677<br>rifkin@whafh.com |
| 6 | schmidt@whafh.com<br>liskow@whafh.com |
| 7 | |
| 8 | Counsel for Plaintiffs and the Class |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | APPLE2:18737V2.OPP |
| 28 | |

PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO.  C 3:11-cv-06714 JW

- 24 -