LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
  Christopher S. Yates (Bar No. 161273)
  Sadik Huseny (Bar No. 224659)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: Dan.Wall@lw.com
Email: Chris.Yates@lw.com
Email: Sadik.Huseny@lw.com

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | CASE NO. C 11-06714-JW<br>RELATED CASE NO. C 07-05152-JW<br><br>**DEFENDANT APPLE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 11, 2012<br>Time:  9:00 AM<br>Place:  Courtroom 9, 19th Floor<br><br>The Honorable Chief Judge James Ware |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................ 2

III. PROCEDURAL AND FACTUAL HISTORY ................................................. 2

IV. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN
AN INDISPENSABLE PARTY ...................................................................... 5

    A. Legal Standard ...................................................................................... 5

    B. This Court's Prior Rulings In iPhone Cases Indicate That ATTM Is
An Indispensable Party In This Case ..................................................... 6

    C. ATTM Is A Necessary Party Under Rule 19(a)...................................... 8

        1. Apple Is Subject To A Risk Of Inconsistent Obligations .......... 8

        2. ATTM Has Interests That Would Be Impaired ......................... 8

            a. ATTM Is Necessary Because It Is A Party To Both
The WSA And The Apple-ATTM Agreements............................ 9

            b. ATTM Is Necessary Because It Is The Alleged
Monopolist In Plaintiffs' Conspiracy Claim............................ 10

    D. Joinder Of ATTM Is Feasible .............................................................. 13

    E. ATTM Is An Indispensable Party Under Rule 19(b)........................... 13

V. PLAINTIFFS' CONSPIRACY TO MONOPOLIZE CLAIM (COUNT III)
MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ................. 17

    A. Legal Standard .................................................................................... 17

    B. Without ATTM In The Picture, Plaintiffs Cannot Adequately
Allege A Conspiracy To Make ATTM A Monopolist........................ 17

    C. Plaintiffs Fail To Allege A Cognizable Aftermarket Under Newcal.................. 19

VI. CONCLUSION............................................................................................. 23

Page(s)

## CASES

*Advanced Ion Beam Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*,
  721 F. Supp. 2d 62 (D. Mass. 2010) ........................................................................................ 19

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ............................................................................................................... 3

*Black Box Corp. v. Avaya, Inc.*,
  No. 07-6161 (GEB) (JJH), 2008 U.S. Dist. LEXIS 72821,
  (D.N.J. Aug. 29, 2008) ............................................................................................................. 18

*Carter v. Variflex, Inc.*,
  101 F. Supp. 2d 1261 (C.D. Cal. 2000) ................................................................................... 19

*CDC Techs., Inc. v. Idexx Labs., Inc.*,
  7 F. Supp. 2d 119 (D. Conn. 1998) .......................................................................................... 18

*Coneff v. AT&T Corp.*,
  No. 09-35563, 2012 U.S. App. LEXIS 5520
  (9th Cir. Mar. 16, 2012) ........................................................................................................... 16

*Curry v. CTB McGraw-Hill, LLC*,
  No. C 05-04003 JW, 2006 U.S. Dist. LEXIS 5920
  (N.D. Cal. Jan. 30, 2006) ......................................................................................................... 21

*Datel Holdings Ltd. v. Microsoft Corp.*,
  712 F. Supp. 2d 974 (N.D. Cal. 2010) ..................................................................................... 22

*Digital Equip. Corp. v. Uniq Digital Techs.*,
  73 F.3d 756 (7th Cir. 1996) ...................................................................................................... 20

*Dollens v. Target Corp.*,
  No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477
  (N.D. Cal. Dec. 5, 2011) ........................................................................................................... 11

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
  504 U.S. 451 (1992) .................................................................................................................. 20

*Evans v. Sheraton Park Hotel*,
  503 F.2d 177 (D.C. Cir. 1974) ................................................................................................. 14

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*,
  224 F.R.D. 661 (W.D. Wash. 2004) ......................................................................................... 14

*First Nat'l Montana Bank of Missoula v. Federal Leasing, Inc.*,
  110 F.R.D. 675 (D. Mt. 1986) ............................................................................................ 11, 15

*Haas v. Jefferson Nat'l Bank of Miami Beach*,
  442 F.2d 394 (5th Cir. 1971) ........................................................................................ 11, 12, 15

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
    602 F.3d 237 (3d Cir. 2010) ..................................................................... 18, 19, 22

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,*
    627 F.2d 919 (9th Cir. 1980) ................................................................................... 18

*In re Apple & ATTM Antitrust Litig.,*
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................................. 4, 20

*In re Apple & ATTM Antitrust Litig.,*
    No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270
    (N.D. Cal. July 8, 2010) ..................................................................................... 3, 20

*In re Apple & ATTM Antitrust Litig.,*
    No. C 07-05152 JW, 2011 U.S. Dist. LEXIS 138539
    (N.D. Cal. Dec. 1, 2011) ................................................................................ passim

*In re Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litig.,*
    MDL No. 2116 U.S. Dist. LEXIS 43971
    (E.D. La. Mar. 29, 2012) ................................................................................ passim

*In re Apple iPhone 3G Prods. Liab. Litig.,*
    728 F. Supp. 2d 1065 (N.D. Cal. 2010) .................................................................. 6

*In re Apple iPhone 3G Prods. Liab. Litig.,*
    No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532
    (N.D. Cal. Dec. 1, 2011) ................................................................................ passim

*In re Microsoft Corp. Antitrust Litig.,*
    127 F. Supp. 2d 728 (D. Md. 2001) ................................................................. 17, 19

*In re Toyota Motor Corp.,*
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................... 11, 12, 13, 16

*In re Toyota Motor Corp.,*
    No. 8:10ML 02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360
    (C.D. Cal. Nov. 30, 2011) .............................................................................. 11, 15

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) .............................................................................. 17

*KnowledgePlex, Inc. v. Placebase, Inc.,*
    No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915
    (N.D. Cal. Dec. 17, 2008) .......................................................................... 9, 13, 16

*Laker Airways, Inc. v. British Airways, PLC,*
    182 F.3d 843 (11th Cir. 1999) ..................................................................... 11, 12, 16

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir. 1990) ................................................................................... 5

*McDonald v. Gen. Mills, Inc.,*
    387 F. Supp. 24 (E.D. Cal. 1974) .......................................................................... 11

iii

*Newcal Indus., Inc. v. IKON Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................................passim

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
   No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288
   (N.D. Cal. Jan. 25, 2007) ................................................................................................ 11

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ........................................................................................ 17

*PC Specialists, Inc. v. Micros Systems, Inc.*,
   No. 10-CV-78 JLS (WVG), 2011 U.S. Dist. LEXIS 88088
   (S.D. Cal. Aug. 9, 2011) ............................................................................................ 9, 13

*Philippines v. Pimentel*,
   553 U.S. 851 (2008) ........................................................................................................ 16

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) ........................................................................................................ 14

*Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*,
   584 F.3d 253 (6th Cir. 2009) ............................................................................................ 9

*Shell Oil Co. v. Aetna Cas. & Sur. Co.*,
   158 F.R.D. 395 (N.D. Ill. 1994) ...................................................................................... 14

