LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
  Christopher S. Yates (Bar No. 161273)
  Sadik Huseny (Bar No. 224659)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email:   Dan.Wall@lw.com
Email:   Chris.Yates@lw.com
Email:   Sadik.Huseny@lw.com

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | CASE NO. C 11-06714-JW<br>RELATED CASE NO. C 07-05152-JW<br><br>**DEFENDANT APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:      June 18, 2012<br>Time:      9:00 AM<br>Place:     Courtroom 9, 19th Floor<br><br>The Honorable Chief Judge James Ware |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   ATTM IS A NECESSARY AND INDISPENSABLE PARTY ........................................ 3

    A.    Plaintiffs Admit Their Claims Rely On The WSA ................................. 3

    B.    The Alleged Monopolist Is Always A Necessary Party In A Case
Alleging Conspiracy To Monopolize........................................................ 4

    C.    █████████████████████████████████
██████████████████ ................................................... 7

    D.    Intervention By ATTM, Which Has Already Declared Its Interest
In This Litigation, Is Not Required........................................................ 7

    E.    Joinder Of ATTM Is Feasible ................................................................. 9

    F.    ATTM Is Indispensable To This Case .................................................. 10

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSPIRACY TO
MONOPOLIZE........................................................................................ 12

    A.    Plaintiffs' Response To The Absence Of Allegations Of Specific
Intent Is To Point To The Existence Of A Presumptively Legal
Contract ................................................................................................ 12

    B.    Plaintiffs Cannot Shield Their *Newcal* Problem................................. 13

IV.  CONCLUSION........................................................................................ 14

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Advanced Ion Beam Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*,
721 F. Supp. 2d 62 (D. Mass. 2010) ................................................................. 12

5

*Agron, Inc. v. Lin*,
No. CV 03-05872 MMM (JWJx), 2004 U.S. Dist. LEXIS 26605
(C.D. Cal. Mar. 16, 2004) ................................................................................... 5

6

7

*B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*,
516 F.3d 18 (1st Cir. 2008) ................................................................................. 6

8

*Bailey v. Toyota Motor Corp.*,
No. IP 01-1456-C-T/K,  2003 U.S. Dist. LEXIS 21999
(S.D. Ind. Oct. 31, 2003) ..................................................................................... 6

9

10

*Beltz Travel Service, Inc. v. Int'l Air Transp. Assoc.*,
620 F.2d 1360 (9th Cir. 1980) ...................................................................... 4, 5, 6

11

12

*Brae Asset Funding, L.P. v. Applied Financial, LLC*,
No. C 05-02490 WHA, 2006 U.S. Dist. LEXIS 60855
(N.D. Cal. Aug. 14, 2006) ................................................................................... 8

13

14

*CNH Capital Am., LLC v. Southeastern Aggregate, Inc.*,
No. 608CV027, 2009 U.S. Dist. LEXIS 51950
(S.D. Ga. June 18, 2009) ..................................................................................... 6

15

16

*Coneff v. AT&T Corp.*,
No. 09-35563, 2012 U.S. App. LEXIS 5520
(9th Cir. Mar. 16, 2012) .................................................................................... 12

17

18

*Consolidated Brokerage Corp. v. Commodore Gen. Ins. Co. Ltd.*,
No. 81 Civ. 595, 1981 U.S. Dist. LEXIS 15678
(S.D.N.Y. Oct. 29, 1981) ..................................................................................... 6

19

20

*Coombs v. Munoz*,
No. C 09-00192 JSW, 2011 U.S. Dist. LEXIS 66334
(N.D. Cal. June 22, 2011) ................................................................................... 9

21

22

*Creative Trade Group, Inc. v. Int'l Trade Alliance, Inc.*,
No. 08 C 2561, 2010 U.S. Dist. LEXIS 37902
(N.D. Ill. Apr. 16, 2010) ..................................................................................... 6

23

24

*Diodem, LLC v. Lumenis Inc.*,
No. CV03-2142, 2005 U.S. Dist. LEXIS 46865
(C.D. Cal. Sept. 13, 2005) ................................................................................... 9

25

26

*Dollens v. Target Corp.*,
No. C-11-03265, 2011 U.S. Dist. LEXIS 139477
(N.D. Cal. Dec. 5, 2011) ............................................................................. 6, 7, 11

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Downing v. Globe Direct LLC,*
  806 F. Supp. 2d 461 (D. Mass. 2011) ................................................................. 6

*E&L Consulting, LTD. v. Doman Indus. Limited,*
  472 F.3d 23 (2d Cir. 2006) ................................................................................ 12

*EEOC v. Peabody Western Coal Co.,*
  400 F.3d 774 (9th Cir. 2005) .............................................................................. 9

*El Ranco, Inc. v. First Nat'l Bank,*
  406 F.2d 1205 (9th Cir. 1968) ............................................................................ 5

*F & M Distributors, Inc. v. Am. Hardware Supply Co.,*
  129 F.R.D. 494 (W.D. Pa. 1990) ........................................................................ 6

*First Nat'l Montana Bank v. Federal Leasing, Inc.,*
  110 F.R.D. 675 (D. Mont. 1986) ........................................................................ 6

*Freeman v. Northwest Acceptance Corp.,*
  754 F.2d 553 (5th Cir. Tex. 1985) ...................................................................... 6

*Ga. v. Pa. R.R. Co.,*
  324 U.S. 439 (1945) ............................................................................................ 5

*Glades Pharms., LLC v. Call, Inc.,*
  No. 04-4259, 2005 U.S. Dist. LEXIS 3696
  (E.D. Pa. Mar. 9, 2005) ...................................................................................... 6

*Grumman Sys. Support Corp. v. Data Gen. Corp.,*
  125 F.R.D. 160 (N.D. Cal. 1988) ....................................................................... 5

*Haas v. Jefferson Nat'l Bank of Miami Beach,*
  442 F.2d 394 (5th Cir. 1971) .............................................................................. 6

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
  602 F.3d 237 (3d Cir. 2010) .............................................................................. 13

*In re Apple & AT&TM Antitrust Litig.,*
  No. C 07-05152 JW, 2011 U.S. Dist. LEXIS 138539
  (N.D. Cal. Dec. 1, 2011) ................................................................................... 11

*In re Apple iPhone 3G and 3GS "MMS" Marketing and Sales Practices Litig.,*
  MDL No. 2116, 2012 U.S. Dist. LEXIS 43971
  (E.D. La. Mar. 29, 2012) ................................................................................. 8, 9

