IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Apple iPhone Antitrust Litigation | NO. C 11-06714 JW |
| _____/ | **ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO COMPEL ARBITRATION; GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiffs[1] bring this putative class action against Apple, Inc. ("Defendant") alleging violations of Section 2 of the Sherman Act, 15 U.S.C. § 2. Plaintiffs allege that Defendant violated the Sherman Act by conspiring with non-party AT&T Mobility, LLC ("ATTM") to monopolize an alleged aftermarket for voice and data services for iPhones, and also by monopolizing or attempting to monopolize an alleged aftermarket for software applications aftermarket for iPhones.

Presently before the Court are Defendant's Motion to Compel Arbitration[2] and Motion to Dismiss.[3] The Court conducted a hearing on June 18, 2012. Based on the papers submitted to date

---

[1] Named Plaintiffs are Robert Pepper, Stephen H. Schwartz, Edward W. Hayter, Harry Bass, Eric Terrell, James Blackwell and Crystal Boykin.

[2] (Defendant Apple's Notice of Motion and Motion to Compel Arbitration of Claims; Memorandum of Points and Authorities in Support Thereof, hereafter, "Motion to Compel," Docket Item No. 48.)

[3] (Defendant Apple's Notice of Motion and Motion to Dismiss Plaintiffs' Consolidated Complaint; Memorandum of Points and Authorities in Support Thereof, hereafter, "Motion to Dismiss," Docket Item No. 37 (filed under seal).)

and oral argument, the Court DENIES without prejudice Defendant's Motion to Compel Arbitration and GRANTS in part Defendant's Motion to Dismiss.

## II.  BACKGROUND

**A.     Factual Allegations**

In a Consolidated Class Action Complaint[4] filed on March 21, 2012, Plaintiffs allege as follows:

> Plaintiffs are individuals residing in California, New York and Illinois. (Complaint ¶¶ 12-15.) Defendant is a California corporation that regularly conducts and transacts business in the Northern District of California, and which manufactures, markets and sells the iPhone. (Id. ¶ 16.)
>
> On January 9, 2007, Defendant announced that it had entered into an Exclusivity Agreement (the "Agreement") with ATTM whereby ATTM would be the only authorized provider of wireless voice and data services for iPhones in the United States. (Complaint ¶ 52.) Under this Agreement, Defendant and ATTM agreed to share the revenue for voice and data services received from iPhone customers. (Id. ¶ 53.) The Agreement also provided that ATTM would be the exclusive provider of voice and data services for the iPhone for five years, meaning that iPhone customers would have no choice but to continue purchasing voice and data services from ATTM until sometime in 2012 in order for their iPhones to continue to operate. (Id. ¶ 54.) Further, the Agreement provided that Defendant and ATTM would enforce ATTM's exclusivity by installing SIM card Program Locks on all iPhones, and by agreeing never to disclose certain "unlock codes" to iPhone owners who wished to replace those SIM cards.[5] (Id. ¶ 55.) None of the details of the Agreement were disclosed to

---

[4]  (hereafter, "Complaint," Docket Item No. 26.)

[5]  A SIM card is a removable card that allows phones to be activated, interchanged, swapped out and upgraded. (Complaint ¶ 40.) The SIM card is tied to the phone's network, rather than to the physical phone device itself. (Id.) Thus, to switch from, e.g., the ATTM phone network to the T-Mobile phone network, the owner of a cell phone may remove from his phone the SIM card associated with the ATTM network and replace it with a SIM card associated with the T-Mobile

2

purchasers of the iPhone, nor did any purchaser of an iPhone ever contractually consent to any of the terms of the Agreement upon buying an iPhone. (Id. ¶ 61.)

In 2007, Defendant introduced the iPhone. (Complaint ¶ 21.) Between 2007 and 2010, Plaintiffs purchased one or more iPhones, and also purchased wireless voice and data services from ATTM for their iPhones. (Id. ¶ 25.) Several Plaintiffs wanted to have the option of switching to a competing voice and data service provider other than ATTM, and one Plaintiff wanted to have the ability to unlock his SIM card. (Id. ¶¶ 29-32.) However, due to the Agreement, Plaintiffs were effectively locked into using ATTM as their voice and data service provider for the duration of the Agreement, i.e., for five years, and were unable to obtain the unlock codes that would enable them to use a different SIM card. (Id. ¶¶ 26-27.) Through the Agreement, Defendant conspired with ATTM to monopolize the iPhone Voice and Data Services Aftermarket. (Id. ¶ 97.) Due to this conspiracy, ATTM unlawfully achieved an economically significant degree of market power in the iPhone Voice and Data Services Aftermarket, and effectively foreclosed new and potential entrants from entering the market or gaining their naturally competitive market shares. (Id. ¶ 98.)

