LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
  Christopher S. Yates (Bar No. 161273)
  Sadik Huseny (Bar No. 224659)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: Dan.Wall@lw.com
Email: Chris.Yates@lw.com
Email: Sadik.Huseny@lw.com

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION<br><br>ZACK WARD and THOMAS BUCHAR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>APPLE INC.,<br>Defendant. | CASE NO. C 11-06714-YGR<br>Related to Case Nos. C 07-05152-JW and C 11-06714-YGR<br><br>**REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**<br><br>Date: January 15, 2012<br>Time: 2:00 PM<br>Place: Courtroom 5<br><br>The Honorable Yvonne Gonzalez Rogers |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION .................................................................................................................1

II. PLAINTIFFS' VOICE AND DATA CLAIM AND ALLEGATIONS
WERE IMPROPERLY RE-PLED AND SHOULD BE STRICKEN ...................................3

III. APPLE'S MOTION TO DISMISS THE APPS CLAIMS IS NOT
BARRED BY RULE 12(g)....................................................................................................3

IV. APPLE IS NOT COLLATERALLY ESTOPPED FROM
CHALLENGING THE APPS CLAIMS................................................................................5

V. PLAINTIFFS' APPS CLAIMS FAIL AND MUST BE DISMISSED................................8

    A. Plaintiffs Do Not Have Antitrust Standing ............................................................. 8

    B. Plaintiffs Fail To Plead The Requisite Elements Of Their Antitrust
       Claims ...................................................................................................................... 9

       1. Plaintiffs Do Not Allege Unlawful Anticompetitive
          Conduct ....................................................................................................... 10

       2. Plaintiffs Do Not Allege That Apple Possesses Monopoly
          Power .......................................................................................................... 12

       3. Plaintiffs' Product Market Fails As A Matter of Law ............................ 13

VI. CONCLUSION .................................................................................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

## CASES

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
 592 F.3d 991 (9th Cir. 2010) ............................................................................................... 12

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ................................................................................. 5

*Am. Prof'l Testing Service Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pub'ns, Inc.*,
 108 F.3d 1147 (9th Cir. 1997) ............................................................................................. 11

*Anspach v. City of Philadelphia*,
 No. 08-4691, 2010 U.S. App. LEXIS 10277 (3d Cir. May 19, 2010) ................................... 6

*Apple Inc. v. Psystar Corp.*,
 586 F. Supp. 2d 1190 (N.D. Cal. 2008) ............................................................................... 14

*Brown Shoe v. United States*,
 370 U.S. 294 (1962) ............................................................................................................ 13

*Campos v. Ticketmaster Corp.*,
 140 F.3d 1166 (8th Cir. 1998) ............................................................................................... 8

*Chilicky v. Schweiker*,
 796 F.2d 1131 (9th Cir. 1986) ............................................................................................... 4

*Coleman v. Commissioner*,
 16 F.3d 821 (7th Cir. 1994) ................................................................................................... 6

*Cook v. Aagard*,
 No. 2:12cv00157, 2012 U.S. Dist. LEXIS 167425 (D. Utah Nov. 26, 2012) ....................... 7

*Gildorn Sav. Ass'n v. Commerce Sav. Ass'n*,
 804 F.2d 390 (7th Cir. 1986) ................................................................................................. 7

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
 790 F. Supp. 804 (C.D. Ill. 1992) ........................................................................................ 12

*Hamana v. Kholi*,
 No. 10cv1630 BTM (BGS), 2011 U.S. Dist. LEXIS 123306 (S.D. Cal. Oct. 24, 2011) ................................................................................................................................ 3

*Hydranautics v. FilmTec Corp.*,
 204 F.3d 880 (9th Cir. 2000) ................................................................................................. 6

*In re ATM Fee Antitrust Litig.*,
 686 F.3d 741 (9th Cir. 2012) ................................................................................................. 8

*In re Harmonic, Inc., Sec. Litig.*,
 No. C 00-2287 PJM, 2006 U.S. Dist. LEXIS 90450 (N.D. Cal. Dec. 11, 2006) .................. 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

*Kamilche Co. v. United States*,
    53 F.3d 1059 (9th Cir. 1995) ............................................................................................... 6

*Luben Indus., Inc. v. United States*,
    707 F.2d 1037 (9th Cir. 1983) ............................................................................................... 7

*Menasha Corp. v. New Am. Mktg. In-Store, Inc.*,
    354 F.3d 661 (7th Cir. 2004) ............................................................................................... 12

*POURfect Prods. v. KitchenAid*,
    No. CV-09-2660-PHX-GMS, 2010 U.S. Dist. LEXIS 42890 (D. Ariz. May 3,
    2010) .................................................................................................................................. 14

*Shred-It Am., Inc. v. Macnaughton*,
    2011 U.S. Dist. LEXIS 51933 (D. Haw. 2011) .................................................................. 14

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    534 F. Supp. 2d 1101 (N.D. Cal. 2007) ................................................................................ 3

