1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  RACHELE R. RICKERT (190634)
   rickert@whafh.com
3  WOLF HALDENSTEIN ADLER
     FREEMAN &HERZ LLP
4  750 B Street, Suite 2770
   San Diego, CA 92101
5  Telephone: 619/239-4599
   Facsimile:  619/234-4599
6
   MARK C. RIFKIN (*pro hac vice*)
7  rifkin@whafh.com
   ALEXANDER H. SCHMIDT (*pro hac vice*)
8  schmidt@whafh.com
   MICHAEL LISKOW (243899)
9  liskow@whafh.com
   WOLF HALDENSTEIN ADLER
10   FREEMAN &HERZ LLP
   270 Madison Avenue
11 New York, NY 10016
   Telephone: 212/545-4600
12 Facsimile:  212/545-4677

13 Plaintiffs' Interim Class Counsel

14 [Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE iPHONE ANTITRUST LITIGATION | No. C 11-06714-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>DATE: November 4, 2013<br>TIME: 2:00 p.m.<br>DEPT: Courtroom 5, 2nd Floor<br>JUDGE: Hon. Yvonne Gonzalez Rogers |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENTpursuant to the Standing Order for All Judges of the Northern District of California effective July 1, 2011 and Civil Local Rule 16-9.

**1. JURISDICTION AND SERVICE**

This Court has federal question jurisdiction pursuant to the Sherman Antitrust Act, 15 U.S.C. § 2, the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337. There are no disputes regarding personal jurisdiction. Defendant Apple Inc. ("Apple") has been served.

**2. FACTS**

**Plaintiffs state as follows:**

Plaintiffs allege that Defendant Apple launched the iPhone on or about June 29, 2007. ¶¶ 2, 26.[1] Without iPhone consumers' knowledge or consent, to enhance its iPhone-related revenues, Apple has, since the iPhone's launch, unlawfully monopolized the aftermarket for iPhone software applications ("apps") by positioning itself through exclusionary anticompetitive conduct as the sole distributor of iPhone apps worldwide, which enables Apple to charge and collect a supracompetitive 30% fee from each and every iPhone apps sale ever made. As a result of Apple's unlawful monopolization of the iPhone apps aftermarket, iPhone consumers nationwide have paid hundreds of millions of dollars more for iPhone apps than they would have paid in a competitive market. ¶¶ 3-6, 8-9, 27-43, 45-50. Apple's misconduct challenged in this case is entirely consistent with what one Federal District judge found was Apple's disdain for antitrust compliance and its anticompetitive desire to eliminate retail price competition in order to overcharge Apple's customers, and it was orchestrated by the same Apple executives whom that Court found had illegally conspired to fix e-book prices sold in its App Store. ¶¶ 10-12.

The antitrust laws prohibit manufacturers like Apple from exploiting its relationships with customers who purchased the highly desirable and expensive iPhone by locking them in unwittingly, without their knowledge or consent, into an aftermarket for iPhone apps that was

---

[1] All paragraph references ("¶"), unless otherwise indicated, refer to the Second Amended Consolidated Class Action Complaint (the "Complaint") filed on September 5, 2013 [Dkt. No. 111].

monopolized by Apple. ¶¶ 7, 44, 65. Accordingly, Plaintiffs, on behalf of themselves and all similarly situated iPhone apps buyers nationwide, assert claims against Apple for monopolization and attempted monopolization of the iPhone apps aftermarket pursuant to Section 2 of the Sherman Act and Section 4 of the Clayton Antitrust Act, seeking, *inter alia*, treble damages and an injunction either dismantling Apple's unlawfully obtained monopoly or requiring Apple to obtain iPhone consumers' knowing and voluntary consent to Apple's monopolization practices, as Apple is required by law to obtain. ¶¶ 1, 13-16, 54-64, 67, 70-80.

