UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA    *ORIGINAL*

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST) | PAGES 1 - 18 |
| LITIGATION                ) | |
|                           ) | NO. C 11-06714 YGR |
|                           ) | |
|                           ) | |
|                           ) | OAKLAND, CALIFORNIA |
| _____) | TUESDAY, NOVEMBER 5, 2013 |

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFFS:            WOLF, HALDENSTEIN, ADLER, FREEMAN &
                              HERZ LLP
                           270 MADISON AVENUE
                           NEW YORK, NEW YORK  10016
                    BY:  ALEXANDER H. SCHMIDT, ATTORNEY AT LAW


FOR DEFENDANT:             LATHAM & WATKINS
                           505 MONTGOMERY STREET
                             SUITE 1900
                           SAN FRANCISCO, CALIFORNIA  94111
                    BY:  SADIK HUSENY,
                           DANIEL M. WALL,
                           CHRISTOPHER S. YATES, ATTORNEYS AT LAW


REPORTED BY:       RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

| | |
|---|---|
| 1 | TUESDAY, NOVEMBER 5, 2013                    10:00 A.M. |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  CALLING CIVIL ACTION 11-6714, IN RE: |
| 4 | APPLE IPHONE ANTITRUST LITIGATION. |
| 5 | COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES. |
| 6 | **MR. SCHMIDT:**  ALEXANDER SCHMIDT OF WOLF, HALDERSTEIN, |
| 7 | ADLER, FREEMAN & HERZ COUNSEL FOR PLAINTIFFS. |
| 8 | **THE COURT:**  GOOD MORNING. |
| 9 | **MR. SCHMIDT:**  GOOD MORNING, YOUR HONOR. |
| 10 | **MR. WALL:**  GOOD MORNING, YOUR HONOR.  DAN WALL, CHRIS |
| 11 | YATES, AND SADIK HUSENY FROM LATHAM & WATKINS FOR APPLE. |
| 12 | **THE COURT:**  GOOD MORNING. |
| 13 | MR. SCHMIDT, IN THE LAST ORDER WITH RESPECT TO THE MOTION |
| 14 | TO DISMISS THAT WAS BROUGHT, I INDICATED SOME VERY SPECIFIC |
| 15 | INFORMATION THAT I THOUGHT WAS NECESSARY TO ALLEGE.  IN |
| 16 | ANTITRUST CASES, IT IS THE COURT'S DUTY, I THINK TO -- TO BE |
| 17 | VIGOROUS AND MAKE SURE THAT WE DO NOT ALLOW ANTITRUST CASES TO |
| 18 | GO FORWARD UNLESS IT MEETS VERY -- THE STANDARD. |
| 19 | AND A NUMBER OF THOSE QUESTIONS STILL WEREN'T ANSWER, AND |
| 20 | PERHAPS IT'S BECAUSE YOU DON'T WANT TO ANSWER THEM.  BUT IT |
| 21 | APPEARS TO ME THAT THE COMPLAINT IS TRYING TO SKIRT AROUND THE |
| 22 | ATM CASE, AND THAT GIVES ME CONCERN. |
| 23 | I'LL LET YOU ADDRESS IT.  I SHOULD -- THOUGHT YOU SHOULD |
| 24 | KNOW UP FRONT. |
| 25 | GO AHEAD. |

1          **MR. SCHMIDT:**  WELL, THANK YOU, YOUR HONOR.

