Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Ste. 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Plaintiffs and
the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION, | No. 4:11-cv-06714-YGR<br><br>RELATED CASE NOS. 4:19-cv-02852-YGR<br><br>(*Lawrence v. Apple*) and 4:12-cv-05404-YGR<br><br>(*Ward v. Apple*)<br><br>***CAMERON* PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT APPLE INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL L.R. 3-12**<br><br>Hon. Yvonne Gonzalez Rogers |
| ROBERT PEPPER, on behalf of himself and all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>APPLE, INC.,<br>Defendant. | CASE NO. 4:11-cv-06714-YGR |

Plaintiffs in *Cameron v. Apple Inc.*, No. 3:19-cv-03074-WHA (N.D. Cal.), oppose defendant Apple Inc.'s motion[1] to relate their case to the very long-pending and much-litigated *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.).  As demonstrated below, these highly distinct matters do not meet the relation criteria set forth in Civil L.R. 3-12(a).

## I.   STATEMENT OF RELEVANT FACTS

Plaintiffs in the *Cameron* matter are developers who distribute iOS apps via Apple's exclusive App Store.  These developer plaintiffs allege that Apple has improperly acquired and maintained monopoly (or, alternatively, monopsony) power as it pertains to the distribution of iOS apps and digital products (including subscriptions) sold in-app.  They also maintain that Apple abuses its power by mandating minimum and end-in-$.99 pricing for paid apps and related digital items.  They allege that Apple's iron-fisted exclusion of competition results in the App Store being hopelessly overcrowded, to their detriment.  And they contend that Apple has overcharged developers for distribution services (or underpaid them for their digital products), and that its practices have led to decreased output and innovation, all to the detriment of competition.

Mr. Cameron and his fellow iOS developer, Pure Sweat Basketball, Inc., filed their proposed class action suit *a mere three weeks ago*, on June 4, 2019.  The case is pending before the Hon. William H. Alsup.  *Cameron* alleges violations of Section 2 of the Sherman Act under monopoly and attempted-monopoly theories, as well as under alternative monopsony and attempted-monopsony theories.  *Cameron* also alleges violations of California's Unfair Competition Law.  Further, *Cameron* seeks certification of a federal law class on a nationwide basis and of a California law class

---

[1] Apple filed this motion late in the afternoon on Friday, June 21, 2019.  It opted to serve the *Cameron* plaintiffs solely by U.S. mail, even though its initial and current counsel had been in contact with the *Cameron* plaintiffs' counsel by email.  In fact, Apple's counsel actually sent an email to the *Cameron* plaintiffs' counsel that very morning, asking if the *Cameron* plaintiffs adhered to their earlier expressed position that they declined to join in a motion to relate.  Plaintiffs reiterated on the morning of Monday, June 24, 2019, that they did adhere to that position, but even then, Apple's counsel did not indicate in response that it had already filed its client's motion.

The turnaround time for a response to this motion is a mere four calendar days.  Civil L.R. 7-11(b).  Counsel for the *Cameron* plaintiffs only became aware later in the day yesterday, June 24, that Apple had filed it on June 21.  This accorded the *Cameron* plaintiffs with a single day to respond.  While Apple may have adhered to the letter of the rules with respect to service of its motion, regrettably, the circumstances suggest a calculation to deny the *Cameron* plaintiffs much time to respond.

CAMERON PLAINTIFFS' OPP. TO APPLE'S MOTION TO RELATE CASES - 1
Case No.: 4:11-cv-06714-YGR
010818-11/1146351 V1

on a nationwide basis, or, alternatively with respect to their California law claim, and at minimum, certification of a California-resident class based on California law.

By contrast, *Pepper* was filed in January 2012, *some seven-and-a-half years ago*, on behalf of *consumers*. The proposed class period extends back some four years from filing, to December 2007. There, consumers allege that as the result of Apple's violations of the Sherman Act, they paid too much for apps. The consumers' claims are based solely on violation of the Act's provisions as to monopolization and attempted monopolization. Their complaint contains no alterative allegations based on monopsony, because, after all, they are *consumers*.

In another notable difference, the operative complaint contains no allegations regarding overcharges in the purchase of in-app products or subscriptions. Again, the *Cameron* plaintiffs do allege injury related to in-app purchases, including subscriptions.

Further, unlike *Cameron*, *Pepper* contains no state-law claims. Also, *Pepper* contains no allegations as to any alternative state-resident class.

Moreover, the litigants in *Pepper* have engaged in extensive motions and appellate practice. They have filed papers moving for, and opposing dismissal of, plaintiffs' claims on *four* occasions, dating all the way back to 2012 and 2013. Two judges, including this honorable judge, have presided over the case and issued orders disposing of Apple's motions.

