THEODORE J. BOUTROUS, JR. (SBN 132099)
tboutrous@gibsondunn.com
RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; appearance *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | CASE NO. 4:11-cv-06714-YGR<br>RELATED CASE NOS. 3:19-cv-02852-YGR (*Lawrence v. Apple*) and 4:12-cv-05404-YGR (*Ward v. Apple*)<br><br>**DEFENDANT APPLE INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>The Honorable Yvonne Gonzalez Rogers |
| ROBERT PEPPER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v. | CASE NO. 4:11-cv-06714-YGR |

|   |   |
|---|---|
| 1 | |
| 2 | APPLE INC., |
| 3 | Defendant. |

## ANSWER TO PLAINTIFFS' COMPLAINT

Pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, Defendant Apple Inc. ("Apple"), by and through its undersigned counsel, hereby answers and asserts defenses to the claims and allegations made by plaintiffs Stephen H. Schwartz, Edward W. Hayter, Eric Terrell and Robert Pepper ("Plaintiffs") in the Second Amended Consolidated Class Action Complaint ("Complaint").

The App Store revolutionized the way consumers, like Plaintiffs, find, purchase and install software applications that enhance the functionality of the groundbreaking mobile computing devices they hold in their hands—iPhones.  Prior to Apple's introduction of the App Store, consumers bought applications from software retailers such as Best Buy and were limited to the relatively small number of choices that the retailer had in stock.  It is because of the App Store that anyone with a great idea can invent a new app and distribute it worldwide from home.  The App Store has exponentially expanded consumer choice, putting access to well over a million applications and services at consumers' fingertips.  Consumers have also benefited from Apple's strict rules on user privacy, as well as the unprecedented quality and security of apps available on the App Store.  At the same time, the App Store model has put more money in the pocket of app developers who now claim 70% of revenues associated with sales on the App Store, as opposed to the 30% associated with the traditional retail model.  The App Store has created whole new industries by connecting developers and consumers of unique products.

Nonetheless, Plaintiffs claim that Apple's conduct has "reduced output and competition" in the "iPhone applications aftermarket" and increased app prices to "supracompetitive levels." But these assertions cannot be squared with market realities and, in any event, do not describe any valid theory of actual or attempted monopolization.  Apple's App Store—seamlessly integrated

into its cutting-edge devices—has transformed the experience of buying and selling apps for consumers and developers alike. The App Store gives customers a safe and trusted place to purchase apps—providing world-class security and privacy to iPhone users as a result of Apple's app-review process. Apple strictly prohibits any app that features pornographic material, discriminatory references, torture and abuse, or anything else in exceptionally poor taste. Additionally, Apple carefully reviews each app to ensure that each and every app works as promised. For a minimal fee, software developers obtain instant access to approximately one billion App Store customers around the globe and innumerable tools to assist them in developing apps. Apple has created programs that help not only current developers, but anyone who wants to learn to code and ultimately become a developer.

Competition, both inside and outside the App Store, is fierce and Plaintiffs do not even attempt to allege any actual foreclosure. Nor could they. Apple competes against some of the largest companies in the world. Consumers enjoy choices and competition at every level: for devices, platforms and individual apps. There are well over a million apps available through the App Store—and, notwithstanding Plaintiffs' counterfactual claim that Apple has "caused a reduction in the output and supply of iPhone apps" (Compl. ¶ 45)—that number has increased dramatically from half a million in 2011, the year the initial complaint in this action was filed, to one million apps in 2013, the year Plaintiffs' operative Complaint was filed, to today. Only a very small number of those apps are made by Apple, and Apple invites competition into its own App Store for every single app it creates. Apple is proud to host competing apps and services on its store. Apple's objective, in this regard and others, is to provide its customers (i.e., the putative class) with the best products and ecosystem in the world.

But in any event, no consumer is beholden to Apple. The vast majority of the apps available through the App Store can be found on competing platforms, including other app stores, gaming systems, and desktop computers. In addition, the App Store is a mere alternative to web applications, which iPhone consumers can readily access on their iPhone through their web browser.

