RACHELE R. BYRD (190634)
byrd@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
MATTHEW M. GUINEY (*pro hac vice*)
guiney@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile:  212/545-4677

*Plaintiffs' Interim Class Counsel*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Apple iPhone Antitrust Litigation | Case No. 4:11-cv-06714-YGR |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| | DATE:       October 7, 2019 |
| | TIME:       2:00 p.m. |
| | JUDGE:    Hon. Yvonne Gonzalez Rogers |
| | CTRM:     1 – 4th Floor |
| [Caption continues on next page] | |

1

2

CASE NO. 4:19-cv-02852-YGR

EDWARD LAWRENCE,

3

Plaintiff,

4

5

vs.

6

APPLE INC.

7

Defendant.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        Pursuant to the Standing Order for All Judges of the Northern District of California dated

2    November 1, 2018, Civil Local Rule 16-9, and this Court's Order Granting Administrative

3    Motions to Relate Cases (ECF No. 168), Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward

4    W. Hayter, Eric Terrell and Edward Lawrence (collectively, "Consumer Plaintiffs") and Apple

5    Inc. ("Apple") (collectively, the "Parties") submit this Joint Case Management Statement.

6        **Apple states as follows:**   Plaintiffs insist that the Parties submit two joint Case

7    Management Statements—one between Apple and Consumer Plaintiffs, and one between Apple

8    and Developer Plaintiffs[1]—even though the subject matter (and Apple's positions) are almost

9    identical.   This seems like precisely the sort of duplication of effort that this Court sought to

10    prevent when it ordered relation and set a single Case Management Conference for all of the

11    Related App Store Actions.   Apple believes a single Case Management Statement should be

12    jointly submitted by the Parties to all of the related lawsuits brought by Plaintiffs based on

13    Apple's App Store business model.[2]

14        **Consumer Plaintiffs state as follows:**  The Consumer Plaintiffs' position that the Parties

15    submit two Case Management Statements is based a plain reading of this Court's Order Granting

16    Administrative Motions to Relate Cases.  ECF No. 168.  According to this order, "parties in *each*

17    action shall file an initial case management statement in compliance with Civil Local Rule 16-9."

18    *Id*. at 5 (emphasis added).

19    **1.      JURISDICTION AND SERVICE**

20        This Court has federal question jurisdiction pursuant to the Sherman Antitrust Act, 15

21    U.S.C. § 2, the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.  There

22    are no disputes regarding personal jurisdiction or venue.  Apple has been served with the

---

[1]  This Court related two lawsuits filed by app developers, *Cameron v. Apple Inc.*, Case No. 19-cv-03074-WHA ("*Cameron*") and *Sermons v. Apple Inc.*, Case No. 19-cv-03796-WHA ("*Sermons*") (collectively, "Developer Plaintiffs"), to this action.  ECF No. 168.

[2]  On November 15, 2012, the Court also related *Ward v. Apple Inc*., 4:12-cv-05404-YGR ("*Ward*") to this action.  ECF No. 92.  However, *Ward* plaintiffs' claims relate to Apple's decision to initially offer the iPhone in the United States exclusively to AT&T Mobility voice and data services.

complaint in each of the cases filed by Consumer Plaintiffs and Developer Plaintiffs.

## 2.    FACTS

**Consumer Plaintiffs state as follows:**   Defendant Apple launched the iPhone on or about June 29, 2007.  ¶¶ 2, 27.[3]  Apple built the iPhone's operating system, known as "iOS," to enable iPhone users to download and run computer-like software programs (called "applications" or "apps") to browse the Internet, transform music into cell phone ringtones, take photos, play games, and engage in other functions typically performed on desktop or laptop computers.  ¶ 2.  Unbeknownst to iPhone consumers, however, ever since it launched the iPhone, Apple has engaged in an anticompetitive scheme to monopolize the aftermarket for iPhone applications in order to control and derive supracompetitive profits from the sale of iPhone apps worldwide.   ¶ 3.

