GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

July 13, 2020

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:   *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.) ("*Pepper*"); *Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal.) ("*Cameron*")

Dear Judge Hixson:

### I.   Attestation

Counsel for Defendant Apple Inc. and counsel for nonparty Samsung Electronics America, Inc. ("SEA") have met and conferred telephonically and in good faith to resolve the disputes set forth below. Efforts to resolve the dispute without the Court's assistance were unavailing.[1]

| | | |
|---|---|---|
| DATED: | July 13, 2020 | GIBSON, DUNN & CRUTCHER LLP |
| | | By: /s/ Jay P. Srinivasan |
| | | *Attorney for Apple Inc.* |
| DATED: | July 13, 2020 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | | By: /s/ Victoria F. Maroulis |
| | | *Attorney for Samsung Electronics America, Inc.* |

---

[1] Pursuant to Fed. R. Civ. P. 45(f), SEA and Apple have agreed to submit this and future disputes in the above-captioned cases for resolution by this Court, which issued the relevant Subpoena, rather than in the Southern District of New York, the designated place of compliance. *See* Fed. R. Civ. P. 45(f); *D.F. v. Sikorsky Aircraft Corp.*, 2016 WL 3360515, at *1 n.1 (S.D. Cal. June 13, 2016).

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

## II.     Apple's Position

**Background:**  Apple currently faces two class action antitrust lawsuits from iPhone users and app developers. Both allege that Apple has monopolized iOS app distribution by requiring that all such apps be distributed through Apple's App Store after pre-distribution review. *Pepper* Dkt 111 ¶¶ 3-4; *Cameron* Dkt 53 ¶ 2. Plaintiffs say these restrictions allow Apple to charge a supracompetitive commission on the sale of digital content. *E.g.*, *id.* ¶ 3. Apple will defend itself by arguing, among other things, that the relevant market is broader than the iOS-specific market alleged by Plaintiffs, and that Apple's practices have legitimate business justifications—including ensuring the security, privacy, and seamless integration of apps on Apple's devices. *Cameron* Dkt 74 at 2, 4-5.

The District Court has acknowledged that "how competition works" on the App Store and similar platforms is "where the debate is" in these cases. CMC Tr. 24:5-9 (Oct. 7, 2019). To help answer that question, Apple served a document subpoena on SEA. *See* Ex. A. SEA is Apple's most significant competitor in the sale of handheld devices in the United States, and also operates an app marketplace, the Galaxy Store, that comes preinstalled on those devices.

In response, SEA served Apple with 65 pages of objections to each Request, most culminating with: "SEA will not produce documents." Ex. B at 20, 22, 25, 27, 29, 32, 35, 37, 40, 42, 47, 50, 52, 63. Since then, during a four-month back-and-forth involving hours of phone calls and dozens of pages of correspondence, Apple has endeavored to explain the relevance of its Requests and explore ways to ease SEA's burden of compliance. For example, Apple discussed how SEA could satisfy certain Requests by focusing searches on limited custodians or specific documents. Ex. E at 4-5. Additionally, and contrary to SEA's suggestion below, Apple has repeatedly made clear that "it does not want every document that touches on the subjects listed." Ex. E at 4.[2] Yet SEA has refused to do anything but point out internet pages, describe inadequate public sources, and produce a minimal amount of data—and, even then, only on the unrealistic condition that Apple drop all other Requests. *See* Ex. G.[3]

**Argument:**  SEA cannot shirk its obligation "to participate in transparent and collaborative discovery." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 1942163, at *3 (N.D. Cal. May, 9, 2013). SEA does not dispute that Apple's Requests meet the standard for relevance. Nor could it, as "[w]ithout question, competitors' views and evaluation of the market are relevant to defining a market and evaluating market power." *N.M. Oncology v. Presbyt'n Healthcare Servs.*, 2016 WL 3452757, at *3 (D.N.M. May 10, 2016); *accord Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997-99 (10th Cir. 1965); *Dean Foods Co. v. Pleasant View Dairy Corp.*, 2011 WL 38994, at *1-2 (N.D. Ind. Jan. 5, 2011); *see also AFMS LLC v. UPS Co.*, 2012 WL 3112000, at *4-6 (S.D. Cal. July 30, 2012).

