UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE iPHONE ANTITRUST LITIGATION. | Case No.  11-cv-06714-YGR (TSH) |
| | **DISCOVERY ORDER** |
| | Re: Dkt. No. 218 |
| DONALD R. CAMERON, et. al., | |
| Plaintiffs, | Case No.  19-cv-03074-YGR (TSH) |
| v. | Re: Dkt. No. 101 |
| APPLE INC., | |
| Defendant. | |

## I.    INTRODUCTION

Pending before the Court is Defendant's Motion to Compel Discovery from Non-Party Samsung Electronics America, Inc. ("Samsung").  ECF No. 218/101.  Having considered each side's position, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Apple's motion to compel.

## II.    BACKGROUND

This dispute stems from two antitrust lawsuits pending in this District, one from a putative class of iPhone users and another from a putative class of software developers, both alleging that Apple has monopolized distribution of software applications, or "apps," on its iOS operating system by requiring that all apps on its iPhones be distributed through its App Store.  *See* Pepper ECF No. 111 ("Pepper Compl.") ¶¶ 2-4; Cameron ECF No. 53 ("Cameron Compl.") ¶ 2.

United States District Court
Northern District of California

1   Plaintiffs allege that Apple requires distribution through its App Store in order to foreclose

2   competition from other app distributors and enable it to charge developers a supra-competitive

3   30% commission on the sale of apps.[1]  Pepper Compl. ¶¶ 4, 37 ("Apple eliminated the threat of

4   competition from unapproved apps developers by conceiving and implementing the App Store in

5   order to become the exclusive distributor of iPhone apps, and by thereafter rigorously enforcing

6   and maintaining its monopoly."); Cameron Compl. ¶ 3.  The developers' complaint also

7   challenges Apple's $99 annual fee for developers who wish to sell their products through the App

8   Store and the mandatory app price points ending in $.99.  Cameron Compl. ¶ 3.

9         In Plaintiffs' telling, Apple is a monopolist in an aftermarket for software applications that

10   can be used only on iPhones, and in which competition between Apple and other device

11   manufacturers, operating systems, and app distributors plays no part.  *E.g.*, Pepper Compl. ¶¶ 7-8,

12   43 ("Apple has no competition in the multi-billion[-]dollar iPhone apps aftermarket, domestically

13   or abroad, whatsoever."), ¶ 66 ("The existence of competition in the smartphone market between

14   Apple's iPhone and the makers of competing handsets such as Google's Android phones is

15   irrelevant to the relevant market analysis . . . ."); Cameron Compl. ¶¶ 51-52 ("The U.S. market for

16   iOS app and in-app-product distribution services is discrete.  By design, Apple's market share in

17   this important market is likely close to 100%."), ¶ 57 ("[No] other entity providing app and in-

18   app-product distribution services . . . provide[s] any constraints to Apple's market power.").

19   According to Plaintiffs, if Apple facilitated the installation of apps from sources other than the

20   App Store, it would be "pressure[d] to substantially lower its 30%" commission because of price

21   competition from other app distributors.  Pepper Compl. ¶ 48; *see* Cameron Compl. ¶¶ 82 (a

22   competitive marketplace would lead to a "whittled down" commission rate "over the years").

23   Plaintiffs reject as "overblown pretense" Apple's assertion that it prohibits competition in app

24   distribution on iOS to help to protect its device customers from bad apps and malware.  *Id.* ¶ 53;

25

26   ─────────────────────

27   [1] The Third Amended Complaint in 11-cv-6714 added claims concerning the iPod and iPad, as well as a challenge to the $x.99 pricing already present in the developers' complaint.  *See* ECF No. 228.  That pleading was filed after briefing on this motion to compel was complete, and none of Apple's arguments for relevance had anything to do with the new claims.  Samsung's arguments against producing documents really do not depend on what the claims against Apple are.

28

*see* Cameron Answer at 2, ECF No. 74.

Apply denies that it is a monopolist in any relevant market.  *Id.* at 4.  On the contrary, it insists that "[c]ompetition both inside and outside the App Store is fierce at every level: for devices, platforms, and individual apps," "against some of the largest companies in the world." *Id.*  Apple intends to argue that this competition meaningfully constrains its pricing and policies concerning the App Store.  Mot. to Compel at 3.  Additionally, Apple insists that the vast majority of apps found in the App Store can be found on competing platforms and that app developers routinely "multi-home" across competing platforms.  Cameron Answer at 4.  Thus, Apple intends to argue it "faces competition for app distribution from other app distributors—most directly from other mobile app marketplaces such as Google Play, Amazon's Appstore, and the Samsung Galaxy Store."  Mot. at 3.  Apple "intends to contest plaintiff's central theory of competitive harm—that [its] commission is artificially high because developers allegedly must sell through the App Store."  *Id.*  And it intends to argue that its policy of requiring all iOS apps developed using its software to undergo its pre-distribution review is "supported by legitimate business reasons because it helps ensure the 'safety, security, privacy, and seamless integration' of apps on iOS devices."  *Id.* (quoting Cameron Answer at 2).

