| | |
|---|---|
| RACHELE R. BYRD (190634) <br> BRITTANY N. DEJONG (258766) <br> **WOLF HALDENSTEIN ADLER** <br>   **FREEMAN & HERZ LLP** <br> 750 B Street, Suite 1820 <br> San Diego, CA 92101 <br> Telephone: 619/239-4599 <br> Facsimile:  619/234-4599 <br> byrd@whafh.com <br> dejong@whafh.com | STEVE W. BERMAN (*pro hac vice*) <br> ROBERT F. LOPEZ (*pro hac vice*) <br> **HAGENS BERMAN SOBOL** <br>   **SHAPIRO LLP** <br> 1301 Second Ave., Suite 2000 <br> Seattle, WA 98101 <br> Telephone: (206) 623-7292 <br> Facsimile: (206) 623-0594 <br> steve@hbsslaw.com <br> robl@hbsslaw.com |
| MARK C. RIFKIN (*pro hac vice*) <br> MATTHEW M. GUINEY (*pro hac vice*) <br> **WOLF HALDENSTEIN ADLER** <br>   **FREEMAN & HERZ LLP** <br> 270 Madison Avenue <br> New York, NY 10016 <br> Telephone: 212/545-4600 <br> Facsimile:  212/545-4677 <br> rifkin@whafh.com <br> guiney@whafh.com | SHANA E. SCARLETT (SBN 217895) <br> BENJAMIN J. SIEGEL (SBN 256260) <br> **HAGENS BERMAN SOBOL** <br>   **SHAPIRO LLP** <br> 715 Hearst Avenue, Suite 202C <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br> Facsimile:  (510) 725-3001 <br> shanas@hbsslaw.com <br> bens@hbsslaw.com |
| *Interim Class Counsel for the Consumer Plaintiffs* | *Interim Class Counsel for the Developer Plaintiffs* |

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Apple iPhone Antitrust Litigation | CASE NO. 4:11-cv-06714-YGR <br><br> **FURTHER JOINT CASE MANAGEMENT STATEMENT** |
| DONALD R. CAMERON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 4:19-cv-03074-YGR <br><br> DATE:       October 19, 2020 <br> TIME:        9:30 a.m. <br> JUDGE:     Hon. Yvonne Gonzalez Rogers <br> CTRM:      1 – 4th Floor |

Plaintiffs in the related App Store actions, including Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter, and Edward Lawrence, plaintiffs in *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR (collectively, "Consumer Plaintiffs"); Plaintiffs Donald R. Cameron and Pure Sweat Basketball, Inc.,[1] plaintiffs in *Cameron, et al. v. Apple Inc.*, Case No. 4:19-cv-03074-YGR (collectively, "Developer Plaintiffs"); and Defendant Apple Inc. ("Defendant," and with Consumer Plaintiffs and Developer Plaintiffs, the "Parties"), by and through their respective counsel, hereby submit this Further Joint Case Management Statement in advance of the October 19, 2020 Case Management Conference.

Unless otherwise stated herein, the Parties' positions on the topics discussed in the initial Joint Case Management Statements, submitted on September 30, 2019, and Further Joint Case Management Statements submitted on January 6, 2020, and July 28, 2020, remain unchanged. *See* Consumer ECF Nos. 174, 196, 216; Developer ECF Nos. 54, 82, 99. Per this Court's Standing Order in Civil Cases, ¶ 6, the Parties submit the following updates.

**1.     MOTIONS**

There are no pending motions at this time. However, the Parties reserve the right to file discovery-related motions with Magistrate Judge Thomas S. Hixson, as directed by the Court, should certain outstanding discovery disputes remain unresolved.

Pursuant to the Parties' Stipulation and Order Modifying Schedule, the Consumer and Developer Plaintiffs have been working diligently toward filing their respective motions for class certification by February 3, 2021, and the Parties presently anticipate filing their motions for summary judgment (if any) by the Court-ordered deadline. However, the Plaintiffs note that due to discovery-related issues among the Parties—including but not limited to proceedings in the related *Epic Games, Inc. v. Apple Inc.* matter—they likely will need to seek an extension of the current class-certification motions deadline by way of proposed stipulation or motion.

