# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br>     *Plaintiff, Counter-defendant,* <br> v. <br> APPLE INC., <br>     *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR-TSH |
| DONALD R. CAMERON, *et al.*, <br>     *Plaintiffs,* <br> v. <br> APPLE INC., <br>     *Defendant.* | Case No. 4:19-cv-03074-YGR-TSH <br><br> **JOINT LETTER BRIEF REGARDING VALIDATION PROTOCOL** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to the Court's Discovery Standing Order, the parties in the above-captioned actions respectfully submit this joint letter brief regarding a validation protocol to be used for the parties' ESI search efforts.

    Epic Games, Inc. ("Epic"), plaintiffs ("Class Plaintiffs", together with Epic, "Plaintiffs") in *Cameron v. Apple* and *In re Apple iPhone Antitrust Litigation* (the "Class Actions") and Apple Inc. ("Apple") (collectively, the "Parties") filed with the Court a joint statement on October 26, 2020, stating in part that the Parties continued to meet and confer regarding validation procedures to test the sufficiency and accuracy of the Parties' productions. The Parties stated that they had agreed to either reach agreement on validation procedures or submit any outstanding issues in a joint statement to the Court. The Parties subsequently agreed to extend the deadline to December 2, 2020. The Parties have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement on certain aspects of the validation procedures to be

applied and therefore submit this joint letter. Based on the Court's rulings on these issues, the Parties are prepared to meet and confer regarding a proposed order to implement the Court's rulings and the rest of the undisputed aspects of the validation procedures to be applied.

Respectfully submitted,

| CRAVATH, SWAINE & MOORE LLP | HAGENS BERMAN SOBOL SHAPIRO LLP |
|---|---|
| By: s/ Lauren A. Moskowitz<br>    Lauren A. Moskowitz<br>    *Counsel for Epic Games, Inc.* | By: s/ Robert F. Lopez<br>    Robert F. Lopez<br>    *Counsel for Developer Plaintiffs* |
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP | GIBSON DUNN & CRUTCHER LLP |
| By: s/ Rachele R. Byrd<br>    Rachele R. Byrd<br>    *Counsel for Consumer Plaintiffs* | By: s/ Ethan D. Dettmer<br>    Ethan D. Dettmer<br>    *Counsel for Apple Inc.* |

**Plaintiffs' Position:[1]**

Validation of Apple's TAR Process:[2]  The Parties have agreed to certain aspects of a protocol for validating Apple's technology assisted review ("TAR") process, but Apple refuses to exclude from its validation calculation millions of automatically generated emails and documents contained in its production.  Apple's validation protocol will estimate "recall", which is the percentage of all responsive documents that are identified by a TAR process.  This measure is easily skewed by the inclusion of a large number of ostensibly responsive but substantively irrelevant documents in a document production, which is precisely the case with Apple's productions to date.  Of the approximately 3.8 million documents that Apple has produced, 2.2 million are versions of a single automatically generated email sent from the "iTunes Content Manager", a service that appears to send brief notices when there are changes to iTunes content. These emails, even if technically responsive to Plaintiffs' document requests, are of no discernible value to litigating the claims in this case.  However, including them in Apple's validation process will render it meaningless, making it inevitable for Apple to satisfy the validation requirements overall even if its TAR process performs poorly finding *every other* kind of document in this case.  For example, under a reasonable set of assumptions, Apple could exceed overall recall of 75% even while achieving recall of just 57% across the population of responsive documents *other than* the 2.2 million iTunes Content Manager emails.  The validation protocol should include mutual provisions that exclude such bulk emails from any validation performed by Apple or Epic.

Validation of Epic's Search Term Process:  Epic has proposed a validation protocol for its use of search terms that is eminently reasonably and, indeed, goes far beyond what parties ordinarily have undertaken when using search terms, rather than TAR.

Statistical validation is both unusual and unnecessary where a party is using search terms that have been negotiated and agreed to by the parties.  With search terms, the requesting party can understand and affect the criteria being used to identify documents for review by negotiating the terms that will be applied prior to the start of a document review, an approach that has been used successfully for decades.  In this case, Epic has provided Apple with all of the terms it is running, adopted virtually all of Apple's suggestions for additional terms, and provided hit counts where Epic suggested minor modifications to avoid false hits.  Such transparency provides significant validation of a party's search terms, without the need for formal statistical

---

[1] There is an additional potential dispute with respect to Apple's collection, review, and production of instant messages that the parties are still discussing.  Although Apple has represented that it has collected and put through its TAR process instant messages from its custodians, it has produced fewer than 40 instant messages out of more than 3.8 million documents produced and the more than 12.5 million documents collected.  Epic has requested additional information from Apple.  If Apple refuses to provide the requested information or if the information provided does not satisfactorily explain the paucity of instant messages in the production, Plaintiffs promptly will raise this issue with the Court in a separate joint statement.

