United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 11-cv-06714-YGR (TSH) <br><br> **DISCOVERY ORDER** <br><br> Re: Dkt. Nos. 269, 270, 271, 295, 298 |
| DONALD R. CAMERON, et al., <br><br>      Plaintiffs, <br><br>    v. <br><br>APPLE INC., et al., <br><br>      Defendants. | Case No. 19-cv-03074-YGR (TSH) <br><br> Re: Dkt. Nos. 145, 146, 147, 173, 177 |
| EPIC GAMES, INC., <br><br>      Plaintiff and Counter-defendant <br><br>    v. <br><br>APPLE INC., <br><br>      Defendant and Counterclaimant. | Case No. 20-cv-5640-YGR (TSH) <br><br> Re: Dkt. Nos. 170, 173 |

The parties to these related actions have raised a number of discovery disputes. The Court held a hearing on them on December 15, 2020, and now issues the following order.

A.  **Consumer Plaintiffs' Requests for Production 33-34, 36-41, 44, 47-48, 50-53 (11-6714 ECF No. 269; 19-3074 ECF No. 145)**

RFPs 33-34, 36-38, 44.  For these RFPs, Apple states that it "has produced, or will produce, non-privileged documents responsive to" these RFPs.  ECF No. 269,[1] Ex. E.  This response is satisfactory.  Apple is not obligated to do a new search each time it is served with new RFPs, as long as its prior search, collection and review efforts resulted in the production of documents responsive to the new RFPs.

RFPs 39-41, 50.  For these RFPs, Apple states that "its productions to date have included non-privileged documents responsive to these RFPs."  ECF No. 269, Ex. E.  As written, this sounded like Apple was making a production of only some portion of the responsive documents.  However, at the hearing, Apple clarified that it has produced, or will produce, non-privileged documents responsive to these RFPs.  That response is sufficient.

RFP 47.  This RFP presents a tricky issue in these related cases.  The Consumer Plaintiffs move to compel Apple to produce transactional data related to app sales from foreign App Store storefronts.  They narrow their request to include only aggregate global revenues by month for each app available to U.S. consumers, including revenues from foreign transactions.  In other words, the Consumer Plaintiffs are not requesting revenues for apps that are sold only through a foreign storefront.  They argue that this global revenue is highly relevant because it relates to the profitability of apps and the effect Apple's monopoly has on developers' willingness and/or ability to create apps.

This RFP is tricky because this revenue information seems to be relevant to the Developer Plaintiffs' claims, which do indeed focus on the impact of Apple's policies on developers, but the Court has a hard time understanding its relevance to the Consumer Plaintiffs' claims.  The Consumer Plaintiffs allege a *Kodak*-style aftermarket, asserting that once consumers purchase expensive iPhones, they are "locked in" to the iPhone app aftermarket due to the high price tag of the phone and large switching costs, ECF No. 111 ¶¶ 65, 66, enabling Apple to charge supracompetitive prices in the aftermarket for app sales.  *Id*. ¶ 45.  The proposed class of "All

---

[1] ECF citations in this order are to 11-cv-6714 unless otherwise indicated.

persons in the United States" (*id*. ¶ 54) does not include foreign purchasers, and app sales outside of the United States are not part of the alleged "national" aftermarket. *Id*. ¶ 67.

Normally when cases are related, the Court would not spend time scrutinizing which discovery is relevant to which related case because it doesn't matter. But here is the thing: This motion to compel was brought by both the Consumer and Developer Plaintiffs *except* that for RFP 47, the Developer Plaintiffs specifically disclaim moving to compel. ECF No. 269 at 2 n.3 ("While the Developer Plaintiffs' position is that such data is relevant and responsive to their RFPs, they do not join in Consumers' request to compel at this time, in part because they are working with Apple on a voluntary accommodation regarding certain foreign distribution transactions."). Proceeding with this motion to compel by Plaintiffs who seem to have no standing to request this information, while the Plaintiffs that do seem to have standing are trying to work out a voluntary accommodation, would discourage cooperation and encourage discovery fights, which is inconsistent with the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Proc. 1. The divergent paths taken by the Consumer and Developer Plaintiffs for this RFP are also in tension with the Coordination Order. *See* ECF No. 194 ¶ 1 ("Plaintiffs shall coordinate discovery efforts to minimize expenses and facilitate the orderly and efficient progress of the Related App Store Actions. Consumer Plaintiffs and Developer Plaintiffs shall consult in good faith and engage in reasonable efforts to coordinate discovery and jointly resolve any disputes concerning discovery they are seeking so as to avoid duplication and unnecessary burden.").

