UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE iPHONE ANTITRUST LITIGATION | Case No. 11-cv-06714-YGR (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 352 |

We're here again on the Consumer Plaintiffs' motion to compel concerning their request for production ("RFP") 47. This is the one that, as narrowed, requested aggregated global revenues by month for each app available to U.S. customers, including revenues from foreign transactions. The Consumer Plaintiffs previously argued that global revenue is relevant because it relates to the profitability of being an app developer for Apple. The idea is that if app developers can make a lot of money developing apps for the Apple App Store, that will incentivize more of them to develop new apps or improve upon existing ones, benefiting consumers. By contrast, if developers do not make much money selling apps through Apple's App Store, then they have less incentive to develop or improve content that is available through Apple's App Store. The Consumer Plaintiffs argue that when developers decide whether to develop or improve an app that will be available through Apple's app store, they presumably care about all the revenue they would get from the app, not just the domestic revenue.

Last time the Court saw two problems with this motion to compel. *See* ECF No. 317. The first was that this theory of relevance does not have a clear relationship with the injuries to consumers or competition that are the basis for the Consumer Plaintiffs' case. Unlike the Developer Plaintiffs' claims in the related 19-3074 action, the Consumer Plaintiffs allege a *Kodak-*

1    style aftermarket monopoly.  ECF No. 228, Ex. A ¶¶ 73, 76-77, 53.  Their theory is that iOS

2    devices are expensive, and this expense locks customers into the aftermarket for iOS applications

3    because switching costs (i.e., losing out on the money the customer paid for an iPhone, plus

4    spending more money to buy an Android phone) are high.  *Id.* ¶ 73.  The injury to customers from

5    Apple's alleged monopoly in the app distribution aftermarket is that they can't buy apps from

6    cheaper sources than Apple, such as directly from the developer.  *Id.* ¶ 53.  In addition, the fact

7    that Apple is the only game in town for getting apps reduces the supply of new apps because there

8    aren't any stores other than Apple's.  *Id.*  By contrast, discovery into how much money developers

9    can earn through Apple's App Store – the discovery the Consumer Plaintiffs want to take here –

10   seems to relate to developers' willingness to make new or improved content available through

11   Apple's App Store.  But at least as pleaded in the operative complaint, this lawsuit seems to be

12   about consumers who want to buy cheaper apps, or more apps, from somewhere other than

13   Apple's App Store.

14            And that brings us to the other problem the Court had with this motion.  The Developer

15   Plaintiffs in 19-3074 are pursuing an antitrust theory that does indeed focus on the impact of

16   Apple's policies on developers' willingness to supply content for Apple's App Store.  The

17   Developer Plaintiffs allege that Apple's commissions are a disincentive for developers to provide

18   that content.  They also allege that Apple's monopoly on app distribution makes it hard for

19   customers to find desired apps in the App Store, further disincentivizing developers to provide

20   quality apps to Apple's App Store.  19-3074 ECF No. 53 ¶ 65; *see also id.* ¶¶ 4, 5.  Thus, the

21   Developer Plaintiffs allege injuries to competition in what is delivered through Apple's App Store.

22   This is the very theory of relevance the Consumer Plaintiffs rely on in their motion to compel.

23   Yet, the Developer Plaintiffs have not joined in this motion to compel but are instead working

24   cooperatively with Apple on a voluntary accommodation.

25            The Court observed that "Proceeding with this motion to compel by Plaintiffs who seem to

26   have no standing to request this information, while the Plaintiffs that do seem to have standing are

27   trying to work out a voluntary accommodation, would discourage cooperation and encourage

28   discovery fights, which is inconsistent with the 'just, speedy, and inexpensive determination of

2

every action and proceeding.' Fed. R. Civ. Proc. 1." ECF No. 317 at 3. The Court also observed that "[t]he divergent paths taken by the Consumer and Developer Plaintiffs for this RFP are also in tension with the Coordination Order. *See* ECF No. 194 ¶ 1 ('Plaintiffs shall coordinate discovery efforts to minimize expenses and facilitate the orderly and efficient progress of the Related App Store Actions. Consumer Plaintiffs and Developer Plaintiffs shall consult in good faith and engage in reasonable efforts to coordinate discovery and jointly resolve any disputes concerning discovery they are seeking so as to avoid duplication and unnecessary burden.')." *Id*.

Nonetheless, the Consumer Plaintiffs argued that this information was important for their showing of classwide injury in their upcoming motion for class certification. So, the Court gave them an opportunity to submit an expert declaration to demonstrate the relevance of this information to their claims. The Consumer Plaintiffs have now done this in the joint filing at ECF No. 352, and this filing does not change the Court's mind.

The five-paragraph expert declaration makes the basic economic argument that Apple's commission likely results in higher prices for customers who buy apps on Apple's App Store and probably also reduces output by reducing incentives for developers to make new or higher quality apps for the App Store. However, the Court understood that already.

The Consumer Plaintiffs' section of the joint letter brief makes no mention of their pleaded theories of antitrust injury and simply presents argument as if they were the Developer Plaintiffs. However, the theory of consumer injury alleged in their operative complaint is the inability to buy cheaper and more apps from places *other than* Apple's App Store. The effect of Apple's policies on the supply and quality of what is sold through the App Store is what the Developer Plaintiffs are suing over (among other things).

At oral argument, the Consumer Plaintiffs agreed that the injury to consumers and competition they allege is the lack of alternatives to Apple's App Store. They also agreed that the discovery they are seeking in RFP 47 is really directed to the supply and quality of what is available within Apple's App Store. However, they argued that the result of there being no alternatives to Apple's store is that consumers are stuck with whatever is available in that store, and so discovery into what that consists of is relevant in that sense. That is an attenuated theory of

3

relevance, and the Consumer Plaintiffs do not dispute that this discovery is more central to the Developer Plaintiffs' claims.

And those plaintiffs are trying to work cooperatively with Apple on a voluntary accommodation instead of moving to compel this type of information. The parties' joint filing confirms that this remains true. ECF No. 352 at 1 n.1 ("The Developer Plaintiffs are still requesting that Apple produce this data, but they and Apple agreed to defer the issue.").

Allowing the Consumer Plaintiffs to pursue this discovery while the Developer Plaintiffs – for whom it is more relevant and important – work cooperatively with Apple would be a poor exercise of judicial discretion for the reasons the Court previously explained. What the Consumer Plaintiffs are doing in pressing this issue now is pretty much the opposite of what Judge Gonzalez Rogers told them to do in the Coordination Order. Further, since the requested discovery has at most an attenuated relationship to the injuries to consumers or competition alleged by the Consumer Plaintiffs, they have also not made the case that they need this information for their class certification motion. Their motion to compel RFP 47 is therefore denied.

**IT IS SO ORDERED.**

Dated: January 8, 2021

THOMAS S. HIXSON
United States Magistrate Judge

4