UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 11-cv-06714-YGR (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 413 |
| DONALD R. CAMERON, et al.,<br>      Plaintiffs,<br>      v.<br>APPLE INC.,<br>      Defendant. | Case No. 19-cv-03074-YGR (TSH)<br><br>Re: Dkt. No. 292 |
| EPIC GAMES, INC.,<br>      Plaintiff and Counter-defendant,<br>      v.<br>APPLE INC.,<br>      Defendant and Counterclaimant. | Case No. 20-cv-05640-YGR (TSH)<br><br>Re: Dkt. No. 346 |

    Valve is a privately held company that develops PC video games. It does not make or sell phones, tablets, or video games for mobile devices. Valve also operates Steam, an online platform that lets users purchase and play PC games on their laptops and desktops. Steam users cannot buy

or use mobile apps on Steam.  More than 30,000 PC games are available on Steam, more than 99% of which were made by third parties other than Valve.  One commentator has described Steam as "an iOS App Store-like marketplace for PC games."  *See* Nick Statt, *Epic vs. Steam: The Console War Reimagined on the PC*, The Verge (Apr. 16, 2019), https://bit.ly/3oM9uhT.  According to the same article, Valve charges a 30% commission on all sales.  *See id*.  Most of those games can also be bought elsewhere, including directly from developers, from brick and mortar retail, or on other PC game platforms.

Apple served a document subpoena on Valve and is now moving to compel on three points.  First, it moves to compel on RFP 2.  Second, it moves to compel on RFP 32.  Third, Apple states that Valve made such substantial redactions to volume 5 of its document production that most of the potentially responsive information was redacted out, and Apple requests that Valve be ordered to remove the redactions.  Valve briefs all three issues together, arguing that the requested information is irrelevant, that collecting it is burdensome, and that Apple has not shown a substantial need for this information.  The Court held a hearing this morning, and now issues this order.

RFP 2 asks for documents sufficient to show since 2008 Valve's (a) total yearly sales from apps and in-app purchases from Steam, (b) annual advertising revenue attributable to Steam, (c) annual sales of external products attributable to Steam, (d) annual revenues from Steam, and (e) annual earnings, income or profits from Steam.  Apple asks for this information by app if that is available.  During meet and confer Apple limited the relevant time period to 2015 to the present.  RFP 32 asks for documents sufficient to show, for each month since 2010 for each app published on Steam, (a) the name of the app, (b) the date range when the app was available on Steam, and (c) the price of the app and any in-app product associated with the app on Steam.  During meet and confer, Apple limited this request to 436 specific apps that are available on both Steam and the Epic Games Store and limited the date range to 2015 to the present.

The information Apple seeks is relevant and proportional to these three related actions.  First, the aggregate financial information sought by RFP 2 is relevant to market definition, which is a major issue in dispute in this litigation.  As Judge Gonzalez Rogers explained in her

preliminary injunction order in the *Epic Games* case, Plaintiffs are pushing for a narrowly defined market that consists only of apps distributed on the iOS platform, whereas Apple is pushing for a broadly defined video game market that includes distribution on other platforms, including the Microsoft Xbox, Sony PlayStation 4, Nintendo Switch, computer platforms (Microsoft Windows PCs, macOS computers), and tablets. (Google Android and Microsoft Surface). 20-5640, ECF No. 118 at 15-20. The proper definition of the relevant market requires discovery and factual development. *See id*. Here, Steam is within Apple's proposed relevant market, and RFP 2 seeks relevant information concerning this proposed relevant market.

Valve emphasizes that it does not participate in the mobile market and that it does not sell mobile apps on Steam, and therefore argues that its information is irrelevant. However, that argument assumes an answer to a heavily contested merits question, i.e., that the relevant market will end up being defined as mobile apps. The Court can't manage discovery by assuming merits outcomes like that, especially on merits issues that are hotly disputed and core to these cases. Apple is entitled to take discovery to support its arguments in favor of a broad market definition.

Valve also points out that Fortnite is not available on Steam and that Epic has publicly and unequivocally stated that it will not offer Fortnite on Steam unless Valve changes its business model. However, market definition does not likely turn on any one video game or any one video game producer. 20-5640 ECF No. 118 at 19 ("Antitrust law is not concerned with individual consumers or producers, like Epic Games; it is concerned with market aggregates.").

Second, RFP 32 as narrowed by Apple during meet and confer seeks information relevant to the effects of competition. Recall that in these related cases, Plaintiffs allege that Apple's 30% commission on sales through its App Store is anti-competitive and that allowing iOS apps to be sold through other stores would force Apple to reduce its commission to a more competitive level. Well, Steam is one of the largest video game stores for PCs, and it too charges a 30% commission. Epic Games opened its video game store for PCs in December 2018, and Epic charges a commission that is lower than 30%. By focusing RFP 32 on 436 specific games that are sold in both Steam and Epic's store, Apple seeks to take discovery into whether the availability of other stores does in fact affect commissions in the way Plaintiffs allege. Likewise, the per-app

1    information sought by RFP 2 is similarly relevant to the effects of competition for apps that are
2    also available through a source other than Steam.  Whether or not Judge Gonzalez Rogers ends up
3    defining the relevant market in this litigation to include PC video games, Apple could still point to
4    this evidence about competition between Steam and the Epic Games store as conduct in a similar
5    or analogous market.  Thus, the information sought by the narrowed RFP 32, and the per-app
6    information sought by RFP 2 for apps available outside Steam, is relevant and proportional to this
7    case.

