Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile: (888) 775-0898

Attorney for Third-Party Respondent
Match Group, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR<br><br>**DECLARATION OF ADRIAN ONG PURSUANT TO CIVIL LOCAL RULE 79-5(e)(1) AND IN RESPONSE TO PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND EXHIBITS IN SUPPORT THEREOF** |
|---|---|

# DECLARATION OF ADRIAN ONG

I, Adrian Ong, declare as follows:

1. I am Senior Vice President of Operations at Match Group, LLC, which is a subsidiary of Match Group, Inc. In my position, I work closely with the Tinder, OkCupid, PlentyofFish, and Match brands (collectively, the "Brands"), which are all operated by subsidiaries of Match Group, Inc. Match Group, Inc., its subsidiaries, and the Brands are non-parties in the three above-captioned actions, and for the limited purposes of this declaration, I shall refer to them collectively as "Match."

2. I have been employed by Match Group, LLC since 2011. Through the course of my employment with Match Group, LLC, I have become familiar with the Brands' treatment of proprietary business information, such as that discussed in this declaration. I make this declaration in response to Plaintiffs' Administrative Motion to File Under Seal Portions of Plaintiffs' Motion for Class Certification and Exhibits in Support Thereof, Dkt. No. 443 ("Motion to Seal"), pursuant to Civil Local Rule 79-5(E). I know the facts stated herein based on my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3. I have reviewed Plaintiffs' Motion to Seal and the Written Direct Testimony of Dr. Daniel L. McFadden (the "Testimony"). Specified portions of Dr. McFadden's Testimony should remain under seal for the reasons stated in this declaration.

4. I was deposed in the above-captioned actions on February 24, 2021. I understand that, during my deposition, counsel for Match requested that my deposition testimony be designated Highly Confidential pursuant to protective orders entered in the above-captioned actions.

5. In paragraph 97 of his report, Dr. McFadden identifies with particularity the number of unique Tinder accounts in the U.S. in 2019. Dr. McFadden also identifies the percentage of those accounts that purchased digital products in 2019 and the proportion of those that made their purchases exclusively through the Tinder app. Dr. McFadden then provides similar datapoints relating to the other Brands.

6. Dr. McFadden could only have derived these datapoints from highly confidential documents produced by Match as part of this litigation and/or through my deposition testimony.

1 Match considers these datapoints to be confidential and proprietary business information, the
2 disclosure of which would give the Brands' competitors an unfair competitive advantage, as it would
3 give them insights into the Brands' business.

4     7. Specifically, disclosing this information to third parties could be used against the
5 Brands in their future business negotiations with third parties. Further, releasing these numbers when
6 Match's competitors do not would allow those competitors to selectively compete against the Brands
7 where they are most competitively vulnerable, placing the Brands at a competitive disadvantage. The
8 Court granted Match's Motion to Seal regarding substantively identical information submitted in a
9 related case, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640, at Dkt. No. 547, pp. 6–7.

10     8. Match requests redacting the relevant sentences in paragraph 97 of Dr. McFadden's
11 Testimony to read as follows:

12     Match Group estimates there were about [**REDACTED**] U.S. Tinder
13     accounts that accessed the iOS app in 2019. [**REDACTED**] percent
14     of those accounts purchased digital products in 2019, and
15     [**REDACTED**] percent of those accounts made their purchases
16     exclusively through the app. The percentage of app-only purchasers is
17     likewise above [**REDACTED**] percent for all other years since 2017,
18     when Tinder first became available via the web. Two of Match
19     Group's other apps for which data was produced see a similarly high
20     proportion of app-only purchasers. An average of [**REDACTED**]
21     percent and [**REDACTED**] percent of OkCupid and Plenty of Fish
22     iOS app users that made purchases exclusively bought through the
23     app. The exception, Match.com, only saw [**REDACTED**] percent of
24     iOS purchasers exclusively spending via the app; however, as the
25     name suggests, Match.com began as a web-based service in 1995.
26     Even so, the proportion of Match.com iOS users exclusively making
27     purchases through the iOS app has increased considerably over time,
28     from [**REDACTED**] percent in 2013 to [**REDACTED**] percent in

1 | 2020, despite its long history as a web-based service and generally
2 | having higher prices on iOS.
3 | 9. This request is narrowly tailored to protect Match's confidential business information.
4 | 10. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. This declaration was executed this 7th day of June 2021, in Dallas, Texas.

*/s/ Adrian Ong*
EB8453A91E5D48C...

ADRIAN ONG