# EXHIBIT 25

VOLUME 4

Pages 778 - 1052

UNDER SEAL PAGES - 824 - 828

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | |
|---|---|
| EPIC GAMES, INC., Plaintiff, vs. APPLE, INC., Defendant. | NO. C-20-5640 YGR<br>Thursday, May 6, 2021<br>Oakland, California<br>BENCH TRIAL |
| APPLE, INC., Counterclaimant, vs. EPIC GAMES, Inc., Counter-Defendant. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: KATHERINE B. FORREST, ESQUIRE**
**GARY A. BORNSTEIN, ESQUIRE**
**YONATAN EVEN, ESQUIRE**

(Appearances continued.)

Reported By: Diane E. Skillman, CSR 4909, RPR, FCRR
Official Court Reporter

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

For Plaintiff:
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: LAUREN A. MOSKOWITZ, ESQUIRE**
**JUSTIN C. CLARKE, ESQUIRE**
**W. WES EARNHARDT, ESQUIRE**
**BRENDAN BLAKE, ESQUIRE**
**JIN NIU, ESQUIRE**

For Defendant:
GIBSON, DUNN & CRUTCHER
333 South Grand Avenue
Los Angeles, California 90071
**BY: RICHARD J. DOREN, ESQUIRE**
**DAN SWANSON, ESQUIRE**
**CYNTHIA RICHMAN, ESQUIRE**
**RACHEL BRASS, ESQUIRE**

GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
**BY: VERONICA S. MOYE, ESQUIRE**

PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
2001 K STREET, NW
Washington, DC 20006
**BY: KAREN DUNN, ESQUIRE**
**JESSICA E. PHILLIPS, ESQUIRE**

For Defendant:
PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
943 Steiner Street
San Francisco, California 94117
**BY: MEREDITH DEARBORN, ESQUIRE**

guess, the magic of Test Flight. And my goal was to help developers make better apps by iterating faster and getting feedback.

**Q.** Did Test Flight develop a native iOS app?

**A.** We did. We built a native iOS app prior to the official launch of Test Flight.

**Q.** And did Test Flight submit its native iOS App to Apple for the Apple review process -- for the app review process?

**A.** Yes, we did.

**Q.** What was the result of that?

**A.** The result was an app review rejection, a couple phone calls as well. I believe we appealed and that was the end result of the store's submission.

**Q.** What did Test Flight do --

**THE COURT:** You appealed and then they reversed?

**THE WITNESS:** The appeal was upheld. The native app did not make it to the App Store. The rejections were upheld.

**BY MS. MOYE:**

**Q.** Was Test Flight able to continue in business even though it's native iOS app was not allowed on the --

**A.** Yes.

**Q.** What business model did you change to?

**A.** So I wouldn't describe it as a business model. Our business model didn't change. But in terms of a distribution, that did. We moved to a full screen web app on iOS.

And there's a couple of things that I felt I needed from the native app in order to make this work, but I felt there was a path to get those things all with a web app.

**Q.** Was Test Flight able to be successful using just a web app?

**A.** Absolutely.

The Test Flight was used by developers and testers worldwide. I think that the web app experience, we would get, personally get, you know, customer emails and developer emails where they would have an issue with a particular beta they were testing, and in that they would say, I downloaded this beta from the Test Flight app, and we would chuckle because it wasn't a native app, it was always a web app after the native app was not accepted.

**Q.** What was your title or position at Test Flight?

**A.** I was a founder and CTO.

**Q.** And how did you come to be employed by Apple?

**A.** Ultimately Apple acquired Test Flight as a product and a company, so I joined through that acquisition.

**Q.** I believe you were asked, but just so we have a clear record, what was your first job at Apple?

**A.** I was the engineering manager.

**Q.** And at some point while you were in the engineering group, did you come to have responsibility related to the App Store?

**A.** Specifically to App Store review, yes.

**Q.** And what were your responsibilities?

**A.** So in -- when I started as an engineering manager, I was responsible for some things with Test Flight, but also for app analytics which is a feature for developers. And shortly thereafter, I think it was within a year, I was asked to run our app review tools team. And those responsibilities included tools, automation.

And after some time doing that, there was an opportunity within developer operations to run the app review team. So I think that was 2016 where I took on those responsibilities.

**Q.** Okay. Let's talk about the app review team that you lead now.

First I would like to discuss the different functional units within your team. And we have a demonstrative on that issue also that we would like to use.

**MS. MOYE:** Before I get to that, I think I neglected Your Honor to move DX5467 into evidence.

**MS. MOSKOWITZ:** No objection, Your Honor.

**THE COURT:** 5467 is submitted.

(Defendant's Exhibit 5467 received in evidence)

**THE COURT:** And you have about two minutes. You can decide whether you want to start.

**MS. MOYE:** Your Honor, I think it's probably best for us to start tomorrow. It will take us more than two minutes to get through the slide.

**CERTIFICATE OF REPORTERS**

We, Diane E. Skillman and Pamela Hebel, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. We further certify that we are neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that we are not financially nor otherwise interested in the outcome of the action.

________/S/DIANE E. SKILLMAN_______

Diane E. Skillman, CSR, RPR, FCRR

__________/S/ PAMELA HEBEL___________

Pamela Hebel, CSR, RMR, FCRR

FRIDAY, MAY 7, 2021