# EXHIBIT 32

VOLUME 9

Pages 2097 - 2346

UNDER SEAL PAGES 2335 - 2346

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | |
|---|---|
| EPIC GAMES, INC., Plaintiff, vs. APPLE, INC., Defendant. | NO. C-20-5640 YGR<br>Thursday, May 13, 2021<br>Oakland, California<br>BENCH TRIAL |
| APPLE, INC., Counterclaimant, vs. EPIC GAMES, Inc., Counter-Defendant. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: KATHERINE B. FORREST, ESQUIRE**
**GARY A. BORNSTEIN, ESQUIRE**
**YONATAN EVEN, ESQUIRE**

(Appearances continued.)

Reported By:
Diane E. Skillman, CSR 4909, RPR, FCRR
Pamela Batalo-Hebel, CSR 3593, RMR, FCRR
Raynee Mercado, CSR 8258 RMR, CRR, FCRR

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

For Plaintiff:
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: LAUREN A. MOSKOWITZ, ESQUIRE**
**JUSTIN C. CLARKE, ESQUIRE**
**W. WES EARNHARDT, ESQUIRE**
**BRENDAN BLAKE, ESQUIRE**
**JIN NIU, ESQUIRE**

For Defendant:
GIBSON, DUNN & CRUTCHER
333 South Grand Avenue
Los Angeles, California 90071
**BY: RICHARD J. DOREN, ESQUIRE**
**DAN SWANSON, ESQUIRE**
**CYNTHIA RICHMAN, ESQUIRE**
**RACHEL BRASS, ESQUIRE**
**ARPINE LAWYER, ESQUIRE**

GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
**BY: VERONICA S. MOYE, ESQUIRE**

PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
2001 K STREET, NW
Washington, DC 20006
**BY: KAREN DUNN, ESQUIRE**
**JESSICA E. PHILLIPS, ESQUIRE**

For Defendant:
PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
943 Steiner Street
San Francisco, California 94117
**BY: ARPINE LAWYER, ESQUIRE**

between one set of analyses versus another set of analyses, and didn't adopt the approach that I was using.

**Q.** So you don't recall the court stating, "We perceive many deficiencies in Dr. Cragg's analysis"?

**A.** I do remember that.

**Q.** Okay.

And do you recall that the court found your economic opinions to be wholly unreliable?

**A.** I don't think that's how they described my opinions but rather a part of the analysis.

And as we had talked about in our -- in the deposition, given the choice that the court had to make in terms of how it was going to interpret Coca Cola's contracts, this would have to be a conclusion that it would draw about economic analysis.

**Q.** And -- and you don't recall the -- or do you recall the U.S. Tax Court finding that your methodology led to absurd results?

**A.** Yeah, I -- I do recall that, and that was referring to one of the specific calculations that related to one country out of all the countries that I had looked at.

**Q.** Now, Dr. Cragg, you were retained by Epic as a rebuttal expert in November or December last year, right?

**A.** I think that's the right time period.

**Q.** Okay. And you indicated earlier in response to Mr. Even's question that you followed the expert testimony in this case?

**A.** Yes.
**Q.** So have you been listening to any other testimony in the case or reading it?
**A.** I have, yes.
**Q.** Okay. Have you read -- well, what have you been doing? Listening?
**A.** I read the transcripts from the first -- I think the first five days. And then from there on, I listened.
**Q.** Okay.
Now, part of the expertise that you indicate you bring to this case comes from your study of platform economics including the American Express decision, correct?
**A.** Yes.
**Q.** You agree, don't you, that the Supreme Court set forth a reasonable definition of a transaction platform in *American Express*, right?
**A.** I -- yes, the -- the way that they characterize what the transaction -- the relevant transaction in the *American Express* case and how you'd go about examining that marketplace, I thought was -- was reasonable.
**Q.** Okay.
And you agree with Dr. Evans that the App Store is a two-sided transaction platform, right?
**A.** Yes.
**Q.** But you don't consider the iOS operating system to be a

distinct two-sided transaction platform, correct?

**A.** Yeah, there where I see the distinction coming in is that there's clearly transactions of the sort -- of the *American Express* sort happening in the App Store on iOS that's currently not the environment.

**Q.** Now, you agree that not all transactions provided by a transaction platform necessarily belong in the same product market, right?

**A.** Could you say that again, please?

**Q.** You agree that not all transactions provided by a transaction platform necessarily belong in the same product market, right?

**A.** Yes.

**Q.** Depends on the platform and the types of transaction at issue, correct?

**A.** Yes. The -- I think it -- it's hard to make a -- a sweeping statement about platforms because they're of all different types and structures.

**Q.** Now, you agree that the central economic question in defining a market is one of substitutability, correct?

**A.** Yes.

**Q.** And substitution is a matter of degree, right?

**A.** It is.

**Q.** Products in the same market don't need to be perfect substitutes, do they?

**CERTIFICATE OF REPORTERS**

We, Diane E. Skillman, Pamela Batalo-Hebel, and Raynee Mercado certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. We further certify that we are neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that we are not financially nor otherwise interested in the outcome of the action.

________/S/DIANE E. SKILLMAN_______

Diane E. Skillman, CSR, RPR, FCRR

__________/S/ PAMELA BATALO-HEBEL___________

Pamela Batalo-Hebel, CSR, RMR, FCRR

_________/s/ Raynee Mercado___________

Raynee Mercado, CSR, RMR, FCRR

Thursday, May 13, 2021