# EXHIBIT 33

VOLUME 7

Pages 1584 - 1826

UNDER SEAL PAGES 1729 - 1741

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | |
|---|---|
| EPIC GAMES, INC., Plaintiff, vs. APPLE, INC., Defendant. | NO. C-20-5640 YGR<br>Tuesday, May 11, 2021<br>Oakland, California<br>BENCH TRIAL |
| APPLE, INC., Counterclaimant, vs. EPIC GAMES, Inc., Counter-Defendant. | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff: CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: KATHERINE B. FORREST, ESQUIRE**
**GARY A. BORNSTEIN, ESQUIRE**
**YONATAN EVEN, ESQUIRE**

(Appearances continued.)

Reported By: Diane E. Skillman, CSR 4909, RPR, FCRR
Pamela Hebel, CSR, RMR, FCRR

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

For Plaintiff: CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, New York 10019
**BY: LAUREN A. MOSKOWITZ, ESQUIRE**
**JUSTIN C. CLARKE, ESQUIRE**
**W. WES EARNHARDT, ESQUIRE**
**BRENDAN BLAKE, ESQUIRE**
**JIN NIU, ESQUIRE**

For Defendant: GIBSON, DUNN & CRUTCHER
333 South Grand Avenue
Los Angeles, California 90071
**BY: RICHARD J. DOREN, ESQUIRE**
**DAN SWANSON, ESQUIRE**
**CYNTHIA RICHMAN, ESQUIRE**
**RACHEL BRASS, ESQUIRE**
**ARPINE LAWYER, ESQUIRE**

GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 1100
Dallas, Texas 75201
**BY: VERONICA S. MOYE, ESQUIRE**

PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
2001 K STREET, NW
Washington, DC 20006
**BY: KAREN DUNN, ESQUIRE**
**JESSICA E. PHILLIPS, ESQUIRE**

For Defendant: PAUL WEISS RIFKIND
WHARTON & GARRISON LLP
943 Steiner Street
San Francisco, California 94117
**BY: ARPINE LAWYER, ESQUIRE**

commenced; correct?

**A.** That's correct.

**Q.** You've also been retained in Epic's lawsuit against Google; right?

**A.** I don't know that we have been formally retained. We haven't done any -- we haven't done any substantive work on that. I guess we've been retained, but it's -- our particular role in that is not -- is not laid out at this point.

**Q.** So the answer is yes, you've been retained?

**A.** Yes.

**Q.** Now, you've never testified as an expert in an antitrust case before a federal district court or a state court, for that matter; correct?

**A.** That's correct.

**Q.** Dr. Evans, I'd like to focus first on your market definition. There is a lot of territory here to cover, and I've got limited time, but that seems like a good place to start.

You understand that Apple's experts have defined one relevant market in this case; right?

**A.** I do.

**Q.** Okay. And your opinion is that there are three different relevant markets in this case: Smartphone operating systems, iOS app distribution, and payment solutions. Is that fair?

**A.** That's correct.

**Q.** All right. Let me start with the App Store.

You testified, at least in your written direct, that the App Store is a two-sided platform; right?

**A.** That's correct.

**Q.** And you are an expert in platform economics, are you not?

**A.** I am.

**Q.** Okay. Now, the App Store is a two-sided transaction platform; isn't that right?

**A.** Yes, it is.

**Q.** Okay. Now, in your opinion, the iOS operating system is a distinct two-sided transaction platform; correct?

**A.** Yes.

**Q.** And you contend that the iOS operating system competes in a relevant smartphone operating system market distinct from the market where -- or markets in which the App Store operates; is that correct?

**A.** That's -- that's correct, where I understand the term "distinct" as meaning that they are distinct relevant antitrust markets.

**Q.** Okay. So your testimony to the Court is that there are two relevant transaction platform markets, each having two sides; correct?

**A.** That's correct.

**Q.** And the two sides of your two markets are the same, app users and app developers; right?

**A.** That's right.

**Q.** And all of the developers who are on the one side of your iOS app distribution market are also present in principle on the developer's side of your smartphone OS market; right?

**A.** Well, that's not -- that's not -- that's sort of right but not precisely correct. I would say that for the -- for the smartphone OS market, there are app users and app developers where the app developers are creating apps for the smartphone OSs and the app users are using -- using those apps on that platform, and then in the app distribution market, it's likely that many of those, if not most, are also participating in app distribution, although at different -- at different times.

So it's the same generic type whether -- you know, particularly individuals are participating at the same time. That's a different matter. But there are definitely users and developers on both sides, and there is certainly a significant overlap between using the smartphone operating systems and using app distribution related to those operating systems.

**THE COURT:** If you are going to read from his deposition, I need a copy.

**MR. SWANSON:** Well, I was going to see if I need to read from the deposition first, Your Honor.

**THE COURT:** I'd like a copy.

**MR. SWANSON:** I understand that. Let's hand that up.

**THE COURT:** Go ahead. Ask your question.

**MS. DUNN:** Nothing, Your Honor. Thank you.

**THE COURT:** Okay. Thank you very much. We will stand in recess until 8:00 a.m.

(Proceedings concluded at 3:15 P.M.)

**CERTIFICATE OF REPORTERS**

We, Diane E. Skillman and Pamela Hebel, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. We further certify that we are neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that we are not financially nor otherwise interested in the outcome of the action.

_______/S/DIANE E. SKILLMAN______

Diane E. Skillman, CSR, RPR, FCRR

_________/S/ PAMELA HEBEL__________

Pamela Hebel, CSR, RMR, FCRR

Tuesday, May 11, 2021