# EXHIBIT B

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Interim Lead Class Counsel and*
*Attorneys for the Cameron Plaintiffs and Proposed Classes*

[Additional counsel listed on the signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DONALD R. CAMERON, *et al.*,

Plaintiffs,

v.

APPLE INC.,

Defendant.

No. 4:19-cv-03074-YGR
No. 4:19-cv-03796-YGR

**DEVELOPER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT APPLE INC.**

PROPOUNDING PARTY: DEVELOPER PLAINTIFFS

RESPONDING PARTY: APPLE INC.

SET NUMBER: ONE

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, YOU are required to respond within thirty (30) days of service hereof to the following requests for production of documents, in writing and under oath, and to provide for inspection and copying of these documents at the offices of Hagens Berman Sobol Shapiro LLP, 715 Hearst Avenue, Suite 202, Berkeley, California 94710 on behalf of the PLAINTIFFS. In answering these requests for production of documents you should identify all documents within the possession, custody or control of YOU, YOUR attorneys, YOUR agents or YOUR employees.

YOU are required to produce all requested documents that are in YOUR actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of YOUR officers, employees, agents, representatives or attorneys.

PLAINTIFFS request that such production be made in accordance with the "DEFINITIONS" and "INSTRUCTIONS" set forth below.

## I. DEFINITIONS

1. The following rules of construction shall apply to all discovery requests:

(a) The terms "ALL" and "EACH" shall be construed as all and each;

(b) The connectives "AND" and "OR" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c) "ANY" shall be construed to include and encompass "all";

(d) "INCLUDING" shall be construed to mean "without limitation"; and

(e) The use of the singular form of any word includes the plural and vice versa.

2. "COMMUNICATION" or "COMMUNICATIONS" means without limitation, oral, typed, or written communications of any kind, such as electronic communications, emails, facsimiles, telephone communications, instant messaging (including but not limited to iMessages, SMS, MMS, or other text, or chat, via whichever application or provider), correspondence, letters,

notices, reports, exchange of written or recorded information, or face-to-face meetings (including without limitation notes or transcripts thereof).

3. “DEFENDANT” means Apple Inc. (Apple), the DEFENDANT in plaintiffs’ Complaint for Violation of the Sherman Act and California Unfair Competition Law at the time responses to these document requests are served.

4. “iOS DIGITAL PRODUCT” or “iOS DIGITAL PRODUCTS” means any iOS- OR iPhone OS-compatible digital product, service, or other item sold via or in YOUR App Store, OR any such iPad OS-compatible digital product, including (but not limited to) applications (*i.e.*, apps), in-app products (including consumables) purchased/sold by In-App Purchase, and subscriptions.

5. “DOCUMENT” or “DOCUMENTS” encompasses all forms of tangible expression, including, without limitation, all electronically stored information or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including, but not limited to, papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text or instant messages (including SMS or MMS text messages and proprietary messages such as iMessages), contracts, accounting or other ledgers, tables, tabulations, graphs, charts, diagrams, plans, schedules, appointment books, calendars, diaries, time sheets, studies, analyses, drafts, telegrams, teletype or telecopy messages, files, telephone logs and messages, checks, microfilms, microfiche, pictures, photographs, printouts, electronic data, electronic data compilations, tapes, diskettes, hard drives, magnetic drives, solid-state disks or solid-state drives, hybrid drives, cloud storage, removable media, notes, minutes or transcripts of proceedings. Documents shall include originals and all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all other data compilations from which information can be obtained (translated, if necessary into useable form), and any preliminary versions, drafts, or other revisions of any of the foregoing.

6. "PLAINTIFFS" means Donald R. Cameron, Pure Sweat Basketball, Inc., and Barry Sermons, plaintiffs in the above-referenced consolidated action and as specified in the individual actions consolidated therein.

7. "RELATE TO" or "RELATING TO" means, without limitation, the following concepts: discussing, describing, setting forth, reflecting, dealing with, pertaining to, analyzing, evaluation, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

8. The term "U.S. iOS developers" also includes those U.S. developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store for use on, OR whose iOS DIGITAL PRODUCTS are compatible with, iPads powered by YOUR iPad OS.

9. The terms "YOU" and "YOUR" mean the responding DEFENDANT, Apple Inc., its predecessors, successors, subsidiaries, departments, divisions, joint ventures and/or affiliates, including, without limitation, any organization or entity which the responding DEFENDANT manages or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding DEFENDANT.

## II. INSTRUCTIONS

1. These requests call for the production of all responsive DOCUMENTS, items, information, or things (DOCUMENTS) that are within the possession, custody, or control of YOU.

2. If any DOCUMENT covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld DOCUMENT: date, author, recipients, general subject matter sufficient to make a prima facie determination whether the asserted privilege has been properly invoked, and legal basis upon which the DOCUMENT has been withheld.

3. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

4. Please produce ALL DOCUMENTS maintained or stored electronically in native, electronic format with ALL relevant metadata intact. Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed. YOU are also requested to immediately meet and confer with plaintiffs, via their counsel, regarding the manner in which YOU shall produce DOCUMENTS stored electronically in order for the parties to try and reach agreement in this regard and avoid any unnecessary expense.

5. Please organize electronic DOCUMENTS produced for inspection in the same manner that YOU store them (*e.g.*, if maintained by a custodian, such as e-mail residing on an e-mail server, please organize DOCUMENTS for production by custodian; if maintained as a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

6. At YOUR election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (*i.e.*, portable document format files with embedded text) and in an appropriate and usable manner (*e.g.*, by copying such data onto an external hard drive).

