# EXHIBIT C

RACHELE R. BYRD (190634)
byrd@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
MATTHEW M. GUINEY (*pro hac vice*)
guiney@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

*Plaintiffs' Interim Class Counsel*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE APPLE iPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR<br><br>**PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. – SET NO. 2**<br><br>JUDGE: Hon. Yvonne Gonzalez Rogers<br>CTRM: 1 – 4th Floor |

PROPOUNDING PARTY: PLAINTIFFS ROBERT PEPPER, STEPHEN H. SCHWARTZ, EDWARD W. HAYTER AND EDWARD LAWRENCE

RESPONDING PARTY: DEFENDANT APPLE INC.

SET NO.: TWO

PLEASE TAKE NOTICE that pursuant to rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter and Edward Lawrence ("Plaintiffs") by and through their undersigned counsel, hereby request that Defendant Apple Inc. ("Apple" or "Defendant") produce the documents hereinafter described.

Defendant shall serve a written response hereto and produce the following described documents for inspection and copying within thirty (30) days of service hereof at the law offices of Wolf Haldenstein Adler Freeman & Herz LLP, Symphony Towers, 750 B Street, Suite 1820, San Diego, California 92101, or at such other place upon which the parties may agree.

**INSTRUCTIONS**

1. In producing documents and other materials in response to this document request, you are requested to furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or your partners, agents, employees, representatives, subsidiaries, affiliates or investigators, or by your attorneys or their agents, employees or investigators.

2. Defendant shall produce the original of each document described below or, if the original is not available, then a copy thereof; and in any event also all non-identical copies which differ from the original or from the other copies produced for any reason, including the making of notes thereon (on either the front or back of the document), and drafts. A document also shall be considered non-identical and must be produced if it was kept in a different file from another copy of the same document (which otherwise was identical). For example, and including without limitation, if the same document was kept in the usual course of business in the files of two different corporate directors then both copies must be produced even if they were otherwise identical.

3. All documents produced shall be bound or stapled in the same manner as the original.

4. All documents shall be produced as they are kept in the usual course of business, or the documents shall be organized and labeled to correspond to the categories in the requests.

5. Documents shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

6. Production shall include the title or the like however denominated of the file, folder, binder, cover or container (or the like however denominated) in which the documents were kept in the ordinary course of business.

7. In your response to each request, identify by Bates number, including prefix, or otherwise the identity of the person, department, branch, division or office from whose files the document(s) are being produced.

8. All documents that originated in electronic form shall be produced in their native electronic form, with metadata. These documents shall be produced with an accompanying index, to the extent one exists, that lists:

- Beg doc # - Document first Bates number;
- End doc # - Document last Bates number;
- Secondary begin doc # - First Bates number of unit;
- Secondary end doc # - End Bates number of unit (last page of last attachment to doc);
- Owner – Name of person whose files the document comes from;
- Doc date – date of file;
- File size – number of bytes in the file;
- File name – name of the file;
- Document type – document type;
- Doc title – re: line of document;
- Author – Author;
- Recipient – recipients;
- cc- carbon copies; and
- bcc – blind copies.

9. All other documents shall be produced in searchable PDF format to the extent they are available, or can be made available, in that format.

10. All electronic mail shall be provided in native e-mail format (e.g., .pst, .nsf, .xls, and .doc), with metadata, with the following fields combined in an accompanying index:

- Owner – Name of person whose e-mail file or other e-files are being provided;
- File Name – Name of file;
- File Date – Date of file; and
- File Size – Size of file

11. For those paper documents which have been created digitally but executed with a hand-written signature or physical seal, then both the digital version and the signed paper copy should be produced.

12. You are instructed to produce each document in response to this document request in its entirety, without deletion or excision, regardless of whether you consider the entire document to be relevant or responsive. If any requested document cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document, is being withheld, and the reason that document or portion is being withheld.

13. If you object to any request in this document request on the ground that it is overly broad, you are instructed to produce documents in response to the request as narrowed to conform to your objection within the period allowed for a response and to state in your responses: (1) how you narrowed the request, and (2) the reason why you claim the request is overly broad. Plaintiffs do not waive the right to compel the production as originally sought from Apple.

