# EXHIBIT D

# Lazarus, Eli M.

**From:** Lazarus, Eli M.
**Sent:** Thursday, September 10, 2020 1:03 PM
**To:** Ted Wojcik
**Cc:** byrd@whafh.com; bens@hbsslaw.com; Dettmer, Ethan; Richman, Cynthia; Swanson, Daniel G.; Srinivasan, Jay P.; Phillips, Harry; Craig, Dana Lynn; Dansey, Lauren; robl@hbsslaw.com; shanas@hbsslaw.com; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; steve@hbsslaw.com
**Subject:** RE: Apple App Store Antitrust

**Categories:** Green Category

Ted,

We received the email you sent yesterday morning. We were preparing to send you the responses below to the points raised in your August 28 email, and additional information that we are able to share with you at this point. On the questions that remain open, we are working hard to determine answers in short order. To the extent we discuss these issues by phone, we think that it would be more productive to do so next week.

As you know, Apple has produced an enormous volume of documents to the plaintiffs over the last seven months, and we are near the end of our discussions that will lead to production of a further enormous amount of data. We have done this under challenging circumstances, and have also agreed to an extension of the litigation schedule at your request.

**I. Data production**

As you know, Apple has now produced a second transactional data sample. To be clear about the sequence of events leading up to this second sample, Apple communicated to Plaintiffs on February 10, 2020, before it was clear that the coronavirus pandemic would affect this country, that Apple expected to substantially complete production of documents and data in July 2020. Plaintiffs first requested on July 9 that the transactional data be produced in relational tables. On July 23, we produced to you a sample of 100,000 rows of transactional data. In an email on Monday, August 10 (following a phone conversation on Friday, August 7), you asked for a second sample production, this time with 100 million records in relational tables. After conferring with our client, we agreed on August 14 to produce this second, massive sample. As we have made clear, producing data in relational tables, including for this sample, is not a simple task. It requires significant engineering work to assemble the tables, conduct quality control, and otherwise prepare the data for production. Apple worked diligently to prepare the sample, and we produced it to you on Friday, September 4, correcting an error in it on Sunday, September 6.

We look forward to discussing any questions you may have after reviewing the sample, and completing the full production as soon as possible. As we stated on August 14 and at other times, the purpose of the sample is to resolve any issues with the data before the full production, which Apple will make only once. But let us also be clear that any additional requests that Plaintiffs make (like those made on July 9 for relational tables or August 10 for a new sample production) may increase the time required to complete the full production, because (as we have explained) gathering and producing this huge amount of data is a significant engineering project, and changing the parameters of that project necessarily adds to the work and extends the timing.

For the final production of transactional data, can each plaintiff group please let us know where you would like the hard drives delivered?

**II. Fields**

You have asked how Apple determines what commission to charge on a specific transaction. As we have previously discussed, the commission rate for subscriptions depends on the age of the subscription, which is observable in the data by reviewing the earliest purchase by a given consumer of a given subscription. As we have stated before, our investigation has found that the transactional data does not include standalone information on the age of a subscription. You have also asked for data concerning subscription groups, which also may bear on commission rate. We have been able to locate data listing subscription groups, which you will see reflected in the sample production. However, Apple is not obligated to analyze the data for plaintiffs and will not produce code that it uses to analyze the transactional data in assigning a commission rate.

We would make two additional notes regarding data fields to be included in the final production of transactional data. First, for privacy purposes, Apple has anonymized the Consumer ID data that you see in the sample production by assigning each unique Consumer ID a unique hash value. Accordingly, each consumer account can still be tracked by a unique number, it will simply be a different number than the one that Apple uses internally and in dealings with the given customer. Accordingly, this hashing will have no effect on the ability of plaintiffs, Apple, and their consultants to analyze the data.

Second, you will see that the sample data includes two date fields: utc_rptg_dt and utc_epoch_change_ts. The utc_rptg_dt reflects only the date of a transaction. The utc_epoch_change_ts field reflects the data and time of the transaction down to the second. However, utc_epoch_change_ts is expressed as a number: the number of seconds that passed between midnight on the morning of 1/1/1970 and the transaction. This is the way that the data is maintained. Accordingly, utc_epoch_change_ts requires a conversion to render a human-readable date and time. In the full production, Apple intends to produce only utc_epoch_change_ts.

**III. Cost and expense data**

We have responded previously that we are investigating to determine answers to questions raised in Ben Siegel's July 9 letter. Our investigation continues, but please see below the information that we are able to share at this point:

- Developer Plaintiffs' question: Pursuant to your continuing investigation, have you yet found any databases in Apple's possession, custody, or control which have data related to the costs of running the App Store? If so, please confirm that Apple will produce these databases.
  - Apple response: Our investigation has not identified a database that specifically sets forth data on the costs of running the App Store. However, our investigation is ongoing.
- Developer Plaintiffs' question: Even if not specific to the App Store, are there any databases in Apple's possession, custody, or control which have data related to the costs to Apple of running its business(es), which would include (but not necessarily be limited to) the App Store? If so, please confirm that Apple will produce the referenced data.
  - Apple response: Our investigation has not identified a database that specifically sets forth data on the costs of running Apple's business(es) that include the App Store. However, our investigation is ongoing.
- Developer Plaintiffs' question: Are there any central or other files in Apple's possession, custody, or control which have documents or data related to the costs of running the App Store? If so, please confirm that Apple will produce such documents and data.
  - Apple response: Our investigation has identified certain data in Apple's possession relating to costs of running the App Store or costs that include costs of running the App Store. We are in the process of producing these, and note that we have also produced other costs-related documents in Apple's custodial productions. Our investigation has not identified any central repository of such data, but our investigation is ongoing.
- Developer Plaintiffs' question: Even if not specific to the App Store, are there any central or other files in Apple's possession, custody, or control which have documents or data related to the costs to Apple of running its business(es), which would include (but not necessarily be limited to) the App Store? If so, please confirm that Apple will produce such documents and data.
  - Apple response: See response immediately above.

