# EXHIBIT F

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Eli M. Lazarus
Direct: +1 415.393.8340
Fax: +1 415.374.8496
ELazarus@gibsondunn.com

Client: 03290-00123

October 23, 2020

VIA ELECTRONIC MAIL

Ted Wojcik
Hagens Berman Sobol Shapiro LLP
1301 Second Ave., Ste. 2000
Seattle, WA 98101

Rachele Byrd
Wolf Haldenstein Adler Freeman & Herz LLP
750 B St., Ste. 1820
San Diego, CA 92101

Re: *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR; *Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR
Data Discovery

Dear Ted and Rachele:

I write in further response to your letter of September 29, 2020 concerning data discovery, following my letter of October 12. Below is additional information that we have been able to gather in response to your questions and requests.

**A. Transactions included and excluded from sample data**

- Request: Plaintiffs request that Apple explain the parameters that determined which transactions were included (versus excluded) from the second sample.
  - Apple Response: It is not clear to Apple why Plaintiffs would need to know which transactions were included in the September 6, 2020 sample set. Apple provided Plaintiffs with a "flat" sample of 100,000 records on July 23, 2020; Ted's letter of August 10 asked for a second sample "specifically because the prior sample from the flat file provided no insight into potential problems with Apple's production of relational tables." Plaintiffs can and have analyzed the relational table format of the second sample without knowing Apple's process for selecting transactions included in the sample, or the technical means by which Apple queries its databases. Nonetheless, in a spirit of cooperation, Apple will share that it included in the September 6, 2020 sample a randomly selected collection of transactions from the App Store's U.S. storefront

involving iOS, iPhone OS, and iPadOS content from the following dates: 2008-09-01, 2009-01-01, 2010-01-01, 2011-01-01, 2012-01-01, 2013-01-01, 2014-01-01, 2015-01-01, 2016-01-01, 2017-01-01, 2018-01-01, and 2019-01-01.

- Question: Does the data Apple is producing include any "Enterprise" sales and/or sales made in Apple Business Manager?
    - Apple Response: Sales related to Apple's Volume Purchase Program (VPP) and enterprise sales will be present in the final dataset. The sample data set may include some of this data but due to the random nature of the sample, this is uncertain.
- Question: Does the data Apple is producing include any sales made under the "Education" program in Apple School Manager?
    - Apple Response: Sales related to Apple's Education program in Apple School Manager will be present in the final dataset. The sample data set may include some of this data but due to the random nature of the sample, this is uncertain.
- Question: Can Apple confirm that, when an app is purchased under a "family" group, only the initial family purchase, and not subsequent individual downloads by the family members, are included in the data?
    - Apple Response: [redacted]

**B. Questions about particular variables**

- I addressed Plaintiffs' questions about particular variables in my letter of October 12.

**C. Formatting requests for full production**

- Request: Please include only the numerical lookup variable, and not the string description, for . . . platform_name. Plaintiffs asked that these string descriptions appear only in a separate table.

- Apple Response: My October 12 letter stated that Apple would agree to this request; however, upon further investigation, we have learned that there is no readily available metadata for this field. The data in the September 6 sample's main table reflects how the data is stored at Apple and how it will be provided in the final dataset.

- Request: After producing the second sample, Apple counsel stated on September 10, 2020 that Apple had altered the value of the "person_id" variable by assigning "each unique Consumer ID a unique hash value," in order to anonymize the consumer ID data. Plaintiffs do not object to the concept of using a hashed value of the person_id variable in order to protect consumer privacy. However, the particular method of hashing that Apple used unnecessarily inflated the size of the data. Apple's second sample uses a 34-character hash that includes the numbers 0-9 and all lowercase letters. . . . [P]lease use a 6-character hash that includes upper-case letters.
    - Apple Response: Converting to a 6-character has value would create difficulties for Apple's data teams that are not justified by the expected benefit of a shorter hash value. This is especially true in light of the many ways that Apple has gone beyond its obligations to reduce the size of the data production at Plaintiffs' request, including by switching to a relational table format.

