# Exhibit 9

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Daniel G. Swanson
Direct: +1 213.229.7430
DSwanson@gibsondunn.com

September 8, 2021

VIA ELECTRONIC MAIL

Thomas H. Burt
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016

Re:   *In re Apple iPhone Antitrust Litigation* – McFadden Deposition Transcript Signature Page and Corrections

Dear Thomas:

On September 3, 2021, Plaintiffs' counsel served on Apple four pages of "Corrections" to the deposition transcript of Professor Daniel McFadden—many of which are not corrections at all, but rather substantive changes to Professor McFadden's sworn testimony. In some instances, the changes contradict the testimony actually given; in others, the changes amend the testimony in a way that alters its meaning. Such changes violate the rules governing deposition errata under Rule 30(e). *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005) ("Rule 30(e) is to be used for corrective, and not contradictory, changes); *Young v. Cree*, 2019 WL 260853, at *3 (N.D. Cal. Jan. 18, 2019) (Hixson, M.J.) (striking deposition errata that "chang[ed] [the deponent's] answer to nearly the opposite of what he said"). Apple requests that Plaintiffs withdraw the changes identified in Exhibit 1 to this letter.

As you know, Apple deposed Professor McFadden on August 3. A week later, on August 10, Apple filed its Opposition to Class Certification and a Motion to Exclude Professor McFadden's opinions under *Daubert*, both of which frequently cited Professor McFadden's deposition testimony. Plaintiffs filed their Opposition to Apple's *Daubert* motion on August 25—a full four weeks before the stipulated deadline for that filing. Apple filed its Reply Brief on September 3.

Only after all these filings did Plaintiffs serve Apple with these purported "Corrections." Yet through them, Plaintiffs and Professor McFadden now seek to rewrite or mitigate testimony that Apple has relied upon in its *Daubert* filings and Opposition to Class Certification. *Compare* Mot. to Exclude at 1 (Prof. McFadden "did not apply scientific rigor or economic expertise to model the but-for world, instead choosing to rely on mere 'commonsense judgment'") *with* Corrections at 1 ("Well, I think it's largely common sense assessment of

September 8, 2021
Page 2

observed economic characteristics" (alteration underlined)); *and compare* Opp. at 23 ("Prof. McFadden has not even tried to identify the four named plaintiffs' various Apple IDs to determine whether any of them were injured under his model, and that such a task is 'challenging,' if not 'impossible.'") *with* Corrections at 4 ("It's not impossible, and it would have to be done to link multiple Apple IDs submitted by a class claimant, but it would certainly be a challenge).  The "seemingly tactical timing" of these changes makes clear that they lack any "legitimate purpose," *Hambleton*, 397 F.3d at 1225, and are instead just another example of gamesmanship from plaintiffs apparently desperate to avoid defending their expert on the merits.  *See Daubert* Reply at 4-5.

The issues with Plaintiffs' "Corrections" do not stop there.  At least five other amendments either expressly or effectively change a "no" answer to a "yes," or vice versa (*see, e.g.*, Exhibit 1 at rows 1, 3, 6, 7, and 14)—the "paradigmatic example" of an improper correction. *Lee v. The Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 6471186, at *2 (N.D. Cal., Oct. 27, 2015).  And all the changes are improper because Plaintiffs and Professor McFadden provide *no explanation* for them even though "the plain language of [Rule 30(e)] requires that a statement giving reasons for the corrections be included." *Hambleton*, 397 F.3d at 1124; *see* Fed. R. Civ. P. 30(e)(1)(B) (requiring "statement listing the changes" to include "the reasons for making them"); *Young*, 2019 WL 260853, at *2 ("The statement of reasons explaining corrections is an important component of errata submitted pursuant to FRCP 30(e).").

A deposition is "not a take home examination," *Hambleton*, 397 F.3d at 1225 (quoting *Garcia v. Pueblo Country Club*, 299 1233, 1242 n.5 (10th Cir. 2002)), and Rule 30 does not permit Plaintiffs to "alter what [Professor McFadden] said under oath." *Id.*  Apple recognizes that much of Professor McFadden's sworn testimony was not helpful to Plaintiffs' case; but that does not give Plaintiffs license to change his testimony.  **Accordingly, Apple requests that, by Friday, Plaintiffs (i) withdraw the changes listed in Exhibit 1 and (ii) reissue the remaining corrections with the statement of reasons required by Rule 30(e)(1)(B).**[1]

---

[1] Please also provide evidence that Plaintiffs submitted the purported "Corrections" to the court reporter within 30 days of receiving the final deposition transcript, as is required for any changes to be timely.  *See Morceli v. Meyers*, 2014 WL 1096714, at *2 (E.D. Cal. Mar. 19, 2014) ("Rule 30(e)(1) contemplates only a review of the transcript in order to make any changes in form or substance within thirty days and then returning the transcript and any changes *to the court reporter*." (emphasis added)); *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297, 301 (N.D. Ill. 2005) (collecting cases).

GIBSON DUNN

September 8, 2021
Page 3

In the event Plaintiffs refuse to comply with this request, Apple will promptly seek appropriate relief—including moving to strike the errata and/or reopening Professor McFadden's deposition.

