# Exhibit 10

Wolf Haldenstein
Legal Excellence Since 1888

Rachele R. Byrd
byrd@whafh.com

Tel: 619-239-4599
Wolf Haldenstein Adler Freeman & Herz LLP
750 B Street, Suite 1820, San Diego, CA 92101
www.whafh.com

September 17, 2021

Daniel G. Swanson
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Re: *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR
Professor McFadden's Deposition Corrections

Dear Daniel,

I write in response to your letter to Thomas Burt dated September 8, 2021 to address your assertion that Professor McFadden's corrections to his deposition transcript violate rule 30(e) of the Federal Rules of Civil Procedure. We have enclosed herewith amended corrections to add the reasons for the corrections. With this additional information, it is clear that Professor McFadden's corrections do not violate Rule 30(e).[1]

The cases that you relied upon in your letter demonstrate that deponents can make substantive changes to their transcripts. In *Young v. Cree, Inc.*, No. 17-cv-06252-YGR (TSH), 2019 U.S. Dist. LEXIS 9421 (Jan. 18, 2019), Magistrate Hixson noted that Rule 30(e) "does allow corrections to the 'substance' of an answer, and *Hambleton* [*Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005)] does not limit that to misspellings and transcription errors." *Id.* at *5-6. Moreover, a "'statement of reasons explaining corrections . . . permits an assessment concerning whether the alterations have a legitimate purpose.'" *Id.* at *6 (quoting *Hambleton*, 397 F.3d at 1224-25). The concern in *Hambleton* was that Rule 30(e) should not be used to change testimony "to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d at 1225. "Sham corrections" are ones that "contradict the original deposition testimony in order to create a dispute of material fact." *Compagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 U.S. Dist. LEXIS 148794, at *5-*6 (W.D. Wa. May 4, 2010). As you can see from Professor McFadden's explanations for his corrections, they are nothing of the sort.

---

1 The cases you cite in the footnote of your letter do not hold that in order for corrections to deposition transcripts to be timely they must be returned to the court reporter rather than or in addition to the party who took the deposition. The important thing is that Apple was placed on notice of the corrections within the 30-day period.

No. 1:[2] As Professor McFadden's explanation states, he simply did not remember the name of a case that took place *41 years ago*. It is understandable that he forgot and did not recognize the name of a case that occurred so long ago. Professor McFadden wishes to correct the record; you were correct that the name of the case was *Murphy Tugboat.*

Nos. 3, 6, 7: These corrections are clarifications and corrections of misstatements that Professor McFadden made because you asked him questions that required him to conduct mathematical calculations in his head. These corrections were therefore necessitated by honest miscalculations and are therefore allowed. *See Titanium Metals Corp. v. Elkem Management Inc*., 191 F.R.D. 468, 472 (W.D. Pa. 1998) (permitting correction of math errors in deposition 47 days after deposition submitted).

For example, at 129:25 to 130:11 (No. 3), in response to your hypothetical question about whether two game apps that have the same price would have the same demand elasticity in his model, he stated: "No, not necessarily. They – they do – they have the same estimated demand parameters, but not – those don't apply the same elasticity . . . Even if they – if they – if they have the same price, they – the implication is that they will have comparable marginal costs, and the demand elasticity would – at close – that is implied by that – I – *I have to think about that and go back and – and do the algebra to – to check*." (emphasis added). His correction clarifies that, after "go[ing] back" and "check[ing]" he concluded that, given the way the model works, "it has the property that two developers in the same genre with the same business model and selling at the same price will have the same implied elasticity."

Then, at 162:1-5, you asked him essentially the same question again: "By the way, have you been able to recall, since we discussed it, whether the elasticity demand estimate that you get is the same for all apps in a given genre at a given price point?" In response, he stated (at 162:6-12), "I haven't had – I didn't go back and think about that," and then he attempted to give his best answer again without doing the algebra to check: "But I think the -- the answer is -- in Equation 8 the answer is 'no,' because the -- the -- the different apps with different X's will have the -- the same parameter alpha in different levels of Q, and I think that will produce different demand elasticities." His corrected answer (No. 6) clarifies that the answer in reference to Equation 8 is "yes," although if given different price sensitivity coefficients, the answer would still be "no."

