# ATTACHMENT N

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 1

1   ** HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER **

3           UNITED STATES DISTRICT COURT
4       FOR THE NORTHERN DISTRICT OF CALIFORNIA
5                  OAKLAND DIVISION

7   _____
                                        )
                                        )
8   IN RE APPLE iPHONE ANTITRUST        ) Civil Action No.
9   LITIGATION                          ) 4:11-cv-06715YGR
                                        )
10                                      )

13           ZOOM VIDEOTAPED DEPOSITION OF
14               MARK GRIMM, VOLUME I
15              San Jose, California
16           Tuesday, February 9, 2021

22  Reported by:
    LORI M. BARKLEY, CSR No. 6426

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 254

1    A.   I found both a native app and a web-based
2  experience to leave something to be desired on frame
3  rate and latency.
4    Q.   So, you have found a web -- let me just
5  break that out because there are, I think, two
6  different parts of that.
7         You have found, am I correct that you have
8  found web-based game streaming services to leave
9  something to be desired with respect to frame rate
10 and latency?
11   A.   Yes.
12   Q.   And am I correct that you have found native
13 app game streaming services to leave something to be
14 desired with respect to frame rate and latency?
15   A.   Yes.
16   Q.   Okay.  Is it your opinion that the user
17 experience -- withdrawn.
18        Is it your opinion that the user experience
19 of a web-based game streaming service on iOS is good
20 enough versus native to create leverage?
21        MS. AHMAD:  Objection.
22        THE WITNESS:  How do you mean create
23 leverage?
24 BY MR. CLARKE:
25   Q.   I mean create leverage in negotiations with

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 258

1  A. It seems like I responded to that e-mail,
2  yes.
3  Q. Yes, responded is a better word, I agree.
4  And Paul Ramsbottom's e-mail lists a series
5  of streaming game services; is that right?
6  A. Yes.
7  Q. And do you remember why he was sending these
8  to you at the time?
9  A. No, I can't say for sure it was to me. I
10 don't see the header for Paul's e-mail, but I was on
11 cc at least.
12 Q. Okay. You don't have any recollection for
13 why he was circulating this group of game streaming
14 services?
15 A. No, Paul's the head of the games and
16 entertainment team, it's a pretty regular thing to
17 circulate news about trends in our industry.
18 Q. Okay. Did you perceive these game streaming
19 services to be a competitive threat to native apps
20 offered through the App Store?
21 A. No.
22 Q. And why not?
23 A. I perceived them as potential native apps.
24 Q. So, they were an opportunity for apps that
25 could be attracted to the App Store in the future?

Page 259

1    A.    Yes.
2    Q.    And if they couldn't be attracted to the App
3    Store, did you view that as a potential competitive
4    threat?
5    A.    This e-mail that Paul sent was from January
6    of 2019.  At that time, I wouldn't even have
7    understood what an alternative would be.
8    Q.    What about today, do you understand what an
9    alternative would be today?
10   A.    Yes, as we discussed, distributing on the
11   open web is an effective alternative.
12         I just need to say that January 2019, I was
13   not well-versed in what it meant to distribute a game
14   streaming service on the open web.
15   Q.    And so, what about as of today, as of today
16   do you view distributing game streaming services on
17   the open web as a competitive threat to native apps
18   offered through the App Store?
19   A.    No.
20   Q.    And why not?
21   A.    I view them as an alternative way for gamers
22   to have experiences on iPhones in the same way that
23   you can currently bring up browser games on mobile
24   browsers and play.
25   Q.    So, in your e-mail at the top, you are

1  STATE OF CALIFORNIA    ) ss.
2  COUNTY OF LOS ANGELES  )
3
4       I, Lori M. Barkley, CSR No. 6426, do hereby
5  certify:
6       That the foregoing deposition testimony
7  taken before me at the time and place therein set
8  forth and at which time the witness was administered
9  the oath;
10      That the testimony of the witness and all
11 objections made by counsel at the time of the
12 examination were recorded stenographically by me, and
13 were thereafter transcribed under my direction and
14 supervision, and that the foregoing pages contain a
15 full, true and accurate record of all proceedings and
16 testimony to the best of my skill and ability.
17      I further certify that I am neither counsel
18 for any party to said action, nor am I related to any
19 party to said action, nor am I in any way interested
20 in the outcome thereof.
21      IN WITNESS WHEREOF, I have subscribed my
22 name this 10th day of February, 2021.
23
24                    /s/ LMB
25           LORI M. BARKLEY, CSR No. 6426