# ATTACHMENT KK

AMENDED CORRECTIONS

1    I, DANIEL McFADDEN, Ph.D., do hereby declare
2  under penalty of perjury that I have read the
3  foregoing transcript; that I have made any
4  corrections as appear notes; that my testimony as
5  contained herein, as corrected, is true and
6  correct.   See attached amended corrections.
7    Executed this  17th  day of  September         ,
8  2021, at  _____Berkeley_____ , _____California_____ .
9
10
11
12                    _____
                       DANIEL McFADDEN, Ph.D.
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 246

| Location | Original | Correction | Reason |
|---|---|---|---|
| 12:5-6 | "I don't think so. That -- that -- the name is not familiar to me in any case." | "Yes." | Misstatement; I misremembered. |
| 34:9 | "they are **priced** so that -- in that case, it's" | "they are **price-takers** so that -- in that case, it's" | Typo |
| 38:21 | "in-app purchases are part of a **signal** aftermarket" | "in-app purchases are part of a **single** aftermarket" | Typo |
| 41:8 | "**form** by consumers who have already acquired a" | "**formed** by consumers who have already acquired a" | Typo |
| 60:11 | "fact that there are **indistinguishable** products;" | "fact that there are **distinguishable** products;" | Typo |
| 61:11-12 | "think the Apple Store is clearly neither -- **neither of those.**" | "think the Apple Store is clearly **neither of those extreme cases.**" | Clarification |
| 69:18-21 | "should not get too focused on the definition of the **market,** and should concentrate more on the -- on the conduct and the arena in which it's economically appropriate to assess that conduct. | "should not get too focused on the definition of the **market abstracted from the competitive constraints on the firm's conduct,** and should concentrate more on the -- on the conduct and the arena in which it's economically appropriate to assess that conduct. | Clarification |
| 70:23 | "portfolio products" | "portfolio **of** products" | Typo |
| 82:2 | "regard **John Terrell** as an authority" | "regard **Jean Tirole** as an authority" | Typo |
| 95:5-6 | "points in platforms because ubiquity **in** the externalities" | "points in platforms because ubiquity **and** the externalities" | Typo |
| 111:3-4 | "economic environment in which the alleged **defending** acts" | "economic environment in which the alleged **offending** acts" | Typo |
| 115:19-20 | "My understanding is that both **Pandora** and Spotify" | "My understanding is that both **Netflix** and Spotify" | Clarification; I misremembered |
| 129:25-130:2 and 130:5-16 | "No, not necessarily. They -- they do -- they have the same estimated demand parameters, but not -- those don't apply the same elasticity."  "Even if they -- if they -- if they have the same price, they -- the implication is that they will have comparable marginal costs, and the demand elasticity would -- at close -- that is implied by that -- I -- I have to think about that and go back and -- and do the algebra to -- to check." | "Given the way developers' profit-maximization conditions are used in the model, it has the property that two developers in the same genre with the same business model and selling at the same price will have the same implied elasticity." | Clarification. The question is mathematical. I said I needed to "do the algebra to check." I modified my answer after doing the algebra. |
| 130:21-23 | "the form competition would **compare to pressures would** lead Apple to lower its commission." | "the form competition would **take to** lead Apple to lower its commission." | Clarification |
| 135:4 | "Well, I think it's largely common **sense.**" | "Well, I think it's largely common **sense assessment of observed economic characteristics.**" | Clarification |
| 155:20-24 | "The ▮ commission rate, as stated in the report, is based on credit -- credit card comparables, which are somewhat, but not, perhaps, as closely comparable as the PC game store -- app stores." | "The ▮ benchmark commission rate is the rate at which the Apple Store's accounting net margin would be zero. Credit card commission rates are considerably lower, but credit card companies are not as closely comparable to the Apple App store as PC game stores." | Clarification; Misstatement. My original response was not consistent with how I calculated the ▮ benchmark rate in my Opening Report, so I corrected it. |

