FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 1820
SAN DIEGO, CA 92101
619-239-4599

**MARK C. RIFKIN**
DIRECT DIAL: 212-545-4762
FACSIMILE: 212-686-0114
rifkin@whafh.com

July 7, 2023

<u>VIA ECF</u>
Hon. Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street Oakland, CA 94612

Re:     *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR (N.D. Cal.)

Dear Judge Gonzalez Rogers:

We represent Plaintiffs in the above-referenced action. As discussed with the Court during the June 23, 2023, hearing on Plaintiffs' renewed class certification motion, and pursuant to the Court's May 10, 2023, Order Denying Proposed Continuance, Vacating *Daubert* Hearing, and Imposing Prefiling Requirements (ECF No. 715), we request permission to file a short sur-reply brief, not to exceed ten pages, to address four new arguments raised in Apple's 20-page *Daubert* reply brief (ECF No. 740-1) filed after the class certification hearing on June 30, 2023.

*First*, during the class certification hearing, we pointed out several flaws in Prof. Hitt's so-called "natural experiments," including that (i) his simplistic "before-and-after" experiment is entirely invalid; and (ii) his "difference-in-differences" experiment was not properly validated, as he did not submit or rely upon any parallel trends test or *any* other test to assess whether his chosen control groups were appropriate.[1] After we pointed out those fatal flaws, Prof. Hitt has tried to rehabilitate one of his "natural experiments" by claiming, after-the-fact, that it was unnecessary for him to validate his results and that Plaintiffs have the burden to "invalidate" them. In his June 2023 Declaration (ECF No. 740-2), Prof. Hitt presented parallel trends tests of his D-i-D regressions, but only for a small subset of them.[2] Plaintiffs request leave to address Prof. Hitt's 180° about-face and explain why his attempt at revisionist history still leaves his natural experiments invalidated and thus unreliable.[3]

---

[1]  In an email sent to Plaintiff's counsel on April 17, 2023, shortly after Prof. Hitt's deposition, Apple's counsel stated that "Prof. Hitt has not relied on the results of any parallel trends tests." *See* April 17, 2023 email from Cynthia Richman to Rachele Byrd, "RE: Prof. Hitt's Missing Information," ECF No. 701-5.

[2]  In his June 2023 Declaration (ECF No. 740-2), Prof. Hitt still has not conducted parallel trends tests for 30 out of 36 ARS (Auto Renewed Subscription) regression specifications presented in Figure 41 of his March 2023 Report. *See* ECF No. 688-1, ¶ 27.

[3]  At the class certification hearing on June 23, 2023, Apple's counsel were unable to identify any

Hon. Yvonne Gonzalez Rogers
July 7, 2023
Page 2

*Second*, in its reply papers, Apple also misrepresents the results of Prof. McFadden's placebo test, falsely claiming that his placebo tests merely demonstrate that "prices do not generally decline when there is no commission rate decrease."[4] That is a stunning misstatement. Prof. Hitt found statistically significant price increases in his so-called "natural experiments," and Prof. McFadden conducted a placebo test in the *as-is world* to verify the existence of confounding factors that call into question the validity of Prof. Hitt's natural experiments. Prof. McFadden discovered that the prices of apps in Prof. Hitt's treatment group *rose* relative to the prices of apps in his control group, several months *before* the commission cuts. This finding shows that the price increases Prof. Hitt found in his natural experiment analysis are due to confounding factors that he failed to control for, not due to the commission cuts. The existence of confounding factors in the as-is world do *not* invalidate the results of Prof. McFadden's econometric modeling of the *But-For world*. What they do, however, is to invalidate the results of Prof. Hitt's natural experiments in the *as-is world*. We now know that there is an extraneous factor causing a price increase that Prof. Hitt has not controlled for. Plaintiffs request leave to explain this additional, obvious flaw in Prof. Hitt's "natural experiments."

*Third*, Apple continues its stubborn attack on Prof. McFadden's focal pricing/price tiers and his *use* of marginal cost data, offering even more variations on its oft-repeated argument that Prof. McFadden should have modeled app and IAP prices at the *item* level rather than the app level. Plaintiffs request leave to address why Apple's latest variations on this tired argument do not undermine Prof. McFadden's classwide computation of impact and damages.

*Fourth*, during the class certification hearing, Apple's counsel challenged the validity of Dr. Abrantes-Metz's computation of the But-For commission rate based upon documents produced to Apple by Microsoft several months *after* Dr. Abrantes-Metz submitted her expert report. Prof. Hitt refers to those documents (MSFT_AAPL_00000163 and MSFT_AAPL_00000169), which he says include ███████████████████████████████████████████ (the only year for which Dr. Abrantes-Metz had Microsoft's profit data).

---

authoritative literature or a single case requiring that an econometric analysis of a but-for commission using regression modeling must pass a "natural experiment" test for it to be acceptable. Apple's counsel and Prof. Hitt still have not pointed to *any* such authority requiring that regression results must pass a "natural experiment" test to be reliable. In any event, Prof. McFadden will explain in a sur-reply that he validated his econometric modeling using better and more reliable *real-world data*, including Apple's own Apple TV data and data collected by the European Commission on Competition, than Prof. Hitt's flawed "natural experiments." *See* ECF No. 443-14, ¶¶ 151-52. Spotify, which charges $12.99 for its subscription service on the App Store but only $9.99 for the same service purchased directly from the developer's website, is another more informative "natural experiment" than Prof. Hitt's flawed ones.

[4]  *See* Apple's Reply Brief (ECF No. 740-1) at 6, n.4. *See also* Hitt June 2023 Declaration (ECF No. 740-2), ¶ 42.

Hon. Yvonne Gonzalez Rogers
July 7, 2023
Page 3

███████████████████████████████████████████████████████████
███████████████████████████████████████████ They fail to meet the criteria for
reliability that Dr. Abrantes-Metz set forth in ¶¶ 52-54 of her original report (ECF No. 666-2), and
they would have led to results that failed the benchmark cross-check that she also performed. Had
Microsoft's 2020 and 2021 documents been available to Dr. Abrantes-Metz when she prepared
her report, Dr. Abrantes-Metz would have discounted or disregarded the 2020 and 2021 data, just
as she elected not to use the Epic Game Store's negative profit margin (which was proven during
the *Epic* trial) because it would have led to an absurdly low But-For commission rate, as she
explained in ¶ 49 of her original report.

Plaintiffs request leave to address in detail the effect, if any, of the subsequently-produced
documents on Dr. Abrantes-Metz's computation of the But-For commission rate.

Respectfully yours,

Mark C. Rifkin

cc:    All Counsel (via ECF)

---

[5] ████████████████████████████████████████████████████
██████████████████████████████, making the later reports less informative and
less transparent than the earlier report.