BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
manifold@whafh.com
byrd@whafh.com

MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
THOMAS H. BURT (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Interim Class Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON CLASS CERTIFICATION ADDRESSING RECENT DECISION**<br><br>CRTRM:  1, 4th Floor<br>JUDGE:    Hon. Yvonne Gonzalez Rogers |

Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter, and Edward Lawrence (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Supplemental Brief on Class Certification Addressing Recent Decision, pursuant the Court's order dated October 3, 2023 (ECF No. 775).

## I.     INTRODUCTION

On August 28, 2023, Judge Donato entered an Order in *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal. Aug. 28, 2023), ECF No. 588 (hereinafter "*Google* Order"), excluding on *Daubert* grounds the expert merits opinion of the *Google* plaintiffs' expert economist on damages, Hal J. Singer, Ph.D. Judge Donato found that Dr. Singer's use of a "pass-through formula 'specific to logit' modeling" to compute damages in that case, which he computed at the genre (*i.e.*, category) level "for each [Google] Play Store category," was unreliable. Because Plaintiffs' expert economist in this case, Prof. Daniel L. McFadden, does not use a "logit" model and does not compute damages at the genre level – but rather at the app level – Judge Donato's decision in Google has no relevance to this case.

### A.     Dr. Singer's Opinion Was Excluded Because His Model Relied upon an Unproven Assumption

In the *Google* case, Dr. Singer modeled the Consumer Class's antitrust impact and damages by estimating what Google's "take rate" – *i.e.*, "the share of revenue Google takes from developers for each app sale" – would be in a hypothetical world absent its alleged monopolization of the Android App Distribution Market and the Android In-App Aftermarket.[1] *Google* Order at 3. One "critical" input to this model was the "pass-through" that consumers incurred. *Id.* at 4. This input "quantif[ied] the 'portion of the supracompetitive cost imposed on developers' by Google that was 'passed through' to, or more aptly paid by, consumers." *Id.* Without a reliably calculated pass-through rate, Dr. Singer's determination of the but-for "take rate" or commission rate was likewise unreliable. *See id.*

---

[1] Dr. Singer's "take rate" is what Plaintiffs in this case refer to as "the But-For Commission Rate."

PLAINTIFFS' SUPPLEMENTAL BRIEF ON CLASS CERTIFICATION ADDRESSING RECENT DECISION
CASE NO. 11-CV-06714-YGR
-1-

Dr. Singer calculated the pass-through rate using a "formula 'specific to logit,'" *id.* at 9, a statistical technique that can be used to model pricing behavior based on competitive conditions. Dr. Singer's "logit" formula assumed the pass-through for a given app could be estimated based on that app's market share (expressed as a percentage) of all app sales in a given genre. *Id.* at 10. Because Dr. Singer modeled pass-through at the ***genre level***, he was compelled to assume that all apps in a given genre were competitive substitutes for each other. *Id.* at 13.

That assumption rendered Dr. Singer's opinion unreliable for two reasons. *First*, he never offered any "factual[] support[]" showing how the assumption of genre-based competition made "economic sense" in light of the market realities of the Google Play Store. *Id.* at 14-15. *Second*, he gave the jury no "usable guidance" on the "boundaries on substitution in broad app categories . . . creat[ing] a serious risk of the jury simply guessing about proportionate substitution and ultimately the pass-through of fees to consumers." *Id.* at 14. Because the pass-through was "the keystone of Dr. Singer's overcharge analysis," Judge Donato excluded the model. *Id.* 17.

### B. Prof. McFadden Did Not Use a Logit Model or Assume All Apps in a Genre Were Substitutes

Here, Prof. McFadden did not use the same methodology to compute impact and damages – indeed, he did not model the But For commission rate at all – and his econometric model does not rely on the same unsubstantiated assumptions as Dr. Singer's model did in *Google*. Indeed, Google recently told the Ninth Circuit as much in an appeal in the *Google* case: "The expert in *In re Apple* [Prof. McFadden] ***did not use a logit model*** and therefore ***did not assume that all apps in each category were substitutes***." Brief for Defendants-Appellants at 51, *In re Google Play Store Antitrust Litig.*, No. 23-15285 (9th Cir.), Dkt. No. 20 (emphases added).

