THEODORE J. BOUTROUS JR. (SBN 132099)
  tboutrous@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
  dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CAELI A. HIGNEY (SBN 268644)
  chigney@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
HARRY R. S. PHILLIPS (D.C. Bar No. 1617356; *pro hac vice*)
  hphillips2@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

**Attorneys for Defendant APPLE INC.**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re Apple iPhone Antitrust Litigation | CASE NO. 4:11-cv-06714-YGR<br><br>**DEFENDANT APPLE INC.'S SUPPLEMENTAL BRIEF REGARDING RECENT DECISION IN *IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION*** <br><br>The Honorable Yvonne Gonzalez Rogers |

Pursuant to the Court's October 3, 2023 Order, Dkt. 775, Apple respectfully submits this supplemental brief concerning Judge Donato's decision in *In re Google Play Store Antitrust Litigation*, No. 21-md-02981-JD (N.D. Cal.), excluding the opinions of the class plaintiffs' expert Dr. Hal Singer pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See* Dkt. 766-1.  The decision supports granting Apple's *Daubert* motion.  Dkts. 688-1, 690.  Like Singer, both of Plaintiffs' experts, Prof. McFadden and Dr. Abrantes-Metz, make critical assumptions that are implausible, untested, and produce unreliable results.  Alternatively, Judge Donato's ruling supports holding an evidentiary hearing on the pending *Daubert* and class certification motions.

I. **The *Google Play* Order**

Judge Donato excluded Singer's model because it was "based on assumptions about [] Play Store apps that are not supported by the evidence."  Dkt. 766-1 at 16.  Like McFadden, Singer relied on an econometric demand model to estimate the rate at which developers would pass on a commission decrease.  *Id.* at 9-10.  Singer's model rested on an assumption that "all apps [in a given category] are substitutes and substitution is proportional to shares."  *Id*. at 12-13.  Judge Donato found this assumption "unproven" and "not factually supported" because it "flies in the face of the huge diversity of apps within the Play Store categories."  *Id.* at 15.  For instance, Duolingo, Rosetta Stone, and PictureThis - Plant Identifier are all in the "Education" category on Google Play, but "it is intuitively obvious that users looking for an app to learn Italian will not try to avoid a price hike by switching to an app that identifies the type of geranium in their kitchen."  *Id.* at 14.  While Singer's assumption is a feature of a "logit" demand model commonly used in academic economics, Judge Donato observed, it "can lead to unrealistic forecasts" when real-world substitution patterns do not fit the model's assumptions.  *Id.* at 14-15.  Further, "Singer did not compare the 'fit' of his logit model with that of an alternative demand model."  *Id*. at 16.  Singer's model was therefore "overly simple" and unreliable because it "d[id] not provide usable guidance on what to do with the myriad of differences and distinctions between apps within the Google Play Store categories," risking that the jury would "simply guess[] about proportionate substitution and ultimately the pass-through of fees to consumers."  *Id.* at 14-15.  Separately, Judge Donato excluded two alternative models that rested on the theory that Google would subsidize consumers more heavily absent the challenged restraints, finding that these models

were based on "wholly speculative assumptions" and mere "*ipse dixit*" about the but-for world, including Google's market share and participation in its consumer loyalty program. *Id.* at 7, 17-19.[1]

## II. *Google Play* Directly Supports Excluding Prof. McFadden's Model

Judge Donato's reasoning supports excluding Prof. McFadden's opinions. Like Singer's model, McFadden's model relies on rigid, untested *assumptions* about consumer demand that ignore diversity in consumer preferences for apps and in-app purchases within app categories and dictate his pass-through results. As Dr. Leonard did with Singer's model, Dkt. 766-1 at 8, 10-12, Profs. Schmalensee and Prince show here how McFadden's model's assumptions are wholly implausible in light of the "enormous heterogeneity" within App Store categories. Schmalensee ¶¶ 14, 111, 116-124; Prince ¶¶ 20-23, 85, 193-96.[2] Singer's model failed because it imposed unrealistic "'restrictions on substitution patterns between [app] products (*i.e.*, the own- and cross-price elasticities of demand).'" Dkt. 766-1 at 11 (quoting Leonard). McFadden too imposes unrealistic substitution restrictions in his model by making the pivotal assumption that "price sensitivity is the same for all apps with the same genre and App Store business model (*i.e.*, paid downloads or in-app purchases)."[3] Prince ¶ 20; *see* Schmalensee ¶ 116; McFadden 3d. Dep. 76:11-18, 241:18-24. McFadden thus assumes, for instance, that every in-game purchase, be it an "[a]ction, adventure, board, card, family, music, puzzle, racing, role-playing, simulation, sports, [or] strategy" game, has the exact same price sensitivity. McFadden 4th Dep. 49:3-50:8. The same assumption is made for all game downloads. *Id.* According to McFadden, "[t]his price sensitivity captures how readily consumers switch to other apps should an app increase its price." McFadden 1st Reply ¶ 120. In McFadden's model, therefore, any $1.99 paid download in the games genre that raised its price would face the *exact same* readiness of consumers to switch to other apps. Prince ¶ 20. McFadden assumes this is so "even if some of those apps are

