BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com

MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
THOMAS H. BURT (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Interim Class Counsel and Proposed Co-Class Counsel*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR<br><br>**[REDACTED VERSION]**<br><br>**DECLARATION OF MINJAE SONG, Ph.D., IN RESPONSE TO ORDER FOR SUPPLEMENTAL INFORMATION IN FURTHER SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>CTROOM:   1, 4th Floor<br>JUDGE:     Hon. Yvonne Gonzalez Rogers |

**DOCUMENT SUBMITTED UNDER SEAL PURSUANT TO L.R. 79-5(b)**

Minjae Song, Ph.D., hereby declares and states as follows:

1. I am a Principal and head of U.S. Antitrust & Competition at The Brattle Group, ("Brattle"). I submit this Declaration in response to the Court's Order for Supplemental Information (ECF No. 784), entered on January 16, 2024. I have personal knowledge of the following facts and analysis and, if called as a witness, I could and would testify competently thereto.

2. I am an economist with extensive expertise in the areas of industrial organization, applied econometrics, and competition policies centered on two-sided markets, monopolization, class certification, and horizontal mergers. I have testified as an economic expert in antitrust litigation matters. I have also supported economic experts and provided economic consulting services on antitrust litigation matters, with a focus on digital platforms, information technology, and credit cards.

3. I received a Bachelor of Arts degree in Economics from Seoul National University in 1996. I received a Master of Arts degree in Economics from Harvard University in 2001 and a Ph.D. in Economics from Harvard University in 2003. I have published peer-reviewed articles on various topics of industrial organization, applied econometrics, and marketing in leading scholarly and professional journals, some of which focus on developing econometric models based on microeconomic theory and have been widely cited by academic researchers.

4. Brattle has been retained to provide economic analysis and expert witness testimony for Plaintiffs in the above-captioned action. I have worked on that engagement with Daniel L. McFadden, Ph.D., since 2020. I have overseen the econometric analyses performed by Brattle at the direction and in support of Prof. McFadden in this matter since that time.

5. In that capacity, I oversaw the preparation of Figure 5 in ¶ 76 of the Second Revised Supplemental Report of Daniel L. McFadden in Support of Plaintiffs' Motion for Class Certification (ECF No. 679-1), summarizing only the number of Apple accounts that were not harmed ("unharmed accounts") based upon total lifetime spending on Games and Music & Entertainment as of April 25, 2022 (the latest date for which we have received and analyzed data thus far).

6.      Figure 5 is a histogram dividing the total number of unharmed accounts into discrete spending groups, which we called "bins," based upon total dollars spent on the Games and Music & Entertainment genres as of April 25, 2022. During the course of our analysis, when we conducted the regression analysis against the data for the Games and Music & Entertainment genres, we specifically identified every unharmed account in the proposed Class. The histogram shows only how many *unharmed* accounts fall in *each* bin. To make the graph easier to read, we truncated it to exclude the bins associated with spending greater than or equal to $■■■. There are ■■ accounts (■■ percent of all unharmed accounts) that do not appear in Figure 5 as a result of this truncation.

7.      The Court has requested "the details (in chart format)" for Figure 5 in Prof. McFadden's Second Revised Supplemental Report.

8.      The following chart provides the details for Figure 5 in Prof. McFadden's Second Revised Supplemental Report with each row of the chart corresponding to a bin presented in Figure 5. The first three columns show (1) the lower bound of each bin, (2) the dollar amount labeling each bin, and (3) the upper bound of each bin. The fourth column, labeled Number of Unharmed Accounts, shows the number of unharmed accounts belonging to each bin. These numbers in the fourth column correspond to the height of the bins shown in Figure 5. These numbers represent the exact count of unharmed accounts within each bin that were individually and specifically identified by Prof. McFadden's econometric model against the data on all transactions in Games and Music & Entertainment through April 2022. The fifth column, labelled Percent of Unharmed IDs in Each Bin, shows the percent of all unharmed accounts belonging to each bin. The percentage numbers in this column are calculated by dividing the numbers in the fourth column by the total number of unharmed accounts. The last column, labeled Cumulative Percent of Unharmed IDs Below Upper Bound, shows the cumulative sum of the percentage numbers in the fifth column.

