UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR |

**JOINT DISCOVERY LETTER BRIEF REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION NO. 55 TO DEFENDANT APPLE, INC.**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Hixson,

Plaintiffs and Defendant Apple, Inc. ("Apple" and together with Plaintiffs, the "Parties") respectfully submit this joint statement regarding Request For Production No. 55, served on Apple on April 12, 2022.

Counsel for the Parties have met and conferred and exchanged correspondence in a good faith effort to resolve disputes concerning Apple's production of the data necessary to identify members of the class, including uninjured members. The Parties have made meaningful progress to resolve potential disputes without the need for the Court's intervention. However, because the Parties have been unable to resolve all disputes before the April 12, 2024, deadline for filing discovery motions, Plaintiffs seek the relief specified herein. *See* ECF 801 at 4:4-10 (accepting the fact discovery deadlines from the Parties' joint statement); ECF 791 at 6 (the Parties' joint proposal for a discovery motions deadline of April 12, 2024).

Respectfully submitted,

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP

By:  *Rachele R. Byrd*
        Rachele R. Byrd

*Plaintiffs' Class Counsel*

GIBSON, DUNN & CRUTCHER LLP

By:  *Caeli Higney*
        Caeli Higney

*Counsel for Defendant Apple, Inc.*

**Plaintiffs' Position**

**<u>Introduction and relief requested:</u>**  Plaintiffs request that the Court compel Apple to produce documents responsive to Request for Production No. 55 ("RFP 55") in Plaintiffs' Third Set of Requests for Production, attached hereto as **Ex. A**.  The Court should compel Apple to produce all data sufficient for Plaintiffs to link the individuals who paid for transactions on the App Store to their specific transactions so that Plaintiffs may both identify their Class membership status and their total damages (if any).

**<u>Background:</u>**  On April 12, 2022, Plaintiffs served Apple with RFP 55, which sought information needed for Plaintiffs to identify the consumers associated with the transactions in the otherwise anonymized App Store transaction dataset to determine if each consumer (1) meets the $10 lifetime spending threshold for Class membership, and if so, (2) their damages.  This matching will fulfill the Court's instruction that Professor McFadden show that his model "can successfully ascertain the number of uninjured class members and limit them."  ECF 789 at 27-28; *see also id.* at 1.

Apple served Plaintiffs its Responses and Objections to Plaintiffs' Third Set of Requests for Production ("R&Os"), attached hereto as **Ex. B**.  Apple served a host of objections to RFP 55, ultimately indicating that while it would "continue to meet and confer with Plaintiffs regarding this Request" it was "not prepared to produce the data" at that time.  Plaintiffs later made clear that Apple could produce the data directly to Plaintiffs' claims administration service, and that neither Plaintiffs nor their expert needed direct access to it.

Initially, after the Court granted class certification, Apple indicated that it would produce data sufficient for the purposes Plaintiffs required, but the Parties disagreed over the manner in which Apple would produce it.  After two meet and confers in March and April 2024, Plaintiffs have made significant compromises, agreeing to atypical production restrictions that are rarely employed in class action litigation.  Specifically, the Parties have agreed in principle that:

- Apple will produce data sufficient for Plaintiffs' claims administrator to identify which individuals are potentially entitled to notice.
- Apple will produce that data directly to the claims administrator.  It will be housed on an "air-gapped" computer in a segregated office within the administrator's facility.
- The Parties have agreed to certain additional limitations on access to, and the copying of, the data that Apple will produce, and plan to submit those agreements in writing in a stipulated supplemental protective order.

The sole dispute concerns whether and how Apple will produce certain data linking individuals to transactions.  During the meet and confer on April 11, 2024, Apple belatedly proposed to insinuate itself into the process necessary to meet the identification burden the Court has imposed on Plaintiffs and their experts.  Specifically, Apple has refused to produce information sufficient for Plaintiffs themselves to identify the specific transactions that each payor is associated with.  Instead, Apple proposes that the claims administrator produce *to Apple* a list of individuals that are potentially entitled to notice.  From there, *Apple* will analyze the data linking named payors to transactions and (on a yet-unspecified timeline) provide to Plaintiffs a document indicating exactly which transactions those payors are associated with.  To date, Apple has not specified what data elements the augmented list would contain.

- 1 -

Because Apple did not reveal this portion of its production proposal until the meet and confer held on April 11, 2024, Plaintiffs have not had sufficient time to confer with the necessary parties to determine whether this proposal is acceptable.  However, Plaintiffs do have two significant concerns with the process Apple has proposed.

*First*, Apple's proposal gives Plaintiffs no assurance that they, their claims administrator, and their expert group will have the ability to adequately and timely: (1) identify the Class members requiring notice; (2) match those individuals to the transactions presently grouped by account in the transactional data Apple previously produced; and (3) calculate each individual's damages (if any), before the deadline for exchanging expert reports on October 10, 2024.  *See* ECF 789 at 27-28; *see also id.* at 1.  The only way Plaintiffs' expert can link a transaction to a person in the App Store transaction data that Apple has produced is with an anonymized Apple ID.  There are no unique payor or transaction identifiers in the data set.  Now, literally at the last hour, Apple proposes to give Plaintiffs only a list of payors and their associated transactions while withholding the "key" that links payor identities to the transactional data.  Without more information, including the linking information Apple has refused to turn over to Plaintiffs' claims administrator, Plaintiffs' expert simply will not be able to calculate individualized damages as the Court expects.

