UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR |
|---|---|

**JOINT DISCOVERY LETTER BRIEF REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION NO. 55 TO DEFENDANT APPLE, INC.**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Hixson,

Plaintiffs and Defendant Apple Inc. ("Apple" and together with Plaintiffs, the "Parties") respectfully submit this fourth joint statement regarding Request For Production No. 55, served on Apple on April 12, 2022. Following the discovery status conference on April 25, 2024, Your Honor directed the Parties to provide an update by May 1, 2024. After the Parties did so, Your Honor directed the Parties to provide another update by May 8, 2024. On May 8, 2024, after the Parties provided their second update, Your Honor directed the Parties to file a third update by May 10, 2024. On May 30, 2024, Your Honor directed the Parties to file a fourth update by June 6, 2024.

Counsel for the Parties continued to meet and confer in a good faith effort to resolve disputes concerning Apple's production of the data necessary to identify members of the Class, including uninjured members. Their ongoing discussions have centered around the availability of certain transactional data prior to mid-2014, and efforts to reach an agreement on the production of sample data that might help resolve the dispute before Your Honor.

**I.        Availability of Certain "Linking" Data**

As Your Honor will recall, on May 9, 2024, Apple's counsel informed Plaintiffs' counsel that Apple had discovered that a certain transactional data field that could "link" the transaction data prior to mid-2014 with the payor account data had been deleted. *See* ECF No. 869. This information was shared for the first time on a meet and confer after Plaintiffs inquired into why Apple was experiencing technical difficulties in collecting the Parties' contemplated data sample (discussed in Section II, *infra*). At this time, Apple also informed Plaintiffs that it was "investigating the existence of backup data that would provide the missing transactional data field." Ex. 1.

The Parties noted in their May 10 update (ECF No. 869) their disagreement over Plaintiffs' entitlement to this linking data. Plaintiffs assert that the data linking payors—i.e., class members—to the transactions they paid for throughout the Class Period fall squarely within RFP No. 55's demand for "all documents concerning the identity of each and every member of the

class." ECF No. 815 at 14 (cleaned up). Plaintiffs cannot determine how much a specific person paid for apps and in-app content—and, in turn, whether they meet the $10 spending threshold for Class membership—without data that link their identity to transactions. Apple continues to maintain that this "linking" data is not requested by RFP No. 55, which by its plain terms seeks documents "that identify which APPLE IDs belong to which members of the CLASS"—nothing more. But, regardless, Apple has been working diligently to locate any such linking information that is available.

On May 14, 2024, Plaintiffs' counsel followed up with Apple's counsel about this data availability issue with questions regarding the kind of data deleted, how and when it was deleted, and whether any backup data exists. Ex. 2. Plaintiffs also inquired whether Apple would consent to a motion from Plaintiffs seeking leave to take a Rule 30(b)(6) deposition on those topics. On May 17, 2024, Apple informed Plaintiffs that it had identified a potential backup source with the requested "linking" information covering the pre-2014 time period. *See* Ex. 1. It did not otherwise respond to Plaintiffs' inquiries. Then, on June 5, 2024, in response to Plaintiffs' counsel's inquiry, Apple confirmed for Plaintiffs that it had "identified a method of restoring that data for the pre-2014 time period, and Apple is now working to do so for the many billions of paid transactions for which we have previously produced records." It also informed Plaintiffs that its "[i]nitial testing" of the backup data shows that it "is highly reliable." Ex. 3. The Parties have not yet been able to meet and confer with respect to specific questions Apple understands Plaintiffs' counsel has about the backup data; about how the original data was deleted in the first place; or when the replacement data will be ready for Plaintiffs' expert and claims administrator to use (assuming it is usable and needed).

## II.     The Parties' Discussions Over the Production of a Sample

In an effort to resolve their differences over the production of the data linking payors to transactions, the Parties have—since the initiation of this discovery dispute—been discussing ways in which Plaintiffs might obtain the necessary data without Apple ever producing the "key" to which it objected producing on April 12. *See* ECF No. 815 at 5.

In the spirit of compromise, Plaintiffs proposed that Apple produce a sample of the linked data: specifically, the payor fields associated with one million randomly selected Apple IDs, and for a further 50,000 randomly selected accounts from that one million Apple IDs, all transactions. This way, Plaintiffs could work with their claims administrator and Prof. McFadden to ascertain whether Plaintiffs could accommodate Apple's goal of never producing, in a single place, "non-anonymized information about users' identities . . . linked to the transactional data" (ECF No. 815 at 5) for more than a small sample group of accounts.

Apple has prepared the requested sample data and is ready to produce it to Plaintiffs' claims administrator once the Parties align on the terms of a supplemental protective order. The Parties currently dispute, however, whether Apple will be required to do more than produce that sample.

