UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No.  11-cv-06714-YGR   (TSH)<br><br>**PUBLIC VERSION OF DISCOVERY ORDER FILED UNDER SEAL AT ECF NO. 913**<br><br>Re: Dkt. Nos. 815, 898, 899 |

The Court held a hearing on August 9, 2024 concerning the discovery disputes at ECF Nos. 815, 898, and 899, and now issues the following order.

**A.      ECF No. 815**

For the reasons stated on the record, the Court **GRANTS** Plaintiffs' motion to compel and **ORDERS** Apple to produce payor data for all potential class members to JND.  This means the fields of payor information that were in the sample Apple provided and does not include transactional information.  Apple may produce the data in the same manner that it produced the sample, except that JND may use address verification as described in the Darryl Thompson declaration.

Plaintiffs have shown that this is the only way JND will be able to determine which payor IDs are the same payor.  Plaintiffs have shown it is not practical or feasible for JND to come up with an algorithm or methodology that it could turn over to Apple for Apple to implement to determine which payor IDs are the same payor.  Apple's insistence that JND can design such an algorithm or methodology that Apple could implement is significantly undercut by Apple's more basic position that there is no reliable way to perform this task at all.  Apple should not be left to implement something it says cannot be done reliably.

The Court takes seriously the confidentiality concerns Apple raises and its concerns about a potential data breach.  No doubt about it, those are significant concerns.  However, Plaintiffs have shown that JND has in place appropriate security measures.  Further, the payor information the Court orders Apple to produce does not include transactional information, which will remain solely in Apple's possession.  In other words, the payor information does not include, for example, which apps a payor downloaded.

**B.**      **ECF No. 898**

This dispute relates to request for production ("RFP") 56, which asks Apple to update its document collections.  As presented to the Court, the dispute is whether Apple should do this for nine document custodians (Phil Schiller, Trystan Kosmynka, Erik Neuenschwander, Eddy Cue, Matthew Fischer, Carson Oliver, Kevan Parekh, Craig Federighi, and Tim Cook), as Plaintiffs contend, or for just three (Schiller, Kosmynka, Neuenschwander), as Apple contends.

Plaintiffs have the better of the argument.  For its document productions in this action, Apple stated a collection cutoff date of September 30, 2019, so the custodial document productions are several years out of date.  Apple explained at the hearing that even though it stated a September 30, 2019 collection cutoff date, in practice that meant that document collection went at least through September 30, 2019, and for some custodians it went later.  Apple also explained that it has made some other document productions in the following years, though it does not dispute Plaintiffs' basic contention that the custodial document productions are generally several years out of date.  In addition, Plaintiffs have also received Apple's document productions in the *Epic Games* case.  Still, discovery in the *Epic Games* case wrapped up in early 2021, so Apple's document production remains at least several years out of date.

The Court doesn't buy Apple's argument that the relevant time period is only when Apple initially made the decisions being challenged in this lawsuit.  Plaintiffs challenge not only Apple's alleged acquisition of monopoly power, but also its alleged maintenance of monopoly power over time.  Apple doesn't believe its relevance argument either, as it never attempted to limit discovery to the 2007-08 time period.  Nor does that theory of relevance accord with Apple's willingness to update its document production to the present day for three custodians.

Plaintiffs have articulated good reasons, specific to each of the custodians in dispute, why that custodian is likely to have relevant documents that concern important areas of the case. Accordingly, the Court **ORDERS** Apple to update its custodial document productions for the nine custodians requested by Plaintiffs.

**C.      ECF No. 899**

Plaintiffs move to compel on RFPs 63-69, which request:

> REQUEST FOR PRODUCTION NO. 63:
> Produce all Documents Concerning you allowing users in the European Union to purchase Apps and In-App Products from App Marketplaces in response to the DMA.

> REQUEST FOR PRODUCTION NO. 64:
> Produce all Documents Concerning you allowing users in the European Union to Sideload Apps and App Marketplaces in response to the DMA.

> REQUEST FOR PRODUCTION NO. 65:
> Produce all Documents Concerning your projections or analyses of the impact of the availability of Sideloading and third-party App Marketplaces on the revenues or profits realized from your App Store storefront in the European Union.

> REQUEST FOR PRODUCTION NO. 66:
> Produce any Documents Concerning whether Apple granting users in the European Union the ability to Sideload Apps and to obtain Apps and In-App Products from third-party App Marketplaces will affect Handheld Device Security and/or User Privacy.

> REQUEST FOR PRODUCTION NO. 67:
> Produce Documents sufficient to show the steps, if any, that Apple has taken to preserve Handheld Device Security and User Privacy in the European Union, in light of Apple granting users the ability to Sideload Apps and to obtain Apps and In-App Products from third-party App Marketplaces.

> REQUEST FOR PRODUCTION NO. 68:
> Produce Documents sufficient to explain your Compensation Model in the European Union and to show the basis and rationale for your Compensation Model.

