# Exhibit 2

Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson, Magistrate Judge

IN RE APPLE iPHONE ANTITRUST    )
LITIGATION,                      )    **NO. C 11-06714 YGR (TSH)**
                                 )
_____  )

San Francisco, California
Friday, July 19, 2024

**SEALED TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS OF THE**
**OFFICIAL ELECTRONIC SOUND RECORDING 2:03 - 2:31 p.m.**

**APPEARANCES**: (via videoconference)

For Plaintiffs:
                    WOLF, HALDENSTEIN, ADLER, FREEMAN
                    & HERZ LLP
                    270 Madison Avenue
                    New York, New York  10016
            BY:   **THOMAS H. BURT, ATTORNEY AT LAW**


For Defendant:
                    GIBSON, DUNN & CRUTCHER LLP
                    One Embarcadero Center - Suite 2600
                    San Francisco, California  94111
            BY:   **CAELI A. HIGNEY, ATTORNEY AT LAW**



Transcribed By:    Marla F. Knox, RPR, CRR, RMR
                   United States Official Court Reporter

| | |
|---|---|
| 1 | **Friday - July 19, 2024**                              **2:03 p.m.** |
| 2 | **S E A L E D   P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 |         **THE CLERK:**  All right, everyone, let's get started |
| 5 | here.  We are here in civil action 11-6714, In Re: Apple iPhone |
| 6 | Antitrust Litigation. |
| 7 |     The Honorable Thomas S. Hixson presiding.  Counsel, let's |
| 8 | state your appearances.  Let's start with Plaintiffs' Counsel. |
| 9 |         **MR. BURT:**  Thomas Burt, Wolf Haldenstein, for |
| 10 | Plaintiffs. |
| 11 |         **THE COURT:**  Good afternoon. |
| 12 |         **MR. BURT:**  Good afternoon, Your Honor. |
| 13 |         **MS. HIGNEY:**  Caeli Higney of Gibson, Dunn & Crutcher |
| 14 | for Apple, Inc.  Good afternoon, Your Honor. |
| 15 |         **THE COURT:**  Good afternoon.  Pursuant to Apple's |
| 16 | motion and the parties' stipulation, I have temporarily sealed |
| 17 | this hearing; but now let's make sure that the people who are |
| 18 | here are people who are supposed to be here. |
| 19 |     Ms. Higney, let me turn to you.  Do you recognize the |
| 20 | names on the screen as people who should properly be attending |
| 21 | this hearing? |
| 22 |         **MS. HIGNEY:**  I do, Your Honor. |
| 23 |         **THE COURT:**  And, Mr. Burt, do you also recognize the |
| 24 | names on the screen as people who should be properly attending |
| 25 | this hearing? |

1        **MR. BURT:**  Yes, Your Honor.

2        **THE COURT:**  Okay.  Thank you both, Counsel.

3    Mr. Burt, let me first turn to you.  Can you please

4 provide me with an update.

5        **MR. BURT:**  Yes, Your Honor, I can.

6    So, eight days ago JND ingested a data set consisting of

7 three files.  Those files contained the sample set that we had

8 been told by Apple -- that we had agreed with Apple that they

9 would produce.

10 ██████████████████████████████████

11 ██████████████████████████████████

12 ████████████████████████████

13 ██████████████████████████████████

14 ████████████████████████████████████

15 ████████████████

16 ██████████████████████████████████████

17 ██████████████

18    Out of those ██████████ records, we have learned a fair

19 amount -- and, of course, I haven't seen the data myself

20 because it is in a secured facility, and I'm relying on what I

21 have been told by JND -- we are advised that there are, out of

22 those ██████████ records, at least ██████████████████ in some

23 fashion -- and I will explain that in some more detail -- in

24 ████████████ of those records.

25    So, for example, in the first name field, there is -- and

**SEALED PROCEEDINGS**

1    I'm -- Your Honor, I'm going to ask that -- I'm going to go

2    through this in some granularity because I think it's important

3    for us all to understand the state of the data, which was

4    really the purpose of the sample process.  And I think sort of

5    understanding this will drive a better understanding of where

6    we are at and where we go from here.

