1  BETSY C. MANIFOLD (182450)
   RACHELE R. BYRD (190634)
2  STEPHANIE AVILES (350289)
   **WOLF HALDENSTEIN ADLER**
3    **FREEMAN & HERZ LLP**
   750 B Street, Suite 1820
4  San Diego, CA  92101
   Telephone: 619/239-4599
5  Facsimile: 619/234-4599
   manifold@whafh.com
6  byrd@whafh.com

7  MARK C. RIFKIN (*pro hac vice*)
   MATTHEW M. GUINEY (*pro hac vice*)
8  THOMAS H. BURT (*pro hac vice*)
   **WOLF HALDENSTEIN ADLER**
9    **FREEMAN & HERZ LLP**
   270 Madison Ave
10 New York, NY 10016
   Telephone: (212) 545-4600
11 Facsimile: (212) 686-0114
   rifkin@whafh.com
12 guiney@whafh.com
   burt@whafh.com
13

14 *Class Counsel for Plaintiffs*
   [Additional counsel on signature page]
15

16                 UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18                          OAKLAND DIVISION

19

| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR |
|---|---|
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY CLASS DEFINITION AND APPROVE NOTICE TO THE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | DATE:     May 20, 2025<br>TIME:     2:00 P.M.<br>COURTROOM:  1, 4th Floor |
| | The Honorable Yvonne Gonzalez Rogers |

                     **[REDACTED PUBLIC VERSION]**

## NOTICE OF MOTION AND MOTION TO MODIFY CLASS DEFINITION AND APPROVE NOTICE TO THE CLASS

PLEASE TAKE NOTICE that on May 20, 2025 at 2:00 p.m. in Courtroom 1, 4th Floor of the above-entitled Court, located at 131 Clay Street, Oakland, California, Plaintiffs Robert Pepper, Stephen H. Schwartz, Edward W. Hayter and Edward Lawrence ("Plaintiffs") will, and hereby do respectfully renew their motion for an Order modifying the Class definition to: 1) exclude the iPod Touch from the definition of "iOS Device," and 2) apply the $10 spending cutoff to individual payors rather than Apple IDs; and approving dissemination of notice to the Class (the "Motion").

Plaintiffs seek to narrow the Class by making two modifications to the Class definition. These modifications have been informed by the benefit of additional fact and expert discovery the parties have conducted since the Court issued its Order certifying the Class. Plaintiffs' proposed modifications will not result in any prejudice to Apple or disturb the Court's previous findings that the Class satisfied the requirements of Rule 23(a) and (b)(3).

Plaintiffs base their Motion on: (1) the Court's Order Denying Apple's Daubert Motion to Exclude the Testimony of Professor Daniel L. McFadden and Dr. Rosa Abrantes-Metz and Granting Plaintiffs' Motion for Class Certification, (ECF No. 789); (2) the Memorandum of Points and Authorities filed in support of this Motion, appended hereto; (3) the Declaration of Rachele R. Byrd and its exhibits; (4) the Declaration of Cameron Azari; (5) all other records and papers on file in this action; (6) any oral argument and evidence that may be presented at the hearing on this Motion; and (7) all other matters properly before the Court.

DATED: April 15, 2025

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Rachele R. Byrd*
      RACHELE R. BYRD

RACHELE R. BYRD (190634)
BETSY C. MANIFOLD (182450)
STEPHANIE AVILES (350289)
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

| | |
|---|---|
| 1 | **WOLF HALDENSTEIN ADLER** |
| 2 | **FREEMAN & HERZ LLP** |
| | MARK C. RIFKIN (*pro hac vice*) |
| 3 | MATTHEW M. GUINEY (*pro hac vice*) |
| 4 | THOMAS H. BURT (*pro hac vice*) |
| | 270 Madison Ave |
| 5 | New York, NY 10016 |
| | Telephone: 212/545-4600 |
| 6 | Facsimile: 212/686-0114 |
| 7 | DAVID C. FREDERICK (*pro hac vice*) |
| | AARON M. PANNER (*pro hac vice*) |
| 8 | KYLE M. WOOD (*pro hac vice*) |
| | ASHLE J. HOLMAN (*pro hac vice*) |
| 9 | KELLEY C. SCHIFFMAN (*pro hac vice*) |
| | ANNA K. LINK (*pro hac vice*) |
| 10 | **KELLOGG, HANSEN, TODD, FIGEL &** |
| 11 | **FREDERICK, P.L.L.C** |
| | 1615 M Street, NW Suite 400 |
| 12 | Washington, D.C. 20036 |
| | Telephone: (202) 326-7900 |
| 13 | Facsimile: (202) 326-7999 |
| | dfrederick@kellogghansen.com |
| 14 | apanner@kellogghansen.com |
| | kwood@kellogghansen.com |
| 15 | aholman@kellogghansen.com |
| | kschiffman@kellogghansen.com |
| 16 | alink@kellogghansen.com |
| 17 | *Class Counsel for Plaintiffs* |

