THEODORE J. BOUTROUS JR., SBN 132099
tboutrous@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

CAELI A. HIGNEY, SBN 268644
  chigney@gibsondunn.com
JULIAN W. KLEINBRODT, SBN 302085
  jkleinbrodt@gibsondunn.com
DANA L. CRAIG, SBN 251865
  dcraig@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

CYNTHIA E. RICHMAN, D.C. Bar No. 492089*
  crichman@gibsondunn.com
HARRY R. S. PHILLIPS, D.C. Bar No. 1617356*
  hphillips@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Apple Inc.*

*Admitted *pro hac vice*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE APPLE IPHONE ANTITRUST
LITIGATION

No. 4:11-cv-06714-YGR

**DEFENDANT APPLE INC.'S
OPPOSITION TO PLAINTIFFS' MOTION
TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND ............................................................................................................ 2

    A.      The Court Conditionally Certifies a Class with Millions of Unharmed
        Members .................................................................................................................. 2

    B.      The Parties Engage in Extended Fact and Expert Discovery ................................. 4

    C.      More than a Year After Certification, Plaintiffs Move to Amend the Class
        Definition and Issue Class Notice .......................................................................... 6

III.    ARGUMENT .................................................................................................................. 8

    A.      Plaintiffs' Request to Materially Modify the Class Should Be Denied ................. 8

        1.      Plaintiffs Do Not Provide a Sufficient Basis for Their Proposed
                Changes ..................................................................................................... 8

        2.      Plaintiffs' Proposed Class Does Not Meet Rule 23's Requirements ............. 11

        3.      Plaintiffs' Proposed Modification and Delay Prejudices Apple ................... 17

    B.      The Court Should Adopt Apple's Proposed Modifications to Plaintiffs' Notice
        Plan ....................................................................................................................... 20

        1.      Notice Should Not Refer to Injunctive Relief Because Plaintiffs Did
                Not Seek Certification of, and the Court Did Not Certify, an Injunctive
                Class ........................................................................................................ 20

        2.      Individual Email Notice Should Be Limited To Emails To Identified
                Class Members ......................................................................................... 21

IV.     CONCLUSION ............................................................................................................ 24

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

# TABLE OF AUTHORITIES

Page

## Cases

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
2017 WL 4073792 (N.D. Cal. Sept. 14, 2017) ....................................................1, 8, 11, 15

*Adams v. Inter-Con Sec. Sys., Inc.*,
242 F.R.D. 530 (N.D. Cal. 2007) ...............................................................................24

*Amaraut v. Sprint/United Mgmt. Co.*,
2020 WL 8024170 (N.D. Cal. Jan. 14, 2020) .............................................................22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................14, 16

*Andrews v. Plains All Am. Pipeline, L.P.*,
2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) ......................................................10, 11

*Artis v. Deere & Co.*,
276 F.R.D. 348 (N.D. Cal. 2011) ...............................................................................22

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ......................................................................................14

*Back Drs. Ltd. v. Metro. Prop & Cas. Ins. Co.*,
637 F.3d 827 (7th Cir. 2011) ....................................................................................16

*Beck v. Status Game Corp.*,
1995 WL 422067 (S.D.N.Y. July 14, 1995) ...............................................................17

*Belgada v. Hy's Livery Serv., Inc.*,
2019 WL 2066961 (D. Conn. May 10, 2019) .............................................................18

*Belmont v. BP Am. Prod. Co.*,
2014 WL 12622442 (D. Wyo. Oct. 16, 2014) ............................................................17

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
2006 WL 8435096 (S.D. Fla. Dec. 28, 2006) .............................................................15

*Brantley v. NBC Universal, Inc.*,
675 F. 3d 1192 (9th Cir 2002).....................................................................................13

*Chinitz v. Intero Real Est. Servs.*,
2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) ..............................................................23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................................................................................................11

*Coronavirus Reporter v. Apple Inc.*,
85 F. 4th 948 (9th Cir. 2023).....................................................................................16

*Cruz v. Dollar Tree Stores, Inc.*,
2009 WL 1974404 (N.D. Cal. July 2, 2009)...............................................................24

Gibson, Dunn &
Crutcher LLP

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................................11

*Guevarra v. Progressive Fin. Servs., Inc.*,
    497 F. Supp. 2d 1090 (N.D. Cal. July 31, 2007)....................................................................15

*In re Gypsum Antitrust Cases*,
    565 F.2d 1123 (9th Cir. 1977)................................................................................................21

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990)................................................................................................18

*Jermyn v. Best Buy Stores*,
    2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ........................................................................22

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019) ............................................................................................23

*Lab. Corp. of Am. Holdings v. Davis*,
    No. 24-304 (U.S.)..............................................................................................................2, 14

*LabCorp. v. Davis*,
    220 L. Ed. 2d 428 (Jan. 24, 2025) ........................................................................................14

*LaVigne v. First Cmty. Bancshares, Inc.*,
    330 F.R.D. 293 (D.N.M. 2019) ............................................................................................20

*Maldonado v. Apple Inc.*,
    2021 WL 134579 (N.D. Cal. Jan. 14, 2021) ...........................................................................8

*Mays v. Tennessee Valley Auth.*,
    274 F.R.D. 614 (E.D. Tenn. 2011) ........................................................................................17

*Mr. Dee's Inc. v. Inmar, Inc.*,
    127 F.4th 925 (4th Cir. 2025)..............................................................................2, 14, 15, 16

*Mueller v. CBS, Inc.*,
    200 F.R.D. 242 (W.D. Pa. 2001) ..........................................................................................10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F. 4th 651 (9th Cir. 2022) (en banc)...............................................8, 10, 12, 13, 14, 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    934 F.3d 619 (D.C. Cir. 2019) .........................................................................................13, 14

*Red Barn Motors, Inc. v. Cox Auto., Inc.*,
    2017 WL 11610289 (S.D. Ind. Aug. 11, 2017) ....................................................................19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).................................................................................................16

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019)...............................................................................................21

*Ruiz-Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016)...........................................................................................1, 14

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

Gibson, Dunn &
Crutcher LLP

*Schwarzschild v. Tse*,
   69 F.3d 293 (9th Cir. 1995).................................................................................................19

*Smith v. Seeco, Inc.*,
   2016 WL 3541412 (E.D. Ark. Mar. 11, 2016)...................................................................18

*Staton v. Boeing Co.*,
   327 F.3d 939 (9th Cir. 2003).............................................................................................16

*In re Stec Inc. Sec. Litig.*,
   2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) ....................................................................17

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) ......................................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 3268649 (N.D. Cal. July 28, 2011).........................................................8, 17, 18

*Town of Lexington v. Pharmacia Corp.*,
   2015 WL 1321448 (D. Mass. Mar. 24, 2015)...................................................................18

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ..........................................................................................................12

*Wenig v. Messerli & Kramer P.A.*,
   2013 WL 1176062 (D. Minn. Mar. 21, 2013)...................................................................15

*Wetlzet v. CertainTeed Corp.*,
   2019 WL 3976204 (W.D. Wash. Mar. 25, 2019) ..............................................................17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   302 F.R.D. 448 (N.D. Ohio 2014) .....................................................................................11

*Wit v. United Behav. Health*,
   2017 WL 930776 (N.D. Cal. Mar. 9, 2017).......................................................................21

*Yeoman v. Ikea U.S. W., Inc.*,
   2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) .....................................................................22

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...........................................................................................11

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................8, 16, 20

Fed. R. Civ. P. 37 ................................................................................................................10

Fed. R. Civ. P. 41 ................................................................................................................18

Fed. R. Evid. 702 ................................................................................................................10

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

# I.   INTRODUCTION

Plaintiffs have not offered a "sufficient" basis "for modifying the class definition[]." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 4073792, at *2-3 (N.D. Cal. Sept. 14, 2017) (Gonzalez Rogers, J.).  Plaintiffs paint their request to cleave off iPod transactions from the class as a modest change, prompted by new analysis from their new economist, Prof. Joseph Stiglitz.  But Prof. Stiglitz says Plaintiffs' counsel *instructed him* to disregard iPod transactions.  Plaintiffs likewise claim that a new analysis to identify individual App Store payors (analysis they have not turned over) somehow justifies their other change, a reformulation of the $10 cutoff.  But the law would require Plaintiffs to identify paying individuals under any class definition, and doing so has no bearing on which arbitrary $10 cutoff to apply.  In truth, Plaintiffs cannot prove injury classwide and are therefore resorting to increasingly capricious changes to the class definition to depress (but far from eliminate) the number of class members their own model says are unharmed.  Plaintiffs then would make the problem worse by sending the entire class—plus tens of millions more—a misleading class notice.  These requests should be denied.

