UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR<br><br>**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS** |

On April 15, 2025, Plaintiffs filed a Motion to Modify the Class Definition and Approve Notice to the Class (the "Motion"). *See* Dkt. 951 ("Mot."). On April 29, 2025, Apple opposed Plaintiffs' Motion to Modify the Class Definition and requested modifications to Plaintiffs' proposed class notice and the class notice plan. Having considered the parties briefing and supporting papers, the Court **DENIES** Plaintiffs' Motion to Modify the Class Definition. The Court **APPROVES** Apple's modified notice plan.

**I.  Motion to Modify Class Definition**

Plaintiffs request modification of the Court's February 2, 2024 Order Granting Plaintiffs' Motion for Class Certification. Dkt. 789 ("Class Certification Order"). That Order certified the following class:

> All persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant Apple Inc. ("Apple"), or who paid Apple for one or more in-app purchases, including, but not limited to, any subscription purchase, for use on an iOS Device at any time since July 10, 2008 (the "Class Period"). The Class is

Gibson, Dunn & Crutcher LLP

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

limited to those persons who paid more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases from any one Apple ID account.

Dkt. 789 at 2. Plaintiffs' motion seeks to modify the class in two ways: (1) to limit the class only to individuals who paid for iOS applications and in-app purchases on iPhone or iPad devices, excluding individuals who purchased only on iPod touch devices; and (2) to change the $10 spending cutoff to limit the class to individuals who paid more than $10 in total to Apple for iOS applications and in-app purchases, rather that individuals who paid more than $10 from any one Apple ID account.

A court may "alter[] or amend[]" an order granting class certification "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Because Plaintiffs bear the burden in certifying a class, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014)), they must justify their request to modify the class definition, *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 4073792, at *2 (N.D. Cal. Sept. 14, 2017), and demonstrate the new definition satisfies Rule 23's prerequisites, *Maldonado v. Apple Inc.*, 2021 WL 134579, at *2 (N.D. Cal. Jan. 14, 2021). Plaintiffs have not met their burden. Moreover, Plaintiffs' proposed modification will prejudice Apple. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3268649, at *4 (N.D. Cal. July 28, 2011) (denying request to modify class definition that would prejudice defendants and cause undue delay). For these reasons, Plaintiff's Motion to Modify the Class Definition is **DENIED**.

### A.     Justifications for Proposed Class Definition Modifications

When seeking modification of a certified class the moving party must provide "a sufficient basis for modifying the class definition[]." *Abante Rooter & Plumbing*, 2017 WL 4073792, at *2. Here, Plaintiffs have not done so. Plaintiffs' proposed iPod exclusion would remove 6.2 million current class members. *See* Declaration of Jeffrey Prince ("Prince Decl.") ¶ 7. Plaintiffs represent that they have chosen not to pursue the iPod-related claims because their expert, Prof. Stiglitz "concluded that, unlike the foremarkets for smartphones and tablets, Apple lacks market power in the relevant market for portable music devices in which it sells iPod [t]ouch devices" and these claims are therefore weaker than the iPhone and iPad claims. Mot. at 6. But Prof. Stiglitz's report contains no such analysis or conclusion. His 187-page report mentions iPods just once: He says Plaintiffs' counsel "instructed" him "to treat iPhones and iPads, but not the iPod touch, as iOS devices." Declaration of Eli Lazarus

Gibson, Dunn & Crutcher LLP

2

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

("Lazarus Decl.") Ex. 5 (Stiglitz Rep.) at ¶ 18 n.3.

