BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
STEPHANIE AVILES (350289)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
manifold@whafh.com
byrd@whafh.com

MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
THOMAS H. BURT (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Class Counsel for Plaintiffs*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION AND APPROVE NOTICE TO THE CLASS**<br><br>DATE:  May 20, 2025<br>TIME:  2:00 p.m.<br>COURTROOM:  1, 4th Floor<br><br>The Honorable Yvonne Gonzalez Rogers |

**[REDACTED PUBLIC VERSION]**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......................................................................................................1

II. ARGUMENT ..............................................................................................................1

    A. The Court Should Grant Plaintiffs' Proposed Modifications to the Class
       Defintinon .......................................................................................................1

      1. The Proposed Modification Strengthens Plaintiffs' Aftermarket Claims ................1

      2. Applying the $10 Spending Cutoff at the Payor Level Conforms the Class
         Definition to New Evidence.........................................................................4

    B. Plaintiffs' Proposed Modifications to the Class Definition Do Not Prejudice
       Apple .............................................................................................................7

    C. The Modified Class Satisfies Rule 23........................................................................10

    D. Plaintiffs Are Not Precluded from Seeking Injunctive Relief ...................................14

    E. Email Notice May Be Directed Only to Those Who Are Members of the Class ........15

III. CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

## CASES                                                                              Page(s)

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
    No. 15-CV-06314-YGR, 2017 WL 4073792 (N.D. Cal. Sept. 14, 2017) ...........................7

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
    No. 15-CV-06314-YGR, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018) ................................7

*Andrews v. Plains All Am. Pipeline, L.P*,
    No. 2:15-CV-0411-PSG (JEMx), 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019)................9

*Apple iPod iTunes Antitrust Litig.*,
    No. C 05-00037 JW, 2008 WL 5574487 (N.D. Cal. Dec. 22, 2008), *amended*, No. C05-
    00037 JW, 2009 WL 249234 (N.D. Cal. Jan. 15, 2009) ..............................................13

*Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
    637 F.3d 827 (7th Cir. 2011) .......................................................................................13

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) .........................................................................................8

*Beaulieu v. EQ Indus. Servs., Inc.*,
    No. 5:06-CV-00400BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009).............................2

*Bee, Denning, Inc. v. Cap. All. Grp*.,
    310 F.R.D. 614 (S.D. Cal. 2015) ...................................................................................9

*Belgada v. Hy's Livery Serv., Inc.*,
    No. 3:18-CV-177 (VAB), 2019 WL 632283 (D. Conn. Feb. 14, 2019)............................10

*Belmont v. BP Am. Prod. Co.*,
    No. 13-CV-0063-F, 2014 WL 12622442 (D. Wyo. Oct. 16, 2014)....................................8

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
    No. 05-80183-CIV, 2006 WL 8435096 (S.D. Fla. Dec. 28, 2006)....................................12

*Brown v. Hain Celestial Grp., Inc.*,
    No. C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ...............................1, 2

*China Agritech v. Michael H. Resh*,
    584 U.S. 732, 138 S. Ct. 1800, 201 L. Ed. 2d 123 (2018)...................................................10

*Epic Games, Inc. v. Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded*,
    67 F.4th 946 (9th Cir. 2023) ..........................................................................................15

*Guevarra v. Progressive Fin. Servs., Inc.*,
    497 F. Supp. 2d 1090 (N.D. Cal. 2007) ..........................................................................12

*Hamilton v. Firestone Tire & Rubber Co*.,
    679 F.2d 143 (9th Cir. 1982) ..........................................................................................10

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ..................................................................................11

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
   270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................2, 14

*In re Nw. Airlines Corp.*,
   208 F.R.D. 174 (E.D. Mich. 2002) ...........................................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   934 F.3d 619 (D.C. Cir. 2019) ..................................................................................11

*In re Stec Inc. Sec. Litig.*,
   No. SACV 09–01304–JVS (MLGx), 2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) ............13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011) ....................................1, 8

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   219 F.R.D. 661 (D. Kan. 2004) ..................................................................................14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   302 F.R.D. 448 (N.D. Ohio 2014) .............................................................................7

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990). ..................................................................................8

*Kamal v. Eden Creamery, LLC*,
   88 F.4th 1268 (9th Cir. 2023) .................................................................................9, 10

*Mays v. Tennessee Valley Auth.*,
   274 F.R.D. 614 (E.D. Tenn. 2011) .............................................................................13

*Minter v. Wells Fargo Bank, N.A.*,
   280 F.R.D. 244 (D. Md. 2012) ..................................................................................10

*Mr. Dee's Inc. v. Inmar, Inc.*,
   127 F.4th 925 (4th Cir. 2025) .................................................................................12

*Mueller v. CBS, Inc.*,
   200 F.R.D. 242 (W.D. Pa. 2001) ..............................................................................7

*Penk v. Oregon State Bd. of Higher Educ.*,
   816 F.2d 458 (9th Cir. 1987) ..................................................................................2, 8

*Poulos v. Caesars World, Inc.*,
   No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180 (D. Nev. June 25, 2002),
   *aff'd in part*, 379 F.3d 654 (9th Cir. 2004) .................................................................9

