# GIBSON DUNN

Cynthia Richman
Partner
T: +1 202.955.834
M: +1 202.701.3424
CRichman@gibsondunn.com

July 9, 2025

VIA CM/ECF

The Honorable Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street
Oakland, CA 94612

Re:      *In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714-YGR (N.D. Cal.)

Dear Judge Gonzalez Rogers:

Pursuant to Section 9 of this Court's Standing Order, Apple Inc. ("Apple") respectfully requests a pre-filing conference regarding Apple's anticipated motion for summary judgment in this matter. Subject to the Court's availability, Apple proposes holding the conference on **July 18, July 22, July 30, or August 1, 2025, at 2:00 p.m. PT.**[1]

Apple intends to seek summary judgment on Plaintiffs' Sherman Act Section 2 monopolization and attempt claims, which allege that Apple violated the law by "designing the iOS Devices operating system as a closed system and installing security measures and program locks," "establishing the App Store as the exclusive worldwide distributor of iOS apps" and "terminating or threatening to terminate apps developers who sell apps in competition with Apple."  Third Amended Compl. ("TAC") ¶¶ 79, 84.  Unlike in *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd*, 67 F.4th 946 (9th Cir. 2023), Plaintiffs bring no Section 1 or Unfair Competition Law claim and do not challenge Apple's in-app purchase requirement or its former anti-steering provisions.  Plaintiffs' Section 2 claims raise no genuine disputes of material fact.

***First***, Plaintiffs' Section 2 claims fail at the threshold because they are based on a single all-apps "retail" aftermarket that is one-sided.  But the markets in which the alleged conduct takes place must be defined as two-sided and, because the App Store is a two-sided transaction platform, must include only app transactions.  *See Ohio v. Am. Express Co.*, 585 U.S. 529, 545–47 (2018); *see also Epic Games*, 67 F.4th at 985, 1000–01 (identifying a distinct game app transaction market).  Plaintiffs assert no alternative two-sided market for transactions, so summary judgment for Apple is appropriate.  *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).

---

[1] Apple is submitting a separate request for a pre-filing conference at the same dates and time to discuss anticipated *Daubert* motions.  Consistent with the Court's May 30, 2025 guidance that it will "rule on the [decertification motion] once [it] receive[s] it," Dkt. 980 at 16:1–2, Apple intends to file a motion to decertify, *see also* Dkt. 957-1 at 11–17 (Apple previewing fatal flaws in class). Apple is, of course, happy to submit a pre-filing letter for that motion if the Court wishes, and will in any case be prepared to discuss it at the pre-filing conference as necessary.

**Gibson, Dunn & Crutcher LLP**
1700 M Street, N.W.  |  Washington, D.C. 20039-4504  |  T: 202.955.8500  |  F: 202.467.0539  |  gibsondunn.com

**PUBLIC REDACTED VERSION**

# GIBSON DUNN

*Second*, Plaintiffs' Section 2 claims challenge Apple's consistent policy of refusing to deal with developers who seek to open competing iOS app marketplaces or similarly compete with Apple's App Store.[2]  Under settled Section 2 law, Apple has "no antitrust duty to deal with its competitors," and "certainly . . . no duty to deal under terms and conditions that" its rivals "find commercially advantageous." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450 (2009); *see also Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). Plaintiffs can establish none of the prerequisites to a duty to deal.  *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 993–94 (9th Cir. 2020).  Apple has never had a prior course of dealing with third-party app stores on the iOS platform (whether allowing them in the App Store or on the iPhone via sideloading), which alone compels summary judgment.[3]  *See id.* at 993.  In *New York v. Facebook, Inc.*, a virtually identical policy whereby Facebook refused to deal with (or terminated) developers whose apps competed with Facebook's own platform was upheld.  Such a policy was "plainly lawful to the extent it covered rivals with which it had no previous, voluntary course of dealing." 549 F. Supp. 3d 6, 28 (D.D.C. 2021), *aff'd, New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023); *see also* Order, *In re Google Play Store Antitrust Litigation*, No. 20-cv-5671, Dkt. 491 at *1 (N.D. Cal. October 20, 2023) (granting partial summary judgment on claims that Google Play barred rival app marketplaces).  Moreover, Plaintiffs' theory would impose an unprecedented and legally invalid duty on Apple to license its intellectual property to rivals for use in competing app marketplaces.  *See Epic Games*, 559 F. Supp. 3d at 1050 n.626 (noting that Apple's argument against compelled licensing of IP "appears meritorious").

