**GIBSON DUNN**

Cynthia Richman
Partner
T: +1 202.955.834
M: +1 202.701.3424
CRichman@gibsondunn.com

July 9, 2025

<u>VIA CM/ECF</u>

The Honorable Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street
Oakland, CA 94612

Re:   *In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714-YGR (N.D. Cal.)

Dear Judge Gonzalez Rogers:

Apple Inc. ("Apple") respectfully requests a pre-filing conference regarding anticipated *Daubert* motions to exclude opinions of two of Plaintiffs' 12 expert witnesses: (i) Mr. Darryl Thompson and (ii) Prof. Alan MacCormack (including reliance on those opinions by other experts).  *See* Dkt. 940 at 2 n.1.  Apple reiterates and preserves its objections to the opinions and methodologies of Prof. Daniel McFadden (now implemented by Dr. Minjae Song) and Dr. Rosa Abrantes-Metz, which are largely unchanged from the class certification phase and remain inadmissible for the same reasons.  *See* Dkts. 476-11, 581-4, 688-1.  Apple also reserves the right to object at trial and/or move *in limine* against or to strike the admission of expert opinions that do not comply with the Federal Rules of Evidence or Civil Procedure.

**Grounds for Excluding Opinions of Mr. Darryl Thompson:**



**Gibson, Dunn & Crutcher LLP**
1700 M Street, N.W.  |  Washington, D.C. 20039-4504  |  T: 202.955.8500  |  F: 202.467.0539  |  gibsondunn.com

**PUBLIC REDACTED VERSION**

July 9, 2025
Page 2



**Grounds for Excluding Opinions of Prof. Alan MacCormack:** Apple also seeks leave to exclude Prof. MacCormack's opinions about developers' gross profit margins. To estimate damages, Prof. McFadden's model needs to estimate consumers' price sensitivity. The model does this through a regression analysis using the App Store transactions data and developer cost data. *See* Dkt. 688-1 at 19–20. At class certification, the Court criticized the developer cost data Prof. McFadden used in his model—which then comprised "the financial records of six developers"—as "not fulsome" and stated that it "would expect a more fulsome analysis or reliance on an industry expert for purposes of trial." Dkt. 630 at 10 n. 8; *see also* Dkt. 789 at 13 (similar).

Plaintiffs have now turned to a new expert, Prof. MacCormack, who is an adjunct professor at Harvard Business School. He claims to analyze developer cost and revenue data subpoenaed by

Plaintiffs to come up with ranges of developer gross margins in each App Store genre (or in genre groupings of Prof. MacCormack's invention). Dr. Song inputs these ranges into Prof. McFadden's damages model supposedly to "refine" its estimates of price sensitivity. But the data underlying Prof. MacCormack's opinions are no more fulsome than Prof. McFadden's, and his opinions in any event are untethered to the facts or his expertise.

First, his opinions are not "based on sufficient facts or data." Fed. R. Evid. 702(b). Prof. MacCormack estimates separate gross margin ranges for 13 App Store genres (or invented genre groupings). Each contains *thousands* of diverse developers, but Prof. MacCormack extrapolates from a tiny handful—including just six in the Games genre (by far the biggest source of spending) and only five in the major Music + Entertainment grouping. His arbitrary genre groupings even leave some critical categories missing; for instance, he lacks any developer data from social media developers to opine about the average profits for "Social Networking + Lifestyle" apps. Prof. MacCormack makes no claim that his collections of developer data are a statistically valid sample or otherwise representative for any genre group—in fact, he does not even know how Plaintiffs selected which developers to subpoena.

Second, in any event, Prof. MacCormack's opinions are not "relevant to the task at hand" because he measured the wrong costs for Prof. McFadden's model. *Daubert*, 43 F.3d at 1315. Prof. McFadden's model assumes developers set prices based on their marginal costs—i.e., the increase in cost from producing one more unit of output. Prof. McFadden agreed in deposition that the "unit of output" in his model, for which marginal costs must be estimated, is an additional app download or in-app purchase. But Prof. MacCormack conceded he does not understand the model or its inputs, and received no guidance from Prof. McFadden or Dr. Song. As a result, his margin ranges are based on developers' costs *per user*, not per transaction—an irrelevant measure misfit to estimating consumer demand in the McFadden-Song model, as Prof. McFadden himself admits.

Prof. MacCormack's opinions are the dominant input in the McFadden-Song model. Dr. Song testified that Prof. MacCormack's "margin bounds" are an inseparable part of the model. And Apple's expert, Prof. Mark Watson, finds that the model's price sensitivity regression spews nonsense without the bounds. The model thus requires relevant and statistically reliable margin bounds, but Prof. MacCormack has not provided these. Worse, these unreliable bounds force the model to produce false damages estimates—never less than $16 billion. Prof. Watson shows that it is the bounds, and not the billions of App Store transactions, that drive Plaintiffs' damages by providing the model's results when completely random numbers are used instead of actual transactions data. *See Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 315–16 (excluding damages model where consumer demand estimates relied on insufficient and irrelevant data); *In re Google Play Store Antitrust Litig.*, 2023 WL 5532128, at *9 (N.D. Cal. Aug. 28, 2023) (similar).

***

Apple proposes filing *Daubert* motions as to Mr. Thompson and Prof. MacCormack not exceeding 15 pages per motion. Subject to the Court's availability, Apple requests a pre-motion conference on **July 18, July 22, July 30, or August 1, at 2:00 p.m. PT**, concurrent with a pre-filing conference on Apple's anticipated motion for summary judgment. *See* MSJ Pre-filing Letter.

Respectfully submitted,

*/s/ Cynthia Richman*
Cynthia E. Richman, *Counsel for Apple Inc.*