# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**MARK C. RIFKIN**
DIRECT DIAL: 212-545-4762
rifkin@whafh.com

July 14, 2025

<u>VIA ECF</u>
Hon. Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street Oakland, CA 94612

Re:   *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR (N.D. Cal.)

Dear Judge Gonzalez Rogers:

Plaintiffs respectfully submit this letter in response to Apple's request for leave to file a motion for summary judgment. Apple's arguments mostly raise factual disputes as to which Plaintiffs have a wealth of contrary evidence, including expert testimony from two Nobel Prize-winning economists, Profs. Joseph Stiglitz and Daniel McFadden, whom Apple has not sought to exclude or limit. Apple also seeks to resurrect legal arguments it has lost at every stage of the case.

*First*, whether the App Store is a two-sided transaction platform is a jury question. *See Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal. 2023), ECF No. 592 at 23 (instructing the jury to determine whether a market is two-sided); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1203 (9th Cir. 1997) ("[W]hat constitutes a relevant market is a factual determination for the jury"). Against Apple's position, four of Plaintiffs' experts dispute that the App Store is a two-sided *transaction* platform like the Supreme Court described in *Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) ("*Amex*"). *See, e.g.*, Stiglitz Opening Report, § IX; Stiglitz Rebuttal Rep. § II.B (██████████████████████████████████████████████████████████████████████; Song 6/4/25 Dep. Tr. 76:17-19 ██████████████████████████████████████████). Apple has not moved to strike or limit their testimony. In *Amex*, the Supreme Court described a two-sided transaction platform as one "supplying **only one product** – transactions – which is jointly consumed" by the parties on both sides of the platform. *Id.* at 545 n.8 (emphasis added). Here, the App Store has two **different** product streams: a "downstream" market selling apps and in-app content to consumers and an "upstream" market selling distribution services to developers. *Apple Inc. v. Pepper*, 587 U.S. 273, 287 (2019). Apple does *not* sell apps or in-app digital content to developers. The Supreme Court did not identify the App Store as a two-sided transaction platform because there is no "single, simultaneous transaction between participants." *Amex*, 585 U.S. at 545; *see also* Stiglitz Rebuttal Rep., ¶ 64; Stiglitz 5/30/25 Dep. Tr. 180:9-12 (████████████████████████).

Whether the App Store has two sides does not matter. *Amex* merely held that, for two-sided transaction platforms, the plaintiff must show anticompetitive impact on the "market as a whole." 585 U.S. at 547. After considering all aspects of the App Store, Plaintiffs' experts will testify that (1) Apple monopolizes both of the platform's product streams; (2) Apple charges prices to both consumers and developers far above the competitive level determined by Rosa Abrantes-Metz, Ph.D.; and (3) Prof. McFadden's damages model allocates damages between consumers and developers. *See* McFadden 2025 Opening Rep., § III.A; Song Opening Rep.

*Second*, the unilateral "refusal to deal" doctrine does not preclude Plaintiffs' Section 2 claims. Two federal courts rejected similar arguments from the country's largest tech monopolists, including Apple, earlier this year. *See United States v. Apple, Inc.*, 2025 WL 1829127, at *11-12

(D.N.J. June 30, 2025); *United States v. Google LLC*, 2025 WL 1132012, at *46 (E.D. Va. Apr. 17, 2025). This Court should be the third. "[T]he refusal to deal doctrine does not apply to Apple's alleged conduct in this case because Plaintiffs do not allege Apple is failing to deal with its [app distribution] rivals, but rather that Apple's conduct is imposing restrictions on developers and [iOS Device] users." *Apple, Inc.*, 2025 WL 1829127, at *12. Specifically, Apple imposes restrictions on developers (through the Developer Program License Agreement) and consumers (through the iOS Software License Agreement) that Prof. Stiglitz will testify effectively amount to tying agreements that restrict competition in the aftermarket for the sale of iOS apps and in-app content. The "refusal to deal" doctrine does not shelter this conduct. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 n.8 (1992) ("Assuming, *arguendo,* that Kodak's refusal to sell parts to any company providing service can be characterized as a unilateral refusal to deal, its alleged sale of parts to third parties on condition that they buy service from Kodak is not."); *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 982 (9th Cir. 2023) (the DPLA is a bilateral agreement).

*Third*, Apple's "product design" defense ignores well-established precedent that "changes in product design are not immune from antitrust scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly under Section 2." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998 (9th Cir. 2010). Like Google's monopoly over the search ads market, Apple created and maintained a monopoly over the sale of iOS apps and in-app content through product design decisions that "coerce[] consumers" and developers into conducting business with each other through only the App Store, thereby "imped[ing] competition." *Google*, 2025 WL 1132012, at *46; *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 230 (S.D.N.Y. 2019) (rejecting "product design" defense where the defendant's "tying agreements" and "product disparagement" had the "overall effect" of "coerc[ing] consumers to purchase [from Keurig], rather than to compete on the merits").

