UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>Date:<br>Time:<br>Courtroom:   1, 4th Floor |
|---|---|

Before the Court is Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment. The Court, having considered all the papers submitted by the parties, the arguments presented at the evidentiary hearing on Apple's motion, and the relevant authorities, HEREBY ORDERS AS FOLLOWS:

1. The Court GRANTS Apple's Motion for Summary Judgment in its entirety; and

2. The Court directs that JUDGMENT SHALL BE ENTERED for Apple and against Plaintiffs on all claims under Section 2 of the Sherman Act asserted in the Third Amended Complaint, for the reasons below:

    a. Plaintiffs bear the burden of defining and proving a relevant market for their Section 2 claims. *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373–74 (9th Cir. 1989). Plaintiffs' definition of the relevant market as a one-sided aftermarket for iOS apps is unsupported by the record and contrary to binding precedent. The App Store is a two-sided transaction platform serving both developers and consumers. *See Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1000–01 (9th Cir. 2023); *see also Coronavirus Rep. v. Apple Inc.*, 85 F.4th 948, 956–57 (9th Cir. 2023); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1111 n.3 (N.D. Cal. 2022); *see also In re Google Play Store Antitrust Litig.*, 2025 WL 2167402, at *6–7 (9th Cir. July 31, 2025). Disinterested academic studies corroborate the App Store's two-sided nature. *See* Sundararajan Rep. ¶ 145. But Plaintiffs have adduced no proof of a two-sided market in which they can sustain their claims. Where a plaintiff "cannot sustain a jury verdict on the issue of market definition, summary judgment is appropriate." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).

    b. Apple's policy of barring competing distribution of native iOS apps, including third-party iOS app marketplaces (whether within the App Store or via sideloading); its technical design of iOS software that implements a closed system; its policy of barring in-app bypass of Apple's payment system for digital in-app purchases; and its former anti-steering policy, are lawful refusals to deal

on terms and conditions preferred by rivals or would-be competitors. Plaintiffs expressly claim here that Apple has refused to deal with "developers who sell [or would sell] apps in competition with Apple" in "the iOS applications aftermarket." Third Am. Compl. ¶¶ 79, 84. But Apple is not required under antitrust law to assist competitors or alter its business model to accommodate them. *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450 (2009); *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). Plaintiffs cannot meet the narrow exception to refusal-to-deal doctrine from *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). Nor can Plaintiffs establish any exception to the presumption that Apple's refusal to license intellectual property rights is justified. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1216 (9th Cir. 1997).

c. Apple's technical design of iOS software that implements a closed system constitutes lawful product innovation. Indeed, "Apple's on-device protections," including "sandboxing and enforcement of code signing and entitlements," are "an essential part of iOS's approach to security." Ex. 3 (Federighi Dep.) at 78:15–20, 201:13–204:10, 356:19–22, 360:19–24, 363:12–18, 364:12–20. Apple's technical restrictions challenged here bestow benefits on consumers, and Plaintiffs have identified no valid "associated anticompetitive conduct." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP,* 592 F.3d 991, 998, 1000 (9th Cir. 2010).

d. Plaintiffs' new theories regarding Apple's policy of mandating developers' use of Apple's payment system for digital in-app sales and its prior anti-steering policy, not pleaded in the operative complaint and raised for the first time in expert reports, are not properly at issue in this case. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Amendment of the operative complaint to add claims borrowed from the *Epic Games, Inc. v. Apple Inc.* case

would be prejudicial and untimely. *See* Dkt. 573 at 7–8 (finding that "plaintiffs were unduly delayed in seeking leave to add" claim from "the Epic Games/Apple case"). Further, amendment would be futile as Plaintiffs lack antitrust standing to challenge the anti-steering policy, given that, *inter alia*, their purported injuries are not proximately caused and involve a significant amount of speculation. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534–45 (1983); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455–56 (9th Cir. 2021); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987); *see also Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023) (holding that "[c]alculating the damages caused by the anti-steering provision" for developers alone "would require a protracted and speculative inquiry into" the "availability" of substitute platforms, the number and tendencies of multi-homing users, and the "substitution rate" among those users).

e. Claims related to alleged restrictions on in-app purchasing are time-barred because in-app purchasing for digital goods was introduced in 2009, but Plaintiffs did not seek to challenge it until September 2020, when they filed the Third Amended Complaint. *See* Dkts. 1, 26, 82, 111; *see also* Dkt. 228 (Apple objecting that any "in-app purchase[]" theories in Third Amended Complaint are time-barred); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); 15 U.S.C. § 15b (setting forth four-year statute of limitations).

f. Plaintiffs have also failed to establish injury or nonspeculative damages on their antitrust claims. Their claim of injury rests on the McFadden-Song damages model, which is unreliable and inadmissible as explained in the Court's concurrent ruling on Apple's *Daubert* Motion to Exclude the Opinions of Mr. Darryl Thompson & Prof. Alan McCormack. *See Rebel Oil*, 51 F.3d at 1433. And Plaintiffs cannot show nonspeculative damages because the model rests on the presumed unlawfulness of the conduct found to be lawful above. *See Noohi*

*v. Johnson & Johnson Consumer Inc.*, 2025 WL 2089582, at *6 (9th Cir. July 25, 2025); *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992).

    g. Plaintiff Edward Hayter's individual claims fail because, as Plaintiffs' own damages model calculates, Hayter was benefited by the challenged conduct, Ex. 98 (Prince Rebuttal Rep.) ¶ 38, and thus has proved no injury or damage.

3. This Judgment applies to all members of the following certified class, with the exception of those individuals who timely requested exclusion:[1]

> All persons in the United States, exclusive of Apple and its employees, agents and affiliates, and the Court and its employees, who purchased one or more iOS applications or application licenses from Defendant Apple Inc. ("Apple"), or who paid Apple for one or more in-app purchases, including, but not limited to, any subscription purchase, for use on an iPhone or iPad ("iOS Device") at any time since July 10, 2008 (the "Class Period"). The Class is limited to those persons who paid more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases from any one Apple ID account.

**IT IS SO ORDERED.**

DATED: _____, 2025

_____
THE HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[1] [This paragraph should be omitted if the Court grants Apple's Motion to Decertify the Class.]