*Shermoen v. United States*,
   982 F.2d 1312 (9th Cir. 1992) ................................................................................ 5, 13, 16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .......................................................................................... 22

*Sulit v. Slep-Tone Entm't*,
   No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258
   (N.D. Cal. Nov. 20, 2007) .............................................................................................. 14

*Syufy Enters. v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir. 1986) .......................................................................................... 15

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) ............................................................................................................ 11

*Verizon Communications v. Law Offices of Curtis v. Trinko, LLP*,
   540 U.S. 398 (2004) ........................................................................................................ 17

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) .......................................................................................... 17

**STATUTES**

15 U.S.C. § 2 .............................................................................................................................passim

28 U.S.C. § 1447(e) .................................................................................................................... 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# RULES

Fed. R. Civ. Proc. 12(b)(6) .................................................... 19

Fed. R. Civ. Proc. 12(b)(7) .................................................... 2, 5

Fed. R. Civ. Proc. 19(a) .................................................... passim

Fed. R. Civ. Proc. 19(b) .................................................... passim

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 11, 2012, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Courtroom 9, 19th Floor, at 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable James Ware, Defendant Apple Inc. will, and hereby does, move the Court for an order dismissing Plaintiffs' Complaint for failure to join an indispensable party and dismissing Count III of the Complaint for failure to state a claim, pursuant to Rules 12(b)(7) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers and records in the related case, *In re Apple & ATTM Antitrust Litigation*, the other documents filed in connection with this motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

## RELIEF SOUGHT

Defendant Apple Inc. seeks an order dismissing Plaintiff's Complaint for failure to join an indispensable party and dismissing Count III for failure to state a claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court has already seen this case—and held that Plaintiffs' claims are so intertwined with the AT&T Mobility LLC ("ATTM") wireless service agreement ("WSA") that Plaintiffs must arbitrate their claims in accordance with the terms of that contract. *See In re Apple & ATTM Antitrust Litigation*, No. C 07-055152 JW, 2011 U.S. Dist. LEXIS 138539, at *26 (N.D. Cal. Dec. 1, 2011).  The *same* plaintiffs' counsel brazenly filed the present action in an attempt to avoid this Court's earlier ruling.  It is nothing more than an effort to force the Court to consider—for a third time—whether arbitration is appropriate.

Plaintiffs' Complaint makes the *same* contention that Apple conspired with ATTM to make ATTM a "monopolist" in the alleged aftermarket for iPhone voice and data services. Consolidated Class Action Complaint (Complaint or Complt.) ¶¶ 97-101; *see also id.* ¶¶ 24-28. As before, the Plaintiffs make the *same* claim that iPhone purchasers did not give "contractual consent" to being "lock[ed] . . . into using ATTM as their voice and data service provider." Complt. ¶¶ 8, 11, 26, 27, 73a-c.  Plaintiffs reference lack of contractual consent throughout their Complaint; indeed, Plaintiffs explicitly tie all of their claims to contractual consent.

How do Plaintiffs contend that they can re-file the same case this Court sent to arbitration four months ago?   By, first, dropping ATTM as a named defendant—even though it is the alleged monopolist; and second, by not referring to the WSA by name—even though it is clearly the contract in which Apple failed to obtain adequate "contractual consent" to the supposed aftermarket monopoly.[1]  Neither difference allows Plaintiffs to litigate a case that the Court has ruled must be arbitrated.  Because the theory of the case remains the same, ATTM is a necessary party and arbitration is still required.

ATTM is both a necessary and an indispensible party to this action because there is only one contract governing ATTM voice and data service—the WSA, a contract written and enforced by ATTM.  Moreover, this Court and other courts have rejected similar ploys to avoid

---

[1]    The Complaint never identifies the allegedly deficient contract; that is no accident.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

arbitration through "cosmetic modifications" to complaints to avoid reference to ATTM. *In re Apple iPhone 3G Prods. Liab. Litig.*, No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *13 (N.D. Cal. Dec. 1, 2011) (hereinafter *iPhone 3G*) ; *In re Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litigation*, MDL No. 2116, 2012 U.S. Dist. LEXIS 43971, at *29 (E.D. La. Mar. 29, 2012) (hereinafter "*iPhone MMS*"). ATTM is also a necessary party under the criteria found in Federal Rule of Civil Procedure 19, *both* because it is the alleged monopolist with which Apple supposedly conspired *and* because ATTM's WSA is at the heart of Plaintiffs' case. The conclusion is undeniable: Plaintiffs' claims must be dismissed under Rule 12(b)(7) unless they join ATTM as a defendant.[2]

Moreover, Plaintiffs' Count III, for alleged conspiracy to monopolize, fails to state a claim for two separate reasons now that ATTM—the alleged monopolist—has been written out of the script. First, as a matter of law, Plaintiffs must allege that at least two co-conspirators in the supposed conspiracy to monopolize acted with the requisite specific intent. ATTM *was* the second alleged conspirator; without ATTM the conspiracy has not been adequately pled, and cannot be. Second, the WSA was the foundation of Plaintiffs' alleged aftermarket under *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038 (9th Cir. 2008) (*Newcal*). Without the WSA, Plaintiffs' Complaint fails to allege a cognizable relevant market that ATTM—which obviously has many competitors—might have monopolized.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether ATTM is a necessary party and therefore must be joined;

2. Whether ATTM is an indispensable party without which this case cannot proceed; and

3. Whether Plaintiffs' Voice and Data Aftermarket claim must be dismissed for failure to state a claim.

## III. PROCEDURAL AND FACTUAL HISTORY

In 2007, the same counsel who currently represents Plaintiffs filed a putative antitrust

---

[2] Once the question of joinder of ATTM is resolved, Apple will file a motion to compel arbitration of Plaintiffs' claims.

class action against Apple and ATTM on behalf of iPhone purchasers. Plaintiffs alleged that Apple and ATTM conspired to monopolize the so-called "aftermarket" for iPhone voice and data service. *See* Revised Consolidated Amended Class Action Complaint ("RCAC"), Dkt. 109. Plaintiffs' central allegation was that "although they were of the expectation that they would be under contract with ATTM for two years, they were unaware that Apple and ATTM had agreed, without Plaintiffs' knowledge or consent, to make ATTM the exclusive provider of voice and data services for the iPhone for five years." *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *5.

Seeking class certification, Plaintiffs argued that under *Newcal*, Apple and ATTM were liable for aftermarket monopolization unless consumers had contractually agreed to ATTM's exclusivity for the full "five-year" term of the Apple-ATTM agreement. Plaintiffs argued that "[b]ecause Plaintiffs and all other Class members signed the *same integrated two-year service contracts*, whether they *contractually agreed* to give monopoly power to Apple and ATTM in the iPhone voice and data aftermarket . . . can and should be answered the same way for everyone." Pls. Reply Mem. In Support of Class Cert., Dkt. 422 at 1, 10 (emphasis in original). Plaintiffs urged that the iPhone box and other Apple disclosures, ATTM's advertisements, and other information available to consumers were "utterly irrelevant" because the terms of the ATTM WSA were all that mattered. *Id.* at 2.