*In re Apple iPhone 3G Prods. Liab. Litig.,*
  No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532
  (N.D. Cal. Dec. 1, 2011) ................................................................................. 1, 9

*In re SRAM Antitrust Litigation,*
  580 F. Supp. 2d 896 (N.D. Cal. 2008) .............................................................. 13

*In re Toyota Motor Corp.,*
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ..................................................... 6, 10, 11

*International Distribution Centers, Inc. v. Walsh Trucking Co.*,
   812 F.2d 786 (2d. Cir. 1987)..................................................................................... 5

*Kairys v. INS*,
   981 F.2d 937 (7th Cir. 1992) ............................................................................... 4, 14

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................................ 13

*KnowledgePlex, Inc. v. Placebase, Inc.*,
   No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915
   (N.D. Cal. Dec. 17, 2008) ................................................................................. 10, 11

*Laker Airways, Inc. v. British Airways, PLC*,
   182 F.3d 843 (11th Cir. 1999) ........................................................................ 6, 9, 11

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955)................................................................................................... 5

*Marks v. San Francisco Real Estate Board*,
   No. C-71 369 ACW, 1974 U.S. Dist. LEXIS 8777
   (N.D. Cal. Apr. 29, 1974) .......................................................................................... 5

*McDonald v. General Mills, Inc.*,
   387 F. Supp. 24 (E.D. Cal. 1974)............................................................................. 6

*Newcal Indus., Inc. v. IKON Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................... 13, 14

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
   331 F. Supp. 92 (C.D. Cal. 1971) ............................................................................. 5

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
   No. C 06-01686 SI, 2007 U.S. Dist. LEXIS 8288
   (N.D. Cal. Jan. 25, 2007) .......................................................................................... 6

*Plata v. Darbun Enters.*,
   No. 10cv1339 – IEG (CAB), 2011 U.S. Dist. LEXIS 3036
   (S.D. Cal. Jan. 12, 2011) ........................................................................................... 9

*Plymouth Yongle Tape Co. v. Plymouth Rubber Co.*,
   683 F. Supp. 2d 102 (D. Mass. 2009) ....................................................................... 6

*Process Specialties, Inc. v. Sematech, Inc.*,
   No. CIV. S-00-414 FCD PAN, 2001 U.S. Dist. LEXIS 26261
   (E.D. Cal. Nov. 8, 2001) ......................................................................................... 13

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968)................................................................................................. 10

*Robbins Music Corp. v. Alamo Music, Inc.*,
   119 F. Supp. 29 (S.D.N.Y. 1954).............................................................................. 5

*Samincorp, Inc. v. Southwire Co.*,
   531 F. Supp. 1 (N.D. Ga. 1980) ............................................................................... 6

iv

*Shell Oil Co. v. Aetna Cas. & Sur. Co.*,
   158 F.R.D. 395 (N.D. Ill. 1994) ................................................................................ 11

*Standard Oil Co. v. Moore*,
   251 F.2d 188 (9th Cir. 1957) ...................................................................................... 5

*Sulit v. Slep-Tone Entm't*,
   No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258
   (N.D. Cal. Nov. 20, 2007) ........................................................................................... 9

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................................... 5

*Syufy Enters. v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir. 1986) ................................................................................ 5, 11

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................................................................. 10

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) .................................................................................................... 5

*Universal Grading Serv. v. eBay, Inc.*,
   No. C-09-2755 RMW, 2011 U.S. Dist. LEXIS 25193
   (N.D. Cal. Mar. 8, 2011) ............................................................................................. 8

*Walker Distrib. Co. v. Lucky Lager Brewing Co.*,
   323 F.2d 1 (9th Cir. 1963) .......................................................................................... 5

*Wallach v. Eaton Corp.*,
   814 F. Supp. 2d 428 (D. Del. 2011) .......................................................................... 13

*Whyham v. Piper Aircraft Corp.*,
   96 F.R.D. 557 (M.D. Pa. 1982) ................................................................................... 6

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
   668 F.2d 1014, 1023 (9th Cir. 1982) .......................................................................... 4

**STATUTES**

15 U.S.C. § 1 ..................................................................................................................... 5, 13

15 U.S.C. § 2 ................................................................................................................... 4, 5, 6

28 U.S.C. § 1447(e) .................................................................................................................. 7

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 27 .............................................................................. 4, 14

**RULES**

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................................... 2

Fed. R. Civ. Proc. 19(a) ................................................................................................. passim

v

Fed. R. Civ. Proc. 19(b) ....................................................................................................... passim

Fed. R. Civ. Proc. 36(b) ....................................................................................................... 4, 14

**TREATISES**

Herbert Hovenkamp, FEDERAL ANTITRUST POLICY § 11.6d (4th ed. 2011) ............................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE'S REPLY ISO MOTION TO DISMISS
CASE NUMBER: C 11-06714-JW

## I.      INTRODUCTION

The issue before the Court is simple:  is ATTM a necessary party to a case in which Plaintiffs claim to sue on behalf of consumers who "paid for voice and data service from ATTM" and assert that ATTM conspired with Apple to make ATTM a monopolist of a supposed market for voice and data services available exclusively from ATTM?  Complaint ¶¶ 70, 97-98.  The answer to that question is clearly yes.  Because Plaintiffs accuse *ATTM* of conspiring with Apple to make *ATTM* a monopolist in the alleged aftermarket for iPhone voice and data service, ATTM is a necessary party.  "Active participants" in a claimed conspiracy are necessary parties who must be joined under Rule 19 if feasible, Mot. at 10-13, and Plaintiffs provide no contrary authority.  In fact, without ATTM there is no "aftermarket" for ATTM voice and data services because it is ATTM that provides those services.

The reality is that this case is a carbon copy of *In re Apple & AT&TM Antitrust Litigation*, except that Plaintiffs' counsel—who also represented the plaintiffs in the earlier case—have made "cosmetic modifications" to the Complaint to try to avoid the same outcome.  *See In re Apple iPhone 3G Prods. Liab. Litig.*, No. MDL C 09-02045 JW, 2011 U.S. Dist. LEXIS 138532, at *13 (N.D. Cal. Dec. 1, 2011) ("*iPhone 3G*").  Plaintiffs try to camouflage this, but in the end simply contradict themselves.  Plaintiffs state that "[t]hese new Plaintiffs in no way rely upon the WSA in the new case."  Opp. at 18.  But then they prove the opposite, by laying out the "relevant terms of ATTM's WSA" that they will rely on, including the length of the contract, the early termination provision, and the "detail[s]" of international roaming charges.  Opp. at 11 & n.10.  They thus concede that the terms of the WSA are key to this case.  That concession is unavoidable: the allegations in the complaint repeatedly state that liability turns on whether Plaintiffs gave adequate "contractual consent" to ATTM voice and data service in the claimed aftermarket—and Plaintiffs do not dispute that ATTM's WSA governs that question.  *See* Opp. at 11 & n.10, 24.  That means that ATTM is a necessary party under Rule 19.