In addition, the iPhone supports a number of Applications which may be used on the device. (Complaint ¶ 5.) After the iPhone 2G was launched, a number of third-party providers began to create Applications for it, including Applications that gave users access to instant messaging programs and ringtone programs, from which Defendant derived no revenue. (Id. ¶¶ 63-66.) Defendant has unlawfully acquired monopoly power over an aftermarket for iPhone Applications by, *inter alia*, refusing to approve Applications that do not generate revenues for Defendant, discouraging iPhone owners from using competing Applications created by third-party providers, and programming the iPhone operating system

---

network. (Id. ¶ 41.) However, certain SIM cards are "locked" to particular phones, which means that the owner of that phone cannot change networks simply by changing SIM cards. (Id. ¶ 44.) In the case of such locked SIM cards, the network can only be changed if the owner of the phone is provided with an "unlock code" which unlocks the SIM card. (Id.)

3

in a way that prevents iPhone owners from downloading and using competing Applications. (Id. ¶ 86.)

On the basis of the allegations outlined above, Plaintiffs assert three causes of action: (1) Unlawful Monopolization of the Applications Aftermarket, in Violation of Section 2 of the Sherman Act; (2) Attempted Monopolization of the Applications Aftermarket, in Violation of Section 2 of the Sherman Act; and (3) Conspiracy to Monopolize the iPhone Voice and Data Services Aftermarket, in Violation of Section 2 of the Sherman Act.

**B.    Procedural History**

On December 29, 2011, Robert Pepper, Stephen H. Schwartz, Edward W. Hayter and Harry Bass (collectively, "Pepper Plaintiffs") filed a Class Action Complaint. (See Docket Item No. 1.) The Pepper Plaintiffs are represented by Wolf Haldenstein. (Id.) On January 17, 2012, Eric Terrell, James Blackwell and Crystal Boykin (collectively, "Terrell Plaintiffs") filed a substantially identical Class Action Complaint.[6] The Terrell Plaintiffs were represented by the Terrell Law Group. (Id.) On March 20, 2012, the Court ordered that the two cases be consolidated.[7] On March 21, 2012, Plaintiffs filed their Consolidated Class Action Complaint. (See Complaint.) On March 29, 2012, the Court issued an order requesting motions for appointment of interim class counsel.[8] On April 9, 2012, on the basis of its finding that Wolf Haldenstein could adequately represent the interests of the class, and insofar as no other representative sought appointment as class counsel, the Court appointed Wolf Haldenstein as class counsel.[9]

Presently before the Court are Defendant's Motion to Compel Arbitration and Motion to Dismiss.

---

[6]  (See Docket Item No. 1 in Terrell v. Apple Inc., No. C 12-00259 JW.)

[7]  (See Order Vacating Case Management Conference; Consolidating Cases; Denying Motion to Dismiss as Moot, Docket Item No. 25.)

[8]  (Order Granting in Part Motion to Change Time, Docket Item No. 31.)

[9]  (See Order Appointing Interim Class Counsel at 3, Docket Item No. 34.)

4

### III.  STANDARDS

**A.  Motion to Compel Arbitration**

It is fundamental that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2010) (citations omitted). However, it is also well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1011 (9th Cir. 2004) (citation omitted). Congress created the Federal Arbitration Act ("FAA") to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements on the same footing as other contracts." Id. (citation omitted). "A party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Id. at 1012 (quoting 9 U.S.C. § 4). The district court's "role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." See id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). A court interpreting the scope of an arbitration provision should apply ordinary state law principles of contract construction. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, arbitration should only be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986) (quoting United Steelworkers v. Warrior Gulf Navigation Corp., 363 U.S. 574, 582-83 (1960)).

**B.  Motion to Dismiss**

Under Fed. R. Civ. P. 12(b)(7), a party may bring a motion to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 19 provides that a party "must be joined" if, in that party's absence, the court "cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a). Under Rule 19, courts undertake a three-step analysis to determine whether an absent party should

5

be joined. See E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005). First, the court must determine whether the absent party is "necessary." See Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 819 (9th Cir. 1985). A party is "necessary" if, *inter alia*, "complete relief cannot be accorded among those already parties" in that party's absence. Id. (citing Fed. R. Civ. P. 19(a)). Second, if the absent party is a "necessary party under Rule 19(a)," the court must determine "whether it is feasible to order that the absentee be joined." Peabody W. Coal Co., 400 F.3d at 779. Third, "if joinder is not feasible," the court must determine "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." Id.