*Sunnergren v. Ahern*,
    No. C 10-2690 LHD (PR), 2010 U.S. Dist. LEXIS 114874 (N.D. Cal. Oct. 27,
    2010) .................................................................................................................................... 4

*T.B. v. Chico Unified Sch. Dist.*,
    No. 2:07-CV-926-GEB-CMK, 2008 U.S. Dist. LEXIS 103170 (E.D. Cal. Dec.
    19, 2008) .............................................................................................................................. 4

*Universal Avionics Sys. Corp. v. Rockwell Intl. Corp.*,
    184 F. Supp. 2d 947 (D. Ariz. 2001) .................................................................................. 13

*Universal Grading Serv. v. eBay, Inc.*,
    No. C-09-2755 RMW, 2012 U.S. Dist. LEXIS 2325 (N.D. Cal. Jan. 9, 2012 ..................... 14

*Vega v. State Univ. of N.Y. Bd. of Trustees*,
    No. 97 CIV. 5767 (DCL), 2000 U.S. Dist. LEXIS 4749 (S.D.N.Y. Apr. 12,
    2000) .................................................................................................................................... 4

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ........................................................................................................... 10

*Wilson-Combs v. Cal. Dep't of Consumer Affairs*,
    555 F. Supp. 2d 1110 (E.D. Cal. 2008) ................................................................................ 3

*Young v. Hawaii*,
    No. 08-00540 DAE-KSC, 2009 U.S. Dist. LEXIS 28387 (D. Haw. Apr. 1,
    2009) .................................................................................................................................... 6

**OTHER AUTHORITIES**

Cal. Practice Guide: Fed. Civ. P. Before Trial §§ 9:17, 9:20 ....................................................... 4

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

iii

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

# RULES

Fed. R. Civ. P. 12(c), 12(g), 12(h) ................................................................................................ 4, 5

*Federal Practice and Procedure*, § 4433 ............................................................................................ 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

# I. INTRODUCTION

Apple's motion to dismiss challenged Plaintiffs to explain how Apple's opening of a new distribution platform for software applications ("Apps") for the iPhone could constitute anticompetitive conduct. Recognizing that the App Store has spurred the creation of nearly half a million new software products that have been downloaded over 35 billion times, Plaintiffs' opposition focuses on procedural arguments. Plaintiffs begin by accusing Apple of procedural gamesmanship and urging the Court to deny the motion on technical grounds. The accusations are false, but also ironic since this case is an effort to end run Judge Ware's orders compelling arbitration and joinder of ATTM.

*The Voice and Data Claim*. Plaintiffs concede that it was not necessary to re-plead the voice and data claim in order to preserve it for appeal. (Opp. at 2.) Plaintiffs re-pled nevertheless and contend that Apple will suffer no prejudice if the allegations supporting the voice and data claim remain in the complaint. Plaintiffs are not disclosing their true intent. The pleadings define the proper limits of discovery, and Plaintiffs in fact stated in their CMC Statement that they plan to *issue discovery* on the voice and data issues. This would obviously prejudice Apple (and non-party ATTM), imposing significant discovery costs based on irrelevant and extraneous allegations. It also subverts the arbitration that has been ordered with respect to the voice and data claim and results in a confusing complaint. The voice and data claim should be dismissed and all allegations pertaining to it should be stricken.

*The Apps Claims*. Rule 12(g) does not foreclose Apple's motion to dismiss under Rule 12(b)(1) and (6). The challenges to Plaintiffs' standing and their "failure to state a claim" are defenses that cannot be waived, as Plaintiffs themselves concede in their Opposition. Plaintiffs' 12(g) argument also is pointless, since Apple could raise the identical arguments in a motion under Rule 12(c) (again as Plaintiffs concede), and the Court should therefore hear this now.

Apple is not "collaterally estopped" from challenging the Apps claims for two simple reasons. First, the ruling in *iPhone I* was an interlocutory ruling that is not final. Second, the Apps issues in the two cases are entirely different. Plaintiffs' complaint in *iPhone I* was filed before Apple opened its App Store. It contained no allegations concerning developers setting the

prices of Apps, paying Apple 30% of the sales price of paid Apps, and the like. These are core to the current Apps claims. *iPhone I* argued that Apple had not permitted downloadable third party applications, had hidden that from consumers, and had destroyed the iPhones of consumers who downloaded third-party applications. Those arguments do not apply to this new case.

This brings us to the substance of the Apps claims. The Complaint alleges that Apple "artificially increased" prices for Apps through an "apportionment scheme" whereby App developers agree to pay Apple 30% of the sales price of Apps. This allegation is fatal to Plaintiffs' standing. These Plaintiffs do not have antitrust standing under the Supreme Court's *Illinois Brick* decision since the 30% fee that supposedly leads to the "artificially inflated" prices for Apps is a separate arrangement between the App developer and Apple. The Ninth Circuit recently held in *In re ATM Fees Antitrust Litigation* that *Illinois Brick* barred a substantively identical challenge to a fee arrangement between banks that allegedly led to an overpayment by consumers.