Plaintiffs adamantly disagree with Defendant's oft-repeated contention below that the SAC "significantly changes and expands their theory of liability with respect to the remaining Apps claims." Plaintiffs have addressed that contention in their Opposition to Apple's pending Motion to Dismiss, and they respectfully submit that Apple's adversarial positioning on such factual disputes is peripheral to the purpose of this Joint CMS and inappropriate, as is Apple's attempted reliance on a footnoted reference by an expert witness in *Apple I*, which is shorn of context and would not bind Plaintiffs here even if it was susceptible of Apple's strained interpretation. As Plaintiffs' SAC states, the law precludes Apple from engaging in exclusionary conduct in order to preclude retail price competition by other distributors in the iPhone apps aftermarket. Apple cannot monopolize that aftermarket unless it discloses its intent to do so to iPhone customers and obtains their knowing consent at the point of purchase, which Apple has failed to do. Plaintiffs' *Apple I* expert made clear that the plaintiffs' challenge there was based on the exact same theory.

**Defendant states as follows:** Plaintiffs' claims challenge Apple's original design of the iPhone operating system ("iOS") as a "closed system." The iPhone was first announced in a speech by Steve Jobs in January 2007, five months before its first sale in June 2007. (*See* Second Amended Complaint ("SAC" or "Complaint"), ¶ 2.) Immediately following the January 2007 announcement, newspapers such as the *New York Times* reported that the iPhone would not be an "open platform," that Apple would "define everything that is on the phone," and that software

applications ("Apps") would be handled through an Apple-controlled environment.[2] Customers were also directly informed about Apple's Apps policies, as Plaintiffs admit. (*Id*. ¶ 34.)

Plaintiffs also allege that approximately nine months after Apple first began selling the iPhone Apple released a "software development kit" ("SDK") to assist and enable developers to create Apps for the iPhone. (*Id.* ¶ 2, 26, 27, 38-39.) Apple also created the App Store which made it easy for consumers to find and download reliable software applications. (*Id.* ¶ 38-39.) Although we take this for granted today, acentralized platform for developing, downloading and running Apps on mobile devices is something Apple pioneered. Apple prominently announced the launch of the App Store, the availability of the SDK to third party App developers and related policies in a March 6, 2008 press release:

> The App Store enables developers to reach every iPhone and iPod touch user. **Developers set the price for their applications—including free—and retain 70 percent of all sales revenues.** Users can download free applications at no charge to either the user or developer, or purchase priced applications with just one click. Enterprise customers will be able to create a secure, private page on the App Store accessible only by their employees. Apple will cover all credit card, web hosting, infrastructure and DRM costs associated with offering applications on the App Store. **Third party iPhone and iPod touch applications must be approved by Apple and will be available exclusively through the App Store.**[3]

---

[2] *See* John Markoff, *Steve Jobs Walks the Tightrope Again*, N.Y. Times, Jan. 12, 2007, available at http://www.nytimes.com/2007/01/12/technology/12apple.html; Steven Levy, *Apple Computer is Dead: Long Live Apple*, Newsweek, Jan. 9, 2007, available at http://www.thedailybeast.com/newsweek/2007/01/09/steven-levy-apple-computer-is-dead-long-live-apple.html; Thomas Claburn, *Is a Closed iPhone Doomed to Fail?*, InformationWeek, Jan. 11, 2007, available at http://www.informationweek.com/is-a-closed-iphone-doomed-to-fail/196802882; *A Populist Challenge to Apple's iPhone*, U.S. News & World Report, Jan. 12, 2007, available at http://money.usnews.com/money/blogs/daves-download/2007/01/12/a-populist-challenge-to-apples-iphone; Paul Boutin, *The iPhone Wannabes*, Slate, Apr. 4, 2007, available at http://www.slate.com/articles/technology/technology/2007/04/the_iphone_wannabes.html; Tim Wu, *iPhony: Why Apple's New Cell Phone Isn't Really Revolutionary*, Slate, June 29, 2007, available at http://www.slate.com/articles/technology/technology/2007/06/iphony.single.html.