2          WE BELIEVE IN GOOD FAITH THAT WE ALLEGED EVERYTHING THAT

3     YOUR HONOR ASKED US TO ALLEGE.  WE -- WE'VE ALLEGED THAT

4     THE -- THE COST OF THE APPS AVAILABLE ON APPLE'S APP STORE

5     EQUAL THE PRICE THAT THE DEVELOPER WOULD HAVE CHARGED PLUS THE

6     30 PERCENT MARKUP.  WE -- I DON'T THINK WE COULD BE ANY

7     CLEARER ABOUT THAT.  THERE'S NO QUESTION THAT THAT IS APPLE'S

8     MONOPOLY-PRICED PRODUCT, APPLE'S MONOPOLY FEE.  AND THERE'S NO

9     QUESTION THAT APPLE CHARGED THAT DIRECTLY TO THE PLAINTIFFS,

10    AND THE PLAINTIFFS WERE THE DIRECT PURCHASERS.  THEY'RE THE

11    ONLY PURCHASERS.

12          **THE COURT:**  HOW DO YOU GET AROUND IN RE: ATM?  I

13    MEAN, THERE SEEMS TO BE NO SUBSTANTIVE DIFFERENCE.

14          **MR. SCHMIDT:**  I THINK THERE'S AN INCREDIBLE

15    SUBSTANTIVE DIFFERENCE.  IN ATM, THERE WERE TWO FEES INVOLVED.

16    ONE WAS A INTERBANK FEE, THE INTERCHANGE FEE.  AND THAT'S

17    THE -- THAT'S THE PRODUCT WHERE THE BANKS FIXED THE PRICE.

18    THE PLAINTIFFS DIDN'T PAY THAT FEE.

19          THERE WAS ANOTHER FEE CALLED THE FOREIGN ATM FEE.  THAT'S

20    THE FEE THAT PLAINTIFFS PAID.  AND THE PLAINTIFFS' ARGUMENT

21    WAS A CLASSIC INDIRECT PURCHASER ARGUMENT.  THEY WERE SAYING

22    THAT BECAUSE THE FIXING OF THE INTERCHANGE FEE INDIRECTLY

23    RAISED THE PRICE OF THE FOREIGN ATM FEE, THAT THEY WERE

24    ALLOWED TO SUE THE BANKS EVEN THOUGH THEY DIDN'T PAY THE

25    MONOPOLY FEE.

1    THAT'S -- THAT'S LIKE -- A TRADITIONAL INDIRECT PURCHASER

2    SITUATION LIKE THE -- YOU HAVE --

3                    (SIMULTANEOUS COLLOQUY.)

4         **THE COURT:**  GO AHEAD.  FINISH UP.

5         **MR. SCHMIDT:**  FOR EXAMPLE, YOU HAVE CATHODE RAY

6    TUBES.  THAT WAS A COMPONENT OF A MONITOR.  AND WHEN THE PRICE

7    WAS FIXED OF THE COMPONENT, IT WAS PASSED THROUGH TO THE

8    CONSUMERS WHO BOUGHT THE MONITOR.  THAT'S COMPLETELY DIFFERENT

9    THAN THE SITUATION WE HAVE.

10    HERE, WE'RE ONLY PURCHASERS IN THE -- IN THE CHAIN OF

11    DISTRIBUTION.  YOUR HONOR SAID IN YOUR AUGUST 25TH ORDER THAT

12    THE FIRST PARTY WHO BUYS THE MONOPOLY-PRICED PRODUCT IS THE

13    DIRECT PURCHASER.  THAT'S EXACTLY RIGHT.

14    THE DEVELOPERS SELL THE PRODUCT.  APPLE SELLS THE PRODUCT.

15    THERE'S NO PURCHASER IN THE CHAIN OF DISTRIBUTION OTHER THAN

16    THE CONSUMER, OTHER THAN THE PLAINTIFFS.  WE BOUGHT THE

17    MONOPOLY-PRICED PRODUCT DIRECTLY FROM THE MONOPOLIST.  THAT'S

18    A CLASSIC DIRECT PURCHASER --

19         **THE COURT:**  MR. WALL.

20         **MR. WALL:**  YOUR HONOR, I THINK COUNSEL REALLY WITH

21    THE VERY FIRST SENTENCE HE SAID -- HE SAID WHAT THEY'RE

22    ALLEGING IS THAT THE 30 PERCENT WAS ADDED QUOTE TO THE PRICE

23    THAT DEVELOPER WOULD HAVE CHARGED.  THE -- THE SIGNIFICANT

24    WORDS THERE ARE "WOULD HAVE CHARGED."  NOT "CHARGED," BUT

25    "WOULD HAVE CHARGED."  AND I DON'T THINK YOU'RE -- YOUR ORDER

1    COULD HAVE BEEN ANY MORE CLEAR ABOUT THIS.

2        YOU -- YOU DEVOTE A FOOTNOTE TO SAYING YOU CAN'T TELL ME

3    THAT YOU HAVE A FEE THAT APPLE ADDS BY SAYING THAT APPLE TAKES

4    A COMMISSION.  THOSE ARE DIFFERENT THINGS.  AND -- AND THEY

5    CAN'T SAY THAT BECAUSE THEY CAN'T ALLEGED ALLEGE IT IN GOOD

6    FAITH.  THAT'S --

7        LET'S BE CLEAR.  THIS IS NOT SOMETHING THAT'S SECRET.

8    APPLE SELLS -- HAS SOLD BILLIONS OF APPS TO MILLION OF

9    CONSUMERS.  IT NEVER ADDS A FEE.  COUNSEL KNOWS THAT, SO HE'S

10   NOT GOING TO SAY THAT WHEN ANGRY BIRDS IS PRICED AT 99 CENTS,

11   APPLE ADDS 30 CENTS TO IT.  HE'LL NEVER SAY THAT 'CAUSE HE

12   CAN'T.

13            **THE COURT:**  ALL RIGHT.  STOP.