Additionally, the parties in *Pepper* have taken appeals to the Ninth Circuit and the Supreme Court of the United States. Both of these appeals have resulted in published opinions.

Now, three-quarters of a decade after the consumer plaintiffs filed it, *Pepper* is again before this Court, evidently on thoroughly settled pleadings. While the *Cameron* developer case is in its infancy, the *Pepper* consumer case is well-advanced in age and proceedings. These cases are not related; no benefits would arise from assigning *Cameron* to this Court's docket; and these very differently pled and postured matters should be allowed to proceed toward their separate resolutions—all as contemplated by the Supreme Court in last month's *Pepper* decision.

## II.   ARGUMENT

Civil L.R. 3-12(a) states that "[a]n action is related to another when:

> (1) The actions concern substantially the same parties, property, transaction or event; and
>
> (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."

Close examination of the facts and circumstances at hand indicate that these criteria are not fulfilled with respect to *Cameron* and *Pepper*.

As for Civil L.R. 3-12(a)(1), the "parties" are not "substantially the same." While Apple is the defendant in both matters, the *Cameron* plaintiffs are developers who distribute their products via the retail App Store, and the *Pepper* plaintiffs are consumers who purchase from it. Apple fought all the way to the Supreme Court to make the point that these are fundamentally different parties vis-a-vis the App Store. (*See* Declaration of Daniel G. Swanson in Support of Administrative Motion To Consider Whether Cases Should Be Related Pursuant to Civil L.R. 3-12 (ECF No. 150-1) Ex. A (*Cameron* Compl.) at, *e.g.*, ¶ 37 (reproducing chart Apple presented to the Court showing transactions with developers and consumers flowing in opposite directions, with Apple "as a principal, sell[ing] its own distribution services" to developers, and Apple, "as an agent, sell[ing] apps at developer-set prices" to consumers).)

Also, the property at issue is not substantially the same. As the Supreme Court wrote only last month: "Apple claims that allowing consumers to sue will result in 'conflicting claims to a common fund—the amount of the alleged overcharge.'" *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1524 (2019) (citation omitted). But, according to the court, "Apple is incorrect." *Id*.

Nor are the transactions or events substantially the same. In Apple's own view, there is a fundamental cleavage between its transactions with developers and its transactions with consumers. (*E.g.*, *Cameron* Compl., ¶ 37.)

Indeed, the differences in "property, transactions, or events" are underscored in the Supreme Court's *Pepper* decision, as Apple well knows. That decision specifically contemplates separate suits by developers and consumers. *E.g.*, 139 S. Ct. at 1525 ("Multiple suits are not atypical when the intermediary in a distribution chain is a bottleneck monopolist or monopsonist (or both) between the manufacturer on the one end and the consumer on the other end. A retailer who is both a

CAMERON PLAINTIFFS' OPP. TO APPLE'S MOTION TO RELATE CASES - 3
Case No.: 4:11-cv-06714-YGR
010818-11/1146351 V1

monopolist and a monopsonist may be liable to different classes of plaintiffs—both to downstream consumers and to upstream suppliers—when the retailer's unlawful conduct affects both the downstream and upstream markets.").

And as that court further indicated:

> [I]t could be that some upstream app developers will also sue Apple on a monopsony theory. In this instance, the two suits would rely on fundamentally different theories of harm and would not assert dueling claims to a "common fund," as that term was used in *Illinois Brick*. The consumers seek damages based on the difference between the price they paid and the competitive price. The app developers would seek lost profits that they could have earned in a competitive retail market.

*Id*. Again, the *Cameron* plaintiffs have pled monopsony in the alternative, *e.g.*, *Cameron* Compl. ¶ 6, and pled alternatively that Apple has underpaid them for their digital products, *see id*.

In other words, the suits are *different* and not related merely by way of the presence of Apple as a defendant and allegations as to apps in each. Contrary to Apple's assertions, no judicial economy will realized by relating these matters. The *Pepper* consumer plaintiffs will proceed along the path allowed by the Supreme Court's decision, while the *Cameron* developer plaintiffs will proceed along the path(s) they have pled.

Nor does Local Rule 3-12(a)(2) justify Apple's motion. There will be no "unduly burdensome duplication of labor and expense" because Apple must defend two cases due to its alleged behavior, against different proposed classes with different complaints, just as the Supreme Court recently contemplated. *See* 139 S. Ct. at 1525. As for discovery, assuming the *Pepper* plaintiffs proceed first, any requests by the *Cameron* plaintiffs for material produced there will cause no "unduly burdensome duplication" of effort or expense. Whatever is discoverable in each matter will remain so regardless of whether there are separate judges presiding.