Plaintiffs' claim that Apple's conduct has increased app prices to supracompetitive levels will not survive scrutiny. As a preliminary matter, Apple does not set the price (if any) for individual apps—developers do. Additionally, the commission Apple charges for paid apps supports its distribution costs not only for paid apps, but also for free apps (including ad-supported apps)—which constitute 84% of apps available on the App Store and from which Apple receives no compensation whatsoever.

Apple continually invests enormous resources in maintaining and improving the platform that makes all developers' apps available to consumers. Apple provides the platform by which users download and update their apps and maintains a secure payment system that allows users to have faith in in-app transactions. Apple also shares numerous innovative and invaluable development tools to assist in app development, without regard to whether developers pay a commission to Apple. For example, Apple has developed a powerful and intuitive programming language for iOS called Swift—and provides a free app called Swift Playgrounds, which serves as an educational tool in Swift for prospective developers. After Apple acquired Burstly in February 2014, it made Test Flight—a platform that makes beta testing apps simple—available to app developers at no cost. Meanwhile, Apple's innovations in its iOS operating system continue to open up new avenues for app development. For instance, Apple provides developers with ARKit—a tool that allows developers to harness the augmented reality capabilities Apple has built into iOS in order to integrate human movement into their apps. Again, this is offered for no additional cost. Notwithstanding the incredible success of the App Store over the past decade and the enormous investment Apple has made to ensure that success, Apple has never increased its commission. In fact, it reduced its commission for subscriptions to 15% after one year.

Plaintiffs' Complaint is flawed both as a matter of fact and law. Apple is not a monopolist of any properly defined antitrust market, much less Plaintiffs' contrived market for "iPhone applications." The Supreme Court's decision is not an endorsement of Plaintiffs' novel application of the antitrust laws. *See Pepper v. Apple*, 139 S. Ct. 1514, 1519 (2019) ("At this early pleadings stage of the litigation, we do not assess the merits of the plaintiffs' antitrust claims against Apple,

nor do we consider any other defenses Apple might have. We merely hold that the *Illinois Brick* direct-purchaser rule does not bar these plaintiffs from suing Apple under the antitrust laws."). To the contrary, on the merits, Plaintiffs' Complaint defies the Supreme Court's repeated admonition that the federal antitrust laws cannot be wielded to chill innovation and procompetitive conduct, such as Apple's. Apple has worked tirelessly to create cutting-edge products that empower individuals to change the world and to build services that enhance their lives. It is only by twisting the tenets of antitrust beyond recognition that Plaintiffs can purport to represent the interests of millions of consumers who have unequivocally benefited from Apple's technology and innovation.

## RESPONSE TO INDIVIDUAL PARAGRAPHS

Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint. Except as specifically admitted, Apple denies the allegations in the Complaint.

## NATURE OF ACTION

1.  Apple admits that Plaintiffs purport to bring claims pursuant to Section 2 of the Sherman Act (15 U.S.C. § 2) on their own behalf and on behalf of the purported class of persons alleged to be similarly situated but vigorously denies that there is any merit to Plaintiffs' claims. Apple admits that it owns and operates the App Store, a safe and secure platform that has revolutionized the business of developing, marketing, shopping for and acquiring software applications. Apple further admits that Plaintiffs purport to be licensees of iOS software applications. Apple denies the remaining allegations in Paragraph 1, including that Plaintiffs represent a putative "class of persons similarly situated" and that any alleged class may be properly certified.

2.  Apple admits that it began selling the iPhone on or about June 29, 2007, to consumers in the United States. Apple further admits that the iPhone is a revolutionary, "breakthrough" "smartphone" with, among countless other capabilities, email and other Internet communications functionality. Apple admits that it "built" the iPhone operating system now called iOS and that, again, among many other things, iOS currently enables iPhone users to download and run certain apps securely. Apple admits that iOS applications can be used by consumers to

"browse the Internet, transform music into cell phone ringtones, take photos, play games and engage in other functions." Except to the extent expressly admitted, Apple denies the allegations in Paragraph 2.

3. To the extent that the allegations in Paragraph 3 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 3.

4. To the extent that the allegations in Paragraph 4 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 4.

5. Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 regarding "traditional desktop or laptop computer manufacturers," and, on that basis, denies them. Apple denies the remaining allegations in Paragraph 5. iPhone consumers have an unfettered ability to purchase and utilize software applications through the iPhone's web browser.