Apple designed the iOS for the iPhone to be a "closed" system by installing "security measures" or "program locks" designed to prevent iPhone consumers from installing and running apps that were not sold or approved by Apple.  ¶ 30.  In July 2008, Apple opened its App Store. Apple owns 100% of the App Store, staffs the App Store with Apple employees or agents, and controls all of the App Store sales, revenue collections and other business operations.  ¶ 39. Apple informs its prospective apps developers (though not its iPhone consumers) that the developers' apps cannot be sold anywhere except in the App Store. Apple also informs its developers (but not its iPhone customers) that Apple will charge iPhone consumers a 30% commission for any non-free app sold in the App Store.  ¶ 40. Consequently, the prices for apps available in Apple's App Store include the developers' price plus Apple's 30% mark-up. When an iPhone customer buys an app from Apple, it pays the full purchase price, including Apple's 30% commission, directly to Apple. Apple takes its 30% commission off the top and then remits the balance, or 70% of the purchase price, to the developer.  ¶ 41.  As a result of its scheme, Apple has, from introduction of the iPhone 2G in 2007 through the present, cornered 100% of the worldwide iPhone applications aftermarket.  ¶ 3.

---

[3]  All paragraph references ("¶"), unless otherwise indicated, refer to the Second Amended Consolidated Class Action Complaint (the "Complaint") filed on September 5, 2013.

On information and belief, throughout the Class Period, Apple threatened to terminate any developer that made its apps available on its own website or through a distributor other than Apple, and Apple continued to discourage iPhone customers from downloading Third Party Apps by telling customers that Apple would void and refuse to honor the iPhone warranty of any customer who downloaded a Third Party App.  ¶ 42.  By designing the iPhone iOS as a closed system, installing security measures and program locks to prevent Third Party App downloads, establishing the App Store as the exclusive worldwide distributor of iPhone apps, and enforcing the App Store's exclusive distributor status by terminating apps developers who sold apps in competition with Apple and voiding the warranties of iPhone consumers who bought competing apps, Apple has willfully acquired and maintained a monopoly in the iPhone apps aftermarket and has positioned itself as the one and only distributor of iPhone apps. Apple has no competition in the multi-billion dollar iPhone apps aftermarket, domestically or abroad, whatsoever.  ¶ 43.  Before Plaintiffs purchased their iPhones, Apple had not even disclosed – much less obtained – Plaintiffs' contractual consent to either (a) Apple's monopolization of and collection of monopoly profits from the iPhone applications aftermarket, or (b) having their iPhones locked to prohibit Plaintiffs from using any app that was not approved or sold by Apple. ¶ 44.

Apple's monopolization of the market for iPhone apps has both caused Plaintiffs to pay more for their apps than they would have paid in a competitive market and also stifled the development of apps and limited the choice of apps available to consumers.

**Apple states as follows:**  Apple launched the App Store in July 2008, alongside the iPhone 3G, about a year after it introduced the original iPhone.  The App Store revolutionized the way consumers find, purchase, and install software applications.  At the same time, Apple introduced a software development kit ("SDK") offering powerful tools to developers for the design of apps that were more functional, better looking, and more advanced than those available in any other app marketplace.  The App Store has exponentially expanded developer options and consumer choice while providing world-class security, strict user privacy, and unprecedented app quality, all seamlessly integrated into Apple's cutting-edge devices.

Consumer Plaintiffs nonetheless brought claims alleging that (1) Apple unlawfully maintained the App Store as the exclusive distribution ecosystem for iOS apps, and (2) charged a supracompetitive commission on each paid app sold.  Developer Plaintiffs brought lawsuits making similar allegations, albeit a decade later.

The allegations in Plaintiffs' complaints confirm that these lawsuits are misplaced: Apple is no monopolist, and its business model is demonstrably procompetitive.  The App Store is part of the iOS ecosystem, which was designed from the ground up for the use, development, sale, and distribution of apps.  It was the first platform of its kind, and Apple committed to making it a safe and trusted place for customers to discover and download apps, and a great business opportunity for all developers.  The App Store has exponentially expanded consumer choice, putting access to well over a million applications and services at consumers' fingertips.  Security and seamless performance are at the core of Apple's iOS ecosystem, and Apple holds iOS apps to a high standard for privacy and content.  Apple's App Store curation efforts— through which it reviews every app and every update—are a vital driver of the consumer appeal and business success of Apple mobile devices and iOS apps.  Apple devotes enormous effort to the review process, using a combination of automated resources and hundreds of human experts covering 81 languages across three time zones.  It reviews 100,000 apps a week, with a 40% initial rejection rate.  One of the top reasons for rejection is user privacy.