As set forth in Exhibit E, Apple's Requests target highly relevant documents. First, Apple seeks data from SEA about the performance and usage of the Galaxy Store (RFP 3), plus SEA's reports and analyses about the Galaxy Store and competition among app marketplaces (RFPs 4-9). These documents relate to market definition, market power, competitive effects, and Plaintiffs' claims of injury. Second, Apple seeks documents describing how SEA reviews apps for security, content,

---

[2] Apple also made clear that it would accept documents from a more limited time period (*see* Ex. E at 3), but SEA never indicated it would produce documents in response to any request if Apple would narrow the time period.

[3] Apple is not moving in this instance to compel responses to RFPs 1, 2, 20(a)-(b), 22, or 23. *See* Ex. H at 1-2.

and quality (RFPs 14, 17, 18), business practices of the sort that are at issue in this case. Third, Apple seeks documents about device and platform competition between SEA and Apple (RFPs 10-13), which (again) are highly relevant to contested issues of market definition, market power, and competitive effects.  Apple also seeks communications between SEA and Google on these issues (RFPs 16, 19) because Google's operating system (Android) powers SEA's phones in the United States, and its own app marketplace (Google Play) is a major source of apps for Samsung's customers. But rather than contest or engage with these points, SEA has asserted three sweeping objections for why it will not produce responsive documents. None justifies SEA's stonewalling.

*First*, SEA represents that it does not possess documents responsive to several Requests. Specifically, it says it lacks information about the Samsung Galaxy Store because the relevant functions are performed not by SEA, but by its Korean parent. *See* Ex. G at 1-2, 6. Putting aside that it took Apple fully two-and-a-half months and three teleconferences to extract this excuse from SEA (*see* Ex. F), even a cursory internet search shows the claim is not credible. Over the years, multiple U.S.-based SEA executives have spoken about Samsung's competitive strategy for its app store. For instance, in 2014, John Pleasants, an SEA executive who was then head of a "unit responsible for the app store," explained how Samsung planned to attract developers and integrate its store into devices. *How Samsung Plans to Fix its Galaxy Apps Store*, CNET (Sept. 3, 2014). And according to LinkedIn, SEA executives based in California hold (or have recently held) titles such as the "Head of Galaxy Store," the Galaxy Store's "Senior Manager" and SEA's "Senior Contracts Manager" responsible for app store applications. SEA appears to play a significant role in managing and operating the Galaxy Store, and it is therefore not credible that this entity does not possess the documents Apple has requested. Whether or not SEA has "control" over its Korean parent's documents or is responsible for generating them, if SEA possesses responsive material it must cough it up. *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *8 (N.D. Cal. Feb. 19, 2020) (Hixson, M.J.) ("The phrase 'possession, custody or control' in Rule 45 'is in the disjunctive and only one of the numerated requirements need be met.'").[4]

*Second*, SEA contends that Apple does not need the material sought by its subpoena. *E.g.*, Ex. B at 3. But as a participant in both devices and app distribution, SEA has a unique and credible perspective on competitive dynamics and app-security risks that is hard to replicate. *See N.M. Oncology*, 2016 WL 3452757, at *3 ("Typically, the only source for competitors' views of the market is from the competitors themselves."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2006 WL 2871834, at *2 (S.D. Ohio Aug. 7, 2006) (competitor's documents may "from a tactical standpoint, present advantages in the litigation not easily realized from parties or experts."). The mere existence of other less probative or reliable evidence "does not automatically mean that [Apple] lacks a substantial need for the information sought here." *Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, 2018 WL 2197544, at *4 (N.D. Cal. May 14, 2018). In

---

[4] Unlike in *Zenith Electronics v. Vizio, Inc.*, Apple's doubts about SEA's claimed lack of documents are based on far more than "the parent-subsidiary relationship itself." *See* 2009 WL 3094889, at *2 (S.D.N.Y. Sept. 25, 2009). The materials above clearly suggest that, unlike in *Zenith*, SEA has a meaningful role in the line of business at issue. Plus, internal SEA documents that have become public through prior litigation further undermine SEA's claims. For example, SEA contends that it has not communicated with Google about topics covered by Apple's subpoena (*see* Ex. G at 6; Ex. H at 3), but these documents suggest otherwise. *See Samsung Decided To Start Attacking Apple After Steve Jobs Died*, Business Insider (Apr. 16, 2014) (Samsung U.S. subsidiary's then-CEO and chief marketing officer were asked if they could "go to Google" and "ask them to launch a campaign against Apple").