According to Apple, Samsung is its most significant U.S. competitor in the sale of handheld devices and smartphones.  Mot. at 3.  Unlike Apple's devices, which run on Apple's own iOS operating system, Samsung's devices run on Android, an operating system developed by Google, another non-party.  *Id.*  Samsung operates its own app marketplace, the Galaxy Store, on its devices and the marketplace runs much like the App Store.  *Id.* (citing Decl. of Jay P. Srinivasan in Supp. of Mot. to Compel ("Srinivasan Decl.") ¶ 3, Ex. B ("Subpoena Objections") at 14 & n. 3, 43 & n. 10, ECF No. 218-3).  Samsung also charges developers a commission on sales of apps and in-app products.  Mot. at 3.  The Galaxy Store is not the only source of apps for users of Samsung's devices, however.  Google Play, Android's centralized app marketplace, comes preinstalled along with the Galaxy Store on Samsung's Android OS devices.  Srinivasan Decl. ¶ 11, Ex. G ("Samsung 6/10 Letter") at 6, ECF No. 212-7 ("[A]ll Samsung Android OS phones that [Samsung] has sold in the U.S. since 2009 have been preloaded with the Galaxy Store . . . and the

1    Google Play store . . . .").  Additionally, Samsung's device users may obtain apps from sources

2    other than one of the preinstalled app stores.  *See* Subpoena Objections at 61 ("Samsung phones

3    and tablets with Android OS can install and download from app stores other than Google Play and

4    the Galaxy Store.").

5         On March 16, 2020, Apple served a Subpoena to Produce Documents, Information, or

6    Objects on non-party Samsung.  Srinivasan Decl. ¶ 2, Ex. A (the "Subpoena"), ECF No. 218-1.

7    Apple's Subpoena seeks three categories of documents, which Apple describes as:

8              Documents about device and platform competition (Request Nos. 10-
               13), including high-level internal documents about competition
9              between mobile platforms regarding apps or app marketplaces, and
               security and privacy;
10

11             Documents about app marketplace competition (Request Nos. 1-9,
               20), including certain aggregated data about the Galaxy Store's
12             installation rate, usage and revenues, as well as high-level internal
               documents about the Galaxy Store's performance and Samsung's
13             competitive positioning of, and plans for, the Galaxy Store; and

14             Documents about app review and security (Request Nos. 14-15, 17-
               18), including documents about Samsung's app review procedures for
15             the Galaxy Store, its approaches to mobile security and privacy, and
               its statements about risks from downloading apps.

16   Mot. at 4-5.  The Subpoena also seeks communications between Samsung and Google about these

17   three topics.  *See* Request for Production ("Request" or "RFP") Nos. 16, 17 and 19.  On March 30,

18   Samsung served its responses and objections to the Subpoena, and an amended set of responses

19   and objections on April 9.  Apple and Samsung have met and conferred multiple times trying to

20   reach a compromise on the production of documents but have been unable to.  *See* Srinivasan

21   Decl. ¶¶ 4, 7, 9, 13, 15.  Apple moved to compel production on July 31, 2020.

22                          **III.   LEGAL STANDARD**

23        Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by

24   subpoena.  Fed. R. Civ. P. 45.  The Advisory Committee Notes to the 1970 Amendment to Rule

25   45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34

26   and other discovery rules."  Under Rule 34, the rule governing the production of documents

27   between parties, the proper scope of discovery is as specified in Rule 26(b).  Fed. R. Civ. P. 34.

28   *See also Heat & Control, Inc. v. Hester Industries. Inc.*, 785 F.2d 1017 (Fed. Cir. 1986) ("[R]ule

                                            4

1    45(b)(1) must be read in light of Rule 26(b).”); *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34

2    F.3d 774, 779 (9th Cir. 1994) (applying both Rule 26 and Rule 45 standards to rule on a motion to

3    quash subpoena).

4          Rule 26(b) permits the discovery of any non-privileged material “relevant to any party’s

5    claim or defense and proportional to the needs of the case,” considering factors such as “the

6    importance of the issues at stake in the action” and “whether the burden or expense of the

7    proposed discovery outweighs its likely benefit.” Fed. R. Civ. P. 26(b)(l). Relevancy, for the

8    purposes of discovery, is defined broadly. “Information within this scope of discovery need not be

9    admissible in evidence to be discoverable.” *Id.* However, relevancy is “not without ‘ultimate and

10   necessary boundaries.’” *Pacific Gas and Elec., Co. v. Lynch*, No., 2002 WL 32812098, at * 1

11   (N.D. Cal. August 19, 2002) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). A court must

12   limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has
> had ample opportunity to obtain the information by discovery in the
> action; or (iii) the proposed discovery is outside the scope permitted
> by Rule 26(b)(1).

17   Fed. R. Civ. Proc. 26(b)(2)(C). The Advisory Committee Notes to the 1983 amendments to Rule

18   26 explained that “[t]he objective is to guard against redundant or disproportionate discovery by

19   giving the court authority to reduce the amount of discovery that may be directed to matters that

20   are otherwise proper subjects of inquiry.” Yet despite these objectives, “the court must be careful

21   not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to

22   defend and prepare the case.” Rule 26 advisory committee’s note (1983). In addition to the

23   discovery standards under Rule 26, Rule 45 itself provides that “[o]n timely motion, the court for

24   the district where compliance is required must quash or modify a subpoena that . . . subjects a

25   person to undue burden.” Rule 45(c)(3)(A). Thus, a court determining the propriety of a third-

26   party subpoena balances the relevance of the discovery sought, the requesting party’s need, and

27   the potential hardship to the party subject to the subpoena. *Heat & Control*, 785 F.2d at 1024.

28         Lastly, Rule 45 “provides additional protections where a subpoena seeks trade secret or

United States District Court
Northern District of California

5

confidential commercial information from a nonparty." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006). If a non-party can show that requested information is "a trade secret or other confidential research, development, or commercial information," a court may quash or modify a subpoena. Fed. R. Civ. P. 45(d). The burden then shifts to the requesting party to "(1) show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship,'" *Gonzales*, 234 F.R.D. at 684 (quoting Rule 45(c)(3)(B) [now Rule 45(d)(3)(C)(i)]), and (2) "ensure[] that the subpoenaed person will be reasonably compensated," Rule 45(d)(3)(C)(ii). Determining "substantial need" requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 154 (D.C. Cir. 2015) ("substantial need" and "undue hardship" requirements met where documents were relevant and FTC could not reasonably obtain them elsewhere). Upon a showing of substantial need by a requesting party, instead of quashing or modifying the subpoena, a court may "order appearance or production under specified conditions." Fed. R. Civ. P. 45(d)(3)(C).