Among the reasons for an extension is the desirability of coordinating depositions of certain witnesses that Plaintiffs anticipate Epic seeking to depose as well. Given that Epic only recently filed its case, it appears to Plaintiffs that Epic will require time to catch up to Plaintiffs in document review and analysis and other discovery efforts. Plaintiffs note that during the September 28, 2020 hearing on Epic's motion for preliminary injunction, Apple's counsel indicated that "Epic proposes that all depositions take place between January 4th and February 5th whereas we [Apple] would extend that

---

[1] Because the Developer Plaintiffs and Apple are in the process of dismissing Barry Sermons from the developer case, Mr. Sermons has not participated in the preparation of this Further Joint Case Management Statement.

by about three more weeks." *Epic v. Apple* Prelim. Inj. Hearing Trans. at 98.  Apple's counsel also noted that Epic had indicated to it that it "intend[s] to take at least the ten depositions permitted under the rules." *Id.*  As Apple's counsel put it, "having documents produced by early January followed by what we have is about seven weeks of deposition discovery to us seems like the practical and realistic approach and one that can actually be achieved." *Id.*

Given the foregoing, Plaintiffs will discuss with Apple (and Epic) a corresponding extension of the class-certification deadlines in their own cases—probably to a date in April 2021.  They hope to be able to present a stipulation to the Court in advance of the case management conference scheduled for October 19, 2020.

*Apple's Statement*:

Apple also reserves the right to raise by motion any matters posed by new developments in the law.

**2.   AMENDMENT OF PLEADINGS**

**a.   Consumer Plaintiffs' Amendments**

On September 17, 2020, the Court entered an order granting Consumer Plaintiffs leave to file a Third Amended Complaint, which was deemed filed on that date, and directed Apple to file an Amended Answer within thirty (30) days of that date, or by October 19, 2020.  Consumer ECF No. 229.  Consumer Plaintiffs do not at this time anticipate further amending their pleadings.

**b.   Potential Amendment of Developer Plaintiff Complaint to Reach Foreign Transactions**

As noted in the previous Further Joint Case Management Statement, the Developers and the Defendant identified a dispute relating to Apple's view that certain developer transactions "involv[e] trade or commerce with foreign nations" within the meaning of the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA").

Developers and the Defendant have conferred further with regard to this matter, and they may have identified a jointly acceptable accommodation in principle that would resolve the matter.  These parties are in the process of working out the details, which would involve a proposed stipulation to the Court to place these transactions into a second phase of proceedings.  Because this proposal may entail an agreed amendment of the Developers' complaint, these parties thought it best to alert the Court to this proposed resolution as they continue to work through the details.

Additionally, Developer Plaintiffs believe that further public developments and the ongoing review and analysis of Apple's productions in discovery may augur in favor of amendments to the current operative developer complaint.  The Developers are in the process of analyzing these factors

now, and are also doing so in light of the possible amendment referenced in the previous paragraph. In the event the Developers decide to seek to amend, they will first propose to the Defendant that it agree that the Developers may file an amended complaint.

*Apple's Statement*:

Developer Plaintiffs' complaint pleads no basis for claims concerning foreign transactions or for seeking discovery about such transactions. Nor could the Complaint be amended to plead a valid basis for such claims under the FTAIA (or under California law). As noted, however, Apple has agreed to discuss the possibility entering into a stipulation with Developer Plaintiffs that would defer any litigation or discovery concerning transactions through Apple's foreign storefronts. Apple remains in discussions with Developer Plaintiffs to determine if such a stipulation is feasible.

**3.    DISCOVERY**

*Plaintiffs' Statement*:

Consumer Plaintiffs served Apple with their first set of Requests for Production of Documents ("RFPs") on October 10, 2019, and Developer Plaintiffs served Apple with their first set of RFPs on October 17, 2019. Apple served responses and objections to those RFPs on November 12, 2019 and November 18, 2019, respectively. The Parties have met and conferred extensively, and continue to meet and confer, regarding Apple's responses and objections to Plaintiffs' RFPs. Apple has not yet substantially completed its document production from current custodians, nor has it substantially completed data production, though both were supposed to be done by July 31, 2020. Most recently, Apple made a substantial production of approximately 1.75 million pages of documents on September 20, 2020. Consumer Plaintiffs and Developer Plaintiffs continue to review Apple's document production, including for purposes of identifying deficiencies, and expect that Apple will continue to produce substantial volumes of documents and data.