[2] Because of the technical nature of these disputes, Epic has retained an expert on TAR, Tobin Dietrich, who is prepared to provide a declaration in support of Plaintiffs' positions should the Court find that helpful.

measures. Indeed, Apple itself recently opposed statistical validation of its own use of search terms for this very reason. *See* Discovery Letter Brief filed by Defendant (Apple Inc.) (ECF No. 144), *Cohen v. Apple, Inc.*, No. 3:19-cv-05322-WHA (N.D. Cal. Jul. 28, 2020) (objecting to review of a "statistically random sample of documents from the null set (data that does not hit on any search term)" because "Apple has agreed to confer with Plaintiffs on any search terms used").[3]

Further, Apple's one-size-fits-all approach in the present case proceeds from the false premise that all "responsive" documents are created equal, regardless whether they are only technically responsive to a given request, or actually substantively meaningful. A TAR process by its nature is intended to identify most of the documents that are like other documents that have been coded responsive, no matter their actual significance, hence the need for numerical validation to ensure that the likelihood of capturing actually meaningful documents is sufficiently high. On the other hand, search terms selected with the participation of the requesting party have the inherent advantage of targeting what the parties have deemed the most meaningful documents in a case directly. There, the assurance of reliability arises from the search terms themselves, and there is no need for an overall "recall" calculation that penalizes a party if the selected search terms do not hit on some number of technically responsive but utterly irrelevant documents.

Nonetheless, in the spirit of compromise, Epic has offered to perform two separate statistical validation procedures on its process, so long as those measures are tailored to its search-term-based approach. Specifically, Epic proposes to review up front a sample of the universe of documents to which it is applying search terms with the goal of ensuring that the agreed search terms achieve estimated recall of at least 80%. Epic has further offered to take a random sample of the documents coded "Not Responsive" by its reviewers to determine the percentage of the documents in the sample coded "Not Responsive" that should actually have been coded "Responsive" (sometimes called the "elusion" rate)—with the goal of verifying that those erroneous coding decisions do not exceed 10%. That procedure—though unnecessary in Epic's view in light of its overall supervision and training of its document reviewers—is a reasonable check to ensure that a material number of responsive documents are not being coded nonresponsive.

Apple rejected Epic's proposed validation procedure simply because it is different from the one that Apple proposes for itself, which calculates a single recall estimate for its TAR process as a

---

[3] TAR, by contrast, is a "black box", with inputs that a requesting party has neither visibility into nor a way of affecting in any meaningful way. For this reason, "[t]o satisfy the obligation of reasonable inquiry, counsel must undertake a statistical validation of the results of the technology-assisted review, generally focusing on the resultant recall and precision." Karl Schieneman and Thomas C. Gricks III, "The Implications of Rule 26(g) on the Use of Technology-Assisted Review, 7 Fed. Cts. L. Rev. 239, 273 (2013). In the Ninth Circuit, courts similarly have held that "cases which have approved [TAR] have required an unprecedented degree of transparency and cooperation among counsel", *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-cv-00678-LRH-PAL, 2014 WL 3563467, at *10 (D. Nev. July 18, 2014)); *see also Youngevity Int'l, Corp. v. Smith*, No. 16-cv-00704-BTM-JLB, 2019 WL 1542300, at *12 (S.D. Cal. Apr. 9, 2019) (same).

whole.  Apple contends that Epic's proposal fails to satisfy the "reasonable inquiry" requirement of Rule 26(g), but it does not cite (nor is Epic counsel aware of) a single case in which a party has been compelled to calculate an overall recall like the one Apple urges for a search-term-based review.  In fact, in one of the cases cited by Apple, *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637, 2018 WL 1146371 (N.D. Ill. Jan. 3, 2018), the court specifically ordered statistical validation of the "null set" with respect to TAR, but exempted search terms from that same statistical validation.  *Id.* at *4-5.  Further, Apple offers no support for its suggestion that a validation sample must be assessed "blindly" or that the attorney conducting the validation cannot be presumed to abide by his or her ethical obligations—a cornerstone of discovery practice.  Finally, even assuming *arguendo* that a single recall estimate could be better than the two-step method proposed by Epic, any such theoretical advantage is negated by Apple's insistence that it be permitted to count versions of the same immaterial email 2.2 million times in its calculation of recall.

In any event, contrary to Apple's representation that Epic has sought to hold Apple to a different standard, Epic offered that Apple could adopt the same approach as Epic provided that both parties agree to exempt "bulk" documents from validation, for the reasons stated above.  Apple rejected that proposal.  Regardless, Epic should be permitted to employ the reasonable validation protocol it has proposed for its own review.