However, at the hearing, the Consumer Plaintiffs argued that this information is in fact relevant to their claims and that it is important for their showing of classwide injury in their class certification motion. They requested an opportunity to submit an expert declaration to demonstrate the relevance of this information to their claims. The Court is amenable to that approach. As discussed at the hearing, the parties shall file a joint discovery letter brief by January 6, 2021 discussing the Consumer Plaintiffs' expert declaration (and any competing declaration submitted by Apple). The Court will hold a hearing on this issue at 9:00 a.m. on January 8, 2021.

1   RFP 48.  This dispute is not ripe for review.  The Court orders Apple to investigate further
2   and orders the parties to meet and confer further.  In the event this dispute comes back to the
3   Court, Plaintiffs must explain why this information is relevant in an argument that is more
4   developed than one conclusory sentence.

5   RFPs 51-52.  Plaintiffs seek documents or data that Apple provided to Analysis Group in
6   connection with two public reports it published in July 2020 (entitled, "Apple's App Store and
7   Other Digital Marketplaces: A Comparison of Commission Rates" and "How Large is the Apple
8   App Store Ecosystem?"), as well as all communications between Apple and Analysis Group
9   concerning these reports.  This information is clearly relevant, and Apple does not disagree.
10  Apple states that Analysis Group is an expert consultant in this litigation and that the reports were
11  cited in the *Epic Games* preliminary injunction briefing.  Apple therefore claims the
12  communications with Analysis Group (as opposed to the documents or data) are attorney work
13  product.

14  The problem here is that Apple has hired the same company to do two very different
15  things:  publish reports favorable to Apple in what seems like a public relations effort, and serve
16  as expert consultants in litigation.  Apple has also hired the same people (attorneys at Gibson
17  Dunn) to work with Analysis Group for both efforts.  Retaining the same expert for different
18  purposes does not cause work product protection to become a giant blanket that covers everything.
19  And citing a publicly available document in a brief does not magically bestow work product
20  protection on the document's creation.  Apple's invocation of work product over all of its
21  communications with Analysis Group threatens an inappropriate expansion of the work product
22  doctrine.  For example, emails from Gibson Dunn with drafting suggestions for the reports could
23  very well have no attorney work product in them if the edits are unrelated to litigation preparation.
24  Since the reports themselves were not expert reports under Rule 26, it is not reasonable to assume
25  that every communication about them was work product.

26  The Court orders Apple to produce the documents and data it provided Analysis Group in
27  connection with these two reports, since Apple does not claim work product is implicated by
28  those.  As for communications between Apple and Analysis Group concerning these reports, the

4

1  Court orders Apple to produce non-work product communications about the reports. The Court
2  also orders Apple to log any communications with Analysis Group about these reports over which
3  it claims work product protection. Ordinarily, litigants do not log communications with their
4  litigation experts, but the Court believes a log is appropriate here because of the dual roles
5  Analysis Group performed and because Apple's blanket argument that all of these
6  communications contain work product is so difficult to believe. The logging requirement expires
7  on the date these public reports were published because after that date we may infer that Analysis
8  Group wasn't working on the reports anymore. Its communications with Apple after that date,
9  even if they discuss the reports, are so likely to be in anticipation of litigation that logging them is
10  not a worthwhile endeavor.

11  <u>RFP 53.</u>  This RFP seeks documents concerning Apple's decision to change its app review procedure related to bug fixes that it announced on August 31, 2020. These documents are relevant to Apple's business justification defense that subjecting all iPhone apps to Apple's review is important to ensure quality and security. The Court orders Apple to produce responsive documents. The Court does not order Apple to do a new search for responsive documents if it has already collected them in a previous search.