8    As for burden, Valve's section of the letter brief indicates that Valve can obtain the
9    requested information by querying several different databases.  In the letter brief, Valve said this
10   would be an overwhelming amount of work, but other than using adjectives, it did not substantiate
11   or quantify the burden in any way.  At the hearing Valve offered more specifics about how this
12   data would be obtained, and it did not sound that burdensome.  Nonetheless, the Court will narrow
13   RFP 2 somewhat and will adjust the timing of the document production (see discussion below) to
14   accommodate Valve's needs.

15   Valve argues that RFPs 2 and 32 seek proprietary and highly confidential information, so
16   Apple must establish a substantial need that cannot otherwise be met without undue hardship
17   under Federal Rule of Civil Procedure 45(d)(3).  The Court agrees that Apple must meet this
18   standard and believes it has done so.  Apple has shown that it has a substantial need for this
19   information to obtain evidence in support of its arguments concerning market definition and the
20   effects of competition, and it cannot obtain this information elsewhere without undue burden.
21   Valve offers several reasons why Apple has not satisfied this standard, but none is persuasive.

22   First, Valve argues that "Apple argues the relevant market could be so broad as to include
23   any video game available through any channel, but gives no evidence this might actually be true."
24   However, discovery is how Apple obtains that evidence.  Apple does not need to prove its case to
25   be able to take discovery into evidence necessary to prove its case.

26   Second, Valve says that Apple's proposed market definition is contradicted by its prior
27   ones.  It is true that in a prior discovery hearing, Apple's oral argument leaned so heavily on Epic
28   Games that the Court was left with the impression that Apple was defining the market in terms of

4

Epic alone, at least in the *Epic Games* case.  20-5640, ECF No. 296 at 4.  However, Apple has since clarified that is not its position.  20-5640 ECF No. 297-3, fn. 2.

Third, Valve argues that Apple seeks information about only a subset of games sold on both Steam and the Epic Games Store (that's the 436 apps).  Valve says that this will not show anything relevant because it is just evidence concerning two market participants.  As an initial matter, Apple narrowed RFP 32 to 436 specific apps because Valve complained that the RFP asked about all 30,000+ apps on Steam, so this argument is an unfair attempt to use Apple's good faith in narrowing its RFP against Apple.  Regardless, Valve is wrong, and its reliance on the Court's order at 20-5640 ECF No. 296 is mistaken.  Steam and the Epic Games Store are *stores* through which many market participants (developers) sell apps.  The Court's order at ECF No. 296 at 5 explained that information about any one app producer was of limited relevance.  By contrast, information about 436 apps that are available on both Steam and the Epic Games Store could very well be relevant to showing the effects of competition, at least between those two stores.

Fourth, Valve argues that the information Apple seeks about sales and pricing for third party games belongs to the third party developers.  Instead of subpoenaing those developers, Valve argues that Apple took a shortcut by subpoenaing it.  For this reason, Valve asserts it properly redacted that information from volume 5 of its document production.  However, the Court disagrees.  Requiring Apple to subpoena each individual game developer to obtain its pricing and sales information would be an undue burden.  Further, Valve has not shown that the pricing information is confidential at all, and Valve has not shown that the sales information is confidential to the third party.  Valve is running a store, and how much it sells of what is its own information.  Further, the protective order in this action is sufficient to protect this information even if it were confidential to the third party.

Fifth, Valve acknowledges that its own highly confidential sales and revenue information is available only from Valve, but argues that it is a private company and derives significant value and edge from the confidentiality of its information, including keeping it from competitors such as Epic.  Therefore, Valve also redacted its own sales and revenue information from its volume 5

document production. However, the Court disagrees with that as well. Valve's decision to stay private means that it avoids the public company disclosure and reporting requirements, but it does not immunize the company from discovery. The protective orders in these actions allow Valve to designate its documents confidential or highly confidential to address competitive concerns, and that protection is sufficient. The Court orders Valve to remove the redactions from volume 5 of its document production, except for any redactions of attorney-client privileged or attorney work product information, if there are any.

In terms of the timing of Valve's document productions, Apple requests to have the documents by March 8, 2021 so that it may use them in expert rebuttal reports that are due by March 15, 2021. Valve says this is doable for the aggregated financial data sought by RFP 2, but not for that data broken down by app. Accordingly, the Court orders Valve to produce the aggregated data sought by RFP 2 by March 8. As for the data sought by RFP 2 on a per-app basis, the Court narrows RFP 2 and orders Valve to produce the per-app information only for the 436 apps available on both Steam and the Epic Games store (as providing that information broken down for all 30,000+ apps is an unnecessary burden on Valve), and to produce that within 30 days. With respect to RFP 32, even as narrowed the date range (2015 to present) is a little overbroad given that Epic's store did not begin until December 2018. The Court therefore narrows RFP 32 to 2017 to the present and orders Valve to produce the requested information for the 436 apps within 30 days.

**IT IS SO ORDERED.**

Dated: February 24, 2021

THOMAS S. HIXSON
United States Magistrate Judge