7. These requests require production of paper DOCUMENTS in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the requests set forth below. If YOU choose the former method, the DOCUMENTS are to be produced in the boxes, file folders, binders, and other containers in which the DOCUMENTS are found. The titles, labels or other descriptions on the boxes, file folders, binders or other containers are to be left intact.

8. DOCUMENTS stored as electronic data on magnetic, optical, other storage media, or in the cloud as "active" or "backup" files shall be produced in their native formats with any associated metadata.

9. To the extent responsive DOCUMENTS reside on databases and other such systems and files, YOU are requested to produce the relevant database in useable form and/or permit access for inspection, review and extraction of responsive information.

10. To the extent responsive documents are in languages other than English, the parties shall meet and confer to discuss the format of production prior thereto.

11. Each document request, and each subpart thereof, shall be separately set forth and accorded a separate answer. Each response shall first set forth verbatim the document request to which it is responsive, followed by YOUR response.

12. No part of a document request shall be left unanswered merely because an objection was interposed to another part of the document request.

13. If YOU object to any document request or subpart thereof, the objection shall state with specificity all grounds. Any ground not stated shall be waived.

14. If YOU object to any document request or subpart thereof, the objection must state whether any responsive materials are being withheld on the basis of that objection. Any objection to part of a request must specify the part and produce documents in response to the rest.

15. If YOU are unable to answer any document request, the reasons for YOUR inability to answer shall be separately stated in detail for each document request.

16. Failure to provide information in response to these document requests will be deemed a waiver of YOUR right to produce such evidence at trial. Plaintiffs reserve the right to move to preclude the introduction of any evidence not produced in response to this request.

17. Unless otherwise indicated, Plaintiffs seek the production of DOCUMENTS AND other responsive material whenever created or prepared.

18. These requests shall be deemed continuing so as to require further and supplemental production in accordance with Federal Rule of Civil Procedure 26(e).

## III. DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

Please produce ALL DOCUMENTS referencing or otherwise RELATING TO each of the PLAINTIFFS and ALL iOS DIGITAL PRODUCTS each has sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce ALL of YOUR COMMUNICATIONS, or DOCUMENTS memorializing or referencing COMMUNICATIONS, with each of the PLAINTIFFS at any time, whether sent by or to YOU.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce ALL DOCUMENTS or other materials YOU have produced in the related *Pepper v. Apple Inc.* action.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce ALL DOCUMENTS YOU have produced to any federal, state, or local governmental OR regulatory entity, foreign or U.S., including to any U.S. or state agency (including any attorney general's office) or congressional committee (such as to the U.S. House Committee on the Judiciary, in response to its September 13, 2019 letter to YOU), or that YOU have received from any such governmental OR regulatory entity, foreign or U.S., RELATING TO:

(a) YOUR App Store;

(b) distribution services YOU provide to iOS developers for sale of their iOS DIGITAL PRODUCTS via or in YOUR App Store;

(c) iOS DIGITAL PRODUCTS sold via or in YOUR App Store as to which YOU paid or transmitted any sum of money to iOS developers; OR

(d) sales of ANY iOS DIGITAL PRODUCTS via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce ALL Apple organizational charts and personnel directories, including in particular those that RELATE TO YOUR App Store, U.S. iOS developers, iOS DIGITAL PRODUCTS, and/or any of YOUR devices capable of running iOS DIGITAL PRODUCTS (*i.e.*, ANY model of the iPhone, iPad, or iPod touch).

**REQUEST FOR PRODUCTION NO. 6:**

Please produce DOCUMENTS sufficient to identify ALL persons or entities with authority or discretion to, or who provide recommendations or input to those with authority or discretion to:

(a) set or vary commissions or fees charged to, or set or vary wholesale-level sums paid to, developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store;

(b) set or vary $.99 minimum, end-in-$.99 pricing, or other pricing mandates for U.S. iOS developers' non-zero-priced iOS DIGITAL PRODUCTS sold via or in YOUR App store; AND

(c) set or vary other App Store-related contractual terms, policies, or rules, including but not limited to those RELATING to U.S. developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce DOCUMENTS identifying the office location, or former office location if it has changed, for ALL persons identified on DOCUMENTS produced in response to the previous request for production.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce DOCUMENTS sufficient to identify the individuals whom YOU have designated as document custodians for preservation and production purposes in this matter.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all acronym definitions, glossaries, definitions, OR other DOCUMENTS defining OR explaining acronyms, abbreviations, OR specialized OR other terms YOU use, OR that otherwise RELATE TO, YOUR App Store or iOS developers.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce ALL DOCUMENTS constituting or RELATING TO antitrust training and/or manuals or other materials made available to, or possessed by, any employees OR other persons OR entities responsible for any aspect of YOUR App Store or related matters, OR U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store, including but limited to DOCUMENTS such as certifications of training.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce ALL business plans, studies, or other DOCUMENTS RELATED TO the conception, design, and launch of YOUR App Store, including but not limited to those that limit iOS DEVELOPERS to the App Store for the distribution and retail sale of all iOS DIGITAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce ALL DOCUMENTS RELATING TO the pricing of non-zero-priced iOS DIGITAL PRODUCTS sold via or in the App Store, including but not limited to those that discuss

the reasons for YOUR $.99 and end-in-$99 pricing mandates for U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 13**:

Please produce ALL DOCUMENTS RELATING TO the commissions or fees YOU charge U.S. iOS developers for non-zero-priced iOS DIGITAL PRODUCTS sold via or in the App Store (or, alternatively, the wholesale-level prices you pay to U.S. iOS developers for non-zero-priced iOS DIGITAL PRODUCTS sold via or in the App Store).