14. If you assert any claim of privilege, whether attorney-client, work-product or otherwise, in objecting to any of the document requests herein, and withhold any responsive document pursuant to that objection, identify each document by providing the following: (a) the title and description of the document, the number of pages, and the Bates-number range; (b) the subject matter or general nature of the document (without disclosing its contents); (c) the identity and position of its author; (d) the date it was communicated (or prepared, if that is the more relevant date); (e) the identity and position of all addressees and recipients of the communication; (f) the document's present location; (g) the specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and (h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

15. If a document responsive to a document request has been destroyed or discarded, identify the document in the same manner in which the privileged documents are to be identified as stated above.

16. If no documents responsive to a particular document request exist or are within your possession, custody, or control, you must so state in your response to the request.

17. This request is continuing so as to require supplemental production pursuant to rule 26(a) of the Federal Rules of Civil Procedure. If you discover, obtain possession of, or create, varying or additional documents responsive to the request between the time of the original response and the time set for trial, notice of such supplemental documents and copies thereof shall be served on Plaintiffs' counsel no later than ten (10) days after the discovery of any such documents, but in no event later than one week before the first day of trial.

## DEFINITIONS

1. "ADWARE" shall mean software applications that, once downloaded, automatically display or download advertising material.

2. "ANDROID" shall mean Google's HANDHELD DEVICE operating system.

3. "APP" shall mean a software application for a HANDHELD DEVICE.

4. "APP DEVELOPER" shall mean any PERSON who developed one or more APPS.

5. "APP MARKETPLACE" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, YOUR APP STORE, the Samsung Galaxy Store, Google Play, Android Market, Amazon Appstore, Amazon Underground, the Microsoft Store, the Chrome Web Store, Blackberry World, Epic Game Store, Steam, Aptoide, and GetJar.

6. "APP STORE" shall mean YOUR iOS App Store. Unless otherwise specified, "APP STORE" is limited to YOUR U.S. storefront.

7. "APPLE," "YOU" or "YOUR" means Apple Inc., including any agents or persons acting on its behalf or under its control, and its branches, divisions, subsidiaries, affiliates, representatives, employees, attorneys and investigators.

8. "COMMUNICATION" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

9. "CONCERNING" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

10. "DOCUMENT" and "DOCUMENTS" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; reports; books; records, reports, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, reports, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

11. "HANDHELD DEVICE" shall mean any of smartphones, tablets, or iPod Touch devices.

12. "IN-APP PRODUCTS" shall mean products and services available for purchase within an APP, INCLUDING additional features, ad-free options, and subscriptions.

13. "INCLUDING" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

14. "MALWARE" shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

15. "PERSON" shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

16. "PERSONAL INFORMATION" shall mean unique personal information about the user of a HANDHELD DEVICE, INCLUDING such user's physical location, contact information, address book and contacts, APP usage, online purchase activity, web-browsing history, financial information, and health information.

17. "REVIEW" and "REVIEWING" shall mean, with respect to APPS, any process of screening, evaluating, analyzing, approving, or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in an APP MARKETPLACE or before or after the installation of APPS onto a HANDHELD DEVICE.

18. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

19. "All" and "each" shall be construed as "all and each."

20. The use of the singular form of any word includes the plural and vice versa.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant time period for these document requests is from January 1, 2006 through the present date.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 31:**

All market studies CONCERNING prices ending in $.99 that YOU commissioned or reviewed in connection with the APP STORE.

**REQUEST FOR PRODUCTION NO. 32:**

All written submissions and transcripts of interviews YOU or YOUR former employees gave in connection with the House Judiciary Committee's investigation of Competition in Digital Markets.

**REQUEST FOR PRODUCTION NO. 33:**

DOCUMENTS (INCLUDING underlying data) sufficient to show, for each year since 2008:

(a) the number and percentage of YOUR U.S.-registered HANDHELD DEVICES that have installed any APP containing MALWARE;

(b) the number and percentage of APPS installed from YOUR APP STORE that contained MALWARE;

(c) the number and percentage of APPS that you rejected from the APP STORE that contained MALWARE;

(d) the number of person hours, per APP, on average or otherwise, that YOU spent REVIEWING APPS before publishing them in YOUR APP STORE; and

(e) the percentage of APPS that underwent human, as opposed to automated, REVIEW before being published in YOUR APP STORE.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUNICATIONS between YOU and any U.S. wireless telecommunications provider (INCLUDING Verizon Wireless, AT&T Mobility, T-Mobile U.S., or Sprint Corporation) CONCERNING any of the following subjects:

(a) the presence or potential presence of APPS that contain MALWARE or ADWARE or that misuse PERSONAL INFORMATION on any APP MARKETPLACE;

(b) the presence or potential presence on any APP MARKETPLACE of any APPS rejected, removed, or hidden from any APP MARKETPLACE;

(c) APP DEVELOPERS whom YOU have temporarily or permanently restricted from publishing APPS in YOUR APP STORE; and

(d) competition between or among APP MARKETPLACES, or between or among HANDHELD DEVICE operating systems.