With respect to certain produced documents that contained embedded links to other documents that you have not been able to find in Apple's productions, Ben's letter asked:

- Developer Plaintiffs' question: Can Apple explain why the underlying budget/cost documents were not produced as attachments with the email correspondence identified above?
  - Apple response: Our investigation into this issue has found that the links you identified are not from file storage systems but rather from file transfer systems. These are systems that facilitate the transfer of files that, for example, are too large or otherwise inconvenient to attach to an email, and are not intended for file storage. Depending on the type of link, it might default to expire after 24 hours. Accordingly, the documents referenced in the links were not produced as attachments to emails because they were not in fact attachments. However, we have found no reason to believe that the transferred documents were not maintained in the locations where they were originally stored, and indeed our custodial document productions have, as noted, included documents related to budgeting and costs.
- Developer Plaintiffs' question: Can Apple reproduce the referenced correspondence with budget/cost documents included?
  - Apple response: Because, as explained above, the links you refer to are for file transfer systems rather than file storage systems, it is not possible to retrieve the files for production from those links. There is no reliable way to collect the exact document that had been transferred via the link. However, again, we have seen no indication that the linked documents were not maintained in the locations where they were originally stored, and indeed our custodial document productions include documents related to budgeting and costs.
- Developer Plaintiffs' question: Can Apple confirm to Plaintiffs that all responsive and relevant documents that appear to have been originally linked to the produced correspondence have themselves been produced?
  - Apple response: See response immediately above.
- Developer Plaintiffs' question: If Apple separately produced the budget/cost documents discussed in the identified correspondence, and/or produced similar budget/cost documents, can Apple please identify the Bates numbers for these documents?
  - Apple response: As stated above, our custodial document productions include documents related to budgeting and costs, but Apple is not obligated to identify them for plaintiffs by Bates number. We encourage you to review the documents that Apple has produced to date.
- Developer Plaintiffs' question: Has Apple explored whether there is a central (or other) file or central (or other) files with the types of budget/cost documents identified in these emails (it appears that they were at some point stored in a system accessible by link for Apple employees)?
  - Apple response: Our investigation has not identified any such central or other collection of budget/cost documents.

Ben's July 9 letter further asked:

- Developer Plaintiffs' question: When have the costs of running the App Store, either separately or as part of larger discussion of Apple's business costs, been part of internal budget and/or headcount or cost center discussions? If so, can you describe? If so, what documents have been used for those discussions? If so, has/will Apple produce those documents?
  - Apple response: These questions are more appropriate for deposition.
- Developer Plaintiffs' question: Has Apple completed production of responsive cost documents from the identified custodians? If not, when will such productions be complete?
  - Apple response: As you know, our document production was substantially complete as of July 31, 2020. We are preparing to make "clean-up" productions, and it is not yet clear to what extent these may include documents relating to costs.
- Developer Plaintiffs' question: [H]as Apple searched the custodial files of current or former Apple employees who are *not* currently identified custodians for responsive cost documents and data? If not, Plaintiffs request that Apple conduct targeted searches of such custodial files for documents and data with responsive cost

information. Please confirm that Apple agrees to do so, and please identify the custodians whose files will be searched if they're not already on the list of custodians to which Apple has agreed to-date.

   - Apple response: Apple will comply with its obligations under the Federal Rules with respect to responsive cost documents and data, and its reasonable searches of the files of designated custodians and non-custodial sources are sufficient to do so.

With regard to Apple's response to Consumer Plaintiffs' RFP No. 5, Ben's letter included the following questions:

- Developer Plaintiffs' question: Has Apple completed production of documents pursuant to its response to this request? Can Apple identify the documents that have been produced?
   - Apple response: Yes, these documents have been produced. We are not obligated to identify them by Bates number but encourage you to review the documents that Apple has produced to date.
- Developer Plaintiffs' question: Has Apple searched the custodial documents of any non-current custodians for such documents?
   - Apple response: Apple has conducted a reasonable search of non-custodial files and the documents of the custodians that it identified following a reasonable investigation.
- Developer Plaintiffs' question: If Apple does not maintain "balance sheets, [or] cash flow statements' specific to the App Store," are there (a) balance sheets or cash flow statements that are not specific to the App Store, but which contain information related or relevant to the App Store, and (b) are not included in the documents Apple otherwise said it would be produce in response to this request? Have those documents been produced? Will Apple agree to produce such documents?
   - Apple response: These questions are more appropriate for deposition; we otherwise encourage you to review the documents that Apple has produced to date.

Best regards,

Eli

**Eli Lazarus**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8340 • Fax +1 415.374.8496
ELazarus@gibsondunn.com • www.gibsondunn.com