- Request: Plaintiffs . . . request that . . . Apple either exclude any "fake" or "test" person_ids from the data, or identify the hashed codes of the "fake" or "test" person_ids in the produced data.
    - Apple Response: Apple has already excluded demo accounts from the sample dataset and will do so from the final dataset. We are not aware of other "fake" IDs in the dataset.

**D. Requests for additional data**

- Request: Include the numerical lookup id for proceeds_reason in all future productions of [Apple's] transaction table . . . and [p]roduce a separate lookup table that indicates the "Proceeds Reason" that corresponds to each value of the numerical lookup id.
    - Apple Response: This data does not exist in the transactional data from which Apple is producing, and it would be unreasonably difficult to collect this data and produce it with the transactional dataset.

- Request: Plaintiffs request . . . A numerical lookup variable that uniquely identifies the value of "Client" associated with each transaction, which is a 30-character string variable that "Indicates where the purchase happened. App Store for iMessage, News, or blank" [and] a separate lookup table that indicates the 30-character string value of "Client" that corresponds to each value of the numerical lookup variable.
    - Apple Response: The "Client" field does not exist in the database from which Apple is producing transactional data, and it cannot be easily obtained.
- Request: Plaintiffs request . . . A numerical lookup variable that uniquely identifies the "Source Type" for initial downloads or purchases in the transaction data [and] . . . a separate lookup table that indicates the most detailed string value of "Source Type" that corresponds to each value of the numerical lookup variable.
    - Apple response: This data is not accessible to Apple without significant expense. Further this data is not responsive to Plaintiffs' discovery requests, and it is too late in the meet and confer process for Plaintiffs to insert such a request.
- Request: Please include the "GAME_CENTER_ENABLED" variable in the "pepper-content" table.
    - Apple Response: Apple will agree to provide this data to the extent it is available.
- Request: Please include the "type" of In-App purchase in the "pepper-content" table . . . (distinguishing between "Consumable", "Non- Consumable", "Auto-Renewable Subscription" and "Non-Renewing Subscription" In-App purchase types).
    - Apple Response: Some of the information requested here is available in the [redacted] field. Otherwise it is not available in the database from which Apple is producing the transactional data, and the burden of collecting it and producing with the transactional dataset would not be proportional to the expected benefit.
- Request: Please include each content_provider's country code in the next production of the content-provider lookup table (called "pepper-content- provider" in the second sample).
    - Apple Response: Apple agrees to provide this field.

GIBSON DUNN



- Request: Plaintiffs also request . . [a] table that indicates the name and specifications (RAM, screen size) of each device that corresponds to each [redacted]
    - Apple Response: As also stated in by letter of October 12, device specifications are not relevant or responsive to Plaintiffs' discovery requests, and it is too late in the meet and confer process for Plaintiffs to insert such a request. Further, the specifications that Plaintiffs request are not present in the database from which Apple produce transactional data, and the burden of collecting them elsewhere and producing with the transactional dataset would not be proportional to the expected benefit. However, Apple will agree to include information about device name paired with each transaction.
- Request: Plaintiffs also request . . . [a] table that lists all apps (by adam_id) that Apple allows to "use purchase methods other than in-app purchase" under Section 3.1.3 of Apple's App Store Review Guidelines. If Apple's data distinguishes between Apps that fall under different categories of section 3.1.3 (e.g., "Reader" apps vs. "Multi- platform" apps), then Apple should include that data as well in this table.
    - Apple Response: This data is not accessible to Apple without significant expense. Further this data is not responsive to Plaintiffs' discovery requests, and it is too late in the meet and confer process for Plaintiffs to insert such a request.

We believe we have now responded to all of Plaintiffs' questions with regard to transactional data. We would reiterate that further questions or requests from Plaintiffs will create further delay before Apple is able to produce the transactional data to you. If you confirm that you do not have further questions or requests, Apple will proceed to producing the transactional data.

Sincerely,

Eli M. Lazarus

EML/eml