Sincerely,

/s/ Daniel G. Swanson

Cc:   Apple Counsel
      Consumer Plaintiffs' Counsel
      Developer Plaintiffs' Counsel

# GIBSON DUNN

September 8, 2021
Page 4

## EXHIBIT 1

|   | Location | Original | Correction |
|---|---|---|---|
| 1 | 12:5-6 | "I don't think so. That -- that -- the name is not familiar to me in any case." | "Yes." |
| 2 | 69:18-21 | "should not get too focused on the definition of the **market**, and should concentrate more on the -- on the conduct and the arena in which it's economically appropriate to assess that conduct. | "should not get too focused on the definition of the **market abstracted from the competitive constraints on the firm's conduct**, and should concentrate more on the -- on the conduct and the arena in which it's economically appropriate to assess that conduct. |
| 3 | 129:25-130:2 and 130:5-16 | "No, not necessarily. They -- they do -- they have the same estimated demand parameters, but not -- those don't apply the same elasticity." "Even if they -- if they -- if they have the same price, they -- the implication is that they will have comparable marginal costs, and the demand elasticity would -- at close -- that is implied by that -- I -- I have to think about that and go back and -- and do the algebra to -- to check." | "Given the way developers' profit-maximization conditions are used in the model, it has the property that two developers in the same genre with the same business model and selling at the same price will have the same implied elasticity." |
| 4 | 135:4 | "Well, I think it's largely common **sense**." | "Well, I think it's largely common **sense assessment of observed economic characteristics**." |
| 5 | 155:20-24 | "The ▮ commission rate, as stated in the report, is based on credit -- credit card comparables, which are somewhat, but not, perhaps, as closely comparable as the PC game store -- app stores." | "The ▮ benchmark commission rate is the rate at which the Apple Store's accounting net margin would be zero. Credit card commission rates are considerably lower, but credit card companies are not as closely comparable to the Apple App store as PC game stores." |
| 6 | 162:7-12 | "But I think the -- the answer is -- in Equation 8 the answer is 'no,' because the -- the -- the different apps with different X's will have the -- the same parameter alpha in different levels of Q, and I think that | "But I think the -- the answer is -- in Equation 8 the answer is 'yes', but two app purchases in the same genre with the same price will have different price elasticities if model estimates give them different price sensitivity coefficients." |

**GIBSON DUNN**

September 8, 2021
Page 5

|  | Location | Original | Correction |
|---|---|---|---|
|  |  | will produce different demand elasticities." |  |
| 7 | 169:17-23 | "No, it changes them by the same percentage amount; so that if the...consumer prices for – for apps in that genre go down by 8 percent, then that 8 percent reduction is applied to each individual transaction. So 8 percent of 1.99, 8 percent of 2.99, 8 percent of 3.99." | "The model is mute on how marginal cost per IAP and price varies over individual IAP products, as this variation does not enter the Report's damage calculations. My model could be consistent with an interpretation where IAP prices for an app change by the same dollar amount across all IAP items but I have not made that interpretation in the Report. " |
| 8 | 172:21-173:2 | "Only -- **only** -- **only** if it has zero marginal **costs, and** my general observation and opinion is that there are positive marginal costs for -- for app producers; that there is some issue of whether -- whether all costs are captured, but there are elements of marginal costs which are clearly positive." | "Only if it has zero marginal **costs and no source of revenue other than digital in-app purchases**. My general observation and opinion is that there are positive marginal costs for -- for app producers; that there is some issue of whether -- whether all costs are captured, but there are elements of marginal costs which are clearly positive." |
| 9 | 174:8-9 | "Yes, **that's** -- the current model does have that **form**." | "Yes, the current model does have that **form for a given business model**." |
| 10 | 178:21-22 | "If they have positive marginal **costs**," | "If they have positive marginal costs **and no source of revenue other than the download price**," |
| 11 | 193:22-25 | "I would have to go and look at what apps they actually **purchased**, but **they** -- the model is certainly intended to apply to them **as well as to the class as -- as a whole**." | "I would have to go and look at what apps they actually **produced**, but the model is certainly intended to apply to them." |
| 12 | 202:2-3 | "Yes, that's the way I do **it**, and I think that's economically appropriate." | "Yes, that's the way I do **it to calculate damages on a class-wide basis**, and I think that's economically appropriate." |
| 13 | 203:10-11 | "It's a -- it's a moderate -- moderately low percentage" | "The share of consumers who have paid for apps or IAP is a moderately low percentage" |
| 14 | 204:23-24 | "I believe the model does allow for that possibility." | "The model does not allow for zero-price download apps to raise their price of download. I assume the choice of business model, for instance free-download with IAP, is exogenous." |

**GIBSON DUNN**

September 8, 2021
Page 6

| | Location | Original | Correction |
|---|---|---|---|
| 15 | 227:23-24 | "but I think that is beyond the bounds of **practically**." | "but I think that is beyond the bounds of **practicality. However, Apple might be able to validate the lists of Apple IDs submitted by individual claimants from the class.**" |
| 16 | 228:10-12 | "It's not -- not **impossible, but** it would certainly be a **challenging calculation**." | "It's not **impossible, and it would have to be done to link multiple Apple IDs submitted by a class claimant, but** it would certainly be a **challenge.**" |
| 17 | 228:25 | "possibility of -- of implementation." | "possibility of implementation **unless the class member submitted the list of all Apple IDs used for Apple Store purchases.**" |