Similarly, at 169:11-16, you asked him another mathematical question: "So sticking with my hypothetical of an app that offers in-app purchases in the real word at 2.99, 3.99, and 4.99, in your but-for-world calculations, are you -- does your model change the price of those three offerings by the same dollar amount?" His answer was (at 169:17-23), "No, it changes them by the same percentage amount; so that if the…consumer prices for – for apps in that genre go down by 8 percent, then that 8 percent reduction is applied to each individual transaction. So 8 percent of 1.99, 8 percent of 2.99, 8 percent of 3.99." His correction (No. 7) clarifies that "[t]he model is mute on how marginal cost per IAP and price varies over individual IAP products, as this variation

---

2 These numbers refer to the numbers you assigned to the corrections in Exhibit 1 to your letter.

does not enter the Report's damage calculations. My model could be consistent with an interpretation where IAP prices for an app change by the same dollar amount across all IAP items but I have not made that interpretation in the Report." Again, it is clear that Professor McFadden later reflected on your question, reviewed his model, did the algebra, and realized he needed to clarify the record as to how his model works. Professor Prince, in his expert report at footnote 81, recognized that Professor McFadden's testimony was "[c]ontrary to what his equations imply." Upon reflection, Professor McFadden realized Professor Prince was right and corrected his testimony to *agree* with Professor Prince about how his model works. Clearly these are not "sham" corrections.

Nos. 2, 4, 5, 8-12, 15-17: These corrections are clarifications of testimony that serve to supplement and not contradict his original testimony and are consistent with his expert report. *See Compagnolo*, 2010 U.S. Dist. LEXIS 148794, at *9-*13 (finding that additions, clarifications, or supplementations of testimony are not "shams"); *Young*, 2019 U.S. Dist. LEXIS 9421, at *5 ("importantly [the correction] is the same answer he previously gave when asked about it").

For example, correction No. 2 simply adds the clarifying statement "abstracted from the competitive constraints on the firm's conduct" and does not contradict the original testimony.

Likewise, correction No. 4 similarly adds to "common sense" a clarifying clause, "assessment of observed economic characteristics." The remainder of his answer is consistent with this clarifying correction: "Are they dealing with economic agents that have rough -- roughly similar interests? Firms that have roughly similar technologies and – and business models? You know, are the products, by a -- by a commonsense measure, somewhat similar? I don't think there's a -- there's a scientific bright line which says that one benchmark is ideal, and -- and another one is unacceptable. It's – it's a commonsense judgment."

As another example, Professor McFadden included correction No. 5 because his original response was not consistent with how he had calculated the ███ benchmark rate in his expert report, so he corrected it. This correction is also consistent with his testimony on the same page at lines 7 to 10 and with his report.

No. 13: This correction is to correct a misstatement. From the context of the surrounding questions and answers it is clear that his original answer was an honest mistake. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 U.S. at *30-*31 (expert was entitled to make corrections to his deposition transcript when he misunderstood the question posed; "'the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [or] minor inconsistencies that result from an honest mistake.'") (quoting *Messick v. Horizon Indus*., 62 F.3d 1227, 1231 (9th Cir. 1995)).

No. 14: This correction is to correct an inadvertent mischaracterization of what Professor McFadden's model does. His corrected answer is consistent with the properties of the model used in his report and is therefore a correction of an honest mistake. *See Messick*, 62 F.3d at 1231.

Substantive changes are permitted by Rule 30(e) if they are not "sham" corrections. It is clear that Professor McFadden wished to ensure that the record was clear and correct and did not

make the corrections to gain some tactical advantage for Plaintiffs. Indeed, Plaintiffs gain no advantage from Professor McFadden's corrections as his original deposition testimony remains part of the record and Judge Gonzalez Rogers will decide how the corrections affect Professor McFadden's credibility when deciding Plaintiffs' motion for class certification.[3]

Very truly yours,

Rachele R. Byrd

Rachele R. Byrd

Enclosure

cc: Apple Inc.'s counsel
Developer Plaintiffs' counsel

---

3 *See, e.g., Peterson v. Alaska Communs. Sys. Grp.*, No. 3:12-cv-00090-TMB, 2017 U.S. Dist. LEXIS 89302, * 6 (D. Ala. Mar. 23, 2017) (denying motion to strike corrections because a court "is permitted to resolve factual disputes and, by extension, assess a witness's credibility when deciding whether to certify a class . . . and, consequently, is not required (nor, in fact, authorized) to exclude changes to deposition testimony submitted in the form of an errata under *Hambleton*; excluding Rule 30(e) errata, even if the new testimony is inconsistent with the original testimony, simply is not necessary at procedural postures at which a court may assess credibility and weigh evidence."); *see also Ochoa v. McDonald's Corp.*, No. 14-cv-02098-JD, 2015 U.S. Dist. LEXIS 71234 at *6 (N.D. Cal. Jun. 2, 2015) (finding the sham affidavit rule inapplicable in the context of a motion for class certification where the court "can give altered testimony the weight it deserves.")