| Location | Original | Correction | Reason |
|---|---|---|---|
| 162:7-12 | "But I think the -- the answer is -- in Equation 8 the answer is 'no,' because the -- the -- the different apps with different X's will have the -- the same parameter alpha in different levels of Q, and I think that will produce different demand elasticities." | "But I think the -- the answer is -- in Equation 8 the answer is 'yes', but two app purchases in the same genre with the same price will have different price elasticities if model estimates give them different price sensitivity coefficients." | Clarification; Misstatement. This is the same question I answered at pages 129 and 130 referenced above about the price elasticity formula, and I consistently gave an incorrect answer before doing the algebra. |
| 164:19 | "the pass-through is the first order **returned** by" | "the pass-through is the first order **determined** by" | Typo |
| 169:17-23 | "No, it changes them by the same percentage amount; so that if the…consumer prices for – for apps in that genre go down by 8 percent, then that 8 percent reduction is applied to each individual transaction. So 8 percent of 1.99, 8 percent of 2.99, 8 percent of 3.99." | "The model is mute on how marginal cost per IAP and price varies over individual IAP products, as this variation does not enter the Report's damage calculations. My model could be consistent with an interpretation where IAP prices for an app change by the same dollar amount across all IAP items but I have not made that interpretation in the Report. " | Clarification, Misstatement. This is another mathematical question that I corrected after reflection. Prince was correct in fn. 81 of his report that my answer was inconsistent with how my model works, so I am clarifying. |
| 170:3-7 | "I don't -- in a sense that we -- we do aggregate over apps within a -- within a parent, but I -- I think that, functionally, the -- the -- the calculation is -- produces the same number. That's what I just described." | "We do aggregate over IAP apps within a parent, but I think that functionally the calculation produces the same number. That's what I just described." | Clarification |
| 170:10-14 | "No, it -- it -- it -- it treats every app transaction as a -- an individual transaction as  and -- and -- and does a -- a -- a calculation of how that transaction would change in the but-for world." | "No, it treats every app transaction as an individual transaction, with IAP transactions for a given consumer, year, and app assigned the average price for this consumer-year-app cell, and then does a calculation of how that transaction would change in the but-for world." | Clarification |
| 171:11 | "the third category is the **three** download paid IAP" | "the third category is the **free** download paid IAP" | Typo |
| 172:21-173:2 | "Only **-- only -- only** if it has zero marginal **costs, and** my general observation and opinion is that there are positive marginal costs for -- for app producers; that there is some issue of whether -- whether all costs are captured, but there are elements of marginal costs which are clearly positive." | "Only if it has zero marginal **costs and no source of revenue other than digital in-app purchases. M**y general observation and opinion is that there are positive marginal costs for -- for app producers; that there is some issue of whether -- whether all costs are captured, but there are elements of marginal costs which are clearly positive." | Clarification |
| 173:16 | "is free download, followed by **IAP purchases.**" | "is free download, followed by **IAP or non-IAP purchases.**" | Clarification; Misstatement |
| 174:8-9 | "Yes, **that's --** the current model does have that **form.**" | "Yes, the current model does have that **form for a given business model.**" | Clarification |
| 176:3 | "have a **lojic** form." | "have a **logit** form." | Typo |

| Location | Original | Correction | Reason |
|---|---|---|---|
| 178:14 | "the **optional** price for him would be, say, 2.50." | "the **optimal** price for him would be, say, 2.50." | Typo |
| 178:21-22 | "If they have positive marginal **costs**," | "If they have positive marginal costs **and no source of revenue other than the download price**," | Clarification |
| 180:20 | "If -- if there were -- if there were a **symptomatic** pattern" | "If -- if there were -- if there were a **systematic** pattern" | Typo |
| 186:19 | "flexible and robust way by **using to** establish" | "flexible and robust way by **using them to** establish" | Typo |
| 188:17-19 | "there's, what, 2 million **developers in** a large subsample of the entire transactions **database. Only**" | "there's, what, 2 million **developers. In** a large subsample of the entire transactions **database, only**" | Typo |
| 193:22-25 | "I would have to go and look at what apps they actually **purchased**, but **they --** the model is certainly intended to apply to them **as well as to the class as -- as a whole.**" | "I would have to go and look at what apps they actually **produced,** but the model is certainly intended to apply to them." | Clarification |
| 202:2-3 | "Yes, that's the way I do **it,** and I think that's economically appropriate." | "Yes, that's the way I do **it to calculate damages on a class-wide basis,** and I think that's economically appropriate." | Clarification |
| 203:10-11 | "It's a -- it's a moderate -- moderately low percentage" | "The share of consumers who have paid for apps or IAP is a moderately low percentage" | Clarification, Misstatement |
| 204:23-24 | "I believe the model does allow for that possibility." | "The model does not allow for zero-price download apps to raise their price of download. I assume the choice of business model, for instance free-download with IAP, is exogenous." | Misstatement. My corrected answer is consistent with the properties of the model used in my report. |
| 211:1 | "was used for -- for the purposes of **attractability**" | "was used for -- for the purposes of **tractability**" | Typo |
| 227:1-3 | "there Apple IDs that appear to be consumers **that's** classified by Apple that are **entirely some kind of end user.**" | "there **are** Apple IDs that appear to be consumers **as** classified by Apple that are **actually some other type of entity.**" | Clarification |
| 227:10-11 | "The answer is that **the** calculation has to be done by Apple ID" | "The answer is that **my** calculation has to be done by Apple ID" | Clarification |
| 227:23-24 | "but I think that is beyond the bounds of **practically.**" | "but I think that is beyond the bounds of **practicality. However, Apple might be able to validate the lists of Apple IDs submitted by individual claimants from the class.**" | Typo; Clarification |
| 228:10-12 | "It's not -- not **impossible, but** it would certainly be a **challenging calculation**." | "It's not **impossible, and it would have to be done to link multiple Apple IDs submitted by a class claimant, but** it would certainly be a **challenge**." | Clarification |
| 228:25 | "possibility of -- of implementation." | "possibility of implementation **unless the class member submitted the list of all Apple IDs used for Apple Store purchases.**" | Clarification |