Quite simply, Judge Donato's concerns were specific to Dr. Singer's model and are inapplicable to Prof. McFadden's model.

### C. Prof. McFadden and Dr. Singer Modeled at Different Market Levels

Prof. McFadden took an entirely different approach to calculating overcharges in this case. Unlike Dr. Singer, Prof. McFadden calculates individual damages for each unique Apple ID on an ***app-by-app***, ***transaction-by-transaction*** basis and adds them up to compute a single aggregate

damages figure. Second Rev. Supp. McFadden Expert Rept. ¶¶ 29, 64-66 (Jan. 19, 2023) (ECF No. 679-1). Prof. McFadden's approach in this case does not require him to make the same unsubstantiated assumptions that led the Court to exclude Dr. Singer's opinion in the *Google* case.

Indeed, the differences in the two approaches are so profound that Prof. McFadden and Dr. Singer actually worked in ***opposite*** directions. Dr. Singer began by estimating a pass-through rate using a formula derived from the logit model, which depends only on an app's market share within a particular genre. *Google* Order at 4-5. He then used that pass-through rate as an ***input*** for the Rochet-Tirole model (which he used for app sales) and the Landes-Posner model (which he used for in-app purchases) to calculate damages for the whole Play Store market.

By contrast, as the Court is well aware, Prof. McFadden does not compute the But-For commission rate. Rather, Dr. Rosa M. Abrantes-Metz did so using a profit equation that, as Apple's experts have conceded, fully applies to the App Store and to the But-For world. The But-For commission rate computed by Dr. Abrantes-Metz is an input to Prof. McFadden's model, which uses a demand curve ***from real world data*** and the actual pricing data ***from each app*** to generate a pass-through rate as an ***output***. Instead of assuming that apps in each genre are substitutes – the flaw in Dr. Singer's model – Prof. McFadden estimates the price sensitivity of app demand, "which captures how readily consumers switch to other apps when an app raises its price." Pls.' Opp. to Apple's *Daubert* Mot. at 15-16 (Apr. 21, 2023) (ECF No. 701); *see also* McFadden Reply Expert Rept. ¶ 120 (Oct. 19, 2021) (ECF No. 556-1).

Despite the obvious and crucial differences between the two experts' approaches, Apple may try to sow confusion by drawing a false comparison merely because Dr. Singer modeled Google's "take rate" at the genre level and because Prof. McFadden estimates demand at the genre level on the way to computing app-by-app estimates of the pass-through and damages. That would be a third attempt at the same flawed argument. As the Court will recall, Apple previously argued that Prof. McFadden's use of "margin bounds" – drawn from actual developer data – artificially inflated his damages calculations because they were "based on cost data from an unrepresentative set of six large developers." Apple's *Daubert* Mot. Exclude Test. of Prof. Daniel L. McFadden at 21 n.5 (Aug. 11, 2021) (ECF No. 479); *see* Tr. of Zoom Webinar Proceedings on Mot. Strike or

Exclude Reply Test. of Prof. Daniel L. McFadden 65:24-66:19 (Dec. 14, 2021) (filed Dec. 21, 2021 at ECF No. 626) (Apple's oral argument on this issue). The Court has rejected that argument at this stage. To be sure, the Court said it expects either a "more fulsome" data analysis or "reliance on an industry expert *for purposes of trial*." ECF No. 630 at 10 n.8 (emphasis added). But it did not take issue with *how* Prof. McFadden used margin bounds in his model based on the preliminary data available to him at this stage of the case. At trial, Prof. McFadden will substantiate his demand estimates using both additional data subsequently obtained from a large number of additional developers and industry expert testimony.[2]

### D. The Differences in Prof. McFadden's and Dr. Singer's Models Are Visually Apparent

Because they approached their analyses from opposite directions, the formulas used by Prof. McFadden and Dr. Singer are entirely different. This is the equation to generate a genre-level pass-through rate in Dr. Singer's logit model:

$$1 - Q_i/M = [M - Q_i]/M$$

where $M$ is the size of the category and $Q_i$ is the quantity sold of product $i$. *See* Google Order at 10.