---

[1] Judge Donato found it unnecessary to reach Google's other *Daubert* arguments, Dkt. 766-1 at 17, including the model's falsification by evidence that app pricing was unaffected by real-world commission reductions and Singer's failure to account for focal-point pricing. These flaws—which also afflict McFadden—were central issues in Google's now-moot Ninth Circuit Rule 23(f) appeal. Judge Donato decertified the *Google Play* consumer class in light of his *Daubert* order. *See* Dkt. 604, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD (N.D. Cal. Sept. 13, 2023).

[2] This brief uses the abbreviated citations set forth in Apple's *Daubert* Reply. Dkt. 740-1 at vi-vii.

[3] In McFadden's model, own-price elasticity is assumed to be equal to price multiplied by price sensitivity. *See* Prince ¶¶ 12, 35 & n.62.

1  unpopular and face fierce competition from numerous similar games, while others are household names
2  and face little competition." *Id.* McFadden provides no "usable guidance on what to do" about these
3  obvious distinctions, creating "a serious risk of the jury simply guessing." Dkt. 766-1 at 14.

4        Like the "unproven" substitution restrictions imposed in Singer's model, *id*. at 15, McFadden
5  admits that his assumption of *identical* price sensitivity is *not* an empirical assumption based on *any*
6  real-world data. "[I]t's not an empirical assumption. [I]t's a modeling assumption." McFadden 1st
7  Dep. at 174:5-16; *see also id.* at 174:20-22 ("the starting point is the simple assumption that there's a
8  common—common effect"). As Plaintiffs' counsel flatly admitted in argument, "McFadden did not
9  [test his model against real data in any way, shape, or form] because he doesn't believe it's either
10 necessary or appropriate to do so." June 23, 2023 Hrg. Tr. 41:15-18. But as Judge Donato recognized,
11 a model's assumptions must be based in the real world; it is necessary to vet assumptions. Dkt. 766-1
12 at 14-15. McFadden concedes his assumption "could be tested" and that "as an econometrician, I
13 would evaluate alternatives on their merits," McFadden 3d Dep. 77:23-78:9, but he has done no such
14 testing and looked at no alternatives. Prince, however, has subjected McFadden's uniform-price-
15 sensitivity assumption to empirical testing and found that it fails. Prince ¶¶ 191-96, App'x C & F.
16 Schmalensee similarly shows how McFadden's assumption "ignores important factors that clearly vary
17 among apps within app genres and that logically affect price sensitivity, including each app's
18 popularity, business model, functionality, and, of course, the intensity of competition it faces."
19 Schmalensee ¶ 116; *see id.* ¶¶ 14, 111, 117-124. Schmalensee's work underscores how, like Singer's
20 proportional-substitution assumption, McFadden's uniform-price-sensitivity assumption "flies in the
21 face of the huge diversity of apps within [the same App Store] categories." Dkt. 766-1 at 15.

22       McFadden's uniform-price-sensitivity assumption, just like Singer's proportional-substitution
23 assumption, determines the "ultimat[e] … pass-through of fees to consumers." *Id.* at 14. As Prince
24 has explained, McFadden's assumption means that as price increases, marginal cost *must* as well,
25 translating to greater pass-through (*i.e.*, higher overcharges) the higher the real-world price. *See*
26 *Daubert* Mot. 10-11; *Daubert* Reply 12-13; Prince ¶¶ 20-23, 35-36, 59, 75-87. And zero pass-through
27 due to zero marginal cost is mathematically possible in the model *only* at *one* solitary price point. *Id.*
28 ¶¶ 78-82 & Ex. 7 & 8. McFadden does not dispute that his model works this way but defends it, just