9.      Figure 5 also includes a red-colored vertical line at exactly $10 to approximate visually the proportion of unharmed accounts falling below counsel's proposed $10 spending cutoff. The fourth row of the chart below, highlighted in red, corresponds to this vertical line. The lower and the upper bounds of the fourth row are all $10 because this row represents a line, not a

1  bin. The last column of this row shows ▮, which is the percent of unharmed accounts that
2  spent no more than $10 on Games and Music & Entertainment apps and IAP between July 2008
3  and April 2022 mentioned in ¶ 76 of Prof. McFadden's Second Revised Supplemental Report.

**Distribution of Unharmed Accounts By Spending Range**
Data underlying Figure 5 of the McFadden Supplemental Report

| Lower Bound | Bin Label | Upper Bound | Number of Unharmed Accounts | Percent of Unharmed IDs in Each Bin | Cumulative Percent of Unharmed IDs Below Upper Bound |
|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| $10.00 | $10 | $10.00 | - | - | ▮ |
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

22   10.   The chart above shows that ▮% (=100% – ▮%) of unharmed accounts spent
23  more than $10 on Games and Music & Entertainment apps and IAP between July 2008 and April
24  2022. As illustrated in Figure 6 and ¶ 78 of Prof. McFadden's Second Revised Supplemental
25  Report, this ▮% of unharmed accounts represent ▮% of the proposed Class of all Apple
26  accounts that spent more than $10 on Games and Music & Entertainment apps and IAP during the
27  same period.
28     11.   More specifically, the ▮% figure that I just referenced was the product of a

separate calculation we performed to determine the precise effects of imposing counsel's proposed $10 spending threshold on the proportion of harmed and unharmed accounts in the proposed Class. The results of that calculation were originally reported in ¶ 78 of Prof. McFadden's Second Revised Supplemental Report, as well as row [4] of Figure 6. Our analysis showed that with a $10 spending cutoff, the proposed Class would include ▮▮▮▮ unharmed accounts and ▮▮▮▮ harmed accounts, or approximately ▮% of all the accounts in that Class would be unharmed accounts (▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

12. Although the following information was not previously provided to the Court, we could easily determine the effects of any lifetime spending cutoff above $10 on the percentage of unharmed accounts within the pool of remaining accounts. The chart below illustrates how increasing spending cutoffs would continuously decrease the percent of unharmed accounts in the resulting Class:

Unharmed Accounts Remaining After Implementing Various Spending Cutoffs

| Spending Cutoff | Total Accounts Remaining | Harmed Accounts Remaining | Unharmed Accounts Remaining | Percent of Unharmed Accounts in Class |
|---|---|---|---|---|
| $10.00 | ▮ | ▮ | ▮ | ▮ |
| $15.00 | ▮ | ▮ | ▮ | ▮ |
| $20.00 | ▮ | ▮ | ▮ | ▮ |
| $25.00 | ▮ | ▮ | ▮ | ▮ |
| $33.00 | ▮ | ▮ | ▮ | ▮ |

13. Again, the data in this chart reflect the same underlying account-level damages calculations that were used to create Figure 6 of Prof. McFadden's Second Revised Supplemental Report and represent the exact numbers of the individually and specifically identified harmed and unharmed accounts at each lifetime spending cutoff.

14. For example, as the chart above shows, if a $20 lifetime spending threshold were imposed, the proposed Class would include ▮▮▮▮ unharmed accounts and ▮▮▮▮ harmed accounts, or approximately ▮% of all the accounts in that Class would be unharmed accounts.

15. In summary, while the first chart referenced in ¶ 9 of this declaration (as well as McFadden's Figure 5) illustrates the total number of unharmed accounts and how those unharmed accounts are distributed across discrete spending groups (which we called "bins"), the second chart referenced in ¶ 12 of this declaration (similar to McFadden's Figure 6) shows how the size of unharmed accounts changes with different spending cutoffs relative to the resulting Class for each spending cutoff.

16. I believe the charts included herein provide the details requested by the Court in the Order for Supplemental Information. However, at the Court's request, I am able to provide even greater details of the data used to prepare Figure 5 of Prof. McFadden's Second Revised Supplemental Report, such as adding more rows to the charts above or providing the underlying data itself in tabular form if the Court requests it.

17. I hereby declare, subject to the penalty of perjury under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of January, 2024, at Washington, D.C.

_____
Minjae Song