*Second*, Apple's proposal—in which Apple takes part in the matching process that is Plaintiffs' burden—gives Plaintiffs no means to review, monitor, evaluate, or test the results that *Apple* will provide to match transactions to individual payors.  To date, Apple has not guaranteed that Plaintiffs will have any visibility into the "matching" work that Apple proposes it will do for Plaintiffs, or any ability to verify that Apple's analysis is accurate.  Without such an agreement, Apple's position is untenable—no defendant has the right to unilaterally control the analysis of key evidence without oversight from its counterparty or the Court.

Because of these points that remain unresolved at the final hour, Plaintiffs must submit this dispute to the Court.  That said, Plaintiffs will continue working with Apple in good faith in the hopes of settling on a production mechanism that both satisfies Apple's security concerns and ensures Plaintiffs are not prejudiced in their ability to identify Class members and calculate their damages.

**Analysis:**  Plaintiffs seek from Apple the consumer data that is essential to their expert's model; RFP 55 seeks only the information necessary to link consumers to the transactions they made on the App Store.  *See* Fed. R. Civ. P. 26(b)(1).  As Apple now recognizes, it must produce this data, but Apple continues to erect barriers to access that could threaten Plaintiffs' expert's ability to timely produce a report identifying harmed and unharmed Class members.  Apple must therefore show that "good cause" exists to justify its refusal to produce the necessary data in the manner Plaintiffs propose.  Fed. R. Civ. P. 26(c)(1); *see La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (party opposing discovery "has the burden of clarifying, explaining and supporting its objections with competent evidence").

To date, Apple has only cited generalized privacy and data security risks as justifying its refusal to disclose all necessary data to Plaintiffs.  *See, e.g.*, Ex. B at 3.  But Apple still has not specified what additional "risk" disclosure of this data to the claims administrator under the restrictions to which the Parties have already agreed will present to the Class members or to Apple.  Nor can it. During the Parties' March 8 meet and confer, Plaintiffs' claims administrator informed Apple's counsel that Apple has already vetted and approved it to host similar Apple customer data in two

matters:  *Lerman v. Apple Inc.*, No. 1:15-cv-07381 (E.D.N.Y.) (class action brought by iPhone 4S owners claiming that an iOS update rendered their devices "buggy" and slow) and *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813 (N.D. Cal.) (class action brought by MacBook consumers over allegedly defective keyboards).  Before Apple approved the administrator for hosting the data, it required the administrator to complete an extensive questionnaire; provide Apple all requested information; and allow Apple to conduct an on-site inspection.  The administrator also noted that it has or is currently hosting highly sensitive data for the SEC, FTC, Equifax, and Blue Cross Blue Shield (the latter involving highly sensitive patient medical records), among others.  Apple has not yet identified how those prior practices, or the practices the claims administrator has explained for this particular case, are in any way deficient.

Accordingly, Apple's general invocations of data security and privacy concerns—without identifying any specific security or privacy risks that are unmet by the procedures agreed to by the parties[1]—do not justify Apple's refusal to produce directly to Plaintiffs the crucial data necessary to link those individuals to the subject transactions.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (citation omitted)).  And at present, Plaintiffs cannot say whether Apple's last-minute proposals for producing the key data linking people to transactions will allow Plaintiffs to satisfy the Court's instructions to identify harmed and unharmed Class members before the expert report deadline this coming October. Additionally, while Apple now expresses some willingness to produce the data necessary for Plaintiffs to complete the matching process, Apple provided no substantive response to Plaintiffs inquiries between their April 11 meet and confer and the filing of this letter.

Therefore, Plaintiffs respectfully request that the Court order Apple to produce—under the restrictions to which the Parties have already agreed—*all* data sufficient for Plaintiffs to link the individuals who paid for transactions on the App Store to their specific transactions so that Plaintiffs may both identify their Class membership status and their total damages (if any).

### **Apple's Position:**

**Introduction.**  The data at issue here—which "would identify who downloaded each and every app"—is "the most sensitive conceivable data that Apple maintains" and lies at the core of Apple's "guardianship of consumer privacy," as Apple has explained to Plaintiffs even before they first issued their RFP No. 55.  *See* CMC Tr. 12:17–24 (Apr. 11, 2022). Apple protects this data with multiple layers of cyber security in its normal course of business.  Plaintiffs now want to take this data out of Apple's custody—and outside of those protections—creating substantial new security risks to App Store users' privacy.  *See id.* at 14:19–20 (Court noting "security issues" with Plaintiffs' request).  Apple and Plaintiffs are continuing to discuss how Apple can provide

---

[1] The data which Apple has now agreed to produce is no more sensitive than the medical data produced to Plaintiffs' claims administrator in litigation against Blue Cross and Blue Shield, which was produced without requiring the extraordinary safety protocols to which the Parties already have agreed here.