**Plaintiffs' position.** Plaintiffs' position is that Apple is suddenly and without justification attempting to alter the terms of the Parties' agreement. Plaintiffs repeatedly informed Apple that they would require Apple to produce more than just the sample data—it would need to produce all payor personal identifying information so Plaintiffs could effectively determine who might be

entitled to notice and be a Class member.  Indeed, in the Parties' initial joint discovery letter brief, Apple memorialized this understanding:  it would "produce personal identifying information ('PII') relating to payors for all U.S. transactions on the App Store."  ECF No. 815 at 5.  Plaintiffs would use that data to identify who all the Class members *might* be, and then Apple would "assist Plaintiffs in identifying which transactions are, per Plaintiffs' matching, tied together by common payors so that Plaintiffs can calculate" both how much they spent on apps and in-app content (for purposes of Class membership) and their damages.  *Id.*

Plaintiffs never agreed, as Apple now contends for the first time, that their acceptance of the sample data—which was intended only to confirm if this process would be a reliable means of identifying Class members and their damages—relieved Apple of its duty to produce anything else.  Plaintiffs have expressed a willingness, if possible, to have Apple complete the process of matching payors to transactions based on Plaintiffs' claims administrator's work with the sample, allowing Apple to give to Prof. McFadden a transactional data set with accurate but anonymized payors.  However, the sampling proposal is a trial, and Plaintiffs have clearly stated that this outcome is a goal, but the results of a field test cannot be fore-ordained.  Ex. 4; *see also* Ex. 5.  In light of Apple's sudden change of position—which generates doubt about Apple's willingness to comply with its obligation to produce this data at all—Plaintiffs are considering insisting that Apple produce the full payor data, including the "key" that is the foundation of this dispute.

Plaintiffs further reiterate that Apple has yet to identify a genuine concern with the safety and security of the payor data in the hands of Plaintiffs' claims administrator, who has already agreed to provide extraordinary security protections.  Indeed, Plaintiffs' claims administrator already hosts Apple consumer data in two other class action cases and hosts arguably even more sensitive personal health data in another matter.  *See* ECF No. 815 at 4 & n.1.

**Apple's position.**  As laid out in the Parties' initial joint brief (ECF No. 815), the Parties disagreed over the scope of data to be produced in response to RFP No. 55, with Plaintiffs demanding PII *and* linking data for all payors with U.S. App Store paid transactions, and Apple willing to produce only the PII.  To bridge this divide, the Parties negotiated a mutually acceptable compromise over the scope of data to be produced:  (i) Apple would produce a sample of a sizable amount of payor PII and a smaller amount of "linked" transactions; (ii) Plaintiffs' experts would use that sample to develop a protocol for matching; and (iii) that protocol would be provided to Apple to apply in a ministerial way such that Apple would not have produce all payors' PII with their transactional records, and Plaintiffs would have individual payors with multiple Apple accounts "matched" according to their experts' protocol.  But weeks after the Parties reached that agreement, Plaintiffs' experts at JND balked at having to share their protocol—claiming a "proprietary" interest, despite disclosure of that work being subject to FRCP 26 requirements— and now Plaintiffs lay blame with Apple.

In its initial joint discovery brief, Apple made clear its position that it was willing to "produce personal identifying information ('PII') relating to payors for all U.S. transactions on the App Store," but that it was *not* willing to produce any data connecting the requested information about Apple's customers with their transactional records.  ECF No. 815 at 5.  After the Parties filed that brief, on April 24, 2024—minutes before a hearing scheduled with your Honor— Plaintiffs approached Apple with the compromise mentioned above—that Apple would produce

the payor fields associated with one million randomly selected Apple IDs, and for a further 50,000 randomly selected accounts from among that one million Apple IDs, produce transactional data. This sample would allow Plaintiffs (through JND) to determine a process for "matching" up payor accounts belonging to the same individuals, so that Apple could then mechanically apply Plaintiffs' process to the remainder of the payor data and identify for Plaintiffs the transactions associated with payors who are—according to Plaintiffs' method—the same. That information then would allow their economic expert (Prof. McFadden) to analyze the transaction data, grouped by payor, to determine which potential class members were injured or uninjured.

On April 30, 2024, the Parties discussed Plaintiffs' proposal. Apple made clear in that discussion that any agreement to provide the sample of payors' identifying information alongside transactional data was conditioned on the parties' mutual understanding that Apple would be providing this sample *in lieu of* producing such information for all Apple IDs. That was the compromise: Apple would provide some "linking" data, and in exchange would not have to produce data associated with all App Store users. Indeed, Plaintiffs' follow-up email on May 1 reflected their understanding that a "condition" of Apple's acceptance of the sampling proposal was that "plaintiffs never seek to have the full dataset at JND, or seek additional data." Ex 4. Plaintiffs further recognized that the "goal" of the process was for JND to use the sample to "provide a protocol to Apple for matching and that Apple will complete the process in an objective and ministerial way" and explicitly recognized that "challenges that arise in matching are not likely to be ameliorated by simply looking at all the data instead of a sample." *See* Ex. 4.

Apple responded and accepted Plaintiffs' proposed sampling compromise, recognizing that Plaintiffs needed to reserve their rights as to seeking additional fields or information if the data provided did not allow for them to perform the matching as anticipated. *See* Ex. 6. But the Parties' agreement nowhere contemplated that Apple would still be providing identifying information for the full set of App Store payors. *See id.* In their statement above, Plaintiffs claim that they "repeatedly informed Apple that they would require Apple to produce more than just the sample data—it would need to produce all payor personal identifying information," but tellingly do not point to *any* evidence supporting this assertion. That is because there is none. Again, the statement by Apple that it would produce PII for all payors *predated* the Parties' sampling discussions. Any suggestion that the parties discussed a full production of PII information for all App Store users *after* Plaintiffs proposed a sampling procedure is false.