> REQUEST FOR PRODUCTION NO. 69:
> Produce Documents sufficient to show the costs you incur in collecting commissions from App Developers that utilize third-party Payment Processors when selling Apps and In-App Products to users in South Korea.

Let's group these into two buckets:  RFPs 63-68 and RFP 69.

United States District Court
Northern District of California

1   **1.     RFPs 63-68 (EU DMA)**

2       Plaintiffs argue that these RFPs concern Apple's responses to the European Union's

3   Digital Markets Act, which took effect in March 2024.  Plaintiffs say that under the DMA, Apple

4   has been required to make certain changes, including allowing third-party app marketplaces on

5   iOS devices, permitting app developers to utilize alternative payment processors, and allowing

6   consumers to "sideload" apps from the internet.  Plaintiffs say the requested documents about

7   these new practices that Apple has been forced to adopt in the EU will test Apple's supposed pro-

8   competitive justifications in favor of maintaining sole control over app distribution in the U.S.

9       Apple has several responses.  Its most basic response is to say that foreign conduct does

10  not bear directly on Plaintiff's U.S.-based claims, citing this Court's decision in *Epic Games v.*

11  *Apple Inc.*, 2020 WL 7779017 (N.D. Cal. Dec. 31, 2020).  In that case, the Court observed that

12  "wholly extraterritorial conduct not directed at the U.S. cannot be a basis for liability in this case.

13  Having said that, foreign conduct can sometimes be relevant evidence of domestic conduct."  *Id.*

14  *1.  The Court explained that it "cannot endorse a simplistic holding that documents about foreign

15  conduct are always relevant or never relevant because neither proposition is true.  Instead, the

16  analysis comes down to having a good theory of relevance.  The moving party needs to explain

17  why documents concerning foreign activities are relevant to U.S. claims or defenses, and the Court

18  must conduct a careful analysis to determine if the foreign documents actually would be relevant."

19  *Id.*

20      Here, Plaintiffs do not claim that Apple's conduct in the EU could be a basis for liability

21  under U.S. law.  Rather, they argue that Apple's foreign conduct is relevant.  And they have a

22  pretty good theory of relevance:  In Europe, Apple is doing some of the very things it refuses to do

23  in the U.S. because of privacy, security and other concerns, and it is doing them with some

24  apparent success.  Plaintiffs say this may show that Apple's pro-competitive justifications for its

25  complete control over app distribution are not as important as Apple says they are.  This is a good

26  theory of relevance.

27      Apple argues that the DMA imposes numerous requirements on Apple that are not present

28  in the U.S. and that Apple's policies in Europe therefore do not resemble the "but-for world" in

4

United States District Court
Northern District of California

which app distribution were not under its sole control because there are so many other things Apple is also required to do by the DMA.  Fair enough.  But relevance is a more forgiving standard than that.  *Some* of the things Apple is now required to do in the EU are among the things Plaintiffs want the Court to order Apple to do in the U.S., so discovery into how Apple is able to do them in the EU is relevant.  By the same token, Plaintiffs RFPs do not ask for documents about everything Apple has done to comply with the DMA.  The RFPs focus only on issues relevant to this case.

On the merits, Apple argues that its conduct in the EU does not show that its U.S. policies lack pro-competitive justification.  However, Plaintiffs do not have to win the case on the merits in order to obtain relevant discovery.  That gets litigation backwards.  First the parties do discovery, then they have a trial on the merits.

Finally, Apple asserts these RFPs are not proportional to the needs of the case and are overbroad.  However, those arguments are unpersuasive.  It is true that RFPs 63-66 request "all documents" and "any documents" concerning the stated subjects.  However, as Apple knows, large corporations almost never literally produce "all" documents on a given subject.  They identify a reasonable number of custodians who are likely to have responsive documents, as well as non-custodial sources that are likely to have responsive documents, and they take it from there.  That is what Apple should do too.  Had Apple done this when Plaintiffs served these RFPs four and a half months ago, it would be done by now.

### 2.    RFP 69 (South Korea)

Apple observes that this RFP is about app payment processing, whereas this case is about app distribution.  Again, that is a fair observation.  However, as Plaintiffs explained at the hearing, they contend that Apple wields its monopoly power over app distribution to exercise control over app payment processing, including on in-app purchases.  They contend that Apple's costs in collecting commissions in a regulatory environment in which it does not control app payment processing is relevant to showing, in part, what Apple's costs in collecting commissions would look like if Apple were not able to use its monopoly power over app distribution in the U.S. to exercise control over app payment processing.  That is a sufficient theory of relevance, especially

given how non-burdensome this RFP is.  Apple says there are all kinds of reasons its costs in South Korea would not reflect what its costs in the U.S. would be.  But that's just a dispute about what the unproduced documents mean or show on the merits, which is not a bar to discovery.

**3.      Conclusion**

Accordingly, Plaintiffs' motion to compel as to RFPs 63-69 is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 9, 2024

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California