7    ████████████████████████████████████████████████████

8    ██████████████████████████████████ and that's denominated in a

9    number of ways.

10           THE COURT:  Sorry, can you -- what was that number

11   again?

12           MR. BURT:  ███████████████████████████████

13           THE COURT:  Okay.

14           MR. BURT:  So, for example, in some of those records

15   Apple has designated the field █████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████████████.

19   ████████████████████████████

20       That's where we know that it is simply missing data.

21   There are other -- so that's -- call that A.

22       There are -- ██████████████████████████████

23   ████████████████████████████████████████████████████████

24   ██████████████████████████████████████

25       B, ██████████████████████████████.  We found just a few and

**SEALED PROCEEDINGS**

1   just a few where ████████████████████████████████

2   ████████████████████████████████████████████    We

3   think that may be a problem in production, not in keeping the

4   data.  Now, we will work with Apple on that if there is a way

5   to sort that out.

6       And that's -- I emphasize, that's so far we think that's a

7   very marginal problem.

8       C, there are some idiosyncratic entries.  For example, in

9   first names there are people who have ████████████████████

10  █████████████████████████████████████████████████

11  █████████████████████████████████████████████████

12  ████████████████████████████████    And those sort of things

13  replicate themselves across other data fields.  That's not just

14  for first names.

15      For addresses, there are ██████████████████████████.

16  Of course, you know, for much of the outsourced work, the

17  street address is less critical than the electronic

18  communication.  For some -- for a -- for a much more

19  significant number than the first name, that information is not

20  there.

21      And, again, ██████████████████████████████████████

22  ████████████████████████████████████████████.

23      **THE COURT:**  Let me pause you for a second, Mr. Burt.

24  Somebody on the phone, area code 202, phone number ending

25  in 145 wants to join the hearing.  Should we let that person

SEALED PROCEEDINGS

1   in?

2                       (Pause in proceedings.)

3           **MS. HIGNEY:**  I am not familiar with someone joining

4   via phone from a 202 area code.

5           **THE COURT:**  Mr. Burt, are you?

6           **MR. BURT:**  Nor am I, Your Honor.

7           **THE COURT:**  All right.  Rose, let's not admit them.

8                       (Pause in proceedings.)

9           **THE COURT:**  Please continue, Mr. Burt.

10          **MR. BURT:**  Thank you, Your Honor.

11      So, for example, city presents similar problems.  ████

12   ███████████████████████████████████████████████████████

13   ████████████████████████████████████

14      But there are also idiosyncratic answers on state in ways

15   that are unlike some of the other fields.

16          **THE COURT:**  Wait.  How many missing state?

17          **MR. BURT:**  ██████████████████████████████████

18   ██████████████████████

19          **THE COURT:**  Oh, okay.

20          **MR. BURT:**  Right.  So -- and, Your Honor, this is

21   going to sound funny and I don't mean this as a joke, but it's

22   illustrative of the kind of things that are necessary to deal

23   with the data -- █████████████████████████████████████

24   ████████████████████████

25         █████████████████████████████████████████████████

1  ███████  ████████████████████████████

2  ██████████████████████████████████████

3  ██████████████████████████████████████

4  ██████████████████████████████████████

5  █████████  we don't at present know.  And we are willing to

6  talk to Apple about these, where these are solvable problems

7  from their database; right.

8      We are flagging this -- and I know I'm taking some of your

9  time, Your Honor, and doing this in some detail.  We are

10  flagging this because it is necessary to understand why we did

11  the sampling process and said we must have a look at the data

12  first.

13      Okay.  So, across all of the fields, the -- across all of

14  the ████████payor records -- I think I said before -- there

15  are ██████████████████.

16      In order to match the payors to people that we think are

17  the same person, it's going to require that JND take the good

18  data, match some people up.  Put them to one side.  Quality

19  control it.  Then go back to the people for whom that is not

20  yet possible.  Problem solve.  Figure out what is there.  Match

21  some more people.  Quality control that.  Go back there.  It is

22  going to be an iterative process.

23      And while we might all make reasonable judgment calls that

24  we might all agree on, there is going to be some level of

25  judgment in how that's done.