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I. STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

II. INTRODUCTION .................................................................................................. 1

III. BACKGROUND .................................................................................................... 1

    A. The Class Certification Motions .............................................................. 1

    B. The Modified Class Definition ................................................................. 3

IV. ARGUMENT ........................................................................................................... 4

    A. Plaintiffs' Proposed Modifications to the Class Defintinon Are Based on Evidentiary Developments After Class Certification ........................................................... 4

        1. The iPod Touch Should Be Excluded from the Definition of "iOS Device" .......... 5

        2. The $10 Spending Cutoff Should Apply to Individual Payors ............................... 8

    B. The Modified Class Satisfies Rules 23(a) and (b) ....................................... 10

    C. The Court Should Direct Notice to the Class by Email and Media Notice ................. 11

V. CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**     **Page(s)**

*Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*,
No. 15-CV-06314-YGR, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018) .................................4

*Andrews v. Plains All Am. Pipeline, L.P*,
No. 2:15-CV-0411-PSG (JEMx), 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) .......6, 8, 10

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .............................................................................................4

*Bee, Denning, Inc. v. Cap. All. Grp.*,
310 F.R.D. 614 (S.D. Cal. 2015) ........................................................................................6

*Cadena v. Am. Honda Motor Co.*,
No. CV 18-4007-MWF (MAAX), 2024 WL 5275025 (C.D. Cal. Oct. 24, 2024) ...............14

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ....................................................4

*In re Korean Ramen Antitrust Litig.*,
No. 13-CV-04115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018).............................5

*Maldonado v. Apple, Inc.*,
No. 3:16-CV-04067-WHO, 2021 WL 134579 (N.D. Cal. Jan. 14, 2021)...........................10

*Minter v. Wells Fargo Bank, N.A.*,
280 F.R.D. 244 (D. Md. 2012)...........................................................................................10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..........................................................................................2, 3

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .........................................................................................11

*Schneider v. Chipotle Mexican Grill, Inc.*,
No. 16-CV-02200-HSG, 2019 WL 570751 (N.D. Cal. Feb. 12, 2019).........................4, 11

*Sihler v. Fulfillment Lab, Inc.*,
No. 20CV1528-LL-DDL, 2023 WL 7348425 (S.D. Cal. Nov. 7, 2023)........................11, 14

*United States v. Microsoft*,
253 F.3d 34 (D.C. Cir. 2001).............................................................................................6

**STATUTES & RULES**     **Page(s)**

Federal Rules of Civil Procedure
Rule 23 ...............................................................................................................1, 4, 10, 11

Sherman Antitrust Act of 1890 .................................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES TO BE DECIDED

a) Whether the Court should modify the Class definition to 1) exclude the iPod Touch from the definition of "iOS Device," and 2) apply the $10 spending cutoff to individual payors rather than Apple IDs.

b) Whether the Court should approve notice of the pendency of this action to the Class via email and by media notice.

## II. INTRODUCTION

Plaintiffs bring this motion to modify the Court's February 2, 2024 Order Denying Apple's *Daubert* Motion to Exclude the Testimony of Professor Daniel L. McFadden and Dr. Rosa Abrantes-Metz and Granting Plaintiffs' Motion for Class Certification (ECF No. 789) ("Class Certification Order"). Plaintiffs seek to narrow the Class by making two modifications to the Class definition. These modifications have been informed by the benefit of additional fact and expert discovery the parties have conducted since the Court issued the Class Certification Order. Plaintiffs' proposed modifications will not result in any prejudice to Apple or disturb the Court's previous findings that the Class satisfied the requirements of Rule 23(a) and (b)(3).

## III. BACKGROUND

### A. The Class Certification Motions

On June 1, 2021, Plaintiffs filed a Motion for Class Certification, requesting that the Court certify the following Class under the Federal Rules of Civil Procedure 23(a) and (b)(3):

> All persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant Apple Inc. ("Apple"), or who paid Apple for one or more in-app purchases, including, but not limited to, any subscription purchase, for use on an iOS Device at any time since July 10, 2008.

Plaintiffs' Notice of Motion and Motion for Class Certification; Memorandum of Points and Authorities (ECF No. 441) at 2. Plaintiffs defined "iOS Devices" as "iPhones, iPads, or iPod Touches," with "iPads" including "all iPad Pro, iPad Mini and iPad Air models as well as standard iPads." *Id.* at 1 & n.2.