When Plaintiffs moved to certify a class of iPhone, iPad, and iPod users "who paid more than $10.00 in total . . . for iOS application and in-app purchases from any one Apple ID account," the incomplete calculations they put forth estimated "10,283,035 million uninjured accounts."  Dkt. 789 at 2, 26.  The Court certified the class based on Plaintiffs' "representations, that once the model is fully run, that number will be reduced" and Plaintiffs "will be able to calculate the exact extent of injury suffered by each class member." *Id.* at 26.  But Plaintiffs have now run their model, and the problems remain: There are *even more* uninjured class members than Plaintiffs predicted.  Plaintiffs therefore return to the Court to ask for two more changes to the class definition.  These changes are significant: Excising iPod transactions jettisons 6,195,944 individuals from the class, 4,225,126 of whom are purportedly harmed under Plaintiffs' model.  And changing the $10 cutoff so that it includes payors with over $10 in total spending (rather than over $10 from any one account) sweeps more people into the class without "winnow[ing] out" the millions of "non-injured members" that persist. *Ruiz-Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016).

Gibson, Dunn & Crutcher LLP

Plaintiffs' new class definition should be rejected because it does not meet the requirements of Federal Rule of Civil Procedure 23.  First, Plaintiffs' proposed changes not only confirm that they cannot establish predominance but also exacerbate the problem by promising a class with *hundreds of thousands more* uninjured members than the one that previously "concerned" the Court, Dkt. 789 at 26—a material change in the wrong direction when the Supreme Court is poised to decide by July whether and to what extent a class may be certified that includes uninjured class members, *Lab. Corp. of Am. Holdings v. Davis*, No. 24-304 (U.S.).  Second, Plaintiffs cannot demonstrate superiority because their proposed changes are arbitrary, depriving Apple of the collective repose a class case is supposed to provide and instead exposing Apple to potential copycat claims from millions of individuals ejected from the class.  *See Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 932 (4th Cir. 2025) ("[C]ertifying . . . an incomplete class might expose defendants to a continued trickle of individual lawsuits and thereby impair the efficiency goal which is a key purpose of the class action mechanism.").  Third, Plaintiffs' redefinition request raises fresh adequacy concerns: Plaintiffs seek to sacrifice *millions* of claims that they say are valid while retaining one of the named plaintiffs who their own model shows suffered no harm.  Each of these problems defeats Plaintiffs' request to change the class definition.

Plaintiffs' proposed class notice should be rejected too.  It refers to an injunctive class that Plaintiffs did not request and the Court did not certify.  Plaintiffs also propose that a misleading notice be sent to 57.7 million people Plaintiffs concede are not in the current (or even redefined) class.  And Plaintiffs inexplicably waited over a year after the Court's certification decision to propose a notice plan that would require Apple to provide some hundreds of millions of email addresses in just ten days.  Apple requests a reasonable amount of time to carefully do the work of facilitating notice.

## II.    BACKGROUND

### A.    The Court Conditionally Certifies a Class with Millions of Unharmed Members

In 2021, Plaintiffs sought certification of a class of millions of U.S. consumers with Apple App Store accounts who had, at any point since 2008, paid for an app or made an in-app purchase.  Dkt. 441.  The class definition encompassed all app purchasers using "iOS Devices," defined as "iPhones, iPads, or iPod [t]ouches."  *Id.* at 1 & n.2.  The Court denied certification without prejudice because it found that Prof. Daniel McFadden's model for classwide injury was unreliable and inadmissible under

Gibson, Dunn &
Crutcher LLP

2

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

Federal Rule of Evidence 702 and, as a result, Plaintiffs "[could not] meet their predominance burden" under Rule 23(b)(3) as they could "not reliably demonstrate which members, and how many, were injured." Dkt. 630 at 1-2, 25.

Plaintiffs again sought certification in late 2022, relying on the same model to prove classwide injury and damages. Dkt. 666-1. Prof. McFadden's model found that more than 30 million Apple ID accounts would have paid more for apps and in-app content absent Apple's challenged conduct and thus suffered no injury. Dkt. 679-1 at 32; Dkt. 688-5 ¶¶ 56, 58. To reduce the number of unharmed accounts, Plaintiffs proposed to limit the class definition to consumers who spent more than $10 from any one account. Dkt. 666-1 at 1, 15. That cutoff was arbitrary: With no connection to Plaintiffs' theory of the case or the underlying economics, it was designed merely to depress the number of uninjured class members. *See id.* at 15; Lazarus Decl., Ex. 1.[1] (McFadden 3d. Dep. 231:12-23) (admitting that cutoff does not make damages model more reliable). But even with this narrowing, the model still left about 10.28 million unharmed accounts in the class (7.9% of class accounts). Dkt. 786-1 ¶¶ 10-11.

In February 2024, the Court granted Plaintiffs' second motion and certified the class after finding that Plaintiffs had "resolved th[e] deficiencies" in Prof. McFadden's model. Dkt. 789. The Court noted it was "concerned" that Prof. McFadden's model—which predicted prices for only three of the App Store's 27 genres and predicted injury for Apple ID accounts, not individuals, Dkt. 643-36 ¶¶ 10-16—showed more than 10 million unharmed accounts. Dkt. 789 at 26. But the Court relied on Plaintiffs' "representations" that "that number will be reduced" once Plaintiffs matched Apple IDs to actual consumers and ran the model on all App Store genres. *Id.* at 1, 26-27. The Court added, however, that it would "consider whether modification or decertification is appropriate for all or part of the class" if Plaintiffs failed to match accounts to individuals and limit the number of unharmed class members. *Id.* at 1. Accordingly, the Court certified a class containing any person who "paid more than $10 to Apple" since 2008 "for iOS application and in-app purchases from any one Apple ID account" for use on an iPhone, iPad, or iPod touch. *Id.* at 1-2.

---

[1] All "Ex. _" cites in this brief refer to exhibits to the concurrently filed Declaration of Eli M. Lazarus.

Gibson, Dunn &
Crutcher LLP

3

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

### B.     The Parties Engage in Extended Fact and Expert Discovery

After the Court certified the class, the parties spent months engaged in fact discovery, on top of the years of discovery that began in 2019.  Plaintiffs served additional sets of document requests, and, in April 2024, Apple agreed to provide payor-identifying information—*i.e.*, personally identifiable information such as name, address, and phone number from App Store payment records—so that Plaintiffs could attempt to deduplicate that dataset and match app transactions to actual, individual payors.  *See* Ex. 8 (Apr. 10, 2024 Letter from C. Higney to M. Rifkin).  However, Apple remained skeptical—as it had been since the initial class certification stage—that Plaintiffs could reliably determine, for example, that one payor appearing in the data as Jon Smith is the same person as another payor who appears as Jonathan Smith, but not the same person as another payor Jon R. Smith.  In July 2024, Apple produced a sample dataset of payor-identifying information, Lazarus Decl. ¶ 13, and, at Plaintiffs' request, the full dataset later that year.  Dkt. 906-2.

While negotiating Apple's production of data, the parties also completed written discovery.  In May 2024, Plaintiffs stated in an interrogatory response that "the Apple devices relevant to this matter are the iPhone, iPad . . . and iPod touch."  Ex. 2 (Plaintiffs' Responses and Objections to Apple's 1st Set of Interrogatories) at 11.  On November 26, 2024, Plaintiffs amended this response to remove any reference to iPod touch.  Dkt. 951-5, 5-6.  Plaintiffs did not move to amend their class definition at that time.  Nor did they do so in January 2025 when Apple wrote to determine whether Plaintiffs were continuing to pursue claims related to the iPod touch.  *See* Dkt. 951-6.  In fact, Plaintiffs' response to this letter did not even mention iPod purchases, much less any plans to define them out of the class.  Ex. 3 (Feb. 12, 2025 R. Byrd Letter to E. Lazarus).