Plaintiffs similarly have not provided adequate justification for the proposed $10 cutoff modification. This change is premised on Plaintiffs' expert Mr. Darryl Thompson's asserted ability to reliably deduplicate payor records to identify unique payors. Mot. at 8; Dkt. 953-4 ¶ 10 (Thompson Decl.). But Plaintiffs would have to deduplicate payor records under the original cutoff as well; that development does not justify amending the class definition more than a year after it was certified. In addition, Plaintiffs have not made Mr. Thompson's methodology available to Apple and have thus deprived Apple of the ability to assess or test that effort. Plaintiffs cannot satisfy Rule 23 based on untested methodologies. *See Olean*, 31 F.4th at 665 n.7. The Court accordingly strikes Mr. Thompson's opinions under Rule 37 and, in the alternative, finds them insufficient to sustain Plaintiffs' burden under Rule 23. Fed. R. Civ. P. 37(c)(1); *see also Mueller v. CBS, Inc.,* 200 F.R.D. 242, 245 (W.D. Pa. 2001) (rejecting reliance on expert opinion where "[d]efendant ha[d] not yet deposed the statistical experts on whose analyses Plaintiffs rely almost exclusively in their arguments").

Plaintiffs have failed to provide a sufficient basis for their proposed modifications to the class definition. Including for the reasons below, modification therefore would "improperly and arbitrarily exclude individuals whose . . . claims against defendants are substantially similar to those of other class members" and would "deprive [Apple] of the benefit of a 'fair and efficient adjudication of the controversy.'" *Abante Rooter & Plumbing*, 2017 WL 4073792, at *2–3 (quoting Fed. R. Civ. P. 23(b)(3)); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 302 F.R.D. 448, 466 (N.D. Ohio 2014) (declining to amend a class because "Plaintiffs have supplied the Court with no good cause.").

**B.  Federal Rule 23 Requirements**

Plaintiffs' proposed modified class definition also does not meet predominance and superiority requirements of Federal Rule 23(b)(3) or the adequate representation requirement of Federal Rule 23(a). *See* Fed. R. Civ. P. 23(a)(4), (b)(3).

       **1.  Predominance**

Injury is an "essential element[]" of every antitrust claim, *Olean*, 31 F.4th at 666 (cleaned up), and "[e]very class member must have Article III standing in order to recover individual damages,"

Gibson, Dunn & Crutcher LLP

3

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Under *Olean*, courts must engage in a "rigorous analysis" "to determine whether individualized questions, including those regarding class members' injury, will overwhelm common ones and render class certification inappropriate." 31 F.4th at 669.

Here, the Court previously expressed "concern[]" that the class as currently defined would have (at least) 10,283,035 million uninjured accounts but found it could not "'flatly reject' class certification," crediting Plaintiffs' representation that this "number will be reduced" after Plaintiffs' ran their model "*before trial* with the full transactions data for the entire App Store." Dkt. 789 at 24, 26-27 & n.17 (emphasis in original). Plaintiffs have now run their model and the proposed class—with plaintiffs' modifications—would create a class containing 185.9 million members, 9.8–11.1 million of whom are uninjured, Prince Decl. Ex. 4—confirming Plaintiffs cannot separate uninjured class members from injured ones without individualized inquiries predominating. *See Olean*, 31 F.4th at 669 & n.13. While Plaintiffs emphasize that excluding iPod touch devices reduces the percentage of uninjured class members, *see* Mot. at 11, "raw numbers" are just as important, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019), and the total number of uninjured class members in the redefined class is virtually unchanged if not greater than before. Prince Decl. Exs. 2 & 4.

In addition, Plaintiffs' experts now argue that the 10–11 million "uninjured" payors in the revised class "may still be harmed" because Apple's conduct allegedly reduced their choice of app channels. Lazarus Decl. Ex. 9 (Song Rep.) ¶¶ 47, 81; *accord id.* Ex. 5 (Stiglitz Rep.) ¶ 100. But this confirms that individual questions will predominate. Whether any class member is harmed by alleged lack of choice will depend on their personal preferences, including whether they would transact outside the App Store if given the option. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 54 (1st Cir. 2018) (class members not injured when, due to brand loyalty, they would not have bought from competitor). The only way to decide "the injury status" of the 11 million uninjured people in Plaintiffs' proposed class would be "individualized questions"—a process that "will overwhelm" the proceedings. *Olean*, 31 F.4th at 668–689; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). For these reasons, the proposed class does not satisfy Rule 23's predominance requirement.