*Smith v. Seeco, Inc*
   No. 4:15CV00147 BSM, 2016 WL 3541412 (E.D. Ark. Mar. 11, 2016). .............................8

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................................13

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,*
    308 F.R.D. 630 (N.D. Cal. 2015)................................................................................13

*Town of Lexington v. Pharmacia Corp.,*
    No. 12-CV-11645, 2015 WL 1321448 (D. Mass. Mar. 24, 2015).........................................8

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ....................................................................................11

*Wenig v. Messerli & Kramer P.A.,*
    No. 11-CV-3547 PJS/FLN, 2013 WL 1176062 (D. Minn. Mar. 21, 2013)........................12

*Westlands Water Dist. v. United States,*
    100 F.3d 94 (9th Cir. 1996) ......................................................................................10

*Wetlzet v. CertainTeed Corp.,*
    No. C16-1160JLR, 2019 WL 3976204 (W.D. Wash. Mar. 25, 2019)...............................13

*Wilson v. City of San Jose,*
    111 F.3d 688 (9th Cir. 1997) ......................................................................................9

## STATUTES & RULES

Federal Rules of Civil Procedure

    Rule 23 ........................................................................................2, 9, 10, 11, 15
    Rule 23(b)(3)........................................................................................11, 12, 14, 15
    Rule 23(c)(1)(C)..........................................................................................................8
    Rule 41 ........................................................................................................................9
    Rule 41(a)(2)................................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs' opening memorandum established that they are entitled to modify the Class definition to remove the iPod Touch from the definition of "iOS Device" and apply the $10 spending cutoff at the individual payor level. Plaintiffs' modifications seek to narrow the scope of the Class to align with Plaintiffs' evolved legal theories that have developed over the course of this litigation. In response, Apple largely recycles arguments this Court already rejected during both rounds of Class certification briefing. Because Plaintiffs' modifications do not seek to add any new claims or require additional discovery, Apple relies on irrelevant and inapposite cases to fabricate claims of prejudice.

## II.    ARGUMENT

### A.   The Court Should Grant Plaintiffs' Proposed Modifications to the Class Defintinon

It is "an unremarkable feature of class actions that class definitions are refined to reflect the developing realities of a given suit." *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014).  The Ninth Circuit regularly allows plaintiffs to modify class definitions, particularly in light of discovery, which "regularly changes the parties' initial understanding of a case's facts" and "can affect a class suit's legal theories." *Id.* Courts are therefore free to "amend certification orders to reflect major changes or minor adjustments to the class." *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 3268649, at *3 (N.D. Cal. July 28, 2011). Plaintiffs seek to slightly narrow the Class definition to more closely align it with the expected trial evidence. In response to this "unremarkable" process, Apple mischaracterizes Plaintiffs' modifications as "extraordinary changes," when they merely seek to redefine the Class in light of evidentiary developments, consistent with the Court's expectations.

### 1.   The Proposed Modification Strengthens Plaintiffs' Aftermarket Claims

Plaintiffs retained a liability expert, Professor Joseph Stiglitz, after Class certification to assess Plaintiffs' aftermarket claims. *See* Plaintiffs' Motion (ECF No. 951) at 5. In consultation with Prof. Stiglitz, Plaintiffs determined that they could present the strongest aftermarket claims by limiting the relevant foremarkets to smartphones and tablets, because Apple possesses market power in those markets such that competitive forces do not discipline Apple's monopoly power in

the aftermarket. *Id.* at 5-6. Plaintiffs' counsel thus instructed Prof. Stiglitz to limit his report to the smartphone and tablet foremarkets and brought their Motion to remove the iPod Touch from the Class definition in accordance with this evidence, which is well within the purview of Rule 23. *See Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 467 (9th Cir. 1987) (noting "the court's power to adjust the class definition to conform to the proof").

Apple argues that Plaintiffs' explanation "doesn't add up" because Plaintiffs claimed in their Third Amended Complaint ("TAC") that competition in the foremarket does not constrain Apple's conduct in the aftermarket. Defendant Apple Inc.'s Opposition to Plaintiffs' Motion ("Opp.") (ECF No. 956) at 9. That is beside the point. Plaintiffs are entitled to modify the Class definition to reflect the evolution of their legal theories from those contained in their complaint, and Apple cites no cases to the contrary. *See Brown*, 2014 WL 6483216, at *6; *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 530 (N.D. Cal. 2010) (holding that plaintiffs can "seek certification on a theory not expressly stated in their complaint."); *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *7 (E.D.N.C. July 22, 2009) ("The changes in the [class] definitions reflect a sharpening of the issues based on discovery ….").

Apple also argues that Plaintiffs could not have relied on Prof. Stiglitz's expertise in deciding to drop the iPod Touch from the Class definition because his and other experts' reports state that they were instructed by counsel not to include the iPod Touch in the definition of "iOS Device." Opp. at 9. Apple further claims that Plaintiffs' reliance on Prof. Stiglitz is belied by the fact that Plaintiffs informed Apple in November 2024 that they were no longer pursuing claims relating to the iPod Touch. *Id.* Apple's hyperbole notwithstanding, there is nothing nefarious about this development and it had nothing to do with reducing the number or percentage of Class members who suffered no measurable damages.