*Third*, Plaintiffs' challenge to Apple's design of a "closed" system with security measures and locks, *see* TAC ¶¶ 79, 84, is not actionable under Section 2.[4]  This challenge too fails under the refusal to deal precedent.  Regardless, product-design decisions "that improve[] a product by providing a new benefit to consumers" are lawful.  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998, 1000 (9th Cir. 2010); *see Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544–45 (9th Cir. 1983).  Apple's product-design restrictions were not challenged by Epic for good reason.  *Epic Games*, 559 F. Supp. 3d at 1034 n.599.

---

[2] *See* TAC ¶¶ 79, 84; Stiglitz Mar. 7, 2025 Rep. ¶¶ 69–71, 120; Stiglitz May 30, 2025 Dep. at 114–15 ████████████████████████ Stiglitz June 25, 2025 Dep. at 226–27 ████████████████████████████████ Apple is prepared to submit Prof. Stiglitz's excerpted liability report and testimony if helpful to the Court.

[3] Nor can Plaintiffs prove that "sacrific[ing] short-term benefits in order to obtain higher profits in the long run" is the "only conceivable purpose" of Apple's refusing to deal; or that "similarly situated customers" receive preferential treatment.  *Qualcomm*, 969 F.3d at 993–94.

[4] Plaintiffs allege that the iPhone's closed design has violated Section 2 "since June 2007," *i.e.*, since the iPhone's inception.  TAC ¶¶ 16, 31, 51.  Apple is entitled to summary judgment on such pre-App Store claims for the same reasons as discussed above; further, claims before July 10, 2008, the opening date for class membership, have been "abandon[ed]."  *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000).

**GIBSON DUNN**

Unilateral design decisions that have security benefits are lawful regardless of any impact on would-be rivals.  "There is no room in this analysis for balancing the benefits or worth of a product improvement against its anticompetitive effects."  *Allied Orthopedic*, 592 F.3d at 1000.

**Fourth**, Plaintiffs cannot prevail on their unpled theories targeting Apple's IAP mandate and former anti-steering rules.  These theories have been raised for the first time in expert reports.  This Court already rejected Plaintiffs' "belated request to reopen the pleadings," holding that their "argument that they intend to pursue the same claim decided in the Epic Games/Apple case is not consistent with their [then] proposed complaint which does not address any of those factual issues at all."  Dkt. 573 at 7.  Plaintiffs cannot circumvent that ruling by introducing the same or other unpled theories "identified only in [their] expert report[s]."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011); *see Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).  Adding such theories would be futile in any event because they too challenge refusals to deal on rivals' preferred terms.  Further, Apple's restrictions on developers' payment-processing choices or on steering to alternative sales channels affect Plaintiffs only derivatively at best and such effects are "too remote" and speculative to support standing.  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).  For example, the Ninth Circuit previously held that assessing damages for developers at the first step "would require a protracted and speculative inquiry," thus making any such damages "not readily . . . calculable."  *Epic Games*, 67 F.4th at 1003.  Derivative consumer harm—dependent on intervening decisions by third party developers—is not the direct, non-speculative injury the antitrust laws require.  *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541–43 (9th Cir. 1987).

**Fifth**, any theories based on in-app purchasing are also entirely or largely time-barred.  Dkt. 228 at 4 (reserving statute of limitations defenses). In-app purchases were introduced in 2009, yet Plaintiffs did not mention them in their original Complaint, First Amended Complaint, or Second Amended Complaint.  *See* Dkts. 26, 81, 111.  If Plaintiffs are found to have timely raised any in-app purchase theories in the TAC, filed September 17, 2020 (*see* Dkt. 229), any damages under those theories must be limited to the four years preceding that date under 15 U.S.C. § 15b.

**Sixth**, Plaintiffs' damages model is legally insufficient even aside from the defects that will be documented in Apple's forthcoming decertification motion.  The model assumes *all* of Apple's challenged conduct is unlawful and does not disaggregate the effects of any specific conduct.  A damages model must "segregate the losses caused by acts which were not antitrust violations from those that were."  *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159–60 (9th Cir. 2015).  If Plaintiffs cannot "show[] . . . a clear connection between that which makes [the defendant's] conduct unlawful and an injury actually sustained," the Court must grant summary judgment for Apple because Plaintiffs have not furnished evidence to prove an "essential element" of their claims.  *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 556 F. Supp. 825, 1058 (D.D.C. 1982), *aff'd*, 740 F.2d 980 (D.C. Cir. 1984).  Thus, summary judgment for Apple on *any* piece of this case would doom Plaintiffs' damages model, warranting summary judgment on the entire case.

**Finally**, Apple is entitled to summary judgment on the individual claims of named plaintiff Hayter.  Hayter suffered no overcharge according to Plaintiffs' own damage model.  *See* Dkt. 957-17 ¶ 19.

**GIBSON DUNN**

July 9, 2025
Page 4

Respectfully submitted,

/s/ *Cynthia E. Richman*

Cynthia E. Richman

*Counsel for Apple Inc.*