*Fourth*, Apple erroneously argues that IAP and anti-steering are new to this case. Plaintiffs' original complaint included broad allegations of Apple's monopolistic and anticompetitive conduct. ECF No. 1, Original Complaint ¶ 86 ("Apple has acquired monopoly power in the iPhone Applications Aftermarket through unlawful willful acquisition or maintenance of that power."). Apple's IAP and anti-steering rules are major parts of that monopoly conduct. Plaintiffs' first motion for class certification, filed more than four years ago, discussed how "Apple . . . protects its App Store from competition from other platforms **by enforcing the 'anti- steering' policy**." See ECF No. 643-1 at 5 (emphasis added); *see also id.* at 7. The Court certified a Class of 186 million consumers who purchased iOS apps or "paid Apple for one or more in-app purchases." ECF No. 789 at 2. Apple never argued that Plaintiffs were impermissibly expanding their Complaint. Instead, it vigorously pursued discovery of the IAP and anti-steering claims in depositions (McFadden 11/5/21 Dep. Tr., 18:18-25, 19:1-13, 184, *et. seq.*; McFadden 8/3/21 Dep. Tr., 29:3-13; Stiglitz 6/25/25 Dep. Tr., 227:3-11 & 271:4-11) and interrogatories (Pls. Response to Apple's First Set of Int., No. 2). Indeed, **before** seeing Plaintiffs' expert reports, Apple offered its own expert report disputing the IAP and anti-steering claims. *See* Sundararajan Opening Rep. ¶ 10. As long as the defendant has fair notice of the claims and underlying facts, the complaint need not identify all legal arguments. *See, e.g., Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015).

There is nothing derivative, remote, or speculative about Plaintiffs' IAP and anti-steering claims. Apple sells both apps and in-app digital content **directly** to consumers, who pay higher prices ***to Apple*** for both as a result of Apple's anticompetitive practices.[1] Apple's argument flouts

---

[1] In *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir.

the Supreme Court's decision that Plaintiffs are direct purchasers from Apple in the downstream market. *Apple Inc. v. Pepper*, 587 U.S. 273, 283 (2019) (a "downstream consumer who has purchased a good or service directly from the retailer" has direct purchaser standing to sue).

*Fifth*, Plaintiffs' allegations are not time-barred. Following the broad original complaint, more than four years of motion practice and discovery have included both IAP and anti-steering. However, should the Court find that Plaintiffs did not sufficiently allege these specific wrongful acts until 2020, the Third Amended Complaint relates back to the original complaint because the theories arise from the same anti-competitive conduct and nucleus of operative facts, and Apple has long had notice of these theories. *See Percy v. San Francisco General Hosp.*, 841 F.2d 975, 981 (9th Cir. 1988); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("relation back doctrine of Rule 15(c) is 'liberally applied'"). Alternatively, it is within the Court's discretion to amend the pleadings at trial to conform with the evidence adduced during discovery. *See, e.g.*, *Cole v. Layrite Products Co.*, 439 F.2d 958, 961 (9th Cir. 1971); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1512 (9th Cir. 1986).

*Sixth*, Apple's argument that Plaintiffs' damages model cannot accommodate liability on some but not all bases, is incorrect or at best premature. Prof. McFadden's econometric model ███████████████████████████████████████████████████████████████ *See* Abrantes-Metz Opening Rep. ¶ 23. Apple's authority, *Magnetar Technologies Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159–60 (9th Cir. 2015), is inapposite. The expert there proved no causal link between *any* anticompetitive conduct and injury, and simply "'compared Magnetar's "actual [results] versus their business plan[, which] showed that they did not achieve their business plan."'" *Karma Automotive LLC v. Lordstown Motors Corp.*, 2022 WL 17886045, at *23 (C.D. Cal. Nov. 18, 2022) (Selna, J.).

Finally, the Court should reject Apple's desire to move for summary judgment on Mr. Hayter's individual claims. Under the protocol entered by Judge Hixson (at Apple's insistence), Apple is currently the only party that has access to the data that links transactions to an individual's identity. *See* ECF Nos. 882. Apple only agreed to produce to (1) JND, payor data without transactions, and (2) Prof. McFadden and Dr. Song's team, transactions data without information about payors. *See* ECF No. 919 at 1-2. Apple has deprived Plaintiffs of the data linking payors to transactions, promising to provide it after trial. Plaintiffs have no ability to confirm or deny Apple's allegations. If Apple wishes to proceed with this argument, it should immediately produce the withheld data.

Therefore, none of Apple's arguments warrants a summary judgment motion. Nor should the Court permit Apple to raise at the hearing any decertification motion. The Court should require Apple to follow its Orders and file a letter and not allow Apple to surprise Plaintiffs at the hearing.

---

2001), hospitals that paid **nothing** to the tobacco companies lacked standing to them for the increased cost of treating illnesses "derivative of" smokers' injuries. And it is nothing like *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541 (9th Cir. 1987), where the shipworkers had no direct relationship to the seafood producer defendants who depressed their wages.

                                                          Respectfully yours,

                                                          Mark C. Rifkin

cc:   All Counsel (via ECF)