This Court accepted Plaintiffs' representations about the nature of their claims, holding that the issue "can be analyzed on a class-wide basis" in terms of "whether the purchase of an iPhone constitutes a binding contractual agreement to consume Apple-approved applications and ATTM's voice and data services in the aftermarket." *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270, at *35-36 (N.D. Cal. July 8, 2010).

ATTM and Apple moved to compel arbitration and to decertify the class after the Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). The Court granted the motion to compel arbitration and the motion to decertify. The Court agreed with Apple that "the requirements for equitable estoppel are met in this case." It held that "Plaintiffs are now estopped from contending otherwise," because "Plaintiffs themselves have contended

throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts," and because "Plaintiffs themselves have alleged that there is a 'relationship' between ATTM and Apple" of the kind that justifies estoppel under the relevant precedents. *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at \*26-28.

Four weeks after the Court issued its December 1 Order granting Defendants' motion to compel arbitration, the same counsel filed this action. The Complaint is essentially identical to the RCAC. The differences are that Plaintiffs dropped ATTM as a defendant and avoid referring to the WSA by name. But both ATTM and the WSA are everywhere in the theory of the case— which is identical to the prior action. Plaintiffs simply resort to euphemisms—alleging that class members "purchased" or "paid for" voice and data service from ATTM, rather than stating that they contracted with ATTM for such services. Plaintiffs make the same voice and data service aftermarket monopolization claim which, again, supposedly turns on the lack of "contractual consent" in ATTM's voice and data service contract. ATTM and its WSA remain at the core of this case, just as they were in *In re Apple & ATTM Antitrust Litigation*.

As before, Plaintiffs define their putative class by reference to those who "paid for voice and data service from ATTM," which for the period at issue was "the exclusive provider of cell phone voice and data services for iPhone customers . . . ." Complt. ¶¶ 1-2, 70.[3] Each named plaintiff is alleged to have "paid for ATTM voice and data service for his iPhone at ATTM's stated rates during the Class Period." Complt. ¶¶ 12-15; *id.* ¶ 25 ("Each Plaintiff also purchased wireless voice and data services from ATTM for their iPhones."). For many putative class members, both the iPhone and the voice and data service were purchased directly from ATTM. *See id.* ¶ 23 ("the iPhone was sold at both Apple's and ATTM's retail and online stores").

And, just as before, Plaintiffs' central claim in this case is that, in violation of Section 2 of the Sherman Act, "Apple . . . conspir[ed] with ATTM to monopolize the aftermarket for voice

---

[3] *Compare In re Apple & ATTM Antitrust Litigation*, 2011 U.S. Dist. LEXIS 138539, at \*4 ("In this case, Plaintiffs are purchasers of Apple iPhones and subscribers to cellular service from AT&T Mobility ('ATTM').").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and data services for iPhones." Complt. ¶¶ 8-9; *compare In re Apple & ATTM Antitrust Litigation*, 2011 U.S. Dist. LEXIS 138539, at *5. The supposed conspiracy turns on whether consumers provided "contractual consent to the five-year Exclusivity Agreement between Apple and ATTM, the effect of which was to lock consumers into using ATTM as their voice and data service provider, even if they wished to discontinue their use of ATTM service[.]" *Id.* ¶ 8.

Plaintiffs also filed a Case Management Statement that makes clear that they believe that the discovery taken in *In re Apple & ATTM Antitrust Litigation* is fully applicable here—indeed, that the case can proceed to class certification within 30 days if they are permitted to use the discovery previously obtained from ATTM and Apple. Dkt. 22 at 9. Moreover, Plaintiffs contend that the preliminary damages model from in *In re Apple & ATTM Antitrust Litigation*— which was based explicitly on terms in the ATTM WSA—can be used in this case. Dkt. 22 at 12-13. In short, it is plain that ATTM and its WSA play central roles in this case.

## IV. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

### A. Legal Standard

A complaint must be dismissed if it fails to join an indispensable party. Fed. R. Civ. Proc. 12(b)(7). The court must first assess whether a party is "necessary" under Federal Rule of Civil Procedure 19(a)—whether the court can accord "'complete relief' . . . among existing parties" or "whether the absent party has a 'legally protected interest' in the subject of the suit" that will be impaired or impeded, or that creates a risk of inconsistent obligations. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). The court must next determine (1) whether the necessary party can be joined, and, if it cannot be joined, (2) whether that party is indispensable such that in "equity and good conscience," the case must be dismissed. *Id.*; *iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *7-8. This inquiry is "'a practical one and fact specific,'" and considers prejudice to the existing and absent parties. *Shermoen*, 982 F.2d at 1317 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)); *see also* Fed. R. Civ. Proc. 19(b).

### B.   This Court's Prior Rulings In iPhone Cases Indicate That ATTM Is An Indispensable Party In This Case

The question of whether ATTM is an indispensable party turns on the extent to which claims raised against Apple are "intertwined" with or "inextricably tied" to claims implicating ATTM. This Court recently applied this analysis in a separate case relating to iPhones and ATTM voice and data service, *iPhone 3G*, 728 F. Supp. 2d 1065, 1076 (N.D. Cal. 2010). The Court dismissed the claims against Defendant ATTM as preempted by federal law. It then held that the claims against Apple were likewise preempted because "the claims alleged against Defendant Apple are inextricably tied to the claims alleged against Defendant ATTM." *Id.* The Court further held that "this case cannot proceed against Defendant Apple alone because Defendant ATTM is an indispensable party." *Id.* The Court "could not proceed without ATTM in 'equity and good conscience' because any adjudication of claims as to Defendant Apple would necessarily require a determination of the sufficiency of ATTM's 3G network infrastructure," an issue central to claims assertable against ATTM under federal law. *Id.* In a subsequent order, this Court made clear that the analysis of the intertwined nature of the claims against Apple and ATTM also supported its finding that ATTM was an indispensable party. *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *10-11.

A similar issue was addressed in *iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *4-5, which concerned a claim that "Apple 'never disclosed to consumers that they had to pay for picture messaging under the unlimited plans for their exclusive provider, AT&T, even though they would not have that service." The *iPhone MMS* court held that the analysis of AT&T's indispensability and that of whether the claims were "intertwined" with the WSA "overlap considerably, if not entirely," and that ATTM was a necessary party under Rule 19. 2012 U.S. Dist. LEXIS 43971, at *8, 10-11 (the court went on to find that joinder was "inefficient" because plaintiffs had to arbitrate their claims against non-signatory Apple, due to equitable estoppel).

The common denominator between this Court's analysis in *iPhone 3G* and the Eastern District of Louisiana's in *iPhone MMS* is that artful deletions of references to ATTM do not work to avoid arbitration when plaintiffs' claims against Apple are intertwined with ATTM's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

conduct. *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *13 ("Plaintiffs have simply deleted references to ATTM that appeared in their previous Complaint without altering the gravamen of their allegations. These cosmetic modifications to the Complaint are unavailing"); *iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *29 ("Despite this new packaging, Plaintiffs' claims are substantively no different from the claims described in 2010. Removing explicit references to AT&T's contract obligations and allusions to interdependent and concerted misconduct does not make the claims against Apple any less intertwined with the claims against AT&T.").