1

1    ATTM also has other interests that would be impaired if the litigation proceeded in its

2    absence.  For instance, ████████████████████████████████████████████████████

3    ██.  Any *one* of these interests is enough to make ATTM a necessary party under Rule 19.

4    Rule 19(a) states that if a party *should* be joined (*i.e.*, the party is "necessary" to the

5    case), and *can* be joined (*i.e.*, joinder is "feasible"), it *must* be joined.  Joining ATTM as a

6    defendant is plainly feasible, as it was a defendant in *In re Apple & AT&TM Antitrust Litigation*.

7    Therefore, Rule 19(a) requires ATTM to be joined.  Plaintiffs' reliance on Rule 19(b) is a red

8    herring.  The only purpose of that provision is to guide the Court in deciding whether to dismiss

9    if an absentee *cannot* be joined.  Mot. at 13.  In any event, those 19(b) considerations further

10   support Apple's position that this case cannot proceed without ATTM.

11   Rule 19 does not require intervention by the absent party as Plaintiffs suggest.  The rule's

12   entire purpose is to protect the interests of parties who have not intervened.  *See* Fed. R. Civ.

13   Proc. 19(a) (mandating joinder of *absent* party); 19(b) (providing for dismissal to mitigate

14   prejudice to *absent* party).  Nor is venue improper, as Plaintiffs argue, because ATTM will seek

15   to compel arbitration.  If ATTM is joined and this case is sent to arbitration, there would be no

16   venue dismissal; the case will be stayed, pending resolution of the arbitral proceedings, just

17   like *In re Apple & AT&TM Antitrust Litigation*.

18   As an independent ground for dismissal, Plaintiffs also fail to satisfy their burden of

19   pleading that *both* ATTM and Apple acted with specific intent.  The best that Plaintiffs can do is

20   claim that they have pleaded that ATTM and Apple entered into an exclusive agreement.  But

21   exclusive agreements are commonplace and almost always lawful, so the Apple-ATTM

22   agreement cannot supply the requisite specific intent.

23   Plaintiffs' purported renouncement of reliance on the WSA also makes Rule 12(b)(6)

24   dismissal appropriate.  To attempt to avoid ATTM's joinder, Plaintiffs claim there are "obvious

25   factual differences" between "the new action" and *In re Apple & AT&TM Antitrust Litigation*,

26   pointing to their supposed lack of reliance on the WSA.  Opp. at 1.  But when Apple argues that

27   such an about-face destroys their *Newcal* theory of a relevant antitrust market, Mot. at 21,

28   Plaintiffs assert that "[n]othing of consequence has changed" and there are "no new facts" that

2

1    would justify "re-litigat[ing] the issue" of relevant market.  Opp. at 3, 23.  However, issue

2    preclusion has no application here.  There is no final judgment resulting from *In re Apple &*

3    *AT&TM Antitrust Litigation* to bind any party.  And, without the WSA, Plaintiffs cannot rebut

4    the "economic presumption" identified by the Ninth Circuit in *Newcal* and applicable in

5    aftermarket cases, that Plaintiffs accepted ATTM's service in the "aftermarket" when making

6    their initial purchase.  As a result, Plaintiffs have not pleaded a relevant market.

7    **II.    ATTM IS A NECESSARY AND INDISPENSABLE PARTY**

8          **A.    Plaintiffs Admit Their Claims Rely On The WSA**

9          Plaintiffs do not dispute the legal rule that "[p]arties to a contract, like ATTM, have an

10   interest protected by Rule 19(a) where the litigation would require interpretation of a contract to

11   which they are a party."  Mot. at 9.  Instead they argue that "Plaintiffs do not need to rely on the

12   WSA to prove their case."  Opp. at 2.  Yet Plaintiffs then go on to lay out the "relevant terms of

13   ATTM's WSA" that they will rely on, including the length of the contract, the early termination

14   provision, and the "detail[s]" of international roaming charges.  Opp. at 11 & n.10.  Thus,

15   Plaintiffs do not dispute that their aftermarket allegations are inextricably tied to the terms of the

16   WSA.[1]  Plaintiffs put forward two arguments for their assertion that "the Court will not need to

17   refer to ATTM's service contract, let alone interpret or construe it."  Opp. at 11.

18         First, Plaintiffs suggest that obtaining "the relevant terms of ATTM's WSA" from

19   ATTM's website instead of looking to a written contract makes a difference to the analysis.

20   Opp. at 11 ("[Plaintiffs] need not rely on [the WSA] because all those terms were disclosed and

21   readily available ***on ATTM's website*** throughout the Class Period" so "the Court will not need to

22   refer to ATTM's service contract") (emphasis Plaintiffs'); *id.* at 11 n.10 ("Like the two-year term

23   and the termination fee, [the allegedly excessive international roaming charges] were spelled out

24   in detail in ATTM's website throughout the Class Period.").  This position makes no sense.

25

26   [1]   There is, of course, only one contract governing ATTM voice and data service:  the WSA, a
     contract between ATTM and consumers.  The "contractual consent to the five-year
27   exclusivity agreement" that Plaintiffs say was necessary (Complaint ¶¶ 8, 11, 26, 27, 73a-c)
     could only have been supplied (or not) by that ATTM contract with Plaintiffs.

28

3

1    Regardless of whether the parties and the Court refer to ATTM's website to learn the terms of

2    the WSA, or to a printed copy of the WSA, it is clear based on Plaintiffs' own argument that the

3    terms of the WSA matter to their case.  If Plaintiffs need to refer to these terms, and they

4    concede that they do, ATTM *must* be joined under Rule 19(a).  *See* Mot. at 9-10.