## IV. DISCUSSION

**A.   Motion to Compel Arbitration**

Defendant moves to compel Plaintiffs to arbitrate their claims, on the grounds that: (1) the claims in this action are "identical" to the claims brought against Defendant in a previous case brought by Plaintiffs' counsel; and (2) the Court granted Defendant's motion to compel arbitration in the previous case, which means that arbitration is also appropriate in this case.[10] Plaintiffs respond that the Court should not compel them to arbitrate their claims, on the grounds that: (1) the "legal basis upon which the Court relied in the prior action to compel those plaintiffs to arbitrate their claims against [Defendant] no longer applies," because the Ninth Circuit opinion upon which the Court relied "is no longer valid";[11] and (2) even if the legal basis upon which the Court relied in the prior action does still apply, arbitration should not be compelled in this case, as neither of the

---

[10] (Motion to Compel at 1-2.) The previous case is In re Apple & ATTM Antitrust Litigation. On December 1, 2011, the Court granted motions to compel arbitration that had been brought by the defendants in that case, namely, Apple and ATTM. See In re Apple & AT&TM Antitrust Litig., 826 F. Supp. 2d 1168, 1171 (N.D. Cal. 2011).

[11] In the previous case, the Court relied upon the Ninth Circuit's opinion in Mundi v. Union Security Life Insurance Company to reach the conclusion that the defendant, Apple, could invoke the doctrine of equitable estoppel to compel arbitration against plaintiffs, even though Apple was a non-signatory to the arbitration agreement at issue in the case. See In re Apple & AT&TM Antitrust, 826 F. Supp. 2d at 1175-79 (discussing Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042 (9th Cir. 2009)).

6

1  tests required for arbitration to be compelled are applicable.[12]  The Court considers each ground in
2  turn.

### 1. Continuing Validity of Mundi

At issue is whether the Ninth Circuit opinion–i.e., Mundi–on which the Court relied in determining that a non-signatory defendant may compel arbitration against a signatory plaintiff is still valid.

"Circuit law . . . binds all courts within a particular circuit, including the court of appeals itself." Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001).  "Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals." Id.  "Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." Id.

Here, as discussed above, the Court relied upon the Ninth Circuit's opinion in Mundi v. Union Security Life Insurance Company in reaching its decision regarding the applicability of equitable estoppel in this context.  However, Plaintiffs contend that the Ninth Circuit has "recently . . . declar[ed] that Mundi . . . is no longer valid." (Arbitration Opp'n at 2.)  For this proposition, Plaintiffs rely upon an unpublished opinion issued by the Ninth Circuit on March 5, 2012, in which the Ninth Circuit stated that another district court had erred by following Mundi rather than a Supreme Court decision that was issued several months after Mundi.[13]  Upon review, however, the Court finds that Plaintiffs' contention is misguided.  First, it is clear as a matter of Ninth Circuit law

---

[12] (Plaintiffs' Opposition to Defendant Apple Inc.'s Motion to Compel Arbitration at 3-17, hereafter, "Arbitration Opp'n," Docket Item No. 61.)

[13] See Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co., No. 10-55451, 2012 WL 689957, at *1 (9th Cir. Mar. 5, 2012) (citing Mundi and Arthur Andersen v. Carlisle, 556 U.S. 624 (2009)). Only two sentences of the Ninth Circuit's unpublished opinion in Allianz speak to this issue; they are as follows: "The district court held that [the defendant] was equitably estopped from refusing to arbitrate under its own contractual arbitration clause, where the issues in [the plaintiff's] claim are intertwined with issues arising out of the manner in which [the defendant] performed its obligations under [a sales contract]. The district court applied our court's decision in [Mundi], while under the Supreme Court's decision in [Arthur Andersen], the district court should have applied state law, not federal common law." Id. Because the court in Allianz found that this "misstatement of the applicable law [was] not material," it did not elaborate this discussion any further. Id.