Plaintiffs' Complaint also fails to allege the fundamental elements of a monopolization claim. According to Plaintiffs, once they plead that consumers were "locked into" an aftermarket, all of the pleading requirements of a monopolization claim fall by the wayside. This includes not having to plead evidentiary facts regarding (1) the defendant's anticompetitive conduct, (2) the defendant's monopoly power, and (3) the boundaries of the product market, all necessary elements in any monopolization case. Plaintiffs cite *no* authority supporting this remarkable contention, which is not surprising because Plaintiffs are dead wrong. First, anticompetitive conduct is an essential element of *all* monopolization cases. Contrary to Plaintiffs' argument, *Newcal* stands for the proposition that merely alleging that consumers are "locked in" is insufficient; there, the plaintiff alleged fraud and deceit. Second, Plaintiffs must allege that the defendant has monopoly power. Finally, *Newcal* establishes that the normal product market definition rules apply in aftermarket cases, which means that a plaintiff must plead facts concerning the boundaries of the product market, including reasonable interchangeability. Plaintiffs must plead evidentiary facts to support *all three* of these elements; Plaintiffs fail to come close to pleading a single one of them.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

## II. PLAINTIFFS' VOICE AND DATA CLAIM AND ALLEGATIONS WERE IMPROPERLY RE-PLED AND SHOULD BE STRICKEN

Plaintiffs concede that it was *not* necessary to re-allege the dismissed voice and data count to preserve it for appeal. (Opp. at 2). As a result, the voice and data allegations should be stricken from the Amended Complaint. Pleadings have consequences. *See* F.R.C.P. 26(b)(1) ("any nonprivileged matter that is relevant to any party's claim or defense"). It is therefore not meaningless that a dismissed claim has been re-pled and Apple will certainly suffer prejudice if the dismissed count is allowed to remain. Indeed, Plaintiffs have made clear that they intend to use the voice and data allegations as a vehicle in discovery. For example, their CMC Statement claims an entitlement to discovery regarding "the negotiations and resulting agreements or understandings between Apple and ATTM concerning exclusivity, pricing, and profit sharing." (ECF No. 98 at 10.) Permitting this discovery would prejudice Apple (and non-party ATTM) by subverting the arbitrations ordered in *iPhone I* and leading to unnecessary expense. The voice and data count should be dismissed and all allegations concerning that count—the vast majority of the allegations in the Complaint—should be stricken.

## III. APPLE'S MOTION TO DISMISS THE APPS CLAIMS IS NOT BARRED BY RULE 12(g)

A "court may consider the defense of failure to state a claim at any time before trial." *See, e.g., Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1118-19 (N.D. Cal. 2007). Courts within this District and in sister districts of the Ninth Circuit have held that "under Rule 12(g), a party does *not* waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss." *In re Harmonic, Inc., Sec. Litig.*, No. C 00-2287 PJM, 2006 U.S. Dist. LEXIS 90450, at *39-40 (N.D. Cal. Dec. 11, 2006); *Wilson-Combs v. Cal. Dep't of Consumer Affairs*, 555 F. Supp. 2d 1110, 1113 n.3 (E.D. Cal. 2008) ("Under Fed. R. Civ. P. 12(g)(2), a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss."); *Hamana v. Kholi*, No. 10cv1630 BTM (BGS), 2011 U.S. Dist. LEXIS 123306, at *2-3 (S.D. Cal. Oct. 24, 2011) (same). Cases from outside the Ninth Circuit are in accord. *See, e.g., Vega v. State Univ. of N.Y. Bd. of Trustees*, No. 97 CIV. 5767 (DCL), 2000 U.S. Dist. LEXIS 4749, at

*5-6 (S.D.N.Y. Apr. 12, 2000) ("[Plaintiff] argues instead that if a Rule 12(b)(6) defense is raised in the first motion, no Rule 12(b)(6) defense may be raised in a successive motion. This position, however, is unsupported by case law and does not follow logically from the language of Rules 12(g) and 12(h)(2).").[1]

Challenges to standing—a question of subject matter jurisdiction—are also never waived. *See Wilson-Combs*, 555 F. Supp. 2d at 1113 n.3 ("If the court determines that it lacks subject matter jurisdiction at any time during the proceedings—even if established under a party's successive motion to dismiss—it must dismiss the action.")

Apple's motion to dismiss identifies a number of incurable defects in Plaintiffs' complaint which establish that Plaintiffs fail state a claim and do not have antitrust standing as to their Apps claims. Because these defenses cannot be waived, Apple's motion to dismiss is not barred by Rule 12(g) or 12(h) regardless of whether they were raised in the earlier motion to dismiss. Cal. Practice Guide: Fed. Civ. P. Before Trial § 9:17 ("the fundamental defenses of lack of subject matter jurisdiction and failure to state a claim or join an indispensable party are never waived. These three grounds can be raised at any time, even if omitted in earlier pleadings."); *see also id.* § 9:20.