[3] *Apple Announces iPhone 2.0 Software Beta*, Apple Press Release, Mar. 6, 2008, available at http://www.apple.com/pr/library/2008/03/06Apple-Announces-iPhone-2-0-Software-Beta.html.

Plaintiffs allege that prospective App developers were informed that developers' apps for the iPhone "cannot be sold anywhere except in the App Store" and that Apple would earn 30% of the price of paid apps as a commission. (SAC ¶ 40.) App developers are more than informed about Apple's App polices; developers enter into contracts with Apple specifying the terms and conditions of the relationship. The SAC alleges that if the third party App developer chooses to charge for the App, "Apple takes its 30% commission off the top and then remits the balance, or 70% of the purchase price, to the developer." (SAC ¶ 41.) As Plaintiffs stated in their First Amended Complaint: "[i]f the application is not made available for free in the App Store, Apple collects 30% of the sale of each application, with the developer receiving the remaining 70%." (Dkt. 81 ¶ 5.) Thus, the price paid by consumers is set by the third party App developers (*id*. ¶ 40), and developers are free to create and distribute web Apps and versions of the very same applications found on the App Store programmed to work with different operating system platforms.

The iPhone and App Store have been an unprecedented success for consumers, third party App developers and Apple. Plaintiffs' SAC acknowledges that the iPhone was a "novel" and "breakthrough" product that "shifted the paradigm for smartphones, and [] changed the entire cell phone manufacturing industry." (*Id.* ¶¶ 2, 7, 26.) Plaintiffs also admit that the "closed system" they now challenge has led to a proliferation of software programs: "Apple now offers more than 850,000 apps, and iPhone consumers worldwide have downloaded apps more than 50 billion times since July 2008." (*Id.* ¶ 9.) And, that "the majority" of the 850,000 "iPhone apps are now free." (*Id.*)

### *Case History (submitted by Apple)*

This case is one of three filed by the same plaintiffs' counsel against Apple. Initially, all three cases focused on the allegation that Apple had conspired with AT&T Mobility to monopolize a claimed aftermarket for voice and data services for the iPhone. The claims in the first case were ordered to arbitration after the Supreme Court issued its opinion in *AT&T Mobility v. Concepcion. In re Apple &AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1175, 1179 (N.D.

Cal. 2011). The third case was dismissed with prejudice for failure to join AT&T Mobility; plaintiffs' appeal of that dismissal is presently before the Ninth Circuit.

On August 15, 2013, the Court issued its Order in this case granting Apple's motion to dismiss Plaintiffs' First Amended Complaint, with leave to amend. (Dkt. 108.) In that Order, the Court also granted Apple's motion to strike anddirected "that Plaintiffs notinclude allegations relating to voice and data services or a conspiracy with ATTM" in anyamended complaint. (*Id.* at 13.)Plaintiffs filed their Second Amended Complaint ("SAC") on September 5, 2013. (Dkt. 111.) Apple moved to dismiss the SAC, and briefing on that motion concluded on October 22, 2013. (Dkt. 115, 116, 118.)

Plaintiffs' SAC significantly changes and expands their theory of liability with respect to the remaining App Store claims. Plaintiffs now allege that "from the time it launched the iPhone" in June 2007 (SAC ¶ 3), Apple "designed" a closed App system (*Id.* ¶ 31), and that "designing the iPhone iOS as a closed system" violates antitrust laws. (*Id.* ¶ 43.) Plaintiffs contend that this is not a change in theory, but the testimony of their expert in *iPhone I* confirms that the iPhone's allegedly "closed system" was not previously at issue: "Apple's right to utilize a closed system of distribution for its programs and applications is not in dispute." *In re Apple &AT&TM Antitrust Litig.*, 07-05152, Dkt. No. 249-2 at 6 n.4.