14       CAN YOU SAY THAT?

15            **MR. SCHMIDT:**  YES.  WE'RE SAYING IT BECAUSE THE

16   DEVELOPER IS GOING TO -- IS GOING TO CHARGE WHAT ITS COST IS

17   PLUS A MARGINAL REASONABLE RATE OF RETURN.  IF THE DEVELOPER

18   WERE ALLOWED TO SELL ANGRY BIRDS ON ITS OWN WEBSITE, WHICH IT

19   CAN'T DO BECAUSE APPLE HAS MONOPOLIZED THE WORLDWIDE

20   DISTRIBUTION MARKET OF SOFTWARE FOR THE IPHONE, THE DEVELOPER

21   WOULD CHARGE ITS COST PLUS REASONABLE RATE OF RETURN.  IT

22   WOULD CHARGE 66 CENTS.  BUT BECAUSE APPLE NEEDS TO MAKE 30

23   PERCENT, THAT'S ITS MONOPOLY PROFIT.

24            **THE COURT:**  WAIT.  I THOUGHT --

25            **MR. SCHMIDT:**  IT -- IT -- THE DEVELOPER INSTEAD

1    PRICES THE PRODUCT AT APPLE'S INSTRUCTION AT 99 CENTS.  BUT

2    APPLE DOESN'T PAY THE 30 CENTS.  THE DEVELOPER DOESN'T PAY THE

3    30 CENTS.  THE ONLY PERSON WHO PAYS THE 30 CENTS IS THE PERSON

4    WHO BUYS THE IPHONE.  THAT'S A DIRECT PURCHASER SITUATION.

5        IT -- WHETHER APPLE ITSELF CHARGES THE 30 CENTS OR IT

6    TELLS THE DEVELOPER TO CHARGE THE 30 CENTS, IT DOESN'T MAKE A

7    DIFFERENCE, BECAUSE THEN WHAT YOU'RE DOING IS YOU'RE EITHER A

8    DIRECT PURCHASER OR YOU HAVE A COCONSPIRATOR SITUATION.

9            **THE COURT:**  WHY IS --

10          **MR. SCHMIDT:**  IN THE ATM -- IN THE ATM CASE, THE

11    NINTH CIRCUIT SAID THERE REALLY IS NO COCONSPIRATOR SITUATION

12    BECAUSE IT'S REALLY A DIRECT PURCHASER SITUATION.  BECAUSE IF

13    YOU SAY IT'S APPLE WHO CHARGES OR YOU SAY IT'S APPLE AND/OR

14    THE DEVELOPER WHO CHARGES, THE CONSUMER IS STILL BUYING THE

15    PRICE-FIXED PRODUCT DIRECTLY FROM ONE OR THE OTHER WHO ARE THE

16    COCONSPIRATORS WHO ARE THE DIRECT SELLERS, AND THE CONSUMERS

17    ARE THE DIRECT PURCHASERS.  THAT'S THE WAY -- THAT'S WHAT --

18    WHAT --

19          **THE COURT:**  THERE IS NOTHING -- THERE IS NO -- WHERE

20    IS THE ALLEGATION THAT SAYS THAT -- THAT APPLE REQUIRES THEM

21    TO SELL IT AT A PARTICULAR PRICE?  WHAT STOPS THE DEVELOPER

22    FROM -- THE DEVELOPER CAN SELL IT FOR 69 CENTS, CAN'T THEY?

23    THERE'S NO --

24          **MR. SCHMIDT:**  YEAH, BUT --

25            (SIMULTANEOUS COLLOQUY.)

1      **THE COURT:**  LET ME FINISH.

2      **MR. SCHMIDT:**  I'M SORRY.

3      **THE COURT:**  THERE'S NO ALLEGATION IN HERE THAT SAYS

4  THAT THEY CAN'T SELL IT FOR 69 CENTS.

5      **MR. SCHMIDT:**  THERE -- THERE IS AN ALLEGATION IF YOU

6  READ THE INFERENCES --

7      **THE COURT:**  WHAT --

8      **MR. SCHMIDT:**  -- FROM THE --

9      **THE COURT:**  -- PARAGRAPH?

10      **MR. SCHMIDT:**  THE ALLEGATION IS THAT THE

11  DEVELOPERS --

12      **THE COURT:**  WHAT PARAGRAPH?

13      **MR. SCHMIDT:**  THERE'S A SERIES OF PARAGRAPHS, YOUR

14  HONOR.

15      **THE COURT:**  AND THEN YOU SAID, THERE WAS AN

16  INFERENCE.  WHY IS THERE AN INFERENCE?  WHY CAN'T YOU JUST SAY

17  IT?

18      **MR. SCHMIDT:**  BECAUSE -- BECAUSE WE BELIEVE WE HAVE

19  SAID IT, YOUR HONOR.

20      **THE COURT:**  ALL RIGHT.  SO WHERE?  WHAT PARAGRAPH?

21      **MR. SCHMIDT:**  OKAY.  ON PAGE 5 OF THE BRIEF, WE

22  SUMMARIZE ALL THE PARAGRAPHS --

23      **THE COURT:**  I'M ASKING YOU TO TELL ME --

24          (SIMULTANEOUS COLLOQUY.)