As for the possibility of conflicting results, again, these are actions brought by developers on the one hand and consumers on the other. They are different suits involving different claims, including claims and requests exclusive to *Cameron*. To reiterate, in the Supreme Court's view, "Apple is incorrect" to assert that developer and consumer suits are all about "conflicting claims to a common fund." *See id*. at 1524. And to the extent the *Cameron* plaintiffs' claims are based on Apple's allegedly supra-competitive 30% commission, Apple itself has repeatedly taken the position

CAMERON PLAINTIFFS' OPP. TO APPLE'S MOTION TO RELATE CASES - 4
Case No.: 4:11-cv-06714-YGR
010818-11/1146351 V1

1  that developers *exclusively* have claims based on it. (*See Cameron* Compl. at, *e.g.*, ¶ 96.) *Ergo*,
2  there is no conflict, Apple's citation to Justice Gorsuch's dissenting opinion in *Pepper*
3  notwithstanding. (*See* Mot. at 4 (citing the dissent's comment that developers "would necessarily be
4  seeking 'a piece of the same 30% pie'").)

5  Furthermore, Apple's citations are inapposite. In *Our Children's Earth Foundation v.
6  National Marine Fisheries Service*, No. 14-cv-1130, 2015 WL 4452136, at *12 (N.D. Cal. July 20,
7  2015), the court in granting the motion to relate noted the presence of "*slightly* different parties,"
8  unlike wholly different plaintiffs here, while also opining that a case presenting "another potential
9  violation" should be "evaluated in the same light as other cases involving substantially the same
10 agency responding to the same FOIA requestor seeking information about substantially the same
11 matter"—a far cry from the differences in the developer and consumer cases at bar. *See id.*
12 (emphasis added). As for *In re Leapfrog Enterprises, Inc. Securities Litigation*, No. 03-cv-5421,
13 2005 WL 5327775, at *1 (N.D. Cal. July 5, 2005), the court deemed particular cases related because
14 an amended complaint in one investor case "*completely overlap[ped]*" with the investor complaint in
15 the other—unlike the complaints here. Finally, *Ward v. Apple* was related to the above-captioned
16 case, Mot. at 3, because the "exact same [antitrust] claim" was pled there. (ECF No. 87 at 1.)

17 Far more apposite is this Court's recent decision in *Tecson v. Lyft, Inc.*, No. 18-cv-06792-
18 YGR, 2019 WL 1903263, *1-4 (N.D. Cal. Apr. 29, 2019). There, the Court denied a motion to relate
19 though there were Lyft-text-message recipients as plaintiffs in *both* cases and the same defendant in
20 both as well. In *Tecson*, the Court observed that "the putative classes in each case would likely be
21 significantly different, if not wholly separate from each other." *See id.* at *3. Also, as the Court
22 observed there, "[t]he instant action and the [purportedly related action] involve different facts and
23 claims so the judge in each case would be focused on resolving separate issues of law and fact for
24 different parties. *Id.* For that reason—as here—"[t]he rulings in each case would not interfere with
25 one another." *See id.* at *4.

26 ### III.   CONCLUSION

27 For these reasons, the *Cameron* plaintiffs ask that the Court deny Apple's motion.
28

CAMERON PLAINTIFFS' OPP. TO APPLE'S MOTION TO RELATE CASES  - 5
Case No.: 4:11-cv-06714-YGR
010818-11/1146351 V1

| | | |
|---|---|---|
| 1 | DATED: June 25, 2019 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | |
| 4 | | By   */s/ Steve W. Berman*<br>        Steve W. Berman |
| 5 | | Steve W. Berman (*pro hac vice*)<br>Robert F. Lopez (*pro hac vice*) |
| 6 | | HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 Second Avenue, Suite 2000 |
| 7 | | Seattle, WA 98101<br>Telephone: (206) 623-7292 |
| 8 | | Facsimile:  (206) 623-0594<br>steve@hbsslaw.com |
| 9 | | robl@hbsslaw.com |
| 10 | | |
| 11 | | HAGENS BERMAN SOBOL SHAPIRO LLP<br>715 Hearst Avenue, Suite 202 |
| 12 | | Berkeley, CA 94710<br>Telephone: (510) 725-3000 |
| 13 | | Facsimile:  (510) 725-3001<br>shanas@hbsslaw.com |
| 14 | | |
| 15 | | *Attorneys for Plaintiffs and the Proposed Classes* |

CAMERON PLAINTIFFS' OPP. TO APPLE'S MOTION TO RELATE CASES  - 6
Case No.: 4:11-cv-06714-YGR
010818-11/1146351 V1