6. To the extent that the allegations in Paragraph 6 are legal conclusions and characterizations, no responsive pleading is required. Apple denies that iOS is the same as or similar to any other operating system and denies that there is "no legitimate basis" for Apple to "treat its iPhone customers any differently than it treats its iMac or MacBook customers." Apple further denies that it charges a "mark-up" or that there is no legitimate basis for charging a 30% commission on paid applications licensed through the App Store. Apple pioneered the iPhone and iOS, invented the App Store and developed a seamless, safe, and reliable experience for consumers and developers alike. Apple provides an enormous service to developers who can obtain instant access to an array of tools and hundreds of millions of customers through the App Store platform. And Apple has made substantial investments in the App Store to ensure unparalleled reliability, world-class security, and privacy for all consumers. Except to the extent expressly admitted, Apple denies any remaining allegations in Paragraph 6.

7. Apple admits that there has been "heavy demand" for the iPhone and that it is a

1  "novel product." To the extent that the allegations in Paragraph 7 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, except to the extent expressly admitted, Apple denies the allegations in Paragraph 7.

8. Apple denies the allegations in Paragraph 8.

9. To the extent that the allegations in Paragraph 9 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that Apple's App Store now offers a multiple of the 850,000 apps reported in Plaintiffs' Complaint. Apple further admits that "iPhone consumers" worldwide have "downloaded apps more than 50 billion times since July 2008," and that the vast majority of iPhone apps are free to download. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 9.

10. To the extent that the allegations in Paragraph 10 are legal conclusions and characterizations, no responsive pleading is required. Apple avers that it takes antitrust compliance very seriously and always has. Apple admits that the quotes in Paragraph 10 are selectively excerpted from the cited hearing transcript, which speaks for itself. The transcript is from a different lawsuit, *United States v. Apple Inc.*, that is wholly unrelated and irrelevant to the legal and factual questions presented in this case. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 10.

11. To the extent that the allegations in Paragraph 11 are legal conclusions and characterizations, no responsive pleading is required. Apple avers that it takes antitrust compliance very seriously and always has. Apple admits that the quotes in Paragraph 11 are selectively excerpted from the cited hearing transcript, which speaks for itself. The transcript is from a different lawsuit, *United States v. Apple Inc.*, that is wholly unrelated and irrelevant to the legal and factual questions presented in this case. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 11.

12. To the extent that the allegations in Paragraph 12 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in this paragraph. Apple has not "unlawfully stifled competition." As

described, its App Store invention and innovations created and expanded competition at every level of the consumer experience.

13. To the extent that the allegations in Paragraph 13 are legal conclusions and characterizations or set out the relief Plaintiffs seek, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 13.

14. To the extent that the allegations in Paragraph 14 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 14.

15. To the extent that the allegations in Paragraph 15 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 15.

16. Apple admits that Paragraph 16 sets forth the relief that Plaintiffs purport to seek. To the extent a response is required, Apple denies that Plaintiffs are entitled to any such relief and denies any remaining allegations in Paragraph 16. Instead of providing any benefit to consumers, the relief sought in Plaintiffs' Complaint would be at odds with the purposes of the Sherman Act and with Apple's intellectual property rights and would degrade product quality and the user experience, by compromising the security and reliability of Apple devices and software.

**THE PARTIES**

17. Apple admits that Plaintiff Schwartz previously used an address in Ardsley, New York, purchased an iPhone 4 on October 8, 2010, and made a first paid app transaction in 2008. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 17 and, on that basis, denies the same.

18. Apple admits that Plaintiff Hayter uses an address in Brooklyn, New York, purchased an iPhone on March 23, 2008, and made a first paid app transaction in 2014. Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and, on that basis, denies the same.

19. Apple lacks knowledge or information sufficient to form a belief as to the truth of

7

the allegations in Paragraph 19 and, on that basis, denies the same.

20. Apple admits that Plaintiff Pepper uses an address in Chicago, Illinois and made a first paid app transaction in 2008. Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, on that basis, denies the same.

21. Apple admits that it is a California corporation with its executive offices in Cupertino, California at 1 Apple Park Way. Apple admits the allegations in the second and third sentences of Paragraph 21.