Under this model, app developers have gained instant access to hundreds of millions of consumers and receive 70% of revenues associated with sales on the App Store as opposed to the typical 30% in the traditional retail model.  Meanwhile, Apple continually invests enormous resources in maintaining and improving its devices, its software, and the App Store itself.  Apple's innovations in iOS, for example, open up new avenues for app development, such as augmented reality capabilities.  In short, Apple has created whole new industries by connecting developers and consumers of unique products.

Competition, both inside and outside the App Store, is fierce, and Plaintiffs do not even attempt to allege any anticompetitive foreclosure—nor could they.  Consumers enjoy choices and competition at every level: for devices, platforms, and individual apps.  And Apple competes

against some of the largest companies in the world.  It is common knowledge that the protection of consumer privacy is an essential part of the Apple brand and a major differentiator in the competition between operating systems and devices.  While the great majority of apps available through the App Store can be found on competing platforms—including app marketplaces owned and operated by other major technology companies—consumers can rest assured that the App Store is a trusted environment and iOS apps are safe.

3.     **LEGAL ISSUES**

       **Consumer Plaintiffs state as follows:**  It is Consumer Plaintiffs' position that the central legal issues in dispute are: (a) whether Apple has violated and continues to violate section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by unlawfully and willfully acquiring and/or maintaining monopoly power in the iPhone applications aftermarket; (b) whether Apple violated and continues to violate section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by engaging in exclusionary, predatory and anticompetitive conduct with a specific intent to monopolize the iPhone applications aftermarket; (c) whether Consumer Plaintiffs are entitled to an injunction permanently enjoining Apple from monopolizing the iPhone applications aftermarket without first obtaining iPhone consumers' contractual consent; and (d) whether Consumer Plaintiffs are entitled to treble damages caused by Apple's alleged unlawful conduct.

       **Apple states as follows:**  It is Apple's position that, in addition to those listed by Plaintiffs above, central legal issues in dispute include all elements of a claim under Sherman Act Section 2 and Clayton Act Sections 4 and 15, and may also include (but are not limited to) the following:  whether Plaintiffs have defined legally cognizable markets; whether Plaintiffs can prove a lack of legitimate business justification for Apple's conduct; whether Plaintiffs can prove that the alleged conduct has harmed competition; whether Plaintiffs suffered causal injury; whether Plaintiffs suffered antitrust injury and damages; whether any affirmative defense applies; and whether Plaintiffs can meet their burden of showing that class certification is appropriate under Fed. R. Civ. P. 23.

4.     **MOTIONS**

       There are no pending motions at this time.  On December 2, 2013, this Court granted

Apple's motion to dismiss plaintiffs' second amended consolidated complaint with prejudice. ECF No. 124.  Plaintiffs subsequently appealed the dismissal and the Ninth Circuit reversed. Apple appealed the Ninth Circuit's reversal and the U.S. Supreme Court affirmed the Ninth Circuit.  *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019).  This case has now been remanded back to this Court.

The Parties filed various administrative motions to consider whether *Lawrence v. Apple Inc.*, Case No. 19-cv-02852-YGR ("*Lawrence*"), *Cameron*, and *Sermons* were related to *Pepper*. ECF Nos. 143, 150, 163.  The Court issued orders finding that each of these cases is related to *Pepper*.  ECF Nos. 145, 168.

Consumer Plaintiffs anticipate filing a motion for class certification and a motion for summary judgment after a reasonable opportunity for discovery.  Apple anticipates filing a motion to dismiss the Developer Plaintiffs' Complaint and for summary judgment of the Consumer Plaintiffs' Complaint.  Apple reserves the right to bring any other future motions.

**5.    AMENDMENT OF PLEADINGS**

Consumer Plaintiffs do not anticipate amending the pleadings at this time.