any event, SEA is wrong as a factual matter. Much of the information sought, especially relating to the Galaxy Store, is unavailable from anyone but SEA. *See* Ex. E at 3 & n.2. If necessary, Apple is fully prepared to explain its substantial need for the documents sought.

***Third*,** SEA contends that the documents sought are too commercially sensitive to produce to a competitor. *See, e.g.*, Ex. B at 4-5. One wonders about this objection when SEA claims it doesn't possess anything relevant. But, at any rate, the argument lacks merit. "The fact that [SEA] competes with [Apple] is insufficient to thwart the free flow of information at the heart of the discovery rules." *Med. Ctr. at Elizabeth Pl., LLC v. Premier Health Partners*, 2013 WL 3872077, at *7 (S.D. Ohio July 25, 2013). SEA has never tried to explain why its documents—even those from many years ago—are commercially sensitive, much less make a "strong showing" to that effect. *E.g.*, *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006); *see Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697-98 (D. Nev. 1994) (only documents that "if disclosed, would cause substantial economic harm to the [producing party's] competitive position" deserve extra protection). Still, discovery of commercially sensitive documents is "virtually always ordered once the movant has established that the secret information is both relevant and necessary," as Apple has here. *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995). In such cases, a robust protective order like the one in place suffices to protect a nonparty's interests. *See, e.g.*, *Gradillas*, 2018 WL 2197544, at *5-6; *AFMS*, 2012 WL 3112000, at *7. And Apple will agree to additional protections if necessary. *See* Ex. H at 2.

**Requested Relief:** Rather than engage in meaningful discussion, SEA has chosen "obfuscation [and] obstinacy." *Samsung Elecs.*, 2013 WL 1942163, at *3. Apple therefore respectfully asks this Court to order production of documents responsive to Apple's subpoena.

### III.     SEA's Position

**Apple Served SEA with an Overbroad Subpoena:** Apple subpoenaed its U.S. competitor—Samsung Electronics America, Inc. ("SEA")—for highly confidential, competitive, trade secret information, much of which is not relevant. (*See* Ex. A.) Apple's subpoena does not come close to complying with the Federal Rules. For example, one of Apple's 23 requests seeks *all* of SEA's documents concerning "U.S. consumer preferences for and attitudes towards [smartphones and tablets]." (RFP 13.) Also, Apple's subpoena has four pages of definitions demanding *over 13 years* of production.

**SEA Properly Responded to Apple's Subpoena and Cited Relevant Law:** SEA conducted an extensive investigation and provided Apple with a detailed response, identifying locations where Apple could obtain responsive material. SEA did not serve Apple with "65 pages of objections." SEA's responses cited relevant authority supporting a finding that Apple's subpoena is improper. (*See* Ex. B.) SEA spent months working in good faith, providing additional information, and expecting Apple, in turn, to appropriately narrow its subpoena. Ultimately, Apple unreasonably failed to budge and now blatantly misrepresents SEA's positions.

**Apple Refused to Materially Narrow its Subpoena:** While Apple alleges that it "explore[d] ways to ease SEA's burden of compliance" and provided "focus[ed] searches on limited custodians or specific documents," Apple did nothing of the sort.[5] Apple narrowed nothing, rejected SEA's offers of compromise, ignored SEA's affirmances regarding requests for which it located no responsive documents, and continued to demand full, unyielding compliance based on pure speculation. SEA has attached the meet and confer materials demonstrating SEA's compliance and Apple's unreasonableness. (*See* Exs. C-G.) On March 30 and April 9, 2020, SEA provided Apple with its response to Apple's subpoena, and in doing so, directed Apple to multiple specific sources of information. (Ex. B.) Then again, on May 1, 2020, SEA identified to Apple where it could obtain materials in response to Requests 1-3, 5, 9-14, 18-23. (Ex. D (SEA 5/1 Letter).)[6] In June, SEA confirmed its willingness to work with Apple in good faith. (Ex. F (Apple 6/5 Letter).) SEA noted it either did not have some responsive documents or that the documents were available publicly (RFPs 1, 2, 14-19, 21-23), and offered to produce other documents (RFPs 3-13). (*Id.*) By that point, SEA had engaged in three meet and confers, exchanged letters, and conducted an internal investigation to ensure SEA's compliance. (Ex. G (SEA 6/10 Letter).) At the same time, Apple had not narrowed its subpoena at all. (*Id.*)