## IV.    DISCUSSION

Samsung frames its arguments under four main objections which are applicable to all of the Subpoena requests. Its primary objection and the bulk of its argument is that Apple has not shown a substantial need for the documents and information it requests from Samsung. According to Samsung, much of the responsive material contains highly sensitive, confidential information. Since Apple cannot show substantial need for it, Samsung argues, the subpoena should be quashed. Samsung also argues that the Subpoena is overbroad as to both scope and time. It argues that it does not have "much of the responsive documents concerning the Galaxy Store, "because the Galaxy Store is developed and managed by [its] parent company," Samsung Electronics in Korea ("Samsung Korea"). Finally, it argues that the protective order in place in the antitrust actions is insufficient to protect the confidential information and trade secrets that Apple would have access to if Samsung is compelled to produce documents.

Apple counters that Samsung has not made a showing that the subpoena requests relate to

6

1   information that is trade secret or commercially confidential, and thus is not entitled to protection

2   under Rule 45(d)(3)(B) and (C).  Thus, Apple argues, it need not show substantial need.  However,

3   Apple argues that even if it must show substantial need, it is able to do so because the documents

4   are relevant and necessary to the underlying dispute.  In response to Samsung's complaint about

5   the burden of responding to the Subpoena, Apple argues that it has meaningfully narrowed its

6   requests and explored ways that Samsung could comply with the requests while incurring minimal

7   burden.  Finally, Apple argues that Samsung's own evidence and publicly available information

8   refutes Samsung's claim that it lacks responsive documents.

9       Since Samsung's objections are overarching objections, the Court will proceed to analyze

10  each category of documents as laid out by Apple in its Motion to Compel.

11  **A.    Request Nos. 10-13[2]**

12      As Apple puts it, these Requests encompass "certain high-level internal documents about

13  competition between Apple and Samsung at the device level," and are relevant to market

14  definition.  Mot. at 8.  Plaintiffs and Apple (naturally) disagree over market definition, more

15  specifically as to whether other app marketplaces are relevant for purposes of the market analysis

16  and the question of whether Apple exercises monopoly power.  *Compare, e.g.*, Pepper Compl. ¶

17  66 ("The existence of competition in the smartphone market between Apple's iPhone and the

18  makers of competing handsets . . . is irrelevant to the relevant market analysis in a Section 2

19  Sherman Act aftermarket monopolization case, in which the existence or lack of competition in

20  the aftermarket at issue is the only economically meaningful inquiry."); Cameron Compl. ¶ 57

21  ("[No] other entity providing app and in-app-product distribution services . . . provide[s] any

22  constraints to Apple's market power."), *with* Cameron Answer at 4 ("Apple is not a monopolist of

23  any relevant market.  Competition both inside and outside the App Store is fierce at every level:

24  for devices, platforms, and individual apps.").  Apple argues that "[b]y requesting Samsung's

25  internal documents about, in particular, consumer preferences for app marketplaces on handheld

26  devices (Request Nos. 12, 13), and competition concerning the availability of apps and app

27

28

---

[2] Apple is not moving to compel responses to RFP Nos. 1, 2, 20(a)-(b), 22, or 23.  Mot. at 8.

United States District Court
Northern District of California

1    marketplaces (Request Nos. 10, 11), [it] aims to understand the role app stores play in a

2    competitive market for devices in which Apple and Samsung are the major participants."  Mot. at

3    9.  For instance, it argues that if evidence shows that app stores, and the selection of apps they

4    contain, influence competition between device manufacturers, that would undermine Plaintiffs'

5    claims that iOS apps are an isolated market in which Apple can exercise monopoly power.

6            As a preliminary point, the Court can easily conclude that many of the documents Apple

7    seeks through these requests are entitled to protection under Rule 45(d)(3).  High-level documents

8    concerning competition between Samsung's handheld devices and app marketplace, and those of

9    Apple and any other Samsung competitor, are "confidential research, development, or commercial

10   information," Rule 45(d)(3)(B)(i), and "are plainly the sort of information [Samsung] would not

11   disclose to competitors."  *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *4 (W.D.

12   Wash. Aug. 17, 2009).  Also, to the extent that Samsung has assessed the competitiveness of its

13   handheld devices and app marketplaces and those of competitors through "studies, analyses,

14   reports, or surveys" it commissioned into "consumers' attitudes towards the availability of apps or

15   app marketplaces on different handheld devices," RFP No. 10, "it would certainly want to shield

16   those assessments from view" as they might "be of tremendous value to a competitor," *In re eBay*

17   *Seller*, 2009 WL 10677051, at * 4.

18           At the same time, the Court rejects Samsung's blanket excuse against production that it

19   "does not have much of the responsive documents concerning the Galaxy Store."  Opp'n at 19.