On September 1, 2020 Consumer Plaintiffs served Apple with a second set of RFPs, and on October 1, 2020, Apple served responses and objections to those RFPs. Those responses and objections did not indicate that Apple would be producing any documents pursuant to Consumer Plaintiffs' requests. Consumer Plaintiffs are beginning the meet-and-confer process regarding Apple's responses and objections, but they anticipate they may need to seek Magistrate Judge Hixson's assistance in resolving this discovery dispute.

There are several outstanding issues between and among the Parties, as well as other issues involving non-party discovery, including but not limited to the following: (a) discovery of important information and data related to the App Store, including Apple's production of documents identifying

the fields in its transactional database(s) and its transactional and cost and expense data; (b) Apple's production of documents to the Plaintiffs which it has produced to governmental bodies, including the House Judiciary Committee; (c) Apple's production of foreign transaction-related data; (d) discovery from non-party recipients of document request subpoenas; and (e) entry of an ESI protocol.

In light of the serious, time-sensitive nature of these matters, including longstanding disputes, Plaintiffs have provided this non-exhaustive list. They will continue to meet and confer with Apple in good faith on all open issues. However, it is possible that they may need to bring some of these, or others, to Magistrate Judge Hixson for resolution.

Furthermore, the Plaintiffs have at all times remained mindful of the COVID-19 crisis, and they have expressed to Apple their continued willingness to consider modifications to the schedule based on COVID-related disruptions. Moreover, Plaintiffs themselves have suffered COVID-related disruptions. And the timing of various events in the discovery process are also cause for concern. For this reason, too, Plaintiffs wish to flag these issues for the Court, in the event a request for an extension to the schedule becomes necessary in their view.

*Apple's Statement*:

Apple served Consumer and Developer Plaintiffs with its first sets of RFPs on October 17, 2019. Consumer and Developer Plaintiffs served responses and objections to those RFPs on November 18, 2019. The Parties have met and conferred extensively, and continue to meet and confer, regarding Plaintiffs' responses and objections to Apple's RFPs. Apple continues to review Plaintiffs' document productions, including to identify deficiencies, in addition to issues about which it has already met and conferred with Plaintiffs.

Apple informed Plaintiffs on February 10, 2020 that it anticipated substantially completing its custodial document and data productions by July 31, 2020. Contrary to Plaintiffs' statement, and notwithstanding disruptions related to the COVID pandemic, Apple *did* substantially complete its large custodial document production by July 31, producing approximately 3.59 million documents (7.18 million pages).[2] Since July 31, Apple has produced approximately 108,000 additional documents (1.9 million pages). Apple will continue to produce comparatively small numbers of documents responsive to Plaintiffs' RFPs in order to fully satisfy Apple's discovery obligations.

---

[2] While Plaintiffs attempt to make much out of the relatively large number of pages in Apple's production on September 20, 2020, the truth is that that production contained a relatively small number of documents. However, a subset of about 23,000 of those documents, containing relatively small amounts of responsive information, take up some 1.5 million pages due to their HTML formatting.

There are no discovery issues in this litigation that require the Court's attention at this time. Over the past year of litigation, the parties have successfully resolved all discovery disputes without the Court's intervention. But in the event the parties reach an impasse, Apple is mindful that discovery disputes should be presented to Magistrate Judge Hixson in the first instance.

### a.   Data discovery issues

*Plaintiffs' Statement*:

To date, Apple has produced two samples of its structured data in response to Plaintiffs' October 17, 2019 RFPs. Plaintiffs were hopeful that Apple's ultimate data production would be completed by July 31, 2020, per Apple's previous representations, but that has not occurred.[3] Plaintiffs had requested a data sample from Apple for several months for the purpose of assessing the form and completeness of Apple's data. Apple first provided a sample on July 23, 2020, and later provided another much larger sample on September 6, 2020 in response to issues Plaintiffs identified with the first sample.[4]

Over Plaintiffs' objections, Apple has taken the position that it will only produce data from its transactional database once (*i.e.*, it will not supplement the production). This is especially troubling in light of the fact that Apple has refused to provide Plaintiffs with a list of all fields available in its databases. *See infra*. Plaintiffs and Apple are meeting and conferring about several issues with regard to the ultimate production of data; most recently, Plaintiffs have provided Apple with detailed feedback on the data in Apple's second sample and are awaiting responses to their questions and comments before receiving production of the full dataset.