**Apple's Position:**  Apple has proposed a reasonable validation protocol to give all parties comfort that each party's document productions have met a common standard for "production recall"— *i.e.*, the percentage of responsive documents in a document collection that are either produced or responsive but withheld as privileged.  Apple proposes a blind review of random samples from each party's collections, to show that each party has met a 75% recall standard.  Epic's proposal for an "elusion" check would not test how many responsive documents are produced or withheld as privileged and would not hold the parties to any production recall standard.  Rather, Epic's proposal would only check, with respect to reviewers' coding, how many responsive documents were incorrectly coded as non-responsive.  Accordingly, as long as Epic's search terms hit on enough non-responsive documents, Epic can easily pass the elusion test and still be well under the 75% recall rate.  Apple proposes that all parties be held to the same recall standard.[4]

Additionally, Epic demands that Apple exclude from validation certain responsive documents because they are similar to other responsive documents.  There is no basis for this position.  The goal of validation is to ensure that a percentage of responsive documents are produced—excluding responsive documents from validation would be inappropriate and counterproductive.

**First Principles:**  Federal Rules 26(g) and 34 obligate parties to conduct a reasonable inquiry into the existence of documents responsive to requests for production and to produce responsive, nonprivileged materials located.  The purpose of document review—using keywords, TAR, human reviewers, or a combination of them—is to meet that obligation.  Validation tests the success of a review process, and courts have found a recall rate around 75% to be a reasonable standard of success.  *E.g.*, *In re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371, at *2, 6 (N.D. Ill. Jan. 3, 2018) ("[A] recall estimate on the order of 70% to 80% is consistent with . . . an adequate (i.e., high-quality) review"; not addressing search term efficacy where parties agreed to a robust "iterative process" of negotiating further revisions to keywords after productions had begun).

Validation should apply equally to all parties whether using TAR or search terms because the question is the same:  how many responsive documents are being produced?  *See*, *e.g.*, *In re Mercedes-Benz Emissions Litigation*, 2020 WL 103975, at *2 (D.N.J. Jan. 9, 2020) ("[C]ase law dictates that appropriate validation be utilized to test search results," including where a party "prefer[s] to use the custodian-and-search term approach" rather than TAR.); *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("[W]here counsel are using keyword searches for retrieval of ESI, . . . the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives'").

**Apple's Validation Proposal:**  Apple proposed language for robust validation that would apply to all parties, whether they utilize search terms or TAR or other methods.  *See* Ex. 1 at 2-4.  Under Apple's proposal, each party would take samples of documents marked responsive, documents

---

[4] Epic posed many questions to Apple about its document review process.  In a spirit of cooperation, Apple responded to these questions, though *all* were disfavored "discovery on discovery" contrary to Sedona Principle 6.  Sedona Principles, 3d Ed., 19 Sedona Conf. J. 52 (2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.").  Apple even allowed Plaintiffs' consultants to question Apple's outside TAR expert, who explained why Plaintiffs' positions regarding Apple's process are wrong.  Apple's outside TAR expert would provide a declaration addressing these issues if helpful to the Court.

4

marked non-responsive, and any documents not reviewed; those samples would be subject to blind review by a subject matter expert to establish recall—the percentage of the responsive documents that are produced or withheld as privileged. Setting production recall at 75% would validate for all parties both (1) the extent to which responsive documents from the collections are brought into the reviewed populations, and (2) the extent to which they are accurately coded as responsive.[5]

This proposal is fundamentally fair to all parties. But Epic rejected it, reasoning that Epic would have to meet levels of search term efficacy and reviewer accuracy that are "just too high," while at the same time acknowledging the mathematical fact that the level Epic would be held to is the same 75% recall that Apple proposed for itself.[6] Epic says it would be appropriate to hold Apple to a higher standard while Epic is held to a lesser standard because Epic is using search terms. But a party's use of search terms does not reduce its obligation to produce responsive documents. Indeed, such a distinction between validation of search terms and TAR is illogical, fundamentally unfair, and at odds with the case law. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) ("One point must be stressed—it is inappropriate to hold TAR to a higher standard than keywords or manual review. Doing so discourages parties from using TAR for fear of spending more in motion practice than the savings from using TAR for review."). And the fact that Apple's counsel, who know next to nothing about Epic's documents, had some input on Epic's search terms in no way justifies lowering the bar for Epic's production of responsive documents. The Court should order that any validation protocol apply equally to all the parties.