**B.    Apple's Production of Cost and Expense Documents and Data (11-6714 ECF No. 270; 19-3074 ECF No. 146)**

<u>Hyperlinked documents.</u>  The issue here is that when Apple employees email each other documents, they are often not sent as attachments to the emails. Rather, the emails contain a link to either a cloud-based storage system or some other file transfer system. The link allows the sender to securely transmit a file as it then existed via a link that is often live for a limited period of time. The file itself could later be edited, renamed, and so on. What this means is that when Apple collected its custodians' emails for discovery, there was no parent-child relationship between an email and the document that was hyperlinked. Apple says that when it did custodial document collections, it collected from all the places where each custodian kept documents, and Apple represented at the hearing that this included all the locations where the hyperlinked documents would have been. To be clear, Apple's search was not hyperlinked-based, meaning it

5

1  did not examine each link and go look in each file transfer system to find things.  Rather, Apple
2  searched the custodial locations, including cloud locations, from which the custodians could have
3  taken the documents to put in the file transfer system.  Apple maintains that this method should
4  have collected all the hyperlinked documents (unless they were not retained by the custodian, but
5  Apple says it is not aware of any non-retention), subject to the caveat that they could have been
6  revised or altered by the custodian.

7  The issue, from Apple's perspective, is that when Plaintiffs point to a custodian's email
8  that has a hyperlinked document and demand that Apple produce that document, it is time-
9  consuming and somewhat uncertain for Apple to identify that document in the custodian's
10 documents.  Apple sometimes has to interview the custodian, and even then it may not be clear if
11 the document that got produced is exactly the same as the one that was hyperlinked because, for
12 example, it may be a different version of a document with the same name.

13 Plaintiffs are skeptical that Apple has in fact produced the custodial documents.  However,
14 there is a bit of a chicken-and-egg problem here:  Plaintiffs see emails with hyperlinks, they can't
15 find linked documents, so it looks like Apple hasn't produced them, so they ask Apple for them,
16 and then Apple takes a while to identify the likely candidates.  While Apple has done this for a
17 limited number of emails, Plaintiffs are staring at a large email production where this hyperlink
18 problem seems to be everywhere.

19 The Court finds that Plaintiffs have not established that any custodial documents are
20 actually missing.  The Court also finds that the burden on Apple to go through its entire document
21 production and for each email to try to identify what all of the hyperlinked documents were would
22 be overwhelming, as well as impossible for documents that were revised after the hyperlink was
23 sent.  However, the Court is not going to let Apple off the hook completely because Apple is in a
24 far better position than Plaintiffs to try to line up emails with hyperlinked documents.  For
25 example, Apple can interview the custodian.  Accordingly, the Court orders Apple, in response to
26 requests by Plaintiffs directed at particular emails, to do its best to identify the hyperlinked
27 documents for a reasonable number of emails.

28 RFP 72.  The Court orders Apple to produce the data used to generate App Store-specific

1  profit and loss and gross margin information, and documents (if any exist) that show the
2  methodology by which such information was generated, including any apportionment and/or
3  allocation methods.  This information is relevant.  Apple argues that it does not have App Store-
4  specific profit and loss and gross margin information.  That would have been a more persuasive
5  argument had Plaintiffs not attached to the letter brief an App Store-specific P&L calculation that
6  included gross margin (APL_APPSTORE_08883286).  Apple argues that this particular P&L was
7  an estimate and that Apple in the normal course doesn't formally prepare P&L calculations that
8  are specific to the App Store.  However, that does not absolve Apple of the obligation to produce
9  relevant information that it does have.  This P&L calculation is App Store-specific, and it was
10 used in business planning.  There was a method by which this was put together, and there was data
11 someone used to do it.  Plaintiffs are entitled to that same data so they can also estimate P&L
12 information.  Whatever data was used to come up with this real-life P&L calculation, the Court
13 orders Apple to produce that same type of data for the relevant time period.  If there are
14 documents that show the methodology behind this P&L calculation, Apple must produce those
15 too.

16 <u>Motion to Seal.</u>  The motion to seal is granted in part and denied in part.  Apple's proposed
17 redactions (*see* ECF Nos. 273 & 274) are acceptable.  Since Apple has already filed a public
18 version with these redactions implemented (ECF No. 273-2), no further action is required.  (In
19 other words, Apple has already complied with Civil Local Rule 79-5(f)(3).)