**REQUEST FOR PRODUCTION NO. 14**:

Please produce DOCUMENTS sufficient to specify, and explain the purpose for and disposition of, all fees, including annual fees, charged to U.S. iOS developers before their iOS DIGITAL PRODUCTS may be sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 15:**

Any rulings or findings by any governmental OR regulatory entity, foreign or domestic, regarding monopoly, attempted monopoly, monopsony, attempted monopsony, or anti-competitive behavior as they pertain to YOU and iOS DIGITAL PRODUCTS, YOUR App Store, OR YOUR agreements or dealings with iOS developers.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce ALL DOCUMENTS setting forth OR explaining the technical, marketing, or other expertise needed to open and operate a digital-product or app store such as YOUR App Store.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce ALL DOCUMENTS setting forth or explaining the physical plant (including computer or other hardware), manpower, technical and engineering expertise, financial capital, software, and other materials needed to open and operate YOUR App Store or any digital-product or app store.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce ALL DOCUMENTS setting forth the initial and ongoing monetary investments YOU have made in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce ALL DOCUMENTS, including but not limited to any studies, papers, reports, or surveys, describing or otherwise RELATING TO barriers to entry for anyone wishing to open or operate a digital-product or app store, or to offer distribution services for apps or other digital products

**REQUEST FOR PRODUCTION NO. 20:**

Please produce ALL DOCUMENTS, including but not limited to any agreements, contracts, policies, practices, studies, papers, reports, or surveys, describing, analyzing, identifying, discussing, or that are otherwise RELATED TO, the reasons that competitors have not entered, or have left, the market for iOS DIGITAL PRODUCT distribution services OR retail sales.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce DOCUMENTS sufficient to identify ALL programming languages used for ALL iOS DIGITAL PRODUCTS sold in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce exemplars of ALL contracts or agreements that U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store must enter into, AND DOCUMENTS setting forth ALL policies to which they were or are required to adhere, from YOUR App Store's inception through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce DOCUMENTS sufficient to show the effective date of each and every contract, agreement, or policy for which an exemplar OR DOCUMENT was produced in response to the previous request for production.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce ALL contracts, contractual appendices or exhibits, matrices, lists, OR other DOCUMENTS setting forth OR explaining YOUR pricing terms OR mandates (including but not limited to $.99 minimum pricing or end-in-$.99 pricing for non-zero-priced iOS DIGITAL PRODUCTS) for U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store for non-zero prices, from YOUR App Store's inception through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce DOCUMENTS sufficient to show the effective date of the terms OR mandates referenced in each and every DOCUMENT produced in response to the previous request for production.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce ALL DOCUMENTS, including but not limited to contracts or agreements, that require or RELATE TO requirements that iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store use YOUR App Store, and YOUR iOS DIGITAL PRODUCTS-related distribution and retailing services, as the exclusive store and services for distribution and retail sale of their iOS DIGITAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce ALL DOCUMENTS purporting to show the relationship between U.S. iOS app developers and Apple RELATING TO sales of iOS DIGITAL PRODUCTS in YOUR App Store (*e.g.*, agent-principal, wholesaler-retailer, consignor-consignee, OR any other), from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce ALL DOCUMENTS AND COMMUNICATIONS that describe or RELATE TO your practice of discouraging or disallowing consumers of iPhones, iPads, and iPod touch devices from using any channel besides YOUR App Store to purchase apps or other digital products for use on those devices, including but not limited to ALL DOCUMENTS AND COMMUNICATIONS that refer to jail-breaking OR contain threats to void warranties or impose other penalties.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce ALL DOCUMENTS describing or otherwise RELATING TO technical barriers, including barriers YOU have erected intentionally, to consumer access to iOS apps via any channel other than YOUR App Store.

**REQUEST FOR PRODUCTION NO. 30:**

Please produce ALL DOCUMENTS setting forth or explaining each way that U.S. iOS developers can monetize their iOS DIGITAL PRODUCTS via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 31:**

Please produce ALL DOCUMENTS setting forth AND otherwise RELATING TO the commission(s) OR fee(s) YOU collect from U.S. iOS developers for distribution services (OR the wholesale-level payments YOU remit to them) in connection with sales of their iOS DIGITAL PRODUCTS at non-zero prices via or in YOUR App Store, including but not limited to:

(a) ANY such DOCUMENTS that set forth OR explain ANY percentage or rate change to these commission(s), fee(s), or payment(s), actual, proposed, or planned, from the inception of YOUR App Store through the date of judgment in this matter;

(b) ANY such DOCUMENTS that set forth OR explain the services or other things YOU purport to provide to these developers in exchange for such commission(s), fee(s), or discounts to sums YOU remit to them for iOS DIGITAL PRODUCTS sold at retail in YOUR App Store, from the inception of YOUR App Store through the date of judgment in this matter;

(c) ANY such DOCUMENTS that set forth the sums YOU have collected in such commission(s), fee(s), or discounts to sums YOU remit to them for iOS DIGITAL PRODUCTS sold at retail in YOUR App Store, from the inception of YOUR App Store through the date of judgment in this matter; AND