**REQUEST FOR PRODUCTION NO. 35:**

One copy of each of YOUR agreements or contracts with APP DEVELOPERS effective during the period since YOU launched YOUR APP STORE in 2008 that included a revenue share other than 30%.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS CONCERNING the performance or predicted performance of YOUR APP STORE, INCLUDING reports containing data, analysis, and/or forecasts regarding: usage of the APP STORE by users of YOUR HANDHELD DEVICES; downloads of APPS from YOUR APP STORE; submissions by APP DEVELOPERS of APPS for publication in YOUR APP STORE; and sales of APPS and IN-APP PRODUCTS in YOUR APP STORE.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS CONCERNING any differences between the APPS published in YOUR APP STORE and the same or similar APPS published on any other APP MARKETPLACE(S), INCLUDING any differences in the APPS' design, functionality, performance, features, price, monetization strategy, or display of in-APP advertising.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS CONCERNING competition between any APP MARKETPLACE and YOUR APP STORE, INCLUDING any DOCUMENTS describing reasons that consumers or APP DEVELOPERS may prefer YOUR APP STORE over an APP MARKETPLACE available on ANDROID, or vice versa.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS CONCERNING competition in the United States between HANDHELD DEVICES, INCLUDING any such DOCUMENTS CONCERNING: consumer preferences for a given HANDHELD DEVICE; the reason(s) consumers selected YOUR HANDHELD DEVICE(S) over other HANDHELD DEVICE(S), or vice versa; the market shares of YOUR HANDHELD DEVICES and other HANDHELD DEVICES; competition between YOUR HANDHELD DEVICES and other HANDHELD DEVICES CONCERNING security, safety, and/or the use of PERSONAL INFORMATION; and competition between YOUR

HANDHELD DEVICES and other HANDHELD DEVICES CONCERNING the availability of APPS or APP MARKETPLACES.

**<u>REQUEST FOR PRODUCTION NO. 40</u>:**

All DOCUMENTS CONCERNING competition related to the availability of APPS or APP MARKETPLACES on any HANDHELD DEVICE.

**<u>REQUEST FOR PRODUCTION NO. 41</u>:**

All DOCUMENTS CONCERNING consumer preferences for a given APP MARKETPLACE on HANDHELD DEVICES.

**<u>REQUEST FOR PRODUCTION NO. 42</u>:**

All DOCUMENTS CONCERNING any studies, analyses, reports, or surveys YOU have created, done, or commissioned regarding U.S. consumer preferences for and attitudes towards HANDHELD DEVICES, INCLUDING any studies, analyses, reports, or surveys CONCERNING: consumers' perceptions of the price, design, performance, security, privacy, innovativeness, and usability of different HANDHELD DEVICES; consumers' attitudes towards the availability of APPS or APP MARKETPLACES on different HANDHELD DEVICES; why consumers selected a given HANDHELD DEVICE; and whether consumers have ever switched between different brands of HANDHELD DEVICES and the reason(s) for such switching.

**<u>REQUEST FOR PRODUCTION NO. 44</u>:**

ALL DOCUMENTS CONCERNING:

(a) the presence or potential presence of MALWARE or ADWARE in APPS installed by U.S. users of YOUR HANDHELD DEVICES;

(b) the monitoring, collection, and/or use by APPS of the PERSONAL INFORMATION of U.S. users of YOUR HANDHELD DEVICES;

(c) allegedly fraudulent or deceptive practices by APPS installed by U.S. users of YOUR HANDHELD DEVICES; and

(d) instances when YOUR HANDHELD DEVICES were allegedly damaged or rendered permanently or temporarily unusable or otherwise experienced a decrease in performance because of an APP.

**REQUEST FOR PRODUCTION NO. 45:**

DOCUMENTS sufficient to identify all fields in all of YOUR databases that contain information CONCERNING transactions that have occurred in YOUR APP STORE.