**CERTIFICATE OF SERVICE**

I, Brittany N. DeJong, hereby certify that I am a citizen of the United States, over the age of eighteen, and not a party to the within action. I hereby certify that on September 17, 2021, I delivered the foregoing documents:

**MCFADDEN DEPOSITION TRANSCRIPT SIGNATURE PAGE AND AMENDED CORRECTIONS**

via electronic mail to the counsel listed on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 17th day of September 2021 at San Diego, California.

By: _____
BRITTANY N. DEJONG

APPLE2: 27642

IN RE APPLE iPHONE ANTITRUST LITIGATION
Case Nos.: 4:11-cv-06714-YGR-TSH; 4:19-cv-03074-YGR-TSH
Service List – August 26, 2021
Page 1

PLAINTIFFS' INTERIM CLASS COUNSEL

Betsy C. Manifold
Rachele R. Byrd
Brittany N. DeJong
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
　　　619/239-4599
　　　619/234-4599 (fax)
manifold@whafh.com
byrd@whafh.com
dejong@whafh.com

Mark C. Rifkin
Matthew M. Guiney
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY  10016
　　　212/545-4600
　　　212/545-4677 (fax)
rifkin@whafh.com
guiney@whafh.com

David C. Frederick
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW Suite 400
Washington, D.C. 20036
　　　202/326-7900
　　　202/326-7999 (fax)
dfrederick@kellogghansen.com


COUNSEL FOR DEFENDANT APPLE INC.

Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Jay P. Srinivasan
Dana Lynn Craig
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
　　　213/229-7000
　　　213/229-7520 (fax)
tboutrous@gibsondunn.com
rdoren@gibsondunn.com
dswanson@gibsondunn.com
jsrinivasan@gibsondunn.com
dcraig@gibsondunn.com

Cynthia E. Richman
Harry R. S. Phillips
Mark A. Perry
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
　　　202/955-8234
　　　202/530-9691 (fax)
crichman@gibsondunn.com
hphillips2@gibsondunn.com
mperry@gibsondunn.com

Veronica S. Lewis
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
　　　214/698-3100
　　　214/571-2900 (fax)
vlewis@gibsondunn.com

Ethan Dettmer
Eli M. Lazarus
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
　　　415/393-8200
　　　415/393-8306 (fax)
edettmer@gibsondunn.com
elazarus@gibsondunn.com
AppleAppStoreDiscovery@gibsondunn.com

David R. Eberhart
Anna T. Pletcher
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
　　　415/984-8700
　　　415/984-8701 (fax)
deberhart@omm.com
apletcher@omm.com

Katrina Robson
Evan Schlom
Elena Zarabozo
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
　　　202/383-5300
　　　202/383-5414 (fax)
krobson@omm.com
eschlom@omm.com
ezarabozo@omm.com

IN RE APPLE iPHONE ANTITRUST LITIGATION
Service List – August 26, 2021
Page 2

Scott Schaeffer
O'MELVENY & MYERS LLP
Plaza 66, Tower 1, 37th Floor
1266 Nanjing Road West
Shanghai 200040, China
    86-21-2307-7000
    86-21-2307-7300 (fax)
sschaeffer@omm.com

Michelle Lowery
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
    310/277-4110
    310/277-4730 (fax)
mslowery@mwe.com

Elizabeth Rodd
Sandra Meyer
McDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
    617-835-4040
    617-321-4577 (fax)
erodd@mwe.com
smeyer@mwe.com

Nicole Castle
Michael Huttenlocher
McDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
    212-547-5400
    212-547-5444 (fax)
ncastle@mwe.com
mhuttenlocher@mwe.com

Hannah L. Cannom
Bethany M. Stevens
WALKER STEVENS CANNOM LLP
500 Molina Street #118
Los Angeles, CA 90013
    213/337-9972
    213/403-4906
hcannom@wscllp.com
bstevens@wscllp.com

DEVELOPER PLAINTIFFS' INTERIM CLASS COUNSEL

Steve W. Berman
Robert F. Lopez
Ted Wojcik
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
    206/623-7292
    206/623-0594 (fax)
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Shana E. Scarlett
Benjamin J. Siegel
Ben Harrington
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
    510/725-3000
    510/725-3001 (fax)
shanas@hbsslaw.com
bens@hbsslaw.com
benh@hbsslaw.com

27491