By obvious contrast, Prof. McFadden estimates a But-For price for each app using this formula:

$$\hat{p}_{jt}^{d,BF} = \max\left(0, -\frac{1}{\alpha^d} + \frac{c_{jt}^d}{1 - \tau^{BF}}\right)$$

where $\alpha^d$ is an estimated price coefficient for a given genre, $c_{jt}^d$ is an estimated cost for app $j$ in a given month, and $\tau^{BF}$ is the but-for commission rate estimated by Dr. Abrantes-Metz. Second Rev. Supp. McFadden Expert Rept. App'x E ¶ 110.[3] The pass-through rate implied by Prof.

---

[2] If necessary, Prof. McFadden can and will tailor his margin bounds in line with that additional evidence. If, for instance, the data shows that it is more appropriate to create sub-genres in applying margin bounds, Prof. McFadden's model has the flexibility to do that.

[3] This But-For price formula is for paid download apps. For the But-For price formula for free download IAP apps and paid download IAP apps, *see* Second Rev. Supp. McFadden Expert Rept. App'x E ¶¶ 113-14.

1  McFadden's approach in this case is determined by the difference between the As-Is price and the
2  estimated But-For price for each app using the following formula:

$$p_{jt}^{d,AS} - \hat{p}_{jt}^{d,BF} = \frac{\tau^{AS} - \tau^{BF}}{1 - \tau^{BF}}(\frac{1}{\alpha^d} + p_{jt}^{d,AS})$$

where $\tau^{AS}$ denotes the As-Is commission rate. *Id.* ¶ 111. This formulas does *not* depend on an app's market share of all app sales in a given genre.

## II.  CONCLUSION

These fundamental differences render Judge Donato's recent decision in *Google* irrelevant to the soundness and reliability of Prof. McFadden's econometric modeling in this case. For these reasons, and for those set forth in Plaintiffs' earlier briefing, the Court should reject Apple's *Daubert* challenges, certify the proposed Class, and enter a Scheduling Order shepherding this case through the remainder of discovery and ultimately to trial.

DATED: October 6, 2023         **WOLF HALDENSTEIN ADLER**
                               **FREEMAN & HERZ LLP**

                        By:        */s/ Rachele R. Byrd*
                                   RACHELE R. BYRD

                               BETSY C. MANIFOLD (182450)
                               RACHELE R. BYRD (190634)
                               750 B Street, Suite 1820
                               San Diego, CA 92101
                               Telephone: 619/239-4599
                               Facsimile:  619/234-4599

                               MARK C. RIFKIN (*pro hac vice*)
                               MATTHEW M. GUINEY (*pro hac vice*)
                               THOMAS H. BURT (*pro hac vice*)
                               **WOLF HALDENSTEIN ADLER**
                               **FREEMAN & HERZ LLP**
                               270 Madison Avenue
                               New York, New York 10016
                               Telephone: 212/545-4600
                               Facsimile:  212/545-4677

                               *Interim Class Counsel*

                               DAVID C. FREDERICK (*pro hac vice*)
                               AARON M. PANNER (*pro hac vice*)
                               KYLE M. WOOD (*pro hac vice*)

|   |   |
|---|---|
| 1 | |
| 2 | **KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.** |
| 3 | 1615 M Street, N.W., Suite 400 |
|   | Washington, D.C. 20036 |
|   | Telephone: (202) 326-7900 |
|   | Facsimile: (202) 326-7999 |
|   | dfrederick@kellogghansen.com |
|   | apanner@kellogghansen.com |
|   | kwood@kellogghansen.com |

*Counsel for Plaintiffs*

29970v6