like Singer, by appealing to the "logit" model. *See* McFadden 1st Reply ¶ 81 & n. 159 ("[M]y econometric model is based on a consumer utility maximization model widely used in the academic literature"—*i.e.*, the "logit" model that is "widely used in academia"—and certain "mathematical properties of my model, *including the relationship between price and marginal cost, stem from that model*" (emphasis added)); *id*. ¶ 82 n.162 ("My model … is consistent with a logit demand model"); ¶ 129 n.230 (similar). But, just as with Singer, the academic literature that McFadden cites for support actually *highlights* the fundamental "problem" with his *assumed* "relationship between price and marginal cost," *id* ¶ 81—specifically, that it is "possible only if the marginal cost of a cheaper brand is lower … than that of a more expensive product," which "will not be true" for "some products." Aviv Nevo, *A Practitioner's Guide to Estimation of Random Coefficients*, 9 J. of Econs. & Management Strat. 513, 522-23 (2000) (cited in McFadden 1st Reply ¶ 82 n.162, ¶ 129 n.230).[4] In fact, digital products tend to have zero or negligible marginal costs regardless of their purchase price—as McFadden would know had he done *any testing whatsoever* (as Apple's experts did) of his model's marginal cost predictions against real-world data. McFadden 3d Dep. 174:14-20 (admitting he did no "testing [or] analysis" of whether his predicted marginal costs "are actually correct and accurate"); *see* Hitt ¶¶ 180-83 & Fig. 20 (finding that in-app purchase price does not correlate with marginal cost); Prince ¶¶ 76-77 & Ex. 6, ¶¶ 179-82 & Ex. 23 (same).

Accordingly, McFadden's pass-through opinions, like Singer's, are "based on assumptions about [App] Store apps that are not supported by the evidence." Dkt. 766-1 at 16. They provide no "basis on which to make a reasonable judgment about antitrust impact and damages in a product market" where price sensitivity is not uniform within categories and prices do not correlate rigidly with marginal costs. Dkt. 766-1 at 16-17. For this reason—and the myriad other reasons set forth in Apple's *Daubert* papers—McFadden's model is wholly unreliable and should be excluded.

---

[4] Prof. Nevo explains that more flexible "nested" logit models exist, but they "do[] not solve the problem" (afflicting McFadden) that the relationship between price and marginal cost is still driven by *assumption*. Nevo, *supra* at 524. Still-more flexible models, which have "random coefficients," avoid relying on restrictive assumptions, but also break the relationship that drives McFadden's results. *Id.* at 525-26 (discussing model allowing—contrary to McFadden's assumption—high-priced products to have low elasticities). McFadden eschewed a more flexible model that would require discarding his keystone assumption.

### III. *Google Play* Supports Excluding Dr. Abrantes-Metz's Opinions

The *Google Play* order also supports granting Apple's motion to exclude Dr. Abrantes-Metz's opinions. Abrantes-Metz's "model" for estimating Apple's but-for commission rate makes assumptions about the but-for world that are as "wholly speculative" and based on similarly "anemic" and "*ipse dixit*" analysis as Singer's excluded consumer subsidy models. *Compare* Dkt. 766-1 at 17-19 *with Daubert* Mot. 26-29, *Daubert* Reply 17-20. For instance, she assumes Apple would have only one rival iOS app store, and that both stores would charge an identical single commission rate. Like Singer's assumptions about but-for consumer subsidies, these assumptions are "not explained," Dkt. 766-1 at 18—and, worse, contradict Abrantes-Metz's own empirical findings about PC game stores, her "most comparable benchmark." *Daubert* Mot. 26-27; *Daubert* Reply 19-20. Abrantes-Metz also assumes that her single but-for iOS rival's profit margin would *exactly* equal the Microsoft Store's margin in 2019, based only on an unsupported assertion that this margin is high enough to support entry, but not so high as to draw in other rivals. Abrantes-Metz Reply ¶ 141; *see Daubert* Reply at 18. But this "assert[ion]" lacks any "real analysis or data," rendering her method unreliable. Dkt. 766-1 at 18 (rejecting Singer's assertion that Amazon Appstore's aggregate discount was a reasonable benchmark for consumer subsidy model); *accord Daubert* Reply at 17-18.

### IV. *Google Play* Demonstrates that an Evidentiary Hearing is Warranted

At the very least, Judge Donato's order in *Google Play* supports Apple's request for an evidentiary hearing on Apple's *Daubert* motion and Plaintiffs' class certification motion. *See Daubert* Mot. at i; *Daubert* Reply at 20. Judge Donato found Singer's model admissible at the class certification stage, but reversed his decision given the "substantially more developed" record following additional expert testimony. Dkt. 766-1 at 8, 16. As in *Google Play*, a live hearing involving both sides' experts would "serv[e] the end of ascertaining the truth and securing a just determination" of the pending motions in this "complex antitrust dispute." *Id.* at 8 (quoting Fed. R. Evid. 102); *cf. In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) ("[C]ourts should not grant certification except after searching inquiry, [nor] rely on later developments to determine whether certification is appropriate" (quoting 5 Moore's Federal Prac. § 23.80)).

| | |
|---|---|
| DATED: October 6, 2023 | GIBSON, DUNN & CRUTCHER LLP |
| | By: */s/ Daniel G. Swanson* |
| | Theodore J. Boutrous Jr.<br>Daniel G. Swanson<br>Cynthia E. Richman<br>Caeli A. Higney<br>Julian W. Kleinbrodt<br>Harry R. S. Phillips |
| | *Attorneys for Defendant Apple Inc.* |