Plaintiffs with the information they need without creating these new security risks, and Apple remains optimistic that the parties can reach a negotiated resolution of this issue. But facing the discovery motion deadline, Plaintiffs sought to move forward with this motion in the meantime.

Plaintiffs' motion to compel should be denied for two reasons. *First*, Apple has already agreed to produce what is required by RFP No. 55 and is not obligated to do more. As Plaintiffs admit, Apple has agreed to produce personal identifying information ("PII") relating to payors for all U.S. transactions on the App Store. This is all the data that RFP No. 55 requested—"All DOCUMENTS CONCERNING the identity of each and every member of the CLASS or that identify which APPLE IDs belong to which members of the CLASS, including but not limited to the first and last name, email address, birthdate, telephone number, billing address, and method of payment of the user associated with each APPLE ID for which YOU have produced or will produce transactional data." While Plaintiffs appear to take issue with the fact that Apple will produce payor-level identifying information as opposed to account-level information, their class is defined as "those persons who *paid* more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases from any one Apple ID account." *See* Renewed Mot. for Class Certification, at 1 (emphasis added). Indeed, the only person who could be potentially "harmed" from an overcharge on an app download or in-app purchase or suffer damages is the person who actually paid for that app or in-app purchase. Apple therefore stands by its proposal to produce identifying information about App Store *payors*.

Apple has never agreed to produce—and Plaintiffs did not request in their RFP—the "key" that links payor identities to the transactional data. Apple objected to the RFP on May 12, 2022, stating that "the Request does not actually seek—and therefore Apple will not produce—data connecting the requested information about Apple's customers with their transactional records." **Ex. B** at 4. Plaintiffs have had nearly two years to cure that deficiency and have elected not to do so. Apple should not be compelled to produce what Plaintiffs have decided not to request.

*Second*, the "key" that Plaintiffs now request gives rise to the grave privacy concerns that Apple's production plan will avoid. Plaintiffs seek non-anonymized information about users' identities, where they live, their phone numbers, specific financial account information and—if that data is linked to the transactional data—everything they have downloaded and spent on the App Store. That pairing puts at risk potential insights about U.S. App Store users' political views, health concerns, sexual orientations, and all sorts of personal secrets and intimate activities. A data breach of that information would be catastrophic. Indeed, Apple—which has staked its corporate identity and brand on the protection of customer data—takes the protection of these two data sets so seriously that it strictly enforces a separation of them between different systems within the company.

Apple instead plans to produce to Plaintiffs all the payor PII they need to conduct their "matching" analysis. Though not requested in Plaintiffs' RFP, Apple will assist Plaintiffs in identifying which transactions are, per Plaintiffs' matching, tied together by common payors so that Plaintiffs can calculate alleged harm associated with individuals. This process will meet Plaintiffs' needs without adding unnecessary risk to many millions of users' privacy.

**Analysis.** Apple should not be compelled to produce data that Plaintiffs do not need and did not request and that would endanger important consumer interests. Rule 26 bars discovery that is not "proportional to the needs of the case," including by reference to "the importance of the discovery

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). And courts recognize that privacy objections to discovery require a "careful balancing of the need for the particular information against the claimed privacy right." *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015) (citing *Artis v. Deere & Co.*, 276 F.R.D. 348, 352–53 (N.D. Cal. 2011)).

Here, Plaintiffs have no need for the data "key," so their interest in it is vastly outweighed by the burden of risk to Apple's users. The key connecting payors' identities to their transactions implicates the "revelation of personal secrets, intimate activities, [and] similar private information" that is not at issue with the ordinary production of class member contact information. *Shaw*, 306 F.R.D. at 301 (citing *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *3 (N.D. Cal. Apr. 1, 2010)). Plaintiffs' demand that the Court compel production the data-linking key is deficient on its face because it makes no attempt to strike any balance—much less a proper balance—between protecting the privacy of class members' information with Plaintiffs' needs.

At this stage of the litigation, Plaintiffs seek to demonstrate which App Store transactions are tied together by a common payor so that they can net out which payors have alleged damages and which do not. As Plaintiffs recognize, some accounts may have different payors over time, and a single payor might have multiple accounts. Plaintiffs therefore face the task of sifting through the payors' identifying information to attempt to determine whether one John Smith is actually the same person as a J.T. Smith and a Johnny Smith found in the data. Apple has agreed to produce data sufficient for Plaintiffs to attempt that analysis. Once they have done so, Apple will, within its security perimeter, map the "linked" payors (as identified by Plaintiffs) on to the previously produced transactional data. That mapping process requires no analysis and allows no discretion on Apple's part. Apple will then produce to Plaintiffs information sufficient for them to aggregate transactions by individual payors. That is all that Plaintiffs need, and more than their RFP requested. They have no need to possess the key that ties payor PII together with users' transactions.