What appears to have caused Plaintiffs to change course is that their experts at JND do not want to turn over their "matching protocol"—the method by which they match up individual payor accounts—to Apple because it is "proprietary." JND raised this concern for the first time on May 23, in a call in which the parties were discussing the logistics for the data sample delivery. JND said on that call that they were "not aware that they would need to return the code" they developed to Apple—despite Plaintiffs' earlier express acknowledgment to Apple that the objective of the sampling was that "JND will provide a protocol for matching and that Apple will complete the process in an objective and ministerial way." Ex. 4. It was only after that call that Plaintiffs began to claim that, notwithstanding the sampling agreement, they expected Apple to produce *all* PII to JND. *See* Ex. 7. But, as Apple has explained to Plaintiffs, JND will have to turn over its matching protocol to Apple regardless, as required by Rule 26 and the expert evidence stipulation and order

in this case.  Dkt. 200.  Moreover, Plaintiffs have not articulated any reason why the sample of PII for one million account IDs would be insufficient for JND's purposes.

Apple stands ready and able to abide by the terms of the Parties' sampling agreement.

\* \* \*

**Plaintiffs' statement.**  Plaintiffs request that the Court schedule a hearing on these issues. Apple's constant delay tactics, foot-dragging, and now its inability to assure Plaintiffs of the reliability of its process for recreating destroyed data has caused demonstrable prejudice.  Indeed, even Apple's reproduction of the transaction data—which was supposed to be a ministerial task and crucial to achieving Apple's "goal" here—is sowing delay.  Apple's reproduction is structured differently than prior productions, presenting a great risk that the new dataset will be unusable using common software without adequate instruction from Apple, which Apple has not yet produced.  At this point, because of Apple's conduct, Plaintiffs will not have sufficient time to perform the required damages analysis before the October 10 expert report deadline that the Parties jointly proposed to Judge Gonzalez Rogers.[1]

**Apple's statement.**  Apple has worked diligently to provide Plaintiffs with data that goes above and beyond what their actual discovery requests seek.  Apple is open to a hearing with the Court to discuss these issues, but must note that Plaintiffs have not met and conferred with Apple about many of their complaints outlined above—particularly with respect to the backup data.  For example, Plaintiffs misleadingly refer to Apple's "inability" to provide assurances about the reliability of such backup data, without ever having even asked Apple to provide such information. Similarly, Plaintiffs say above that "Apple has not yet provided" certain information about its reproduction of the transaction data—Plaintiffs requested that information this evening at 6:46 p.m. PT.  Accordingly, Apple believes it would be productive for the parties to discuss such issues before declaring impasse or seeking Court intervention.

Thank you for Your Honor's continuing consideration and patience.

Respectfully submitted,

---

[1] Given Judge Gonzalez Rogers's heavy caseload, *see* Judge Gonzalez Rogers's Standing Order in Civil Cases at 1, Plaintiffs proposed to Apple that the Parties file a stipulated request for Judge Gonzalez Rogers to refer all remaining fact and expert discovery disputes and all related scheduling matters (including the pending dispute over Plaintiffs' RFP Nos. 63-69, *see* ECF No. 870), to Your Honor.  Apple has refused to so stipulate and has given no reason for its refusal.

WOLF HALDENSTEIN ADLER        GIBSON, DUNN & CRUTCHER LLP
   FREEMAN & HERZ LLP

By: _*Rachele R. Byrd*_____        By: _*Caeli Higney*_____
     Rachele R. Byrd                       Caeli Higney

*Plaintiffs' Class Counsel*               *Counsel for Defendant Apple, Inc.*


## E-FILING ATTESTATION

I, Rachele R. Byrd, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the other signatory identified above has concurred in this filing.

                     _*/s/ Rachele R. Byrd*_____
                      RACHELE R. BYRD

EXHIBIT 1

# GIBSON DUNN

Eli M. Lazarus
Of Counsel
T: +1 415.393.8340
M: +1 650.814.7016
elazarus@gibsondunn.com

May 17, 2024

Counsel,

Apple is in receipt of your letter dated May 14, 2024 ("Letter") and disagrees with your gross mischaracterization of the data issue—inaccurately claiming "spoliation" of data that was never requested by Plaintiffs and deleted in Apple's ordinary course of business to protect its consumers' privacy.

Setting that aside for present purposes, you asked Apple to "confirm that there are no backup records of the data at issue, such that the deleted data cannot be restored." Letter at 2.  As we have previously shared with you, Apple has been investigating the existence of backup data that would provide the missing transactional data field.  While our investigation is ongoing, we have now identified a potential source with such information covering the pre-2014 time period.  Given that the existence of such backup data is a threshold question to the alleged "spoliation" issue—there could be no spoliation if the data in fact exists—we wanted to inform you of this development.  We are working diligently to confirm whether this source has the requested information for the pre-2014 period and will revert to you as soon as possible with that confirmation.

Separately, we also wanted to confirm that Apple is moving forward with its plans to produce a random sample of payor identifying information associated with one million Apple IDs from the transactional data set.  This sample—and the work that we understand that your consultant, JND, needs to perform to identify "linked" payors—should be unaffected by the pre-2014 data issue.  Apple plans to be ready to produce these data on May 31.

Sincerely,

Eli M. Lazarus

# EXHIBIT 2

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 14, 2024

*Via Electronic Mail*

Eli Lazarus
Gibson, Dunn & Crutcher LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111-3715

Re:   *In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714-YGR (N.D. Cal.) –
Spoliation of transactional data field by Apple regarding Plaintiffs' Request for
Production No. 55

Dear Mr. Lazarus:

Apple's counsel informed Plaintiffs' counsel on May 9, 2024, that Apple has destroyed a certain data field associated with pre-2014 transactional data, and therefore Apple cannot produce the responsive data (from this time period) necessary for Plaintiffs to perform the damages calculations that the Court has ordered.  Dkt. 789, at 27-28.