1    But more importantly I think for this discussion,

2  Your Honor, it's an iterative process.  It's not something for

3  which we could just chart out a simple flowchart; say run this

4  code, run this code, run this code and you are done.

5    It is run this code.  See what is left.  Figure out which

6  data field you can put in to figure out the answer to who

7  matches without that field.  Do that.  And see if the answer

8  looks right.  If it doesn't, figure out why it doesn't.  Move

9  the people you can get matched over to one side, and then start

10  again with the next set of fields that you can match.  JND had

11  settled experience to do that.

12    So, we have several things that we think we can go back to

13  Apple with.  We are going to go back and talk to them about,

14  for example, if there is more information that can be gleaned

15  from the different ways of representing an empty field than

16  just they don't have it; if it is completely idiosyncratic and

17  they just mean the same thing, they can tell us that -- and I'm

18  not expecting Ms. Higney to answer standing on her head.  I'm

19  just illustrating where we are at.

20    If on the other hand some of those things, you know, have

21  a little bit more meaning -- if it means this instead of that,

22  that could actually be helpful.

23    We want to know if, for example, Apple has full hashed

24  credit cards because even hashed, those can provide a stronger

25  indicator or if they only have hashed last four, which is what

1    we have in the data set.  If they have more that they could

2    produce on that, that might be significantly helpful.

3         There are other kinds of discrete field-by-field questions

4    we can go back to them with.  We are always open to a

5    conversation that makes this more efficient or more exact.

6         We are confident now having looked at it, first, that our

7    plan to tell them which people to roll up the transactions into

8    and have Apple do the transaction part of the match, that will

9    work.

10        Apple has always said that to prevent these data sets from

11   being in the same place at the same time in an identifiable way

12   outside of their control, they never want to put more than

13   their sample group out into JND's hands.  We are okay with

14   that.

15        We believe Apple -- once we tell them which class members

16   match, they can match the transactions to them.  Anonymize the

17   class members.  Hand that to Brattle and that will work just

18   fine.  So we now have confidence in that aspect of it.

19        We do not believe it is practicable to just create a

20   protocol, give them some code, have them run it as we would run

21   it.  It is too iterative.  There is too much -- look at holes

22   in the data, figure out how to answer that -- for that to be --

23   to be workable.

24        And we know that it will take time.  We are -- we are -- I

25   don't want to give a prediction.  It will take time.  We have

**SEALED PROCEEDINGS**

1  already flagged both to Your Honor and to Apple that we may

2  need schedule relief.  We are in an e-mail conversation about

3  that.

4      And we know that there will come a point where we can no

5  longer -- once you get down so far where you can no longer

6  match.

7      There is going to be a point where we say we can't with

8  confidence say that these two people are the same person even

9  if we suspect they are.

10     So there will be a certain amount of remainder.  It is

11  just the limitations of the data set as we now understand it.

12     With that in mind, we expect to have an ongoing

13  conversation with Apple.

14     If Apple's position remains -- notwithstanding what we

15  have said, we never said or intended that -- that the samples

16  that -- and they are never sending any more PII for -- for the

17  payors, then we probably should proceed to a ruling as soon as

18  Your Honor can do that.

19     But if Apple now understands what we have said and we can

20  have a productive conversation about how we move forward from

21  here with JND matching, then I think we don't need to get a

22  further ruling now; but it can instead engage in a bit more of

23  a conversation.

24     And to my way of thinking, Your Honor, we are probably in

25  that event back here in two weeks, I would -- I would

SEALED PROCEEDINGS

1    respectfully request.

2         **THE COURT:**  All right.  Well, thank you for that

3    information.  How much of the information that you provided to

4    me about the sample was provided to Apple previously and how

5    much is Apple learning for the first time at this hearing?

6         **MR. BURT:**  Your Honor, bluntly almost everything I

7    have just said -- unless Ms. Higney has it from their own

8    production of the data to us -- she is hearing for the first

9    time.

10        That's not because it was a designed to sandbag Apple.  It

11   is because JND has had the data in a secure facility ingested

12   for eight days, so I have not had any time with this

13   information.