On September 26, 2022, Plaintiffs filed a Renewed Motion for Class Certification. ECF No. 666-1. Plaintiffs' experts computed Apple's but-for commission rate and performed econometric modeling to create a damages model that they ran against all transactions in the Games and Music & Entertainment genres from the App Store to demonstrate class-wide impact and calculate damages estimates for all Apple IDs through common proof. *Id*. at 1-2. Prof. McFadden's econometric model satisfied the standard for class certification announced in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), because it could determine exactly which Apple ID accounts suffered monetary damages and which did not. Plaintiffs' Renewed Motion for Class Certification (ECF No. 666-1) at 12. Plaintiffs assured the Court that they would run the model on the full set of App Store transactions before trial, that they would match Apple IDs to individual Class members, and that they would identify all Class members who suffered no economic loss before trial. *Id*. at 13.

After running the damages model on all transactions in the Games and Music & Entertainment genres during the class certification stage, Prof. McFadden (a Nobel laureate) estimated that there were approximately 17.8% uninjured Apple ID accounts in the Class. Second Revised Supplemental Report of Daniel L. McFadden (ECF No. 679-1), ¶ 16. Plaintiffs noted that the number of uninjured accounts likely overstated the percentage of unharmed Class members because many App Store customers have multiple Apple IDs. Plaintiffs' Renewed Motion for Class Certification (ECF No. 666-1) at 14-15 & n.14. To reduce the number and percentage of Apple ID accounts without measurable (or with de minimis) damages, Plaintiffs proposed a narrowed Class definition that imposed a $10 lifetime spending cutoff in any one Apple ID account. *Id*. at 15. Applying the lifetime spending cutoff decreased the percentage of unharmed accounts from 17.8% to 7.9%. January 19, 2023, Second Revised Supplemental Report of Daniel L. McFadden (ECF No. 679-1), ¶ 16.

On February 2, 2024, the Court granted Plaintiffs' Renewed Motion for Class Certification and certified the following class:

> All persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant Apple Inc. ("Apple"), or who paid Apple for one or more in-app purchases, including, but not limited to, any

subscription purchase, for use on an iOS Device at any time since July 10, 2008 (the "Class Period"). The Class is limited to those persons who paid more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases from any one Apple ID account.

Class Certification Order (ECF No. 789) at 2. The Court found that Plaintiffs' claims met the *Olean* predominance requirement and that Prof. McFadden's model was capable of showing the impact of Apple's anticompetitive conduct across all Class members. *Id*. at 26. The Court noted that while it remained "concerned that the $10.00 cutoff results in an estimated 7.9% or 10,283,035 million uninjured accounts, it expects, given plaintiffs' representations, that once the model is fully run, that number will be reduced ***or the cutoff could be changed*** to reduce the impact of including unharmed accounts." *Id*. (emphasis added).

### B. The Modified Class Definition

Since Class certification, the parties have concluded fact discovery, Prof. McFadden has fully run the damages model on all App Store transactions, and Plaintiffs also have retained additional expert witnesses, including a liability expert, Joseph R. Stiglitz, another Nobel laureate, who has opined on the relevant foremarkets in this matter. In addition, Plaintiffs' legal administrator, JND Legal Administration ("JND"), was able to match approximately ▬▬ Apple IDs to approximately ▬▬ individuals, despite Apple's protestations that such matching was impossible. *See* Byrd Decl., Ex. C [Song Expert Report], ¶ 21; *id*., Ex. B [Thompson Declaration], ¶ 10; Declaration of Mark Rollins in Support of Apple Inc.'s *Daubert* Motions & Briefs in Opposition to Class Certification (ECF No. 476-12), ¶ 5 ("Apple does not have the ability to establish or verify each or every Apple ID for a particular person or entity based on email, birthdate, phone number, payment method, or other information a person or entity provides for an Apple ID. Apple likewise cannot determine how many Apple IDs any particular person or entity has[.]"); Nov. 16, 2021 Hrg. Tr. (ECF No. 606) 79:23-25 (Ms. Richman) ("The issue is there's no way of linking Apple IDs in any kind of automated way."). Using the results from JND, Apple then matched individual transactions to the ▬▬ individuals and Plaintiffs' experts then identified ▬▬ individuals with positive spend, ▬▬ of whom meet the proposed modified Class definition. Byrd Dec., Ex. C [Song Expert Report], ¶ 74, p. 104, Figure 24.