On March 7, 2025, Plaintiffs served ten opening expert reports.  Prof. McFadden still describes his model at a conceptual level, while leaving its further implementation to Dr. Minjae Song, with whom he "conferred regularly."  Ex. 9 (Song Rep.) ¶¶ 4, 9; Ex. 4 (McFadden Rep.) ¶ 4.  Dr. Song purports to run the model on all app genres, identifying harmed and unharmed class members as well as classwide damages.  Ex. 9 (Song Rep.) ¶ 9.  But all of his analyses omit iPod touch transactions, Declaration of Jeffrey Prince ("Prince Decl.") ¶ 6, because he was "instructed by [class] counsel" to exclude them.  Ex. 9 (Song Rep.) at 2 n.3, 38 n.116.  According to Dr. Song, there remain between 9.69

million and 10.99 million unharmed class members (less all iPod touch transactions and applying the original $10 spending cutoff).  *Id.* Fig. 13.  And this number rises to between 9.82 million and 11.14 million unharmed class members when applying Plaintiffs' modified $10 spending cutoff.  Prince Decl. Ex. 4; Ex. 9 (Song Rep.) Figs. 24 & 25.

Dr. Song also purports to calculate harm to individual payors, not accounts.  *Id.* ¶ 11.  What connects app transactions with payors is a black-box "methodology" from JND Legal Administration. *Id.* ¶ 70.  In January, JND took the data Apple provided and generated what they said was a deduplicated list of 246 million payor IDs, which they then provided to Apple.  Dkt. 952-2 ¶ 18.  But at that point, neither JND nor Plaintiffs provided Apple with any algorithms, computer code, or other data detailing how they developed that list.  Lazarus Decl. ¶ 14.  Dr. Song now attaches to his report a six-page "declaration" from Darryl Thompson, Chief Operating and Information Officer at JND, purporting to do so.  Ex. 9 (Song Rep.); Dkt. 953-4.  But Mr. Thompson's declaration provides no concrete information on what he did, describing only in conclusory terms that he ████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ███████████████████ Plaintiffs did not provide Apple with any of this ████████ or any other materials Mr. Thompson relied upon as required by the Court's order on expert discovery.  *See* Dkt. 201; Lazarus Decl. ¶ 19.

Plaintiffs now concede that Mr. Thompson should be considered an expert even though they failed to properly disclose him as such or serve his required backup.  *See* Dkt. 201; Lazarus Decl. ¶¶ 16-19.  Plaintiffs did not provide a formal report until April 16, 2025—40 days after the opening expert report deadline and after filing the present motion.  Lazarus Decl. ¶ 18 & Ex. 11 (Supplemental Report of Darryl Thompson (sealed)).  And they still have not produced the programs, data, or algorithms on which Mr. Thompson relied.  Lazarus Decl. ¶ 19.  Instead, after repeated inquiries from Apple and 28 days after the deadline to produce expert backups, Plaintiffs declared that Mr. Thompson's analysis is proprietary source code that can be reviewed only in person on JND's air-gapped computer at their offices in Seattle.  Exs. 10, 12-14 (Mar. 28, 2025 E. Lazarus Letter to M. Rifkin *et al.*; Apr. 7, 2025 E. Lazarus Letter to M. Rifkin *et al.*; Apr. 8, 2025 K. Wood Letter to E. Lazarus; Apr. 14, 2025 E. Lazarus Letter to M. Rifkin *et al.*).

The upshot is this: Plaintiffs have engaged in self-help, instructing their experts to use the definition they seek to certify (without iPod transactions) instead of the one the Court in fact certified (with iPod transactions)—putting Apple and its experts in limbo about the scope of claims in this case. And while Plaintiffs should swap accounts for payors in the case generally, that has no bearing on whether to apply an arbitrary $10 cutoff to each of the payor's accounts or to the accounts in aggregate. To the extent Plaintiffs say that their matching of payors to transactions is a new "evidentiary development" necessitating their proposed change, they stake their ability to do that matching reliably on a representation that Mr. Thompson has accomplished what Apple believes to be the "impossible," Dkt. 951 (Plaintiffs' Motion to Modify Class Definition and Approve Notice to the Class, hereafter, "Mot.") at 3—accurately deduplicating individual payors linked to app transactions. That representation is supported only by the *ipse dixit* of an improperly disclosed "expert," who has yet to be deposed and whose critical computer code Plaintiffs have so far shielded from discovery.

### C.    More than a Year After Certification, Plaintiffs Move to Amend the Class Definition and Issue Class Notice

Since the Court certified the class, more than a year passed without class notice. Only after prompting from Apple did Plaintiffs circulate a draft class notice on February 28, 2025. Lazarus Decl. ¶ 21, Ex. 15. Apple returned comments and proposed revisions on March 17, 2025, including a request that the notice conform to the class definition certified by the Court. Lazarus Decl. ¶ 23, Ex. 16. On the same day, Apple requested that Plaintiffs provide Apple with the payor IDs of those individuals that Plaintiffs contend meet the relevant class definition so that Apple could work on identifying relevant email contact information for those individuals. Ex. 16. For two weeks, Plaintiffs did neither. On March 31, 2025, Apple followed up and further requested the Apple IDs for the accounts that Plaintiffs contend trigger class membership—information Apple needs to identify the correct email addresses for notice purposes. *Id.* The parties met and conferred on April 7, 2025, at which point Plaintiffs informed Apple for the first time—halfway through expert discovery and only four months before the dispositive briefing deadline—that they intended to move the Court to redefine the class. Lazarus Decl. ¶ 29.

Plaintiffs then filed this motion seeking two changes to the class definition. *See* Mot. at 3-4. Plaintiffs claim the first modification—removing iPod touch transactions—is warranted because one

Gibson, Dunn & Crutcher LLP

of their new economists, Prof. Stiglitz, has concluded that Apple "lacks market power in the relevant market for portable music devices in which it sells iPod touch devices." Mot. at 6.  But Prof. Stiglitz's only mention of the iPod touch across his 187-page expert report is a footnote that notes that he (like Dr. Song) was "instructed by counsel" to ignore it for purposes of his analyses.  Ex. 5 (Stiglitz Rep.) at 5 n.3.  As for the second change—applying the $10 cutoff by total payor transactions—Plaintiffs claim it is warranted now that they have "successfully determined which Apple IDs correspond to which payor." Mot. at 9.  As an initial matter, it is incorrect that they matched Apple IDs to payors: A single Apple ID account can have multiple payors.  For example, a college student's transactions might be paid for on Mom's credit card, and then Dad's, and then the student's own.  What is necessary for calculating purported injury is matching payors to transactions, but as discussed below, Plaintiffs' matching work has no bearing on which arbitrary $10 cutoff to apply.

Meanwhile, Plaintiffs' proposed changes are not "in line with the Court's expectation that Plaintiffs would minimize" the presence of uninjured class members.  Mot. at 11.  Even as redefined, the class still contains as many as 11.14 million uninjured payors—a number even greater than the 10.28 million uninjured accounts that "concerned" the Court previously.  Prince Decl. Ex. 4; *accord* Ex. 9 (Song Rep.) Figs 24-25; Dkt. 789 at 26.  The number of unharmed class members would be even larger if iPod transactions were included.  Prince Decl. Ex. 2 (at least 11.61 million unharmed with iPod touch transactions compared to 9.69 million without).  Nor are the differences in the "class composition" "immaterial[]."  Mot. at 10.  Plaintiffs assert that removing iPod transactions alone cuts over 4 million people out of their class, but no evidence substantiates that figure.  Calculations by Apple's experts put the number even higher, at over 6 million people—including more than 4 million individuals Plaintiffs' model says were harmed.  Prince Decl. ¶ 7.[2]  And, this change swings *hundreds of thousands* of class members from harmed to unharmed or vice versa.  *Id.* ¶ 12 & Ex. 3.  Applying the $10 cutoff, meanwhile, adds over 500,000 new people to the class, more than 100,000 of whom are uninjured.  Prince Decl. Ex. 4.

---

[2] Apple has not been able to determine the reason for this significant discrepancy as Plaintiffs provide no analysis supporting Dr. Song's purported 4.4 million figure, which is not included in Dr. Song's expert report and is merely listed in an attorney declaration submitted with Plaintiffs' motion. *See* Byrd Decl. ¶ 5.