Gibson, Dunn & Crutcher LLP

4

[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

### 2. Superiority

Plaintiffs also cannot show that their class as redefined is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs ask to remove iPod transactions, and thereby exclude as many as 6 million individuals, based on line-drawing untethered from Plaintiffs' allegations or Apple's alleged conduct. Plaintiffs have long alleged that the iPod touch is subject to Apple's "same software restraints" and "exclusive control" as the iPhone. Dkt. 229 ¶¶ 8, 36. Granting Plaintiffs' motion would expose Apple to further litigation from these 6 million individuals—more than 4 million of whom Plaintiffs say have viable claims according to their model. Prince Decl. ¶ 7. "[E]xcising such a large share of potential claimants from the proposed class raise[d] a superiority problem" by exposing the defendant to a "trickle of individual lawsuits" and thereby "impair[s] the efficiency goal which is a key purpose of the class action mechanism." *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 932 (4th Cir. 2025); *see also Abante Rooter and Plumbing*, 2017 WL 4073792, at *2 (similar); *Guevarra v. Progressive Financial Servs., Inc.*, 497 F. Supp. 2d 1090, 1091 (N.D. Cal. July 31, 2007) (similar). For this reason, the proposed class lacks superiority under Rule 23(b)(3).

### 3. Adequacy of Representation

Plaintiffs' proposal to exclude claims related to the iPod touch also shows that the named Plaintiffs cannot "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs and their counsel "owe" a "fiduciary responsibility to the class" as it is currently certified. *Staton v. Boeing Co.*, 327 F.3d 939, 960 (9th Cir. 2003); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). Plaintiffs seek to arbitrarily exclude 6.2 million absent class members—the majority with valid claims according to their expert—for no adequate explanation. This willingness to "abandon" the claims of unharmed members without "any real explanation" creates a serious "adequacy problem" under Rule 23(a). *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 641 (N.D. Cal. 2015) (denying certification when plaintiffs chose to forego various elements of damages asserted in class action complaint); *see also Wetlzet v. CertainTeed Corp.*, 2019 WL 3976204, at *14 (W.D. Wash. Mar. 25, 2019) (similar).

5
[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

Gibson, Dunn & Crutcher LLP

### C. Prejudice

Plaintiffs' motion should also be denied because it unduly prejudices Apple. Plaintiffs' unexplained delay in moving to modify the class definition, as well as their delay in disclosing key information regarding their experts' analysis, lands this motion in the middle of Apple's attempts to prepare its expert rebuttal reports and defense. The uncertainty generated by this motion prejudices those efforts—a recognized reason to refuse to modify a class definition. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3268649, at *4; *Belmont v. BP Am. Produc. Co.*, 2014 WL 12622442, at *3 (D. Wyo. Oct. 16, 2014) (denying motion to amend complaint where plaintiffs delayed five months in bringing the motion and "the proposed amendments change the class definition to one which not only makes it difficult to determine the specific class definition, but also causes prejudice since Defendant has been preparing for the class certification issue based on the [existing] definition").

## II. Class Notice Plan

The Court **GRANTS** Plaintiffs' motion to issue class notice as **MODIFIED** by Apple's proposal. Rule 23 requires that parties provide the "best notice that is practicable under the circumstances" to class members, Fed. R. Civ. P. 23(c)(2)(B). To accomplish this, Plaintiffs' proposed notice plan will be modified so that (1) the class notice does not include language related to injunctive relief; (2) individual email notice will be sent only to email addresses associated with identified potential class members; and (3) Apple will have 30 days, from the later of the date of this order or the date Plaintiffs provide Apple with the relevant payor ID and account ID information, to produce a list of email addresses to Plaintiffs' claims administrator.