Plaintiffs' counsel and Prof. Stiglitz and his support team at The Brattle Group engaged in extensive discussions about his foremarket analysis in 2024. *See* Declaration of Mark C. Rifkin ("Rifkin Decl."), ¶ 2, filed concurrently herewith. During those discussions, Prof. Stiglitz and Brattle explained that the foremarket analysis for smartphones and tablets differs from the one for portable music devices because of Apple's considerable market power in the first two foremarkets

that it lacks in the third foremarket. *Id*. Plaintiffs' counsel considered that information in further consultation with one of their experts, Minjae Song, Ph.D., and his Brattle support team, who confirmed that those Class members who only purchased iPod Touch devices could be identified and eliminated from the Class. *Id*. at ¶¶ 3-4. Based on those additional discussions, Plaintiffs' counsel then instructed Prof. Stiglitz and the Brattle support team to limit the foremarket analysis to iPhones and iPads. *Id*. at ¶ 5.

Apple does not deny that removing the iPod Touch from the Class definition **reduces** the size of the Class. Eliminating the iPod Touch would reduce the size of the current Class and the modified Class by over 4 million payors. Motion at 7 n.4; Declaration of Rachele R. Byrd (ECF No. 951-1) at 2. To arrive at these figures, Dr. Song calculated the number of "iPod-only" payors who would be removed from the Class under each definition. Declaration of Minjae Song ("Song Decl."), filed herewith, ¶ 6. "iPod-only" payors are past or present owners of an iPod Touch that have never owned an iPhone or an iPad. *Id*. Dr. Song determined that there are 4,363,865 iPod-only payors who meet the current Class definition by having at least one Apple ID with at least $10 in spending, representing just 2.35% of the Class as presently constituted. *Id*. Dr. Song then determined that there are 4,378,640 iPod-only payors who would meet the modified Class definition by having at least $10 in spending across all Apple IDs. *Id*.

Apple's expert, Prof. Prince, determined that eliminating the iPod Touch from the relevant foremarkets excludes 6,195,944 payors from the current Class definition, or 3.2% of the Class. Declaration of Jeffrey T. Prince, Ph.D. ("Prince Decl.") (ECF No. 956-22) at ¶ 7; Song Decl., ¶ 6.[1]

The discrepancy between Dr. Song's and Dr. Prince's figures are due to their calculations capturing different concepts. Dr. Song's figures capture the number of payors who only own an iPod Touch and who meet the $10 spending cutoff, whether applied by Apple ID or by payor. His numbers do not include payors who made purchases on an iPhone or iPad in addition to an iPod Touch. Song Decl., ¶ 6. Prof. Prince first removed the iPod Touch transactions and then applied

---

[1] Dr. Prince claims throughout his Declaration that "JND Legal Administration has proposed a methodology for linking payors to transactions in the App Store transaction data." Prince Decl. at ¶¶ 7 n.12, 11 n.18, 14. This is incorrect. JND deduplicated the payor dataset provided by Apple, but it was Apple who matched the deduplicated payors to transactions.

the $10 spending cutoff to payors. Prince Decl., ¶ 7. Prof. Prince's calculations capture payors who made purchases on an iPod Touch, as well as on an iPhone or an iPad. Accordingly, some payors would not meet the $10 spending threshold if their iPod Touch purchases are excluded but would meet the spending threshold if they are included. *Id.* ¶ 11.

The difference between the experts' approaches is immaterial. The Class would not be materially smaller under Prof. Prince's approach, and the net damages to Class members under both experts' approaches are virtually unchanged. As importantly, the number and percentage of Class members who suffer no measurable economic harm is not materially different. To avoid a prolonged dispute, for purposes of changing the Class definition, Plaintiffs and their experts are prepared to accept Prof. Prince's approach to the modification.

### 2. Applying the $10 Spending Cutoff at the Payor Level Conforms the Class Definition to New Evidence

Apple claims that "Plaintiffs identify no new evidence to justify their modifications" to the Class definition. Opp. at 11. That argument is untrue. Apple knows that Plaintiffs did not have the data necessary to match Apple IDs to *payors* during Class certification – when they only had data for Apple IDs. Apple initially claimed it was impossible to match Apple IDs to individual payors. That claim proved to be untrue. Eventually, in November 2024, Apple produced the payor data that Plaintiffs first requested in February 2024. *See* ECF No. 956-2 at ¶ 13. Using that new information, Plaintiffs have now identified approximately 185 million primary payors that match the approximately ▮▮▮▮▮ App Store transactions. That matching – which Plaintiffs could not do before Apple produced the data – underlies Plaintiffs' request to modify the Class definition by applying the $10 spending cutoff at the payor level rather than to Apple IDs.

Apple does not dispute that there is no material difference in the aggregate damages when the $10 cutoff is applied at the Apple ID level versus the payor level. Nor does Apple address the Court's unambiguous statement in the Class Certification Order that the cutoff could be changed to reduce the impact of including unharmed accounts in the Class. ECF No. 789 at 2. Instead, Apple focuses most of its opposition to the cutoff modification on Mr. Thompson's successful deduplication of Apple's payor data – which Apple previously said was impossible – rather than

on the effect of applying the spending cutoff at the payor level. Apple's attempts to discredit Plaintiffs' reliance on Mr. Thompson have no merit.

Plaintiffs have not deprived Apple of the ability to assess or test Mr. Thompson's deduplication work. On March 7, 2025, Plaintiffs disclosed the Expert Report of Minjae Song, Ph.D., which attached a declaration of Darryl Thompon labeled as an "expert report" in the footer. The declaration details JND's process for deduplicating the Apple payor data. On March 28, 2025, Apple wrote to Plaintiffs asking whether they were designating Mr. Thompson as an expert witness, and if so, requesting that Plaintiffs provide several categories of backup data. *See* ECF No. 956-13 at 1-3. Apple also requested that Plaintiffs make Mr. Thompson available for an in-person deposition between April 28, 2025, and May 16, 2025 so they could depose him "regarding his opinions and the basis for those opinions." *Id.* at 3. Plaintiffs promptly responded on April 2, 2025, and informed Apple that it should treat Mr. Thompson as an expert witness and that they would follow up with supplemental materials and amended expert disclosures. Rifkin Decl., Ex. A. On April 16, 2025, Plaintiffs served Mr. Thompson's supplemental expert report.

With regard to Mr. Thompson's backup materials, Apple complains that it can only review Mr. Thompson's work on an air-gapped computer at JND's office in Seattle. Opp. at 19. But these "onerous access restrictions" that Apple decries, ECF No. 956-15 at 1, are of its own making. Plaintiffs first requested that Apple produce data enabling Plaintiffs to match Apple IDs to Class members in 2022, to which Apple objected. Joint Discovery Letter Brief (ECF No. 815) at 14. After the Court granted Class certification in February 2024, Apple said it would produce the payor data, but the parties disagreed over the manner in which Apple would produce it. *Id.* at 2. Apple raised a host of security and privacy concerns about the data, which required the parties to enter into a Supplemental Protective Order ("SPO") that imposed a number of atypical and draconian measures on Plaintiffs and JND before Apple would agree to produce the data. *Id.* at 1-5; SPO (ECF No. 882) ¶ 5(c). Apple's insistence on such strict protocols was particularly puzzling because Apple already had vetted JND to handle its customer data in two other cases without incident.[2]

---

[2] *Lerman v. Apple Inc.*, No. 1:15-cv-07381 (E.D.N.Y.) (class action brought by iPhone 4S owners claiming that an iOS update rendered their devices "buggy" and slow) and *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813 (N.D. Cal.) (class action brought by MacBook consumers

ECF No. 815 at 3-4. The vetting process included JND filling out an extensive questionnaire and Apple conducting an on-site inspection of JND's premises. *Id.* at 4. Even after Plaintiffs agreed to enter into the SPO, they were still forced to take the dispute to Judge Hixson in August 2024, who ordered Apple to produce the full payor dataset. ECF No. 913 at 1-2.

Under the SPO, Apple delivered the payor data directly to JND where it was housed on an air-gapped computer that only Mr. Thompson could access. SPO (ECF No. 882) ¶ 5(c). Pursuant to the protocol that Apple itself demanded, Plaintiffs are unable to produce "the programs, data, or algorithms on which Mr. Thompson relied" that Apple now complains it cannot access. Opp. at 5. Mr. Thompson relied, in part, upon the payor data, and the SPO does not permit him to transfer the payor data to Apple without observation and monitoring by Apple's representatives. SPO (ECF No. 882) ¶ 5(c)(v). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Due to these restrictions, on April 8, 2025, Plaintiffs offered for Apple to inspect the air-gapped computer at JND's offices, where Apple can recreate the work Mr. Thompson did to deduplicate the payor data. Apple finally took up that invitation beginning May 5, 2025. Therefore, it is simply not true that Plaintiffs have deprived Apple of the ability to test or review Mr. Thompson's opinions. Opp. at 10. Plaintiffs have merely insisted that Apple abide by the same restrictions it imposed on Plaintiffs when they were handling this confidential data. But Apple thinks that the same rules do not apply to it. For over a year, Apple has proclaimed that this data requires the utmost privacy and security protections. Apple should not now be heard to argue that it has been prejudiced by the very same protocols it insisted on imposing.

Furthermore, Apple's argument that the Court should strike Mr. Thompson's testimony because Apple has not had a chance to review his opinions or depose him is counterfactual. Apple visited JND's offices on May 5 and May 6, 2025, and had full access to the air-gapped computer with ***all*** the data Mr. Thompson relied upon in completing his work. Rifkin Decl., Ex. B. Apple has scheduled Mr. Thompson's deposition for May 14, 2025. The absurdity of Apple's position is

over allegedly defective keyboards).

highlighted by the inapposite case it relies upon. In *Mueller v. CBS, Inc.*, plaintiffs moved for partial summary judgment during class certification before the parties had engaged in merits discovery. 200 F.R.D. 242, 245 (W.D. Pa. 2001). Defendants had not had an opportunity to depose plaintiffs' experts because of a stipulated order that neither party would depose the others' experts before a ruling on class certification. The court merely held that the parties should complete merits discovery before it ruled on the summary judgment motion. *Id.*

Apple's other cases are also distinguishable. In *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, this Court initially denied plaintiffs' request to modify their class definitions because they could not obtain data that they believed could be used to identify additional class members. No. 15-CV-06314-YGR, 2017 WL 4073792, at *3 (N.D. Cal. Sept. 14, 2017). The Court found that plaintiffs had not shown that they exercised due diligence in seeking to obtain the data, and therefore modification would have improperly excluded individuals with substantially similar complaints. *Id.* The Court later granted plaintiffs' modifications after they obtained the missing data. *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-06314-YGR, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018).

In *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, plaintiffs sought modification of the class definition to exclude washing machine models that cured a design defect. 302 F.R.D. 448, 466 (N.D. Ohio 2014). The court rejected plaintiffs' request to exclude one model because its expert witness concluded, and plaintiffs conceded, that the model did not cure the design defect. Therefore, plaintiffs provided no good reason to exclude it from the class. *Id.*

Plaintiffs have explained that they are removing the iPod Touch from the Class definition to strengthen their aftermarket claims because Apple possesses market power in the foremarket for smartphones and tablets. Plaintiffs also have explained that applying the $10 spending cutoff at the payor level is a fairer way to impose the cutoff because it does not subjectively favor Class members with fewer Apple IDs or penalize those with multiple Apple IDs. Applying the cutoff by payor also will help ensure that the appropriate individual receives the Class notice.

**B. Plaintiffs' Proposed Modifications to the Class Definition Do Not Prejudice Apple**

Apple attempts to magnify Plaintiffs' innocuous changes to the Class definition by

1  manufacturing claims of prejudice. Plaintiffs did not delay in bringing their Motion because a court
2  may modify an order granting class certification at any time prior to final judgment. Fed. R. Civ.
3  P. 23(c)(1)(C); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 983 (9th Cir. 2007) (the
4  court modified the composition of the class after trial); *Penk*, 816 F.2d at 466-67 (affirming
5  modification of the class after trial).

6  None of the litany of cases Apple cites support its specious claims of prejudice. In *Jackson*
7  *v. Bank of Hawaii*, the court found appellants unduly delayed in filing a motion to amend their
8  complaint when they waited over a year to file after telling the court that an amendment was
9  forthcoming. 902 F.2d 1385, 1388 (9th Cir. 1990). In *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
10  plaintiffs moved to add additional co-conspirators to the class definition and add an additional
11  statewide class after fact and expert discovery had both closed. The court held that plaintiffs'
12  attempt to redefine and expand the class at that late stage left defendants with no ability to gather
13  the requisite information to defend themselves against the new claims. 2011 WL 3268649, at *4.
14  In *Smith v. Seeco, Inc.*, the court held that plaintiffs' motion to expand the class and add new
15  theories of recovery months after discovery closed and expert disclosures had been submitted
16  would have prejudiced defendants and caused a four-to-five-month delay. No. 4:15CV00147
17  BSM, 2016 WL 3541412, at *3 (E.D. Ark. Mar. 11, 2016). In *Town of Lexington v. Pharmacia*
18  *Corp.*, the court denied plaintiff's motion to amend the complaint where the amendment would
19  have substantially changed the class definition by excluding the "gravamen of the originally
20  proposed class," and would have required additional discovery and postponed the scheduled trial
21  date. No. 12-CV-11645, 2015 WL 1321448, at *3-5 (D. Mass. Mar. 24, 2015). In *Belmont v. BP*
22  *Am. Prod. Co.*, the court rejected plaintiffs' amendment to its complaint because it sought to add
23  claims and theories the court had rejected, and plaintiffs brought their motion late in the class
24  certification stage where there was insufficient time for defendants to conduct discovery and
25  challenge the new claims. No. 13-CV-0063-F, 2014 WL 12622442, at *1-3 (D. Wyo. Oct. 16,
26  2014).

27  Apple has not suffered any prejudice from either of Plaintiffs' proposed modifications to
28  the Class definition. Plaintiffs seek to narrow rather than expand the Class; Plaintiffs have not

---

added any new claims; Plaintiffs' modifications do not require additional discovery; and Plaintiffs brought their Motion before the close of expert discovery. *See Andrews v. Plains All Am. Pipeline, L.P*, No. 2:15-CV-0411-PSG (JEMx), 2019 WL 6647928, at *2, *6 (C.D. Cal. Nov. 22, 2019); *Bee, Denning, Inc. v. Cap. All. Grp*., 310 F.R.D. 614, 621 (S.D. Cal. 2015).

Apple objects to the timing of Plaintiffs' Motion because it was filed after opening expert reports were due. Opp. at 17-18. But Apple concedes that it has known Plaintiffs were no longer pursing claims related to the iPod Touch since November 2024 – three full months ***before*** opening expert reports were due and over six months before expert discovery closes. Apple now attempts to spin its January 2025 letter confirming its "understand[ing] that Plaintiffs are no longer pursuing any claims arising out of purchases made through or otherwise in relation to the iPod touch device" as a request to "clarify" Plaintiffs' position in an effort to drum up prejudice. ECF No. 951-6 at 2.

Unable to credibly claim any factual prejudice, Apple attempts to argue that Plaintiffs should have voluntarily dismissed the iPod claims with prejudice under Rule 41. But Rule 23 permits a district court to "excise portions of a plaintiffs class allegations." *Poulos v. Caesars World, Inc.*, No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180, at *3 (D. Nev. June 25, 2002), *aff'd in part*, 379 F.3d 654 (9th Cir. 2004) (cleaned up). And even if Plaintiffs had moved to dismiss the claims related to the iPod Touch under Rule 41, it is not a given that any dismissal would have been with prejudice.

Since Apple has served its answer to the TAC, Plaintiffs would need to "file a motion for voluntary dismissal under Rule 41(a)(2)." *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997). Rule 41(a)(2) grants a district court discretion to dismiss a claim with or without prejudice, but the Ninth Circuit has "cabined that discretion by repeatedly holding that where the request is to dismiss without prejudice, a District Court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1279 (9th Cir. 2023) (cleaned up). Even if Plaintiffs moved to voluntarily dismiss claims relating to the iPod Touch, the dismissal would not have been with prejudice because Apple has not suffered plain legal prejudice. Legal prejudice means prejudice to a legal interest, a legal claim, or a legal argument. *Id.* at 1280. Apple's claims about

uncertainty and duplicative lawsuits do not constitute legal prejudice under Ninth Circuit precedent. *Westlands Water Dist. v. United States*, 100 F.3d 94, 96-97 (9th Cir. 1996); *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). "Additionally, 'the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice, and plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum[.]'" *Kamal*, 88 F.4th at 1280 (citations omitted). "Legal prejudice requires something more." *Id*. at 1282. Even if subsequent lawsuits did constitute legal prejudice, commencement of a class action does not toll the limitations period for successive class action claims. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 736, 138 S. Ct. 1800, 1804, 201 L. Ed. 2d 123 (2018). Thus, only individual claims relating to the iPod Touch have been tolled, which further reduces any potential prejudice to Apple.

Apple's reliance on *Belgada v. Hy's Livery Serv., Inc.*, No. 3:18-CV-177 (VAB), 2019 WL 632283 (D. Conn. Feb. 14, 2019), is misplaced. In that case, the court granted the plaintiffs' motion to dismiss Federal Labor Standards Act claims with prejudice because "given recent Second Circuit precedent, Plaintiffs' FLSA claims may no longer be viable." This meant that "continued litigation of their FLSA claim would likely be a waste of both parties' resources, as well as judicial resources." *Id*. at *4. Apple can show no such prejudice with respect to claims relating to the iPod Touch.

## C.  The Modified Class Satisfies Rule 23

Apple repackages many of the same arguments the Court rejected during Class certification to argue that the modified Class does not satisfy Rule 23. Contrary to Apple's arguments, Plaintiffs' proposed modifications do not "sufficiently change the landscape" such that the Court should revisit its previous findings that the Class satisfies Rule 23. *See Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244, 247 (D. Md. 2012).

**Predominance:** Ignoring that Plaintiffs' proposed modification ***reduces*** the percentage of Class members who have no recoverable damages – all of whom have now been precisely identified through the damages calculations – Apple repeats its argument from Class certification that the "raw numbers" of uninjured Class members means the modified Class cannot meet the

predominance requirement under Rule 23(b)(3). Opp. at 13. The Court squarely rejected that as inconsistent with *Olean*, noting, "The Ninth Circuit in *Olean*, however, rejected the argument that Rule 23 has an uninjured class member cutoff beyond which class certification is impermissible." ECF No. 789 at 27.

Furthermore, as the Court is aware, Plaintiffs' argument that individuals who purchased apps or in-app content on the App Store but did not suffer monetary damages were still harmed by Apple's anticompetitive conduct is not a "new attempt to skirt the issue of uninjured class members." Opp. at 13. This Court's March 29, 2022 Order stated, "[G]iven Consumer Plaintiffs' theory of the case, all unharmed class members were exposed to Apple's alleged anticompetitive policies and conduct by way of using the App Store." ECF No. 630 at 24-25. As Plaintiffs argued during renewed Class certification briefing, "Those exposed to Apple's unlawful conduct, as *all* Class members were here, but have individual damages that calculate to zero because factors that happen to shield them from measurable economic injury (such as purchasing only a small number of apps or only apps that would not have changed price in the But-For world), are merely "fortuitously non-injured." ECF No. 708 at 8-9 (emphasis in original).

As Plaintiffs repeatedly have informed Apple, "The small percentage of Class members who are fortuitously uninjured will have zero damages and will not participate in the recovery." ECF No. 555, at 18; ECF No. 708 at 9 ("the presence of fortuitously uninjured Class members is not troubling here because a method exists to winnow them out [such that] the identification process will not 'overwhelm common [issues] and render class certification inappropriate.'").[3]

**Superiority:** The superiority requirement of Rule 23(b)(3) is met where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Apple cannot seriously dispute that a

---

[3] Apple again cites to *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019) and *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) to argue that individualized questions will predominate. Plaintiffs reiterate that those cases are distinguishable because, using Prof. McFadden's damages model, Plaintiffs have already determined precisely which Class members have been injured, thus entirely eliminating "the complexity of damages calculations [that] would defeat predominance." *Olean*, 31 F.4th at 681-82 & n.31. There is no need for "full-blown, individual trials" to determine whether Class members have suffered nonmonetary harm.

class action is a superior mechanism for resolving the antitrust claims against it simply because Plaintiffs seek to slightly narrow the Class. Plaintiffs are not "excising" "a large share of potential claimants from the proposed class" like the plaintiffs in *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 932 (4th Cir. 2025), where the Fourth Circuit affirmed the district court's denial of class certification because plaintiffs' proposed class comprised 3,219 injured manufacturers and 65 uninjured manufacturers but excluded more than 2,000 manufacturers who were victims of the same violation. *Id*. Even accepting Prof. Prince's calculations that removing the iPod Touch from the Class definition excludes 6,195,944 payors from the current Class of 185.4 million payors, the percentage of people removed from the Class does not come anywhere close to the nearly 40% of potential class members that were excluded in *Mr. Dee's*.

Furthermore, *Guevarra v. Progressive Fin. Servs., Inc.*, 497 F. Supp. 2d 1090, 1091 (N.D. Cal. 2007), is distinguishable because the plaintiff initially sought class wide relief on behalf of all debtors who received a collection letter from defendants, but then later moved to amend her complaint to seek relief only for herself and those who received the collection letter and were indebted to one of the creditors, IKEA. *Id*. Plaintiff's counsel later admitted to coordinating with counsel in a separate action to divide the class between IKEA and non-IKEA creditors. The court found that the proposed class definition failed to meet Rule 23(b)(3)'s superiority requirement "[b]ecause plaintiff's counsel appeared to have divided up the class in order to maximize attorney fees without significant benefit to their clients." *Id*. Similarly, in *Wenig v. Messerli & Kramer P.A.*, plaintiff engaged in "'gerrymandering' of the class definition" in order to circumvent a statutory damages cap, which limited recovery to one percent of the defendant's net worth. No. 11-CV-3547 PJS/FLN, 2013 WL 1176062, at *6 (D. Minn. Mar. 21, 2013). The court found that "[b]y turning one natural class into numerous unnatural classes," plaintiff's attorneys sought to "increase the amount of each consumer's recovery" and "would be free to bring an unlimited number of future class actions by simply changing the identity of the county or the creditor." *Id*.[4] Plaintiffs have not

---

[4] Apple's other case is also unavailing. In *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, the court denied class certification because the definition did not rationally distinguish between the types of hospitals that caused damage and those that sustained it. 2006 WL 8435096, at *2 (S.D. Fla. Dec. 28, 2006). Here, Plaintiffs have cogently explained their decision to limit the

1    engaged in even remotely similar conduct but have only sought modification to give the Class the

2    best chance of success.

3        Apple's argument that narrowing the Class will expose it to a "trickle of individual

4    lawsuits" is contradicted by this Court's grant of class certification in *Apple iPod iTunes Antitrust*

5    *Litig.*, No. C 05-00037 JW, 2008 WL 5574487, at *8 (N.D. Cal. Dec. 22, 2008), *amended*, No.

6    C05-00037 JW, 2009 WL 249234 (N.D. Cal. Jan. 15, 2009), where this Court held that "there

7    would be little incentive for an individual iPod purchaser to take on a factually complex antitrust

8    case such as this one." The Court's conclusion applies equally here.

9        **Adequacy:** The adequacy of representation requirement asks whether plaintiffs and their

10    counsel have any conflicts of interest with other class members, and whether the representative

11    plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Staton v. Boeing*

12    *Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs' request to remove the iPod Touch from the Class

13    definition does not implicate their ability to adequately protect the interests of the Class or

14    implicate Plaintiffs' or their counsel's fidelity to the Class. None of the authority Apple cites

15    counsels otherwise. In *Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir.

16    2011), the plaintiff declared in district court that it was not seeking punitive damages, which

17    amounted to $2.1 million, to keep the amount in controversy below $5 million and remand the

18    case after it was removed to federal court. The court found that "class representatives' fiduciary

19    duty might ensure that the amount in controversy exceeds $5 million no matter where the litigation

20    occurs." And in *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 642 (N.D. Cal.

21    2015), the plaintiffs sought only one type of damages in their class certification motion, despite

22    "extensively" highlighting eight other categories of compensable damages in their complaint, in

23    order to achieve class certification.[5]

24    relevant foremarkets to those in which Apple has market power.

25    [5] Apple's other authorities are equally inapposite. *See Wetlzet v. CertainTeed Corp.*, No. C16-1160JLR, 2019 WL 3976204, at *13-14 (W.D. Wash. Mar. 25, 2019) (plaintiff was not adequate

26    where "a substantial number of putative class members have made warranty claims and signed release agreements with [defendant]."); *In re Stec Inc. Sec. Litig.*, No. SACV 09–01304–JVS

27    (MLGx), 2012 WL 6965372, at *7 (C.D. Cal. Mar. 7, 2012) (plaintiffs inadequate "because they seek to certify a Class that includes individuals who may have claims under the Securities Act, but

28    the[y] … do not have standing to bring those claims."); *Mays v. Tennessee Valley Auth.*, 274 F.R.D.

1
2
3
4
5
6
7
8
9
10

Apple makes no such claim. Instead, it only asserts that Plaintiffs have sought to remove the iPod Touch from the Class definition "for no apparent reason." That is not true. Plaintiffs have brought their Motion to **strengthen** their aftermarket claims in preparation for trial, which is a perfectly reasonable justification for modifying a class. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. at 532 (rejecting inadequacy argument because "Plaintiffs are permitted to press a theory of contract liability that affords them the best chance of certification and of success on behalf of the class."); *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 219 F.R.D. 661, 670 (D. Kan. 2004) ("This is not a case where the class representatives are pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims.").

11

### D.  Plaintiffs Are Not Precluded from Seeking Injunctive Relief

12
13
14
15
16
17

The proposed Class notice properly reflects Plaintiffs' request for injunctive relief. Apple is incorrect that Plaintiffs' class claims do not include a request for injunctive relief. The TAC plainly states that "Plaintiffs seek declaratory and injunctive relief," including a judgment prohibiting Apple from forcing consumers to "buy[] apps only from Apple" and locking "their iOS Devices . . . to accept only apps purchased from Apple." ECF No. 229, ¶ 20. Apple's argument simply ignores this record.

18
19
20
21
22
23
24
25
26

Plaintiffs are not precluded from seeking injunctive relief because the Court certified a damages class under Rule 23(b)(3). A plaintiff must seek certification under Rule 23(b)(3) only if the primary relief sought is monetary damages. However, Rule 23(b)(3) does not limit the type of relief a plaintiff may seek. *See In re Nw. Airlines Corp.*, 208 F.R.D. 174, 226 (E.D. Mich. 2002) ("Plaintiffs' proposed 'damage' classes can serve as appropriate vehicles for the award **of both monetary and injunctive relief** . . . . [W]here the questions of liability significantly overlap, and indeed appear to be virtually identical, it would disserve judicial economy to certify separate 'injunction' and 'damage' classes.") (emphasis added); Ann. Manual Complex Lit. § 21.221 (4th

27

28

614, 622-24 (E.D. Tenn. 2011) (plaintiffs inadequate where they abandoned claims for medical monitoring, emotional distress, and personal injury, which all potentially had *res judicata* effect).

ed.) ("[W]here money damages constitute the primary relief requested, even though injunctive relief is also sought, the class must be certified under Rule 23(b)(3) . . . .").

As importantly, Plaintiffs' request for injunctive relief is not dependent upon whether a class is certified under any part of Rule 23 because an individual named plaintiff may seek injunctive relief to remedy *market-based* anticompetitive conduct. The injunction this Court issued in *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 952 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded*, 67 F.4th 946 (9th Cir. 2023), is a prime example. In that case, Epic Games, an ***individual*** plaintiff, was awarded injunctive relief to "restrain and prohibit Apple's anticompetitive conduct and anticompetitive pricing." *Epic Games, Inc. v. Apple Inc*., No. 4:20-cv-05640-YGR (ECF No. 1508) at 1. The nationwide injunction, which Epic obtained "with respect to its own injuries . . . enjoin[ed] Apple's anti-steering provision as ***to all iOS developers*** because doing so was necessary to fully remedy the harm that Epic suffers in its role as a competing games distributor." *Id.* at 54 (emphasis omitted and added).

### E. Email Notice May Be Directed Only to Those Who Are Members of the Class

Plaintiffs are prepared to accept Apple's proposal regarding the number of Class notices to be sent. If the Court grants Plaintiffs' motion to apply the $10 cutoff at the payor level and remove the iPod Touch from the Class definition, Plaintiffs will send email notice to the 185.9 million individuals who meet the modified Class definition. If the Court denies Plaintiffs' proposal to apply the $10 cutoff at the payor level and remove the iPod Touch from the Class definition, Plaintiffs will send email notice to the 185.4 million individuals who meet the current Class definition.

### III.    CONCLUSION

For the reasons given above and in Plaintiffs' opening memorandum, Plaintiffs request that the Court modify its order certifying the Class to 1) remove the iPod Touch from the definition of "iOS Device," and 2) apply the $10 spending cutoff to individual payors. Plaintiffs also request that the Court direct notice of pendency to the Class by email and media notice.

DATED: May 6, 2025             By:        */s/ Rachele R. Byrd*
                                               RACHELE R. BYRD

**WOLF HALDENSTEIN ADLER**
   **FREEMAN & HERZ LLP**
RACHELE R. BYRD (190634)
BETSY C. MANIFOLD (182450)
STEPHANIE AVILES (350289)
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER**
   **FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
MATTHEW M. GUINEY (*pro hac vice*)
THOMAS H. BURT (*pro hac vice*)
270 Madison Ave
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212/686-0114

DAVID C. FREDERICK (*pro hac vice*)
AARON M. PANNER (*pro hac vice*)
KYLE M. WOOD (*pro hac vice*)
ASHLE J. HOLMAN (*pro hac vice*)
KELLEY C. SCHIFFMAN (*pro hac vice*)
ANNA K. LINK (*pro hac vice*)
**KELLOGG, HANSEN, TODD, FIGEL &**
   **FREDERICK, P.L.L.C**
1615 M Street, NW Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
dfrederick@kellogghansen.com
apanner@kellogghansen.com
kwood@kellogghansen.com
aholman@kellogghansen.com
kschiffman@kellogghansen.com
alink@kellogghansen.com

*Class Counsel for Plaintiffs*