This Court has already done the work with regard to whether the claims at issue here against Apple are intertwined with ATTM and the WSA. In the earlier version of this case, *In re Apple & ATTM Antitrust Litigation*, this Court held that the RCAC's claims against Apple are "intertwined" with the ATTM WSA: "as to the 'intertwining' of claims, Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple arise from their respective ATTM service contracts." *In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *26 (finding that Apple may invoke equitable estoppel to compel Plaintiffs to arbitrate against Apple as well, pursuant to the ATTM service agreement). This Court noted that Plaintiffs sought class certification on the grounds that common issues exist because "'Plaintiffs and all other Class members signed the *same integrated two-year service contracts*,' which means that 'whether they *contractually agreed* to give monopoly power to Apple and ATTM in the iPhone voice and data aftermarket . . . can and should be answered the same way for everyone.'" *Id.* at 27 n.22 (emphasis Plaintiffs').

As in *In re Apple & ATTM Antitrust Litigation*, Plaintiffs' claims here are explicitly tied to whether consumers gave "contractual consent" to being "unable to switch" from ATTM to another carrier. Complt. ¶ 73; *id.* ¶¶ 8, 26, 27, 83, 97. And, Plaintiffs continue to challenge aspects of ATTM's provision of wireless services by including allegations concerning "locking," "early termination," and "excessive international roaming charges." Complt. ¶¶ 7, 33, 40-41, 58, 68. Plaintiffs' "cosmetic modifications" to the Complaint by eliminating direct references to the ATTM WSA do not change the fact that Plaintiffs' claims are intertwined with ATTM and its WSA. Because the ATTM WSA is implicated in this dispute and cannot be "reasonably

7

separate[d]," ATTM is indispensable and this case cannot proceed against Apple alone.  *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *10-11; *iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *10-11.

### C. ATTM Is A Necessary Party Under Rule 19(a)

#### 1. Apple Is Subject To A Risk Of Inconsistent Obligations

A person must be joined in litigation if he has "an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to substantial risk of incurring . . . inconsistent obligations because of the interest." Fed. R. Civ. Proc. 19(a)(1)(B)(ii).  The absence of ATTM from this litigation would expose Apple to a substantial risk of inconsistent obligations.

About six months before the iPhone was first released, Apple and ATTM announced an agreement that, among other things, designated ATTM as the exclusive provider of voice and data service for the iPhone.  *See* Complt. ¶¶ 52-62. █████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████  That determination would take place in arbitrations, of course, but that is required by *Concepcion* and this Court's prior ruling.

#### 2. ATTM Has Interests That Would Be Impaired

Rule 19(a) also requires the joinder of a party who has an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.  Fed. R. Civ. Proc. 19(a)(1)(B)(i).  ATTM has multiple interests relating to this action which would be impaired by litigating this case in its absence.  *See* Declaration of Shari Ross Lahlou (hereinafter "Lahlou Decl.") ¶ 2 (declaring ATTM's interest in this litigation).

### a. ATTM Is Necessary Because It Is A Party To Both The WSA And The Apple-ATTM Agreements

Parties to a contract, like ATTM, have an interest protected by Rule 19(a) where the litigation would require interpretation of a contract to which they are a party. *iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *10 ("Where interpretation of a contract is at issue, the parties to the contract are necessary parties."); *see also KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915, at *12-15 (N.D. Cal. Dec. 17, 2008) (holding absentee Vinq necessary because "Vinq is a party to both the [contracts] that form the basis of Plaintiff's claims, and any interpretation of those agreements as a practical matter may impair Vinq's rights or obligations"); *PC Specialists, Inc. v. Micros Systems, Inc.*, No. 10-CV-78 JLS (WVG), 2011 U.S. Dist. LEXIS 88088, at *8-9 (S.D. Cal. Aug. 9, 2011); *Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation.").

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is impossible to deny that this case will have dramatic impact on ATTM's contracts with its millions of customers, because Plaintiffs have asked this court to adjudicate the legality of the WSA—a contract signed by every one of ATTM's customers—under the antitrust laws.

First, Plaintiffs complain that they did not give "contractual consent" to being "unable to switch to a competing voice and data service provider . . . ." Complt. ¶ 73; *id.* ¶¶ 2, 8, 26, 27, 83, 97. Plaintiffs claim that "ATTM offered iPhone purchasers industry standard monthly voice and data service that could be terminated at any time prior to two years for a fee . . . ." *Id.* ¶ 54. Plaintiffs' complaint is that the WSA should have, but did not, disclose the true length of the commitment. *Id.* ¶¶ 2, 8, 26, 27, 54, 73, 83, 97. Yet the WSA was not Apple's contract. Apple did not draft or enforce the terms of that contract. It was ATTM's contract, and ATTM is responsible for its contents. All Apple could do was make candid public disclosures about its exclusive agreement with ATTM, and Apple did so. *See infra* at 22-24.

Second, Plaintiffs complain that "ATTM . . . charged iPhone consumers a fee for terminating their voice and data service within the first two years" which "was not justifiable" and that the "benefits of the termination fee were also illusory . . . ." *Id.* ¶ 58. The early cancellation fee and the conditions under which such a fee will even be charged are governed by the WSA. *See* iPhone Terms and Conditions, *In re Apple & ATTM Antitrust Litigation,* Dkt. 123-4 at 10 ("The fee will begin at $175 per device and decrease by $5 each month for the term of the agreement."); *id.* (detailing conditions under which early termination fee will be waived). Again, ATTM is responsible for these terms and conditions in the WSA.

Third, Plaintiffs take issue with "ATTM's excessive international roaming charges . . . ." Complt. ¶ 68. They assert that "a consumer using an American GSM cell phone abroad must pay both for the American service and for 'roaming charges' . . . . Roaming charges are typically very high, often a dollar or more a minute." *Id.* ¶ 42. Plaintiffs describe in detail what they characterize as ATTM and other carriers' "effort to minimize consumers' ability to . . . avoid roaming charges" and allege that "ATTM refuses to provide the unlock code for iPhones for international travel . . . ." *Id.* ¶¶ 43, 45. "The availability of SIM card unlocking solutions . . . enabled iPhone customers to avoid ATTM's excessive international roaming charges . . . ." *Id.* ¶ 68. International roaming charges are subject to the terms and conditions of the WSA. iPhone Terms and Conditions, *In re Apple & ATTM Antitrust Litigation,* Dkt. 123-4 at 11.

Plaintiffs' claims cannot be resolved without interpreting, construing, and making factual findings about ATTM's WSA. ███████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████ As a result, ATTM is a necessary party which must be joined if feasible. *See iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *10-11 ("Plaintiffs' claims require interpretation of AT&T's WSA. Accordingly, AT&T is a necessary party under Rule 19(a).").

> b. **ATTM Is Necessary Because It Is The Alleged Monopolist In Plaintiffs' Conspiracy Claim**

ATTM indisputably has an interest in this litigation because Plaintiffs claim that *ATTM is the alleged unlawful monopolist* in the charged "conspiracy to monopolize" the so-called iPhone

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

voice and data aftermarket. Rule 19 and cases applying it are clear that, for a "conspiracy to monopolize" claim under Section 2, the alleged monopolist itself must be joined. While there is no generic requirement to join *all* joint tortfeasors or Section 1 co-conspirators as defendants, *see Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990), in a *Section 2* claim the alleged *monopolist* is more than an ordinary joint tortfeasor. It is, by necessity, "an active participant in the allegations . . . critical to the disposition of the important issues in the litigation," so its interests in participating are recognized and protected under Rule 19(a). *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir. 1999) (citing *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971)).

The *Haas* case, followed by courts in this Circuit, holds that an absent party is necessary under Rule 19(a) where "the absent party is more than a key witness, but also an active participant in the allegations that are critical to the disposition of the litigation." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 905-06 (C.D. Cal. 2011) (citing *Haas*); *see also Toyota*, No. 8:10ML 02151 JVS (FMOx), 2011 U.S. Dist. LEXIS 151360, at *149, 153 (C.D. Cal. Nov. 30, 2011) (same); *First Nat'l Montana Bank of Missoula v. Federal Leasing, Inc.*, 110 F.R.D. 675, 678 (D. Mt. 1986) ("As an 'active participant' in the matters at issue, Amperif meets the criteria in Rule 19(a)(2) as a party to be joined if feasible.") (citing *Haas*); *McDonald v. Gen. Mills, Inc.*, 387 F. Supp. 24, 38 (E.D. Cal. 1974) ("As noted in the case of *Haas v. Jefferson National Bank*, 442 F.2d 394 (5th Cir. 1971), a party is considered indispensable when it is more than a key witness, but is an active participant in the alleged cause of action."); *cf. Dollens v. Target Corp.*, No. C-11-03265 RMW, 2011 U.S. Dist. LEXIS 139477, at *3-4 (N.D. Cal. Dec. 5, 2011) (allowing joinder under 28 U.S.C. § 1447(e), by way of a Rule 19(a) analysis, where it was alleged that Ms. Moya "is a joint tortfeasor who was an active participant in the allegations that are critical to the disposition of the important issues of the case").[4] In a claim for conspiracy to

---

[4] Apple notes that the *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288, *7-8 (N.D. Cal. Jan. 25, 2007), court stated in response to defendants' reliance on the *Haas* "active participant" exception, that "[t]here is no such exception in the Ninth Circuit." The *Oculus* court reached that conclusion without support or citation to any other authority.

1  monopolize, the alleged monopolist is, by definition, an "active participant in the alleged cause
2  of action"—if not the star of the show.

3         The *Laker Airways, Inc. v. British Airways* case is instructive.  Laker alleged that British
4  Airways conspired with nonparty ACL to monopolize air service between Miami and London.
5  182 F.3d at 845.  In its Rule 19(a) analysis, the court noted that ACL's interests "are more
6  significant than those of a routine joint tortfeasor."  *Id.* at 847-48.  "In order to prove its antitrust
7  claims, Laker would be required to show that ACL acted in other than an independent manner.
8  Such a ruling would surely implicate the interests of ACL," whose appointment as landing and
9  take-off slot coordinator requires neutral behavior.  *Id.* at 848.  Citing to *Haas*, the *Laker Airways*
10 court noted that "a joint tortfeasor will be considered a necessary party when the absent party
11 emerges as an active participant in the allegations made in the complaint that are critical to the
12 disposition of the important issues in the litigation."  *Id.*  (finding that "ACL would certainly be
13 considered an active participant in the allegations").

14        Here, Plaintiffs' allegation of a "conspiracy to monopolize the iPhone Voice and Data
15 Services Aftermarket in Violation of Section 2 of the Sherman Act," *see* Complt. ¶¶ 96-101,
16 leaves no doubt that ATTM was allegedly an "active participant in the allegations that are critical
17 to the disposition of the litigation."  *See Toyota*, 785 F. Supp. 2d at 906.  Plaintiffs claim, among
18 other things, that:

19        • ATTM "entered into a secret five-year contract" with Apple to further the alleged
20          conspiracy to make ATTM a monopolist, Complt. ¶ 2;

21        • ATTM improperly withheld "unlock codes" from iPhone users despite "ATTM
22          routinely provid[ing] such unlock codes for other types of cell phones," *id.* ¶ 8;

23        • ATTM charged an "early termination fee [that] was not justifiable," *id.* ¶ 58;

24        • ATTM's alleged monopoly allowed it to charge allegedly "excessive international
25          roaming charges," *id.* ¶ 68; and

26        • ATTM "forced [customers] to pay supracompetitive prices for iPhone voice and
27          data services."  *Id.* ¶ 100.

28 ATTM is the supposed *monopolist* of the alleged voice and data aftermarket.  As a result,

12

1  ATTM naturally has an interest in the resolution of these and other issues. *See* Lahlou Decl. ¶ 2.

2  Resolving them in ATTM's absence would impair ATTM's ability to protect its interests, for

3  example in any current or future related arbitration or litigation. *See Toyota*, 785 F. Supp. 2d at

4  906-07 ("A judgment entered against the named Toyota Defendants might have a preclusive

5  effect on the unnamed foreign entities and weaken their bargaining position and/or impair their

6  ability to protect their own interests in any current and future litigation."). Therefore, ATTM is a

7  necessary party which is required to be joined if feasible. *See* Fed. R. Civ. Proc. 19(a).

8  **D.  Joinder Of ATTM Is Feasible**

9  Joinder of ATTM is clearly feasible because the putative class already named ATTM as

10  a defendant in the earlier, substantively identical complaint in *In re Apple & ATTM Antitrust*

11  *Litigation*. *See iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *16 (holding that "joinder of

12  ATTM is feasible" because "ATTM was named as a Defendant in each iteration of the

13  Complaint prior to the current one"). Therefore, this Court should not even reach the Rule 19(b)

14  analysis. *See PC Specialists*, 2011 U.S. Dist. LEXIS 88088, at *10 ("Because [necessary party]

15  TIG Global can be joined in the present case, the Court need not determine if TIG Global is an

16  indispensable party."); *accord iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *16-17;

17  *KnowledgePlex*, 2008 U.S. Dist. LEXIS 103915, at *13-15. Nevertheless, for the sake of

18  completeness we include below a discussion of the Rule 19(b) factors, showing that ATTM is

19  also an "indispensable party" under 19(b).

20  **E.  ATTM Is An Indispensable Party Under Rule 19(b)**

21  Since it is a necessary party, if ATTM cannot be joined or Plaintiffs refuse to join ATTM,

22  the Court must consider whether, in equity and good conscience, the case must be dismissed.

23  *Shermoen*, 982 F.2d at 1317. The Court may consider (1) the extent to which a judgment

24  rendered in the person's absence might prejudice that person or the existing parties; (2) the

25  extent to which any prejudice could be lessened or avoided by protective provisions in the

26  judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's

27  absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the

28  action were dismissed for nonjoinder. *Id.* at 1318-19; Fed. R. Civ. Proc. 19(b). There are

13

multiple bases upon which to find that the Rule 19(b) factors require a finding of indispensability, as ATTM is implicated in the injunctive relief sought, is a contracting party, and is the alleged monopolist at the center of this case.

First, Plaintiffs seek an order "[p]ermanently enjoining Apple from selling locked iPhones that can only be used with ATTM SIM cards unless such information is adequately disclosed to consumers prior to sale[.]" Complt. at 22. ATTM is alleged to sell iPhones (*see* Complt. ¶ 23 (iPhone is "sold at both Apple's and ATTM's retail and online stores")), so any injunction would need to prevent ATTM from selling locked iPhones in order to be effective. *See Evans v. Sheraton Park Hotel*, 503 F.2d 177, 181 (D.C. Cir. 1974) (affirming joinder of third party where the injunctive relief awardable in its absence would be "rather ineffective"); *iPhone 3G*, 728 F. Supp. 2d at 1076 (holding ATTM indispensable where " much of the remedy sought by Plaintiffs would require participation by ATTM").[5]

Second, "[a]s a general rule, courts construing contracts require that parties to the contract be joined to litigation that may impair their rights under that contract." *Sulit v. Slep-Tone Entm't*, No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258, at *6 (N.D. Cal. Nov. 20, 2007). Indeed, as another court of this circuit put it, "a contracting party is a paradigm of an indispensable party." *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 666 (W.D. Wash. 2004). Here, a judgment rendered in ATTM's absence would prejudice ATTM, because it "will have lost the opportunity to present [its] arguments regarding the interpretation of [its contracts] at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated." *See Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 401 (N.D. Ill. 1994); *accord Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) (concluding that a court's decision may still impair the

---

[5]     Indeed, ATTM's participation would be required even to determine who is an ATTM voice and data service customer. ███████████████████████████████████████████

14

rights of an absent party, even if it is not binding on that party).

The discussion at pages 9-10, above, shows that the Court cannot resolve the merits of this case without interpreting the WSA. *See also* Lahlou Decl. ¶ 2. Additionally, despite what they may say in opposing this motion, Plaintiffs have revealed that they intend to rely on the WSA in seeking class certification. Their prior class certification case was built entirely on the WSA. *See In re Apple & ATTM Antitrust Litig.*, 2011 U.S. Dist. LEXIS 138539, at *27-27 & n.22. And in the recently filed Joint Case Management Statement, Plaintiffs represented that if they are allowed to use the class certification discovery from that case, they would need no additional certification discovery and would move for certification within 30 days. Dkt. 22 at 9.

There is also substantial prejudice to ATTM from litigation in its absence over the "conspiracy to monopolize" claim. The prejudice analysis under 19(b) essentially mirrors the analysis of impairment of interest under 19(a)(1)(B)(i). *See Haas*, 442 F.2d at 398-99 ("In our view, the first factor [of 19(b)] tracks the considerations of 19(a)" and "supplies weighty reason for a finding of indispensability"); *Toyota*, 2011 U.S. Dist. LEXIS 151360, at *163 ("a finding of prejudice under Rule 19(b) suggests that proceeding without [the absent parties] would be against equity and good conscience"); *First Nat'l Montana Bank of Missoula*, 110 F.R.D. at 678 ("Many of the factors outlined in 19(b) overlap with considerations analyzed under 19(a).").

ATTM would be prejudiced if the antitrust allegations in this case were judicially resolved in ATTM's absence, because Plaintiffs will have to prove ATTM's specific intent to monopolize. *See* Lahlou Decl. ¶ 2; *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1001 (9th Cir. 1986). Plaintiffs allege in conclusory fashion that "Apple knowingly and intentionally conspired with ATTM" to create a monopoly in ATTM. Complt. ¶ 97. But proof of just one alleged co-conspirator's intent is insufficient. *Syufy*, 793 F.2d at 1001 ("we know of no authority that a Section 2 conspiracy may be established without some showing that *more than one of the alleged co-conspirators* had at least some awareness that the underlying conduct was anticompetitive or monopolistic.") (emphasis added). Plaintiffs must thus show that both Apple *and* ATTM had such actual awareness that the alleged conduct at issue was anticompetitive or monopolistic. Apple, in turn, could prevail by showing that *ATTM*, but *not Apple*, had the

15

1  requisite intent.  *See Toyota*, 785 F. Supp. 2d at 908 (noting that, "[d]espite the obvious

2  community of interest" between defendants and absent parties, "those interests may diverge at

3  trial," for example if defendants "attempt to show that the absent entities are responsible for the

4  alleged defective design").

5         Plaintiffs further allege that ATTM "unlawfully achieved . . . market power" and

6  "harmed competition."  Complt. ¶¶ 98-99.  This would prejudice not only ATTM's litigation

7  interests but also its business reputation.  *See* Lahlou Decl. ¶ 2; *Toyota*, 785 F. Supp. 2d at 908

8  (nonbinding judgment on product safety "speaks directly and adversely to the quality of the

9  unnamed entities' products"); *KnowledgePlex*, 2008 U.S. Dist. LEXIS 103915, at *14

10  (nonbinding judgment "might well affect Vinq's rights and business reputation"); *Laker Airways*,

11  182 F.3d at 849 (finding ACL indispensable given the substantial prejudice "that would inure to

12  ACL as a nonjoined party if a court were to determine that ACL acted improperly").  Since

13  ATTM is implicated in the injunctive relief sought, is the party which contracted with Plaintiffs

14  for iPhone voice and data services, and is the alleged monopolist in this case, ATTM would be

15  prejudiced by a resolution of Plaintiffs' claims in its absence.[6]

16

17

18

19  _____

[6]    The other Rule 19(b) considerations likewise support a finding of indispensability.  The
20     prejudice to ATTM may not be lessened through limitations on relief, because it flows in
       large part from the inevitable interpretation of ATTM's contracts and determination of the
21     lawfulness or propriety of ATTM's alleged conduct.  Once those determinations have been
       made in ATTM's absence, the damage will have been done.  In addition, rendering judgment
22     in ATTM's absence would not be adequate because claims against ATTM would remain
       outstanding.  *See Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) ("whether a judgment
23     rendered without the absent party would be adequate" refers to "the public stake in settling
       disputes by wholes, whenever possible").  Finally, Plaintiffs have an adequate remedy if this
24     action is dismissed for nonjoinder, because they may arbitrate their claims against both Apple
       and ATTM.  This Court, as well as the Supreme Court, has already ruled that the arbitral
25     forum is adequate for resolution of these claims.  *See In re Apple & ATTM Antitrust
       Litigation*, 2011 U.S. Dist. LEXIS 138539, at *17-18, 30 (granting ATTM's and Apple's
26     motions to compel arbitration).  The Ninth Circuit agrees.  *Coneff v. AT&T Corp.*, No. 09-
       35563, 2012 U.S. App. LEXIS 5520, at *6-7 (9th Cir. Mar. 16, 2012).  Unless ATTM is
27     joined, equity and good conscience require this case to be dismissed.  *See Shermoen*, 982
       F.2d at 1317.

28

16

## V. PLAINTIFFS' CONSPIRACY TO MONOPOLIZE CLAIM (COUNT III) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

"[F]or the purpose of adequate pleading in antitrust cases, the [Supreme] Court specifically abrogated the usual 'notice pleading' rule, . . . which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . ." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008), *citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Moreover, "claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009).

There are four elements to a conspiracy to monopolize claim: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). A plaintiff must also plead—and ultimately prove—monopoly power in a relevant market and anticompetitive conduct. *Verizon Communications v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004).

### B. Without ATTM In The Picture, Plaintiffs Cannot Adequately Allege A Conspiracy To Make ATTM A Monopolist

A necessary element of any claim for conspiracy to monopolize under Section 2 is "specific intent" to make someone a monopolist. *Paladin*, 328 F.3d at 1158. Specific intent "signifies something more than willing, voluntary, and knowing participation in the illegal course of conduct that [the co-conspirator] is alleged to have pursued. It means participating in that course of conduct for the specific, shared purpose" of creating or maintaining the alleged monopoly. *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 728, 731 (D. Md. 2001). In addition, since no one conspires alone, Plaintiffs must plead that more than one person had this specific intent to monopolize. *Syufy*, 793 F.2d at 1001 ("we know of no authority that a Section 2 conspiracy may be established without some showing that more than one of the alleged co-conspirators had at least some awareness that the underlying conduct was anticompetitive or

17

monopolistic."); *CDC Techs., Inc. v. Idexx Labs., Inc.*, 7 F. Supp. 2d 119, 131 (D. Conn. 1998) ("If one party's intent to monopolize is not shared by another party, there can be no conspiracy to monopolize."); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010) (affirming dismissal of conspiracy claim against Dentsply and its dealers because "Plaintiffs did not sufficiently allege the element of specific intent on the part of the Dealers"); *Black Box Corp. v. Avaya, Inc.*, No. 07-6161 (GEB) (JJH), 2008 U.S. Dist. LEXIS 72821, at *40 (D.N.J. Aug. 29, 2008) ("Black Box does not make the required allegation that the co-conspirators *shared* a specific intent to monopolize") (emphasis added); *compare Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 927 (9th Cir. 1980) (finding allegations adequate where both co-conspirators were alleged to have "conspired to monopolize with the requisite specific intent").

Plaintiffs killed their conspiracy to monopolize theory by dropping ATTM from the case. With only Apple as a defendant and with ATTM reduced to some kind of bystander, Plaintiffs fail to allege that two or more persons had the required specific intent to create a monopoly. There are only two members to the alleged conspiracy, Apple and ATTM. Plaintiffs must therefore allege specific intent with regard to *both*. ATTM is the one who gets the monopoly under Plaintiffs' theory, not Apple (which does not even participate in the alleged relevant market). So Plaintiffs need to plead that (a) ATTM intended to create a monopoly, and (b) Apple—for some plausible reason—shared that purpose. They did not; the Complaint contains no allegation of ATTM's intent.

The only intent allegation in the Complaint is that "Apple knowingly and intentionally conspired with ATTM with the specific intent to monopolize the iPhone Voice and data Services Aftermarket." Complt. ¶ 97. That is an allegation about Apple's state of mind, not ATTM's. There are no allegations of ATTM's specific intent to monopolize. Without them, Count III must be dismissed for failure to state a Section 2 conspiracy to monopolize claim.

Even the allegations of *Apple's* intent are bare conclusions rather than evidentiary facts. In the post-*Twombly* era, this is clearly not allowed. "[A] plaintiff's factual allegations must be specific enough to justify dragging a defendant past the pleading threshold. The price of entry,

even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *Microsoft*, 127 F. Supp. 2d at 730-31 (emphasis in original) (rejecting plaintiffs' argument that the specific intent element of their conspiracy claims cannot be challenged until summary judgment); *Dentsply*, 602 F.3d at 255 ("Plaintiffs point us to their allegations that defendants 'have acted with the specific intent to unlawfully maintain a monopoly' [and] that 'the intended effect of the exclusive dealing arrangement has been the elimination of any and all competition.' . . . At bottom, the Plaintiffs' allegations of specific intent rest not on facts but on conclusory statements strung together with antitrust jargon. It is axiomatic of antitrust law, however, that merely saying so does not make it so for pleading-sufficiency purposes."); *Advanced Ion Beam Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*, 721 F. Supp. 2d 62, 83 (D. Mass. 2010) (plaintiff "failed to state a claim for conspiracy to monopolize because it had not alleged any facts, as opposed to conclusory statements, indicating that the inventors and Varian entered into any agreement with the specific intent to monopolize the market"). Plaintiffs fail to state a Section 2 conspiracy claim for this reason as well.

## C.   Plaintiffs Fail To Allege A Cognizable Aftermarket Under *Newcal*

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal*, 513 F.3d at 1044; *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1268 (C.D. Cal. 2000) (Section 2 conspiracy to monopolize requires allegation of "the relevant market that the defendants intend to monopolize"). A "complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Newcal*, 513 F.3d at 1045. The relevant market "must be a *product* market," meaning that it must "encompass the product at issue as well as all economic substitutes for the product." *Id.* (emphasis in original). Here, where ATTM is the alleged monopolist, that means ATTM voice and data services "as well as all economic substitutes for" it. Under a standard market definition analysis, that would include other cellular carriers such as Verizon, Sprint, and T-Mobile. Indeed, ATTM just had its proposed merger

19

with T-Mobile blocked by federal antitrust authorities because of the effects it would have had in the market for "mobile wireless telecommunications services."  *See* Complaint, *United States v. AT&T Inc., T-Mobile USA, Inc. and Deutsche Telekom AG, available at http://www.justice.gov/atr/cases/atttmobile.htm.*

Plaintiffs' theory is based on an exception to the normal market definition rules, addressed in *Newcal*, concerning "aftermarkets" defined in reference to a contractually created group of consumers.  The merits of this theory were debated intensely in the prior litigation, and over Apple's objection the Court found that Plaintiffs may or may not have a viable theory depending on "whether the purchase of an iPhone constitutes a binding contractual agreement to consume . . . ATTM's voice and data services in the aftermarket."  *In re Apple & ATTM Antitrust Litig.*, 2010 U.S. Dist. LEXIS 98270, at *35-36; *see also In re Apple & ATTM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1303-04 (N.D. Cal. 2008) (order denying Apple's motion to dismiss).

It remains Apple's position that this theory of contractually created market power is unsound and contrary to *Newcal*.  *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 481 (1992) ("*Kodak*"), and its many progeny including *Newcal*, generally hold that competition in the primary market (here mobile wireless telecommunications services) will *ordinarily* discipline how sellers treat their installed base of customers, *unless* the aftermarket has somehow become disconnected from the primary market.[7]  *Newcal* builds on this, and uses contracts to *exclude the possibility* of a relevant "aftermarket."  It holds that if consumers accept aftermarket monopoly explicitly, by contract, a claim of aftermarket monopolization cannot lie, because clearly the primary market and aftermarket were connected.  *Newcal,* 513 F.3d at 1047-48.  It does not permit the negative inference that Plaintiffs urged on this Court:  that if a contract does *not* contain knowing consent to aftermarket monopolization, then the aftermarket necessarily is a relevant antitrust market.

---

[7]  *Kodak,* 504 U.S. at 477 n.24; *Newcal*, 513 F.3d at 1048-49; *Digital Equip. Corp. v. Uniq Digital Techs.,* 73 F.3d 756, 763 (7th Cir. 1996).

1    Regardless, to be true to this Court's past Orders—that Plaintiffs' counsel urged the

2  Court to adopt—Plaintiffs *must rely* on the ATTM WSA's early termination provision and its

3  other terms to supposedly rebut the presumption that an ATTM customer knowingly accepts an

4  aftermarket monopoly.  *Newcal*, 513 F.3d at 1050 (plaintiffs stated a claim because "Newcal

5  offers factual allegations to rebut the economic presumption that IKON consumers make a

6  knowing choice to restrict their aftermarket options when they decide in the initial (competitive)

7  market to enter an IKON contract. Competition in the initial market, therefore, does not

8  necessarily suffice to discipline anticompetitive practices in the aftermarket.")  Yet, in their

9  effort to avoid the joinder of ATTM and arbitration, Plaintiffs have disavowed the WSA as a

10  basis for their aftermarket claims.  As Plaintiffs said in opposing Apple's motion to dismiss the

11  *Pepper* Complaint, "ATTM's contract is not part of this case."  Plaintiffs also asserted that the

12  "antitrust claims do not depend at all upon ATTM's service contract."  They even claimed that

13  "ATTM's service agreement has nothing whatsoever to do with Plaintiffs' aftermarket

14  monopolization claims."  Dkt. 23 at 15.  Put simply, without the WSA there can be no ATTM

15  "voice and data services aftermarket" because Plaintiffs cannot rebut the economic presumption

16  that iPhone consumers made a knowing choice to restrict their aftermarket service options when

17  they decided to purchase an iPhone.

18    Moreover, it is apparent from the face of the Complaint (and reaffirmed by judicially

19  noticeable facts) that iPhone consumers knowingly took on a "de facto commitment to consume

20  only" ATTM wireless service with their iPhone.  *See Newcal*, 513 F.3d at 1048.  Plaintiffs

21  themselves allege that in January 2007, six months *before* the iPhone was first sold, "Apple

22  announced that it had entered into an exclusive agreement making ATTM the only authorized

23  provider of wireless voice and data services for iPhone in the United States."  Complt. ¶ 52.  In

24  addition, a 2007 article quoted by Plaintiffs in their Complaint (¶ 37), and therefore incorporated

25  by reference,[8] states that "Apple . . . gave AT&T exclusive rights to be the iPhone's U.S.

---

[8]    *Curry v. CTB McGraw-Hill, LLC*, No. C 05-04003 JW, 2006 U.S. Dist. LEXIS 5920, *10 &
n.1 (N.D. Cal. Jan. 30, 2006) (Ware, J.) ("On a [12(b)(6)] motion to dismiss, the Court may
take judicial notice of these plans because they are documents whose contents are alleged in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

network for an undisclosed period of years. It has locked and relocked the phone to make sure consumers can't override that restriction." Apple Request for Judicial Notice, *In re Apple & ATTM Antitrust Litigation* (hereinafter "RJN"), Dkt. 123-7 at 3. This decimates Plaintiffs' claim that they did not knowingly confer monopoly power on ATTM—*i.e.*, their claim that they were entitled to assume that they could immediately switch to a carrier of their choice to service their iPhone upon paying $175 (or any amount). *See* Complt. ¶¶ 83, 97. Plaintiffs have pleaded themselves out of court. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) ("a plaintiff can—as Sprewell has done here—plead himself out of a claim by including unnecessary details contrary to his claims."); *Dentsply*, 602 F.3d at 256 ("While pleading in the alternative is, of course, authorized by the Federal Rules of Civil Procedure, we have an obligation to read allegations not in isolation but as a whole and in context.").

The Court can take judicial notice of the other information available to consumers at the time of purchase (and already before the Court in the related case of *In re Apple & ATTM Antitrust Litigation*). All of that information demonstrates that Plaintiffs' conclusory allegations are insufficient, especially given their contention that the ATTM WSA has no bearing on their aftermarket claims. For instance, the label on the original iPhone box, which discloses terms and conditions of the iPhone purchase, states as follows: "Requirements: Minimum new two-year wireless service plan with AT&T required to activate all iPhone features . . . . Service plan with AT&T required for cellular network capabilities on expiration of initial new two-year agreement. Wireless service is solely provided by and is the responsibility of AT&T." RJN, Dkt. 123-2. Consumers who purchased an iPhone, and activated rather than returned it, are deemed to have accepted those terms, including the AT&T exclusivity. *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 989 (N.D. Cal. 2010).

Additional information released to the market conclusively establishes that consumers could, "at the time of purchase, reasonably discover" that purchasing an iPhone meant having to

---

a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.").

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

use the iPhone's then exclusive service provider, ATTM. *See Newcal*, 513 F.3d at 1048. Pre-release, Apple announced that "Cingular, the largest wireless carrier in the US, will be Apple's exclusive US carrier partner for Apple's revolutionary iPhone unveiled today. As part of this multi-year partnership . . . ." RJN, Dkt. 123-9. As the plaintiffs in the related *In re Apple & ATTM Antitrust Litigation* stipulated, Apple also disclosed that iPhones would not be unlocked: "Can I 'unlock' my iPhone for use with another wireless provider? No, AT&T is the exclusive wireless provider for the iPhone in the United State[s]." 01/21/2010 Rickert Declaration, Ex. E, *In re Apple & ATTM Antitrust Litigation*.

In short, by disclaiming reliance on the WSA, Plaintiffs cannot rebut *Newcal's* presumption that ATTM customers knowingly accepted the supposed ATTM aftermarket monopoly.

## VI.    CONCLUSION

ATTM is a necessary party to claims involving the WSA it wrote and to which it, but not Apple, is a party. Moreover, since ATTM is the alleged monopolist of the voice and data aftermarket at issue, it must be joined. As a result, the Court should dismiss this action under Rule 19 of the Federal Rules of Civil Procedure unless ATTM is joined as a party. In addition, whether or not ATTM is joined, the claim for conspiracy to monopolize must be dismissed because it fails to state a claim for two independent reasons: (1) because ATTM's supposed specific intent to monopolize is not alleged and because there are no evidentiary facts supporting the conclusory assertion that Apple has such a specific intent; and (2) because, having disclaimed reliance on the ATTM WSA, Plaintiffs fail to plead a relevant product market limited to ATTM's voice and data service.

Dated:  April 16, 2012                                  Respectfully submitted,

LATHAM & WATKINS LLP

By      /s/ Christopher S. Yates
Christopher S. Yates
Attorneys for Defendant APPLE INC.

SF\906247