5          Second, Plaintiffs say "***Apple (and ATTM) already judicially admitted*** in the prior

6    litigation" the WSA terms that Plaintiffs need to establish to litigate their case.  Opp. at 11 (citing

7    Apple and ATTM's answers in *In re Apple & AT&TM Antitrust Litigation*) (emphasis

8    Plaintiffs'); *id.* at 16 ("ATTM already has ***admitted*** to what the contract says.") (emphasis

9    Plaintiffs'); *id.* at 18 ("Apple and ATTM have judicially admitted the two-year term of the

10   WSA").  Plaintiffs are not entitled to invoke or rely on any such "admissions" from the prior

11   case.  *Kairys v. INS*, 981 F.2d 937, 940 (7th Cir. 1992) (Posner, J.) ("facts determined by

12   admissions and stipulations ordinarily are not entitled to collateral estoppel effect, because facts

13   so determined are not actually litigated, as the doctrine requires"); Restatement (Second) of

14   Judgments § 27 cmt. e (no preclusive effect for issue that "is raised by a material allegation of a

15   party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive

16   pleading"); Fed. R. Civ. Proc. 36(b) ("An admission under this rule is not an admission for any

17   other purpose and cannot be used against the party in any other proceeding.").  If Plaintiffs need

18   these WSA terms to pursue their claim, and they concede that they do, they will have to put the

19   WSA in evidence and argue the supposed impact the terms of that ATTM contract have on their

20   aftermarket claims.  ATTM is thus a necessary party.

21        **B.    The Alleged Monopolist Is Always A Necessary Party In A Case Alleging**

22              **Conspiracy To Monopolize**

23        Plaintiffs cite no authority supporting their position that the alleged monopolist is not a

24   necessary party to a Section 2 claim charging a conspiracy to monopolize.  In *every single*

25   Section 2 case cited by Plaintiffs, the alleged monopolist was a named and present defendant.[2]

26   _____

     [2]    *See Beltz Travel Service, Inc. v. Int'l Air Transp. Assoc.*, 620 F.2d 1360, 1362 (9th Cir.
27   1980); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014,
     1023, 1053-54 (9th Cir. 1982); *Agron, Inc. v. Lin*, No. CV 03-05872 MMM (JWJx), 2004

28

                                              4

1   Plaintiffs cite no authority—and Apple is not aware of any—permitting a conspiracy to

2   monopolize claim to proceed without the alleged monopolist.  That is a natural consequence of

3   the rule of substantive antitrust law applicable to Section 2 claims, which Plaintiffs do not

4   dispute, that a plaintiff must allege that the monopolist and at least one other party possessed a

5   "specific intent" to monopolize.  *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1001 (9th

6   Cir. 1986); *International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 796

7   (2d. Cir. 1987) ("a plurality of actors sharing such an intent is required under section 2").

8         Plaintiffs cite five cases, none of which involve the issue of joinder or Rule 19, to support

9   the proposition that "antitrust conspirators are liable for the acts of their co-conspirators."  Opp.

10  at 4, 12.[3]  That is true of any conspiracy.  *Standard Oil*, 251 F.2d at 211 ("This is but an

11  application of the general law of conspiracy.").[4]  The joint and several liability of co-conspirators

12  is only relevant to the issue of whether a plaintiff can obtain complete relief, under Rule

13  19(a)(1)(A).  It has no relevance to the *alternative* ground for mandatory joinder, asserted here,

14  based on the interests of the absent party.  *See* Fed. R. Civ. Proc. 19(a)(1)(B)(i).

15

16  _____

17      U.S. Dist. LEXIS 26605, at *29-32 (C.D. Cal. Mar. 16, 2004); *Occidental Petroleum Corp.
        v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 95 (C.D. Cal. 1971); *Grumman Sys. Support Corp.
18      v. Data Gen. Corp.*, 125 F.R.D. 160, 161 (N.D. Cal. 1988); *Lawlor v. Nat'l Screen Serv.
        Corp.*, 349 U.S. 322, 323-25 (1955).

19  [3]  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-54 (1940); *Beltz*, 620 F.2d at
        1366-67; *El Ranco, Inc. v. First Nat'l Bank*, 406 F.2d 1205, 1216 (9th Cir. 1968); *Standard
20      Oil Co. v. Moore*, 251 F.2d 188, 211 (9th Cir. 1957); *Swartz v. KPMG LLP*, 476 F.3d 756,
        764-65 (9th Cir. 2007).

21  [4]  The remainder of the cases Plaintiffs cite (none of which involve Section 2) likewise provide
        no support for their position.  In *Ga. v. Pa. R.R. Co.*, 324 U.S. 439, 443, 463-64 (1945),
22      which involved twenty defendants sued for price fixing, original jurisdiction was found to
        exist in the Supreme Court despite two defendants being allegedly Georgia citizens, because
23      those defendants (two of twenty) could be stricken from the case; there was no indication that
        these two defendants were active participants in the conspiracy.  In *Walker Distrib. Co. v.
24      Lucky Lager Brewing Co.*, 323 F.2d 1, 5, 9 (9th Cir. 1963), the active participant and the only
        beneficiary of the alleged Section 1 conspiracy (between "Lucky and other of its
25      distributors") was named as a defendant.  In *Marks v. San Francisco Real Estate Board*, No.
        C-71 369 ACW, 1974 U.S. Dist. LEXIS 8777, at *5-6 (N.D. Cal. Apr. 29, 1974), a named
26      defendant unsuccessfully sought to be dismissed for its alleged minimal role in the
        conspiracy; it did not seek to join another active participant.  *Robbins Music Corp. v. Alamo
27      Music, Inc.*, 119 F. Supp. 29, 30 (S.D.N.Y. 1954), involved only copyright infringement
        claims.

28

1    Plaintiffs cite *Beltz* to support their suggestion that a suit may proceed against "a single

2  conspirator ***regardless of the defendant's role in the conspiracy***."  Opp. at 12 (emphasis

3  Plaintiffs').  *Beltz* involved no joinder issues and the alleged monopolist was a named defendant,

4  as were the claimed co-conspirators.  620 F.2d at 1362.  However, more to the point, Apple's

5  argument on joinder does not turn on the role played by the sued conspirator; it turns, naturally

6  enough, on the role allegedly played by the *absent* conspirator.  *See* Mot. at 12 (detailing

7  Plaintiffs' allegations of absent conspirator ATTM's alleged misconduct).

8    *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999),

9  establishes that active participants are necessary parties in a Section 2 case charging conspiracy

10  to monopolize.  *See* Mot. at 10-13.  Plaintiffs claim that *Laker Airways* is "an outlier."  Opp. at

11  12.  *Laker Airways* and its precursor *Haas* are widely followed.  *Laker Airways* has been

12  favorably cited and relied upon by courts in the First, Third, Seventh, Ninth, and Eleventh

13  Circuits.[5]  *Haas* too has been broadly adopted.[6]

---

14  [5]  *See Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 469 (D. Mass. 2011); *Glades
15  Pharms., LLC v. Call, Inc.*, No. 04-4259, 2005 U.S. Dist. LEXIS 3696, at *8 n.1 (E.D. Pa.
   Mar. 9, 2005); *Creative Trade Group, Inc. v. Int'l Trade Alliance, Inc.*, No. 08 C 2561, 2010
16  U.S. Dist. LEXIS 37902, at *13-14 (N.D. Ill. Apr. 16, 2010); *Bailey v. Toyota Motor Corp.*,
   No. IP 01-1456-C-T/K, 2003 U.S. Dist. LEXIS 21999, at *27 n.7 (S.D. Ind. Oct. 31, 2003);
17  *Dollens v. Target Corp.*, No. C-11-03265, 2011 U.S. Dist. LEXIS 139477, at *4 (N.D. Cal.
   Dec. 5, 2011); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011); *CNH
18  Capital Am., LLC v. Southeastern Aggregate, Inc.*, No. 608CV027, 2009 U.S. Dist. LEXIS
   51950, at *13 (S.D. Ga. June 18, 2009).

19  [6]  *See B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 27 (1st Cir. 2008);
20  *Plymouth Yongle Tape Co. v. Plymouth Rubber Co.*, 683 F. Supp. 2d 102, 116 (D. Mass.
   2009); *Consolidated Brokerage Corp. v. Commodore Gen. Ins. Co. Ltd.*, No. 81 Civ. 595,
21  1981 U.S. Dist. LEXIS 15678, at *21 (S.D.N.Y. Oct. 29, 1981); *Glades Pharms.*, 2005 U.S.
   Dist. LEXIS 3696, at *8 n.1; *F & M Distributors, Inc. v. Am. Hardware Supply Co.*, 129
22  F.R.D. 494, 497 (W.D. Pa. 1990); *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 561
   (M.D. Pa. 1982); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. Tex.
23  1985); *Creative Trade Group*, 2010 U.S. Dist. LEXIS 37902, at *13-14; *Bailey*, 2003 U.S.
   Dist. LEXIS 21999, at *27 n.7; *Toyota*, 785 F. Supp. 2d at 905; *First Nat'l Montana Bank v.
24  Federal Leasing, Inc.*, 110 F.R.D. 675, 678 (D. Mont. 1986); *McDonald v. General Mills,
   Inc.*, 387 F. Supp. 24, 38 (E.D. Cal. 1974); *Samincorp, Inc. v. Southwire Co.*, 531 F. Supp. 1,
25  3 (N.D. Ga. 1980).

26  The *Oculus* decision, which Apple noted for the Court, is demonstrably incorrect in its
   statement that the *Haas* exception is not followed in the Ninth Circuit.  *See* Mot. at 11 & n.4,
27  and cases cited therein.  *Oculus* has only been cited once by any court, and has *never* been
   cited for that incorrect and unsupported proposition.  Clearly, it is *Oculus* which is the
28  outlier, and not the well-reasoned and widely followed decisions of *Laker Airways* and *Haas*.

APPLE'S REPLY ISO MOTION TO DISMISS
CASE NUMBER: C 11-06714-JW

1    This Court followed *Laker Airways* in the Rule 19 analysis in *Dollens*, 2011 U.S. Dist.

2    LEXIS 139477, at *3-4.  Plaintiffs suggest that this occurred under a "***less restrictive standard***

3    than Rule 19." Opp. at 14 (emphasis Plaintiffs').  Not so.  *Dollens* analyzed possible joinder

4    under 28 U.S.C. § 1447(e) by considering six factors.  The first factor was "whether the party

5    sought to be joined is needed for just adjudication and would be joined under Federal Rule of

6    Civil Procedure 19(a)." 2011 U.S. Dist. LEXIS 139477, at *2-3.  In other words, the Court first

7    conducted a Rule 19(a) analysis, and in doing so it followed *Laker Airways*; the fact that the

8    remainder of the § 1447(e) analysis allows for more flexibility than Rule 19 is irrelevant.

9         Plaintiffs have no answer for the authority holding that "active participants" in a

10   conspiracy must be joined if feasible, nor can they refute the sound policy reasons underlying

11   this rule.  *See* Mot. at 10-13, 15-16.  And, Plaintiffs cite no authority holding that a conspiracy to

12   monopolize claim can proceed without the alleged monopolist.  ATTM must be joined.

13   **C.**   ████████████████████████████████████████

14        ████████████████████████████████████████

15        ████████████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████████████

18   █████████████████████████████████████████████

19   █████████████████████████████████████████████

20   █████████████████████████████████████

21   ██████████████████████████████████████████████

22   █████████████████████████████████████████████

23   █████████████

24   **D.**   **Intervention By ATTM, Which Has Already Declared Its Interest In This**

25        **Litigation, Is Not Required**

26        ATTM submitted through its counsel sworn testimony attesting that "ATTM has an

27   interest in this case, since the Consolidated Complaint alleged that ATTM is a monopolist and

28   makes various allegations regarding the service ATTM provides to ATTM customers using

7

1    iPhones (for example, allegedly imposing excessive international roaming charges)." Lahlou

2    Decl. ¶ 2.[7]  The declaration also explains why ATTM has not intervened in this suit.  *Id.* at ¶ 3

3    ("If ATTM were to be joined in this litigation, ATTM would move to compel arbitration as it

4    successfully did in *In re Apple & ATTM Antitrust Litigation*.").[8]

5            Plaintiffs suggest that the question whether ATTM is a necessary party turns on whether

6    ATTM has intervened in this suit.  Opp. at 7 ("***ATTM*** has not sought to intervene as a party

7    here") (emphasis Plaintiffs'); *id.* at 8 (noting "its decision not to seek to intervene in this case");

8    *id.* at 9 ("it has not sought to intervene").  Plaintiffs' argument that intervention is required runs

9    counter to the structure of the Rule itself, as well as cases applying it.  If it were a requirement

10   that an absent party with an interest intervene in a lawsuit, there would be no need for Rule

11   19(a)(1)(B)(i) which concerns court-ordered joinder.  In fact, absent parties that do not intervene

12

13   [7]   In a footnote, Plaintiffs seek to strike this declaration for allegedly containing "legal
          argument."  Opp. at 7 n.4.  The first case they cite in support concerned a declaration
14        submitted by plaintiff's counsel "contain[ing] numerous legal conclusions and arguments and
          lack[ing] proper foundation."  *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW,
15        2011 U.S. Dist. LEXIS 25193, at *34 (N.D. Cal. Mar. 8, 2011).  In the other case on which
          Plaintiffs rely, the declaration in question was "full of legal argument and conclusions,"
16        "refer[red] throughout to exhibits that were never filed," and the declarant "did not sign or
          date" it.  *Brae Asset Funding, L.P. v. Applied Financial, LLC*, No. C 05-02490 WHA, 2006
17        U.S. Dist. LEXIS 60855, at *16-17 (N.D. Cal. Aug. 14, 2006).  After an objection was made,
          a follow-on declaration was likewise "not signed or dated," so both declarations were
18        stricken.  *Id.*  In this case, the substance of the Lahlou Declaration is four sentences, none of
          which are improper.  And, the declaration is signed and dated.
19
     [8]   Plaintiffs seek to brush aside the Lahlou Declaration because it would support an immediate
20        order directing the parties to arbitration.  In a separate iPhone case brought by a putative
          class of ATTM customers, the Eastern District of Louisiana ruled that ATTM was a
21        necessary party and that joinder was feasible, but found that "joinder of AT&T would be
          inefficient for both the Court and the parties" because "AT&T presumably would move to
22        compel arbitration again, which would likely be granted."  *See In re Apple iPhone 3G and
          3GS "MMS" Marketing and Sales Practices Litig.*, MDL No. 2116, 2012 U.S. Dist. LEXIS
23        43971, at *11 (E.D. La. Mar. 29, 2012) ("*iPhone MMS*").  Given the pointlessness of joinder,
          and the plaintiffs' reliance on the WSA, the court held that "Plaintiffs' claims against Apple
24        must be submitted to arbitration, pursuant to the terms of AT&T's WSA."  *Id.* at *11, 41.
          Here, this Court need not wonder what ATTM would do if joined; it has declared that it
25        would move to compel arbitration.  Lahlou Decl. ¶ 3.  And Plaintiffs concede that such a
          motion should be granted.  Opp. at 15 ("it is practically certain that [this Court] would
26        compel arbitration as to ATTM in this case as well").  Their reliance on the WSA's terms is
          both clear from the Complaint, *see* Mot. 9-10, and admitted in their Opposition.  *See* Opp. at
27        11 & n.10 (laying out the "relevant terms of ATTM's WSA" that Plaintiffs will rely on).
          Arbitration is thus required, whether or not ATTM is joined.
28

                                                        8

1   to protect their interests are routinely found not only necessary but indispensable.  *See, e.g.*,

2   *Laker Airways*, 182 F.3d at 848 & n.7, 850 (dismissing under Rule 19 because absentee ACL

3   "has significant interest in the resolution of the allegations" even though it did not submit itself

4   to the jurisdiction of the court); *Coombs v. Munoz*,  No. C 09-00192 JSW, 2011 U.S. Dist.

5   LEXIS 66334, at *11 (N.D. Cal. June 22, 2011) (dismissing under Rule 19 because

6   indispensable absentee "CTF would be prejudiced if this case proceeded without it"); *Plata v.*

7   *Darbun Enters.*, No. 10cv1339 – IEG (CAB), 2011 U.S. Dist. LEXIS 3036, at *11 (S.D. Cal.

8   Jan. 12, 2011) (dismissing under Rule 19 to prevent "risk of prejudice" to "the absent parties").

9             **E.        Joinder Of ATTM Is Feasible**

10            Plaintiffs' argument that joinder of ATTM is not feasible is simply wrong.  Under Rule

11  19, there are only three circumstances under which joinder is not feasible:  "when venue is

12  improper, when the absentee is not subject to personal jurisdiction, and when joinder would

13  destroy subject matter jurisdiction."  *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779

14  (9th Cir. 2005); *iPhone 3G*, 2011 U.S. Dist. LEXIS 138532, at *8; *Sulit v. Sleep-Tone Entm't*,

15  No. C06-00045 MJJ, 2007 U.S. Dist. LEXIS 89258, at *6-7 (N.D. Cal. Nov. 20, 2007) ("It is

16  feasible to join a party if the party is subject to service of process and joinder of the party will not

17  deprive the court of jurisdiction over the subject matter of the action."); *Diodem, LLC v. Lumenis*

18  *Inc.*, No. CV03-2142, 2005 U.S. Dist. LEXIS 46865, at *49-50 (C.D. Cal. Sept. 13, 2005) (in

19  determining feasibility, court may not take into account factors "that go beyond the three

20  circumstances set forth in Rule 19(a)").  Here, joining ATTM will not raise any of the three

21  issues enumerated in Rule 19, so joinder is feasible.

22            The fact that an absent party may be able to successfully move to compel arbitration has

23  no bearing on the feasibility analysis.  *See iPhone MMS*, 2012 U.S. Dist. LEXIS 43971, at *11

24  (noting that "joinder of AT&T clearly [is] feasible" notwithstanding that AT&T is expected to

25  file a motion to compel arbitration which "would likely be granted").  Plaintiffs' argument to the

26  contrary—that "if ATTM were joined as a defendant, it would be dismissed for improper venue"

27  (Opp. at 15)—is dead wrong.  The Court need look no further than its Order in *In re Apple &*

28  *AT&M Antitrust Litigation* to confirm this.  When this Court granted ATTM and Apple's

9

1   motions to compel arbitration (over the objection of the same plaintiffs' counsel), the case was

2   not dismissed for lack of proper venue.  Instead, the Court stayed the case pending the resolution

3   of the arbitration.  This Court continues to exercise jurisdiction over *In re Apple & AT&TM*

4   *Antitrust Litigation* and all the parties to it, including ATTM, and will undoubtedly do so in this

5   case once it directs the parties to arbitrate.

6           **F.      ATTM Is Indispensable To This Case**

7           ATTM has multiple interests protected under Rule 19(a), requiring ATTM to be joined.

8   The Court need go no further.  *See* Mot. at 13.  But if ATTM is not joined, the considerations of

9   Rule 19(b) show that dismissal is warranted.  *See* Mot. at 8-13, 16.  Plaintiffs' repeatedly deny

10  any risk to ATTM of *res judicata* or issue preclusion.  Opp. at 8-9, 16, 19.  Plaintiffs' argument

11  is wrong on two fronts.  First, a final judgment need not be binding on ATTM for joinder to be

12  required under Rule 19.  *See Toyota*, 785 F. Supp. 2d at 908 (nonbinding judgment on product

13  safety "speaks directly and adversely to the quality of the unnamed entities' products");

14  *KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF (RS), 2008 U.S. Dist. LEXIS 103915,

15  at *14 (N.D. Cal. Dec. 17, 2008) (nonbinding judgment "might well affect Vinq's rights and

16  business reputation."); *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110

17  (1968) (concluding that a court's decision may still impair the rights of an absent party, even if it

18  is not binding on that party).  A finding that ATTM is a monopolist or that it acted wrongfully

19  with respect to its customers would plainly impact its rights and business reputation.

20          Second, Plaintiffs' assertion that preclusion would not apply against ATTM is

21  conclusory.  As Plaintiffs note, preclusion applies not only to parties but their privies as well.

22  Opp. at 9 n.5.  Future plaintiffs hoping to benefit from any negative findings against absentee

23  ATTM may well advance arguments for a finding of privity, and one cannot predict with

24  assurance how another court would rule.  For example, a nonparty will be bound by a prior

25  judgment if it exercised "control over the litigation in which that judgment was rendered" and

26  "had the opportunity to present proofs and argument" even though "not a formal party to the

27  litigation." *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008).  Plaintiffs here propose to adopt

28  wholesale into this action the evidentiary record from *In re Apple & AT&TM Antitrust Litigation*,

10

1   including documents produced in that case, depositions, interrogatory responses, their expert's

2   "preliminary damages figure," and the "Stipulation Between Plaintiffs and Defendant ATTM

3   Regarding Undisputed Facts."  *See* Joint Case Management Statement, Dkt. No. 22, at 6-8, 12-

4   13.  Thus, a court might rule that ATTM had sufficient *de facto* participation in *In re Apple*

5   *iPhone Antitrust Litigation* to support preclusion in a later action against ATTM.  Plaintiffs' self-

6   serving pronouncements that preclusion would not apply provide no protection for ATTM.

7          Plaintiffs also try to deny ATTM's indispensability by claiming that ATTM's interests

8   would not be harmed because "a judgment against Apple will not threaten ATTM's existence."

9   Opp. at 19.  This finds no support in the law.  Rule 19 recognizes that even narrowly defined

10  interests are protected from prejudice.  *See, e.g.*, *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158

11  F.R.D. 395, 401 (N.D. Ill. 1994) (protecting the interest in "present[ing] [one's] arguments

12  regarding the interpretation of [one's contracts] at the time when they would be most forceful,

13  *i.e.*, when the interpretation of the contract terms [is] first litigated"); *Toyota*, 785 F. Supp. 2d at

14  908 (protecting the interest in avoiding even nonbinding negative findings regarding one's

15  products); *KnowledgePlex*, 2008 U.S. Dist. LEXIS 103915, at *14 (protecting the interest in

16  one's business reputation); *Dollens*, 2011 U.S. Dist. LEXIS 139477, at *4 (protecting the interest

17  in avoiding negative evaluations of one's conduct).[9]

18         Plaintiffs ground their *own* interest in proceeding without ATTM on their assertion that

19  they will have no adequate remedy if this case is sent to arbitration.  Opp. at 20.  This Court, as

20  well as the Supreme Court, has already ruled that the arbitral forum is adequate for resolution of

21  Plaintiffs' claims.  *See In re Apple & AT&TM Antitrust Litigation*, No. C 07-05152 JW, 2011

22  U.S. Dist. LEXIS 138539, at *17-18, 30 (N.D. Cal. Dec. 1, 2011).  The Ninth Circuit's recent

23

24  ───────────────

25  [9]   Plaintiffs' attempt to distinguish *Syufy* thus misses the point.  *See* Opp. at 16 n.15.  Apple did not cite that case because it contains a Rule 19 analysis (it does not).  That case is critical because it contains a *substantive* rule of antitrust law, establishing that Plaintiffs cannot win their case without proving that *ATTM specifically* engaged in wrongful conduct.  And as the Rule 19 case law shows, that gives rise to prejudice sufficient to justify joinder.  *See Laker Airways*, 182 F.3d at 847-49; *Toyota*, 785 F. Supp. 2d at 908; *Dollens*, 2011 U.S. Dist. LEXIS 139477, at *3-4.

26

27

28

11

1    decision about the same ATTM arbitration agreement likewise forecloses Plaintiffs' argument.[10]

2    All the Rule 19(b) factors confirm that ATTM is an indispensable party.

3    **III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSPIRACY TO**

4    **MONOPOLIZE**

5        **A.    Plaintiffs' Response To The Absence Of Allegations Of Specific Intent Is To**

6        **Point To The Existence Of A Presumptively Legal Contract**

7        Plaintiffs are required to plead a specific intent to monopolize on the part of both Apple

8    *and* ATTM, under *Twombly*'s heightened pleading standard for antitrust claims.  *See* Mot. at 17-

9    19.  Plaintiffs concede this.  Opp. at 21-22.  They argue, however, that they "have amply

10   alleged" such specific intent by alleging that Apple and ATTM "enter[ed] into the written

11   Exclusivity Agreement" wherein ATTM would be the exclusive provider of voice and data

12   service for the iPhone.  *Id.*  But exclusivity agreements are commonplace and almost always

13   legal.[11]  And, in *In re Apple & AT&TM Antitrust Litigation*, Plaintiffs' counsel represented that

14   plaintiffs were not challenging the lawfulness of the Apple-ATTM exclusive agreement—

15   because they knew that it would be found lawful.  Dkt. 355, Huseny Declaration Vol. 4 Ex. LL at

16   63-64 (Plaintiffs' counsel, Mr. Rifkin, stating, "Our position has always been [ ] that there was

17   nothing wrong with Apple's decision to enter the market the way it did and there was nothing

18   wrong with Apple to provide their iPhone only to AT&T. . . .").  As a result, alleging that Apple

19   and ATTM entered into an exclusive agreement does not—and cannot—suffice to allege a

20   specific intent "to achieve an illegal monopoly."  *See Howard Hess Dental Labs. Inc. v. Dentsply*

21   _____

22   [10]  *Coneff v. AT&T Corp.*, No. 09-35563, 2012 U.S. App. LEXIS 5520, at *6-7 (9th Cir. Mar.
23   16, 2012) (rejecting argument that claims "cannot be vindicated effectively because they are
     worth much less than the cost of litigating them" because "the *Concepcion* majority rejected
     that premise.  Significantly, the arbitration agreement here has a number of fee-shifting and
24   otherwise pro-consumer provisions, identical to those in *Concepcion*.").

25   [11]  *See E&L Consulting, LTD. v. Doman Indus. Limited*, 472 F.3d 23, 30 (2d Cir. 2006)
     ("exclusive distributorship arrangements are presumptively legal"); *Advanced Ion Beam
26   Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*, 721 F. Supp. 2d 62, 84 (D. Mass.
     2010) ("There is nothing inherently suspect about a license agreement" giving defendant
27   exclusive rights in patented technology); Herbert Hovenkamp, FEDERAL ANTITRUST POLICY
     § 11.6d (4th ed. 2011) ("an agreement giving a dealer an exclusive right is judged under the
28   rule of reason and is usually legal").

12

1   *Int'l, Inc.*, 602 F.3d 237, 257 (3d Cir. 2010).[12]

2          Plaintiffs assure the Court that "the Complaint bristles with" specific intent allegations.

3   Opp. at 22.  The allegations they cite, however, concern the unlock codes and merely reflect the

4   carrying out of the presumptively legal exclusivity arrangement between Apple and ATTM.

5   Plaintiffs cannot survive dismissal by appending the conclusory phrase "to suppress

6   competition," following descriptions of presumptively legal actions taken by Apple and ATTM.

7   *See* Opp. at 22 n.24.  They must plead *evidentiary facts* that would *demonstrate* that Apple and

8   ATTM acted with an illegal purpose, and have failed to do so.  *See Dentsply*, 602 F.3d at 255

9   ("At bottom, the Plaintiffs' allegations of specific intent rest not on facts but on conclusory

10  statements strung together with antitrust jargon.").

11        **B.      Plaintiffs Cannot Shield Their *Newcal* Problem**

12         Plaintiffs recognize that their effort to disavow the WSA dooms their ability to allege a

13  cognizable aftermarket under *Newcal*.  *See* Mot. at 19-23. They seek to avoid that outcome by

14  arguing that Apple "has no right to re-litigate" Plaintiffs' failure to plead a relevant market, on

15  the grounds of issue preclusion.  Opp. at 23.

16         The rule for issue preclusion is this:  "When an issue of fact or law is actually *litigated*

17  *and determined* by *a valid and final judgment*, and the determination is essential to the judgment,

18  _____

19  [12]  The cases Plaintiffs themselves cite, at Opp. at 22 n.23, illustrate how far off the mark
     Plaintiffs are.  *See Wallach v. Eaton Corp.*, 814 F. Supp. 2d 428, 441-42 (D. Del. 2011)
20   (plaintiffs alleged not just the existence of Long Term Agreements between alleged
     monopolist Eaton and its co-conspirators, but also "direct evidence of Eaton's intent to
     monopolize:  the complaint *quotes Eaton employee John Buch as saying 'Eaton's strategy*
21   *was to kill ZF Meritor's transmission business'*"; plaintiffs also alleged that victim *ZF*
     *Meritor was told by each of Eaton's co-conspirators* "that they had accepted deals that were
22   *designed to put ZF Meritor out of business*," and that ZF Meritor "tried to dissuade them
     from bestowing a monopoly upon Eaton" but they "refused to even consider competitive ZF
23   Meritor counter-proposals") (emphasis added); *Process Specialties, Inc. v. Sematech, Inc.*,
     No. CIV. S-00-414 FCD PAN, 2001 U.S. Dist. LEXIS 26261, at *22 (E.D. Cal. Nov. 8,
24   2001) (evidence of specific intent to monopolize included an "[*internal*] *memo to Sematech's*
     *CEO*, proposing that Sematech have its member companies agree to use their influence with
25   the tool companies to '*consolidate all manufacture of test wafers . . . at SEMATECH*'")
     (emphasis added); *In re SRAM Antitrust Litigation*, 580 F. Supp. 2d 896, 901-02 (N.D. Cal.
26   2008) (Section 1 case where evidence of conspiracy to fix prices included numerous
     incriminating emails within and between competitors).  And, *Kendall v. Visa U.S.A., Inc.*,
27   518 F.3d 1042 (9th Cir. 2008), was a Section 1 case in which the Ninth Circuit affirmed the
     dismissal of plaintiffs' complaint for failure to satisfy *Twombly*.

28

                                            13

1   the determination is conclusive in a subsequent action between the parties, whether on the same

2   or a different claim."  Restatement (Second) of Judgments § 27 (emphasis added).  The litigation

3   of the *Newcal* issue in *In re Apple & AT&TM Antitrust Litigation* has no preclusive effect

4   because that case has been stayed, pending an arbitration that has not yet occurred, so there is no

5   "valid and final judgment," as is required for issue preclusion to apply.  In addition, if there is

6   any merit to Plaintiffs' assertion that this case is different (*see supra* at 1), then the issue at hand

7   has not yet been "litigated and determined."

8           On the merits of the relevant market issue, all Plaintiffs offer are "judicial admissions"

9   from the prior case and "information disclosed on ATTM's website."  Opp. at 24.  Plaintiffs may

10  not use any such "admissions" in this case.  *Kairys*, 981 F.2d at 940; Restatement (Second) of

11  Judgments § 27 cmt. e; Fed. R. Civ. Proc. 36(b).  The information on ATTM's website that

12  Plaintiffs refer to consists of the publishing of WSA contract terms and explanations of those

13  terms.  The Court simply will not be able to evaluate Plaintiffs' evidence of an alleged

14  aftermarket without referring to and interpreting terms of the WSA.  If that is to happen, ATTM

15  must be joined.

16          But if Plaintiffs take the position that their aftermarket definition does not depend on the

17  WSA's terms (as they have before, *see* Dkt. 23 at 15), then they cannot use the WSA (as they did

18  in *In re Apple & AT&TM Antitrust Litigation*) to rebut the "economic presumption" that

19  consumers agreed to restrict their aftermarket service options when purchasing an iPhone.

20  *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1050 (9th Cir. 2008).  In short,

21  without the WSA, Plaintiffs cannot allege a cognizable aftermarket.

22  **IV.    CONCLUSION**

23          For the reasons stated in Apple's motion and this reply, the Court should grant Apple's

24  Motion to Dismiss.

25  Dated:  May 18, 2012                          Respectfully submitted,

26

27                                               By _____/s/ Christopher S. Yates_____
                                                 Christopher S. Yates
28  SF\960575                                     Attorneys for Defendant APPLE INC.

                                                14