7

1  that Mundi, which is a precedential opinion, may only be overruled by the Ninth Circuit itself sitting
2  *en banc* or by the Supreme Court. Hart, 266 F.3d at 1171. Thus, the Ninth Circuit's unpublished
3  opinion in Allianz cannot have "declared" Mundi invalid, as a matter of Ninth Circuit law. Id.
4  Second, the Court finds that it is not clear that the Supreme Court's opinion in Arthur Andersen
5  "overruled" Mundi. In Arthur Andersen, the Supreme Court held that state law "is applicable to
6  determine which contracts" are binding and enforceable, under the Federal Arbitration Act, "*if* that
7  [state] law arose to govern issues concerning the validity, revocability, and enforceability of
8  contracts generally." Arthur Andersen, 556 U.S. at 630-31 (emphasis in original).[14] Thus, Arthur
9  Andersen does not state categorically that courts must always apply state law, rather than federal
10 common law, in this type of situation. Rather, it states only that courts should apply state law *if* that
11 law "arose to govern [certain] issues."[15] Id.

12      Further, the Court observes that it is unclear that the Ninth Circuit, in Mundi, was
13 expounding "federal common law." It is true that the FAA created a "federal common law of
14 arbitrability which preempts state law disfavoring arbitration." See, e.g., Circuit City Stores, Inc. v.
15 Adams, 279 F.3d 889, 892 (9th Cir. 2002) (citations omitted). Nonetheless, courts have long

---

[14] Two years after Arthur Andersen, the Supreme Court held that a state-law rule that "interferes with arbitration" was preempted by the Federal Arbitration Act ("FAA"), insofar as that rule was an "obstacle to the accomplishment of the FAA's objectives." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748-50 (2011). In Concepcion, the Supreme Court did not discuss its prior decision in Arthur Andersen in any way, leaving the relationship between those two decisions unclear. In the aftermath of Concepcion, some courts have reconciled the two decisions by explaining that the "interpretation of an arbitration agreement is . . . generally a matter of state law, *unless* application of state-law rules would stand as an obstacle to the accomplishment of the FAA's objectives." See, e.g., YahooA Inc. v. Iversen, No. 11-CV-03282-LHK, 2011 WL 4802840, at *2 (N.D. Cal. Oct. 11, 2011) (internal quotations and citations omitted) (emphasis added).

[15] As another district court in the Ninth Circuit has recently explained, it is unclear whether Arthur Andersen "effected an Erie-like abrogation of federal law in favor of state law" or merely "affirm[ed] the federal nature of the estoppel question, but only to the extent that the federal law tracks traditional principles of state law." Kingsley Capital Mgmt., LLC v. Sly, 820 F. Supp. 2d 1011, 1021-23 (D. Ariz. 2011) (internal quotations omitted) (collecting cases). At least one circuit has declined to clarify, post-Arthur Andersen, whether the "principles of contract and agency law" that "may be called upon to bind a nonsignatory" to an arbitration agreement are to be drawn from state law or from the "federal substantive law of arbitrability." DK Joint Venture 1 v. Weyand, 649 F.3d 310, 314 (5th Cir. 2011) (citations omitted). In DK Joint Venture, the Fifth Circuit refused to decide whether state or federal law applies in this situation, on the basis of the court's determination that "both bodies of law lead [in a case involving Texas law] to the same conclusion." Id.

United States District Court
For the Northern District of California

1 recognized that in "determining the validity of an agreement to arbitrate, federal courts should apply
2 ordinary state-law principles that govern the formation of contracts." Id. (citation and internal
3 quotations omitted). Indeed, the court in Mundi expressly recognized this principle.[16] The court
4 went on to explain that "[g]eneral contract and agency principles"–in particular, the principle of
5 equitable estoppel–"apply in determining the enforcement of an arbitration agreement by or against
6 nonsignatories." Mundi, 555 F.3d at 1045-46. In the course of its elaboration of the principle of
7 equitable estoppel in the arbitration context, the court in Mundi looked to the decisions of other
8 circuit courts. See id. However, those other decisions were themselves grounded in "ordinary state-
9 law principles," rather than in a freestanding "federal common law" governing the validity of
10 contracts.[17] Thus, the mere fact that the court in Mundi referred to other federal court opinions in
11 formulating its holding regarding equitable estoppel does not mean that Mundi was stating "federal
12 common law."

13 In sum, the Court declines to adopt Plaintiffs' interpretation of Allianz. In reaching this
14 conclusion, the Court is mindful of the Ninth Circuit's admonition that its non-precedential opinions
15 are "not written in a way that will be fully intelligible to those unfamiliar to the case," and in
16 particular its admonition that the "rule of law [in non-precedential opinions] is not announced in a
17 way that makes it suitable for governing future cases." Hart, 266 F.3d at 1178. As the Ninth Circuit

---

[16] See Mundi, 555 F.3d at 1044 (stating that "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts "generally . . . should apply ordinary state-law principles that govern the formation of contracts") (citation omitted).

[17] As an example, the court in Mundi observed that one of the two "types of equitable estoppel in the arbitration context" that had previously been examined by the Ninth Circuit was one in which a nonsignatory may be held to an arbitration clause where it "knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement." Mundi, 555 F.3d at 1046 (internal quotations and citations omitted). For this proposition, the court in Mundi relied upon the Ninth Circuit's earlier opinion in Comer v. Micor, Inc. See id. (citing Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006)). In Comer itself, however, the Ninth Circuit recognized that in considering the question of "whether a particular *party* is bound by [an] arbitration agreement," the "liberal federal policy regarding the scope of arbitrable issues is inapposite." Comer, 436 F.3d at 1104 n.11 (emphasis in original) (citation omitted). Instead, the court in Comer stated that "[o]rdinary contract principles determine who is bound," and expressly relied upon "ordinary contract and agency principles" in arriving at its holding. Id. at 1101-04 & n.11 (citations omitted).

explained in Hart, the advantage of issuing non-precedential opinions is that the appellate court may thereby conserve judicial time and effort, freeing it to "spend the requisite time drafting precedential opinions in [other] cases." Id. The court went on to observe that, given the nature of non-precedential opinions, it would be inefficient to allow parties to cite them, insofar as the absence of "precisely crafted holdings" in such opinions would tempt "zealous counsel . . . to seize upon superficial similarities between their clients' cases and unpublished dispositions." Id. It is true that, following Hart, the Ninth Circuit revised its rule regarding citation of unpublished dispositions and allowed them to be cited to the courts of the Ninth Circuit in certain circumstances. See 9th Cir. R. 36-3. However, the Court finds that the reasoning in Hart applies to this case, especially given the fact that the court in Allianz did not announce a "rule of law" regarding the relation of Arthur Andersen to Mundi that is "fully intelligible to those unfamiliar with [Allianz]." Hart, 266 F.3d at 1178.[18]

Accordingly, the Court finds that the Ninth Circuit's opinion in Mundi is still valid with regard to the issue of whether a non-signatory defendant may compel arbitration against a signatory plaintiff.

### 2. Whether Equitable Estoppel May Be Applied in This Case

At issue is whether Defendant satisfies the requirements to invoke the doctrine of equitable estoppel against Plaintiffs to compel arbitration.

A defendant that is a non-signatory to an agreement providing for arbitration may compel arbitration of claims by a plaintiff that is a signatory to such an agreement on the basis of equitable estoppel, so long as two requirements are met: (1) the subject matter of the dispute must be

---

[18] Moreover, the Court observes that on February 1, 2012, it certified for interlocutory appeal the issue of whether a non-signatory defendant may assert equitable estoppel against a signatory plaintiff, as that issue was presented by the Court's order in the In re Apple & ATTM Antitrust Litigation that relied upon Mundi. See In re Apple & AT&TM Antitrust Litig., No. C 07-05152 JW, 2012 WL 293703 (N.D. Cal. Feb. 1, 2012). However, on April 27, 2012–i.e., *after* the Ninth Circuit issued its unpublished order in Allianz–the Ninth Circuit denied the plaintiffs in that case permission to appeal that issue. See In re Apple iPhone 3G Prods. Liability Litig., MDL No. C 09-02045 JW, 2012 WL 1622643, at *8 n.38 (N.D. Cal. May 9, 2012) (discussing the Ninth Circuit's denial).

"intertwined with the contract providing for arbitration"; and (2) there must be a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." In re Apple & AT&TM Antitrust Litig., 826 F. Supp. 2d at 1177 (citing Mundi, 555 F.3d at 1045-46).

Upon review, the Court finds that Defendant does not satisfy both requirements to invoke the doctrine of equitable estoppel in this case. In particular, the Court finds that Defendant has not shown that the subject matter of this dispute is "intertwined with the contract providing for arbitration," insofar as two of Plaintiffs' three causes of action–namely, their causes of action involving an alleged aftermarket for applications for the iPhone–might pertain solely to Defendant's solitary actions with regard to applications for its iPhones, and thus might not be judged to be "intertwined with" the service agreement issued by ATTM.[19]

The Court rejects Defendant's contention that the Court should order Plaintiffs to arbitrate their claims in this case because these claims are "the same" as the claims that were subjected to arbitration in the In re Apple & AT&TM Antitrust Litigation. (Motion to Compel at 2-3.) In the earlier case, Apple moved to compel arbitration of all of the plaintiffs' claims, including claims relating to an alleged aftermarket for applications, on the grounds that: (1) the plaintiffs in that case had "sought to certify a single class . . . to pursue both [their] voice and data aftermarket claims *and* [their] applications aftermarket claims"; and (2) the Court had granted plaintiffs' motion for class certification and "certified a unified class, adopting plaintiffs' proposed class definition, to pursue *both* sets of claims."[20] In its order compelling arbitration, the Court specifically found that the plaintiffs' claims in that case were "intertwined" with the contract at issue, insofar as: (1) "[the

---

[19] The contract at issue is ATTM's Wireless Service Agreement ("WSA"), which is not mentioned in Plaintiffs' Complaint in this case. The Court discussed the WSA in its orders in the In re Apple & AT&TM Antitrust Litigation. See, e.g., In re Apple & AT&TM Antitrust Litig., 2012 WL 293703, at *2.

[20] (See Defendant Apple's Notice of Motion and Motion to Compel Arbitration and for Decertification at 14-15, Docket Item No. 514 in No. C 07-05152 JW (emphases added).)

11

plaintiffs] themselves have contended throughout [that case] that their antitrust *and related* claims against [ATTM and Apple] arise from their respective ATTM service contracts"; and (2) the Court had "certified a single unified class," at the plaintiffs' request, comprising "[a]ll persons who purchased or acquired an iPhone in the United States and entered into a two-year agreement with [ATTM] for iPhone voice and data service [at] any time from June 29, 2007, to the present." In re Apple & AT&TM Antitrust Litig., 826 F. Supp. 2d at 1178 (citations omitted) (emphasis added). Here, by contrast, Plaintiffs have not contended that any of their claims arise from ATTM service contracts.[21]  Moreover, the Court has not yet certified any class in this case.  Thus, the Court finds that its decision to compel arbitration, under the doctrine of equitable estoppel, of the claims in the In re Apple & AT&TM Antitrust Litigation is not apposite to the present Motion.

Below, the Court finds that ATTM is a necessary party, at least as to any claims relating to voice and data services.  Plaintiffs are given leave to file an amended complaint adding ATTM should they wish to continue to pursue those claims.  Because the disposition of the Motion to Compel Arbitration might be affected by the claims and parties in the Amended Complaint, the Court DENIES without prejudice Defendant's Motion to Compel Arbitration.

**B.**     **Motion to Dismiss**

Defendant moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(7), on the grounds that: (1) the Complaint fails to name ATTM as a Defendant; but (2) ATTM is both a necessary and an indispensable party, pursuant to Fed. R. Civ. P. 19.  (Motion to Dismiss at 5-13.)  Plaintiffs respond that ATTM is neither a necessary nor an indispensable party, pursuant to Rule 19.[22]  The Court considers in turn the issues of whether ATTM is a necessary party and whether, if ATTM is a necessary party, it is feasible for ATTM to be joined.

---

[21] In fact, Plaintiffs expressly contend that their claims do not rely "upon the WSA in any way."  (Arbitration Opp'n at 12.)  At this time, the Court does not reach the question of whether Plaintiffs must rely upon the WSA to advance any or all of their claims.

[22] (Plaintiffs' Opposition to Defendant Apple Inc.'s Motion to Dismiss Consolidated Complaint, hereafter, "Dismiss Opp'n" (filed under seal).)

12

### 1. Is ATTM a Necessary Party?

At issue is whether ATTM is a necessary party, pursuant to Fed. R. Civ. P. 19(a).

As a general rule, it "is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990). However, if a plaintiff's antitrust claims require a court to evaluate the conduct of an absent party that is alleged to be an antitrust co-conspirator with a defendant, thereby "substantially implicating [the] interests" of that party, the absent party is necessary pursuant to Rule 19(a).[23]

Here, Plaintiffs allege in pertinent part:

> Apple knowingly and intentionally conspired with ATTM with the specific intent to monopolize the iPhone Voice and Data Services Aftermarket. (Complaint ¶ 97.) In furtherance of the conspiracy, Apple and its co-conspirator [i.e., ATTM] agreed without Plaintiffs' knowledge or consent to make ATTM the exclusive provider of voice and data services for the iPhone for five years. (Id.) ATTM unlawfully achieved an economically significant degree of market power in the iPhone Voice and Data Services Aftermarket as a result of the conspiracy and effectively foreclosed new and potential entrants from entering the market or gaining their naturally competitive market shares. (Id. ¶ 98.) Apple and ATTM's conspiracy reduced output and competition and resulted in increased prices in the iPhone Voice and Data Services Aftermarket and, thus, harmed competition generally in that market. (Id. ¶ 99.)

Based on the allegations above, the Court finds that ATTM is a necessary party pursuant to Rule 19(a). In particular, the Court finds that in order to evaluate Plaintiffs' antitrust claims in regard to the alleged conspiracy to monopolize the alleged iPhone Voice and Data Services Aftermarket, the Court will be required to evaluate ATTM's conduct, insofar as Plaintiffs allege, *inter alia*, that ATTM unlawfully achieved market power in that Aftermarket due to the conspiracy and thereby foreclosed other companies from entering the market. (Complaint ¶ 98.) Such an evaluation of ATTM's conduct would necessarily implicate the interests of ATTM, which means that ATTM is a necessary party pursuant to Rule 19(a). Laker Airways, 182 F.3d at 847-48.

Plaintiffs' contention that the Court should not rely upon Laker Airways because it is an "outlier that has not been accepted in the Ninth Circuit" is misguided. (Dismiss Opp'n at 12-15.)

---

[23] See Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 847-48 (11th Cir. 1999) (citing Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F. Supp. 92, 105-06 (C.D. Cal. 1971), affirmed, 461 F.2d 1261 (9th Cir. 1972)).

1  First, Plaintiffs cite no case in which the Ninth Circuit has disapproved of the rule regarding antitrust
2  co-conspirators enunciated in Laker Airways; nor is the Court aware of any such case. Second, the
3  court in Laker Airways itself relied upon a decision from the Ninth Circuit in formulating its
4  statement of that rule,[24] which belies Plaintiffs' contention that the rule is not "accepted" in the
5  Ninth Circuit. Finally, the Court observes that several other district courts within the Ninth Circuit
6  have recently cited with approval the rule enunciated in Laker Airways.[25]
7  Accordingly, the Court finds that ATTM is a necessary party.

**2.    Is It Feasible for ATTM to Be Joined?**

At issue is whether it is feasible for ATTM to be joined.

If an absent party is a necessary party under Rule 19(a), the court must determine whether it is "feasible" to order that the absent party be joined. Peabody W. Coal Co., 400 F.3d at 779. There are three circumstances "in which joinder is not feasible": (1) "when venue is improper"; (2) "when the absentee is not subject to personal jurisdiction"; and (3) "when joinder would destroy subject matter jurisdiction." Id.

---

[24] The court in Laker Airways relied upon a decision of the Central District of California. See Laker Airways, 182 F.3d at 847 (citing Occidental Petroleum, 331 F. Supp. at 105-06). In Occidental Petroleum, the district court explained that while it is "generally" true that joint tortfeasors need not be joined, that principle "must be applied in context." 331 F. Supp. at 105-06. In particular, the court found that an absent party's "status as a joint tortfeasor" did not "negate its status as a contractual party[] with interests that are covered by Rule 19(a)." Id. at 106. The district court's decision was affirmed by the Ninth Circuit in a per curiam opinion that simply stated that the district court's "extensive and well-researched opinion" was "correct." Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 461 F.2d 1261, 1261 (9th Cir. 1972).

[25] See Dollens v. Target Corp., No. C 11-03265 RMW, 2011 WL 6033014, at *2 (N.D. Cal. Dec. 5, 2011) (citing to Laker Airways to support the court's conclusion that an absent party should be joined as a defendant, insofar as the court's analysis of another party's liability would "necessarily require the court to evaluate the [absent party's] conduct in a manner that would surely implicate her interests"); In re Toyota Motor Corp., 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011) (citing to Laker Airways for the proposition that an absent joint tortfeasor is a necessary party if it is an "active participant in the allegations that are critical to the disposition of the litigation").

14

Here, the Court finds that it is feasible for ATTM to be joined, insofar as this is a proper venue, ATTM is subject to the Court's personal jurisdiction, and joinder would not destroy the Court's subject matter jurisdiction.[26] Peabody W. Coal Co., 400 F.3d at 779.

Plaintiffs contend that joinder of ATTM is not feasible because: (1) ATTM "will immediately move to compel arbitration of the claims against it"; (2) the Court is "practically certain" to grant such a motion; and (3) in that case, ATTM would be "dismissed for improper venue." (Dismiss Opp'n at 15.) However, the Court finds that each aspect of this contention is misguided. Plaintiffs cite no case for the proposition that courts should consider the possibility that an absent party will move to compel arbitration when conducting a feasibility analysis under Rule 19; nor is the Court aware of any case standing for that proposition. Plaintiffs' other contentions are premature and speculative.

Accordingly, the Court finds that it is feasible for ATTM to be joined.

In sum, because the alleged conspiracy is with ATTM to monopolize or attempt to monopolize the aftermarket for voice and data services, the Court finds that ATTM is a necessary party which can, and therefore must, be joined. Therefore, the Court GRANTS Defendant's Motion to Dismiss for failure to join a necessary party under Fed. R. Civ. P. 12(b)(7).[27]

## V. CONCLUSION

The Court DENIES without prejudice Defendant's Motion to Compel Arbitration and GRANTS in part Defendant's Motion to Dismiss. The Court finds that ATTM is a necessary party

---

[26] In a recent case, the Court similarly found that it was feasible, under Rule 19, for ATTM to be joined as a defendant. See In re Apple iPhone 3G Prods. Liability Litig., MDL No. C 09-02045 JW, 2011 WL 6019217, at *4 (N.D. Cal. Dec. 1, 2011).

[27] In its Motion to Dismiss, Defendant also moves, under Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Third Cause of Action–namely, their cause of action for conspiracy to monopolize the iPhone Voice and Data Services Aftermarket–for failure to state a claim. (Motion to Dismiss at 17-22.) However, Defendant's contentions as to this issue are predicated on their contention that such a claim cannot be stated in the absence of ATTM. (See id. at 17 (contending that "[w]ithout ATTM in the picture, Plaintiffs cannot adequately allege a conspiracy to make ATTM a monopolist").) In light of the Court's ruling that ATTM must be made a party, the Court DENIES as premature Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action, without prejudice to renew on a different ground after ATTM has been joined.

15

and therefore must be joined as a party under Fed. R. Civ. P. 12(b)(7). All other grounds for dismissal are DENIED as premature.[28]

The Court ORDERS that ATTM be made a party to this action.[29] On or before **July 31, 2012**, Plaintiffs shall file an Amended Complaint consistent with the terms of this Order.

The Court previously vacated the Case Management Conference in this case in light of the pending Motions. The Court now sets **September 24, 2012 at 10 a.m.** as the new Conference date. On or before **September 14, 2012**, the parties shall file a Joint Case Management Statement with a proposed schedule on how this case should proceed.

Dated: July 11, 2012

JAMES WARE
United States District Chief Judge

---

[28] Accordingly, the Court DENIES as moot Plaintiffs' Civil L.R. 7-3 Motion for Permission to File a Sur-Reply Brief on Apple Inc.'s Motion to Compel Arbitration, Docket Item No. 66. In addition, Defendant has objected to certain evidence submitted by Plaintiffs in relation to the Motion to Compel Arbitration. See Defendant Apple's Objection to Evidence Submitted by Plaintiffs in Connection with Apple's Motion to Compel Arbitration, Docket Item No. 69. However, the Court has not relied upon any of the evidence at issue. Accordingly, the Court OVERRULES as moot Defendant's objections. Finally, after the June 18 hearing, Plaintiffs filed a Motion for Leave to File a Supplemental Brief addressing certain issues. (See Plaintiffs' L.R. 7-3 Motion for Permission to File a Supplemental Brief on Apple Inc.'s Motion to Dismiss [ECF No. 37] and Motion to Compel Arbitration [ECF No. 48], hereafter, "Supplemental Brief Motion," Docket Item No. 72.) However, upon review, the Court finds that the Supplemental Brief provided in this Motion is either unnecessary, insofar as it merely reiterates arguments regarding Rule 19 that have already been made in the parties' briefing, or moot, insofar as it opposes the Motion to Compel Arbitration. (See id.) Accordingly, the Court DENIES the Supplemental Brief Motion.

[29] This Order is not intended to *require* that Plaintiffs maintain claims based on an alleged voice and data services aftermarket. Instead, it holds that insofar as Plaintiffs wish to maintain such claims, ATTM must be added as a party.

16

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alexander H. Schmidt schmidt@whafh.com
Betsy Carol Manifold manifold@whafh.com
Christopher S. Yates chris.yates@lw.com
Francis M. Gregorek gregorek@whafh.com
Mark Carl Rifkin rifkin@whafh.com
Michael Milton Liskow liskow@whafh.com
Rachele R. Rickert rickert@whafh.com
Sadik Harry Huseny sadik.huseny@lw.com

**Dated: July 11, 2012**                           **Richard W. Wieking, Clerk**

                                                    **By:    /s/ JW Chambers**
                                                            **William Noble**
                                                            **Courtroom Deputy**