Even assuming, *arguendo*, that Rules 12(g) and 12(h) bar Apple's instant motion to dismiss, which they do not, the Court has the discretion to address the arguments now in order to efficiently manage the case. If a court is satisfied that a "motion is not brought in bad faith or for dilatory purposes, and resolution of the motion would expedite the case," a court may adjudicate successive failure to state a claim arguments notwithstanding an argument that 12(g) bars the motion. *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-CV-926-GEB-CMK, 2008 U.S. Dist. LEXIS 103170, at *1-2 (E.D. Cal. Dec. 19, 2008); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.

---

[1] *Chilicky v. Schweiker*, 796 F.2d 1131 (9th Cir. 1986), cited by Plaintiffs, does not hold otherwise. The *Chilicky* court was specifically addressing *waivable* defenses and explained: "[a]ny time defendant makes a pre-answer Rule 12 motion, he must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b)." *Id*. at 1136 n.5. The same is true of *Sunnergren v. Ahern*, No. C 10-2690 LHD (PR), 2010 U.S. Dist. LEXIS 114874 (N.D. Cal. Oct. 27, 2010), and most of the other cases cited by Plaintiffs. "Waivable defenses" are completely different from defenses that cannot be waived—such as standing or a failure to state a claim (12(b)(1) and (6)) that are the basis for Apple's motion here—and Plaintiffs' cases are thus inapposite.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

Supp. 2d 1164, 1174-75 (C.D. Cal. 2011). Apple's motion to dismiss was not dilatory or brought in bad faith—it was simply the result of Plaintiffs' serial attempts to avoid Judge Ware's orders. Adjudication of these defenses now will certainly expedite the case. Since Apple can raise the same arguments in a 12(c) motion for judgment on the pleadings, as Plaintiffs themselves concede (Opp. at 8), if the defects in Plaintiffs' Apps claims are not addressed now, Apple will simply renew its arguments in a 12(c) motion.

## IV. APPLE IS NOT COLLATERALLY ESTOPPED FROM CHALLENGING THE APPS CLAIMS

Plaintiffs assert that Apple is collaterally estopped from challenging the Apps claims because it supposedly challenged the "same" claims in *iPhone I*. Plaintiffs even suggest that *iPhone I* alleged that Apple required "all 'approved' apps to be sold only through Apple's own 'Apps Store,' which enabled it to impose a fee equal to 30% of the price of any apps they sold. [citing Complaint at ¶¶ 71-73, 87-90, 122-132.]" (Opp. at 3.) This is not true. There are no allegations anywhere in the *iPhone I* complaint that mention the App Store or Apple retaining 30% of the price charged by developers for paid Apps. These are core allegations that support the "apportionment scheme" challenged in *this* case. That is because *there was no App Store at the time the iPhone I complaint was filed*. The *iPhone I* complaint focused on an earlier phase of Apple's Apps strategy when iPhone users were unable to download third party applications. The *iPhone I* plaintiffs attacked that, and Apple's supposed actions to enforce the restriction by destroying ("bricking") iPhones through iPhone software update 1.1.1. *iPhone I* complaint ¶¶ 4-6. These allegations are moot today given that a month after the *iPhone I* complaint was filed Apple created the App Store that has led to tens of billions of App downloads.

Plaintiffs' Apps claims have evolved into something quite different. They now complain about the terms on which Apple permits downloads. An argument that a claim about the terms on which Apple *permits* downloads is not the same as a claim about Apple *not permitting* downloads.

Collateral estoppel may preclude relitigation of an issue only where "an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is

essential to the judgment . . . ." Restat. 2d Judgments § 27; *see Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995). It is required that "the issue necessarily decided at the previous proceeding [be] ***identical*** to the one which is sought to be relitigated," *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (emphasis added). The burden of proving that the issues are identical rests with the party asserting collateral estoppel. *Young v. Hawaii*, No. 08-00540 DAE-KSC, 2009 U.S. Dist. LEXIS 28387, at *9 (D. Haw. Apr. 1, 2009). Collateral estoppel may not be applied here for three reasons.

***First***, the issues litigated in *iPhone I* are not the same as those raised by Apple's motion to dismiss the Apps claims here in *iPhone II*. The allegations and declarations in this case focus on Apple's App Store and the propriety of Apple's 30% revenue share (the alleged "apportionment scheme") for third party applications. *See* Complaint ¶¶ 5-7; Liskow Declaration, ECF No. 100, Exs. A-E, ¶¶ 3-8. The allegations in *iPhone I* were very different. In that case, the Plaintiffs alleged that Apple prohibited third party applications and "bricked" iPhones of users who had downloaded unauthorized third party applications. *iPhone I* complaint ¶¶ 5, 8-9, 12, 49, 56, 73, 96-106, 112, 123, 128. There is no way those issues are identical. *See Coleman v. Commissioner*, 16 F.3d 821, 830 (7th Cir. 1994) ("the issue implicated in the second suit must be identical in all respects to the issue decided in the first suit, with ***no change in the controlling facts*** and applicable legal rules") (emphasis added); *Anspach v. City of Philadelphia*, No. 08-4691, 2010 U.S. App. LEXIS 10277, at *10 (3d Cir. May 19, 2010) (allegations of "significant new facts" indicate that "issues in a successive suit may fail to constitute the same 'issue' as to merit preclusive effect").[2]

Plaintiffs try to bootstrap their way to preclusion by asserting that the ruling in *iPhone I* "precludes Apple from raising any form or variation of [arguments against the Apps claims]; not just the precise arguments Apple made [before]." (Opp. at 10.) That does not even sound like a

---

[2] It is not surprising that Plaintiffs have changed the factual basis for their Apps claims, since Judge Ware granted Apple summary judgment on the *iPhone I* claim that Apple had intentionally bricked their iPhones in violation of various laws. *iPhone I*, No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270, at *19, 27 (N.D. Cal. July 8, 2010) (holding that plaintiffs had failed to establish standing since they had suffered no injury and that plaintiffs "have not produced sufficient evidence to show that Defendant Apple acted with an intent to damage Plaintiffs' iPhones with the 1.1.1 Software.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

collateral estoppel argument, and it is not. Plaintiffs' own citations to *Kamilche* and Restatement § 27 establish that preclusion only applies if the issue to be precluded is *identical* to the one already litigated. Claims about different iterations of Apple's Apps policies, one prohibiting downloads and another permitting them, are plainly different.

***Second***, the Apps ruling in *iPhone I* has no preclusive effect both because it was an *interlocutory order* and because *there was no "valid and final judgment."* There was no "valid judgment" in plaintiffs' (or anyone's) favor in the prior action. Judge Ware found that the entire dispute in *iPhone I* had to be resolved in arbitration rather than in court. Nor is there a "final" judgment, as the arbitrator who will preside over these claims will be free to find that Plaintiffs do not state a claim. Restat. 2d Judgments § 13 cmt. b ("Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination"); *id.* cmt. g ("The test of finality, however, is whether the conclusion in question is procedurally definite"); *id.* (acknowledging importance to the question of "finality" whether "the decision was subject to appeal or was in fact reviewed on appeal").[3]

***Third***, the Apps ruling in *iPhone I* is not "essential to the judgment." Judge Ware sent all the *iPhone I* claims to arbitration, and that determination did not rely in any way on whether

---

[3] Motion to dismiss rulings are inherently suspect candidates for collateral estoppel. *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (inability to appeal interlocutory opinion meant that the opinion was not "sufficiently firm" and that the losing party "did not have a full and fair opportunity to litigate" the issue, and therefore refusal to apply collateral estoppel was proper); 13D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 4433 (noting that decisions that "could not have been tested by appeal" are "suspect candidates for preclusion").

Plaintiffs cite a criminal case *Cook v. Aagard*, No. 2:12cv00157, 2012 U.S. Dist. LEXIS 167425, at *22 (D. Utah Nov. 26, 2012), in support of their claim that "an order denying a motion to dismiss/suppress 'constitute[s] a final order for purposes of issue preclusion.'" (Opp. at 11.) They also cite *Gildorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392-94 (7th Cir. 1986), for the proposition that a denial of a motion to dismiss may be considered "final" notwithstanding that the decision was not appealable. (Opp. at 11.) *Cook* involved a motion to suppress evidence and held only that denial of a motion to dismiss/suppress was not made non-final for purposes of issue preclusion by the fact that the case was later dismissed pursuant to a plea agreement. 2012 U.S. Dist. LEXIS 167425, at *22-23; it obviously bears no similarity to this case. *Gildorn* merely addressed the fact that a denial of a motion to dismiss is interlocutory and therefore not immediately appealable. Neither case has any relevance to the facts here, in which Judge Ware, after issuing his initial ruling denying the motion to dismiss the Apps claims, ruled that the entire dispute needed to be adjudicated in arbitration *in the first instance*. *iPhone I*, 826 F. Supp. 2d 1168, 1179 (N.D. Cal. 2011). The Apps ruling is not final in that case, much less binding in this one.

or not the complaint stated a claim. Once the claims in *iPhone I* are arbitrated and judgment entered, an appeal may be taken from Judge Ware's arbitration order, and/or from the arbitrator's decision if appropriate, but no appeal can be taken from Judge Ware's interim ruling on whether the complaint states a claim. This alone establishes that applying collateral estoppel would be improper. *See* Restat. 2d Judgments § 27 cmt. h ("Such determinations have the characteristics of dicta" so relitigation "is not precluded").

## V. PLAINTIFFS' APPS CLAIMS FAIL AND MUST BE DISMISSED

### A. Plaintiffs Do Not Have Antitrust Standing

Plaintiffs recognize they have a standing problem, for in an attempt to avoid "running squarely into the *Illinois Brick* wall," *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012), they are trying to change the facts they pleaded—and the facts that are common knowledge to anyone who has ever patronized Apple's App Store.

Plaintiffs now assert that "iPhone consumers were forced ***to pay Apple*** a 30% fee on top of the cost for the apps." (Opp. at 11 (emphasis Plaintiffs', citing Complaint ¶¶ 4-5).) The plain import of this is that Apple takes the price for an App set by the developer and adds to it, the way a retailer might add sales tax to the price of an item, a 30% fee. That does not matter legally, as the *Ticketmaster* decision makes clear.[4] But plaintiffs have a more fundamental problem because paragraphs 4 and 5 of the Complaint, which they cite, make no mention of a fee paid by consumers on top of the cost for the Apps. Indeed, nowhere in the complaint is such a fee mentioned.[5] This is not an accident because there is no good faith basis to allege that. Plaintiffs acknowledge that *Apple does not charge consumers a 30% fee on top of the cost for the Apps*; rather, Apple *charges developers* a 30% fee on Apps that they elect to offer as "paid" on the App Store (Apple charges nothing on Apps that the developers elect to offer as free). Complaint ¶ 5; Mot. Dismiss at 7.

The whole thrust of the Complaint is about "Apple's apportionment scheme" for sales

---

[4] *See Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir. 1998).

[5] By contrast, fees that actually were paid by certain class members to ATTM, such as "roaming charges" and the "early termination fee," are discussed in the Complaint. *See* Complaint ¶¶ 46, 47, 61, 62, 87, 101.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

revenue earned by third party developers of Apps. Complaint ¶ 5. Plaintiffs acknowledge that "[d]evelopers set the price of their applications—including free" (RJN Ex. 1), but they surmise that because developers only "retain 70 percent of all sales revenues" (*id.*; Complaint ¶ 5), *developers* have an incentive to charge higher prices to consumers for their apps, resulting in "artificially increased prices . . . for iPhone software applications." Complaint ¶ 7. The pleadings thus acknowledge that the developer turns over 30% of the price it sets to Apple.

This is what makes *ATM Fee* directly on point.[6] The plaintiffs in that case challenged bank "interchange fees" that they did not pay but which they claimed led to higher foreign ATM fees that they did pay: "Plaintiffs concede that they have never directly paid interchange fees. Instead, card-issuing banks (including Bank Defendants) pay interchange fees and then include them when they charge foreign ATM fees (alleged by Plaintiffs to be artificially inflated). In other words, the Bank Defendants pass on the cost of the interchange fees through the foreign ATM fees." *Id.* at 750-51. Even though the plaintiffs did directly pay allegedly inflated ATM fees (because the banks supposedly passed on the interchange fee), the Ninth Circuit held that the claims were barred by *Illinois Brick*. *Id.*

Plaintiffs' theory is identical: the "apportionment scheme" supposedly leads Apps developers to "pass on" the 30% fee by charging higher prices for their Apps—just as the bank interchange fees were allegedly "passed on" and led to higher ATM fees in *ATM Fees*. Plaintiffs' complaint is thus barred by *Illinois Brick* because Apps developers are the proper party to sue over a claim concerning the "apportionment scheme." *Id.*[7]

### B. Plaintiffs Fail To Plead The Requisite Elements Of Their Antitrust Claims

The Apps claims must also be dismissed because Plaintiffs fail to plead the essential elements of their monopolization claims. Plaintiffs contend that they have stated a

---

[6] *ATM Fee* issued long after Judge Ware's class certification order which contains the quotation cited by Plaintiffs in which Judge Ware pointed to a lack of Ninth Circuit authority. (*See* Opp. at 5.) There is now controlling Ninth Circuit authority, never considered by Judge Ware, that mandates dismissal of Plaintiffs' claims for lack of antitrust standing.

[7] Plaintiffs raise a strawman by claiming that Apple contends developers are the "direct purchasers" of Apps. (Opp. at 12.) That is not the case. Apple simply takes the legally correct and factually obvious position that developers are the party directly involved in the antecedent transaction that Plaintiffs complain of: the "apportionment scheme" with Apple. Complaint ¶ 5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

monopolization claim simply by pleading a cognizable aftermarket. In other words, Plaintiffs argue that if an aftermarket is properly pleaded, monopoly power and anticompetitive conduct are *presumed*. (Opp. at 19-20.) Plaintiffs cite no support for that remarkable assertion. Adequately pleading an aftermarket satisfies at most *one* element of a monopolization claim: a relevant product market. There is no special exception for aftermarket cases that excuses a plaintiff from pleading *all* the required elements of a monopolization claim, including monopoly power and anticompetitive conduct. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Plaintiffs have not even tried to plead the following necessary elements: (1) that Apple engaged in any anticompetitive conduct; or (2) that Apple has monopoly power in the claimed aftermarket. As a result, their monopolization claims fail—even if they had pleaded a cognizable product market, which they have not.

1. **Plaintiffs Do Not Allege Unlawful Anticompetitive Conduct**

Apple's motion challenged Plaintiffs to identify a legal basis for condemning Apple's Apps policies under the Sherman Act. (Mot. Dismiss at 17-18.) Plaintiffs' response was a single paragraph at the very end of its brief in which they suggest *Newcal* excuses their failure to include sufficient allegations. Plaintiffs' argument is that the mere fact that consumers of a primary product are allegedly "locked in" itself constitutes "anticompetitive conduct unless the consumers 'knowingly contracted' to be locked in." (Opp. at 20.) Plaintiffs misread *Newcal* and ignore the fact that "courts agree that only actual 'anticompetitive' behavior may satisfy the exclusionary conduct element of monopolization." ABA ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS 242 (7th ed. 2012). "This requirement of some form of 'anticompetitive conduct'—also called 'exclusionary conduct,' 'deliberateness,' or 'willfulness'—has long been a part of Section 2 jurisprudence." *Id.* at 241.

*Newcal* does not change settled law. In *Newcal*, the "lock-in" did not itself constitute anticompetitive conduct. The alleged anticompetitive conduct in *Newcal* was that Ikon lied to its customers to get them to agree to lease amendments that were in fact lease extensions. 513 F.3d at 1043-44 (Ikon "deliberately misled its customers to believe that the contract amendments would *not* affect the original contract's term.") (emphasis in original); *see also id.* at 1050

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

(referencing this "fraud and deceit" by Ikon). The lease extensions allegedly hindered other service providers' ability to compete in the aftermarket for copier servicing, and were allegedly obtained through outright fraud. Therefore, *Newcal* raised a factual question as to whether Ikon had engaged in unlawful anticompetitive conduct. *Id.* at 1051.[8]

Plaintiffs do not and cannot point to any allegedly fraudulent conduct by Apple. Indeed, the Complaint contains no allegations of anticompetitive conduct at all—and certainly no basis for challenging Apple's App policies as anticompetitive. Nor could Plaintiffs allege fraud: they do not dispute that Apple *announced* the *very terms* that they criticize in a press release before the App Store opened. At best, Plaintiffs contend, based upon declarations submitted with their opposition, that they were "unaware" of Apple's policies with respect to Apps. (Opp. at 18.) That seems unlikely, since all of the relevant policies are public, included in press releases, and evident to anyone who buys an App from the App Store; but, even assuming the declarations are credible and can be considered on a motion to dismiss, it makes no difference if these Plaintiffs somehow did not get the word. Failing to educate them is not anticompetitive conduct actionable under the antitrust laws.

Even active deception (which is not alleged) rarely constitutes an antitrust violation, *Am. Prof'l Testing Service Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pub'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997), but at least it is *conduct*. Plaintiffs have not alleged that they were deceived by Apple. Their true complaint is about the policies themselves, not what they or others knew about them. And there is no legal basis whatever for saying that the policies themselves violate antitrust rules proscribing anticompetitive or exclusionary conduct. That is especially true since the Complaint admits that Apple's creation of its App Store led to an expansion of output by giving App developers a platform to create and sell hundreds of thousands of new products, the opposite of anticompetitive conduct. *See* Mot. Dismiss at 18-19;

---

[8] All aftermarket cases of which Apple is aware in which the plaintiff was found to state a claim involve either *conduct* similar to that alleged in *Newcal* or post-purchase *changes* to aftermarket service policies for durable goods that permitted the defendant to substantially increase the prices charged to locked-in customers. *See* Apple's Op. Br. at 14-15. There are no allegations here of any *changes* in policy or post-lock in exploitation, and Plaintiffs certainly do not allege any *conduct* similar to that found in *Newcal*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,* 592 F.3d 991, 998-99 (9th Cir. 2010) (rejecting monopolization claim where product redesign was an improvement); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 790 F. Supp. 804, 821 (C.D. Ill. 1992), *aff'd* 998 F.2d 391, 393 (7th Cir. 1993) (antitrust "duties are negative – to refrain from anticompetitive conduct – rather than affirmative – to promote competition.")

Plaintiffs have altogether failed to plead anticompetitive conduct.

### 2. Plaintiffs Do Not Allege That Apple Possesses Monopoly Power

Plaintiffs recognize they have not pleaded that Apple possesses monopoly power in the supposed market for "software applications that can be used on the iPhone." Plaintiffs again resort to misdirection by asserting that the normal antitrust pleading rules do not apply in *Kodak* aftermarket cases: "An aftermarket monopolization case is not analyzed the same way as a primary market monopolization case." (Opp. at 19.) Once again, Plaintiffs offer no support for this bold assertion. The leading treatise on antitrust law explains that "*Kodak* by no means holds that every maker of unique parts for its own product has market power or constitutes a separate market." P. AREEDA & H. HOVENKAMP, ANTITRUST LAW ¶ 564b (3d ed. 2006). Pleading monopoly power is required in an aftermarket case.

Plaintiffs then urge that Apple "***by definition*** has 100% monopoly control over ***every*** app" (Opp. at 19). This is unexplained but presumably refers to Apple's review and approval of the 500,000+ Apps that are available on Apple's App Store. This confuses the process of screening Apps for malware, pornography and bugs with the proper monopoly power question. The critical question is whether Apple *sells* a significant enough share of all Apps so that the antitrust laws should be concerned that Apple possesses market power and could potentially cause "those injuries (lower output and the associated welfare losses) that matter under the federal antitrust laws." *Menasha Corp. v. New Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004). It is undisputed that App developers set the price for their products. *See* Request for Judicial Notice, Ex. 1: "Developers set the price for their applications—including free—and retain 70 percent of all sales revenues." Plaintiffs do not—and cannot—plead that output of Apps has been restricted in any way. Indeed, the App Store has led to the creation of over

12

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

500,000 new software products, downloaded over 35 billion times. Plaintiffs were required to plead—and ultimately must prove—affirmative evidence of Apple's market power and they have not done so. AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 564b ("if firm A's product is alleged to be a market, the plaintiff cannot avoid summary judgment merely by showing physical uniqueness, but must show affirmative evidence of power."). This failure is fatal to Plaintiffs' complaint.

### 3. **Plaintiffs' Product Market Fails As A Matter of Law**

Plaintiffs effectively concede (Opp. at 19) that their claimed "relevant market" does not comply with the long-established law, discussed in Apple's motion to dismiss (at 11-12), that sets forth the requirements defining a cognizable market. They argue, however, that those rules apply only to "primary" product markets, and "have no relevance where an ***aftermarket*** is alleged to have been monopolized." *Id.* (emphasis Plaintiffs'). Plaintiffs' argument is foreclosed by *Newcal*, which expressly held that a claimed "relevant market" must satisfy the Supreme Court's *Brown Shoe* standard in an "aftermarket" case. *Newcal*, 513 F.3d at 1051; *id.* at 1045 (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962), for the rule that "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."). This confirms that the normal requirements for pleading a product market apply in aftermarket cases.[9]

It is clear under these market definition rules that Plaintiffs' proposed product market ("software applications that can be used only on iPhones") fails. There are over 500,000 Apps

---

[9] Plaintiffs' argument that they have adequately pleaded an "aftermarket" is based on a gross distortion of *Newcal* and all other aftermarket cases. Franchise agreements and other contracts can serve as evidence that a plaintiff expressly agreed to be limited to the alleged monopolist's products in the aftermarket. But, contrary to Plaintiffs' suggestion, it is not true that the absence of written contract means that an aftermarket exists as a matter of law. As the Ninth Circuit said in *Newcal*, the determinative question is whether a consumer could "reasonably discover" that the defendant allegedly charges supracompetitive prices in the aftermarket. *Newcal,* 513 F.3d at 1048. That question is analyzed objectively and "very imperfect knowledge suffices to defeat the assertion of a *Kodak* lock-in market." *Universal Avionics Sys. Corp. v. Rockwell Intl. Corp.*, 184 F. Supp. 2d 947, 956 (D. Ariz. 2001); AREEDA & HOVENKAMP, ANTITRUST LAW ¶ 564. Here, is it undisputed that the "apportionment scheme" and the fact that Apple would review and approve all Apps were publicly announced before the App Store even opened. Request for Judicial Notice, Ex. 1. That means that consumers could "reasonably discover" information about Apple's App policies and means that there can be no "aftermarket" limited to Apps for the iPhone.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

REPLY ISO APPLE'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED COMPLAINT
CASE NUMBER: C 11-06714-YGR

and the Complaint pleads that they perform a myriad of differing functions, which means they are not all substitutes. (Mot. Dismiss at 12-13.) Accordingly, the alleged product market is overbroad as a matter of law. *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 U.S. Dist. LEXIS 2325, at *18-19 (N.D. Cal. Jan. 9, 2012) (rejecting as "overbroad" and "amorphous" a market definition which would "encompass the market for every one of the millions of items sold through eBay"); *POURfect Prods. v. KitchenAid*, No. CV-09-2660-PHX-GMS, 2010 U.S. Dist. LEXIS 42890, at *12 (D. Ariz. May 3, 2010) (rejecting proposed aftermarket of attachments for KitchenAid mixers because plaintiff failed to "allege[] facts regarding how the prices of some aftermarket attachments affect the demand for other attachments"); *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008) ("Whether products are part of the same or different markets under antitrust law depends on whether consumers view those products as reasonable substitutes for one another and would switch among them in response to changes in relative prices[.]").[10]

## VI. CONCLUSION

Apple's Motion to Dismiss should be granted and Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: December 21, 2012

Respectfully submitted,

LATHAM & WATKINS LLP

By     /s/ Sadik Huseny
       Sadik Huseny
       Attorneys for Defendant APPLE INC.

SF\2334500

---

[10] Plaintiffs' contention that dismissal is not appropriate because the Apps aftermarket could potentially be "refine[d]" into economically distinct submarkets misses the mark. It is Plaintiffs' burden to plead submarkets if they wish to do so, and they failed to do so. *Shred-It Am., Inc. v. Macnaughton*, No. CV-00547 DAE-KSC, 2011 U.S. Dist. LEXIS 51933 (D. Haw. May 13, 2011) (dismissing complaint with conclusory seven word market definition because "the complaint does not contain any allegations concerning economic substitutes for Shred-it's proposed product market, and it is entirely unclear to the Court whether Shred-it is attempting to establish a submarket for its product.") The reason that Plaintiffs did not do so is because they recognize that they cannot plead that Apple possesses monopoly power with respect to any supposed submarket.