## 3. LEGAL ISSUES

It is Plaintiffs' position that the central legal issues in dispute are:

   a. whether Apple has violated and continues to violate section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by unlawfully and willfully acquiring and/or maintaining monopoly power in the iPhone Applications Aftermarket;

   b. whether Apple violated and continues to violate section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by engaging in exclusionary, predatory and anticompetitive conduct with a specific intent to monopolize the iPhone Applications Aftermarket;

   c. whether Plaintiffs are entitled to an injunction permanently enjoining Apple from monopolizing or attempting to monopolize the iPhone Applications Aftermarket in a manner contrary to law; and

   d. whether Plaintiffs are entitled to treble damages caused by Apple's alleged unlawful conduct.

It is Apple's position that the dispositive issues in this case are:

a. whether Plaintiffs lack antitrust standing to assert their Apps claims;

b. whether Plaintiffs claims, which challenge the "closed system" launched over six years ago are barred by limitations;

c. whether Plaintiffs fail to plead a relevant Apps antitrust aftermarket;

d. whether Plaintiffs fail to plead that Apple possesses monopoly power in the claimed relevant Apps antitrust aftermarket; and

e. whether Plaintiffs fail to allege unlawful anticompetitive conduct regarding the Apps claims.

**4. MOTIONS**

Plaintiffs' prior Complaint [Dkt. 81] was dismissed, with leave to amend. *See* the Court's August 15, 2013 Order. [Dkt. 108.] Defendant Apple filed a Motion to Dismiss Plaintiffs' Second Amended Consolidated Complaint on September 30, 2013. [Dkt. No. 115]. Plaintiffs' Opposition was filed October 15, 2013. [Dkt. No. 116]. Apple's Reply was filed October 22, 201. [Dkt. No. 118]. The hearing on Apple's motion to dismiss is scheduled for November 5, 2013 at 10:00 a.m. [*See*Dkt. No. 117]. No other motions are currently pending before the Court, nor anticipated by the parties prior to resolution of Apple motion to dismiss the SAC.

Plaintiffs anticipate filing a motion for class certification (see section 9 below) and a motion for summary judgment after a reasonable opportunity for discovery.

**5. AMENDMENT OF PLEADINGS**

Plaintiffs do not anticipate amending the pleadings at this time.

**6. EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. Plaintiffs have taken all necessary steps to preserve evidence relevant to the issues reasonably evident in this action. Defendant Apple has done likewise.

**7. DISCLOSURES**

The parties have not yet exchanged initial disclosures. Plaintiffs propose that the parties exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a) two weeks after the Case Management Conference is held. Apple respectfully submits that the time and expense of initial disclosures should await the ruling on Apple's motion to dismiss in order to prevent wasteful and

1  costly discovery. Accordingly, Apple believes that the existing discovery hold, including initial
2  disclosures, should continue.

3  **8. DISCOVERY**

4  **Plaintiffs state as follows:**

5  No discovery has taken place in this action to date. However, in the related case, *In re
6  Apple &AT&TM Antitrust Litigation*, Case No. 07-cv-5152 JW, the parties engaged in class
7  certification discovery. Class counsel for the plaintiffs in that action also represent Plaintiffs in
8  this action. Plaintiffs' position is that, insofar as relevant to Plaintiffs' applications aftermarket
9  claims, documents produced by Defendant Apple, Apple's and its co-defendant's interrogatory
10 responses and responses to requests for admissions, and all transcripts from the depositions of
11 Apple's employees from the *In re Apple &AT&TM Antitrust Litigation* should be available for use
12 by Plaintiffs in this action for the sake of efficiency. Moreover, the Stipulation Between Plaintiffs
13 and Defendant Apple Inc. Regarding Undisputed Facts entered into in that action, to the extent
14 relevant to Plaintiffs' applications aftermarket claims, should be available for use by Plaintiffs in
15 this action.

16 In addition, initial disclosures and merits discovery should begin immediately, together and
17 simultaneously with any additional class certification discovery that may be needed. The parties
18 will need to agree upon a protocol for production of electronically stored information, but should
19 be able to use the one entered into in *Inre Apple &AT&TM Antitrust Litigation* for class
20 certification discovery as a model. The parties will also need to come to agreement regarding an
21 appropriate protective order, and should be able to use the Stipulated Protective Order entered in
22 *Inre Apple &AT&TM Antitrust Litigation* as a model.

23 Plaintiffs in the *In re Apple &AT&TM Antitrust Litigation* took eight (8) depositions,
24 which were limited to issues relevant only to class certification. For merits discovery in this case,
25 Plaintiffs request the Court's Case Management Order specifically permit Plaintiffs use the
26 relevant portions of the transcripts from the depositions of Apple's employees in that case and to
27 take an additional 30 depositions from parties and non-parties in this case. Plaintiffs also request
28 that they be permitted to take merits depositions of Defendant Apple's employees who were

already deposed during the class certification discovery phase in *In re Apple &AT&TM Antitrust Litigation*.

During the class certification phase in *In re Apple &AT&TM Antitrust Litigation*, Plaintiffs also propounded to Apple and ATTM the same seven (7) interrogatories, which inquired into class certification issues only. In addition to being able to use the relevant portions of Apple's and ATTM's responses to those interrogatories here, Plaintiffs request the Court's Case Management Order specifically permit Plaintiffs to propound thirty (30) merits interrogatories upon Apple.

Plaintiffs will seek discovery from Apple and third parties on, among other things, the following topics:

    a.    the negotiations, if any, and any agreements or understandings between Apple and apps developers concerning Apple's 30% fee, pricing and other terms and conditions respecting apps sales, the exclusivity of the App Store for distributing iPhone apps, and the enforcement of any such agreements or understandings;

    b.    Apple's internal communications, documentation and understandings concerning the same topics;

    c.    Apple's policies and practices concerning the disclosure or non-disclosure to, and obtaining or failing to obtain the knowing consent of, iPhone purchasers with respect to the exclusivity of Apple's App Store, the supracompetitive pricing of iPhone apps, or Apple's other relevant apps-related policies and practices;

    d.    Apple's internal communications, documentation and understandings concerning the same;

    e.    legal or factual analyses conducted or prepared by or for Apple or third parties, whether prepared internally, privately or in response to a legal or regulatory inquiry, concerning Apple's policies and practices relating to or in connection with the iPhone applications aftermarket; and

    f.    data concerning Apple's apps-related revenues and profits and the Plaintiff class's damages resulting from Apple's anticompetitive conduct.

Plaintiffs reserve their right to seek discovery of additional information as necessary.

Plaintiffs state that there is no basis for limiting merits discovery to the single issue Apple proposes below. Apple's proposition that it would save time and resources is based on Apple's self-serving speculation that discovery will lead both to the factual result it expects and will be case dispositive, neither of which is true in Plaintiffs' viewbecause Plaintiffs are plainly direct

JOINT CASE MANAGEMENT STATEMENT - CASE NO. C 11-06714-YGR

- 8 -

purchasers under the Ninth Circuit's straightforward test. Apple's proposition would only engender delay, waste time and resources and prejudicially deprive Plaintiffs of other material discovery, which may be lost due to relocation of witnesses and lost witness memory over time.

Plaintiffs state that, contrary to Apple's assertion, there is no discovery stay or "hold" in place in this case. Discovery, accordingly, should proceed in the normal course.

**Defendant states as follows:**

Discovery has not been served or commenced in this case due to the fact that the Court dismissed Plaintiffs' prior complaint in its entirety and the parties are engaged in motion to dismiss briefing on Plaintiffs' Second Amended Complaint. Apple respectfully submits that the existing discovery hold should continue until after the ruling on Apple's motion to dismiss – which was fully briefed on October 22, 2013 and is set for argument on November 5, 2013. Plaintiffs' latest amended complaint fails to cure the standing deficiencies found when the Court dismissed Plaintiffs' earlier Complaint in its August 15, 2013 Order. (Dkt. 108.) As a result, Apple believes that discovery would be wasteful and unnecessary given Plaintiffs' meritless claims.

In the event that some of Plaintiffs' claims survive that motion, Apple believes that discovery should be focused on dispositive issues such as the actual pricing dynamics for Apple's App Store, since that will confirm that Plaintiffs are indirect purchasers and do not have antitrust standing. Focusing discovery on such dispositive issues will avoid the time and expense of full discovery while permitting an early motion for summary judgment.

Further, Apple submits that reliance on discovery from the prior case is inappropriate given Plaintiffs' new theory of liability and their prior express disavowal of the new theory. Plaintiffs now allege that "from the time it launched the iPhone" in June 2007 (SAC ¶ 3), Apple "designed" a closed App system (*Id.* ¶ 31), and that "designing the iPhone iOS as a closed system" violates the antitrust laws. (*Id.* ¶ 43.) Plaintiffs contend that this is not a change in theory, but the testimony of their expert in *iPhone I* confirms that the iPhone's "closed system" was not previously at issue: "Apple's right to utilize a closed system of distribution for its programs and applications is not in dispute."*In re Apple &AT&TM Antitrust Litig.*, 07-05152, Dkt. No. 249-2 at

6 n.4. Additionally, Plaintiffs SAC alleges an improper aftermarket that is in direct contravention of controlling law, and differs from their prior aftermarket claims. (*See* Def.'s Mot. Dkt. 115 at 10.) As a result, discovery from the prior case would in fact be counter-productive since it is premised on inapposite factual allegations, proposed aftermarkets and theories of liability.

## 9. CLASS ACTIONS

**Plaintiffs state as follows:**

Assuming discovery proceeds cooperatively and with minimal disruption and motion practice, Plaintiffs expect to be able to file a motion for class certification within 180 days from the date on which such discovery commences. Plaintiffs state that, contrary to Apple's assertion, there is no discovery stay or "hold" in place in this case. Discovery, accordingly, should proceed in the normal course.

**Defendant states as follows:**

Apple believes that the existing discovery hold should continue pending an order on its recent motion to dismiss. If Plaintiffs' claims survive the motion, Plaintiffs would need to establish a basis for class certification from scratch (rather than rely on prior cases), in light of: (a) their new theory of liability with respect to Apps, which plaintiffs' expert in the prior case expressly disclaimed (*In re Apple &AT&TM Antitrust Litig.*, 07-05152, Dkt. No. 249-2 at 6 n.4.); (b) their new alleged Apps aftermarket; and (c) the change in class certification law which took place after Judge Ware's class certification order, namely, the Supreme Court's opinion in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and the Ninth Circuit's opinion in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011). Apple, in turn, would need to depose Plaintiffs and any experts retained by Plaintiffs with respect to class certification.

## 10. RELATED CASES

The related cases are *In re Apple &AT&TM Antitrust Litigation* ("*Apple I*"), No. 07-cv-5152JW, which has been stayed pending arbitration (*see* Dkt. 553 ("The Court GRANTS Defendants ATTM and Apple's Motions to Compel Arbitration and to Decertify Class. … The case is STAYED while Plaintiffs pursue their claims in arbitration.")), and *Ward v. Apple, Inc.*, No. 12-05404) ("*Apple III*"), which is now pending before the United States Court of Appeal for

the Ninth Circuit. *See, e.g.* Order Granting Motion to Relate Cases, Feb. 9, 2012 (Dkt. 11); Related Case Order, Nov. 15, 2012 (Dkt. 92). The parties are not aware of any other related cases or proceedings pending before another judge of this Court, or before another court or administrative body.

**11. RELIEF**

**Plaintiffs state as follows:**

Plaintiffs have not yet received initial disclosures or discovery and therefore do not yet have a definitive damages figure. However, class certification (but not merits) discovery was conducted in the related case, *In re Apple &AT&TM Antitrust Litigation*, No. 07-cv-5152 JW, and the plaintiffs' economic expert in that case—in connection with the plaintiffs' motion for class certification—gave a preliminary damages figure for the apps claims, which was filed under seal. Therefore, class counsel for the plaintiffs in this action, who also represent the plaintiffs in *In re Apple &AT&TM Antitrust Litigation*, have a preliminary damages figure for a portion of the Class Period that is based on widely accepted models for computing economic harm to iPhone customers stemming from Apple's monopolization of the aftermarket for iPhone applications.

In addition to compensatory damages, Plaintiffs seek injunctive relief described above.

**Defendant states as follows:** Defendant Apple believes no damages are appropriate as Plaintiffs have failed to state a viable claim for relief. Moreover, Plaintiffs' preliminary damage figure from *In re Apple &AT&TMAntitrust Litigation*, No. 07-cv-5 152 JW, is not only flawed and inadmissible (*see* Fed. R. Civ. Proc. 702; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 24 970, 974 (9th Cir. 2011)), but that preliminary damages figure is also inapplicable given Plaintiffs' new theory of liability with respect to the App claims. As plaintiffs' own expert explained in the prior case: "Apple's right to utilize a closed system of distribution for its programs and applications is not in dispute." *In re Apple &AT&TM Antitrust Litig.*, 07-05152, Dkt. No. 249-2 at 6 n.4. Yet the "closed system" is precisely what Plaintiffs challenge here rendering any damages analysis from the prior case irrelevant to Plaintiffs' current claims.

**12. SETTLEMENT AND ADR**

Plaintiffs are willing to participate in private mediation, as is Apple.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to have a magistrate judge conduct all further proceedings. However, Plaintiffs would consent to the appointment of a magistrate judge (or special master) for the purpose of supervising discovery.

**14. OTHER REFERENCES**

**Plaintiffs' position is as follows:**

This case is not suitable for reference to binding arbitration. Defendant Apple's iTunes Terms of Service, to which each iPhone customer was required to agree in order to activate his or her iPhone, requires its customers to bring all their claims against Apple only in court, not by arbitration. Plaintiffs accepted Apple's requirement that they litigate "any claim or dispute with Apple" in court. Finally, because all known related cases are currently pending before this Court, it is not necessary to refer these cases to the Judicial Panel on Multidistrict Litigation.

**Defendant's position is as follows:**

Apple agrees that it is not necessary to refer these cases to the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES**

Plaintiffs submit that at this early stage, they do not have suggestions to expedite the presentation of evidence at trial. No party has requested bifurcation of issues, claims, or defenses.

Apple submits that its motion to dismiss will dispose of all issues in this case. In the event that some of Plaintiffs' claims survive that motion, Apple believes that discovery should be focused on dispositive issues such as the actual pricing dynamics for Apple's App Store, since that will confirm that Plaintiffs are indirect purchasers and do not have antitrust standing. Focusing discovery on such dispositive issues will avoid the time and expense of full discovery while permitting an early motion for summary judgment.

**16. EXPEDITED TRIAL PROCEDURE**

The parties agree that this is not the type of case that can be handled on an expedited basis.

## 17. SCHEDULING

| Deadline/Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| **Fact Discovery** | | |
| Commencement of Discovery | Immediately | Apple submits that Plaintiffs have failed to state a viable claim and the existing discovery hold should continue pending resolution of Apple's motion to dismiss which was fully briefed on October 22, 2013 and will be hearing on November 5, 2013.<br><br>In the event that some of Plaintiffs' claims survive that motion, Apple believes that discovery should be focused on dispositive issues such as the actual pricing dynamics for Apple's App Store, since that will confirm that Plaintiffs are indirect purchasers and do not have antitrust standing. Focusing discovery on such dispositive issues will avoid the time and expense of full discovery while permitting an early motion for summary judgment. |
| Exchange of Initial Disclosures | Within one month | |
| Deadline to Complete Fact Discovery | 12 months after commencement | |
| Discovery motions filed | 30 days prior to close of discovery | |
| **Merits Related Expert Discovery** | | |
| Plaintiffs' expert reports filed | 45 days after completion of fact discovery | See above. Apple notes that as the party with the burden of proof, any expert report submitted by Plaintiffs should precede Apple's expert reports by at least 60 days; Plaintiffs' proposal for simultaneous expert reports is inappropriate. |
| Defendant's expert reports filed | 45 days after completion of fact discovery | |
| Rebuttal expert reports filed | 45 days after receipt of opening expert reports | |
| Close of Expert Discovery | 45 days after submission of rebuttal expert reports | |
| **Summary judgment** | | |
| Opening brief filed | 45 days after close of expert discovery | See above. |
| Opposition brief filed | 45 days after opening brief is filed | |
| Reply brief filed | 20 days after opposition brief is filed | |
| Hearing | To be determined by the Court | |

| Trial | | |
|---|---|---|
| Pretrial Conference | Two weeks prior to trial date | See above. |
| If dispositive motions have been filed | Within 2 months of the Court's ruling on dispositive motions | |
| If dispositive motions have not been filed | Within 3 months of close of expert discovery | |

**18.    TRIAL**

Plaintiffs have demanded a jury trial and expect the trial to last approximately two weeks.

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

All parties have filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

<u>Plaintiffs' Certification</u>:  Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed person, associations of person, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceedings, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Plaintiff Stephen H. Schwartz

Plaintiff Edward W. Hayter

Plaintiff Eric Terrell

Plaintiff Robert Pepper

Defendant Apple Inc.

<u>Defendant Apple's Certification</u>:

Pursuant to Civil Local Rule 3-16, the undersigned counsel certifies that the following persons are directors and executive officers, as defined in Rule 3b-7 under the Securities Exchange Act of 1934, of Apple who have a financial interest, as defined by 28 U.S.C. § 455(d)(4), in Apple:

1. Board of Directors: William V. Campbell; Timothy D. Cook; Millard S. Drexler; Albert Gore Jr.; Robert A. Iger; Andrea Jung; Arthur D. Levinson; and Ronald D. Sugar.

2. Executive Officers: Timothy D. Cook; D. Bruce Sewell; Peter Oppenheimer; Philip W. Schiller; Eduardo H. Cue; Craig Federighi, Jonathan Ive, Dan Riccio, and Jeff Williams.

Apple notes that it has numerous employees who actively participate in its affairs but it has only identified its directors and executive officers in this disclosure.

DATED: October 28, 2013

WOLF HALDENSTEIN ADLER
 FREEMAN &HERZ LLP
FRANCIS M. GREGOREK
RACHELE R. RICKERT

/s/ Rachele R. Rickert
RACHELE R. RICKERT
750 B Street, Suite 2770
San Diego, California 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
gregorek@whafh.com
rickert@whafh.com

WOLF HALDENSTEIN ADLER
 FREEMAN &HERZ LLP
MARK C. RIFKIN
ALEXANDER H. SCHMIDT
MICHAEL LISKOW
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677
rifkin@whafh.com
schmidt@whafh.com
liskow@whafh.com

Interim Class Counsel for Plaintiffs

DATED: October 28, 2013

LATHAM & WATKINS LLP
DANIEL M. WALL
CHRISTOPHER S. YATES
SADIK HUSENY

/s/ Christopher S. Yates
CHRISTOPHER S. YATES
505 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: 415/391-0600
Facsimile: 415/395-8095
dan.wall@lw.com
chris.yates@lw.com
sadik.huseny@lw.com

Attorneys for Defendant Apple Inc.

## DECLARATION REGARDING CONCURRENCE

I, Rachele R. Rickert, am the ECF User whose identification and password are being used to file this AMENDED JOINT CASE MANAGEMENT STATEMENT. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Christopher S. Yates has concurred in this filing.

DATED: October 28, 2013

WOLF HALDENSTEIN ADLER FREEMAN &HERZ LLP

By: ___**/s/** Rachele R. Rickert_____
      RACHELE R. RICKERT

731984v2