25      **MR. SCHMIDT:**  OKAY.  PARAGRAPH -- PARAGRAPH 41,

1    PARAGRAPH 8, PARAGRAPHS 3 TO 4, PARAGRAPHS 14, 46, 47, 48 --

2         **THE COURT:**  MR. WALL.

3         **MR. WALL:**  IF I MAY, YOUR HONOR, I THINK THAT WE CAN

4    JUST STICK WITH PARAGRAPH 41, AND I HAD ACTUALLY PREPARED

5    SOMETHING THAT, IF IT'S ALL RIGHT WITH THE COURT, I'LL JUST

6    HAND UP TO TRY TO CUT THROUGH ALL OF THIS.

7         **THE COURT:**  WELL, HAVE YOU GIVEN IT TO THE OTHER

8    SIDE?

9         **MR. WALL:**  NO, I HAVEN'T.  I JUST ARRIVED.  IT'S --

10   IT'S -- I DON'T THINK THERE'S GOING TO BE AN ISSUE WITH IT.

11   IT'S A PRETTY SIMPLE --

12              (PAUSE IN THE PROCEEDINGS.)

13        **MR. WALL:**  I THINK IT WAS PRETTY CLEAR THAT YOUR

14   HONOR WANTED US TO DISTINGUISH BETWEEN -- WANTED PLAINTIFFS TO

15   DISTINGUISH BETWEEN TWO DIFFERENT SCENARIOS.  ONE -- SCENARIO

16   ONE IS THAT THE DEVELOPER SETS A PRICE KNOWING THAT THIS 30

17   PERCENT COMMISSION IS GOING TO BE CHARGED IF IT'S A PAID

18   APP -- REMEMBER, THIS ONLY APPLIES TO PAID APPS 'CAUSE FREE

19   APPS COME WITH FREE DISTRIBUTION.

20        BUT IN THAT -- IN THAT SITUATION, WE'RE DEALING WITH THE

21   PROBLEM THAT THE SUPREME COURT RAISED IN THE ILLINOIS BRICK

22   DECISION AND IN ALL THE SUBSEQUENT DECISIONS, WHICH IS WE

23   DON'T KNOW WHAT THAT PRICE WOULD HAVE BEEN BECAUSE THE

24   DEVELOPER, WHO IS THE PERSON WHO IS PAYING FOR DISTRIBUTION

25   SERVICES -- COUNSEL'S SAYING THAT THE CONSUMER IS THE FIRST

1    PURCHASER.

2        NO, APPLE'S CHARGING FOR DISTRIBUTION.  THAT'S WHAT THIS

3    FEE DOES.  IF YOU -- IF YOU HAVE TO DISTRIBUTE THROUGH THE APP

4    STORE, THEN YOU'LL HAVE TO PAY A 30 PERCENT COMMISSION.  SO

5    THE WHOLE PROBLEM WITH THAT SCENARIO IS WE HAVE TO WONDER WHAT

6    THE DEVELOPER WOULD HAVE CHARGED.  AND THE SUPREME COURT SAYS

7    BLACK-AND-WHITE RULE, WE WON'T GO DOWN THAT PATH.

8        NO MATTER HOW MUCH THAT COUNSEL THINKS THAT HE CAN SOLVE

9    IT OR SAY THAT HOW PEOPLE WOULD HAVE BEHAVED, THE

10   SUPREME COURT FLATLY PROHIBITS THAT INQUIRY.

11       THE ALTERNATIVE SCENARIO IS WHERE THE DEVELOPER HAS SET

12   ITS PRICE.  THE DEVELOPER HAS -- HAS EXERCISED IN ITS

13   DISCRETION, SET A PRICE, AND THEN APPLE JUST GOES AND TACKS ON

14   SOMETHING TO IT.  IN THAT CASE, THE PRICE TO THE CONSUMER IS

15   ELEVATED FROM WHAT THE DEVELOPER -- FROM THE PRICE THAT THE

16   DEVELOPER SET.

17       THAT'S WHY THE TWO DIFFERENT SCENARIOS, THE PRICES ARE --

18   TO THE CONSUMER ARE DIFFERENT.  WELL, THIS CASE IS CLEARLY THE

19   FIRST SCENARIO, AND THAT'S THE POINT OF -- OF THE SECOND

20   SLIDE, AND IT QUOTES THE LANGUAGE FROM THE -- FROM THE FIRST

21   PARAGRAPH THAT COUNSEL CITED TO YOU, WHICH IS PARAGRAPH 41.

22       AND WHAT PARAGRAPH 41 IS SAYING, IN THE SECOND SENTENCE,

23   IS THAT APPLE TAKES ITS 30 PERCENT COMMISSION OFF THE TOP,

24   THEN REMITS THE BALANCE OR 70 PERCENT OF THE PURCHASE PRICE TO

25   THE DEVELOPER.

1     AND THE WHOLE ECONOMIC PROBLEM HERE IS THAT BECAUSE OF

2   THAT, DEVELOPERS WILL MAKE WHATEVER DECISIONS DEVELOPERS MAKE

3   ABOUT THEIR PRICES.  THERE'S NO ALLEGATION THAT APPLE FORCES

4   ANYBODY TO CHARGE ANYTHING.  IF YOU GO ON THAT -- THE APP

5   STORE, YOU'LL SEE 99 CENTS, OR WHATEVER, 3.99 OR WHATEVER IT

6   IS, THOSE AREN'T APPLE PRICES.  THERE'S NO ALLEGATION THAT

7   THOSE ARE APPLE PRICES.  THOSE ARE DEVELOPER PRICES.  AND

8   APPLE WILL TAKE A CUT OF THOSE.  AND THAT IS THE DIRECT

9   ANALOGY TO THE ATM CASE IN THAT THERE'S -- THERE'S A FEE, A

10  FEE, IN THIS INSTANCE PAID BY DEVELOPERS, THAT -- THAT THEN IS

11  ALLEGEDLY PASSED ON TO CONSUMERS IN THE PRICE.  THAT'S THE END

12  OF THE ANALYSIS.

13     THE SUPREME COURT'S TEACHING IN THE ATM CASE TEACHES WE DO

14  NOT EVER GO DOWN THAT PATH.

15         **MR. SCHMIDT:**  YOUR HONOR, THAT'S NOT THE ATM CASE.

16  THAT IS THE CAMPOS V. TICKETMASTER CASE WHERE TWO JUDGES IN

17  THE EIGHTH CIRCUIT CAME UP WITH THIS ANTECEDENT TRANSACTION

18  DEFINITION OF AN INDIRECT PURCHASER.  NO OTHER JUDGE IN THE

19  COUNTRY HAS ACCEPTED THAT THEORY.

20     BUT APPLE CONCEDES THAT'S THEIR THEORY.  THEY'RE --

21  THEY'RE ALLEGING AN ANTECEDENT TRANSACTION THEORY.  NO COURT

22  HAS EVER ACCEPTED THAT OTHER THAN THOSE TWO JUDGES IN THE

23  EIGHTH CIRCUIT.

24     WHAT MATTERS IS THAT THE MONOPOLY -- MONOPOLIST IS APPLE

25  BECAUSE BUT FOR APPLE, THAT 30 PERCENT WOULD NEVER BE CHARGED

1    BY THE DEVELOPER.  AND APPLE SELLS THE PRODUCT DIRECTLY TO THE

2    PLAINTIFF.  AND IT'S A DIRECT -- THE PLAINTIFF IS A DIRECT

3    PURCHASER OF THE MONOPOLIZED PRICED PRODUCT DIRECTLY FROM THE

4    MONOPOLIST.  THAT'S ALL THAT MATTERS IN THE NINTH CIRCUIT.

5        FACTUALLY, HIS -- HIS ASSUMPTIONS ARE ALL WRONG.  IF A

6    DEVELOPER WHO -- WHO IN ORDER TO MAKE MONEY ON ITS APP WOULD

7    CHARGE 99 CENTS --

8           **THE COURT:**  WELL, YOU'VE USED THE ANGRY BIRD EXAMPLE

9    EARLIER.

10          **MR. SCHMIDT:**  RIGHT.

11          **THE COURT:**  HAVE YOU DONE ANY ANALYSIS OF THIS

12   SELLING OF ANGRY BIRD FOR, LET'S SAY, THE OTHER PHONES?

13          **MR. SCHMIDT:**  THERE IS INFORMATION OUT THERE, BUT --

14          **THE COURT:**  BUT IT'S --

15          **MR. SCHMIDT:**  ON -- GOOGLE PLAY ALLOWS THE DEVELOPERS

16   TO SELL THEIR OWN APPS.  AND THERE ARE MANY APPS THAT COST

17   DIFFERENT PRICES.

18          **THE COURT:**  SO IT'S --

19          **MR. SCHMIDT:**  THEY'RE -- THEY'RE CHEAPER OUTSIDE OF

20   GOOGLE PLAY.

21          **THE COURT:**  IS ANGRY BIRD, THEN, AS YOUR EXAMPLE SOLD

22   FOR A -- FOR LESS IF -- FOR EVERY OTHER PHONE OTHER THAN THE

23   IPHONE?

24          **MR. SCHMIDT:**  I CAN'T SAY FOR THIS PARTICULAR PROGRAM

25   WHETHER IT SOLD FOR LESS FOR EVERY OTHER PHONE.

1    **THE COURT:**  YOU HAVE TO DONE NO ANALYSIS.

2        **MR. SCHMIDT:**  WHAT I CAN SAY -- WELL, THERE IS

3    ANALYSIS, BUT THIS IS A FACTUAL QUESTION.  THIS IS WHY YOU

4    HAVE DISCOVERY AND WHY YOU HAVE EXPERTS.  YOU CAN'T RULE AS A

5    MATTER OF LAW THAT THERE'S THIS -- THAT THERE ISN'T A --

6        **THE COURT:**  I'M PRESIDING OVER --

7        **MR. SCHMIDT:**  -- MONOPOLY PRICE.

8        **THE COURT:**  I'M PRESIDING OVER AN MDL ANTITRUST CASE,

9    AND I CAN TELL YOU THERE IS ANALYSIS.  THERE IS ECONOMIC

10   ANALYSIS THAT IS DONE BEFORE THE -- THE CASES ARE BROUGHT.  SO

11   IT'S NOT AS IF IT ISN'T DONE.

12      NOW, YOU MAY NOT WANT TO DO IT BUT IT ISN'T AS IF IT ISN'T

13   DONE.

14       **MR. SCHMIDT:**  WE'VE DONE SOME, YOUR HONOR.  WE'VE

15   DONE SOME.  IT -- BUT WE DON'T HAVE -- WE DON'T HAVE TO PLEAD

16   THAT IT'S DONE DIFFERENTLY ELSEWHERE.

17       **THE COURT:**  WELL, YOU HAVE TO PLEAD --

18                   (SIMULTANEOUS COLLOQUY.)

19       **MR. SCHMIDT:**  AS A MATTER OF ECONOMICS, THE DEVELOPER

20   IS NOT GOING TO LOSE MONEY ON THE SALE OF ITS APPS.  AND IF

21   APPLE TELLS THE DEVELOPER, WHO THINKS IT NEEDS 99 CENTS TO

22   TURN A REASONABLE PROFIT, THAT WE'RE GOING TO CHARGE 30

23   PERCENT OF YOUR PRICE, WE'RE GOING TO TAKE THIS 30 PERCENT

24   COMMISSION, THEN THE DEVELOPER KNOWS THAT'S GOING TO BE

25   GETTING 66 CENTS INSTEAD OF 99 CENTS TO -- TO MAKE A PROFIT,

1    AND THE DEVELOPER IS NOT GOING TO LOSE MONEY.  SO WHAT'S THE

2    DEVELOPER GOING TO DO?  THE DEVELOPER IS GOING TO INCREASE ITS

3    PRICE TO COVER APPLE'S -- APPLE DEMANDED PROFIT.

4              **MR. WALL:**  AND --

5              **MR. SCHMIDT:**  BUT -- BUT -- SO -- BECAUSE IT KNOWS

6    THAT EVERY OTHER APP DEVELOPER IS DOING THE SAME THING.  SO

7    WHETHER APPLE CHARGES THE 30 PERCENT DIRECTLY -- IF APPLE

8    BOUGHT THE APPS FROM THE DEVELOPER, AND THEN INCREASED THE

9    PRICE BY 30 PERCENT BECAUSE IT HAD A MONOPOLY AND THEN SOLD

10   THE PRODUCT TO THE CONSUMER, THAT WOULD CLEARLY BE A DIRECT

11   PURCHASER SITUATION.

12        THIS IS EXACTLY THE SAME THING.  APPLE THINKS THEY CAN GET

13   OUT FROM UNDER THIS BY TELLING THE APP DEVELOPER TO CHARGE ITS

14   SUPER-COMPETITIVE PRICE FOR IT.

15             **THE COURT:**  WHERE IS THE ALLEGATION THAT THEY DID

16   THAT?

17             **MR. SCHMIDT:**  IT'S --

18             **THE COURT:**  IT IS --

19                  (SIMULTANEOUS COLLOQUY.)

20             **THE COURT:**  IT IS WHAT YOU WANT ME TO INFER.  THERE

21   IS NO ALLEGATION.

22             **MR. SCHMIDT:**  NO, THERE IS.  LOOK AT PARAGRAPH 48,

23   YOUR HONOR.  PARAGRAPH 48, WE MAKE IT VERY CLEAR THAT IN A

24   COMPETITIVE ENVIRONMENT WHERE DEVELOPERS COULD SELL THEIR APPS

25   ON THEIR OWN WEBSITES WITHOUT CHARGING APPLE'S 30 PERCENT

1    MARKUP AND DISCOUNT RETAILERS LIKE BEST BUY OR -- AND SO ON,

2    COULD OBTAIN VOLUME DISCOUNTS AND SELL FOR FAR LESS THAN A 30

3    PERCENT PROFIT, APPLE WOULD BE UNDER CONSIDERABLE PRESSURE TO

4    SUBSTANTIALLY LOWER ITS 30 PERCENT PROFIT MARGIN BECAUSE

5    OTHERWISE ITS APP STORE WOULD BE PRICED OUT OF THE MARKET AND

6    LOSE SUBSTANTIAL MARKET SHARE.  IN A TRULY COMPETITIVE IPHONE

7    APPS DISTRIBUTION ENVIRONMENT, APPLE'S 30 PERCENT MARGIN WOULD

8    BE SIMPLY UNSUSTAINABLE.

9        IN OTHER WORDS, APPLE WOULDN'T GET AWAY WITH CHARGING

10   IPHONE CONSUMERS THAT 30 PERCENT.  THEY MONOPOLIZE -- IMAGINE

11   THE WORLD WHERE TOYS"R"US IS THE ONLY DISTRIBUTOR WHO CAN SELL

12   TOYS.  IT WOULD -- THE PRICES OF TOYS WOULD BE ASTRONOMICAL.

13   AND, IN FACT, TOYS"R"US CAN'T DO THAT BECAUSE TOYS"R"US, JUST

14   LIKE MICROSOFT, WHICH WAS FOUND NOT TO BE ABLE TO DO THAT, WAS

15   SUED BY THE GOVERNMENT.

16       AND I'LL GIVE YOU THE CITE THERE.  IT'S SEVENTH CIRCUIT,

17   2000 CASE 221 F3D. 928.  YOU CAN'T AS -- YOU CAN'T -- YOU

18   CAN'T MONOPOLIZE THE WORLDWIDE DISTRIBUTION OF A PRODUCT.  THE

19   PART -- COMPUTER HARDWARE AND COMPUTER SOFTWARE MARKETS IN

20   THIS COUNTRY ARE HISTORICALLY DIFFERENT ECONOMICALLY DISTINCT

21   MARKETS.

22       AND THE CASE LAW IS VERY CLEAR, YOU CAN'T USE A

23   COMPETITIVE ADVANTAGE YOU HAVE IN ONE MARKET TO -- TO LEVERAGE

24   YOURSELF INTO DOMINATING AND MONOPOLIZING ANOTHER MARKET.  YOU

25   HAVE TO THINK OF THE COMPLICATIONS OF THIS CASE, YOUR HONOR.

1    WHAT HAPPENS THE NEXT TIME SOMEONE INVENTS A NEW COMPUTER.

2    SAY, SOMEONE COMES UP WITH A QUANTUM COMPUTER.  UNDER THEIR

3    THEORY AND THEIR APPROACH BOTH TO THE DIRECT PURCHASER

4    ANALYSIS AND TO THE ANTI-COMPETITIVE CONDUCT ANALYSIS, THE

5    FIRST PERSON -- FIRST MANUFACTURER COMES UP -- COMPUTER WILL

6    BE ABLE TO CORNER THE MARKET FOR THE SOFTWARE FOR THE

7    COMPUTER.

8        SO NO PERSON COULD BUY SOFTWARE FOR THAT COMPUTER UNLESS

9    THEY MADE A SUPER-COMPETITIVE PRICE TO THE MANUFACTURER OF THE

10   COMPUTER.  THAT DOESN'T HAPPEN WITH PC'S.  THAT DOESN'T HAPPEN

11   IN IMAC'S OR IBOOKS.  THE HARDWARE MARKET IS DISTINCT FROM THE

12   SOFTWARE MARKET.

13        **MR. WALL:**  YOUR HONOR --

14        **MR. SCHMIDT:**  YOU CAN'T USE YOUR -- YOUR ECONOMIC

15   ADVANTAGE WHETHER IT'S NATURALLY EARNED OR NOT IN ONE MARKET

16   TO LEVERAGE YOURSELF INTO -- INTO DISTRIBUTION MARKET.

17        **THE COURT:**  I --

18        **MR. SCHMIDT:**  I MEAN, THAT'S WHY THE ANTITRUST LAWS

19   CAME INTO BEING.

20        **THE COURT:**  WAIT.  BUT YOU HAVE TO HAVE -- THERE HAS

21   TO BE MORE THERE.

22        **MR. SCHMIDT:**  WELL, WHO'S THE DIRECT PURCHASER IF

23   IT'S NOT THE CONSUMER?  NO ONE ELSE IN THE DISTRIBUTION STREAM

24   BUYS APPS.

25        **MR. WALL:**  THAT DOESN'T --

1      **MR. SCHMIDT:**  THE DEVELOPER SELLS --

2      **THE COURT:**  ENOUGH.

3      **MR. WALL:**  YOUR HONOR, THAT DOESN'T MATTER.  LOOK IN

4   THE ATM CASE.  YOU'RE DEALING WITH AN INTERCHANGE FEE.  YOU

5   WEREN'T DEALING WITH -- WITH ANY FEE THAT WAS CHARGED TO THE

6   CONSUMER.  THE -- THE LEGAL FEE WAS AN INTERCHANGE FEE THAT

7   WAS ACTUALLY CHARGED TO THE BANKS.  THE BANKS THEN ALLEGEDLY

8   PASSED THAT ON IN AN ENTIRELY DIFFERENT FEE PAID BY CONSUMERS

9   WHO WERE EVERY BIT AS MUCH IN PRIVITY WITH -- WITH THE -- WITH

10  THE BANKS WHEN THEY WERE CHARGED THAT FEE, AS APPLE IS WITH

11  THESE CONSUMERS.

12      AND THE NINTH CIRCUIT SAID THAT THAT'S AN INDIRECT

13  PURCHASER THEORY BECAUSE THE -- THE ANTI-COMPETITIVE FEE IS

14  THE INTERCHANGE FEE, AND THIS IS SIMPLY BEING REFLECTED IN

15  THIS -- IN THIS OTHER FEE.

16      THAT IS A DIRECT MATCH TO WHAT THEY'RE SAYING HERE, WHICH

17  IS TO -- AN ALLEGEDLY ANTI-COMPETITIVE FEE TO THE DEVELOPERS.

18  AND BY THE WAY, NO DEVELOPER AND NO GOVERNMENT AGENCY HAS EVER

19  COMPLAINED ABOUT THIS SYSTEM, BUT WE -- WE PRETEND FOR THESE

20  PURPOSES THEY'RE THE VICTIMS.

21      THEY ARE VICTIMIZED BECAUSE THEY HAVE TO PAY THAT FEE, AND

22  THEN WHAT COUNSEL WAS ESSENTIALLY DOING WAS TESTIFYING TO HIS

23  VIEW AS TO HOW THAT WILL AFFECT PRICING.

24      BUT EVEN IF THAT WERE REAL TESTIMONY FROM AN ECONOMIST OR

25  WHAT-HAVE-YOU, THE TEACHING OF THE ILLINOIS BRICK CASES IS

1    THAT WE CAN'T PERFORM THAT ANALYSIS, THAT THE SUPREME COURT

2    DREW A BLACK-AND-WHITE RULE THAT SAYS, WE WILL NOT SPECULATE

3    ABOUT -- ABOUT HOW THIS -- THE -- IN THIS CASE THE FEE TO THE

4    DEVELOPERS AFFECTS THEIR PRICING.  IF THE DEVELOPERS WANT TO

5    SUE, THEY MAY, BUT -- BUT CONSUMERS MAY NOT.

6    I HAVE TO SAY WE -- COUNSEL TRIES SO HARD IN THEIR PAPERS

7    AND THEN HERE TO SAY, WE ARE TRYING TO RELY ON THE CAMPOS

8    DECISION.  WE DON'T NEED TO RELY ON THE CAMPOS DECISION.

9    THERE'S NOTHING WRONG WITH THE CAMPOS DECISION.  AND, IN FACT,

10    THE ANTITRUST DIVISION OF THE DEPARTMENT OF JUSTICE AND THE

11    SOLICITOR GENERAL URGED THE SUPREME COURT NOT TO REVIEW THAT

12    CASE BECAUSE IT WAS CORRECTLY DECIDED.

13    BUT IT PRESENTS A COMPLEXITY THAT DOESN'T MATTER HERE,

14    BECAUSE THIS CASE, LIKE ATM AND LIKE KENDALL, ALL INVOLVE A

15    FEE THAT WAS -- THAT WAS ALLEGEDLY BORNE BY SOMEBODY ELSE

16    WHO'S NOT A PARTY, WHETHER -- HERE, THE DEVELOPERS THAT WAS

17    PASSED THROUGH TO THE CONSUMER.

18    AND THAT THEORY IS CLEARLY BARRED BY THE ATM DECISION.

19    I WOULD LOVE TO STAND HERE AND DEBATE COUNSEL ABOUT --

20    ABOUT WHETHER THIS BUSINESS MODEL IS PRO-COMPETITIVE OR NOT.

21    I DON'T THINK YOU COULD FIND A GREATER EXAMPLE IN THE LAST 25

22    YEARS OF BUSINESS HISTORY OF SOMETHING THAT WAS RECEIVED

23    WARMLY BY CONSUMERS OTHER THAN THE IPHONE, BUT IT DOESN'T

24    MATTER.  THEY'RE NOT DIRECT PURCHASERS.  THEY ARE NOT ALLOWED

25    TO BRING A FEDERAL ANTITRUST CLAIM.

1    **THE COURT:**  OKAY.  GENTLEMEN, ANYTHING ELSE?

2    **MR. WALL:**  THANK YOU, YOUR HONOR.

3    **MR. SCHMIDT:**  THANK YOU, YOUR HONOR.

4    (PROCEEDINGS WERE CONCLUDED AT 10:22 A.M.)

5    --OOO--

6

7

8    **CERTIFICATE OF REPORTER**

9

10    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

11   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12   I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

13   NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

14   HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

15   OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

16

17

18   _____

19   RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

20   SATURDAY, NOVEMBER 23, 2013

21

22

23

24

25