## JURISDICTION AND VENUE

22. To the extent that the allegations in Paragraph 22 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that Plaintiffs purport to plead federal question jurisdiction. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 22.

23. To the extent that the allegations in Paragraph 23 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that Plaintiffs purport to plead jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Except to the extent expressly admitted, Apple denies the allegations in Paragraph 23.

24. Apple admits that, taking Plaintiffs' venue-related allegations to be true, venue in this District is proper pursuant to 28 U.S.C. § 1391. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 24.

25. To the extent that the allegations in Paragraph 25 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple admits that the use of Apple software or hardware products is based on the applicable software license and other terms and conditions. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 25.

## FACTUAL ALLEGATIONS

26. Apple admits the allegations in Paragraph 26.

27. Apple admits that the iPhone is a highly advanced and desirable product. Apple

further admits that the iPhone was made available for retail purchase in the United States on June 29, 2007, at prices of $499 for the 8GB model and $599 for the 16GB model, and that many consumers waited in line to purchase an iPhone. Apple admits that it has released multiple iPhone models since that time. Apple further admits that it has "rightfully earned billions of dollars in revenue from selling its iPhones." Except to the extent expressly admitted, Apple denies the allegations in Paragraph 27 and footnote 3.

28.    Apple denies the allegations in Paragraph 28.

29.    To the extent that the allegations in Paragraph 29 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 29.

30.    Apple admits that it controls the design, features, and operating software for its products, including the iPhone, and that iOS refers generally to the operating software for the iPhone. Apple further admits that iOS versions implement certain technological measures within the meaning of 17 U.S.C. § 1201 (hereinafter "technological measures"). Except to the extent expressly admitted, Apple denies the allegations in this paragraph.

31.    Apple denies the allegations in Paragraph 31.

32.    Apple admits that it has developed a number of apps for use on its mobile devices and that eligible developers who choose to enter into a license agreement with Apple are able to develop iOS apps. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 32.

33.    To the extent this paragraph alleges that "third party programmers quickly circumvented Apple's security measures and made non-Apple approved iPhone apps available for sale on the Internet," Apple is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis denies them. Apple admits that the circumvention of technological measures has occurred and that non-Apple approved iOS apps are available to consumers. Apple denies the remaining allegations in Paragraph 33 and specifically denies that Apple sought to eliminate third party apps from its platform, as is obvious from the well over a

million apps available on the App Store and customers' unfettered ability to utilize web applications through the iPhone's web browser.

34. Apple denies the allegations in Paragraph 34.

35. Apple admits that it previously charged a fee to allow consumers the ability to convert a portion of a song purchased on iTunes into a ringtone. Apple is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 35 and on that basis denies them. Except to the extent expressly admitted, Apple denies the remaining allegations in this paragraph.

36. Apple denies the allegations in Paragraph 36.

37. Apple denies the allegations in Paragraph 37.

38. Apple admits that in March 2008 it released a software development kit to enable independent software developers to design applications for use on the iPhone. Apple further admits that it offers eligible developers the opportunity to enroll in the Apple Developer Program at a small cost of $99 per membership year. Membership provides advanced capabilities and offers instant access to hundreds of millions of consumers around the world. The Apple Developer Program provides developers with beta software, advanced app capabilities, extensive beta testing tools, and app analytics. These tools allow app developers to take advantage of the latest innovative Apple technologies so their apps will seamlessly integrate with the latest advances in iOS and the latest iPhones. Except to the extent expressly admitted, Apple denies the allegations in Paragraph 38.

39. Apple admits the allegations in Paragraph 39 except denies, on the basis of vagueness, that it "controls all of the App Store sales" or "revenue."

40. Apple denies the allegations in Paragraph 40.

41. Apple admits that iPhone customers who license apps through Apple's App Store pay the price (if any) set by the developer for the app to Apple directly, and Apple remits the balance to the app developer minus a reasonable commission as compensation to Apple for the platform services Apple provides. Except to the extent expressly admitted, Apple denies the

allegations in Paragraph 41.

42. Apple denies the allegations in Paragraph 42.

43. To the extent that the allegations in Paragraph 43 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 43.

44. To the extent that the allegations in Paragraph 44 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 44.

45. To the extent that the allegations in Paragraph 45 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 45.

46. Apple denies the allegations in Paragraph 46.

47. Apple denies the allegations in Paragraph 47.

48. Apple denies the allegations in Paragraph 48.

49. Apple denies the allegations in Paragraph 49.

50. Apple denies the allegations in Paragraph 50.

51. Apple denies the allegations in Paragraph 51.

52. To the extent this paragraph makes allegations about unidentified "desktop and laptop computer software," Apple is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis denies them. Apple denies the remaining allegations in Paragraph 52.

53. Apple denies the allegations in Paragraph 53. Consumers have benefited, not harmed, by Apple's App Store.

**CLASS ALLEGATIONS**

54. Apple admits that Plaintiffs purport to bring this action as a putative class action on behalf of themselves and others alleged to be similarly situated, and that Plaintiffs propose to act as representatives of the purported class. Apple denies the remaining allegations in Paragraph 54, and denies the existence of an alleged class as described in this paragraph.

55. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 55.

56. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 56.

57. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 57.

58. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 58.

59. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 59.

60. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 60.

61. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 61.

62. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 62.

63. Apple denies the existence of the alleged class and thus denies the allegations in Paragraph 63.

64. To the extent that the allegations in Paragraph 64 are legal conclusions and characterizations, no responsive pleading is required. Insofar as any response is required, Apple denies the allegations in Paragraph 64.

**RELEVANT MARKET ALLEGATIONS**

65. Apple denies the allegations in Paragraph 65.
66. Apple denies the allegations in Paragraph 66.
67. Apple denies the allegations in Paragraph 67.
68. Apple denies the allegations in Paragraph 68.
69. Apple denies the allegations in Paragraph 69.

# COUNT I
## Unlawful Monopolization Of The Applications Aftermarket In Violation Of Section 2 Of The Sherman Act
### (Seeking Damages And Equitable Relief)

70.  Apple reasserts and hereby incorporates by reference its responses to Paragraphs 1 through 69, as though fully set forth herein.

71.  To the extent that the allegations in Paragraph 71 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 71.

72.  To the extent that the allegations in Paragraph 72 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 72.

73.  To the extent that the allegations in Paragraph 73 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 73.

74.  To the extent that the allegations in Paragraph 74 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 74.

# COUNT II
## Attempted Monopolization Of The Applications Aftermarket In Violation Of Section 2 Of The Sherman Act
### (Seeking Damages And Equitable Relief)

75.  Apple reasserts and hereby incorporates by reference its responses to Paragraphs 1 through 74, as though fully set forth herein.

76.  To the extent that the allegations in Paragraph 76 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 76.

77.  To the extent that the allegations in Paragraph 77 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 77.

78.  To the extent that the allegations in Paragraph 78 are legal conclusions and

characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 78.

79. To the extent that the allegations in Paragraph 79 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 79.

80. To the extent that the allegations in Paragraph 80 are legal conclusions and characterizations, no responsive pleading is required.  Insofar as any response is required, Apple denies the allegations in Paragraph 80.

The remainder of the Complaint consists of Plaintiffs' prayer for relief to which no response is required.  To the extent a response is required, Apple denies that Plaintiffs are entitled to the relief sought in the Complaint or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Apple, without waiver, limitation, or prejudice, hereby asserts the following affirmative defenses:

### First Affirmative Defense

### (Failure to State a Cause of Action)

The Complaint and the purported causes of action contained therein fail, in whole or in part, to state a claim for which relief can be granted.

### Second Affirmative Defense

### (Legitimate Business Justifications)

Apple alleges that, without admitting any liability whatsoever, at all times its conduct was reasonable and that its actions were undertaken in good faith to advance legitimate business interests and had the effect of promoting, encouraging, and increasing competition.

### Third Affirmative Defense

### (No Injury or Damages)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have sustained no injury in fact or antitrust injury or damages proximately caused by an act or omission by Apple.

**Fourth Affirmative Defense**

**(No Entitlement to Injunctive Relief)**

Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not immediate or irreparable and Plaintiffs have an adequate remedy at law.

**Fifth Affirmative Defense**

**(Causation)**

Plaintiffs' claims are barred, in whole or in part, because of a lack of causation, including without limitation because any injuries or damages that may have been suffered were caused solely or proximately by the intervening and superseding acts and omissions of others over whom Apple has no power, authority, or control.

**Sixth Affirmative Defense**

**(Ratification/Agreement/Acquiescence/Consent)**

Plaintiffs' claims are barred, in whole or in part, because of ratification, agreement, acquiescence, authorization or consent to Apple's alleged conduct.

**Seventh Affirmative Defense**

**(Statute of Limitations)**

Plaintiffs' claims are barred in whole or in part by the statute of limitations applicable to their respective claims.

**Eighth Affirmative Defense**

**(Lack of Standing)**

Plaintiffs' claims are barred, in whole or in part, insofar as Plaintiffs lack standing to assert any or all of the claims alleged in the Complaint individually, in a representative capacity, or on behalf of the general public.

**Ninth Affirmative Defense**

**(Failure to Join an Indispensable Party)**

Plaintiffs have failed to join all parties necessary for a just adjudication of its purported claims.

**Tenth Affirmative Defense**

**(Duplicative Recovery/Unjust Enrichment)**

The claims of the Plaintiffs and the alleged class are barred in whole or in part to the extent that they seek or would recover damages or other relief that would duplicate in whole or part damages or relief sought or awarded in this action or in any other action consolidated therewith or related thereto, or would result in unjust enrichment to Plaintiffs.

**Eleventh Affirmative Defense**

**(Improper Class Action)**

Plaintiffs' claims, and those of the purported class, are barred in whole or in part, because the action is not properly maintainable as a class action as alleged by Plaintiffs.

**Twelfth Affirmative Defense**

**(Undamaged Class Members)**

To the extent Plaintiffs and the alleged class seek relief on behalf of purported class members who have not suffered any damages, the Complaint and each of its claims for relief therein violate Defendant's rights to due process under the United States Constitution.

**Thirteenth Affirmative Defense**

**(Limitation of Liability)**

Plaintiffs are parties to one or more software license agreements with Apple that bar their claims, in whole or in part, because of applicable limitation of liability provisions contained therein.

**Fourteenth Affirmative Defense**

**(Mitigation of Damages)**

Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate damages, if any.

**Fifteenth Affirmative Defense**

**(Protected Rights)**

The claims of the Plaintiffs are barred, in whole or in part, insofar as they challenge the

16

APPLE INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 4:11-CV-06714-YGR

exercise of rights protected by the First Amendment of the United States Constitution and by the *Noerr-Pennington* doctrine.

### Sixteenth Affirmative Defense

**(Right To Jury Trial)**

As a matter of constitutional right and substantive due process, Defendant would be entitled to contest by jury trial its liability for damages to any particular individual plaintiffs, even if the representative(s) of the putative class prevail on their claims.

### Seventeenth Affirmative Defense

**(Laches/Waiver/Estoppel)**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel.

### Eighteenth Affirmative Defense

**(Unenforceability/Illegality)**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unenforceability and/or illegality, including without limitation unenforceability as against public policy.

### Nineteenth Affirmative Defense

**(No Entitlement to Interest, Attorney's Fees or Costs)**

Plaintiffs are not entitled to interest, attorney's fees, or costs in connection with this action.

### Additional Affirmative Defenses

Apple presently has insufficient knowledge or information to determine whether it may have additional, as yet unstated, affirmative defenses. Apple has not knowingly and intentionally waived any applicable affirmative defenses and reserves the right to assert additional affirmative defenses as they become known to it through discovery in this matter. Apple reserves the right to amend this Answer to add, delete, or modify defenses based upon legal theories that may be or will be divulged through clarification of Plaintiffs' Complaint, through discovery, or through further legal analysis of Plaintiffs' position in this litigation.

| | | |
|---|---|---|
| 1 | Dated: July 30, 2019 | Respectfully submitted, |
| 2 | | GIBSON, DUNN & CRUTCHER LLP |

By     /s/ Cynthia E. Richman
       Theodore J. Boutrous, Jr.
       Richard J. Doren
       Daniel G. Swanson
       Cynthia E. Richman
       Melissa Phan

Attorneys for Defendant APPLE INC.