**6.    EVIDENCE PRESERVATION**

The Parties have taken all necessary steps to preserve evidence relevant to the issues reasonably evident in this action.  The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  The Parties are also working on an ESI stipulation and agree that ESI should be a topic for continued discussion.

**7.    DISCLOSURES**

The Parties have agreed to exchange initial disclosures by October 14, 2019.

**8.    DISCOVERY**

No discovery has taken place in this action to date.  The Parties agree that discovery should begin immediately.  To avoid unduly burdensome duplication of effort, Apple and the

1    Consumer Plaintiffs intend to stipulate to requirements for coordination of discovery in the

2    Related App Store Actions as set forth in Exhibit A.

3         **Consumer Plaintiffs state as follows:**  Consumer Plaintiffs intend to seek discovery

4    from Apple regarding, among other things, the following topics: (a) the manufacturing,

5    advertising, marketing, and sale of the iPhone; (b) the development of the App Store and the

6    decision to impose and enforce a 30% commission on all apps sold through the App Store; (c)

7    revenues and profits generated from the App Store; and (d) the agreements entered into by and

8    between Apple and the app developers.  Consumer Plaintiffs reserve their right to seek discovery

9    of additional information as necessary.

10         **Apple states as follows:**  The Parties anticipate using a stipulated ESI protocol to govern

11    the collection and production of documents and data.  The Parties are conferring on the proper

12    scope of discovery and at this time do not seek to modify the limitations on discovery set forth in

13    the Federal Rules of Civil Procedure.

14    **9.    CLASS ACTIONS**

15         All attorneys of record have reviewed the Procedural Guidance for Class Action

16    Settlements.

17         **Consumer Plaintiffs state as follows:**  Plaintiffs bring this action on behalf of "[a]ll

18    persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the

19    Court and its employees, who purchased an iPhone application or application license from Apple

20    for use on an iPhone at any time from December 29, 2007 through the present."  This action is

21    maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3).  First, the Class is so

22    numerous that joinder of all members is impractical. Second, there are questions of law and fact

23    common to the Class which predominate over any questions affecting only individual members

24    including: (i) whether Apple violated Section 2 of the Sherman Act by monopolizing or

25    attempting to monopolize the aftermarket for iPhone software applications; (ii) whether Apple's

26    violation caused harm to Plaintiffs and the Class; and (iii) whether Apple should be enjoined

27    from continuing its monopolistic practices and from continuing to monopolize and charge

28    monopoly prices in the iPhone apps aftermarket without first obtaining iPhone consumers'

contractual consent. Third, Plaintiffs' claims and those of the Class are based on the same anticompetitive business practices and the same legal theories.  Fourth, Plaintiffs will thoroughly and adequately protect the interests of the Class, having obtained qualified and competent legal counsel to represent them and those similarly situated. Fifth, Apple has acted on grounds generally applicable to the Class.  Lastly, a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

**Apple states as follows:**  Apple disputes that Plaintiffs may obtain class certification pursuant to Fed. R. Civ. P. 23, or that Plaintiffs may establish a classwide basis for awarding monetary or equitable relief.

**10.     RELATED CASES**

On March 20, 2012, the Court issued an order consolidating *Terrell v. Apple Inc*., Case No. 12-00259 ("*Terrell*") with this action ("*Pepper*") and designating *Pepper* as the lead case. ECF No. 25.  On June 12, 2019, this Court issued an order finding that *Lawrence* was related to *Pepper*.[4]  ECF No. 145.  Consumer Plaintiffs anticipate filing a stipulation and proposed order consolidating *Lawrence* with the lead case, *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR.  On August 22, 2019, this Court issued an order finding that *Cameron* and *Sermons* are related to *Pepper*.  ECF No. 168.  The Parties are not aware of other related cases or proceedings pending before another judge of this Court, or before another court or administrative body.

**11.     RELIEF**

**Consumer Plaintiffs state as follows:**  Consumer Plaintiffs have not yet received initial disclosures or discovery and therefore do not yet have a definitive damages figure.  Consumer Plaintiffs anticipate calculating damages based on economic harm to customers stemming from Apple's monopolization of the aftermarket for iPhone applications, which Consumer Plaintiffs believe will equate to the 30% commission Apple imposed on apps, and treble damages for injuries caused by Apple's violations of the federal antitrust laws.  In addition to compensatory

---

[4] *See* footnote 2, *supra*.

damages, Consumer Plaintiffs seek injunctive relief as described above.

**Apple states as follows:**  Apple disputes that Plaintiffs are entitled to any relief, or that Plaintiffs can establish a classwide basis for awarding monetary or equitable relief.  Apple reserves all of its defenses to individualized remedies (assuming Plaintiffs are able to establish liability, which Apple vigorously contests).

**12.    SETTLEMENT AND ADR**

The Parties have met and conferred regarding ADR and are willing to discuss settlement possibilities.  The Parties have previously engaged in informal settlement discussions and participated in settlement conferences before Hon. Judge James Donato on October 24, 2017, and February 23, 2018 in conjunction with the related case, *Ward*.  The Parties elect private mediation before a mutually agreeable third party, but believe that it is premature to select any deadlines or processes.  The Parties propose that any private mediation be scheduled at an appropriate time based on the judgment of the experienced counsel representing all Parties.

**13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties respectfully decline assignment to a magistrate judge for all further proceedings in the Related App Store Actions.

**14.    OTHER REFERENCES**

The Parties agree that this case is not suitable for reference to binding arbitration and/or to a special master.  Because all known related cases are currently pending before this Court, it is not necessary to refer these cases to the Judicial Panel on Multidistrict Litigation.

**15.    NARROWING OF ISSUES**

At this stage, the Parties agree it is too early to identify potential ways to expedite the presentation of evidence at trial or otherwise narrow the Related App Store Actions by agreement or motion.  No party has requested bifurcation of issues, claims, or defenses.

**16.    EXPEDITED TRIAL PROCEDURE**

The Parties do not believe that the Expedited Trial Procedure of General Order No. 64 should apply to the Related App Store Actions.

/ / /

1  **17.    SCHEDULING**

2        The Parties have reached agreement on the parameters of a case schedule as set forth in

3  Exhibit B.   Apple's view is that the Developer and Consumer cases should be set on a single

4  schedule.  Consumer Plaintiffs do not object.

5  **18.    TRIAL**

6        Consumer Plaintiffs have demanded a jury trial and expect the trial to last approximately

7  three weeks.  Apple also demanded a jury trial, but believes that it is premature to estimate the

8  length of trial before any discovery has been taken.

9  **19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

10        Plaintiffs Pepper, Schwartz, and Hayter have filed their respective Certifications of

11  Interested Entities or Persons as required by Civil L.R. 3-15.  ECF Nos. 2, 22.  Apple has filed its

12  Certifications of Interested Entities or Persons in *Pepper* (ECF No. 13), *Lawrence* (ECF No. 16),

13  *Cameron* (ECF No. 18), and *Sermons* (ECF No. 29).

14        **Plaintiffs' Certification**:  Pursuant to Civil L.R. 3-15, the undersigned certifies that as of

15  this date, other than the named parties, there is no such interest to report.

16        **Apple's Certification**:  Pursuant to Civil L.R. 3-15, the undersigned certifies that other

17  than the named parties, there is no such interest to report.[5]

18  **20.    PROFESSIONAL CONDUCT**

19        All attorneys of record for the parties have reviewed the Guidelines for Professional

20  Conduct for the Northern District of California.

21  DATED:  September 30, 2019        By:      */s/Rachele R. Byrd*

22                                             **WOLF HALDENSTEIN ADLER**
                                                 **FREEMAN & HERZ LLP**
23                                             RACHELE R. BYRD
                                               BRITTANY N. DEJONG
24                                             750 B Street, Suite 1820
                                               San Diego, CA 92101
25                                             Telephone:  619/239-4599
                                               Facsimile:  619/234-4599
26

27  ──────────────────────

28  [5]  Apple intends to file an amended Certification in *Pepper* certifying same.

───────────────────────────────────────────────

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4677

*Attorneys for Plaintiffs Robert Pepper,*
*Stephen H. Schwartz, Edward W.*
*Hayter and Eric Terrell*

DATED:  September 30, 2019        By:        /s/Joseph M. Alioto

JOSEPH M. ALIOTO, SBN 42680
Theresa D. Moore, SBN 99978
Jamie L. Miller, SBN 271452
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco CA 94104
Telephone: (415) 434-8900
Email:  josephalioto@mac.com
Email:  tmoore@aliotolaw.com
Email:  jmiller@aliotolaw.com

Jeffery K. Perkins (CSBN 57996)
**LAW OFFICE OF JEFFERY K. PERKINS**
1550-G Tiburon Boulevard, #344
Tiburon, California 94920
Telephone: (415) 302-1115
Email: jefferykperkins@aol.com

Lawrence G. Papale SBN 67068
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, California 94574
Telephone: (707) 963-1704
E-mail: lgpapale@papalelaw.com

*Attorneys for Plaintiff Edward Lawrence*

DATED:  September 30, 2019        By:        /s/Cynthia E. Richman
**GIBSON, DUNN & CRUTCHER LLP**

THEODORE J. BOUTROUS JR. (SBN 132099)
tboutrous@gibsondunn.com

---

JOINT CASE MANAGEMENT STATEMENT          Case Nos. 4:11-cv-06714-YGR, 4:19-cv-02852-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No. 492089;
appearance *pro hac vice*)
crichman@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8234
Facsimile:  202.530.9691

*Attorneys for Defendant Apple Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION REGARDING CONCURRENCE

I, Rachele R. Byrd, am the ECF user whose identification and password are being used to file this JOINT CASE MANAGEMENT STATEMENT.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all of the signatories listed above have concurred in this filing.

DATED:  September 30, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*/s/ Rachele R. Byrd*
RACHELE R. BYRD

APPLE 2:25904v4

**EXHIBIT A**
**COORDINATION OF DISCOVERY**

1.      App Store Plaintiffs shall coordinate discovery efforts to minimize expenses and facilitate the orderly and efficient progress of the Related App Store Actions.   Consumer Plaintiffs and Developer Plaintiffs shall consult in good faith and engage in reasonable efforts to coordinate discovery and jointly resolve any disputes concerning discovery they are seeking so as to avoid duplication and unnecessary burden.   To the extent discovery is served by any Plaintiff, such Plaintiff shall avoid duplicating discovery requests previously served by any other Plaintiffs.

2.      Future discovery requests, future responses to discovery requests, and future discovery produced in response to such requests by parties and non-parties in any of the Related App Store Actions shall be served on counsel for all parties in the Related App Store Actions.

3.      Witnesses should only be deposed once.   All parties in the Related App Store Actions who wish to question a witness should participate in a single deposition.   The Parties must coordinate regarding deposition noticing and scheduling.   If a witness is to testify pursuant to both Fed. R. Civ. P. 30(b)(1) and Fed. R. Civ. P. 30(b)(6), the witness should sit for a single deposition, with multiple days being scheduled consecutively to the extent possible.

4.      All discovery-related meet and confers with Apple shall include representatives of all Plaintiffs where practical and where the issues relate to all Plaintiffs.   Plaintiffs will work together to include representatives from the other Plaintiffs at all discovery meet and confers where appropriate.

5.      The Parties must make an attempt to coordinate on third-party discovery.   Before serving discovery on non-parties (whether a document request, deposition notice, or other), the Parties shall consider whether the request may be served by joint subpoena of the Plaintiffs collectively or Apple.   Any correspondence with a non-party (including email) shall be provided to all parties in the Related App Store Actions within 24 hours.   Subpoenaed productions from non-parties must be sent to all parties by the requesting party within 7 days.   If, notwithstanding such request, the non-party does not produce the materials to both sides, the issuing party shall

provide a copy of all materials to the other side within three business days after receipt of the materials from the non-party, subject to any limitations in the Protective Order.

6.      All disclosures made pursuant to Fed. R. Civ. P. 26(f) (i.e., initial disclosures and expert disclosures) shall also be served on counsel for all parties in the Related App Store Actions.

7.      Any cases that are subsequently related to the Related App Store Actions are to be bound by these protocols governing the coordination of discovery, as well as the stipulations regarding ESI and expert discovery.

1

## EXHIBIT B

| Deadline/Event | Consumer Plaintiffs' Proposal | Developer Plaintiffs' Proposal | Apple's Proposal |
|---|---|---|---|
| Developer Consolidated Complaint filed | | September 27, 2019 | September 27, 2019 |
| Defendant's Motion to Dismiss | | October 28, 2019 | October 28, 2019 |
| Opposition to Defendant's Motion to Dismiss | | November 27, 2019 | November 27, 2019 |
| Alternatively, in response to Defendant's Motion to Dismiss, Developer Plaintiffs file amended consolidated complaint after motion to dismiss | | November 27, 2019 | November 27, 2019 |
| Reply in support of Defendant's Motion to Dismiss | | December 11, 2019 | December 11, 2019 |
| Hearing on Defendant's Motion to Dismiss | | TBD per the Court | TBD per the Court |
| (If Developer Plaintiffs file amended consolidated complaint after motion to dismiss) Defendant's Motion to | | December 26, 2019 | January 13, 2020 |

| Deadline/Event | Consumer Plaintiffs' Proposal | Developer Plaintiffs' Proposal | Apple's Proposal |
|---|---|---|---|
| Dismiss | | | |
| (If Developer Plaintiffs file amended consolidated complaint after motion to dismiss) Plaintiffs' Response to Defendant's Motion to Dismiss | | January 27, 2020 | February 12, 2020 |
| (If Developer Plaintiffs file amended consolidated complaint after motion to dismiss) Defendant's Reply in support of Motion to Dismiss | | February 10, 2020 | February 26, 2020 |
| (If Developer Plaintiffs file amended consolidated complaint after motion to dismiss) Hearing on Defendant's Motion to Dismiss | | TBD per the Court | TBD per the Court |
| Fact Discovery | | | |
| Commencement of Discovery | October 14, 2019 | | |
| Exchange of Initial Disclosures | October 14, 2019 | October 14, 2019 | October 14, 2019 |
| Production of materials provided to | October 21, 2019 | October 21, 2019 | N/A |

| Deadline/Event | Consumer Plaintiffs' Proposal | Developer Plaintiffs' Proposal | Apple's Proposal |
|---|---|---|---|
| governments | | | |
| Deadline to Complete Fact Discovery; Deadline to amend the pleadings | 12 months after commencement (October 7, 2020) | | 12 months after commencement (October 7, 2020) |
| Discovery motions filed | 30 days prior to close of discovery (September 7, 2020) | | About 30 days prior to close of discovery (September 7, 2020) |
| Class Certification | | | |
| Class Certification Motion and Supporting Expert Reports | 30 days after end of fact discovery | One year after filing of consolidated complaint (September 27, 2020) | 30 days after end of fact discovery |
| Class Certification Opposition and Supporting Expert Reports | 60 days after submission of motion | 45 days after service of motion for class certification (November 11, 2020, including Apple's expert report) | 60 days after submission of motion |
| Class Certification Reply | 30 days after submission of opposition | 30 days after service of opposition to motion for class certification (December 11, 2020, including Plaintiffs' rebuttal expert report) | 30 days after submission of opposition |
| Hearing on Class Certification | TBD per the Court | TBD per the Court | TBD per the Court |
| Expert Discovery | | | |
| Parties' expert reports filed | 60 days after decision on class certification | | 60 days after decision on class certification |
| Rebuttal expert reports filed | 45 days after receipt of opening expert reports | | 45 days after submission of initial expert reports |
| Close of Expert Discovery | 30 days after submission of rebuttal expert reports | | 30 days after submission of rebuttal expert reports |
| Dispositive Motions | | | |
| Opening brief | 45 days after | | 45 days after close |

| Deadline/Event | Consumer Plaintiffs' Proposal | Developer Plaintiffs' Proposal | Apple's Proposal |
|---|---|---|---|
| filed | close of expert discovery | | of expert discovery |
| Opposition brief filed | 45 days after opening brief is filed | | 45 days after opening brief is filed |
| Reply brief filed | 30 days after opposition brief is filed | | 30 days after opposition brief is filed |
| Hearing | To be determined by the Court | | To be determined by the Court |
| Trial | | | |
| Pretrial Conference | Two weeks prior to trial date | | TBD |