Apple divides its subpoena into 4 categories; SEA worked with Apple in good faith in each one: (1) regarding RFP 3, SEA directed Apple to responsive information and agreed to produce data; SEA agreed (without a time limitation) to produce syndicated market research responsive to RFPs 4-9; (2) regarding RFPs 14, 17, 18, SEA told Apple SEA is not responsible for the review process, identified what it had and was willing to produce, and explained how Apple could access older data; (3) regarding RFPs 10-13, SEA directed Apple to multiple sources of data and agreed to

---

[5] The only supposed "narrowing" Apple was willing to do was state that it "does not want *every* document," only those that were created by, provided to, or reviewed by SEA's executives, directors, and decision makers. (Ex. E at 4-5.) Apple never proposed a list of search terms, custodians, or documents. Further, Apple falsely states that SEA would compromise "only on the unrealistic condition that Apple drop all other Requests."

[6] Apple cites two irrelevant websites for its misguided position that "[m]uch of the information sought, especially relating to the Galaxy Store, is unavailable from anyone but SEA." (Ex. E at 3 & n.2.)

produce syndicated market research without any time limitation; (4) regarding RFPs 16 and 19, SEA searched for but could not locate communications with Google on the responsive topics. (SEA did not represent that it has no communications with Google whatsoever.[7])

**Argument:** Apple served an overbroad subpoena and refused to reasonably narrow it in good faith. Meanwhile, SEA conducted an extensive search, pointed Apple to responsive information, and provided details on the requested documents. SEA has more than complied with its obligations under Rule 45. Apple failed to "avoid imposing undue burden or expense" on SEA. Fed. R. Civ. P. 45(d)(1). "The Ninth Circuit has long held that nonparties [like SEA] subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016). This is because "[n]onparty witnesses are powerless to control the scope of litigation and discovery." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). SEA is a nonparty, so Apple has an obligation to reduce burdens on SEA and seek documents elsewhere. *See Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019). Apple has made no effort to "avoid imposing undue burden or expense" on SEA. *See, e.g.*, *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847, at *5 (N.D. Cal. Mar. 10, 2017) ("[T]he court is not persuaded that the burden to Apple of producing this large amount of sales data—15 years' worth . . . is outweighed by the benefit to [the subpoenaing party] of obtaining this information.").[8]

**Many of the Requested Documents Are Not Within SEA's Possession, Custody, or Control:** SEA searched for materials in its possession, custody, or control, offered as a good faith concession to produce certain categories of documents located from that search, and told Apple where it could not locate certain categories of documents. Apple ignored this. Apple's speculation regarding what documents SEA does and does not have should be given no weight, similar to Apple's representations in other cases where *Apple* was a third party. *See, e.g.*, *Audio MPEG*, 2017 WL 950847 at *2. Most of the documents Apple seeks would be in Samsung Electronics Co., Ltd. ("SEC"), *not* SEA. Apple falsely states that "it took Apple fully two-and-a-half months and three teleconferences to extract this excuse from SEA." Not so. Indeed, SEA's April responses to Apple's subpoena made clear that certain documents "were entered into with *a different entity*— Samsung Electronics Co., Ltd." and SEA objected "to the extent [Apple] seeks information that is *not in SEA's possession, custody, or control*." (Ex. B, RFP 1.)

Apple argues that if SEC has responsive documents, SEA necessarily has access to them. Apple is wrong. "In the Ninth Circuit, a practical ability to obtain the requested documents from a related organization is not enough to constitute control because the related organization could legally . . . refuse to turn over such documents." *Seifi v. Mercedes-Benz U.S.A., LLC*, 2014 WL 7187111, at *2 (N.D. Cal. Dec. 16, 2014); *see also Tessera, Inc. v. Micron Tech., Inc.*, 2006 WL 733498, at *6 (N.D. Cal. Mar. 22, 2006). Courts have noted the distinction between SEC and SEA, holding that

---

[7] Apple mischaracterizes citations to suggest that SEA has responsive communications with Google. (*See* Fn. 3.) Not so. SEA executives were not *told* to "go to Google" for anything. Rather, they *questioned* whether they *could* go to Google. https://appleinsider.com/articles/14/04/15/samsung-braced-for-iphone-5-tsunami-targeted-an-attack-on-apples-customer-base (note, the email is misquoted but the screenshot is accurate).

[8] Apple misleadingly states that SEA asserted only "three objections." Since Apple addresses only those objections, SEA limits its responses to Apple's arguments, but maintains all of its other objections. (*See* Ex. B; *see also* Ex. D (SEA 5/1 Letter) (noting that objections are not limited to the three Apple cherry-picked to address).)

SEA "does not have access to Samsung Korea's separate archives." *See Zenith Elecs. LLC v. Vizio, Inc.*, 2009 WL 3094889, *1 (S.D.N.Y. Sept. 25, 2009).

**SEA's Documents Are Commercially Sensitive:** Apple speculates SEA's corporate documents are not "commercially sensitive." Apple is wrong. Among its other overbroad requests, Apple seeks the "analyses, reports, advice, recommendations, comparisons, [and] studies" "created by or provided to [SEA's] executives [and] directors." (RFPs 4-5.) These are nothing but "commercially sensitive." Apple must show it has a "substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P 45(d)(3). While Apple may *want* the commercially sensitive trade secrets in SEA's possession, Apple cannot show it has the necessary "substantial need." *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *4 (N.D. Cal. July 7, 2017). Apple's citation to *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995) proves SEA's point. Packard Bell had no access to surveys reflecting industry practice, so it had a substantial need for that information. Here, however, Apple has access to such materials.

The protective order does not provide sufficient protection particularly as Apple's in-house attorneys can access documents under the PO. "[T]here is no rule that a competitor has to reveal its trade secrets merely because they are produced subject to a protective order." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017); *see also Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff. Seagate should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need."); *Waymo*, 2017 WL 2929439 at *3 (rejecting assertion that the protective order ameliorated confidentiality concerns, particularly involving "a Rule 45 subpoena between direct competitors operating in the same industry").

**Requested Relief:** Given Apple's unwillingness to meaningfully narrow its subpoena, SEA does not believe further meet and confers will be productive and respectfully requests that Apple's subpoena be quashed or narrowed consistent with SEA's positions during meet and confers.

Respectfully submitted:

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By: /s/ Jay P. Srinivasan
Theodore J. Boutrous Jr. (SBN 132099)
 tboutrous@gibsondunn.com
Richard J. Doren (SBN 124666)
 rdoren@gibsondunn.com
Daniel G. Swanson (SBN 116556)
 dswanson@gibsondunn.com
Jay P. Srinivasan (SBN 181471)
 jsrinivasan@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000

Veronica S. Lewis (*pro hac vice*)
 vlewis@gibsondunn.com
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100

Ethan Dettmer(SBN 196046)
 edettmer@gibsondunn.com
Eli M. Lazarus (SBN 284082)
 elazarus@gibsondunn.com
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200

Cynthia E. Richman (*pro hac vice*)
 crichman@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8234

*Attorneys for Defendant Apple Inc.*

By: /s/ Victoria F. Maroulis
Victoria F. Maroulis (Bar No. 202603)
 victoriamaroulis@quinnemanuel.com
Kyle Batter (Bar No. 301803)
 kylebatter@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood City, CA 94065
Telephone: 650-801-5000

*Attorneys for Samsung Electronics America, Inc.*

## **Signature Attestation**

In compliance with Local Civil Rule 5-1(i)(3), I hereby attest that the other signatories to this document concurred in its filing.

By: /s/ Jay P. Srinivasan                              Dated: July 13, 2020