20   Apple points to a good amount of publicly available material, *see* Mot. at 15-17, that suggests

21   Samsung would have at least some responsive documents in its possession, custody, or control.

22   The declaration by Samsung's own higher-up suggests as much: prior to Edward Viejo's current

23   role as a "Senior Director of Product Management in the North America Services Division," he

24   was "Head of the Galaxy Store" and "Director of Product Management within eCommerce"; he

25   has "a team responsible for supporting and contributing to the growth, success, and optimization

26   of content and services for the U.S. market"; and his responsibilities with respect to the Galaxy

27   Store have included, among other things, "monitoring financial performance, maintaining

28   objectives and key results, content programming and editorial curation, promotion, strategic

planning, partner on-boarding and seller support, product roadmapping, and general business operations." Decl. of Edward Viejo in Support of Opp'n ("Viejo Decl.") ¶¶ 1, 3, ECF No. 221-3. Viejo explains that in responding to the subpoena, he consulted individuals who "hold roles within [Samsung's] mobile business in product management, product planning, business strategy, consumer and market insights, consumer experience, shopper insights, developer relations, technical program management, customer care, and contract management." *Id.* ¶ 6. Also, Samsung explains in its Opposition that "*much of* the requested information is developed and managed by" Samsung Korea, Opp'n at 1 (emphasis added), and in Apple and Samsung's joint discovery letter explains that "*most of* the documents Apple seeks would be in" Samsung Korea, ECF No. 212 at 6 (emphasis added). But even if most of the responsive documents are outside Samsung's possession, custody, or control, that doesn't relieve Samsung of its duty to produce those documents that aren't. Samsung's point that a practical ability to obtain documents from Samsung Korea is not enough to constitute "control" for purposes of Rule 45 is true but irrelevant. A U.S. subsidiary cannot avoid the obligation to produce documents it *does* have by arguing that its foreign parent has more or better documents.

       **1.**      **Request No. 10**

       Turning to the requests, RFP No. 10 requests documents concerning competition in the U.S. between Samsung's handheld devices and Apple's handheld devices, including documents concerning consumer preferences for any handheld device, market shares of Samsung's and Apple's devices, the reasons consumers selected one competitor's devices over another's, competition between each company's devices related to security, safety, and use of personal information, and competition between each company's devices related to availability of apps and app marketplaces. The request is fantastically overbroad as written, and in its motion to compel, Apple appears to agree and says that it seeks only those responsive documents that are "related to the availability of apps or app marketplaces." Mot. at 9 n.7. The Court therefore understands Apple now to be seeking documents concerning competition between Samsung's handheld devices and Apple's handheld devices related to the availability of apps or app marketplaces on those devices.

United States District Court
Northern District of California

Turning to the question of "substantial need," the Court concludes that Apple is equally able to expend its own resources to obtain information responsive to this request, and probably already has.  It's hard to believe that Apple, which successfully "competes against some of the largest companies in the world," Cameron Answer at 4, doesn't have and can't get its own research on competition between its and Samsung's handheld devices related to the availability of apps or app marketplaces on those devices, including how consumer preferences affect that competition, reasons consumers prefer Apple's devices over Samsung's or vice versa, the relative market shares of the two company's devices, and how security, safety, and the use of personal information affect that competition.

Apple argues that it needs Samsung's documents because there is not a lot of *public* information about the Galaxy Store.  And it's true that valuable market intelligence is rarely given away for free.  However, Apple is not penniless.  Apple has undoubtedly spent large sums of money to develop exactly the type of competitive intelligence it now seeks from Samsung.  Apple is perfectly capable of hiring experts and consultants who can do sophisticated studies on the competition issues relating to this RFP.  Apple's resources in obtaining competitive intelligence are not limited to what its outside counsel can find in an internet search of public websites.  In short, whatever Samsung did to obtain the documents Apple seeks, Apple can do it too.  The subject matter of RFP 10 is competition *between* Apple and Samsung, and either competitor is equally capable of analyzing that.  Thus, Apple has not convincingly argued that it has a substantial need for these documents.  *See In re eBay Seller*, 2009 WL 5205961, at *3 ("EBay does not have a substantial need to force Amazon to turn over market analyses that eBay could conduct on its own."); *id.* ("[D]ocuments from Amazon would at best provide an 'independent basis' for accepting [eBay's] arguments. . . . EBay's plea for disclosure of Amazon's competitively sensitive information is based not on its inability to mount a defense in the antitrust litigation, but its desire to mount a 'Fulsome Defense.'").

Also, to the extent documents responsive to this request would reveal Samsung's assessments of relevant markets, the Court does not find, as Apple insists, that those assessments would be critical to Apple's case.  Apple and Samsung disagree as to whether Samsung's views on

United States District Court
Northern District of California

the market are relevant to the assessment of the relevant market in this case. Samsung of course argues that they are not. It cites *In re eBay Seller*, 2009 WL 10677051, at *5, where the district court plainly stated that "[a]n assessment of the relevant markets for [an] antitrust case is an objective inquiry, not one that depends on [a non-party competitor's] views on the subject." (citing *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 1999 U.S. Dist. LEXIS 7055, at *9 (E.D. Pa. May 14, 1999)). Apple points to *New Mexico Oncology v. Presbyterian Healthcare Servs.*, where a district court in New Mexico found that, "[w]ithout question, competitors' views and evaluation of the market are relevant to defining a market and evaluating market power." 2016 WL 3452757, at *3 (D.N.M. May 10, 2016) (citing *Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 873 (W.D.N.Y. 1994). Here, however, Apple does not "offer any argument for why [Samsung's] 'perspective' on the market in particular is relevant or necessary." *Act Inc.*, 1999 U.S. Dist. LEXIS 7055, at *9 (finding movant had "wholly faile[d] to show a 'subtantial need' for the material that [could not] otherwise be met without undue hardship"). There's no dispute here as to the nuts and bolts of Apple and Samsung's competition: they both sell handheld electronic devices including smart phones that come installed with app marketplaces (the App Store, Galaxy Store, etc.) which offer to device users apps for download developed by third-party developers. The dispute is whether the market for purposes of the antitrust actions is limited to Apple's store—because Apple exercises exclusive control over the distribution of apps on its devices—or whether it expands to something broader. Apple has not convincingly argued how Samsung's understanding of its competition with Apple in the market for handheld devices, or Samsung's understanding of consumers' preferences for one device or another or one app marketplace or another, is crucial for answering that question. There is no reason to think that Samsung has a better understanding of its competition with Apple than Apple does. Thus, the Court does not find Apple has a substantial need for any document based on a need to understand Samsung's assessment of handheld device or app marketplace competition.

The Court quashes Request No. 10.

**2.     Request Nos. 11-13**

Requests Nos. 11 and 12 seek documents created by or provided to Samsung's executives

11

United States District Court
Northern District of California

1   or directors concerning competition related to the availability of apps or app marketplaces on any

2   handheld device, Samsung's or otherwise (RFP No. 11); documents concerning consumer

3   preferences for a given app marketplace on handheld devices (RFP No. 12); and any studies,

4   reports, or surveys regarding consumer preferences for and attitudes toward handheld devices,

5   including consumer perceptions of the price, design, performance, security, privacy,

6   innovativeness, and usability of different handheld devices, consumer attitudes toward the

7   availability of apps or app marketplaces on different devices, why consumers selected a given

8   device, and whether consumers ever switched between brands of handheld device and the reasons

9   for doing so (RFP No. 13).  Request No. 13 is vastly overbroad, but again, Apple clarifies that it is

10  only seeking responsive documents to the extent they relate to apps and app marketplaces.  Mot. at

11  9 n.7.

12          Requests Nos. 11-13 suffer from the same problem that Request No. 10 did:  Apple has not

13  shown a "substantial need" for Samsung's documents on these subjects.  Apple has not made a

14  showing that it lacks this kind of competitive information and is unable to obtain it through its

15  own efforts.  Apple argues that "it aims to understand the role app stores play in a vigorously

16  competitive market for devices in which Apple and Samsung are the major participants."  Mot. at

17  9.  However, Apple is not a start-up that just recently released an app store and is now struggling

18  to understand whether and how app stores figure in the competitive market for handheld devices.

19  Measured in terms of market capitalization, Apple is one of the largest companies in the world,

20  and handheld devices that use apps are among its major products.  There is no reason to think that

21  Samsung is in any better position than Apple to obtain information about competition and

22  consumer preferences concerning apps and app marketplaces.  While it might be interesting for

23  Apple to hear what its major competitor has to say on these subjects, that is a far cry from showing

24  "a substantial need for the . . . material that cannot otherwise be met,"  Fed. R. Civ. Proc.

25  45(d)(3)(C)(i).

26          Nevertheless, Samsung has offered to produce:

27          [D]ata showing the current number of U.S. active users of the Galaxy
            Store; data showing the current number of U.S. apps in the Galaxy

28          Store; data regarding comparative consumer usage and awareness of

1
2
3

> the Galaxy Store, Google Play, and Apple Store in the U.S. . . . [S]yndicated market research, reports and surveys regarding, for example, mobile app development, marketplaces, and usage, from industry leaders like Nielsen, Gartner, ComScore, Forrester, and Strategy Analytics.

4   Opp'n at 9; *see* Samsung 6/10 Letter at 5, ECF No. 212-7.  The Court holds Samsung to its offer

5   and orders that information to be produced, subject to compliance with confidentiality restrictions

6   imposed by third parties.  Apple's motion to compel production beyond that is denied.

7   **B.      Request Nos. 3-9 and 20**

8          As to this block of requests, Apple argues that they concern competition between app

9   marketplaces.  Apple argues that they are relevant (1) because responsive documents will likely

10  show the nature and extent of direct competition between the App Store and the Galaxy Store,

11  which in turn is relevant to market definition; and (2) because evidence about how the Galaxy

12  Store actually competes with other app marketplaces within the Android ecosystem might

13  undermine Plaintiffs' claims that requiring Apple to facilitate distribution of apps on the iPhone

14  outside the App Store would usher in meaningful competition.  Put another way, Apple argues that

15  to address Plaintiff's theory that it would be "pressure[d] to substantially lower its 30%

16  commission" if forced to allow alternative iOS app distribution, it needs information about an app

17  ecosystem in which there are multiple app marketplaces for the same handheld devices.  Reply at

18  7, ECF No. 226.

19         Samsung does not directly challenge either theory of relevance, and at a high level both are

20  plausible.  The nature and extent of direct competition between the App Store and the Galaxy

21  Store goes directly to market definition.  The second theory of relevance – competition within the

22  Android ecosystem – is somewhat more attenuated.  Even if Apple is forced to open up its system

23  and allow competitors to distribute apps through alternatives to the App Store, the resulting

24  ecosystem would differ significantly from the Android ecosystem.  In such an ecosystem Apple

25  would combine the functions of Samsung and Google (because it would be both the hardware

26  manufacturer and the developer of the operating system), and it would not face any competitor that

27  resembled Google (i.e., a competitor that develops the iOS, because Apple does that itself).

28  Nonetheless, if in the Android ecosystem there is a showing of significant competition between

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    Google Play and the Galaxy Store (or any of the other app marketplaces) and that competition

2    does not seem to constrain the commission Samsung charges, that would call into question the

3    basic premise of Plaintiffs' claims against Apple.  Accordingly, competition within the Android

4    ecosystem is relevant.

5          Samsung argues that Apple has not explained why public information already available to

6    it, sources Samsung already identified in meet and confer, and market research it offered to

7    produce are insufficient to show what other companies are doing, "such that Apple has a

8    'substantial need' to go *beyond* these materials and raid SEA's most sensitive internal reports,

9    analyses, and strategies."

10         Apple counters that "publicly available data and analysis about the Galaxy Store is

11   virtually nonexistent."  Reply at 7.  As Apple puts it, "[t]o understand—as it must—how

12   Samsung's app marketplace fits into the street fight for market share among handheld device

13   makers, Apple has no choice but to go to Samsung."  *Id.*

14         **1.     Request No. 3**

15         Request No. 3 relates to the number of apps downloaded on Samsung's devices from the

16   Galaxy Store and any other app marketplace, the percentage of Samsung handheld devices that

17   have downloaded apps from the Galaxy Store and Google Play, the number of apps available in

18   the Galaxy Store, Samsung's revenue from apps, in-app products, and in-app advertising, and the

19   number of apps submitted by developers for production in the Galaxy Store.  This sort of

20   information would likely be relevant for Apple to demonstrate the strength of competition for

21   consumers and app developers between it and the Galaxy Store and between the Galaxy Store and

22   others in the Android ecosystem.  Apple asserts convincingly that this sort of information is not

23   available elsewhere.  *See* Reply at 7.  Accordingly, it has shown a need for these documents.

24   Also, the information sought by this Request does not detail future plans or involve strategic

25   assessments, and thus there is no substantial risk of competitive or economic harm to Samsung.

26   Finally, the burden on Samsung to produce documents responsive to this Request seems relatively

27   small.

28         Samsung explains that it identified for Apple a "Galaxy Store Highlights" webpage which

contains some of the information and analytics sought by Apple, that it was able to locate documents and confirm that it has data showing the current number of U.S. active users of the Galaxy Store, data showing the current number of U.S. apps in the Galaxy Store, including paid apps and apps offering in-app products, and current data regarding awareness and usage of Galaxy Store, Google Play, and Apple Store in the U.S.  Viejo Decl. ¶ 9.  It expressed a willingness to produce these documents to Apple.  Samsung 6/10 Letter at 5, ECF No. 212-7.  The Court orders Samsung to produce that material.

On the other hand, Samsung asserts that it does not have documents responsive to a number of the other subparts of Request 3, including the total number of apps downloaded onto Samsung smartphones and tablets from marketplaces other than the Galaxy Store, and the percentage of Samsung smartphones and tablets that have downloaded apps from Google Play. Viejo Decl. ¶ 9.  It maintains that it has no way to determine the number of apps available in the past, does not track or have access to the number of apps downloaded onto specific devices, including Samsung devices, and does not have access to any data from the Google Play store.  *Id.* Nevertheless, Samsung does not say anything about Apple's request for information about revenues from paid apps downloaded in its app marketplace (RFP No. 3(h)-(i)) or whether it has information on the number of apps submitted to it by app developers for publication in the Galaxy Store (RFP No. 3(j)).  That information would likely be relevant to showing the extent of competition between the App Store and Galaxy Store.  This is again information about the past performance of the Galaxy Store, and while the information is sensitive, it would not contain strategic assessments or forward-looking documents that would create a risk of competitive harm. Samsung has not shown that production would be burdensome.  Samsung is ordered to produce documents responsive to Request No. 3(h)-(j).

### 2.    Request No. 4

Request No. 4 relates to documents created by or provided to executives and directors concerning the introduction of Samsung's app marketplace, including analyses, reports, and studies regarding whether to offer an app marketplace and then-existing marketplaces.  This Request is just a subset of RFPs 10-13 limited in time to when Samsung introduced the Galaxy

1   Store (or, more precisely, its predecessor under a different name).  The Court's analysis is no

2   different.  Apple is just as capable as Samsung as analyzing the ability of a new app store to

3   compete with then-existing alternatives.  There is no special need for Samsung's documents on

4   this issue.

5        For this and other RFPs, Apple tries to have it both ways in its motion.  Apple suggests

6   that the old age of the documents at issue (the Galaxy Store's predecessor was introduced more

7   than a decade ago) means that they are no longer commercially sensitive.  However, if competition

8   between app marketplaces has changed sufficiently in that length of time that these documents are

9   stale and no longer sensitive, then they are also of questionable relevance, and forcing Samsung to

10  dig them up is not proportional to the needs of the case.  Leaving aside Rule 45(d)(3), Rule

11  26(b)(2)(C) contains the more basic requirement that discovery should be limited where the

12  information "can be obtained from some other source that is more convenient, less burdensome, or

13  less expensive . . ."  Apple's stated rationale for RFP 4 is to obtain information about the

14  competitive landscape for app marketplaces at the time the Galaxy Store was introduced, and

15  Apple focuses on that time period on the assumption that Samsung must surely have done some

16  competitive analysis at the time it launched the store.  But forcing Samsung to identify document

17  custodians and non-custodial sources of data, image those data sources, run search terms and have

18  people review the documents is a much more laborious way to obtain this type of information than

19  acquiring already-existing market intelligence (which is different from what is free on the internet)

20  or even Apple's own competitive intelligence from that period of time – which surely exists.  The

21  Court quashes this Request.

22        **3.      Request No. 5**

23        Request No. 5 relates to documents created by or provided to Samsung's executives or

24  directors concerning the performance or predicted performance of the Galaxy Store, including

25  reports concerning usage of the Galaxy Store, downloads of apps from the Galaxy Store,

26  submissions by app developers for the Galaxy Store, and sales of apps and in-app products in the

27  Galaxy Store.  The Court finds that "the performance or predicted performance" and the "usage"

28  of the Galaxy Store are too broad and vague and quashes those aspects of this request.  However,

United States District Court
Northern District of California

reports concerning downloads of apps, submissions by app developers and sales of apps and in-app products are relevant to showing competition between the Galaxy Store and Apple's app store. These are also not forward-looking documents of the type that would raise heightened concerns about confidentiality.  The Viejo Declaration indicates at paragraphs 9 and 10 that Samsung has some, but not all, responsive documents, so the Court orders Samsung to produce responsive documents to these portions of the request to the extent they are within its possession, custody or control.

### 4.     Request No. 6

Request No. 6 asks for documents created by or provided to Samsung executives and directors concerning any differences between the apps published in Samsung's Galaxy Store and the same or similar apps published in any other app marketplaces, including any differences in app design, functionality, performance, features, price, monetization, strategy, or display of in-app advertising.  This information definitely counts as "confidential research, development, or commercial information," Fed. R. Civ. Proc. 45(d)(3)(B)(i), and Apple has not shown "a substantial need for . .  the material that cannot be otherwise met," *id*. (d)(3)(C)(i).  Apple and Samsung undoubtedly both compare the apps published in their own marketplaces to those published in others, and they are also capable of commissioning others to do so.  Samsung has no better insight into the subject matter of this request than Apple does.  The Court quashes this Request.

### 5.     Request No. 7

Request No. 7 asks for documents created by or provided to Samsung executives and directors concerning Samsung's strategy and plans for marketing, publicizing, and positioning the Galaxy Store.  The marketing plans of a competitor are highly sensitive competitive information. *In re eBay Seller*, 2009 Wl 10677051, at *4 ("Most of the documents that Plaintiffs request are competitively sensitive, to say the least.  Amazon's marketing plans, or its assessments of the marketing plans of its competitors, are plainly the sort of information Amazon would not disclose to competitors.").  Apple has not clearly or convincingly explained how this sort of information is necessary to show the nature and extent of direct competition between the App Store and the

17

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Galaxy Store, or to show how the Galaxy Store actually competes with other app marketplaces in the Android ecosystem.  The potential competitive harm that will result to Samsung from having to disclose that information far outweighs Apple's need for it.  The Court quashes this Request. *See id.* at *4 ("The court must, in its sound discretion, balance the harm from disclosing the information, the requesting party's need for the information, and the effectiveness of possible safeguards for the information.").

### 6.   Request No. 8

For the most part, Request No. 8 must be rejected for largely the same reasons.  A request for any "documents . . . concerning competition between" the Galaxy Store and any other Android app marketplace, including "any documents describing [Samsung's] strategy related to competition," is both overly broad and asks for documents that would likely include highly sensitive competitive information.  Further, information relating to "reasons that consumers or app developers" prefer one app marketplace over another or assessments of market shares of different Android app marketplaces is, again, the type of information Apple should be equally able to obtain on its own.  The Court quashes Request No. 8.

### 7.   Request No. 9

Request No. 9 again asks for documents "concerning competition," this time "between any app marketplace" on the Android OS, on the one hand, and the App Store, on the other, "including any documents describing reasons that consumers or app developers may prefer" the App Store over an app marketplace on Android, or vice versa.  This is again the sort of confidential commercial information that Apple should be able to obtain through its own efforts, and Apple has not shown a substantial need to obtain it from Samsung.  The subject of this Request is competition between Apple's App Store and Android app stores.  Apple has provided no explanation why Samsung is in a better position to assess that than Apple is.  Indeed, this Request encompasses competition between Google Play as well as any other non-Samsung Android app marketplaces, on the one hand, and Apple, on the other.  There is no reason to think that Samsung is even a good place to go looking for that information.  The Court quashes this Request.

United States District Court
Northern District of California

### 8.      Request No. 20(c)

Request No. 20(c) asks for documents showing, for each of Samsung's handheld devices available for sale in the U.S., if the Galaxy Store comes preinstalled on the device, then how many such handheld devices were sold each year since 2009.  Viejo testified that he believes all Samsung smartphones with the Android operating system sold in the U.S. since 2009 have been preloaded with the Galaxy Store and Google Play.  Viejo Decl. ¶ 13.  Thus, knowing how many devices Samsung sold each year since 2009 could be relevant to showing the extent of direct competition between the App Store and the Galaxy Store—if every Samsung handheld device came with the Galaxy Store on it, knowing how many devices were sold helps to know how many end users had access to the Galaxy Store.  Samsung indicated to Apple a willingness to produce syndicated research in its possession estimating the number of Samsung Android OS phones sold in the U.S. since 2009, Samsung 6/10 Letter at 6; the Court orders Samsung to produce those documents, which will be sufficient for purposes of this Request.

### C.      Requests Nos. 14-15 and 18

Requests Nos. 14 and 15 ask for documents showing Samsung's guidelines, policies, and procedures for reviewing apps made available on its devices and documents showing the percentage of apps submitted by app developers that Samsung ultimately did not publish in its Galaxy Store.  Request No. 18 asks for documents concerning the ability or inability of users of Samsung's devices to download apps from sources other than the Galaxy Store or Google Play, including documents concerning any launch of a handheld device in the United States which prevents users from installing apps from sources other than those two app marketplaces.

Apple argues that these requests are relevant because "[d]ocuments about Samsung's app review procedures, approaches to mobile security and privacy, and statements about app download risks are relevant to Apple's business justifications defense."  Mot. at 12.  "Apple intends to argue that the rules and features challenged by Plaintiffs are justified as a means of ensuring that consumers have access only to secure and high-quality apps."  *Id.*

Apple's business justification defense will primarily come down to its own documents and the testimony of its own witnesses.  Samsung's business practices that were unknown to Apple

1    when it designed the policies at issue will almost by definition not be the core of Apple's defense.

2    Nonetheless, if Apple can show that its "procompetitive justifications" are "reasonable and

3    consistent with current industry practice," that is relevant to the business justification defense.

4    *FTC v. Qualcomm*, 969 F.3d 974, 996 (9th Cir. 2020).  Further, this is the sort of information

5    which Samsung is uniquely able to provide, meaning Apple meets the substantial need test.  The

6    Court orders Samsung to produce these documents.  However, Samsung is not required to produce

7    "each effective copy" of its App Distribution Guide, if one or a few copies of the Guide is

8    sufficient to show its guidelines, policies, and procedures for reviewing apps; for example, if its

9    procedures haven't changed from 2010 to 2020, it needn't produce every copy of the Guide ever

10   distributed.  Samsung indicated in its Opposition that it "was not aware" of responsive documents

11   to request No. 15.  Opp'n at 9.  To the extent it determines that it doesn't have any documents

12   responsive to that request, it needn't produce them.

### D.    Request Nos. 16-17 and 19

14        In its motion to compel, Apple says that it "seeks communications between Samsung and

15   Google about several of the topics already discussed, including harm caused by apps (Request No.

16   16), policies and procedures for reviewing apps, and competition between mobile platforms and

17   app marketplaces (Request Nos. 17, 19)."  Mot. at 12.  Apple argues that "because Google and

18   Samsung provide complementary elements (i.e., the operating system and the hardware) of a

19   mobile platform that competes with Apple, we would expect discussions about competition with

20   Apple . . . to take place within those communications."  Mot. at 13.

21        As written, RFP 16 is actually much broader than that.  It asks for "documents and

22   communications, include those with Google, concerning" several types of harm that could be

23   caused by apps.  Thus, as written, RFP 16 seeks every document in Samsung's possession,

24   whether or not it is a communication with Google, concerning the listed subjects.  Similarly, RFP

25   17 as written seeks documents that Samsung gave "to Google *or users*" of Samsung handheld

26   devices regarding risks associated with installing apps.  Thus, as written RFP 17 seeks everything

27   Samsung has ever said to any user of its handheld devices about any risks associated with

28   installing apps.  Because Apple's sole explanation for why Requests Nos. 16 and 17 seek relevant

documents concerns communications with Google, and because these requests are otherwise plainly overbroad and unduly burdensome, the Court interprets Apple's motion as limiting these requests to communications with Google.[3]  (Request No. 19 as written is already limited to communications with Google.)

Apple argues that the relevancy of these communications is twofold.  One, it argues that the requests are relevant for obtaining an accurate picture of Samsung's approaches to and views on these subjects.  And two, it argues that the documents are relevant because "they may show that a mobile platform's app marketplace policies, including its transaction fees, are meaningfully constrained by competition from other mobile platforms, which would help rebut Plaintiffs' cramped Apple-only market definitions."  Mot. at 13.  Samsung asserts that it "did not locate any such communications involving the custodians identified by Apple . . . ."  Viejo Decl. ¶ 12 (as to Request No 19); Opp'n at 9 (same as to Requests Nos. 16 and 17).  Apple counters that it never identified any custodians, and that Samsung never provided it with any information about who within Samsung is responsible for the Galaxy Store, presumably for Apple to be able to identify a custodian.  Reply at 3.  The Court finds these documents are relevant, and since Apple is only able to obtain them from either Samsung or Google, it has shown a substantial need.  Further, unlike purely internal Samsung documents about competition and strategy where the highly sensitive nature of those documents may be self-evident, it is not self-evident that communications between Samsung and Google on these subjects would be especially sensitive, and Samsung has provided no basis to think so.  Accordingly, the Court orders Samsung to search for and produce these documents if it has them.

## E.      Request No. 21

Request No. 21 asks for documents describing the organizational structure of, and listing personnel working within, any division or unit of Samsung that is responsible for the Galaxy Store, app review, or protecting Samsung's devices from malware, including any organizational charts or employee directories pertaining to such business units or divisions.  Apple argues that

---

[3] Apple confirmed this interpretation at the October 8, 2020 hearing.

1   this information is relevant because it might be able to use the information to conduct further

2   discovery, such as identifying individuals for potential depositions of pertinent decisionmakers.

3   Also, it argues it might use the information to test the adequacy of Samsung's responses to its

4   substantive requests.  "Such discovery is particularly appropriate here," Apple argues, "where

5   Samsung appears to claim that its executives in the United States play no substantive role in its

6   operation of the Galaxy Store," despite public sources like LinkedIn suggesting otherwise.  Mot. at

7   14.  Samsung explains that it has identified for Apple social networking sites, specifically

8   LinkedIn, where it could identify Samsung employees.  Opp'n at 9.  Apple counters that it has

9   attempted to identify Samsung employees through sources including LinkedIn, but that Samsung

10  itself has acknowledged to Apple that those sources are not always accurate.  *See* ECF No. 212-8

11  (July 3, 2020 email from Samsung telling Apple that people it found on LinkedIn are "no longer

12  employed by [Samsung]").  The Court notes also that Samsung has suggested to the Court that

13  LinkedIn is not a reliable source of information for purposes of this subpoena dispute.  *See* Opp'n

14  at 21 ("Apple cites the LinkedIn pages of a few current and former Samsung employees as 'proof'

15  that [it] must have documents responsive . . . . Samsung does not manage employees' LinkedIn

16  accounts.").  Samsung hasn't offered any coherent objection to producing these documents, and

17  it's hard to see how doing so could be competitively disadvantageous for Samsung or unduly

18  burdensome.  The Court orders Samsung to produce these documents.

19                                   **V.    CONCLUSION**

20          Based on the foregoing, Apple's Motion to Compel is **GRANTED IN PART** and

21  **DENIED IN PART** as stated above.[4]

22          **IT IS SO ORDERED.**

23  Dated: October 9, 2020

24

25                                          THOMAS S. HIXSON
                                            United States Magistrate Judge

26

27  ---
    [4] Samsung also argued that the protective order in this action is inadequate to protect the
    confidentiality of its documents.  However, the Court has quashed the Requests that seek
28  Samsung's most sensitive information.  For the documents the Court orders Samsung to produce,
    the existing protective order is sufficient.

United States District Court
Northern District of California