---

[3]   In their May 27, 2020 joint Stipulation and [Proposed] Order Modifying Schedule, the Parties stated that "Defendant communicated to Consumer Plaintiffs and Developer Plaintiffs on February 10, 2020 and thereafter that it expects to substantially complete production of documents and data in July 2020 but was hoping to do so sooner, and on April 23, 2020 stated that it would substantially complete production by July 31, 2020." *See* Developer ECF No. 92 at 1. In the July 28, 2020 Joint Further Case Management Statement, Apple stated, "Apple has long been clear that it anticipates substantially completing its productions by July 31. Apple will have substantially completed its large custodial document production by that date and still anticipates that it will substantially complete data production then or shortly thereafter." *See* Developer ECF No. 99 at 5; Consumer ECF No. 216 at 5.

[4]   Apple contends that "Plaintiffs requested for the first time on July 9, 2020 that the transactional data be split into multiple relational tables for production." This is not consistent with the record of communication between the parties. Beginning in February 2020, Plaintiffs repeatedly requested that Apple more clearly specify the manner in which its data was stored, as well as the manner in which it intended to produce that data—but received no response. It was only on July 23, 2020, that Apple first produced a long-sought sample of transactional data for Plaintiffs' review, thus preventing them from sooner assessing (and objecting to) the format of production. Since that time, the parties have met and conferred extensively on this issue, which crucially affects their experts' ability to analyze the data, and appear to be nearing resolution of their disputes, although a significant number of such disputes remain.

*Apple's Statement*:

As noted, Apple communicated to Plaintiffs on February 10, 2020 that it anticipated substantially completing its productions by July 31. In the months that followed the February 10 discussion, the parties met and conferred in anticipation of an immense production of transactional data. After Apple had spent significant time and effort to identify and prepare for production many billions of records across a large number of data fields, Plaintiffs requested for the first time on July 9, 2020, that the transactional data be split into multiple relational tables for production. Apple informed Plaintiffs that this process would require significant engineering work to assemble the tables, conduct quality control, and otherwise prepare the data for production. On July 23, 2020, Apple produced to Plaintiffs a sample of 100,000 rows of transactional data in "flat" form as opposed to relational tables. On August 2, 2020, Apple provided Plaintiffs with a document, created for them, to explain the meanings of values in data fields included in the sample production.

In an email on Monday, August 10 (following a phone conversation on Friday, August 7), Plaintiffs asked Apple to make a second sample production, this time with 100 million records in relational tables. Apple agreed on August 14 to produce this second, massive sample, and did so on Sunday, September 6. On September 29, 2020, Plaintiffs sent Apple a 12-page letter asking questions about the second sample production (many of which Apple had already answered in prior correspondence) and also making over a dozen brand new requests for additional data found nowhere in their RFPs and based not on new information in Apple's sample production but on information that had apparently been accessible to Plaintiffs over the many months of meet-and-confer discussions. Apple responded to Plaintiffs' letter on October 12.

Apple is working, in light of these developing and shifting demands, to produce the enormous amount of data requested by the Plaintiffs in an efficient manner, as demonstrated by the two large sample sets produced to Plaintiffs after substantial effort. However, given the significant engineering and other resources required to gather and produce this data, it is not in any way proportional—and Apple will not agree—to go through this process again.

### i. Data fields

*Plaintiffs' Statement*:

Apple has unilaterally chosen and provided Plaintiffs with a list of proposed fields for production from its databases based on what it views as relevant to the Plaintiffs' claims. However, significant ambiguity remains as to the proposed data fields the production will contain. Plaintiffs have requested that Apple identify and describe its databases with responsive data, and produce a complete

list of all fields in those databases. Plaintiffs believe that this will better allow the Parties to identify fields *not* identified by Apple that contain relevant and responsive data. These are important matters, to ensure that data is produced in an efficient manner and so as to minimize the burden on Apple through as few productions of data as possible. Plaintiffs will continue to meet and confer with Apple accordingly.

*Apple's Statement*:

Plaintiffs have indeed requested many times that Apple provide to them information about Apple's data fields that are ***not*** relevant to any of the claims or defenses in this case. Such requests are obviously well outside the scope of permissible discovery under the Federal Rules. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .") In accordance with the Federal Rules and the long-established process of discovery in civil litigation, Apple has worked diligently to conduct a reasonable search for materials in its custody and control that are responsive to Plaintiffs' RFPs and relevant to their claims or Apple's defenses. Apple has repeatedly told Plaintiffs that it is not obligated to provide Plaintiffs with information or material not relevant to the claims and defenses at issue. *Id*.

### ii. Cost and expense data

*Plaintiffs' Statement*:

Apple has indicated that after searching, it has found no structured cost and expense databases for the App Store, *i.e.*, databases capturing or related to the costs and expenses Apple incurs or purports to incur in connection with the App Store. Instead, Apple has indicated that all such material is in the hands of custodians, rather than in a database or central file. After numerous requests from Plaintiffs, Apple's production September 20, 2020 contained a substantial amount of documents with critical cost and expense information. However, Plaintiffs have identified for Apple several types of cost and expense documents that they believe exist (or at least existed at some point) that have not been produced. Plaintiffs are waiting for Apple's response to their latest meet and confer correspondence on this critical and concerning issue. The Parties are also continuing to meet and confer regarding all locations where documents (or other media) with relevant cost and expense information may be located, including in central files and custodial files. Finally, Apple has not provided the identities of the referenced custodians to Plaintiffs, and disputes may arise as to the comprehensiveness of the custodians identified and files searched.

*Apple's Statement*:

Apple continues working to produce documents responsive to Plaintiffs' RFPs in accordance with its responses and objections to those RFPs. Apple's counsel has diligently investigated the location of cost and expense materials requested by Plaintiffs, and over the course of the meet and confer process, Apple has identified and produced additional materials in this category. Apple will continue to meet and confer with Plaintiffs on this subject.

**b.     Production of documents produced to governmental agencies**

*Plaintiffs' Statement*:

Among their requests for documents that Apple has produced (or will produce) to governmental agencies, Plaintiffs have requested documents Apple produced to the House Judiciary Committee pursuant to the Committee's September 13, 2019 letter to Apple CEO Tim Cook. The Committee's document requests are related to an investigation into competition in digital markets.[5] Apple has long indicated that it is willing to produce a limited set of documents it deems relevant to this case,[6] and it has advised that it began to produce such documents with its May 7, 2020 tranche. Plaintiffs continue to seek production of all such requested documents, including documents that Apple has produced to the European Commission as part of the Commission's recently announced investigation into Apple's practices. Apple has objected to producing any documents concerning investigations by foreign governments or regulatory bodies. As with other matters referenced in this report, if the Parties cannot resolve their differences via the meet-and-confer process, Plaintiffs will need to bring this matter to Magistrate Judge Hixson for resolution.

*Apple's Statement*:

Apple has produced to Plaintiffs documents relevant to the claims and defenses at issue in this litigation that were produced to the House Judiciary Committee pursuant to the Committee's September 13, 2019 letter. As discussed above, Apple has maintained its position that Plaintiffs are not entitled to discovery into matters that are not relevant to the claims or defenses in this litigation, including foreign transactions or foreign governments' investigations relating to those foreign transactions.

---

[5]     *See* https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/apple%20rfi%20-%20signed.pdf. The Committee released its "Majority Staff Report and Recommendations" on October 6, 2020.  *See, e.g.*,  https://int.nyt.com/data/documenttools/house-antitrust-report-on-big-tech/b2ec22cf340e1af1/full.pdf (last accessed Oct. 8, 2020).

[6]     Apple and Plaintiffs have not yet agreed as to the scope of Apple's production.

     **c.**      **Production of foreign transactional data**

*Plaintiffs' Statement*:

Plaintiffs have been for many months meeting and conferring with Apple over its refusal to produce international transactional data responsive to Developer Plaintiffs' RFP, and Consumer Plaintiffs put Apple on notice as early as April 1, 2020, that they too need the international transactions data. On July 16, 2020 Apple indicated to the Developer Plaintiffs that it will not produce data related to its foreign App Store storefronts. When Consumer Plaintiffs attempted to meet-and-confer regarding Apple's refusal to produce international transactional data, Apple indicated on August 11, 2020 that Consumer Plaintiffs had not propounded "any RFP whatsoever . . . regarding production of transactional data." Therefore, Consumer Plaintiffs served Apple on September 1, 2020 with a second set of RFPs, which included a request for documents setting forth all transactional data concerning the distribution and sale of digital products in Apple's app store, including transactional data from U.S. and foreign storefronts. Apple's response was to make several objections and to state that it would produce what it is producing in response to Developer Plaintiffs' request for production for transactional data. As Consumer Plaintiffs have explained to Apple, the international data is relevant to the profitability of the apps, and Consumer Plaintiffs have offered to narrow the request to data sufficient to show the aggregate global revenues by app by month. Consumer Plaintiffs have continued to meet-and-confer with Apple on this issue and may need to bring it before Magistrate Judge Hixson.

As for the Developers, per the above comments in Section 2.b, these plaintiffs may have reached an accommodation in principle with Apple and will continue to work with Apple on papers to present to the Court apprising it of their proposal and seeking to defer action as to these App Store foreign-storefront-related transactions specifically to a Phase 2 of these proceedings. However, if these Parties cannot come to final terms on their agreement-in-principle, or in the event the Court should decline to agree to their proposal, then this matter will remain an open dispute for these parties that they will seek to resolve voluntarily. If they cannot do so, then the Developers anticipate bringing the dispute to Magistrate Judge Hixson for resolution.

*Apple's Statement*:

As Apple informed Developer Plaintiffs over five months ago, it does not intend to produce transactional data for sales through the App Store's foreign storefronts because (1) plaintiffs' Complaint, which is limited to an alleged "U.S. market" did not plead any basis for this data; (2) the FTAIA bars recovery for sales made through foreign storefronts; and (3) producing this (irrelevant) data would exponentially increase the already significant burden on Apple. As noted, Apple and the

Developer Plaintiffs are discussing the possibility of entering into a stipulation that would defer litigation of any claims related to foreign transactions.

Almost a year after serving their first set of RFPs, on September 1, 2020, Consumer Plaintiffs served the first RFP to expressly seek foreign transactional data. Foreign transactional data is wholly irrelevant to Consumer Plaintiffs' recently amended claims, which are allegedly being pursued on behalf of a putative class of "persons in the United States" and relate to a "national" geographic market. Compl. at ¶¶ 62, 75. Apple continues to meet and confer with both sets of Plaintiffs on this subject.

### d. Discovery from non-party recipients of document request subpoenas

*Statement of all Parties*:

The Parties have served document subpoenas on various third parties, and production and meet-and-confers are ongoing. Further meet-and-confers may also be necessary, and the Parties may serve additional third-party subpoenas. Apple asked Magistrate Judge Hixson to compel Samsung Electronics America to comply with a document subpoena served by Apple, and Judge Hixson issued an order on October 9, 2020 granting Apple's motion in part and denying it in part.

### e. Document review and depositions

*Plaintiffs' Statement*:

In the past two months, Apple has produced large volumes of documents to Plaintiffs, and review is ongoing. Further, as noted above, Apple indicated that production would be substantially complete by July 31, 2020, but that did not occur; as noted above, Apple produced an additional 1.75 million pages of documents on September 20, 2020. Plaintiffs are currently exploring certain issues related to this document production (*e.g.*, the need for additional custodians[7], as broached previously with Apple, and the production of cost- and expense-related documents that are referenced and linked to, per embedded links, other documents) as well as whether these issues will need to be raised with the Court if there is indeed an impasse. Plaintiffs in particular also expect that a significant amount of data will be produced soon.

Plaintiffs intend to take depositions in these matters beginning later this year, although timing will depend in part on the completion and sufficiency of document and data production.

---

[7] By letter dated March 5, 2020, Apple refused Plaintiffs' demand for several additional named custodians, stating that, while it "remain[ed] open to discussing potential additional custodians," it would not add any unless Plaintiffs "identif[ied] some unfilled information gap in the custodians that Apple has already proposed[.]" Since that time, Plaintiffs have waiting patiently for Apple to substantially complete production—something that has yet to occur—before renewing their request. Based on their review of the production thus far, as well as the recently-completed House of Representatives' investigation into Apple's conduct, Plaintiffs have identified several "information gaps" and anticipate renewing their request for additional custodians soon.

*Apple's Statement*:

As discussed above, Apple has worked diligently to produce millions of documents and substantially completed document production by July 31, 2020. Apple is also preparing to produce many billions of records of transactional data. With regard to custodians, in the course of the Parties' meet and confer process, Apple agreed on February 21, 2020 to add an individual to its list of designated custodians in this litigation. Plaintiffs requested the addition of a number of other individuals as custodians on February 25. Apple responded on March 5, explaining why it would be inappropriate to add the individuals named by Plaintiffs as custodians in this litigation. Plaintiffs did not raise the issue of custodians again until September 14, 2020, then noting merely that they might seek additional custodians in the future. In light of Apple's substantial completion of custodial document production, adding custodians at this late date (or further into the future) would be entirely inappropriate. However, under the Court's order regarding the coordination of discovery (Consumer ECF No. 194, Developer ECF No. 80), documents that Apple produces in the related case *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640, (including from custodians relevant to that case who are not designated custodians in these class actions) will also be produced to the Consumer and Developer Plaintiffs.

Developer Plaintiffs have produced approximately 13,071 custodial documents. Meanwhile Consumer Plaintiffs have produced approximately 119 custodial documents, but their productions are not complete. During Plaintiff Edward Hayter's deposition on May 22, 2020, he stated "I didn't provide complete records." And he has made no effort to supplement his production. Apple continues its review of documents produced by Plaintiffs and continues to meet and confer with them regarding the same. Apple has taken depositions of two of named Consumer Plaintiffs, Edward Hayter and Edward Lawrence, and intends to depose more witnesses in the coming months.

**4.     SETTLEMENT AND ADR**

The Parties mediated before the Hon. Layn Phillips (U.S.D.J. Ret.) on June 30, 2020. Certain follow-up discussions have occurred. The Parties have been unable to resolve either matter thus far; however, the Parties expect to continue to engage in further settlement discussions as appropriate.

**5.     RELATED CASES**

On August 19, 2020 the Court related *Epic Games, Inc. v. Apple Inc.*, N.D. Cal. No. 20-cv-05640, to the Developer case. Developer ECF No. 107.

On October 8, 2020, a new case was filed that appears to be related to the Consumer case: *Pistacchio v. Apple Inc.*, N.D. Cal. No. 3:20-cv-0734.

| | | |
|---|---|---|
| 1 | Dated: October 12, 2020 | WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP |

Dated: October 12, 2020

WOLF HALDENSTEIN ADLER FREEMAN &
  HERZ LLP
    Mark C. Rifkin
    Rachele R. Byrd
    Matthew M. Guiney
    Brittany N. DeJong

By: */s/ Rachele R. Byrd*
    Rachele R. Byrd
    750 B Street, Suite 1820
    San Diego, CA 92101
    Telephone: 619.239.4599

*Interim Class Counsel for the Consumer Plaintiffs*

Dated: October 12, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP
    Steve W. Berman
    Robert F. Lopez
    Shana E. Scarlett
    Benjamin J. Siegel

By: */s/ Robert F. Lopez*
    Robert F. Lopez
    1301 Second Avenue, Suite 2000
    Seattle, WA 98101
    Telephone: 206.623.7292

*Interim Class Counsel for the Developer Plaintiffs*

Dated: October 12, 2020

GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus

By: */s/ Cynthia E. Richman*
    Cynthia E. Richman
    1050 Connecticut Avenue, N.W.
    Washington, DC 20036-5306
    Telephone: 202.955.8234

*Attorneys for Defendant Apple Inc.*

**ECF SIGNATURE ATTESTATION**

In accordance with Local Rule 5-1, the filer of this document hereby attests that the concurrence of the filing of this document has been obtained from the other signatories hereto.

Dated:  October 12, 2020

                                                */s/ Cynthia E. Richman*
                                                Cynthia E. Richman