**Epic's Validation Proposal:** Epic proposes that the parties not conduct a full production recall validation but instead conduct only an "elusion" analysis that tests documents that each party's reviewers coded as non-responsive. Apple does not object to Epic's proposal of validating in two stages, but Epic's elusion approach should be rejected: "low Elusion value has commonly been advanced as evidence of an effective search or review effort, but that can be misleading because it quantifies only those Relevant Documents that have been missed by the search or review effort; it does not quantify the Relevant Documents found by the search or review effort (i.e., Recall)." Maura R. Grossman and Gordon V. Cormack, The Grossman-Cormack Glossary of Technology-Assisted Review, 7 Fed. Cts. L. Rev. 1, 15 (2013) (citation omitted). Epic's elusion check would only test whether 10% or more of documents coded non-responsive should have been coded responsive. So even if Epic's search terms effectively bring responsive documents into the review set, if they also bring in enough non-responsive documents, then Epic can easily pass the elusion test even with a large number of responsive documents wrongly coded as non-responsive and wrongly withheld. The elusion test would not hold Epic to the 75% recall standard, and would not ensure the reasonable inquiry required by Rule 26(g).

Additionally, Epic's proposal introduces bias that precludes a blind validation check. The reason is that, in Epic's elusion check, it is *always* helpful to code a document as non-responsive; the validating party's score is only worsened if it codes a document as responsive. The incentive is to

---

[5] The parties continue to discuss what validation is apt for class plaintiffs' smaller productions.

[6] Epic cites *Cohen v. Apple*, 19-cv-05322-WHA (N.D. Cal. Jul. 28, 2020), Dkt. 144, where Apple opposed "one-sided burdens" in a validation protocol urged by consumer class plaintiffs. But Epic is a large, sophisticated party; if Apple must validate production of 75% of responsive documents, so should Epic.

5

always code non-responsive; by contrast, under Apple's proposal, the incentive is to code correctly because the validator will not know what coding on any document would result in higher recall.

**Responsive Documents Should Be Included:** Epic proposes that validation calculations exclude large sets of automatically generated documents. This proposal appears based on Apple's production in the Class Actions of about 2.2 million reports generated as part of Apple's App Review process—evidencing robust efforts to ensure that apps in the App Store meet high quality and safety standards, thus helping to show the value of App Review to developers and consumers.

Epic's gamesmanship and attempt to relitigate Apple's class action production ignore that these reports are relevant and responsive, and ignores the central goal of validation: measuring the percentage of responsive documents produced or withheld as privileged. It is not appropriate to exclude responsive documents because they are similar to other responsive documents, or because a receiving party does not view them as responsive *enough*. Apple has produced approximately 3.8 million documents from 15 custodians, and will produce more in the *Epic* case, including from additional custodians. (Meanwhile, Epic says it will produce less than a million documents in total.) Apple reviewed millions of documents for responsiveness—all but a sliver of them with eyes-on review—and produced pursuant to its obligation to produce responsive documents. The standard for validating satisfaction of that obligation should not move because Plaintiffs do not think these documents are responsive enough. Finally, Epic's characterization of the effect of these documents on the review and validation protocol is simply inaccurate, as Apple's expert has explained to Plaintiffs and their consultants.

**Request:** Apple asks that all parties be subject to one recall standard on all responsive documents.

Dated: December 2, 2020            CRAVATH, SWAINE & MOORE LLP
    Christine Varney
    Katherine B. Forrest
    Gary A. Bornstein
    Yonatan Even
    Lauren A. Moskowitz
    M. Brent Byars

Respectfully submitted,

By:    *s/ Lauren A. Moskowitz*_____
    Lauren A. Moskowitz
    *Attorneys for Plaintiff Epic Games, Inc.*

Dated: December 2, 2020

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
    Mark C. Rifkin
    Rachele R. Byrd
    Matthew M. Guiney
    Brittany N. DeJong

Respectfully submitted,

By:    *s/ Rachele R. Byrd*_____
    Rachele R. Byrd
    *Interim Class Counsel for Consumer Plaintiffs*

Dated: December 2, 2020            HAGENS BERMAN SOBOL SHAPIRO LLP
    Steve W. Berman
    Robert F. Lopez
    Shana E. Scarlett
    Benjamin J. Siegel

Respectfully submitted,

By:    *s/ Robert F. Lopez*_____
    Robert F. Lopez
    *Interim Class Counsel for Developer Plaintiffs*

Dated: December 2, 2020    GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus
    Harry Phillips

Respectfully submitted,

By:    *s/ Ethan D. Dettmer*
    Ethan D. Dettmer
    *Attorneys for Defendant Apple Inc.*

**E-FILING ATTESTATION**

I, Rachele R. Byrd, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*s/ Rachele R. Byrd*
Rachele R. Byrd