20 **C.    Apple's Production of Transactional Data (11-6714 ECF No. 271; 19-3074 ECF No. 147)**

21 <u>Proceeds_reason field.</u>  The Court orders Apple to include the Proceeds_reason field in its
22 upcoming production of transactional data.  There are occasions when Apple charges a 15%
23 commission (instead of 30%) for reasons other than that a developer had a subscription for over
24 one year, and without this field all of those instances would be missing from the transactional data
25 production.  (Note that even though the field is entitled "Proceeds_reason," it doesn't give a
26 *reason* for the 15% commission.  The field is either blank (indicating a 30% commission was
27 charged) or has a value stating a different commission amount.)
28

Transactional data. With the above addition, Apple must now produce the transactional data. The parties discussed the anticipated time frame for this production at the hearing. Apple has argued that it should only have to make this production once because it is so burdensome. The Court is sympathetic to Apple on that point. If Plaintiffs wait until after this production takes place to raise new arguments about other fields that should have been included, they will face a high burden in attempting to get an order requiring Apple to do this again.

Consumer Plaintiffs' RFPs 45 and 46. It became clear at the hearing that this dispute is not ripe. The Court orders Apple to promptly investigate these databases further and to promptly meet and confer with Plaintiffs.

Motion to seal. The motion to seal is granted in part and denied in part. Apple's proposed redactions (*see* ECF Nos. 275 & 276) are acceptable. Since Apple has already filed a public version with these redactions implemented (ECF No. 275-2), no further action is required.

**D.     Additional Apple Custodians (11-6714 ECF No. 298; 19-3074 ECF No. 177; 20-5640 ECF No. 173)**

Tim Cook. Apple has agreed to make Cook a document custodian on the condition that Plaintiffs limit their deposition of him to four hours. The only issue in dispute between the parties is whether this condition is appropriate. The Court finds that it is not. Plaintiffs cannot meaningfully assess how long this deposition should be until they see Cook's documents. The Court orders Apple to make Cook a document custodian. The length of his deposition can be addressed later.

Craig Federighi. Plaintiffs want Apple to make Craig Federighi a document custodian. Apple has refused and has offered Eric Neuenschwander instead. Thus, the dispute is not over how many document custodians there should be, but which of these two people should fill this slot.

Federighi is in charge of engineering for all iOS. Neuenschwander is his subordinate and reports to him. In meet and confer, Apple stated that Neuenschwander is in charge of the App Store. In the letter brief Apple states somewhat differently that Neuenschwander oversees privacy across Apple's platforms and also asserts that he oversees a broad spectrum of security issues.

Plaintiffs want Federighi's documents because he is in charge of iOS. Plaintiffs observe that at a high level, Apple's business justification defense is about the benefits of the integrated Apple ecosystem, in which the hardware, operating system, App Store and apps are a closed system that Apple says is more secure, protective of privacy, and results in higher quality. They want Federighi's documents precisely because he is higher up and, they believe, better able to speak to the reasons for Apple's closed, integrated ecosystem. They also quote some documents that tend to show that Federighi is more of a decisionmaker than Neuenschwander is, which seems inevitably true since he is his boss.

Apple cites the default presumption that the party responding to discovery ordinarily has the responsibility and entitlement to choose document custodians. In practice this is really more of an obligation than a prerogative because the responding party has to live up to its discovery obligations, and most of the time the requesting party would have no idea who the relevant custodians should be. Beyond that, Apple does not have much to say about why Neuenschwander should be the custodian, other than to assure us that it has considered the issue and thinks it should be him. Apple also argues Federighi's documents are likely to contain particularly sensitive business information, requiring more extensive individual review, which would further burden Apple. However, that last argument also tends to suggest that Plaintiffs are right to want Federighi's documents.

The Court rules for Plaintiffs and orders Apple to make Federighi a document custodian instead of Neuenschwander. First, Plaintiffs have shown that Federighi is a higher-level decisionmaker whose documents are more likely to go to the heart of Apple's business justification defense. Second, if Plaintiffs have guessed wrong, and Federighi's documents are not as relevant as Neuenschwander's are, that hurts Plaintiffs. Assuming the requests are relevant and proportional, it is up to Plaintiffs to decide what discovery they want to take to prove their claims, and if they make bad choices, that's their problem.

<u>Motion to seal.</u>  The motion to seal is granted in part and denied in part. Apple's proposed redactions (*see* ECF Nos. 305 & 306) are acceptable. Since Apple has already filed public versions with these redactions implemented (ECF Nos. 305-2 to 305-5), no further action is

required.

**IT IS SO ORDERED.**

Dated: December 16, 2020

_____
THOMAS S. HIXSON
United States Magistrate Judge