(d) ANY such DOCUMENTS that set forth ALL profits you have made from the collection of such commission(s), fee(s), or discounts to sums YOU remit to them for iOS DIGITAL PRODUCTS sold at retail in YOUR App Store, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 32:**

Please produce ALL DOCUMENTS setting forth AND otherwise RELATING TO the $99 annual (or any other periodic) fee you charge to developers who wish to make their iOS DIGITAL PRODUCTS available for sale via or in YOUR App Store, including but not limited to:

(a) ANY such DOCUMENTS that set forth OR explain ANY percentage or rate change to any such fee(s), actual, proposed, or planned, from the inception of YOUR App Store through the date of judgment in this matter;

(b) ANY such DOCUMENTS that set forth OR explain the services or other things YOU purport to provide to these developers in exchange for such fee(s), from the inception of YOUR App Store through the date of judgment in this matter;

(c) ANY such DOCUMENTS that set forth the sums YOU have collected in such fee(s), from the inception of YOUR App Store through the date of judgment in this matter; AND

(d) ANY such DOCUMENTS that set forth ALL profits you have made from the collection of such fee(s), from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 33:**

Please produce ALL DOCUMENTS setting forth AND otherwise RELATING TO ANY other fees or other sums YOU charge or have charged U.S. iOS developers in connection with the sale of their iOS DIGITAL PRODUCTS via or in YOUR App Store, including but not limited to:

(a) ANY such DOCUMENTS that set forth OR explain ANY percentage or rate change to any such fees or sums, actual, proposed, or planned, from the inception of YOUR App Store through the date of judgment in this matter;

(b) ANY such DOCUMENTS that set forth OR explain the services or other things YOU purport to provide to these developers in exchange for such fees or sum, from the inception of YOUR App Store through the date of judgment in this matter;

(c) ANY such DOCUMENTS that set forth the sums YOU have collected in such fees or sums, from the inception of YOUR App Store through the date of judgment in this matter; AND

(d) ANY such DOCUMENTS that set forth ALL profits you have made from the collection of such fees and sums, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce ALL DOCUMENTS RELATING TO YOUR $.99 minimum pricing requirements for U.S. paid iOS DIGITAL PRODUCTS sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 35:**

Please produce ALL DOCUMENTS RELATING TO YOUR end-in-$.99 pricing requirements for U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 36:**

Please produce ALL DOCUMENTS, including any studies, surveys or survey results, or papers RELATING TO consumer preferences for low or zero-priced iOS DIGITAL PRODUCTS, or any other consumer preferences as they relate to pricing of iOS DIGITAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 37:**

Please produce ALL DOCUMENTS RELATING TO In-App Purchase, including contractual terms, mandates, policies, or practices requiring the use of In-App Purchase by U.S. iOS developers, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 38:**

Please produce ALL DOCUMENTS RELATING TO YOUR payment processing services, including but not limited to contractual terms, mandates, policies, or practices requiring the use of YOUR payment processing services by U.S. iOS developers, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 39:**

Please produce ALL DOCUMENTS illustrating how YOUR App Store-related payment processing operates, including but not limited to:

(a) timelines for transmitting funds to U.S. iOS developers after the sale of any iOS DIGITAL PRODUCT in YOUR App Store and ANY purported reasons and justifications for that timeline, as well as any rebuttals to or criticisms of that justification or the payment timeline;

(b) when YOUR payment processing must be used by U.S. iOS developers and consumers—including the processing of payments by consumers and the remittance of sums to developers—with respect to the sale of iOS DIGITAL PRODUCTS via or in YOUR App Store; AND

(c) ANY profits YOU have generated from the use of YOUR App Store-related payment processing by U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App

Store, tabulated at least on a monthly basis, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 40:**

Please produce ALL COMMUNICATIONS with any U.S. iOS developer constituting OR RELATING TO ANY complaint or comment regarding YOUR App Store OR any contractual terms, requirements, policies, or practices affecting U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store, including but not limited to those addressing or RELATING TO:

(a) YOU or YOUR status as the exclusive provider of distribution services for iOS DIGITAL PRODUCTS;

(b) YOU or YOUR status as the sole wholesale-level purchaser of iOS DIGITAL PRODUCTS for retail sale via or in YOUR App Store;

(c) YOUR App Store as the exclusive venue for selling iOS apps to consumers of iOS devices

(d) ANY of YOUR commission(s), fee(s), or discount(s) in wholesale-level pricing;

(e) ANY annual or other periodic fees collected from U.S. iOS developers; OR

(f) ANY pricing mandates (including minimum $.99 pricing or end-in-$.99 pricing).

**REQUEST FOR PRODUCTION NO. 41:**

Please produce exemplars of ALL forms, electronic or otherwise, from the inception of YOUR App Store through the date of judgment in this matter, that YOU use to advise U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold in or via YOUR App Store of:

(a) the number of iOS DIGITAL PRODUCTS sold over the reported time period;

(b) what was paid by consumers for all such iOS DIGITAL PRODUCTS; AND

(c) how much was or will be transmitted to those iOS developers, and when.

**REQUEST FOR PRODUCTION NO. 42:**

Please produce ALL DOCUMENTS RELATING TO relevant market (OR sub-market OR aftermarket) issues as they pertain to iOS DIGITAL PRODUCTS, YOUR App Store, iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store, consumers of iOS DIGITAL

PRODUCTS, or distribution or retail services YOU provide as to iOS DIGITAL PRODUCTS, from the inception of YOUR App Store through the date of judgment in this matter, including but not limited to:

(a) those DOCUMENTS RELATING TO YOUR statement in the parties' joint case management statement of September 30, 2019, ECF No. 54, that central legal issues in dispute include "whether Plaintiffs have defined legally cognizable markets";

(b) those DOCUMENTS identifying or otherwise RELATING TO what YOU consider to be substitutes for iOS DIGITAL PRODUCTS;

(c) those DOCUMENTS identifying or otherwise RELATING TO the U.S. markets, sub-markets, or aftermarkets served by YOUR App Store or the distribution or retail services YOU provide with respect to iOS DIGITAL PRODUCTS;

(d) those DOCUMENTS describing or otherwise RELATING TO YOUR presence in, or share of, ANY such U.S. market, sub-market, OR aftermarket;

(e) those DOCUMENTS referring to YOUR iPhones, iPads, OR iPods (touch or non-touch), OR any combination thereof, as occupying a unique or discrete market, sub-market, OR aftermarket;

(f) those DOCUMENTS referring to iOS as occupying a unique or discrete market, sub-market, OR aftermarket;

(g) those DOCUMENTS setting forth or otherwise RELATING TO YOUR U.S. market share, in any U.S. market, for iPhones, iPads, AND iPod touch devices;

(h) those DOCUMENTS identifying or otherwise RELATING TO consumer preferences or attitudes as to buying apps, software, or other iOS DIGITAL PRODUCTS for use on mobile phones, tablets, or music players, versus use on any other platform, whether purchased from an app store (including YOUR App Store) or any other outlet; AND

(i) those DOCUMENTS in which YOU have ever referred to iOS DIGITAL PRODUCTS or YOUR App Store (or YOUR distribution or retail services) as occupying a unique or discrete market, sub-market, or aftermarket.

**REQUEST FOR PRODUCTION NO. 43:**

Please produce ALL DOCUMENTS wherein YOU or others describe the unique OR different OR discrete OR superior attributes of the iOS ecosystem, including:

(a) iOS apps OR related iOS DIGITAL PRODUCTS;

(b) YOUR App Store; OR

(c) iPhone, iPad, or iPod touch devices.

**REQUEST FOR PRODUCTION NO. 44:**

Please produce ALL DOCUMENTS or other materials that YOU have provided to developers or prospective developers, including but not limited to transcripts OR videos of ANY presentations, tutorials, OR talks given to developers, whether at conferences OR otherwise:

(a) describing the differences or benefits between iOS AND ANY other operating system(s), whether for mobile, desktop, laptop, or other devices; OR

(b) explaining why developers ought to develop for the iOS platform and distribute their iOS DIGITAL PRODUCTS via YOUR App Store.

**REQUEST FOR PRODUCTION NO. 45:**

Please produce ALL DOCUMENTS in which you tout or describe ANY differences or benefits of iOS vs. ANY other operating system, whether for mobile, desktop, laptop, or other devices, to any audience, including consumers.

**REQUEST FOR PRODUCTION NO. 46:**

Please produce ALL DOCUMENTS in which you tout OR describe ANY differences or benefits of YOUR App Store vs. any other app or digital-product store OR software distributor OR retailer.

**REQUEST FOR PRODUCTION NO. 47:**

Please produce ALL DOCUMENTS describing OR explaining incompatibilities between iOS DIGITAL PRODUCTS programmed for used on iOS devices versus apps OR other digital products programmed for use on devices powered by the Android OS, the Windows OS, or any other operating system.

**REQUEST FOR PRODUCTION NO. 48:**

Please produce ALL DOCUMENTS in which the unique OR different OR superior attributes of the iOS ecosystem, including iOS apps or related iOS DIGITAL PRODUCTS, Apple iOS devices, were touted or described to anyone, including but not limited to consumers of YOUR devices, by YOU or anyone else.

**REQUEST FOR PRODUCTION NO. 49:**

Please produce ALL DOCUMENTS setting forth the number of (a) iPhones; (b) iPads; AND (c) iPod touch devices sold in the U.S. since the inception of YOUR App Store, broken down by month or quarter, onto which YOUR App Store client was pre-installed, OR onto which YOUR App Store client could be installed.

**REQUEST FOR PRODUCTION NO. 50:**

Please produce ALL DOCUMENTS IDENTIFYING ALL entities that YOU consider to be, or have considered to be, YOUR competitors, potential competitors, or would-be competitors, or that refer to ANY entity as a YOUR competitor, potential competitor, or would-be competitor, past, present, or future, with regard to:

(a) YOUR App Store;

(b) YOUR provision of distribution services for apps, in-app products, OR subscriptions; OR

(c) YOUR retailing of apps, in-app products, OR subscriptions.

**REQUEST FOR PRODUCTION NO. 51:**

Please produce ALL COMMUNICATIONS with ALL entities that YOU consider to be, OR have considered to be, YOUR competitors (past or present) OR potential OR future competitors with regard to:

(a) YOUR App Store, where the COMMUNICATION RELATES TO such competition (past or present) or potential competition in ANY way;

(b) YOUR provision of distribution services for apps, in-app products, OR subscriptions, where the COMMUNICATION RELATES TO such competition (past or present) or potential competition in ANY way; OR

(c) YOUR retailing of apps, in-app products, OR subscriptions, where the COMMUNICATION RELATES TO such competition (past or present) or potential competition in ANY way.

**REQUEST FOR PRODUCTION NO. 52:**

Please produce ALL DOCUMENTS RELATING TO ALL entities that YOU consider to be, OR have considered to be, YOUR competitors (past or present) OR potential OR future competitors with regard to:

(a) YOUR App Store;

(b) YOUR provision of distribution services for apps, in-app products, OR subscriptions; OR

(c) YOUR retailing of apps, in-app products, OR subscriptions,

AND where ANY such DOCUMENTS discuss OR describe ANY aspect of the competition, present, past, potential, or future, including but not limited to:

(i) the products purchased, distributed, sold, OR made available at retail;

(ii) the provision of, or the desire to provide, distribution or retail services for iOS DIGITAL PRODUCTS;

(iii) commissions, fees, charges, or wholesale-level price discounts;

(iv) sales, market share or position, or competitive position of YOU or any such entity;

(v) strengths/weaknesses of the competition (past or present) or potential competition;

(vi) supply and demand conditions;

(vii) ANY purported substitutes for distribution or retail services provided to U.S. iOS developers;

(viii) ANY purported substitutes for iOS DIGITAL PRODUCTS distributed via YOUR App Store; AND

(ix) ANY purported influences on the supply, demand, cost, or price of App Store distribution- or retail-related services from supposed competition or substitutes.

**REQUEST FOR PRODUCTION NO. 53:**

Please produce ALL DOCUMENTS RELATING TO any steps you have taken to discourage or prevent U.S. consumers of iOS devices from purchasing iOS DIGITAL PRODUCTS from ANY competitors OR would-be competitors to YOU AND YOUR App Store in iOS DIGITAL PRODUCT-related distribution services OR retail sales.

**REQUEST FOR PRODUCTION NO. 54:**

Please produce ALL COMMUNICATIONS or records of COMMUNICATIONS with any entity that also operates an app OR digital-product store, where such COMMUNICATIONS RELATE TO U.S. developer commissions, fees, OR wholesale-level payments for the sales of apps, other digital products, or subscriptions sold via or in YOUR App Store, that entity's app OR digital-product store, OR ANY other app OR digital-product store.

**REQUEST FOR PRODUCTION NO. 55:**

Please produce ALL DOCUMENTS regarding ANY meetings with anyone YOU have identified in response to RFP No. 52 above that RELATED TO YOUR App Store OR iOS DIGITAL PRODUCT-related distribution or retailing services.

**REQUEST FOR PRODUCTION NO. 56:**

Please produce ANY DOCUMENTS AND COMMUNICATIONS not produced in response to another RFP that RELATE TO Cydia (including threats by Apple to Cydia or consumers, AND DOCUMENTS referring to jailbreaking, hazards, voiding of warranties, or other consequences for consumers who purchased apps or other digital products via or in the Cydia store or app).

**REQUEST FOR PRODUCTION NO. 57:**

Please produce ALL DOCUMENTS RELATING TO, OR COMMUNICATIONS with, Epic Games OR any of its employees or officers, including but not limited to Tim Sweeney, where such DOCUMENTS or COMMUNICATIONS RELATE TO any complaints that Apple is behaving anti-competitively with respect to YOUR App Store, iOS DIGITAL PRODUCT-related distribution or retail services, Fortnite distribution or sales, or the Epic Game Store.

**REQUEST FOR PRODUCTION NO. 58:**

Please produce DOCUMENTS identifying ALL U.S. iOS developers whose iOS DIGITAL PRODUCTS have been sold via or in YOUR App Store from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 59:**

Please produce ALL DOCUMENTS indicating or otherwise RELATING TO the number of U.S. developers selling any iOS DIGITAL PRODUCT in YOUR App Store, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 60:**

Please produce DOCUMENTS identifying ALL U.S. iOS developers' iOS DIGITAL PRODUCTS that have been sold via or in YOUR App Store from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 61:**

Please produce ALL DOCUMENTS showing the number of U.S. devices—*i.e.*, iPhones, iPads, and iPod touch devices—onto which YOU installed YOUR App Store client, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 62:**

Please produce ALL DOCUMENTS setting forth or otherwise describing ALL sums of money YOU have transmitted or paid to ALL U.S. iOS developers whose iOS DIGITAL PRODUCTS were sold via or in YOUR App Store, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 63:**

Please produce ALL DOCUMENTS setting forth or otherwise describing ALL sums of money YOU have kept or transferred to YOU from the sale of ALL U.S. iOS developers' iOS DIGITAL PRODUCTS via or in YOUR App Store, including by way of commissions, fees, other charges, or discounts to remittances from retail sums collected, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 64:**

Please produce ALL DOCUMENTS setting forth or otherwise describing the retail and wholesale-level prices of ALL U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 65:**

Please produce ALL DOCUMENTS supporting the proposition that U.S. iOS developers (as distinct from consumers) have paid and currently pay 100% of YOUR commissions, fees, or discounts to retail pricing associated with the sale of their iOS DIGITAL PRODUCTS via or in YOUR App Store, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 66:**

Please produce ALL results of surveys of developers, including iOS developers, or consumers, RELATING TO YOUR App Store OR YOUR iOS DIGITAL PRODUCT-related distribution or retailing services.

**REQUEST FOR PRODUCTION NO. 67:**

Please produce ALL COMMUNICATIONS with any developer OR other entity that has refused to sell ANY iOS DIGITAL PRODUCT in YOUR App Store due to the contention that YOU operate YOUR App Store in an anti-competitive manner or that YOUR iOS DIGITAL PRODUCT-related commissions OR fees are too high (or that the wholesale-level prices YOU pay to developers are too low).

**REQUEST FOR PRODUCTION NO. 68:**

Please produce ALL DOCUMENTS constituting or RELATING TO developer complaints regarding ANY aspect of YOUR App Store or iOS DIGITAL PRODUCT-related business, including but not limited to YOUR status as the exclusive distributor AND retailer of iOS DIGITAL PRODUCTS, YOUR payment processing system OR any requirements related thereto, YOUR commissions, fees, or wholesale-level payments, YOUR pricing mandates, or the services YOU purport to provide to U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 69:**

Please produce ALL DOCUMENTS setting forth ALL transactional data RELATING TO the distribution AND sales of U.S. iOS developers' iOS DIGITAL PRODUCTS in YOUR App Store, from YOUR App Store's inception through the date of judgment in this matter, including those

providing details of, OR otherwise RELATING TO:

(a) each AND every sale of an iOS DIGITAL PRODUCT via or in YOUR App Store, including the date thereof;

(b) the volume of consumer visits to, and purchases of iOS DIGITAL PRODUCTS from, YOUR App Store;

(c) the name OR identify of each iOS DIGITAL PRODUCT sold in YOUR App Store;

(d) the name of each U.S. iOS developer whose iOS DIGITAL PRODUCT was sold via or in YOUR App Store;

(e) the retail price for each iOS DIGITAL PRODUCT sold in YOUR App Store; AND

(f) the commissions or fees paid to YOU by U.S. iOS developers, AND wholesale (or wholesale-level) or other monies paid to U.S. iOS developers, for each sale of their iOS DIGITAL PRODUCTS via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 70:**

Please produce ALL DOCUMENTS setting forth, identifying, or specifying all sums of money that each U.S. iOS developers has paid to YOU, or that YOU have kept or collected, that in any way RELATES TO sale of their iOS DIGITAL PRODUCTS via or in YOUR App Store, from YOUR App Store's inception through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 71:**

Please produce ALL DOCUMENTS setting forth or otherwise RELATING TO YOUR revenues from YOUR App Store from its inception through the date of judgment in this matter, including but not limited to those specifying separately YOUR revenues generated in connection with, OR RELATING TO, ALL U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store, tabulated at least on a monthly basis, and broken down by category and type, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 72:**

Please produce ALL DOCUMENTS specifying by type AND category, OR otherwise RELATING TO, ALL costs OR expenses, from the inception of YOUR App Store through the date

of judgment in this matter, that YOU contend YOU have incurred, are incurring now, or will incur in the future, or that otherwise RELATE TO:

(a) opening YOUR App Store, including but not limited to those DOCUMENTS that specify costs OR expenses corresponding to U.S. operations or related services;

(b) operating YOUR App Store, including but not limited to those DOCUMENTS that specify costs OR expenses corresponding to U.S. operations or related services;

(c) providing distribution OR retailing services to U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store;

(d) selling U.S. iOS developers' iOS DIGITAL PRODUCTS via or in YOUR App Store; OR

(e) YOUR App Store OR iOS DIGITAL PRODUCT-related distribution and retailing services in any other way.

**<u>REQUEST FOR PRODUCTION NO. 73</u>:**

Please produce ALL DOCUMENTS setting forth OR otherwise RELATING TO YOUR profits AND profit margins for all iOS DIGITAL PRODUCTS sold via or in YOUR App Store, including but not limited to DOCUMENTS setting forth specifically AND separately ALL such profits and profit margins RELATING TO U.S. iOS developers' iOS DIGITAL PRODUCTS sold via or in YOUR App Store, from YOUR App Store's inception through the date of judgment in this matter.

**<u>REQUEST FOR PRODUCTION NO. 74:</u>**

Please produce ALL DOCUMENTS RELATING TO any losses YOU content YOU have incurred in connection with YOUR App Store, from its inception through the date of judgment in this matter, including but not limited to those RELATED TO the distribution and sales of U.S. iOS developers' iOS DIGITAL PRODUCTS therein.

**<u>REQUEST FOR PRODUCTION NO. 75</u>:**

Please produce ALL transcripts of ALL earnings OR other calls with, or other presentations made to, any industry analysts, consultants, industry fora, the press, investors, shareholders, the SEC, or any other third parties that RELATE TO, or in which YOU refer in any way to, YOUR App Store or iOS developers.

**REQUEST FOR PRODUCTION NO. 76:**

Please produce ALL DOCUMENTS relating to the discoverability by consumers of iOS DIGITAL PRODUCTS sold via or in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 77:**

Please produce ALL DOCUMENTS OR COMMUNICATIONS containing or RELATING TO complaints regarding the high number of iOS DIGITAL PRODUCTS in YOUR App Store OR ANY issue(s) regarding the discoverability of such products in YOUR App Store.

**REQUEST FOR PRODUCTION NO. 78:**

Please produce ALL DOCUMENTS setting forth or otherwise describing the number of iOS DIGITAL PRODUCTS available for sale in YOUR App Store, by month, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 79:**

Please produce DOCUMENTS setting forth or otherwise describing the number of iOS DIGITAL PRODUCTS YOU have approved weekly OR monthly for sale via or in YOUR App Store from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 80:**

Please produce ALL DOCUMENTS supporting or rebutting the propositions that YOU have or have had business or other justifications for ALL or some of the anticompetitive behavior alleged in plaintiffs' consolidated complaint, including as to YOUR 30% (or 15%) commission (or as to the wholesale-level price YOU pay developers for iOS DIGITAL PRODUCTS sold via or in YOUR App Store), YOUR pricing mandates as described therein, and YOUR exclusivity mandates OR features (including YOUR status as the exclusive provider of distribution services RELATING TO, and retailer of, iOS DIGITAL PRODUCTS).

**REQUEST FOR PRODUCTION NO. 81:**

Please produce ALL DOCUMENTS regarding ANY purported business justifications for YOUR requirement that U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store must use YOUR payment processing system.

**REQUEST FOR PRODUCTION NO. 82:**

Please produce ALL business plans, strategic plans, expansion OR retrenchment plans, whether short-range or long-range, AND presentations to YOUR management or executive committees or boards of directors, RELATING TO YOUR App Store OR ANY iOS developers.

**REQUEST FOR PRODUCTION NO. 83:**

Please produce DOCUMENTS sufficient to explain any requirement(s) that U.S. iOS developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store use StoreKit.

**REQUEST FOR PRODUCTION NO. 84:**

Please produce ALL DOCUMENTS setting forth or otherwise RELATING TO any fees, commissions, OR other charges that U.S. iOS developers must pay to have their iOS DIGITAL PRODUCTS included in Apple Arcade, OR setting forth or otherwise RELATING TO sums they earn OR are paid when their iOS DIGITAL PRODUCTS are included in Apple Arcade.

**REQUEST FOR PRODUCTION NO. 85:**

Please produce ALL DOCUMENTS explaining ANY differences RELATING TO YOUR iOS DIGITAL PRODUCT-distribution or retailing services, or commissions, fees, charges, or wholesale-level payments, applicable to U.S. developers whose iOS DIGITAL PRODUCTS are sold via or in YOUR App Store for iPads powered by YOUR iPad OS instead of iOS.

**REQUEST FOR PRODUCTION NO. 86:**

Please produce ALL transcripts or videos of every iPhone, iPad, and iPod touch launch since 2008.

**REQUEST FOR PRODUCTION NO. 87:**

Please produce ALL transcripts or videos RELATING TO YOUR launch of YOUR App Store, OR ANY other presentations YOU have made with respect to YOUR App Store OR iOS developers, including at ANY product launches OR developer conferences, from the inception of YOUR App Store through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 88:**

Please produce ALL DOCUMENTS setting forth, describing, or explaining ALL commissions, fees, AND any other charges for products distributed or sold via or in YOUR Mac App Store.

**REQUEST FOR PRODUCTION NO. 89:**

Please produce ALL insurance or indemnity agreements that may provide a source for payment of any judgment entered against YOU in this matter.

DATED: October 17, 2019

HAGENS BERMAN SOBOL SHAPIRO LLP

By *\/s/ Steve W. Berman*
Steve W. Berman

Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Interim Lead Class Counsel and Attorneys for the Cameron Plaintiffs and Proposed Classes*

Joseph M. Vanek (*pro hac vice*)
Eamon Kelly (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Telephone: (312) 676-5845
Facsimile: (312) 641-6492
jvanek@sperling-law.com
ekelly@sperling-law.com

*Attorneys for Pure Sweat Basketball, Inc., and the Proposed Classes, and Executive Committee Member for the Proposed Classes*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
guido@saveri.com
rick@saveri.com
cadio@saveri.com

Kimberly A. Justice (*pro hac vice*)
Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN, LLC
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
kjustice@fklmlaw.com
jjagher@fklmlaw.com

Douglas A. Millen (*pro hac vice*)
Brian M. Hogan (*pro hac vice*)
FREED KANNER LONDON & MILLEN, LLC
2201 Waukegan Road, #130
Bannockburn, IL 60015
Telephone: (224) 632-4500
dmillen@fklmlaw.com
bhogan@fklmlaw.com

*Attorneys for Barry Sermons and the Proposed Classes, and Executive Committee Members for the Proposed Classes*

# DECLARATION OF SERVICE BY ELECTRONIC MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a resident of the United States and employed in the City of Seattle, in the County of King, over the age of 18 years, and not a party to or interested party in the within action; and that declarant's business address is 1301 Second Ave., Ste. 2000, Seattle, WA, 98101.

2. That on October 17, 2019, declarant served via electronic mail DEVELOPER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT APPLE INC. to the parties listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of October, 2019, at Seattle, Washington.

s/ *Robert F. Lopez*
ROBERT F. LOPEZ

***Cameron, et al. v. Apple Inc.***
**No. 3:19-cv-03074-YGR (N.D. Cal.)**
**Service/Distribution List**

| | |
|---|---|
| Theodore J. Boutrous, Jr.<br>Richard J. Doren<br>Daniel G. Swanson<br>Melissa Phan<br>**GIBSON, DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br>tboutrous@gibsondunn.com<br>rdoren@gibsondunn.com<br>dswanson@gibsondunn.com<br>mphan@gibsondunn.com<br><br>Cynthia E. Richman<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br>crichman@gibsondunn.com<br><br>*Counsel for Defendant Apple Inc.* | Steve W. Berman<br>Robert F. Lopez<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>1301 Second Avenue, Suite 2000<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>robl@hbsslaw.com<br><br>Shana E. Scarlett<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>Telephone: (510) 725-3000<br>Facsimile: (510) 725-3001<br>shanas@hbsslaw.com<br><br>*Interim Lead Class Counsel and Attorneys for the Cameron Plaintiffs and Proposed Classes* |