**REQUEST FOR PRODUCTION NO. 46:**

DOCUMENTS sufficient to explain the meanings of all fields identified in response to Request for Production No. 45.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS setting forth all transactional data CONCERNING the distribution and sale of digital products in YOUR APP STORE, including transactional data from U.S. and foreign storefronts, from the inception of the APP STORE through the date of judgment in this matter.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS CONCERNING demographic information and other consumer characteristics YOU collect about consumers who make purchases from YOUR APP STORE, including a consumer's age, income, ethnicity, level of education, monthly or annual amount spent in YOUR APP STORE, devices used, levels of usage by device, most recent use by device, and usage of each APP.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS CONCERNING any studies, analyses, reports, or surveys YOU have created, conducted, commissioned or reviewed regarding the costs associated with switching between different brands of HANDHELD DEVICES.

**REQUEST FOR PRODUCTION NO. 50:**

DOCUMENTS (INCLUDING underlying data) sufficient to show, for each year since 2006:

(a) the number and percentage of YOUR U.S.-registered personal computers that have installed any APP containing MALWARE; and

(b) the number and percentage of APPS installed from YOUR Mac App Store on U.S.-registered personal computers that contained MALWARE.

**REQUEST FOR PRODUCTION NO. 51:**

All COMMUNICATIONS between YOU and Analysis Group CONCERNING YOUR APP STORE.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS or data that YOU provided to Analysis Group in connection with the reports it prepared entitled, "Apple's App Store and Other Digital Marketplaces: A Comparison of Commission Rates" and "How Large is the Apple App Store Ecosystem?"

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS CONCERNING YOUR decision to change YOUR app review procedure related to bug fixes that YOU announced on August 31, 2020.

**REQUEST FOR PRODUCTION NO. 54:**

DOCUMENTS sufficient to identify all fields in YOUR databases or DOCUMENTS that contain information CONCERNING YOUR costs or expenses associated with running YOUR APP STORE.

DATED: September 1, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
RACHELE R. BYRD
BRITTANY N. DEJONG

Rachele R. Byrd
RACHELE R. BYRD

750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MARK C. RIFKIN
MATTHEW M. GUINEY
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/545-4677

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C**
DAVID C. FREDERICK
1615 M Street, NW Suite 400
Washington, D.C. 20036
Telephone: 202/326-7900

*Plaintiffs' Interim Class Counsel*

APPLE2:26412

**CERTIFICATE OF SERVICE**

I, Kathryn Cabrera, hereby certify that I am a citizen of the United States, over the age of eighteen, and not a party to the within action. I hereby certify that on September 1, 2020, I delivered the foregoing **PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. – SET NO. 2**, via electronic mail to the counsel listed on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 1st day of September 2020 at San Diego, California.

KATHRYN CABRERA

PLAINTIFFS' INTERIM CLASS COUNSEL

Rachele R. Byrd
Brittany N. DeJong
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
619/239-4599
619/234-4599 (fax)
byrd@whafh.com
dejong@whafh.com

Mark C. Rifkin
Matthew M. Guiney
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY 10016
212/545-4600
212/545-4677 (fax)
rifkin@whafh.com
guiney@whafh.com

David C. Frederick
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW Suite 400
Washington, D.C. 20036
202/326-7900
202/326-7999 (fax)
dfrederick@kellogghansen.com

COUNSEL FOR DEFENDANT APPLE INC.

Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Jay P. Srinivasan
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
213/229-7000
213/229-7520 (fax)
tboutrous@gibsondunn.com
rdoren@gibsondunn.com
dswanson@gibsondunn.com
jsrinivasan@gibsondunn.com

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
202/955-8234
202/530-9691 (fax)
crichman@gibsondunn.com

Veronica S. Lewis
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
214/698-3100
214/571-2900 (fax)
vlewis@gibsondunn.com

Ethan Dettmer
Eli M. Lazarus
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
415/393-8200
415/393-8306 (fax)
edettmer@gibsondunn.com
elazarus@gibsondunn.com

DEVELOPER PLAINTIFFS' INTERIM CLASS COUNSEL

Steve w. Berman
Robert F. Lopez
Ted Wojcik
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Shana E. Scarlett
Benjamin J. Siegel
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
510/725-3000
510/725-3001 (fax)
shanas@hbsslaw.com
bens@hbsslaw.com