Plaintiffs' only ground for demanding production of the data-linking key is an unfounded skepticism that Apple may do something nefarious or wrong with the mapping. Such baseless speculation is no cause to trample on serious and well-founded concerns for the security of extremely sensitive consumer data. Sharing the "key," even if Plaintiffs' counsel try in good faith to protect it, creates another vector of risk that is out of any party's control. Apple is willing to engage in discussion to alleviate whatever concerns Plaintiffs have, but compelling needless production of a data key that puts consumer privacy at serious risk is simply not proportional to the needs of the case.

Dated: April 12, 2024                    WOLF HALDENSTEIN ADLER
                                          FREEMAN & HERZ LLP

                                    By:   */s/ Rachele R. Byrd*
                                          Rachele R. Byrd
                                          Mark C. Rifkin
                                          Matthew M. Guiney
                                          Thomas H. Burt
                                          Betsy C. Manifold
                                          750 B Street, Suite 1820
                                          San Diego, CA 92101
                                          Telephone: 619.239.4599

                                          *Plaintiffs' Class Counsel*

Dated: April 12, 2024                    GIBSON, DUNN & CRUTCHER LLP

                                    By:   */s/ Caeli Higney*
                                          Caeli Higney
                                          One Embarcadero Center, Suite 2600
                                          San Francisco, CA 94111

                                          *Attorney for Defendant Apple, Inc.*


## E-FILING ATTESTATION

I, Rachele R. Byrd, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the other signatory identified above has concurred in this filing.

                          */s/ Rachele R. Byrd*
                          Rachele R. Byrd

- 6 -

# Exhibit A

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599
manifold@whafh.com
byrd@whafh.com

MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
THOMAS H. BURT (*pro hac vice forthcoming*)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile:  212/545-4677
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Interim Class Counsel for Plaintiffs*
[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE iPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR |
| | **PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC.  – SET NO. 3** |
| | JUDGE:      Hon. Yvonne Gonzalez Rogers |
| | CTRM:       1 – 4th Floor |

PROPOUNDING PARTY:   PLAINTIFFS ROBERT PEPPER, STEPHEN H. SCHWARTZ, EDWARD W. HAYTER AND EDWARD LAWRENCE

RESPONDING PARTY:   DEFENDANT APPLE INC.

SET NO.:   THREE

1        PLEASE TAKE NOTICE that pursuant to rules 26 and 34 of the Federal Rules of Civil

2   Procedure, Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter and Edward

3   Lawrence ("Plaintiffs") by and through their undersigned counsel, hereby request that Defendant

4   Apple Inc. ("Apple" or "Defendant") produce the documents hereinafter described.

5        Defendant shall serve a written response hereto and produce the following described

6   documents for inspection and copying within thirty (30) days of service hereof at the law offices

7   of Wolf Haldenstein Adler Freeman & Herz LLP, Symphony Towers, 750 B Street, Suite 1820,

8   San Diego, California 92101, or at such other place upon which the parties may agree.

9   **<u>INSTRUCTIONS</u>**

10       1.    In producing documents and other materials in response to this document request,

11   you are requested to furnish all documents in your possession, custody, or control, regardless of

12   whether such documents are possessed directly by you or your partners, agents, employees,

13   representatives, subsidiaries, affiliates or investigators, or by your attorneys or their agents,

14   employees or investigators.

15       2.    Defendant shall produce the original of each document described below or, if the

16   original is not available, then a copy thereof; and in any event also all non-identical copies which

17   differ from the original or from the other copies produced for any reason, including the making of

18   notes thereon (on either the front or back of the document), and drafts.  A document also shall be

19   considered non-identical and must be produced if it was kept in a different file from another copy

20   of the same document (which otherwise was identical).  For example, and including without

21   limitation, if the same document was kept in the usual course of business in the files of two

22   different corporate directors then both copies must be produced even if they were otherwise

23   identical.

24       3.    All documents produced shall be bound or stapled in the same manner as the

25   original.

26       4.    All documents shall be produced as they are kept in the usual course of business, or

27   the documents shall be organized and labeled to correspond to the categories in the requests.

28

5.      Documents shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

6.      Production shall include the title or the like however denominated of the file, folder, binder, cover or container (or the like however denominated) in which the documents were kept in the ordinary course of business.

7.      In your response to each request, identify by Bates number, including prefix, or otherwise the identity of the person, department, branch, division or office from whose files the document(s) are being produced.

8.      All documents that originated in electronic form shall be produced in their native electronic form, with metadata.  These documents shall be produced with an accompanying index, to the extent one exists, that lists:

- Beg doc # - Document first Bates number;
- End doc # - Document last Bates number;
- Secondary begin doc # - First Bates number of unit;
- Secondary end doc # - End Bates number of unit (last page of last attachment to doc);
- Owner – Name of person whose files the document comes from;
- Doc date – date of file;
- File size – number of bytes in the file;
- File name – name of the file;
- Document type – document type;
- Doc title – re: line of document;
- Author – Author;
- Recipient – recipients;
- cc- carbon copies; and
- bcc – blind copies.

9.      All other documents shall be produced in searchable PDF format to the extent they are available, or can be made available, in that format.

10.     All electronic mail shall be provided in native e-mail format (e.g., .pst, .nsf, .xls, and .doc), with metadata, with the following fields combined in an accompanying index:

- Owner – Name of person whose e-mail file or other e-files are being provided;
- File Name – Name of file;
- File Date – Date of file; and
- File Size – Size of file

11.     For those paper documents which have been created digitally but executed with a hand-written signature or physical seal, then both the digital version and the signed paper copy should be produced.

12.     You are instructed to produce each document in response to this document request in its entirety, without deletion or excision, regardless of whether you consider the entire document to be relevant or responsive.  If any requested document cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document, is being withheld, and the reason that document or portion is being withheld.

13.     If you object to any request in this document request on the ground that it is overly broad, you are instructed to produce documents in response to the request as narrowed to conform to your objection within the period allowed for a response and to state in your responses:  (1) how you narrowed the request, and (2) the reason why you claim the request is overly broad.  Plaintiffs do not waive the right to compel the production as originally sought from Apple.

14.     If you assert any claim of privilege, whether attorney-client, work-product or otherwise, in objecting to any of the document requests herein, and withhold any responsive document pursuant to that objection, identify each document by providing the following:  (a) the title and description of the document, the number of pages, and the Bates-number range; (b) the subject matter or general nature of the document (without disclosing its contents); (c) the identity and position of its author; (d) the date it was communicated (or prepared, if that is the more relevant date); (e) the identity and position of all addressees and recipients of the communication; (f) the document's present location; (g) the specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and (h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

15.     If a document responsive to a document request has been destroyed or discarded, identify the document in the same manner in which the privileged documents are to be identified as stated above.

16.     If no documents responsive to a particular document request exist or are within your possession, custody, or control, you must so state in your response to the request.

17.     This request is continuing so as to require supplemental production pursuant to rule 26(a) of the Federal Rules of Civil Procedure.  If you discover, obtain possession of, or create, varying or additional documents responsive to the request between the time of the original response and the time set for trial, notice of such supplemental documents and copies thereof shall be served on Plaintiffs' counsel no later than ten (10) days after the discovery of any such documents, but in no event later than one week before the first day of trial.

## DEFINITIONS

1.     "APPLE," "YOU" or "YOUR" means Apple Inc., including any agents or persons acting on its behalf or under its control, and its branches, divisions, subsidiaries, affiliates, representatives, employees, attorneys and investigators.

2.     "CLASS" shall include all persons in the United States, exclusive of APPLE and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant APPLE, or who paid APPLE for one or more in-app purchases, including, but not limited to, any subscription purchase, for use on an iOS device at any time since July 10, 2008.

3.     "COMMUNICATION" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

4.     "CONCERNING" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

5.     "DOCUMENT" and "DOCUMENTS" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; reports; books; records, reports, and/or summaries of personal conversations or interviews; diaries; presentations;

slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, reports, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

7.      "All" and "each" shall be construed as "all and each."

8.      The use of the singular form of any word includes the plural and vice versa.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant time period for these document requests is from January 1, 2006 through the present date.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS CONCERNING the identity of each and every member of the CLASS or that identify which APPLE IDs belong to which members of the CLASS, including but not limited to the first and last name, email address, birthdate, telephone number, billing address, and method of payment of the user associated with each APPLE ID for which YOU have produced or will produce transactional data.

DATED:  April 12, 2022

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**

By: */s/ Rachele R. Byrd*

BETSY C. MANIFOLD
RACHELE R. BYRD
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599
manifold@whafh.com
byrd@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
MARK C. RIFKIN
MATTHEW M. GUINEY
THOMAS H. BURT
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:   212/545-4677
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Interim Class Counsel for Plaintiffs*

DAVID C. FREDERICK (*pro hac vice*)
AARON M. PANNER (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL &**
  **FREDERICK, P.L.L.C**
1615 M Street, NW Suite 400
Washington, D.C. 20036
Telephone:  202/326-7900
Facsimile:   202/326-7999
dfrederick@kellogghansen.com
apanner@kellogghansen.com

*Counsel for Plaintiffs*

APPLE2:28289

**CERTIFICATE OF SERVICE**

I, Amanda Salas, hereby certify that I am a citizen of the United States, over the age of eighteen, and not a party to the within action.  I hereby certify that on April 12, 2022, I delivered the foregoing **PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC**. **– SET NO. 3**, via electronic mail to the counsel listed on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 12th day of April 2022 at San Diego, California.

_____
AMANDA SALAS

IN RE APPLE iPHONE ANTITRUST LITIGATION
Case Nos.: 4:11-cv-06714-YGR-TSH; 4:19-cv-03074-YGR-TSH
Service List – April 12, 2022
Page 1

## COUNSEL FOR CONSUMER PLAINTIFFS

Betsy C. Manifold
Rachele R. Byrd
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
        619/239-4599
        619/234-4599 (fax)
manifold@whafh.com
byrd@whafh.com

Mark C. Rifkin
Matthew M. Guiney
Thomas H. Burt
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY  10016
        212/545-4600
        212/545-4677 (fax)
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

David C. Frederick
Aaron M. Panner
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW Suite 400
Washington, D.C. 20036
202/326-7900
202/326-7999 (fax)
dfrederick@kelloghhansen.com
apanner@kelloghhansen.com

*Plaintiffs' Interim Class Counsel and Proposed
Co-Class Counsel*

Michael Liskow
CALCATERRA POLLACK LLP
mliskow@calcaterrapollack.com
1140 Avenue of the Americas, 9th Floor
New York, NY 10036-5803
Telephone: (212) 899-1761
Facsimile: (332) 206-2073

*Counsel for Plaintiff Robert Pepper*

## COUNSEL FOR DEFENDANT APPLE INC.

Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Jay P. Srinivasan
Dana Lynn Craig
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
        213/229-7000
        213/229-7520 (fax)
tboutrous@gibsondunn.com
rdoren@gibsondunn.com
dswanson@gibsondunn.com
jsrinivasan@gibsondunn.com
dcraig@gibsondunn.com

Cynthia E. Richman
Harry R. S. Phillips
Mark A. Perry
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
        202/955-8234
        202/530-9691 (fax)
crichman@gibsondunn.com
hphillips2@gibsondunn.com
mperry@gibsondunn.com

Veronica S. Lewis
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
        214/698-3100
        214/571-2900 (fax)
vlewis@gibsondunn.com

Ethan Dettmer
Eli M. Lazarus
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
        415/393-8200
        415/393-8306 (fax)
edettmer@gibsondunn.com
elazarus@gibsondunn.com
AppleAppStoreDiscovery@gibsondunn.com

IN RE APPLE iPHONE ANTITRUST LITIGATION
Service List – April 12, 2022
Page 2

David R. Eberhart
Anna T. Pletcher
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
    415/984-8700
    415/984-8701 (fax)
deberhart@omm.com
apletcher@omm.com

Katrina Robson
Elena Zarabozo
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
    202/383-5300
    202/383-5414 (fax)
krobson@omm.com
ezarabozo@omm.com

Scott Schaeffer
O'MELVENY & MYERS LLP
Plaza 66, Tower 1, 37th Floor
1266 Nanjing Road West
Shanghai 200040, China
    86-21-2307-7000
    86-21-2307-7300 (fax)
sschaeffer@omm.com

Michelle Lowery
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
    310/277-4110
    310/277-4730 (fax)
mslowery@mwe.com

Elizabeth Rodd
Sandra Meyer
McDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
    617-835-4040
    617-321-4577 (fax)
erodd@mwe.com
smeyer@mwe.com

Nicole Castle
Michael Huttenlocher
McDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
    212-547-5400
    212-547-5444 (fax)
ncastle@mwe.com
mhuttenlocher@mwe.com

Hannah L. Cannom
Bethany M. Stevens
WALKER STEVENS CANNOM LLP
500 Molina Street #118
Los Angeles, CA 90013
    213/337-9972
    213/403-4906
hcannom@wscllp.com
bstevens@wscllp.com

27640

# Exhibit B

THEODORE J. BOUTROUS JR., SBN 132099
 tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
 rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
 dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
 jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092;
appearance *pro hac vice*)
 vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone:    214.698.3100
Facsimile:    214.571.2900

CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
 crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:  202.467.0539

ETHAN D. DETTMER, SBN 196046
 edettmer@gibsondunn.com
RACHEL S. BRASS, SBN 219301
 rbrass@gibsondunn.com
CAELI A. HIGNEY, SBN 268644
 chigney@gibsondunn.com
ELI M. LAZARUS, SBN 284082
 elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendant, APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION, | CASE NO. 4:11-cv-06714-YGR |
| | **DEFENDANT APPLE INC.'S RESPONSES AND OBJECTIONS TO CONSUMER PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| | Hon. Yvonne Gonzalez Rogers |

**PROPOUNDING PARTY:**     Consumer Plaintiffs

**RESPONDING PARTY:**     Defendant Apple Inc.

**SET NO.:**     Three

Gibson, Dunn & Crutcher LLP

APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Apple Inc., by and through the undersigned counsel, hereby objects and responds to the Consumer Plaintiffs' Third Set of Requests for Production, including without limitation document request No. 55 (the "Request"), Definitions, and Instructions contained therein.

## PRELIMINARY STATEMENT

1.   Consumer Plaintiffs' third set of requests for production purport to seek highly sensitive data relating to the identities and complete transaction histories of Apple's customers.   On its face, Plaintiffs' Request calls for the names, email addresses, phone numbers, physical addresses, and credit card numbers associated with more than 400 million consumer accounts.   In addition, even though this appears nowhere in their Request, Plaintiffs have explained that they also intended to request information that would allow them to link each of these consumer accounts with transacation data.   The Request raises profound security and privacy risks, and the production of such data would present extraordinary risks to the privacy and security of Apple's customers, contrary to Apple's fundamental values and priorities.   *See* CMC Tr. 14:19-20 (Apr. 11, 2022) (the Court recognizing "security issues" with Plaintiffs' request).

2.   Apple's responses to the Request are made to the best of its current knowledge, information, and belief.   Apple reserves the right to supplement or amend any of its responses should future investigation indicate that such supplementation or amendment is necessary.

3.   Apple's response to the Request is confidential and made solely for the purposes of and in relation to this action.   The response is given subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility).   All objections are reserved and may be interposed at any time.

4.   Apple's response is based on its understanding that Plaintiffs seek only information that is within Apple's possession, custody, and control.

5.   Nothing contained in these Responses and Objections or provided in response to the Request consists of, or should be construed as, an admission relating to the accuracy, relevance,

APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

Gibson, Dunn & Crutcher LLP

existence, or nonexistence of any alleged facts or information referenced or implied in any request.

## RESPONSES AND OBJECTIONS

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS CONCERNING the identity of each and every member of the CLASS or that identify which APPLE IDs belong to which members of the CLASS, including but not limited to the first and last name, email address, birthdate, telephone number, billing address, and method of payment of the user associated with each APPLE ID for which YOU have produced or will produce transactional data.

**OBJECTIONS TO REQUEST FOR PRODUCTION NO. 55:**

Apple objects to the production of the highly sensitive information sought by this Request regarding an enormous number of third parties who have entrusted Apple to safeguard that information.   The Request constitutes a grave invasion of privacy, disproportionate to Plaintiffs' purported need.   Plaintiffs' Request is staggering: credit card and consumer-identifying information for every U.S. App Store account—*400 million* accounts—which Plaintiffs indicate they intend to link with the detail of *64 billion* transactions.   This Request is deficient on its face because it makes no attempt to strike any balance—much less a proper balance—between protecting the privacy of putative class members' information with Plaintiffs' needs.   *Murphy v. Target Corp.*, No. 09CV1436-AJB WMC, 2011 WL 2413439, at *1 (S.D. Cal. June 14, 2011) ("In the class action context, Courts balance the following factors when assessing the potential intrusion of pre-certification discovery on the putative class members' right of privacy . . . :   (1) if the party has a legally protected privacy interest; (2) whether the party has a reasonable expectation of privacy; and (3) whether production of the information constitutes a serious invasion of privacy.").   Here, the existence of profound privacy interests and the threat of a serious invasion of them are self-evident. Plaintiffs' Request seeks non-anonymized information about users' identities, where they live, specific financial information (including full credit card numbers) and—if that information is linked to the transactional data—everything they have downloaded and spent on the App Store.   That

Gibson, Dunn &
Crutcher LLP

combination of information would uncover a trove of highly sensitive information—including users' political views, health concerns, sexual orientations, and all sorts of personal secrets and intimate activities.   For example, the mere fact that someone has downloaded an app could reveal closely held secrets that have serious, life-changing consequences.   *See*, *e.g.*, Liam Stack, *Catholic Officials on Edge After Reports of Priests Using Grindr*, The New York Times (Oct. 14, 2021) https://www.nytimes.com/2021/08/20/nyregion/pillar-grindr-catholic-church.html.   App Store users have entrusted such information to Apple, not to Plaintiffs or their consultants, and Apple takes that trust so seriously that Apple itself does not combine that information or keep it in a single database. Apple is not satisfied that Plaintiffs or their consultants can or will sufficiently safeguard that information.

Apple further objects to the Request on the grounds that it is overly burdensome and wholly disproportionate to the needs of the case given the privacy risks identified above.   Plaintiffs apparently issued this Request in order to "deanonymize" the transactional data they have already received.   But the Request does not actually seek—and therefore Apple will not produce—data connecting the requested information about Apple's customers with their transactional records. Regardless, Plaintiffs have made no effort to explore safer and less intrusive alternatives for addressing the class certification issues underlying the Request that do not require exposing Apple's customers to a privacy breach.

Apple further objects on the grounds and to the extent that the Request seeks documents and information that are unrelated and irrelevant to the claims in, or defenses to, this litigation or that are not proportional to the needs of the case, considering the burden and expense of the proposed discovery.

Apple further objects that Plaintiffs have unduly delayed in propounding this Request. Plaintiffs filed their lawsuit in 2011 and propounded their first requests for production in October 2019.   Plaintiffs' first set of requests for production did not request transactional or consumer-identifying data.   Apple and Plaintiffs, along with the plaintiffs in the related case, *Cameron v. Apple*, Case No. 4:19-cv-3074-YGR (N.D. Cal.), negotiated for many months throughout 2020

Gibson, Dunn &
Crutcher LLP

4

APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

regarding a transactional data production in response to a request from the *Cameron* plaintiffs. Many months into these negotiations, in September 2020, Plaintiffs finally propounded their request for transactional data.   After further negotiations, Apple produced transaction data in January 2021. Following subsequent negotiations with Plaintiffs, Apple then produced additional transaction data in June 2021.   At no time during those negotiations did Plaintiffs seek the personal identifying information sought by this Request, outside of a request for information on consumers' age, in response to which Apple produced data on birth years reported by consumers in establishing their account IDs.   Instead, Plaintiffs waited until March 2022—18 months after their first transaction data request and two-and-a-half years into discovery—to request this data.   There is no reason that Plaintiffs could not have propounded this Request in conjunction with their previous request for transactional data in 2020.   It is unreasonable and unduly burdensome for Apple to now have to collect new, extensive data in response to this belated Request.

Apple further objects to the Request on the grounds that it is overbroad as written and unduly burdensome to the extent it seeks "ALL DOCUMENTS CONCERNING the identity of each and every member of the CLASS . . . including but not limited to the first and last name, email address, birthdate, telephone number, billing address, and method of payment of the user associated with each APPLE ID."

Apple objects to the Request, including the associated Definitions and Instructions, to the extent that they are not limited to the relevant time period, thus making the Request overly broad, unduly burdensome, and not relevant to the claims or defenses in this action, especially to the extent the Request seeks documents pertaining to facts outside the applicable statutes of limitations.   The Plaintiffs' stated Relevant Time Period begins on January 1, 2006—years before any App Store transactional data, related consumer-identifying data, or the App Store itself ever existed.

Apple further objects to the extent that the Request is duplicative of Plaintiffs' Request No. 48, which sought, in part, each App Store "consumer's age," in response to which Apple produced data on birth years reported by consumers in establishing their account IDs.

Apple objects to the Request on the grounds and to the extent that it calls for the production of

Gibson, Dunn &
Crutcher LLP

5
APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

any information or documents protected by the attorney-client privilege, the attorney work-product doctrine, Federal Rule of Evidence 502, any other legally cognizable privilege or immunity, or the laws, regulations, or policies of other countries, and Apple and its counsel hereby assert such privileges and immunities.    Inadvertent production of any information or documents that are privileged or otherwise immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to the discovery with respect to such information or documents or the subject matter thereof, or the right of Apple to object to the use of any such information or documents or the subject matter thereof during these or any other proceedings.    The production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding to the fullest extent of Federal Rule of Evidence sections 502(d) and (e).    For example, the production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

Apple objects to the Request (including the Definitions and Instructions), on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the Northern District of California, any other applicable federal or state law, and any agreements between the parties.    Apple will construe and respond to the Request in accordance with the requirements of the Federal Rules of Civil Procedure and other applicable rules or laws.

Apple objects to the Request to the extent it does not identify the documents sought with reasonable particularity as required by Rule 34(b) of the Federal Rules of Civil Procedure.

Apple objects to the Request to the extent that any regulatory body, governmental agency, or governmental entity, domestic or foreign, objects to the production of the requested documents.

Apple objects to the Request to the extent that it seeks information that is proprietary or otherwise confidential to Apple.

Apple objects to the Request to the extent that it seeks information that is subject to the limitations set forth in the Expert Stipulation Order.    ECF No. 201.

Gibson, Dunn &
Crutcher LLP

6

APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

Apple objects to the Request to the extent that it requires Apple to collect and produce data in a manner and form that such data is not maintained in the ordinary course of business.   Indeed, to mitigate the serious privacy concerns described above, Apple does not maintain the requested data in the same internal databases, nor in the form requested by Plaintiffs.

Apple objects to production of documents in response to the Request on the grounds and to the extent that production of such documents demanded therein would violate the rights of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such production otherwise is prohibited by law, or is subject to legal requirements for notification of third parties.

Apple objects to the Request on the grounds and to the extent that the Request purport to require Apple to collect, review and produce an enormous volume of data within 30 days, as specified in the Request.

Apple objects to the Request to the extent it seeks to impose an obligation on Apple to conduct anything beyond a diligent search and reasonable inquiry of readily accessible files, including electronic files, where responsive documents would reasonably be expected to be found.

Apple objects to the Request to the extent that it uses words and phrases that are not defined in an understandable manner.   Apple will interpret the terms and phrases used in the Request as those terms and phrases are understood to Apple.

By stating in these responses that Apple will meet and confer regarding the Request, Apple does not intend to represent that any responsive documents or all requested documents actually exist, but rather that Apple will continue, as it has been doing, to meet and confer with Plaintiffs in good faith to identify a solution that addresses both parties' interests and the interests of third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Apple responds as follows:   Apple will continue to meet and confer with Plaintiffs regarding this Request but is not prepared to produce the data that Plaintiffs claim is

requested in RFP 55, particularly given that Plaintiffs have not contemplated less invasive and more secure mechanisms for addressing the class certification issues underlying RFP 55.

DATED:    May 12, 2022                              GIBSON, DUNN & CRUTCHER LLP


                                                   By:    _____*/s/ Cynthia E. Richman*_____
                                                              Cynthia E. Richman

                                                   *Attorneys for Defendant Apple Inc.*

APPLE INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS (NO. 55) – CASE NO. 4:11-CV-06714-YGR – CONFIDENTIAL

Gibson, Dunn &
Crutcher LLP