We take this apparent spoliation of evidence very seriously.  Suspending auto-delete policies is among the most basic obligations imposed on any company—and especially one with Apple's immense resources—to preserve relevant evidence for litigation.  *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. Oct. 25, 2006) (party that reasonably anticipates litigation is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977-79 (N.D. Ill. 2021) ("[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI.").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Eli Lazarus
May 14, 2024
Page 2

In light of Apple's destruction of relevant data, Plaintiffs request Apple answer the following questions regarding the deleted, pre-2014 transactional data field:

- When (i.e., what date) was the transactional data field deleted?
- What information was contained in the deleted transactional data field?
- How was the transactional data field deleted?
- When Plaintiffs filed this case in 2011, what steps did Apple take to suspend the auto-deletion of relevant documents and data?
- When did Apple discover the pre-2014 transactional data field was deleted? Who discovered the data had been deleted?
- Please confirm that there are no backup records of the data at issue, such that the deleted data cannot be restored.
- Apart from this data, has any other potentially relevant information been deleted? What steps has Apple or its counsel taken to investigate whether any additional potentially relevant documents or data have been deleted?

Best regards,

*/s/ Joshua Hafenbrack*

Joshua Hafenbrack

cc:   Counsel of Record

EXHIBIT 3

| From: | Higney, Caeli A. |
|---|---|
| To: | Wood, Kyle M.; Lin, Ramona; Hafenbrack, Joshua; Swanson, Daniel G.; Richman, Cynthia; Kleinbrodt, Julian W.; Lazarus, Eli M.; Craig, Dana Lynn; Phillips, Harry R. S.; Rodd, Elizabeth; Castle, Nicole; Granda, Victoria C.; Lin, Ramona |
| Cc: | Mark Rifkin; Thomas Burt; "Rachele Byrd"; Schiffman, Kelley C.; Link, Anna K.; Holman, Ashle J. |
| Subject: | RE: In re Apple iPhone Antitrust Litigation |
| Date: | Thursday, June 6, 2024 12:16:38 AM |

Counsel,

As an initial matter, Apple does not agree with Plaintiffs' characterization of the data loss issue as "spoliation." Setting that aside, over the past few weeks, Apple has spent significant energy investigating the availability of backup data for the transactional data field that Apple thought (and voluntarily disclosed to Plaintiffs) was missing in the transactional data for the pre-2014 time period. We can now confirm that Apple has identified a method of restoring that data for the pre-2014 time period, and Apple is now working to do so for the many billions of paid transactions for which we have previously produced records. Initial testing indicates that this backup is highly reliable. We reiterate that this data field is not mentioned in or implicated by Plaintiffs' actual discovery requests in this matter, and Apple is going above and beyond its obligations by restoring the data for use in this litigation. We expect that this will resolve any concerns over alleged "spoliation."

With respect to the payor data sample, we continue to disagree with your characterizations about the compromise the parties reached—including as recounted in your separate email of this evening. The statement in the Joint Discovery Brief about Apple producing PII for "all" transactions was premised on Apple not producing any data connecting the requested information about Apple's customers with their transactional records. Dkt. 815. After the parties filed that brief, Plaintiffs proposed—and Apple accepted—a compromise whereby we would produce 1 million payor records, alongside transaction data that could be married up with that payor information for 50,000 accounts. That was the compromise: Apple would provide some "linking" data, and in exchange would not have to produce PII associated with all App Store users.

As noted in our May 30 letter and on Monday's call, Apple remains ready and willing to produce the payor data sample as previously agreed. Outside of JND's concern about sharing with Apple its methodology for matching payors (which it will have to do regardless of the amount of data produced), Plaintiffs have yet to identify any reason why this 1 million record sample is insufficient for your purposes. At the very least, we would think that Plaintiffs would want the sample to allow JND to determine if it could feasibly perform the payor matching exercise based on the sample data, before asserting an absolute need for the full payor data set. Again, we invite you to provide comments on Apple's proposed supplemental protective order so that Apple can move forward with producing that sample data.

It is our hope that the parties can submit a joint statement, as we have done in the past, but we need sufficient time to review and confer with our client. To that end, please send us your proposed status report by 12 pm PT tomorrow.

Thank you,
Caeli



**Caeli A. Higney**
Partner

T: +1 415.393.8248 | M: +1 202.494.1288
CHigney@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715

---

**From:** Wood, Kyle M. <kwood@kellogghansen.com>
**Sent:** Wednesday, June 5, 2024 9:02 AM
**To:** Lin, Ramona <RLin@gibsondunn.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; Swanson, Daniel G. <DSwanson@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Higney, Caeli A. <CHigney@gibsondunn.com>; Kleinbrodt, Julian W. <JKleinbrodt@gibsondunn.com>; Lazarus, Eli M. <ELazarus@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Phillips, Harry R. S. <HPhillips2@gibsondunn.com>; Rodd, Elizabeth <Erodd@mwe.com>; Castle, Nicole <NCastle@mwe.com>; Granda, Victoria C. <VGranda@gibsondunn.com>
**Cc:** Mark Rifkin <rifkin@whafh.com>; Thomas Burt <burt@whafh.com>; 'Rachele Byrd' <Byrd@whafh.com>; Schiffman, Kelley C. <kschiffman@kellogghansen.com>; Link, Anna K. <alink@kellogghansen.com>; Holman, Ashle J. <aholman@kellogghansen.com>
**Subject:** RE: In re Apple iPhone Antitrust Litigation

[WARNING: External Email]

Dear Counsel:

As you know, we owe Judge Hixson a status report tomorrow regarding the parties' discussions surrounding the production of payor data.  In your May 17 letter, you informed us that there may exist backup data that might remedy Apple's spoliation of certain payor data.  You promised to "revert . . . as soon as possible" with confirmation that the referenced backup data remedies the issue.  This information will be relevant to the Court's requested status update.  Please provide us with any additional information you can share at this time.

Best regards,

Kyle

**Kyle M. Wood**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036 | (202) 367-7806

EXHIBIT 4

| | |
|---|---|
| **From:** | Burt, Thomas |
| **To:** | Lazarus, Eli M.; Byrd, Rachele; Higney, Caeli A. |
| **Cc:** | Rifkin, Mark; dfrederick@kelloghansen.com; Wood, Kyle M.; Lin, Ramona; Panner, Aaron M.; Hafenbrack, Joshua; Richman, Cynthia |
| **Subject:** | RE: In re Apple iPhone Antitrust Litigation |
| **Date:** | Wednesday, May 1, 2024 8:19:23 PM |
| **Attachments:** | image001.png |

**[WARNING: External Email]**

Dear Caeli:

We write to respond to Apple's conditional acceptance of our sampling proposal in an effort to resolve the payor data production dispute.

First, as we said on our call Tuesday, the sample data will enjoy the full protections at JND that we have discussed, residing in an air-gapped environment under access controls.  We are open to any sensible method of transmission and suggest that Apple's people speak directly to JND to arrange the physical transport.

Second, having consulted with Brattle and to ensure that they can expeditiously work with output from Apple at the end of this process, we will need Apple to attach a unique transaction identifier to the entire transactional set, and re-produce that to Brattle.  With a unique identifier (which must be common to the data Apple and Brattle are working with), Brattle can compute transaction-level damages in parallel with the matching process, and then later compile them by payor.  Without such an ID, Brattle would either have to wait for both JND and Apple to complete matching work, or ingest a complete new set, either of which introduce more delay than is either necessary or acceptable.

Third, we understand that your condition was that plaintiffs never seek to have the full dataset at JND, or seek additional data, or ask for the key to be transported outside Apple.  We have accepted the goal that JND will provide a protocol for matching and that Apple will complete the process in an objective and ministerial way, so as to prevent identifiable payor PII and the full transaction set from ever being in one place outside Apple's control.  We also accept in concept that challenges that arise in matching are not likely to be ameliorated by simply looking at all the data instead of a sample.  However, as we indicated in our call, it is impossible to determine in advance of seeing any part of the payor data whether additional fields or explanations will be necessary, or indeed, whether the proposal to have Apple complete the work based on JND's protocol will succeed.  We accept the goal but we cannot commit to the success of a process that is, itself, a trial.

**EXHIBIT 5**

| | |
|---|---|
| **From:** | Wood, Kyle M. |
| **To:** | "Higney, Caeli A."; Lazarus, Eli M.; Link, Anna K.; Granda, Victoria C.; Rifkin, Mark; Burt, Thomas; Manifold, Betsy; Byrd, Rachele; Guiney, Matthew; Frederick, David C.; Panner, Aaron M.; Hafenbrack, Joshua |
| **Cc:** | dswanson; crichman; Kleinbrodt, Julian W.; dcraig; hphillips2; Rodd, Elizabeth; Castle, Nicole |
| **Subject:** | RE: In re Apple iPhone Antitrust Litigation |

Caeli:

Thank you for your follow-up email from earlier this afternoon. There appears to be a disconnect between what Plaintiffs envision being the "matching" process, and what you have explained your understanding of the "matching" process to be. By way of response, we have laid out the four steps that we see occurring over the next several months that get us to a point where Plaintiffs are able to identify who the Class members are and their individualized damages.

1. <u>JND Receives The Sample Data From Apple.</u> Just as we noted on May 3, we understand Apple's concern to be that it does not want "identifiable payor PII **and** the full transaction set," together, "ever being in one place outside Apple's control." Email from T. Burt to C. Higney et al. (May 3, 2024). We "accepted th[at] goal." *Id.* The purpose of the sample is so that JND can understand the data it will be working with. Without seeing the data, "it is impossible to determine . . . whether additional fields or explanations will be necessary, or indeed, whether the proposal to have Apple complete the work based on JND's protocol will succeed." *Id.* When JND receives this sample, it will analyze and process the data to determine whether there is a way for Plaintiffs to ascertain Class members' identities and their damages without Apple producing both identifiable payor PII and the transactions associated with their identities in a single place.

To be clear: nowhere in our May 3 email, and never during any of our meet and confers, did Plaintiffs ever agree that the sample data was going to be the only data that JND would ever receive. This process, with Apple as the intermediary, simply will not work if that is the case.

2. <u>Apple Produces To JND The Identifying Information For All Payors.</u> Once we and JND confirm, through analysis of the sample, that there is a viable means of ascertaining Class members' identities and their damages without Apple producing the full dataset (containing both Payor PII and their transactions), the next step will be for Apple to produce **all** of the identifying information for **all** of the payors (not including the transactions information). In other words: Plaintiffs envision Apple producing **just** the personal identifying information of every payor in the transaction dataset, **segregated completely** from the transactions associated with them. The goal of this process is for JND to "roll-up" or "de-dupe" payor identities in the transaction dataset so that JND can create a list of *potential* Class members.

3. <u>JND Provides The List Of Potential Class Members To Apple.</u> This is the beginning of the "matching" process that Plaintiffs understood Apple agreed to perform. JND will provide to Apple a de-duped, or "rolled-up," list of people (with the other PII) who might be Class members. That list will show, for instance, which four different "John Smiths" in the payor dataset fall into the same "bucket"; i.e., are actually all one person.

4. <u>Apple Tells Brattle Which Transactions Should Be Grouped Together For Damages Purposes.</u> Once it has JND's rolled-up list of payors (potential Class members), Apple will then be asked to convey to Brattle the unique transaction identifiers that should be grouped together because they are associated with one Payor or belong in one "bucket" so they can calculate individual class damages. This, Plaintiffs think, can be done without Brattle ever knowing the actual identity of any Class member. And in this process, Apple would still hold the "key"—that is, the linking data between transactions and payor PII.

* * *

The feasibility of all of this, like many other things, needs to be confirmed by looking at the sample data. As you noted, Plaintiffs have reserved all rights, including but not limited to requesting additional data as necessary based on their analysis of the sample. That reservation of rights also includes requesting any and all additional data needed to properly notice all Class members. And it includes seeking any and all relief from Judge Hixson, including but not limited to asking Judge Hixson to rule on Plaintiffs' request for Apple to produce the "key."

We anticipate this adequately addresses the concerns you expressed in your email from earlier this afternoon. JND looks forward to receiving the sample data.

Very truly yours,

Kyle

**Kyle M. Wood**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036 | (202) 367-7806

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

**From:** Higney, Caeli A. <CHigney@gibsondunn.com>
**Sent:** Friday, May 24, 2024 3:03 PM
**To:** Wood, Kyle M. <kwood@kellogghansen.com>; Lazarus, Eli M. <ELazarus@gibsondunn.com>; Link, Anna K. <alink@kellogghansen.com>; Granda, Victoria C. <VGranda@gibsondunn.com>; Mark Rifkin <rifkin@whafh.com>; Thomas Burt <burt@whafh.com>; manifold@whafh.com; Rachele Byrd <byrd@whafh.com>; guiney@whafh.com; Frederick, David C. <dfrederick@kellogghansen.com>; Panner, Aaron M. <apanner@kellogghansen.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>
**Cc:** Swanson, Daniel G. <DSwanson@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Kleinbrodt, Julian W. <JKleinbrodt@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Phillips, Harry R. S. <HPhillips2@gibsondunn.com>; Erodd@mwe.com; NCastle@mwe.com
**Subject:** [EXTERNAL] RE: In re Apple iPhone Antitrust Litigation

Counsel:

We write to follow up on our call yesterday with JND. As made clear in the parties' prior meet and confers, Apple's agreement to provide the sample of payors' identifying information for 1 million Apple IDs was conditioned on the parties' mutual understanding that Apple would be providing this sample *in lieu of* producing such information for all Apple IDs. As Plaintiffs wrote to Apple on May 3:

> We [Plaintiffs] have accepted the goal that JND will provide a protocol for matching and that Apple will complete the process in an objective and ministerial way, so as to prevent identifiable payor PII and the full transaction set from ever being in one place outside Apple's control. We also accept in concept that challenges that arise in matching are not likely to be ameliorated by simply looking at all the data instead of a sample. However, as we indicated in our call, it is impossible to determine in advance

of seeing any part of the payor data whether additional fields or explanations will be necessary, or indeed, whether the proposal to have Apple complete the work based on JND's protocol will succeed. We accept the goal but we cannot commit to the success of a process that is, itself, a trial.

While Apple recognized that Plaintiffs needed to reserve their rights as to seeking additional fields or information if the data provided did not allow for them to perform the matching as anticipated, the parties' agreement did not contemplate that Apple would be providing identifying information for the full set of App Store payors. As you know, Apple has significant, well-founded privacy concerns with doing so – and the sampling proposal (that Plaintiffs themselves proposed) was intended to address those concerns. What we heard from JND on yesterday's call, however, was that they were expecting Apple to turn over information for all App Store payors, and that they did not understand that they would be turning over their matching algorithm to Apple for Apple to perform the matching on the full payor data set. JND's conception directly contradicts the parties' prior agreements. To the extent JND wants confidentiality protections for its algorithm, Plaintiffs are welcome to propose safeguards to be included in the stipulated protective order that the parties are currently working to finalize. But the litigation process obviously requires that the parties and their experts be able to make arguments about the correct approach to payor matching.

While Apple still intends to produce the sample data on or about May 31, it will not do so absent reaffirmation from Plaintiffs' counsel and JND that the process will proceed as previously discussed and agreed, namely that JND will provide a protocol for matching based on the sample, and that Apple will complete the process in an objective and ministerial way.

Best,
Caeli
**Caeli A. Higney**
Partner

T: +1 415.393.8248 | M: +1 202.494.1288
CHigney@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715

**From:** Wood, Kyle M. <kwood@kellogghansen.com>
**Sent:** Wednesday, May 22, 2024 2:24 PM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>; Link, Anna K. <alink@kellogghansen.com>; Granda, Victoria C. <VGranda@gibsondunn.com>; Mark Rifkin <rifkin@whafh.com>; Thomas Burt <burt@whafh.com>; manifold@whafh.com>; Rachele Byrd <byrd@whafh.com>; guiney@whafh.com>; dfrederick@kellogghansen.com; Panner, Aaron M. <apanner@kellogghansen.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; Higney, Caeli A. <CHigney@gibsondunn.com>
**Cc:** Swanson, Daniel G. <DSwanson@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Kleinbrodt, Julian W. <JKleinbrodt@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Phillips, Harry R. S. <HPhillips2@gibsondunn.com>;

Erodd@mwe.com; NCastle@mwe.com

**Subject:** RE: In re Apple iPhone Antitrust Litigation

[WARNING: External Email]

Eli,

Thanks for your letter. We will promptly respond. For now, I wanted to address some of the other items from my email to you this morning.

- *First*, the main topics that JND will want to clarify are listed below:
  - How will the production occur? Will Apple agree to produce the sample data on hard drives that JND will then load onto an air-gapped computer?
  - Will Apple be able to provide some sort of data dictionary or other document defining the content and purpose of each column of data produced?
- *Second*, you have the correct address for Brattle. We have two follow-up questions:
  - Can we interpret your note to mean that Apple intends to reproduce the entire transactional dataset with unique transaction identifiers for every transaction?
  - When does Apple anticipate producing this updated transactional dataset?

We are still working through the draft supplemental PO and will provide feedback when we have it. Lastly—has Apple given any consideration to Plaintiffs' proposal to stipulate to referring all fact and expert discovery disputes and related scheduling matters to Judge Hixson? We still have not heard from you on that.

Thanks,

Kyle

**Kyle M. Wood**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036 | (202) 367-7806

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

EXHIBIT 6

| From: | Lazarus, Eli M. |
|---|---|
| To: | Burt, Thomas; Byrd, Rachele; Higney, Caeli A. |
| Cc: | Rifkin, Mark; dfrederick@kellogghansen.com; Wood, Kyle M.; Lin, Ramona; Panner, Aaron M.; Hafenbrack, Joshua; Richman, Cynthia |
| Subject: | RE: In re Apple iPhone Antitrust Litigation |
| Date: | Friday, May 3, 2024 6:40:55 PM |
| Attachments: | image001.png |

Counsel: Thank you for your follow-up message below as we both work to reach a negotiated solution on the payor data production issues.

Apple is working to extract payor data as requested in your RFP No. 55. As previewed on Tuesday, we understand that the data to be produced will allow Plaintiffs to match transactions to payors by account IDs, as you originally requested—meaning that for the portion of the sample covering both payor data and transactions, JND will be able to see the payor PII records associated with a user account as well as the transactions associated with that user account. It appears from your email below that Plaintiffs would now like to take a step further and match payors to individual transactions; we believe that, at least for the last approximately ten years, Apple can also produce an individual billing ID for each transaction that can be linked to the payor data. We are still working with Apple to investigate whether any unique payor identifiers exist for transactions before 2014.

Apple is moving as quickly as it can internally to obtain necessary approvals and confirm logistics with respect to the sampling approach Plaintiffs have proposed, as well as the air-gapped devices to store the data. Once the parties have aligned on an approach, we anticipate that it will take a couple of weeks to prepare the requested sample data. In parallel, we will work with you to formalize a supplemental protective order, which we are now drafting to circulate for discussion and alignment.

Apple is also working to provide the transaction identifiers you mentioned below. We expect we will be able to provide this to you relatively soon and do not foresee it being a challenging process.

We understand your concerns about agreeing up front as to what Plaintiffs will not seek in the future. As previously discussed, what Apple is most concerned about is the key to match PII with transactions, so we would like to reach agreement that Plaintiffs will not seek that key (beyond the initial sample). But we recognize there may need to be some reservation of rights on both sides.

**Eli M. Lazarus**
Of Counsel

T: +1 415.393.8340 | M: +1 650.814.7016
ELazarus@gibsondunn.com

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715

**From:** Burt, Thomas <burt@whafh.com>
**Sent:** Wednesday, May 1, 2024 5:18 PM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>; Byrd, Rachele <Byrd@whafh.com>; Higney, Caeli

A. <CHigney@gibsondunn.com>
**Cc:** Rifkin, Mark <rifkin@whafh.com>; dfrederick@kellogghansen.com; Wood, Kyle M. <kwood@kellogghansen.com>; Lin, Ramona <RLin@gibsondunn.com>; Panner, Aaron M. <apanner@kellogghansen.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; Richman, Cynthia <CRichman@gibsondunn.com>
**Subject:** RE: In re Apple iPhone Antitrust Litigation

**[WARNING: External Email]**

Dear Caeli:

We write to respond to Apple's conditional acceptance of our sampling proposal in an effort to resolve the payor data production dispute.

First, as we said on our call Tuesday, the sample data will enjoy the full protections at JND that we have discussed, residing in an air-gapped environment under access controls.  We are open to any sensible method of transmission and suggest that Apple's people speak directly to JND to arrange the physical transport.

Second, having consulted with Brattle and to ensure that they can expeditiously work with output from Apple at the end of this process, we will need Apple to attach a unique transaction identifier to the entire transactional set, and re-produce that to Brattle.  With a unique identifier (which must be common to the data Apple and Brattle are working with), Brattle can compute transaction-level damages in parallel with the matching process, and then later compile them by payor.  Without such an ID, Brattle would either have to wait for both JND and Apple to complete matching work, or ingest a complete new set, either of which introduce more delay than is either necessary or acceptable.

Third, we understand that your condition was that plaintiffs never seek to have the full dataset at JND, or seek additional data, or ask for the key to be transported outside Apple.  We have accepted the goal that JND will provide a protocol for matching and that Apple will complete the process in an objective and ministerial way, so as to prevent identifiable payor PII and the full transaction set from ever being in one place outside Apple's control.  We also accept in concept that challenges that arise in matching are not likely to be ameliorated by simply looking at all the data instead of a sample.  However, as we indicated in our call, it is impossible to determine in advance of seeing any part of the payor data whether additional fields or explanations will be necessary, or indeed, whether the proposal to have Apple complete the work based on JND's protocol will succeed.  We accept the goal but we cannot commit to the success of a process that is, itself, a trial.

EXHIBIT 7

| | |
|---|---|
| **From:** | Higney, Caeli A. |
| **To:** | Wood, Kyle M.; Lazarus, Eli M.; Link, Anna K.; Granda, Victoria C.; Mark Rifkin; Thomas Burt; manifold@whafh.com; Rachele Byrd; guiney@whafh.com; dfrederick@kellogghansen.com; Panner, Aaron M.; Hafenbrack, Joshua |
| **Cc:** | Swanson, Daniel G.; Richman, Cynthia; Kleinbrodt, Julian W.; Craig, Dana Lynn; Phillips, Harry R. S.; Erodd@mwe.com; NCastle@mwe.com |
| **Subject:** | RE: In re Apple iPhone Antitrust Litigation |
| **Date:** | Friday, May 24, 2024 3:02:54 PM |

Counsel:

We write to follow up on our call yesterday with JND.  As made clear in the parties' prior meet and confers, Apple's agreement to provide the sample of payors' identifying information for 1 million Apple IDs was conditioned on the parties' mutual understanding that Apple would be providing this sample *in lieu of* producing such information for all Apple IDs.  As Plaintiffs wrote to Apple on May 3:

> We [Plaintiffs] have accepted the goal that JND will provide a protocol for matching and that Apple will complete the process in an objective and ministerial way, so as to prevent identifiable payor PII and the full transaction set from ever being in one place outside Apple's control.  We also accept in concept that challenges that arise in matching are not likely to be ameliorated by simply looking at all the data instead of a sample.  However, as we indicated in our call, it is impossible to determine in advance of seeing any part of the payor data whether additional fields or explanations will be necessary, or indeed, whether the proposal to have Apple complete the work based on JND's protocol will succeed.  We accept the goal but we cannot commit to the success of a process that is, itself, a trial.

While Apple recognized that Plaintiffs needed to reserve their rights as to seeking additional fields or information if the data provided did not allow for them to perform the matching as anticipated, the parties' agreement did not contemplate that Apple would be providing identifying information for the full set of App Store payors.  As you know, Apple has significant, well-founded privacy concerns with doing so – and the sampling proposal (that Plaintiffs themselves proposed) was intended to address those concerns.  What we heard from JND on yesterday's call, however, was that they were expecting Apple to turn over information for all App Store payors, and that they did not understand that they would be turning over their matching algorithm to Apple for Apple to perform the matching on the full payor data set.  JND's conception directly contradicts the parties' prior agreements.  To the extent JND wants confidentiality protections for its algorithm, Plaintiffs are welcome to propose safeguards to be included in the stipulated protective order that the parties are currently working to finalize.  But the litigation process obviously requires that the parties and their experts be able to make arguments about the correct approach to payor matching.

While Apple still intends to produce the sample data on or about May 31, it will not do so absent reaffirmation from Plaintiffs' counsel and JND that the process will proceed as previously discussed and agreed, namely that JND will provide a protocol for matching based on the sample, and that Apple will complete the process in an objective and ministerial way.

Best,
Caeli


**Caeli A. Higney**
Partner

T: +1 415.393.8248 | M: +1 202.494.1288
CHigney@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715

**From:** Wood, Kyle M. <kwood@kellogghansen.com>
**Sent:** Wednesday, May 22, 2024 2:24 PM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>; Link, Anna K. <alink@kellogghansen.com>; Granda, Victoria C. <VGranda@gibsondunn.com>; Mark Rifkin <rifkin@whafh.com>; Thomas Burt <burt@whafh.com>; manifold@whafh.com; Rachele Byrd <byrd@whafh.com>; guiney@whafh.com; dfrederick@kellogghansen.com; Panner, Aaron M. <apanner@kellogghansen.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; Higney, Caeli A. <CHigney@gibsondunn.com>
**Cc:** Swanson, Daniel G. <DSwanson@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Kleinbrodt, Julian W. <JKleinbrodt@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Phillips, Harry R. S. <HPhillips2@gibsondunn.com>; Erodd@mwe.com; NCastle@mwe.com
**Subject:** RE: In re Apple iPhone Antitrust Litigation

**[WARNING: External Email]**
Eli,

Thanks for your letter.  We will promptly respond.  For now, I wanted to address some of the other items from my email to you this morning.

- ***First***, the main topics that JND will want to clarify are listed below:
    - How will the production occur?  Will Apple agree to produce the sample data on hard drives that JND will then load onto an air-gapped computer?
    - Will Apple be able to provide some sort of data dictionary or other document defining the content and purpose of each column of data produced?

***Second***, you have the correct address for Brattle.  We have two follow-up questions:
- Can we interpret your note to mean that Apple intends to reproduce the entire transactional dataset with unique transaction identifiers for every transaction?
- When does Apple anticipate producing this updated transactional dataset?

We are still working through the draft supplemental PO and will provide feedback when we have it.

Lastly—has Apple given any consideration to Plaintiffs' proposal to stipulate to referring all fact and expert discovery disputes and related scheduling matters to Judge Hixson?  We still have not heard from you on that.

Thanks,

Kyle

**Kyle M. Wood**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036 | (202) 367-7806

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.