14        I'm reading off of handwritten notes that I have prepared

15   pretty quickly in order to update, Your Honor.  I understand

16   that Ms. Higney is hearing almost all of this -- certainly all

17   of the numbers -- for the first time though she may have

18   understood some of the -- some of the peculiarities of the

19   data, for example, that Apple has represented blank fields with

20   different ways of denominating them, that may not be new to

21   her.  The numbers may be.

22        And so I'm not asking her to respond to anything standing

23   on her head.  I realize that she is hearing a lot of this for

24   the first time.

25        **THE COURT:**  All right.  Well, thank you, Counsel.

1    Ms. Higney, I will turn the floor over to you recognizing that

2    you may not be in a good position to respond to things that you

3    are hearing for the first time.

4            **MS. HIGNEY:**  Yes, thank you, Your Honor.

5        I will note that Apple did reach out to Plaintiffs earlier

6    this week to ask if there was anything that they wanted to

7    discuss in advance of today's hearing, and they did not raise

8    any of these issues with us.

9        So -- and understood that it was perhaps because you did

10   not know them yet -- but this is the first time that we are

11   hearing any of this.  And so, we would appreciate a chance to

12   take some of that back.

13       I will just say as a more global matter, a lot of the

14   issues that Mr. Burt has identified are issues that we, you

15   know, recognize might exist in the data because the data are

16   user inputted data, right, and we've made that clear to

17   Plaintiffs from the outset.

18       This is data that Apple gets that users are inputting.

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████    And we have

21   produced it to Plaintiffs as it exists at Apple.

22       So understand that -- some of the things that he is saying

23   about, you know, ██████████████████████████, not surprising

24   to me.

25       The fact that, you know, ████████████████████, not

**SEALED PROCEEDINGS**

1    incredibly surprising because, again, Apple didn't necessarily

2    require users to enter in and fill out all of those fields when

3    they were inserting their information -- giving their

4    information over to Apple.

5        So that doesn't come as a shock.  But that said, we would

6    be happy to engage in a conversation with Plaintiffs if they

7    have specific questions that Mr. Burt previewed and do our best

8    to answer them.

9        What I have heard doesn't necessarily suggest to me that

10   continuing on this sampling route and continuing along the

11   route we proposed previously by which Plaintiffs come up with a

12   methodology and have Apple implement is impossible.

13       I understand his point; that it is going to be an

14   iterative process.  But again, that doesn't suggest to me that

15   we can't do that iteration between Plaintiffs and Apple with

16   Apple implementing the matching and not turning over the full

17   data set.

18       If they want to talk about getting a larger sample, that

19   is a discussion that we could be open to having; but what I

20   have heard today doesn't necessarily suggest to me that the

21   security risk of Apple turning over the full data set is

22   outweighed by Plaintiffs' need for it.

23       Again, we can have a more detailed technical conversation

24   with Plaintiffs offline.  Happy to explore that further, but

25   what I have heard from Mr. Burt today doesn't necessarily

**SEALED PROCEEDINGS**

1    explain to me why Plaintiffs would need the full data set.

2        These issues that exist within the sample are going to be

3    the same issues that exist within the full data set.

4        **THE COURT:**  Okay.  Well, thank you, Counsel.

5        I think the parties need to talk to each other about the

6    issues that Mr. Burt has raised; and I think as part of that

7    discussion, Apple needs to look at the sample and at the data

8    set and at the data issues that Plaintiffs or that JND have

9    identified.

10        I'm not going to rule today on whether Apple has to

11    provide the personal -- the account information for all account

12    holders, but I -- at some point I will likely need to, but I do

13    think that Apple should look at the data that JND has looked at

14    and also do your own analysis of it or to the degree that you

15    need to so that you can figure out -- obviously you have heard

16    the push that Plaintiffs are going to make.

17        They think that due to this state of the data, the

18    methodology can't be implemented by Apple because it is too

19    iterative; and I think that Apple should form a thoughtful and

20    intelligent opinion about that issue as well after having

21    looked at the particular data issues that Plaintiffs have

22    raised and then after some discussion between the two sides.

23    So, I think in general that's the direction forward.

24        Mr. Burt, you ended with a specific proposal for what

25    should happen next.  Can you please remind me what that was?

1          **MR. BURT:**  Your Honor, my specific proposal was that

2     we should be back here in two weeks after we have had a chance

3     to discuss with Apple the data field issues that we outlined,

4     what more information they could glean from things I outlined,

5     and maybe a few other things.

6          But also -- well, that's what I said but I want to add to

7     that now.  I think Apple should take and think realistically if

8     we were to try to describe to them -- if we were to try to flow

9     chart how it is Apple would do it as JND would do it, that's

10    not a one-page flow chart.  That's like a book.

11         And then if the name appears in Arabic characters, we

12    would do this.  And then if the first line of the address is

13    missing but is denominated by a ███████████, which apparently

14    means this, then do this.  But if it is denominated by ████████

15    ████████████, then do that.

16         It just doesn't sound like -- we now understand that

17    attaching the transactions to the payor once we know which

18    payor matches with which payor, that really is ministerial.

19    And that Apple can do in a way that we can have confidence

20    with.

21         I do not believe I will be back here in two weeks saying

22    we now have confidence that Apple can match up people in a way

23    we believe in, in part because Apple has been consistent in

24    saying they can't do it.

25         They knew what the data looked like long before we did,

1    and they have said we can't do it.  Well, JND has said we can

2    do it.  It takes time.  It is a little bit manual.  Requires

3    some judgment.  It is not susceptible to turning it into a flow

4    chart and handing the process over, but we can do it.

5         So that's where I think we are, but Your Honor has made

6    clear that he wants parties to try real hard to get as far as

7    we can working these things out by consensus.  We are willing

8    to try real hard at that.

9              THE COURT:  And I think it would be helpful to me

10   perhaps at the next hearing is you don't need to have the full

11   JND methodology but to help me grasp your argument that you

12   can't just hand this over to Apple to implement, that JND would

13   also -- that there isn't really just a set formula but that the

14   application or the use of judgment is necessary, I think you

15   would -- it would be helpful to me at least if you could at

16   least walk me through some aspects or the important aspects of

17   the methodology JND is developing including issues that might

18   require judgment and are not purely ministerial.  That might

19   better flesh things out.

20        And then I also think you should preview that for Apple

21   ahead of time and not just provide all that information for the

22   first time at the hearing because I want Apple to be in a

23   position to respond thoughtfully to whatever you have so they

24   can make their best arguments they want to make that actually

25   it would be ministerial or they are capable of implementing it

1    or whatever Apple's response is.

2         So when you decide what you are going to show me or

3    explain to me about JND's methodology, please give that to

4    Apple sufficiently in advance of the hearing so that both sides

5    can be prepared and can make their arguments.  All right?

6         **MR. BURT:**  Yes, Your Honor.  And if I may, I'm going

7    to be the one to say this time that the next proceeding needs

8    to be sealed because I want to flag that JND considers the way

9    they do a lot of these things proprietary; both their methods

10   and also when they develop code to work with data sets, they

11   say that's proprietary.  It is not fair to make us hand it

12   over.

13        If we are going to be discussing the -- what they consider

14   an acceptable match and what they -- you know, and how they

15   reach those conclusions, they consider all of that stuff

16   proprietary.

17        So we are going to want to -- like we have with this and

18   the previous proceeding, we are going to want to seal that.

19        We are going to provide it to Apple under appropriate

20   protections.  Of course, we have all dealt with very

21   confidential stuff in this case, and we have no problem with --

22   with -- with the protection we have in place.

23        I'm just flagging now that that stuff is proprietary and

24   we will treat it as such.

25        **THE COURT:**  Okay.  Thank you for previewing that for

**SEALED PROCEEDINGS**

1    me.  If you believe the hearing should be under seal, then file

2    the appropriate paperwork ahead of time.

3              **MR. BURT:**  Will do, Your Honor.

4              **THE COURT:**  So, Ms. Higney, Plaintiffs' proposal is to

5    come back in two weeks.  Do you think that timing works for

6    you?

7              **MS. HIGNEY:**  Your Honor, that should be sufficient

8    although I would ask if -- just looking at my calendar, if we

9    could maybe do it on the week of August 5th instead of the end

10   of the week of July 29th.  I just -- if that works for others.

11        And just to be clear, Apple has been looking at the data.

12   We have not been sitting on our hands; but given, you know,

13   time pressure and expediency issues, we literally produced the

14   sample to Plaintiffs as soon as it was available.

15        So our analysis has been ongoing at the same time, and we

16   will certainly be prepared to engage in a conversation with

17   them like you are suggesting and respond to the proposal

18   assuming we get it sufficiently in advance.  So we will be

19   prepared to do that at the next hearing.

20             **THE COURT:**  Okay.  Thank you.

21        Let's take out our calendars and look at the week of

22   August 5th.  One day that would work for me is Friday,

23   August 9th.  I could do a hearing either in the morning or in

24   the afternoon.

25             **MR. BURT:**  Your Honor, I -- it would work much better

 1 | for me if we could do morning on that day.
 2 |          THE COURT:  Ms. Higney, would that --
 3 |          MR. BURT:  Hold on.  You know what?  I'm sorry,
 4 | Your Honor, I -- I have to -- it would depend -- I'm in front
 5 | of a magistrate -- this just moved -- just moved.  I am in
 6 | front of a magistrate via Zoom at 10:00 a.m. Eastern that
 7 | morning.  So that's my only blackout for that day.
 8 |          THE COURT:  10:00 a.m. Eastern, so 7:00 a.m. Pacific?
 9 |          MR. BURT:  That's I hope too early for all of us.
10 |          THE COURT:  Would 10:00 a.m. Pacific potentially
11 | conflict with your hearing?
12 |          MR. BURT:  I doubt it.  That should be clean,
13 | Your Honor.
14 |          MS. HIGNEY:  That works for me, Your Honor.
15 |          THE COURT:  Okay.  So, August 9th at 10:00 a.m.
16 | Pacific by Zoom.  Okay.  We will calendar the next hearing for
17 | Friday, August 9th at 10:00 a.m.
18 |     Mr. Burt, is there anything else that you wanted to raise
19 | during this hearing today?
20 |          MR. BURT:  There is not, Your Honor.
21 |          THE COURT:  Ms. Higney, how about you?
22 |          MS. HIGNEY:  No, Your Honor.  Thank you for your time.
23 |          THE COURT:  All right.  Well, thank you.  And just to
24 | reiterate, at the next hearing on August 9th, I will want to
25 | hear an explanation about JND's methodology because I think I

**SEALED PROCEEDINGS**

1    need to understand it at least to a certain extent to decide

2    whether Apple could implement it or whether only JND could

3    implement it, and so Apple would have to provide account holder

4    information to JND.

5         And I do want Plaintiffs to disclose -- whatever you are

6    going to tell me about the methodology, you need to tell it to

7    Apple ahead of time and sufficiently ahead of time so Apple can

8    be meaningfully prepared so both sides can engage and present

9    their best arguments.  Is that understood, Mr. Burt?

10        **MR. BURT:**  Yes, Your Honor, it is.

11        **THE COURT:**  Okay.  All right.  Well, thank you,

12   Counsel.  We will be back on Friday, August 9th at 10:00 a.m.

13   Have a good afternoon.

14        **MS. HIGNEY:**  Thank you.

15        **MR. BURT:**  Thank you, Your Honor.

16        **THE CLERK:**  Thank you, everyone.  We are off the

17   record.  Court is in recess.

18              (Proceedings adjourned at 2:31 p.m.)

19                       ---oOo---

20

21

22

23

24

25

1

2                        **CERTIFICATE OF REPORTER**

3            I certify that the foregoing is a true and correct

4    transcript, to the best of my ability, of the official

5    electronic sound recording provided to me by the U.S. District

6    Court, Northern District of California, of the proceedings

7    taken on the date and time previously stated in the

8    above-entitled matter.

9            I further certify that I am neither counsel for, related

10   to, nor employed by any of the parties to the action in which

11   this proceeding was taken; and, further, that I am not

12   financially nor otherwise interested in the outcome of the

13   action.

14

15   DATE:    Tuesday, August 6, 2024

16

17

18                    _Marla Knox_

19   _____

20                  Marla F. Knox, RPR, CRR, RMR
                    United States Court Reporter

21

22

23

24

25