In light of these evidentiary developments, Plaintiffs move to modify the Class definition in two respects: *first*, to limit qualifying foremarket purchases to iPhones and iPads only (eliminating iPod Touch foremarket purchases); and *second*, to impose the $10 lifetime spending threshold to Class members rather than Apple IDs. The result is the following modified Class definition:

> All persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant Apple Inc. ("Apple"), or who paid Apple for one or more in-app purchases, including, but not limited to, any subscription purchase, for use on an iPhone or iPad ("iOS Device") at any time since July 10, 2008 (the "Class Period"). The Class is limited to those persons who paid more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases ~~from any one Apple ID account~~.

These modifications will result in a more well-defined Class and ensure that the Class definition comports with the evidence Plaintiffs intend to present at trial.

## IV.    ARGUMENT

### A. Plaintiffs' Proposed Modifications to the Class Defintinon Are Based on Evidentiary Developments After Class Certification

Rule 23 permits a court to alter or amend an order granting class certification before final judgment. Fed. R. Civ. P. 23(c)(1)(C). The Ninth Circuit has recognized that Rule 23 grants district courts "broad discretion" to revisit certification and "[w]here appropriate, the district court may redefine the class." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2019 WL 570751, at *1 (N.D. Cal. Feb. 12, 2019) (citation omitted). This is because "such an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative.'" *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982). In granting class certification, the Court acknowledged its inherent authority to modify the Class definition. Class Certification Order, at 2.

Plaintiffs' proposed modifications to the Class definition are appropriate because they are based on evidentiary developments that occurred after class certification. *Abante Rooter and*

*Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-06314-YGR, 2018 WL 558844, at *2 (N.D. Cal. Jan. 25, 2018) ("District courts have a responsibility to review continually 'the appropriateness of a certified class in light of developments subsequent to class certification.'"); *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) ("The types of 'developments' that lead to modification . . . can be evidentiary or legal.").

### 1. The iPod Touch Should Be Excluded from the Definition of "iOS Device"

Plaintiffs claim that Apple unlawfully monopolizes the aftermarket for the sale of iOS apps and in-app content. During the class certification stage, Plaintiffs alleged that the aftermarket flowed from the foremarket for all iOS-installed mobile devices: iPhones, iPads, and iPod Touch devices. *See* June 1, 2021 Expert Report of Daniel L. McFadden (ECF No. 443-14), ¶¶ 43-44.

Since class certification, Plaintiffs completed fact discovery and have retained a liability expert who, after conducting additional analysis and review, has determined that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *See* Declaration of Rachele R. Byrd in Support of Motion to Modify Class Definition and Approve Notice to the Class ("Byrd Decl."), Ex. A [Excerpts from the Expert Report of Joseph E. Stiglitz], ¶ 23. Prof. Stiglitz ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *Id.* ¶¶ 251-57, 282-88. Prof. Stiglitz analyzed the evidence and determined that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *Id.*, ¶¶ 264-67. Internal Apple documents and industry analyses also recognize ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *Id.*, ¶¶ 268-69, 297-98.

Most importantly, Prof. Stiglitz has reviewed the relevant evidence and determined that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *Id.*, ¶¶ 245-305. Prof. Stiglitz explains that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

1   ████████████████████████████████████████. *Id*., ¶¶ 239-244. Thus, he concludes
2   that ██████████████████████████████████████████████████████████████████████
3   ████████████. *Id*., ¶¶ 242-44.

4   However, after considering the evidence, Prof. Stiglitz has concluded that, ████
5-8 ████████████████████████████████████████████████████████████████████████████.[2] *Id*. ¶ 240.

After considering Prof. Stiglitz's conclusions, Plaintiffs determined that it would be in the best interest of the Class as a whole to present only the strongest aftermarket claims at trial, and they seek to refine the Class definition accordingly by limiting the foremarkets to smartphones and tablets. Accordingly, they propose to limit the Class to purchases of iPhones and iPads in the relevant foremarkets of smartphones and tablets, respectively.

Courts have allowed plaintiffs to modify class definitions based on expert work conducted after class certification. *See Andrews v. Plains All Am. Pipeline, L.P*, No. 2:15-CV-0411-PSG (JEMx), 2019 WL 6647928, at *2, *6 (C.D. Cal. Nov. 22, 2019) (granting motion to amend class definition based on "finalized evidence" and "the completion of various experts' work").[3] In *Andrews*, the plaintiffs based their class definition on "the information available to them at the time" and their experts' preliminary analyses. *Id.* at *1. The court granted the plaintiffs' motion to



[1] ██████████████████████████████████████████████████████████████████████████████

---

[2] Market power and monopoly power are different. "Monopoly power" specifically implies a single firm dominating a market by controlling prices or excluding competition, while "market power" is a broader concept encompassing a lesser degree of control over output and prices. *See United States v. Microsoft*, 253 F.3d 34, 51 (D.C. Cir. 2001) (*en banc*).

[3] Courts routinely permit plaintiffs to amend class definitions when, as here, the new class is narrower than the class definition originally proposed and does not involve a new claim for relief. *See Bee, Denning, Inc. v. Cap. All. Grp*., 310 F.R.D. 614, 621 (S.D. Cal. 2015) (collecting cases).

amend the class definition based on their post-class certification expert reports and found that defendants were not prejudiced by the modification because "Plaintiffs have not sought to bring new claims, have not sought to expand the class definition beyond that in the complaint, and have brought their motion prior to the close of expert discovery." *Id.* at *8.

The same is true here. Plaintiffs continue to assert two claims against Apple for unlawful monopolization and attempted monopolization of the aftermarket for iOS apps and in-app content in violation of Section 2 of the Sherman Act, which are unchanged by Plaintiffs' proposed modifications to the Class definition. Plaintiffs also seek to *narrow* the certified Class rather than expand it beyond the definition in the Complaint. Thus, if anything, the proposed amendment slightly *reduces* the amount of Apple's potential liability.[4] In addition, Plaintiffs have brought this motion before expert disclosures have been completed (reply expert reports are due on June 13, 2025) and before expert discovery closes (on July 7, 2025), thus reducing or eliminating any potential prejudice to Apple.

Additionally, Plaintiffs informed Apple that they were no longer pursuing claims relating to the iPod Touch in November 2024 when Plaintiffs amended their interrogatory responses to remove the iPod Touch from the list of products relevant to this matter. *See* Byrd Decl., Ex. D [Plaintiffs' Amended and Supplemental Responses and Objections to Defendant Apple Inc.'s First Set of Interrogatories], at 5-6. On January 30, 2025, Apple confirmed its understanding that Plaintiffs were no longer pursuing claims relating to the iPod Touch. *Id.*, Ex. E ("Plaintiffs have deleted previous language from their prior interrogatory responses regarding the iPod touch, we understand that Plaintiffs are no longer pursuing any claims arising out of purchases made through or otherwise in relation to the iPod touch device.").

Thus, there is no risk of unfair prejudice to Apple by the elimination of iPod Touch devices from the relevant foremarkets.

---

[4] ████████████████████████████████████████████████████ Byrd Decl., ¶ 5.

### 2. The $10 Spending Cutoff Should Apply to Individual Payors

During the class certification stage, Plaintiffs proposed the $10 spending cutoff in the Class definition based upon lifetime spending in any single Apple ID. The Court will recall that, at the time of class certification, Plaintiffs only had transactional data linked to Apple IDs, not to individual Class members. During class certification, ████████████████████████████████ ████████████████████████████████████████████████████████. *See* Byrd Decl., Ex. F [Expert Report of Daniel L. McFadden, Ph.D.], ¶ 57 ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ They proposed the lifetime spending cutoff at the Apple ID account level based on "the information available to them at the time." *Andrews*, 2019 WL 6647928 at *6.

At that time, Plaintiffs represented to the Court that they would match Apple IDs to individual Class members once they received the necessary data from Apple. *See* June 23, 2023 Hrg. Tr. (ECF No. 736) 92:22-93:21 (Mr. Rifkin) ("the regression model calculates damages on the individual Apple ID basis account by account . . . Those accounts need to be matched to individual class members . . . First [Apple has] to produce the data they said doesn't exist and then we have to run the mechanical matching to do it.").

Since then, Plaintiffs have received from Apple the data with the requisite datasets to complete the matching process. ████████████████████████████ On June 14, 2024, Apple ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████ Byrd Decl., Ex. B [Declaration of Darryl Thompson], ¶¶ 6, 11. JND matched ██████████████████████████████ ██████ – *i.e.*, potential Class members. *Id.* ¶¶ 13-16. On January 3, 2025, JND delivered its

---

[5] The Court also will recall that Apple and its counsel previously insisted that such data did not exist. *See* Rollins Declaration (ECF No. 476-12), ¶ 5; Nov. 16, 2021 Hrg. Tr. (ECF No. 606) 79:23-25. The Court rejected Apple's claim. March 29, 2022, Order Denying Plaintiffs' Motion for Class Certification Without Prejudice (ECF No. 630) at 14.

list of deduplicated payors to Apple. *Id*. ¶ 18. On January 17, 2025, Apple matched approximately ▓▓▓▓▓▓▓▓▓▓ and provided the results of its matching to Plaintiffs' experts,[6] completing the process Apple previously said was impossible.

Prof. McFadden's team, led by Minjae Song, Ph.D., has ▓▓▓▓▓▓▓▓▓▓ Byrd Decl., Ex. C [Expert Report of Minjae Song], Ph.D. ¶ 71. Dr. Song ▓▓▓▓▓▓▓▓▓▓ . *Id*. ¶¶ 71, 85. He then ▓▓▓▓▓▓▓▓▓▓ ). *Id*. at 104, Figure 24.

Now that Plaintiffs have successfully determined which Apple IDs correspond to which payor, Plaintiffs request modification of the Class definition to apply the $10 spending cutoff to individual payors rather than Apple IDs. Imposing the lifetime spending threshold per Class member rather than per Apple ID is a fairer way to impose the cutoff because it does not arbitrarily favor Class members with fewer Apple IDs or penalize Class members with multiple Apple IDs. In addition, applying the spending cutoff by individual payor will ensure that the appropriate individual receives Class notice because the person who has the email address associated with an Apple ID may not be the payor for that account.

Applying the spending cutoff by payor will also not prejudice Apple. There is no material difference between the aggregate damages when the spending cutoff is applied by Apple ID versus by individual payor. *Id*. For example, in the "Flexible But-For-Pricing" scenario where Apple's price tiers do not exist in the But-For World, aggregate damages are $▓▓▓▓. The total number of Class members rises slightly (by just ▓▓▓) from ▓▓▓▓ (when the $10 threshold is applied at the Apple ID level) to ▓▓▓▓ (when the $10 threshold is applied to individual payors) and the number of harmed payors increases slightly (by just ▓▓▓) from ▓▓▓▓ Class members. The percentage of unharmed Class members remains

---

[6] *See* Byrd Decl., Ex. I.

|   |   |
|---|---|
| 1 | virtually unchanged (███ at the Apple ID level to ███ at the payor level). *See id.* at 104, |
| 2 | Figure 24. The same persistence appears in the "Price Tiers in But-For world" scenario, where |
| 3 | Apple's price tiers persist in the But-For world. In that scenario, aggregate damages are ███ |
| 4 | ███. The total number of Class members again rises slightly (by just ███) from ███ |
| 5 | (when the $10 threshold is applied at the Apple ID level) to ███ (when the $10 threshold |
| 6 | is applied to individual payors). The number of harmed payors increases slightly (by just ███) |
| 7 | from ███ to ███ Class members. The percentage of unharmed Class members |
| 8 | again remains virtually unchanged (███ at the Apple ID level to ███ at the payor level). *See* |
| 9 | *id.* at 105, Figure 25. |
| 10 | The composition of the Class differs only slightly – all but immaterially – whether the |
| 11 | spending cutoff is applied at the Apple ID level (as before) or at the payor level (as Plaintiffs |
| 12 | propose) – a remarkable consistency that confirms the robustness and reliability of Prof. |
| 13 | McFadden's econometric modeling. |
| 14 | **B.   The Modified Class Satisfies Rules 23(a) and (b)** |
| 15 | The modified Class definition must satisfy the requirements of Rule 23. *See Maldonado v.* |
| 16 | *Apple, Inc.*, No. 3:16-CV-04067-WHO, 2021 WL 134579, at *2 (N.D. Cal. Jan. 14, 2021) |
| 17 | ("Because the modified definition serves the same purpose as the original one, the new class |
| 18 | definition must meet the requirements of Federal Rule of Civil Procedure 23."). In making this |
| 19 | determination, however, the court is not required to revisit elements of the Rule 23 analysis that |
| 20 | have already been established. *See Andrews*, 2019 WL 6647928, at *10 ("This Court has |
| 21 | previously determined that each of the elements of Rule 23 are met with respect to the Fisher |
| 22 | Subclass . . . The minimal changes to the class definition do not alter the Court's conclusions"); |
| 23 | *Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244, 247 (D. Md. 2012) ("The enlargement of the |
| 24 | RICO subclass does not sufficiently change the landscape so that this Court need revise its prior |
| 25 | decision regarding the superiority of class treatment for this case."). |
| 26 | The proposed modifications do not change the Court's analysis under Rule 23(a). The |
| 27 | modified Class satisfies Rule 23(a) for the same reasons the Court found in its Class Certification |
| 28 | Order. Likewise, the proposed modifications do not change the Court's analysis under Rule |

23(b)(3). The modified Class satisfies the predominance requirement under Rule 23(b)(3) for the same reasons the Court found in its Class Certification Order.

Significantly, now that the experts have computed damages for all App Store transactions and have used the matched payor and transaction data to calculate each individual Class member's damages – exactly as they represented they would do *before* trial – the Class does not suffer from any overbreadth concerns. When Dr. Song ran Prof. McFadden's model on the full App Store transactions dataset, the number of unharmed Class members in the "Flexible But-For-Pricing" scenario is either ▮ (when the spending cutoff is applied at the Apple ID level) or ▮ (when it is applied at the payor level). *See* Byrd Decl., Ex. C [Expert Report of Minjae Song, Ph.D.], at 104, Figure 24. Likewise, in the "Price Tiers in the But-For-Pricing" scenario, the number of unharmed Class members is either ▮ (when the spending cut-off is applied at the Apple ID level) or ▮ (when it is applied at the payor level). *Id*. at 105, Figure 25.

Plaintiffs' proposed modifications are in line with the Court's expectation that Plaintiffs would minimize the percentage of unharmed accounts encompassed in the Class, and it is in accordance with the Ninth Circuit's guidance that "the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016).

**C. The Court Should Direct Notice to the Class by Email and Media Notice**

After a court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Although reasonable efforts must be made to reach all class members, there is no requirement that each class member actually receive notice. *Sihler v. Fulfillment Lab, Inc.*, No. 20CV1528-LL-DDL, 2023 WL 7348425, at *2 (S.D. Cal. Nov. 7, 2023) (citing *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595–96 (N.D. Cal. 2020), and *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)).

Plaintiffs have developed a proposed notice plan in consultation with Epiq Class Action and Claims Solutions, Inc. ("Epiq"), a nationally-recognized legal administrator, which they expect will reach at least 80% of the members of the Class. *See* Declaration of Cameron R. Azari

1  Regarding Notice Plan ("Azari Decl."), ¶¶ 19, 35. Plaintiffs based their proposed notice plan on
2  the Federal Judicial Center's guidelines for class notice. *See* Byrd Decl., ¶ 11.
3     Under the notice plan, Plaintiffs will send direct email notice to approximately ▮
4  ▮ potential Class members identified by JND (in the matching and deduplication effort
5  described above) and by Plaintiffs' experts at email addresses to be provided by Apple. Azari
6  Decl., ¶ 21. Those email addresses will include the email addresses for all *potential* Class members,
7  both current and former purchasers of apps and in-app content for the iPhone and iPad with positive
8  spend, without regard to the $10 spending cutoff. The email notice will be drafted in such a way
9  that the subject line, the sender, and the body of the message overcome SPAM filters and ensure
10 readership to the fullest extent reasonably practicable. *Id.*, ¶ 23. If an email is undeliverable, the
11 notice administrator will make *two* additional attempts to resend the email. *Id.*, ¶ 24. The email
12 notice will include an embedded link to the notice website. By clicking the link, recipients will be
13 able to access the Long Form Notice and other information about the case. *Id.*, ¶ 23.
14    The notice plan also includes digital advertising in various sizes on the selected advertising
15 network *Google Display Network*, which represents thousands of digital properties across all major
16 content categories. *Id.*, ¶ 26. Digital Notices will run on mobile devices nationwide. *Id*. All digital
17 advertising will link directly to the notice website, allowing visitors easy access to relevant
18 information and documents. *Id*.
19    The notice plan will also include digital advertising on the leading social media platforms
20 in the United States, including Facebook, Instagram, and X (Twitter). *Id.*, ¶ 27. Facebook is the
21 leading social networking site in the United States with more than 193 million users in the United
22 States, Instagram has 169 million active users in the United States, and X (Twitter) X has more
23 than 105 million users in the United States. *Id*. Combined, approximately 39.5 million targeted
24 impressions will be generated by the digital notices, which will be targeted nationwide. *Id.*, ¶ 29.
25 The digital notices will run for approximately 30 days. Clicking on the digital notices will link the
26 readers to the notice website, where they can easily obtain detailed information about the case. *Id.*,
27 ¶ 30.
28    To facilitate locating the notice website, sponsored search listings will be acquired on the

three most highly-visited internet search engines: Google, Yahoo!, and Bing. *Id*., ¶ 30. When visitors to these search engines search for selected keyword combinations related to the case, the sponsored search listing advertisements will be displayed. *Id*. Generally, the sponsored search listing advertisement will appear at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen. *Id*. The sponsored search listings will be displayed nationwide. *Id*. All sponsored search listings will link directly to the notice website. *Id*.

Epiq will create and maintain a dedicated website with an easy-to-remember domain name. *Id*., ¶ 31. Class members will be able to obtain detailed information about the case and review key documents, including the Complaint, Long Form Notice, Class Certification Order, and other important court documents. *Id*. In addition, the notice website will include answers to frequently asked questions ("FAQs"), instructions for how Class members may opt-out (request exclusion), and how to obtain other case-related information. *Id*. The website address will be displayed prominently in all notice documents. *Id*.

Federal Rules of Civil Procedure 23(c)(2) and (3) prescribe the content of class notice. The proposed email notice and long form website notice convey the information required by Rules 23(c)(2) and (3) in plain, neutral language. *First*, the notices identify, in plain language, who are members of the Class (including the beginning and ending dates of the Class Period). *Second*, they inform recipients that the Court will exclude the individual from the Class if they request exclusion and specify the date by which they must do so. *Third*, the notices inform recipients that a judgment in this action, whether favorable or not, will include all Class members who do not request exclusion. And *fourth*, they inform recipients that they will be represented by Class Counsel and that any Class member who does not request exclusion may, if the member desires, enter an appearance through his or her own counsel. Thus, the proposed email notice and long form website notice conform with the requirements of Rules 23(c)(2) and (3). *See* Byrd Decl., Exs. G and H.

Plaintiffs provided Apple with an opportunity to review the email and long form notices and to provide comments and edits. Plaintiffs incorporated Apple's edits, other than those that (1) were inconsistent with Plaintiffs' proposed modifications to the Class definition, and (2)

removed language about Plaintiffs seeking injunctive relief. Byrd Decl., ¶ 11.

The notice plan is reasonably designed to reach the maximum number of Class members in the most efficient and reliable manner possible. There are approximately ███ individuals who are *potential* Class members (without regard to the $10 spending threshold), and those individuals are geographically dispersed across the United States. Because virtually all Class have at least one Apple ID – which is designated by email addresses – because they make all iOS app and in-app content purchases online using their Apple ID email addresses, and because Apple uses those Apple IDs as the primary means to communicate with its iOS device customers, the use of those email addresses for direct notice is particularly well-suited to reach the vast majority of Class members. Azari Decl., ¶ 22.

Direct notice by email only is sufficient because virtually all potential Class members have one or more known email addresses. *Cf. Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (MAAX), 2024 WL 5275025, at *2 (C.D. Cal. Oct. 24, 2024) (notice by email to all class members; postcard used to "reach[] class members with no associated email but a home address"). Accordingly, email notice is the best direct notice practicable under the circumstances. *See Sihler*, 2023 WL 7348425, at *3 (citations omitted).

To ensure that all Class members receive notice, the notice plan also includes media notice, a case-specific website, and a toll-free telephone number for answers to FAQs, and contact information for Epiq to provide additional information to Class members. Azari Decl., ¶ 33.

Plaintiffs request the Court order Apple to produce the Class List with email addresses within ten (10) days of entry of an order granting this motion. Epiq will then commence notice forty-five (45) days later and complete notice within thirty (30) days thereafter. Potential Class members will be given thirty-five (35) days from the completion of notice to opt out of the Class.

V.   **CONCLUSION**

Plaintiffs respectfully request that the Court modify its order certifying the class to: 1) remove the iPod Touch from the definition of "iOS Device," and 2) apply the $10 spending cutoff to individual payors. Plaintiffs also request that the Court direct notice of pendency to the Class by email and media notice.

| | |
|---|---|
| DATED: April 15, 2025 | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP** |
| | By:  */s/ Rachele R. Byrd*  <br>    RACHELE R. BYRD |
| | RACHELE R. BYRD (190634)<br>BETSY C. MANIFOLD (182450)<br>STEPHANIE AVILES (350289)<br>750 B Street, Suite 1820<br>San Diego, CA  92101<br>Telephone: 619/239-4599<br>Facsimile: 619/234-4599 |
| | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>MARK C. RIFKIN (*pro hac vice*)<br>MATTHEW M. GUINEY (*pro hac vice*)<br>THOMAS H. BURT (*pro hac vice*)<br>270 Madison Ave<br>New York, NY 10016<br>Telephone: 212/545-4600<br>Facsimile: 212/686-0114 |
| | DAVID C. FREDERICK (*pro hac vice*)<br>AARON M. PANNER (*pro hac vice*)<br>KYLE M. WOOD (*pro hac vice*)<br>ASHLE J. HOLMAN (*pro hac vice*)<br>KELLEY C. SCHIFFMAN (*pro hac vice*)<br>ANNA K. LINK (*pro hac vice*)<br>**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C**<br>1615 M Street, NW Suite 400<br>Washington, D.C. 20036<br>Telephone:  (202) 326-7900<br>Facsimile:  (202) 326-7999<br>dfrederick@kellogghansen.com<br>apanner@kellogghansen.com<br>kwood@kellogghansen.com<br>aholman@kellogghansen.com<br>kschiffman@kellogghansen.com<br>alink@kellogghansen.com |
| | *Class Counsel for Plaintiffs* |