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

### III.     ARGUMENT

Plaintiffs ask the Court to purge iPod transactions from the case and change the $10 cutoff Plaintiffs themselves crafted.  These "modifications" are substantial, as they would expel 6 million existing class members while adding 500,000 new ones (including more than 100,000 that Plaintiffs admit are uninjured).  Prince Decl. ¶ 7 & Ex. 4.  They then want the Court to greenlight a class notice that contains misleading information, direct it to millions more people who all agree are not even in the class, and compel Apple to facilitate all this on a breakneck schedule born of Plaintiffs' own delay.  These requests are improper, unjustified, and prejudicial.  They should be denied.

### A.     Plaintiffs' Request to Materially Modify the Class Should Be Denied

A court may "alter[] or amend[]" an order granting class certification "before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  Because Plaintiffs bear the burden in certifying a class, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 664 (9th Cir. 2022) (en banc), they must justify their request to modify the class definition, *Abante Rooter & Plumbing*, 2017 WL 4073792, at *2, and demonstrate the new definition satisfies Rule 23's prerequisites, *Maldonado v. Apple Inc.*, 2021 WL 134579, at *2 (N.D. Cal. Jan. 14, 2021).  Plaintiffs can do neither here.  Nor do they demonstrate modification will not prejudice Apple.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3268649, at *4 (N.D. Cal. July 28, 2011) (denying request to modify class definition that would prejudice defendants).

### 1.     Plaintiffs Do Not Provide a Sufficient Basis for Their Proposed Changes

Plaintiffs ask the Court to make extraordinary changes that would alter the class's composition by millions of people.  What should follow is an equally extraordinary justification.  *See Abante Rooter & Plumbing*, 2017 WL 4073792, at *2 (recognizing that plaintiffs must offer "a sufficient basis for modifying the class definition[]" for the court to exercise its "discretion" to do so).  Plaintiffs have provided no such justification.

Start with Plaintiffs' request to exclude iPod touch transactions.  Plaintiffs ask the Court to exclude up to 6.2 million current class members based on their representation that Prof. Stiglitz "concluded that, unlike the foremarkets for smartphones and tablets, Apple lacks market power in the relevant market for portable music devices in which it sells iPod [t]ouch devices." Mot. at 6. But Prof.

Gibson, Dunn & Crutcher LLP

8

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

1    Stiglitz's report contains no such analysis or conclusion.  His 187-page report mentions the iPod touch

2    just once: He says Plaintiffs' counsel "instructed" him "to treat iPhones and iPads, but not the iPod

3    touch, as iOS devices."  Ex. 5 (Stiglitz Rep.) at ¶ 18 n.3.  That refrain is found elsewhere in Plaintiffs'

4    experts' reports.  Ex. 9 (Song Rep.) at ¶ 7 n.3; Ex. 4 (McFadden Rep.) at ¶ 1 n.2.  But nothing supports

5    Plaintiffs' assertion that Robert Pepper, Stephen Schwartz, Edward Hayter, and Edward Lawrence

6    "determined that it would be in the best interest of the Class as a whole" to cut loose iPod transactions

7    from their class.  Mot. at 6.

8          Other evidence belies Plaintiffs' explanation.  For one thing, Plaintiffs served an amended

9    interrogatory response in November 2024 purporting to drop iPods from their definition of the relevant

10   market.  Dkt. 951-5 at 6.  Setting aside that Plaintiffs never disclosed their intention to modify the class

11   definition (*see infra* Section II.C), this suggests Plaintiffs' plan was in the offing long before Prof.

12   Stiglitz finalized his opinions.  For another thing, Plaintiffs' explanation doesn't add up.  They claim it

13   will be harder to win a case involving an alleged foremarket in which Apple lacks power, Mot. at 6,

14   but they have long argued that competition in the alleged foremarkets (including for iPod touch) has

15   no constraining force on Apple's conduct in the alleged relevant aftermarket, *see* Dkt. 229 ¶ 74.

16   Plaintiffs' reliance on Prof. Stiglitz is a pretext for artificially cutting down the number of uninjured

17   class members, which Prof. Prince finds would increase by a full percentage point (almost 2 million

18   people) if iPod touch transactions are included.  Prince Decl. Ex. 2.

19         Plaintiffs also fail to justify their second change: Altering the $10 cutoff so that it applies to

20   total payor spending, rather than a payor's spending on a single account.  In Plaintiffs' motion, this

21   proposed change is premised entirely on Mr. Thompson's asserted ability to reliably and accurately

22   deduplicate payor records to identify unique payors.  Mot. at 8; Dkt. 953-4 ¶ 10.  Plaintiffs say the

23   change is necessary because they claim to have "successfully determined which Apple IDs correspond

24   to which payor."  Mot. at 9.  Not true.  Plaintiffs are not even accurate in describing what they claim to

25   have done.  Since a single Apple ID account can have multiple payors, and a single payor can pay on

26   multiple accounts, there is no clean matching between Apple ID accounts and payors.  The question

27   for measuring purported injury is not matching payors to accounts but *who paid for each transaction*.

28   Both sides agree that payors—those who actually paid for iOS app content—are the ones who would

Gibson, Dunn &
Crutcher LLP

9
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

1   suffer any potential harm from Apple's alleged conduct, even if the content is consumed by someone

2   else. *See* Mot. at 8-9. Accordingly, Plaintiffs would need to connect payors to transactions under any

3   class definition. But neither that matching nor the related deduplication of payor records has any

4   bearing on which arbitrary $10 cutoff to apply (if any). Whether Mr. Thompson succeeded or not in

5   deduplicating payor records has no impact on whether the class should include only individuals who

6   spent more than $10 in one account versus several accounts.

7          But even if Mr. Thompson's deduplication effort were somehow relevant to formulating the

8   cutoff, Plaintiffs have deprived Apple of the ability to assess, much less test, that effort. First, Plaintiffs

9   left Mr. Thompson off their list of disclosed experts and produced none of the required information to

10  show how he did his work. Plaintiffs then waited until Apple had sent a letter asking for that

11  information before they disclosed Mr. Thompson as an expert, and they waited until Apple had sent a

12  second letter repeating its request before they asserted that his methods are proprietary source code that

13  can be reviewed only at JND's office in Seattle. Lazarus Dec. ¶ 20; Ex. 12 (Mar. 28, 2025 E. Lazarus

14  Ltr. to M. Rifkin *et al.*); Ex. 13 (Apr. 7, 2025 E. Lazarus Ltr. to M. Rifkin *et al.*); Ex. 10 (Apr. 8, 2025

15  K. Wood Ltr. to E. Lazarus) at 2. Indeed, because Plaintiffs have deprived Apple of the ability to test

16  or even review Mr. Thompson's opinions (*see* Lazarus Decl. ¶¶ 17-20), the Court could strike his

17  evidence altogether, Fed. R. Civ. P. 37(c)(1), and at a minimum should not credit his assertions as the

18  "product of reliable principles and methods" (Fed. R. Evid. 702), as expert testimony must be "[i]n a

19  class proceeding." *Olean*, 31 F.4th at 665 n.7; *see also Mueller v. CBS, Inc.*, 200 F.R.D. 242, 245

20  (W.D. Pa. 2001) (rejecting reliance on expert opinion where "[d]efendant ha[d] not yet deposed the

21  statistical experts on whose analyses Plaintiffs rely almost exclusively in their arguments").

22         For these reasons, this case is nothing like the lone case Plaintiffs cite. *See Andrews v. Plains

23  All Am. Pipeline, L.P.*, 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019). In *Andrews*, fishermen brought

24  a class action arising out of a 2015 oil spill. *Id.* at *1. The Court certified a class based on the then-

25  known "areas affected by the oil spill." *Id.* at *2. But after "newly-discovered evidence" came to light,

26  the plaintiffs' experts were able to more accurately define the areas affected by the spill. *Id.* at *6. The

27  plaintiffs therefore sought to modify the class definition to ensure it "correspond[ed] to the area

28  impacted by the spill" and enlarge the class to include all individuals "affected by the same allegedly

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

1    illegal conduct." *Id.* at *6.  This case is the opposite: Plaintiffs identify no new evidence to justify their

2    modifications, and their motion seeks to eliminate from the class millions of individuals they contend

3    were harmed by Apple's alleged conduct.

4          This Court has denied a request to modify class definitions with similar flaws.  In *Abante Rooter*

5    *and Plumbing*, the Court refused to "eliminate individuals from [three] proposed classes" without a

6    "sufficient basis" for doing so.  2017 WL 4073792, at *2.  There, like here, the individuals who would

7    be defined out of the class had "claims against defendants which [did not] differ in any way from those

8    of other class members."  *Id.*  Modification therefore would have "improperly and arbitrarily exclude[d]

9    individuals whose . . . claims against defendants [were] substantially similar to those of other class

10   members" and also would have "deprive[d] defendants of the benefit of a 'fair and efficient

11   adjudication of the controversy.'"  *Id.* at *2-3 (quoting Fed. R. Civ. P. 23(b)(3)).  So too here.  Plaintiffs

12   seek to exclude individuals who Plaintiffs have maintained for years have meritorious antitrust claims

13   under their theory of the case.  Plaintiffs' proposed change would deprive Apple of the fair and efficient

14   adjudication of this controversy by carving off an enormous group of potential claimants 14 years into

15   the litigation.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448,

16   466 (N.D. Ohio 2014) (refusing to modify class to exclude certain products subject to the same alleged

17   defect and rejecting plaintiffs' arguments that those machines had "not [been] a focus" of plaintiffs'

18   experts and so "class definition and trial might [have been] easier if these models [were] excluded").

19                    **2.       Plaintiffs' Proposed Class Does Not Meet Rule 23's Requirements**

20         Even if Plaintiffs had a legitimate reason for seeking to redefine the class now, the Court should

21   reject their motion because the proposed class does not meet the requirements for class certification

22   under Federal Rule of Civil Procedure 23.  Plaintiffs must satisfy Rule 23(b)(3)'s heightened burden

23   of showing that any common questions predominate over individual ones, *Comcast Corp. v. Behrend*,

24   569 U.S. 27, 33 (2013), and that a class action is the superior method of adjudication, *Zinser v. Accufix*

25   *Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *op. amended on denial of reh'g*, 273 F.3d 1266

26   (9th Cir. 2001).  And under Rule 23(a), Plaintiffs must prove by a preponderance of the evidence,

27   among other requirements, the adequacy of representation.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

28   147, 161 (1982).  Plaintiffs' proposed changes confirm that individualized questions will predominate

Gibson, Dunn &
Crutcher LLP

11
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

1    over common ones, that a class action is not the superior method of adjudicating the claims here, and

2    that they are inadequate representatives.

3        **a. Predominance.**  Injury is an "essential element[]" of every antitrust claim, *Olean*, 31 F.4th

4    at 666, and "[e]very class member must have Article III standing in order to recover individual

5    damages," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  Apple maintains that a class with

6    any, and certainly more than a *de minimis* number of, uninjured class members cannot be certified

7    under Rule 23 or Article III.   Nor can a class be certified when there is substantial uncertainty about

8    how many class members are uninjured based on the notion that injury issues can be sorted out at later

9    stages of the litigation.  And even under *Olean*, courts must engage in a "rigorous analysis" to determine

10   whether individualized questions, including those regarding class members' injury, "will overwhelm

11   common ones and render class certification inappropriate."  31 F.4th at 664, 669.  Here, the Court was

12   expressly "concerned" that the class as currently defined would have (at least) 10,283,035 million

13   uninjured accounts but found it could not "'flatly reject' class certification," crediting Plaintiffs'

14   representation that this "number will be reduced" after Plaintiffs ran their model "*before trial* with the

15   full transactions data for the entire App Store." Dkt. 789 at 24, 26-27 & n.17 (emphasis in original).

16   Plaintiffs' promises didn't pan out.   And their proposed changes—which would create a class

17   containing 185.9 million members, 9.82–11.14 million of whom are uninjured, Prince Decl. Ex. 4—

18   confirm they cannot separate uninjured class members from injured ones without individualized

19   inquiries predominating.  *See Olean*, 31 F.4th at 669 & n.13.

20       Faced with a class that has more uninjured members than they predicted, Plaintiffs first seek to

21   cut out as many as 6.2 million current class members who bought apps or in-app content for iPod

22   touches.  But iPod users are not a "fortuitously non-injured subset of class members" that Plaintiffs

23   now seek to "winnow out."  *Olean*, 31 F.4th at 669.  Prof. Prince calculates that removing iPod

24   transactions "excludes ███████████████████ that, according to Plaintiffs' theory of

25   liability, were affected by Apple's allegedly anticompetitive conduct."  Prince Decl. ¶ 8.  Indeed,

26   Plaintiffs claim far more of the to-be-excluded individuals are harmed (4,225,126) than those they say

27   are not (1,970,818).  *Id.* ¶ 10.  Far from winnowing, this is a baby-with-the-bathwater change—one

28   transparently designed to bring down the percentage of unharmed class members to less than the 6%

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

level that "constitutes the outer limit of a *de minimis* number." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019); *see* Prince Decl. Ex. 2.  Worse, it leads hundreds of thousands of individuals still in the class to flip between injured and uninjured: 346,000 current class members deemed injured would become uninjured, and 296,000 individuals who are now supposedly uninjured would become allegedly injured once those transactions are excluded.  Prince Decl. Ex. 3.  Plaintiffs' proposed revision to the $10 cutoff also changes the class's composition without fixing any of its problems: This proposed change, Prof. Prince finds, would add 513,000 new members to the existing certified class, including up to 156,000 uninjured individuals.  Prince Decl. Ex. 4.

All of this underscores the fundamental problems with Plaintiffs' model as well as their inability, with or without the proposed changes to the class definition, to prove classwide injury with reliable common proof.  *See Olean*, 31 F.4th at 666.  When the Court certified a class, it ordered Plaintiffs to report back "whether the model can successfully ascertain the number of uninjured class members and limit them."  Dkt. 789 at 27-28.  Plaintiffs' motion proves that it cannot do so.  While Plaintiffs emphasize that excluding iPod touch devices reduces the percentage of uninjured class members, *see* Mot. at 11, "raw numbers" are just as important, *Rail Freight*, 934 F.3d at 625, and the *total number* of uninjured class members in the redefined class is virtually unchanged if not greater than before.  Prince Decl. Ex. 4.

Plaintiffs' experts now argue that the 10-11 million "uninjured" payors in the revised class "may still be harmed" because Apple's conduct allegedly reduced their choice of app channels.  Ex. 9 (Song Rep.) ¶¶ 47, 81; *accord* Stiglitz ¶ 100.  These alleged non-monetary injuries are irrelevant because the class was certified only for monetary relief; regardless, "reduced choice" alone is not antitrust injury (particularly if plaintiffs pay lower prices than they otherwise would).  *Brantley v. NBC Universal, Inc.*, 675 F. 3d 1192, 1201-02 (9th Cir 2002).  But in any event, Plaintiffs' new attempt to skirt the issue of uninjured class members only confirms that individual questions will predominate.  Fed. R. Civ. P. 23(b)(3).  As it turns out, one of these 'uninjured-but-not-unharmed' individuals is named plaintiff Edward Hayter.  Prince Decl. ¶ 19.  But while Mr. Hayter says ███████████████ ██████ *see* Ex. 19 (Hayter Dep.) at 158:22-160:13, another named plaintiff, Edward Lawrence, ████████████ *see* Ex. 20 (Lawrence Dep.) at 71:25-75:12.  Around half of respondents in a consumer

Gibson, Dunn &
Crutcher LLP

13
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

survey indicated they would not use an alternative app store even if given the option.  Ex. 7 (Simonson Rep.) ¶ 92, 103.  Without knowing which camp each individual falls into, one cannot begin to assess whether any alleged reduction in choice constitutes actual antitrust injury to him or her.  *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 46-47 (1st Cir. 2018) (reversing class certification because class included members who were not injured when, due to brand loyalty, they would not have bought from competitor).

The only way to decide "the injury status" of the 11 million people like Mr. Hayter in Plaintiffs' proposed class would be "individualized questions"—a process that "will overwhelm" the proceedings.  *Olean*, 31 F.4th at 668-69; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997) (no predominance based on "shared experience of asbestos exposure" given "the greater number of questions peculiar to the several categories of class members, and to individuals within each category"); *Rail Freight*, 934 F.3d at 625 (denying class certification when model left thousands uninjured and plaintiffs proposed no method "short of full-blown, individual trials" to "segregate the uninjured from the truly injured"); *Asacol*, 907 F.3d at 53-54 (similar).  Plaintiffs' request to modify their proposed class definition *a second time* thus confirms the fatal predominance problem with their class: There is no common evidence that can "winnow out" millions of uninjured class members no matter how it is defined.  *Olean*, 31 F.4th at 669; *Ruiz Torres*, 835 F.3d at 1137.

These problems are particularly acute with a decision looming in *LabCorp v. Davis*, No. 24-304 (U.S.).  The Supreme Court has taken up the Ninth Circuit's standard for certifying classes including uninjured individuals to answer whether *any* (and, if so, more than a *de minimis* number) of uninjured individuals can be part of a certified class.  *LabCorp. v. Davis*, 220 L. Ed. 2d 428 (Jan. 24, 2025).  As other courts have observed, the issue presented there—also front and center here—goes "to the existence of judicial authority" and therefore is "not to be ignored."  *Mr. Dee's*, 127 F.4th at 934.  At a minimum, the Court should not exacerbate the problem in this case by allowing Plaintiffs to add more than 100,000 concededly uninjured class members to the certified class.

**b. Superiority.**  Plaintiffs' proposed changes also underscore that their class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs ask to remove iPod transactions and thereby exclude as many as 6 million

Gibson, Dunn &
Crutcher LLP

14
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

individuals based on line-drawing untethered from Plaintiffs' allegations or Apple's alleged conduct. Prince Decl. ¶¶ 7, 10. Indeed, Plaintiffs have long alleged that the iPod touch is subject to Apple's "same software restraints" and "exclusive control" as the iPhone. Dkt. 229 (Third Am. Compl.) ¶¶ 8, 36. More than ███████ in transactions affected by Apple's commission took place on iPod touch devices, including around one third of transactions in the App Store's early years. Prince Decl. Ex. 1. Granting Plaintiffs' motion would therefore expose Apple to further litigation from these 6 million individuals—more than 4 million of whom Plaintiffs' model says were injured. *Id.* ¶ 10.

As the Fourth Circuit recently explained when rejecting a class defined around similar arbitrary cutoffs, "excising such a large share of potential claimants from the proposed class raises a superiority problem" by exposing Apple to a "trickle of individual lawsuits" that "impair[s] the efficiency goal which is a key purpose of the class action mechanism." *Mr. Dee's*, 127 F.4th at 932. In that case, plaintiffs used an economic model to measure antitrust damages but applied "date and volume cutoffs" to class membership that would have excluded roughly 2,000 potential class members, 39% of whom were allegedly injured. *Id.* at 929, 932. The Fourth Circuit affirmed denial of class certification because the definition bore "little relationship to the defendants' conduct," left out thousands with viable claims, and was therefore "untethered from the purpose of employing the class action procedure"—namely, to "redress [an] injury" in an "efficien[t]" manner. *Id.* at 932.

The Fourth Circuit is not alone in rejecting class definitions that "arbitrarily exclude individuals" whose "claims . . . are substantially similar to those of other class members." *Abante Rooter & Plumbing*, 2017 WL 4073792, at *2 (Gonzalez Rogers, J.); *see also*, *e.g.*, *Guevarra v. Progressive Fin. Servs., Inc.*, 497 F. Supp. 2d 1090, 1091 (N.D. Cal. July 31, 2007) (denying certification of class that made "arbitrary distinction between IKEA and non-IKEA creditors and concluding that plaintiff's proposed definition is not 'superior' to other means available under FRCP 23(b)(3)"); *Wenig v. Messerli & Kramer P.A.,* 2013 WL 1176062, at *5-6 (D. Minn. Mar. 21, 2013) (denying certification of class that excluded individuals who "suffered exactly the same overshadowing violation" as the rest of the proposed class); *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 2006 WL 8435096, at *2 (S.D. Fla. Dec. 28, 2006) (denying certification of class that was not "rational and fair" because it did "not rationally distinguish" between two kinds of hospitals).

Gibson, Dunn &
Crutcher LLP

15
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

Plaintiffs' proposed redefinition suffers the exact flaws identified in *Mr. Dee's* and these other cases. It improperly excludes iPod transactions for pretextual reasons that have nothing to do with Apple's conduct, *see supra* 9-10, and thus exposes Apple to a "trickle of individual lawsuits," *Mr. Dee's*, 127 F.4th at 993—or worse, future putative class actions—that undermine the "economies of time, effort, . . . expense" and "uniformity of decision as to persons similarly situated" that Rule 23(b)(3) was designed to promote. *Amchem*, 521 U.S. at 615. This problem is compounded by the fact that Plaintiffs' $10 spending cutoff (however calculated) already excludes *around 40 million potential plaintiffs* with claims identical to those in the class—many of whom are harmed according to Plaintiffs' model.[3] Prince Decl. Ex. 5. *Olean* made clear that class redefinitions must be designed to isolate members who "can rely on the same body of common evidence to establish the common issue." 31 F.4th at 669 n.14. The iPod exclusion, like the $10 cutoff that preceded it, does not qualify. It is another crude, made-for-litigation change engineered so Plaintiffs could claim that the percentage of uninjured accounts reflected in their model was in the single digits, while exposing Apple to piecemeal litigation of claims that it has already spent over 14 years defending.

**c. Adequacy.** Plaintiffs' proposal to exclude claims related to the iPod touch also casts doubt on the named plaintiffs' ability to "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs and their counsel "owe" a "fiduciary responsibility to the class" as it is currently certified. *Staton v. Boeing Co.*, 327 F.3d 939, 960 (9th Cir. 2003); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). That means the named plaintiffs must act in the best interests of the 185 million people they represent—not kick out 6.2 million absent class members with iPod transactions (including 4 million who they claim are injured under their model) for no apparent reason other than to bring the percentage of unharmed class members down by 1%. *See Back Drs. Ltd. v. Metro. Prop & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (class representative has a "fiduciary duty to its fellow class members" and "can't throw away what could be a major component of the class's recovery"). Plaintiffs' willingness to "abandon" the claims of absent class members without

---

[3] At the same time, by the same measure, vast numbers of consumers were unharmed (Prince Decl. Ex. 5) which is highly relevant to whether Apple "undertook anticompetitive conduct in th[e] market sufficient to harm the competitive process as a whole." *Coronavirus Reporter v. Apple Inc.*, 85 F. 4th 948, 957 (9th Cir. 2023).

1   "any real explanation" creates a serious "adequacy problem" under Rule 23(a). *Taison Commc'ns, Inc.*

2   *v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 641 (N.D. Cal. 2015) (denying certification when plaintiffs

3   chose to forego various elements of damages asserted in class action complaint); *see also Wetlzet v.*

4   *CertainTeed Corp.*, 2019 WL 3976204, at *14 (W.D. Wash. Mar. 25, 2019) (similar); *In re Stec Inc.*

5   *Sec. Litig.*, 2012 WL 6965372, at *8-9 (C.D. Cal. Mar. 7, 2012) (similar); *Mays v. Tennessee Valley*

6   *Auth.*, 274 F.R.D. 614, 622-24 (E.D. Tenn. 2011) (similar).  It is all the more troubling when Plaintiffs

7   represent (though not under oath in any declaration that could be tested) that their decision to forego

8   iPod transactions was made on their expert's advice, while that expert says he ignored those

9   transactions at the direction of Plaintiffs' counsel.  *See supra* 6-7; *see also Beck v. Status Game Corp.*,

10  1995 WL 422067, at *6 (S.D.N.Y. July 14, 1995) ("[A] class representative must exercise some control

11  over the litigation in order to check the otherwise unfettered discretion of counsel in prosecuting the

12  suit.") (internal quotations omitted).

13              **3.      Plaintiffs' Proposed Modification and Delay Prejudices Apple**

14          Plaintiffs' shifting class definition creates a moving target for Apple.  Plaintiffs' unexplained

15  delay in moving to modify the class definition, as well as their delay in disclosing key information

16  regarding their experts' analysis, lands this motion in the middle of Apple's attempts to prepare its

17  expert reports and defense.  The uncertainty generated by this motion prejudices those efforts—another

18  recognized reason to refuse to modify a class definition.  *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust*

19  *Litig.*, 2011 WL 3268649, at *4; *Belmont v. BP Am. Prod. Co.*, 2014 WL 12622442, at *3 (D. Wyo.

20  Oct. 16, 2014) (denying motion to amend complaint where plaintiffs delayed 5 months in bringing

21  motion and "the proposed amendments change the class definition to one which not only makes it

22  difficult to determine the specific class definition, but also causes prejudice since Defendant has been

23  preparing for the class certification issue based on the [existing] definition").

24          First, Plaintiffs have unduly delayed in bringing the present motion, forcing Apple to prepare

25  its rebuttal expert materials and defenses unclear on which individuals and claims will remain in the

26  class.  Read in light of the current motion, Plaintiffs' amended interrogatory responses indicate that

27  they decided to drop claims related to iPod touch devices by, at the latest, November 2024. *See* Mot.

28  at 7.  But Plaintiffs ignored a request from Apple to clarify whether they were in fact making this

Gibson, Dunn &
Crutcher LLP

change, *see supra* at 4, and waited at least five months after making this decision, and until after the parties had served opening expert reports, to seek modification of the class definition to exclude these claims. Further, Plaintiffs gave **no** indication of their proposal to change the $10 limit to apply to all of a payor's accounts until April 7, 2025, eight days before filing the present motion. Lazarus Decl. ¶ 29.

Plaintiffs' unexplained delay in bringing the present motion has prejudiced Apple, whose rebuttal expert reports are due June 13, 2025. Apple needs to know how the class is defined to prepare those reports, particularly given the processing time involved in running Plaintiffs' model. Plaintiffs' belated motion thus prejudices Apple's ability to prepare its defense. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (explaining that delay of eight months to file amended complaint was "inexplicable and unjustified"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3268649, at *4 (similar where delay "left without the ability to acquire the information they need to defend themselves"); *Smith v. Seeco, Inc.*, 2016 WL 3541412, at *3 (E.D. Ark. Mar. 11, 2016) (denying request to change class definition because modification "after months of discovery has been conducted and expert disclosures have been submitted" was "unduly prejudicial"); *Town of Lexington v. Pharmacia Corp.*, 2015 WL 1321448, at *5 (D. Mass. Mar. 24, 2015) ("[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."). If Plaintiffs deem their claims unworthy of prosecuting insofar as they arise out of iPod touch transactions (*see supra* 8-9), the proper remedy is not to modify the class definition but to voluntarily dismiss them with prejudice.[4]

Second, with respect to the modification to the $10 cutoff, the prejudice caused by Plaintiffs' last-minute change is compounded by their failure to produce the basic expert disclosures they contend support this modification. To date, Apple has not been able to properly assess and analyze how Plaintiffs' expert Mr. Thompson purportedly deduplicated approximately ███████████ records to

---

[4] *See* Fed. R. Civ. P. 41; *see also Belgada v. Hy's Livery Serv., Inc.*, 2019 WL 2066961, at *1 (D. Conn. May 10, 2019) (allowing party to voluntarily dismiss claims with prejudice where the plaintiff determined those claims "may no longer be viable"). Doing so would diminish uncertainty and mitigate the problem of duplicative individual suits.

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

Gibson, Dunn &
Crutcher LLP

1    identify the 246 million individuals Plaintiffs assert are "potential" class members in this action.  Mr.

2    Thompson's declaration and his supplemental expert report—which Plaintiffs served 40 days after the

3    opening report deadline—contain only vague assertions regarding his process, explaining that he █████

4    █████████████████████████████████████████████████████████ to deduplicate the relevant data.

5    Dkt. 953-4 ¶ 15.   Mr. Thompson's analysis cannot support the class-definition modification that

6    Plaintiffs seek, but, regardless, Plaintiffs have prevented Apple from reviewing how he conducted that

7    analysis.  Plaintiffs did not produce the code or algorithms he used as required on March 11, 2025; nor

8    did they notify Apple that Plaintiffs would seek to restrict Apple's review of Mr. Thompson's work to

9    an air-gapped computer in Mr. Thompson's Seattle office.  Plaintiffs only asserted this limitation after

10   Apple repeatedly reached out to inquire about the missing information.  To date, Apple has not been

11   able to even begin a meaningful evaluation of how Mr. Thompson calculated the 246 million figure

12   that underpins all of Dr. Song's model calculations and analyses.  Further, Plaintiffs have provided no

13   analysis, explanation, or data to support Dr. Song's calculation that exclusion of the iPod touch claims

14   would remove 4.4. million individuals from the class, a figure which differs from Apple's expert's

15   calculations by nearly 2 million individuals.

16          The parties do not have the luxury of time.  A class has already been certified in this case,

17   opening expert reports have been served, expert discovery is set to close on July 7, and dispositive

18   motions are due on August 4, 2025.  Despite the class having been certified over 14 months ago, notice

19   still has not gone out, and Plaintiffs' belated proposed revisions to the class threaten to further delay

20   such notice, raising potential one-way intervention issues.  *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th

21   Cir. 1995) (explaining that the notice requirement of Rule 23(c)(2) "was adopted to prevent 'one-way

22   intervention'—that is, the intervention of a plaintiff in a class action after an adjudication favoring the

23   class had taken place"); *Red Barn Motors, Inc. v. Cox Auto., Inc.*, 2017 WL 11610289, at *2 (S.D. Ind.

24   Aug. 11, 2017) ("At this stage of the case, it is simply not efficient to delay notice.  Class members

25   must have an opportunity to learn about this case and their rights to opt out" and "because of the one-

26   way intervention problem" delay would prevent the court addressing the merits).  Revising the class

27   definition at this juncture prejudices Apple, and Plaintiffs' motion should be denied.

28

Gibson, Dunn &
Crutcher LLP

19
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

**B.     The Court Should Adopt Apple's Proposed Modifications to Plaintiffs' Notice Plan**

Apple agrees with Plaintiffs that the "best notice that is practicable under the circumstances" should be provided to putative class members, Fed. R. Civ. P. 23(c)(2)(B), but that notice (1) must be clear and relate the certified class's claims—not reference injunctive relief claims on which certification was not sought, and (2) should not be sent to individuals who Plaintiffs admit are not part of the current (or proposed redefined) class.  Further, Apple should be provided with adequate time to provide Plaintiffs with putative class member contact information.

**1.     Notice Should Not Refer to Injunctive Relief Because Plaintiffs Did Not Seek Certification of, and the Court Did Not Certify, an Injunctive Class**

Plaintiffs' class claims do not include any request for injunctive relief, but their proposed class notice includes language suggesting otherwise.  *See* Dkt. 951-8 at 5 ("Plaintiffs are seeking . . . to end Apple's control over the method(s) by which iOS Device users can buy iOS apps and in-app content.); Dkt. 951-9 at 1 ("The class action seeks . . . to end Apple's control over where its customers can buy iOS apps or pay for in-app content).  This language should be struck, as Apple proposes.  *See* Exs. 17, 18 (Apple's Proposed Class Notices).

The certified class in this action is a Rule 23(b)(3) class for damages.  *See* Dkt. 789 at 23 ("Plaintiffs once again move for class certification under Rule 23(b)(3)"); Dkt. 443-4 (Class Cert. Mot.) at 11 ("Class actions for money damages proceed under Rule 23(b)(3) . . . ."); Dkt 683 (renewing class cert motion under Rule 23(b)(3)).  Plaintiffs did not request, and the Court did not certify an injunctive class under Rule 23(b)(2), nor does Plaintiffs' class certification motion reference injunctive relief or an injunction.  *Id.*  It is therefore not appropriate to include reference to injunctive claims in the class notice.  *See LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 298 (D.N.M. 2019) (striking "injunctive relief language from the notice unless and until Plaintiff shows that injunctive relief is available under Rule 23(b)(3)" where "Plaintiff's motion to certify did not request certification under Rule 23(b)(2) or use the words 'injunctive relief' or 'injunction").

The purpose of class notice requirement under Rule 23(b)(3) is to provide clear and concise information on the ***class*** claims, so class members can understand how the class action impacts their rights and obligations and make a reasoned decision about whether to participate in the class.  *See* Rule

Gibson, Dunn &
Crutcher LLP

23(c)(2)(B)(iii) (requiring that class notice describe, inter alia, "the class claims, issues, or defenses"); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (holding that no other information need be included in class notice "beyond that specified in Rule 23"); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977) ("The purpose of this notice requirement" is to "present a fair recital of the subject matter of the suit" such that "a judgment will bind all class members who do not opt out."); *see also* Ann. Manual Complex Lit. § 21.311 (4th ed.) (explaining that the purpose of certification notice is to provide "information a class member reasonably would need to make an informed judgment about whether to remain in the class").

Even if Plaintiffs' counsel assert that their proposed language is appropriate because the individual named plaintiffs still have live claims for injunctive relief, including information about their individual injunctive relief claims in the class notice will not serve the purposes of Rule 23(b)(3)'s notice requirement and will only confuse class members. Notice recipients are likely to assume (wrongly) that the injunctive relief mentioned in the notice relates to class claims, when it does not— and thus they may be misled into believing that their decision on whether to participate, or opt out, bears on this potential relief. Courts recognize that it is appropriate to exclude unnecessary information from a class notice that may serve to confuse class members. *See Wit v. United Behav. Health*, 2017 WL 930776, at *4 (N.D. Cal. Mar. 9, 2017) (rejecting defendant's attempt to include language in class notice to "identify the specific remedies sought by Plaintiffs for each of Plaintiffs' claims" in favor of more concise description less likely to confuse class members). The Court should therefore strike the relevant injunctive relief language from the proposed class notice, as Apple proposes. *See* Exs. 17, 18 (Apple's Proposed Class Notices).

### 2.    Individual Email Notice Should Be Limited To Emails To Identified Class Members

Plaintiffs' proposal regarding individual email notice is vastly overbroad and should be rejected in favor of Apple's more targeted proposal. Plaintiffs propose sending individual email notice to 246 million people, which represents every individual whom Plaintiffs' expert Mr. Thompson has purportedly identified with positive spend on iOS apps or in-app purchases. *See* Dkt. 953-4 at 5. Of course, Plaintiffs have limited their class definition to accounts or, in the newly concocted iteration,

Gibson, Dunn &
Crutcher LLP

21

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

1   payors with more than $10 of spending—a group of either 185.4 or 185.9 million individuals that

2   Plaintiffs' expert Dr. Song claims to have identified.  *See* Mot. at 10.  Plaintiffs offer no explanation as

3   to why individual email notice should be sent to 57.7 million people—a population roughly the size of

4   Italy—that Plaintiffs have determined are not in the class.  An individualized notice plan is overbroad,

5   and should be rejected, where it includes individuals who are neither in the class, nor in a position to

6   notify a member of the class.  *See*, *e.g.*, *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245, at *4-6 (S.D.

7   Cal. Nov. 5, 2013) (rejecting as "overbroad, overinclusive" proposal that email notice be sent to all of

8   Ikea's customers for whom Ikea had email information, where class members were a subset); *Jermyn*

9   *v. Best Buy Stores*, 2010 WL 5187746, at *7 (S.D.N.Y. Dec. 6, 2010) (rejecting proposal to send email

10  notice to all of Best Buy's New York customers where there was "no link between customers who

11  shared their email addresses with Best Buy and customers who were denied a price match").  Here,

12  providing individual email notice to the roughly 57.7 million people who do not meet Plaintiffs' class

13  definition—directing that their "rights may be affected by an ongoing class action"— is unnecessary

14  and likely to create confusion.

15      Courts also recognize that in the context of class notice—or class action discovery—individuals

16  have a privacy right in their contact information.  *See*, *e.g.*, *Amaraut v. Sprint/United Mgmt. Co.*, 2020

17  WL 8024170, at *7 (N.D. Cal. Jan. 14, 2020) ("the putative class and collective have a legally protected

18  privacy interest in their contact information").  "When the constitutional right of privacy is involved,

19  the party seeking discovery must demonstrate a compelling need for discovery, and that compelling

20  need must be so strong as to outweigh the privacy right when these two competing interests are

21  carefully balanced."  *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (internal quotations

22  omitted).  Here, Plaintiffs cannot show a compelling need for the private contact information of

23  individuals they have determined are not potential class members, and disclosure of this information

24  for class notice purposes is improper for this reason as well.

25      Apple proposes a more targeted notice plan under which email notice would be sent only to

26  email addresses affiliated with the individuals whom, according to Plaintiffs' experts, meet the certified

27  class definition.  Specifically, within 30 days of receiving the necessary information from Plaintiffs,

28  Apple would provide Plaintiffs with the email addresses associated with accounts with payments by

Gibson, Dunn &
Crutcher LLP

22
DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR

the 185.4 or 185.9 million individuals Plaintiffs contend meet the class definition, however the class ends up being defined.[5]  This proposal is in line with other cases in which courts have approved email notice plans that involve sending email notice to class members, or individuals in the best position possible to identify class members, such as other family members on a shared plan.  *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7042871, at *4 (N.D. Cal. Dec. 1, 2020) (approving plan to send email notice to accounts likely to belong to class members or individuals "in the best position possible to identify" the relevant class member); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) (approving notice plan that would provide individual notice to phone plan "subscribers" who if not themselves the relevant phone user, "easily could, generally identify" the other users on their plan).  Because of the possibility that email notice will be sent to persons who are not in the class themselves but are affiliated with class members, Apple also proposes adding language to the notice clarifying for recipients that "you or someone you know" may be a member of the class.  *See* Exs. 17, 18 (Apple's proposed Class Notice).

Further, Plaintiffs' request that the Court order Apple to produce the requested email addresses within 10 days of an order on this motion is not reasonable or practicable.  To identify a relevant list of emails to provide to Plaintiffs' administrator, Apple will need to take the list of relevant Apple IDs that Plaintiffs provide and conduct a mapping exercise to connect those IDs to affiliated email addresses.  Lazarus Decl. ¶ 25.  Apple will work diligently to complete the process as soon as possible, but given the volume of data at issue—hundreds of millions of records—this mapping process alone may take weeks from the time Apple receives the IDs from Plaintiffs.  Lazarus Decl. ¶ 26.  To the extent that Plaintiffs have left insufficient time to complete class notice prior to dispositive motion briefing, thus threatening one-way intervention issues, this is a result of Plaintiffs' own delay and is in spite of Apple's efforts to facilitate the class notice process.

Accordingly, Apple requests that the Court allow Apple 30 days—from the date of the Court's order on this motion, or the date Apple receives the relevant ID information from Plaintiffs, whichever is later—to produce the relevant list of email addresses to Plaintiffs' administrator.  This deadline is

---

[5] For example, if a parent pays for purchases on her own account as well as a child's account, Apple would provide the email addresses associated with both accounts.

1  reasonable in light of the process Apple will need to undertake to prepare the relevant list and is in line

2  with common practice. *See*, *e.g.*, *Cruz v. Dollar Tree Stores, Inc.*, 2009 WL 1974404, at *3 (N.D. Cal.

3  July 2, 2009) (ordering defendant to produce class member contact information within 45 days of

4  order); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 544 (N.D. Cal. 2007) (ordering defendant

5  to produce class member contact information within 30 days of order).

6  ## IV.    CONCLUSION

7  The Court should deny Plaintiffs' motion to amend the class definition and reject their class

8  notice plan in favor of the plan proposed by Apple.

9  DATED:  April 29, 2025                **GIBSON, DUNN & CRUTCHER LLP**

10                                        By:   */s/ Cynthia E. Richman*
                                                CYNTHIA E. RICHMAN

12                                        Cynthia E. Richman (*pro hac vice*)
                                          crichman@gibsondunn.com
13                                        Harry R. S. Phillips (*pro hac vice*)
                                          hphillips@gibsondunn.com
14                                        1700 M Street, N.W.
                                          Washington, D.C. 20036-4504
15                                        Telephone:  202.955.8234
                                          Facsimile:  202.530.9691

16                                        Theodore J. Boutrous Jr. (132099)
17                                        tboutrous@gibsondunn.com
                                          Daniel G. Swanson (116556)
18                                        dswanson@gibsondunn.com
                                          **GIBSON, DUNN & CRUTCHER LLP**
19                                        333 South Grand Avenue
                                          Los Angeles, CA 90071-3197
20                                        Telephone:  213.229.7000
                                          Facsimile:  213.229.7520

21                                        Caeli A. Higney (268644)
22                                        chigney@gibsondunn.com
                                          Julian W. Kleinbrodt (302085)
23                                        jkleinbrodt@gibsondunn.com
                                          Dana L. Craig (251865)
24                                        dcraig@gibsondunn.com
                                          Eli M. Lazarus (284082)
25                                        elazarus@gibsondunn.com
                                          **GIBSON, DUNN & CRUTCHER LLP**
26                                        One Embarcadero Center, Suite 2600
                                          San Francisco, CA 94111-3715
27                                        Telephone:  415.393.8200
                                          Facsimile:  415.393.8306

28                                        *Attorneys for Defendant Apple Inc.*

Gibson, Dunn &
Crutcher LLP

24

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND
APPROVE NOTICE TO THE CLASS, 4:11-CV-06714-YGR