Plaintiffs' proposed class notice should be revised to exclude language related to injunctive relief, which is not part of Plaintiffs' class claims. The certified class in this action is a Rule 23(b)(3) class for damages. *See* Dkt. 789 at 23 ("Plaintiffs once again move for class certification under Rule 23(b)(3)"): Dkt. 443-4 (Class Cert. Mot.) at 11 ("Class actions for money damages proceed under Rule 23(b)(3) . . ."); Dkt 683 (renewing class cert motion under Rule 23(b)(3)). Plaintiffs did not request, and the Court did not certify an injunctive class under Rule 23(b)(2), nor does Plaintiffs' class certification motion reference injunctive relief or an injunction. *Id.* It is therefore not appropriate to include reference to Plaintiffs' injunctive claims in the class notice. *See LaVigne v. First Community*

Gibson, Dunn & Crutcher LLP

6
[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

*Bancshares, Inc.*, 330 F.R.D. 293, 298 (D.N.M. 2019) (striking "injunctive relief language from the notice unless and until Plaintiff shows that injunctive relief is available under Rule 23(b)(3)" where "Plaintiff's motion to certify did not request certification under Rule 23(b)(2) or use the words 'injunctive relief' or 'injunction.'").

Plaintiffs' proposed individual email notice plan should also be revised so that notice is sent only to email addresses associated with identified potential class members. Plaintiffs propose sending individual email notice to email addresses associated with every individual Plaintiffs' expert, Mr. Thompson, has purportedly identified with any positive spending on iOS apps or in-app purchases. *See* Mot. at 12; Dkt. 953-4 (Thompson Decl.). But Plaintiffs have limited their class definition to accounts with more than $10 of spending—a group of 185.4 million individuals. Mot. at 10. Plaintiffs offer no explanation for why individual email notice should be sent to tens of millions of people that Plaintiffs have determined are not in the class. *See*, *e.g.*, *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245, at *4-6 (S.D. Cal. Nov. 5, 2013) (rejecting as "overbroad, overinclusive" proposal that email notice be sent to all of Ikea's customers for whom Ikea had email information, where class members were a subset). Further, consumers have privacy interests in their contact information, and Plaintiffs have not shown a "compelling need" for non-class members' email addresses that would "outweigh the privacy right when these two competing interests are carefully balanced." *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (citation and quotations omitted). Apple's alternative proposal, to send notice to email addresses associated with the accounts with transactions paid for by individuals identified by Plaintiffs' experts as meeting the class definition, is more appropriate. *See, e.g.*, *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7042871, at *4 (N.D. Cal. Dec. 1, 2020) (approving plan to send email notice to accounts likely to belong to class members or individuals "in the best position possible to identify" the relevant class member) (citation omitted).

Finally, Plaintiffs have requested that the Court order Apple to produce email addresses to Plaintiffs' claims administrator within 10 days of the date of this Order. Apple has explained that, given the volume of data, it will need additional time to map the relevant list of payor IDs and account IDs to email addresses and prepare the relevant list. Apple's request for 30 days to complete this process is more appropriate.

Gibson, Dunn & Crutcher LLP

7
[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO MODIFY THE CLASS DEFINITION AND APPROVING MODIFIED NOTICE TO THE CLASS, 4:11-CV-06714-YGR

THEREFORE, the Court hereby ORDERS as follows:

i. The Court DENIES Plaintiffs' Motion to Modify the Class Definition.

ii. The Court approves Apple's Proposed Long Form Notice and Apple's Proposed Email Notice attached as Exhibits 17 and 18 to the Declaration of Eli Lazarus, as well as Plaintiffs' proposed notice plan, modified as Apple has proposed so that individual notice will be sent only to the individuals Plaintiffs identify as meeting the class definition.

iii. Plaintiffs shall provide Apple with the payor ID and account ID information for the individuals Plaintiffs contend meet the class definition. Apple shall produce email addresses for these individuals (the "Class List") to Plaintiffs' claims administrator Epiq within thirty (30) days of this Order or within thirty (30) days of the date Plaintiffs provide Apple with the relevant IDs, whichever is later.

iv. Epiq will commence notice forty-five (45) days after Apple provides it with the Class List and complete notice within thirty (30) days thereafter.

v. Class members will have thirty-five (35) days from the completion of notice to opt out of the Class.

**IT IS SO ORDERED**

DATE: _____

THE HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE