# EXHIBIT A

**PAGES 1 - 91**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonee Gonzalez Rogers, Judge

```
IN RE: APPLE iPHONE ANTITRUST    )    No. 4:11-cv-06714-YGR
LITIGATION,                      )
_____)
```

Oakland, California

Tuesday, October 17, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:

        Wolf Haldenstein Adler Freeman & Herz LLP
        270 Madison Avenue
        New York, New York 10016
  **BY:**  **MARK C. RIFKIN, ATTORNEY AT LAW**
        **THOMAS H. BURT, ATTORNEY AT LAW**

        Wolf Haldenstein Adler Freeman & Herz LLP
        750 B Street, Suite 1820
        San Diego, California 92101
  **BY:**  **RACHELE R. BYRD, ATTORNEY AT LAW**
        **BETSY C. MANIFOLD, ATTORNEY AT LAW**
        **STEPHANIE AVILES, ATTORNEY AT LAW**

(Appearances continued on the following page)

**REPORTED BY:  April Wood Brott, CSR No. 13782, Official United States Reporter**

1      **THE COURT:** Stop. Stop. Stop. Could you give me a
2  paragraph number?
3      **MS. RICHMAN:** Sure, Your Honor. It's the Song merits
4  report at paragraph 11.
5      **THE COURT:** Okay. Go ahead.
6      **MS. RICHMAN:** "In Professor McFadden's prior report,
7  it was not possible for him to identify individual class
8  members or the monetary harm attributable to each class member,
9  due to the limitations of the app store transactions data
10 available to him at that time. He was, instead, only able to
11 demonstrate how he could allocate class-wide damages to
12 anonymized Apple IDs."
13    That is exactly what Dr. Song did in his supplemental
14 report of August 1, which was, I should say, you know,
15 completely procedurally untimely, and should be stricken.
16 We've asked for it to be stricken because it was not disclosed
17 in either his opening or rebuttal reports.
18     **MR. RIFKIN:** Your Honor, may I be heard on that?
19     **THE COURT:** I'm to you now.
20     **MR. RIFKIN:** Okay. Thank you.
21    When we moved to amend the class definition, we did so on
22 two different fronts. We asked the Court to amend the class
23 definition to clarify that it was limited to iPhones and iPads,
24 and, as Ms. Richman confirmed, the Court did grant that motion
25 and dismissed the iPod touch claims from this case on the

1  merits.
2      The second part of the motion was a request that the class
3  definition be amended in only one respect, and that was to have
4  the $10 spending cutoff applied not at the level of the Apple
5  ID but instead to have it apply at the --
6      **THE COURT:** It doesn't say at the Apple ID. This
7  definition doesn't say that.
8      **MR. RIFKIN:** Your Honor, with respect, we think it
9  does. It says --
10     **THE COURT:** It doesn't.
11     **MR. RIFKIN:** Your Honor, it says, "The class is
12 limited to those persons who paid more than $10 in total to
13 Apple during the class period for IOS applications and in-app
14 purchases from any one Apple ID account."
15     **THE COURT:** I read that differently. It means it can
16 be one, or it can be more than one, but it is any.
17     **MR. RIFKIN:** And Your Honor --
18     **THE COURT:** Any, and it has always been any. So to
19 the extent that you disagree, you're wrong.
20     **MR. RIFKIN:** Well, Your Honor, it says "any one Apple
21 ID account." I don't want to belabor the point, but when --
22     **THE COURT:** Has -- you -- the problem is, one, it's
23 never been that way; two, nothing that was ever done within the
24 confines of this case schedule suggested that it wasn't that
25 way. And if the Court of Appeal goes back and rereads all of

1   the transcripts from all of the hearings that we have had over
2   years, they will see that that is what was intended.
3           Now, could I have put "any one or more"?  I guess I could
4   have.  But it is not what anybody thought.  Why?  Because we
5   knew -- back at the beginning, we knew that you could have a
6   person who had one account or multiple accounts, and that's why
7   you had to do the matching, because when you received the
8   information of multiple accounts, someone who was harmed could
9   turn into someone who was not harmed.
10          But that didn't mean that it -- you had to have multiple
11  accounts.  So it could be any.
12              **MR. RIFKIN:**  Your Honor, may I try to help
13  explain this --
14              **THE COURT:**  You're not going to recreate history the
15  way you'd like to.
16              **MR. RIFKIN:**  I --
17              **THE COURT:**  Hold on.  I'm going to allow you to make
18  your record --
19              **MR. RIFKIN:**  Thank you.
20              **THE COURT:**  -- but I think that what you're doing is
21  so disingenuous about what has happened in this case,
22  Mr. Rifkin.  It is absolutely disingenuous.
23              **MR. RIFKIN:**  Your Honor, I apologize if we have
24  created that impression, but I assure you that is not the case.
25  And if I can, I would like to go through step by step so that

1   we understand this.

2           **THE COURT:** Is there some reason you didn't do that in
3   your briefing?

4           **MR. RIFKIN:** We thought we had. And in fact, when we
5   made the motion in April of 2025 and we asked the Court -- and
6   now I'm reading from Docket Number 951, when we asked the Court
7   to apply the $10 spending cutoff to individual payors rather
8   than Apple IDs, we thought in that motion --

9           **THE COURT:** But --

10          **MR. RIFKIN:** -- we explained it.

11          **THE COURT:** -- what you're talking about --

12          **MR. RIFKIN:** Your Honor, if I may try to explain this
13  to you so that at least you understand our position. You may
14  agree or disagree with it, but we would at least like you to
15  understand our position.

16      When we moved for class certification, the reason we wrote
17  the proposed class definition the way we did was because at
18  that point in time -- and now I'm talking about 2021 and 2022
19  and 2023 and 2024. At that point in time, the only data we had
20  was ID-level data. We did not have payor-level data. There
21  was no way for us to apply a cutoff at the payor level. We
22  could not have.

23      Let me be clear about that. We could not have aggregated
24  accounts so that we applied the $10 threshold to groups of
25  accounts that belonged to the same person. Yes, Your Honor,

1  that you would be able to once I certified the class, which is
2  what I allowed you to do.  But make no mistake.  I never
3  thought that you would have one consumer with one account.  We
4  never talked about it that way.
5      And in fact, Song's got analysis.  That's not how it
6  worked.  That's not reality.
7           **MR. RIFKIN:**  Your Honor, if I said that at any point
8  in time, I didn't mean to say that.
9           **THE COURT:**  Well, why would I --
10          **MR. RIFKIN:**  But if Your Honor has understood that, I
11 haven't been clear enough.  We have always known -- always
12 known -- and we have always said to the Court --
13          **THE COURT:**  Then you should --
14          **MR. RIFKIN:**  -- there are more accounts --
15          **THE COURT:**  -- stop raising -- stop.  You need to stop
16 raising some notion that somehow I took you off track by not
17 granting a motion so late in the game, in April of this year,
18 to do something that I always believed was done already.
19     So I don't know what kinds of games people play, but I'm
20 certainly not -- this case is way too old to be doing things at
21 the last minute anymore.
22          **MR. RIFKIN:**  Your Honor, before we made that motion --
23 before we made that motion, we did exactly what we said to the
24 Court we would do, exactly what Your Honor directed us to do.
25 Dr. Song -- once Dr. Song had all of the data from Apple and he

1  had the matching that Apple provided, matching transactions to
2  payors -- once he had that data, which he did not have when the
3  class was certified in 2024.  We knew we would get that after
4  class certification.  Once he got that, he did what we said we
5  were going to do.
6       **THE COURT:**  All right.
7       **MR. RIFKIN:**  He did what the Court directed us to do.
8  He ran that data using Professor McFadden's model and the
9  matching that Apple gave to him.  He matched transactions to
10 payors.  He applied the $10 cutoff at the payor level, and he
11 computed these numbers, including the total damages number,
12 which is 20.1 billion dollars -- that's a public number -- and
13 both the 5.2 percent with Apple's price tiers removed or 5.9
14 percent with Apple's price tiers in place.
15      He did that, and he reported that in his March '25 expert
16 report.  The only way he was able to report it in March of 2025
17 was because he did it.  And he was only able to do it once we
18 got the data from Apple for Mr. Thompson to do his work and Dr.
19 Song to do his work, which was after class certification had
20 been granted.
21      We did everything --
22      **THE COURT:**  There is then absolutely no reason --
23 right?  If you're saying that, there is absolutely no reason
24 why the supplemental report should come in and the supplemental
25 opinions, because he did what he needed to do back in --

```
 1              MR. RIFKIN:  I agree.
 2              THE COURT:  -- March.  All right.
 3              MR. RIFKIN:  I agree.
 4              THE COURT:  So the Daubert or the motion to strike the
 5     supplemental report of Song is unopposed because there's no
 6     need for it.
 7              MR. RIFKIN:  Because apparently Your Honor thought
 8     that's how it was going to be done all along.  We agree.  It's
 9     unnecessary.
10              THE COURT:  All right.  That motion is granted.
11              MS. RICHMAN:  Thank you, Your Honor.
12              THE COURT:  So on the 5.2 to 5.9 --
13              MR. RIFKIN:  Yes.
14              THE COURT:  The problem, as I understand it, is we
15     don't know if that's a good number because it, by definition,
16     has to rely on Thompson's analysis.  Is that Apple's
17     perspective?
18              MS. RICHMAN:  That's part of it, yes, Your Honor.
19     It's not just the number of uninjured, even for the individuals
20     who Thompson says are injured because we don't know if he did
21     the matching correctly.  And actually, we know he did not do it
22     correctly.
23              THE COURT:  Ms. --
24              MS. RICHMAN:  You would really have to go --
25              THE COURT:  Ms. Richman?
```

1     **MS. RICHMAN:**  Yes, Your Honor.

2     **THE COURT:**  You and I are going to disagree on the
3  issue of percentages and actual numbers.

4     **MS. RICHMAN:**  That's fine, Your Honor.

5     **THE COURT:**  So it's preserved, if it ever needs to be.
6  You and I are going to disagree on that issue.

7     **MS. RICHMAN:**  Understood.

8     **THE COURT:**  So I don't want to have argument on that.
9  I understand your perspective.

10     What concerns me -- what concerns me is the reliability of
11  Thompson's analysis.  That's what I want to focus on next.

12     **MS. RICHMAN:**  Yes, Your Honor.

13     **MR. RIFKIN:**  Your Honor, would -- if my --

14     **THE COURT:**  Hold on.  No.

15     **MR. RIFKIN:**  Okay.

16     **THE COURT:**  It is not, in my view, Apple's burden.  It
17  is Plaintiffs' burden.  And it is Plaintiffs' burden because at
18  the time I certified the class, you were missing this piece.  I
19  told you you were missing this piece.  I told you you had to do
20  it, and if you couldn't do it, I would de-certify.  So I want
21  to make sure the record is clear and that you understand,
22  because I saw something in the briefing about the notion that
23  this was somehow Apple's responsibility.  In my view, it is
24  not.  It is your burden under Rule 23.

25     Again, as I understand it, Apple has shown me a number of

1    discovery to identify those plaintiffs' data.  That's what we
2    used to calculate the damages.  We didn't go in and search for
3    anything that we didn't have.
4            **THE COURT:**  We have four named plaintiffs.
5            **MR. SWANSON:**  Right.
6            **THE COURT:**  They have to get on the stand and testify.
7    Did you associate their names with the data and give it to the
8    plaintiffs?
9            **MR. SWANSON:**  We took the data they gave us.  We asked
10   them, "Please tell us which accounts," because we didn't want
11   to root around in the data, especially, obviously, given that
12   the way that Mr. Thompson has dealt with it, it's generally not
13   possible to do it like with Rob and Robert.  So we just took
14   the data they gave us.  And Professor --
15           **THE COURT:**  They identified the accounts --
16           **MR. SWANSON:**  Yes -- -
17           **THE COURT:**  -- of their clients?
18           **MR. SWANSON:**  Yes.
19           **THE COURT:**  And you identified the accounts of your
20   clients, and you couldn't run the model as to them?
21           **MR. FREDERICK:**  Your Honor --
22           **THE COURT:**  Just yes or no before you explain.
23           **MR. FREDERICK:**  I don't know the answer to that.
24           **THE COURT:**  How can you not know the answer?
25           **MR. FREDERICK:**  Because I didn't do that analysis.  I

```
 1    personally did not do that analysis.
 2            THE COURT:  On the plaintiffs' side, I've got ten
 3    lawyers --
 4            MR. FREDERICK:  Your Honor --
 5            THE COURT:  -- over there.
 6            MR. FREDERICK: -- they didn't move for summary
 7    judgment as to those three.  They only moved as to Mr. Hayter.
 8    I think this is --
 9            THE COURT:  You're objecting on the grounds that they
10    didn't give you the data, and yet you had it.
11            MR. FREDERICK:  Do we have someone who can address
12    this?
13            MR. RIFKIN:  Yes.  I'm happy to, Your Honor.
14      The reason for it is this:  Dr. Song computed the damages
15    for the entire database.  He didn't compute the damages for any
16    one individual.
17            THE COURT:  You have four named -- Mr. Rifkin, how
18    many class action trials have you tried?
19            MR. RIFKIN:  Four, Your Honor.  Four.
20            THE COURT:  And did you not have named plaintiffs on
21    the stand who talked about their damages?
22            MR. RIFKIN:  No, Your Honor. We had named plaintiffs
23    who talked about their purchases.  None of them talked about
24    their damages.  If you want to ask me if --
25            THE COURT:  Did they --
```

1     **MR. RIFKIN:** -- the named plaintiffs are going to come
2     in and say, "I had an iPhone. I had an iPad. I bought apps.
3     I bought in-app content." The answer to all of those questions
4     is yes, yes, yes, and yes.
5     **THE COURT:** And damages relative to them? You're not
6     asking for --
7     **MR. RIFKIN:** They will not be asked to testify as to
8     their damages.
9     **THE COURT:** That wasn't my question.
10    **MR. RIFKIN:** I'm sorry. I misheard. I thought you
11    asked if I was going to have the named plaintiffs testify as to
12    their damages.
13    **THE COURT:** Someone. Isn't someone going to testify
14    as to the damages of the actual named plaintiffs?
15    **MR. RIFKIN:** No, Your Honor, it's not our intention to
16    do that.
17    **THE COURT:** How can you have -- how can you establish
18    injury, which -- Article III injury. How can you establish
19    that without a reference to damages by the named plaintiffs?
20    **MR. RIFKIN:** Your Honor, the named plaintiffs are
21    members of the class, and all of them will have been damaged by
22    the same conduct. It turns out that all three of them --
23    **THE COURT:** That's the point.
24    **MR. RIFKIN:** Sorry. Three of the four of them have
25    been damaged under any scenario, and one of them has been

1  damaged under one scenario.
2          If it's necessary -- if Your Honor believes it's necessary
3  to have Dr. Song calculate the damages for those plaintiffs,
4  then Dr. Song needs to know that -- what accounts those
5  plaintiffs had and what transactions are associated with it
6  because he does not have that information now because Apple
7  didn't give it to him.
8          **THE COURT:** Apple -- he has --
9          **MR. RIFKIN:** When Apple --
10         **THE COURT:** -- the accounts?
11         **MR. RIFKIN:** -- delivered them -- of course.
12         **THE COURT:** Right, because it's your client.
13         **MR. RIFKIN:** Of course.
14         **THE COURT:** Your client knows what accounts they have.
15         **MR. RIFKIN:** Of course.
16         **MR. SWANSON:** And Your Honor, can I give you a
17  citation?
18         **THE COURT:** So your clients know what accounts they
19  have, correct?
20         **MR. RIFKIN:** Yes.
21         **THE COURT:** So Apple doesn't have to give you your own
22  clients' information. You already have that information. It's
23  your client.
24         **MR. RIFKIN:** We have that information, yes.
25         **THE COURT:** But you just said a moment ago you

1    couldn't because you're waiting for Apple.
2            **MR. RIFKIN:**  No, no, no.
3            **THE COURT:**  To foot the bill.
4            **MR. RIFKIN:**  And I'm sorry if I confused the Court.
5    Again, I apologize.
6            Dr. Song calculated aggregate damages.  The plaintiffs
7    will testify as to their membership in the class.  Dr. Song is
8    not going to testify as to any individual class members'
9    damages, but if the Court requires us to testify as to named
10   plaintiffs' damages, he can extract that information the same
11   way Apple did.
12           It's there.  It's in the records.  He hasn't taken that
13   step because he was asked to compute damages on a class-wide
14   basis.  That's the answer to the question.  Every one of these
15   plaintiffs will identify their transactions.
16           **THE COURT:**  The problem --
17           **MR. RIFKIN:**  They will identify their accounts.
18           **THE COURT:**  The problem is that when you have a model
19   that has to be run in order to determine whether any particular
20   person has been harmed versus not harmed, it is inconceivable
21   to me that you did not know that you had to run that for your
22   own named plaintiff clients.
23           **MR. RIFKIN:**  Well, he has done it.  He just doesn't
24   know which -- and the reason for it is this:  He knows that a
25   payor -- by a value.  It's not a real name.  This is Dr. Song.

```
 1   He knows the value.  If we -- if we knew the value that was
 2   associated with that name, we could tell him, and he could say,
 3   "Here's the damages."
 4       But to have him go back and run the model again just for
 5   these -- to extract the damages for those accounts, I suppose
 6   he can do it, and if the Court believes it's necessary for him
 7   to identify individual damages, he can do it the same way Apple
 8   did it.
 9       That's how they know Mr. Hayter has damages one way but
10   not another way, because we gave it to them both ways.  That's
11   how they know that all the other plaintiffs had damages both
12   ways, or surely they would have raised this issue as to the
13   other three plaintiffs.
14           **MR. FREDERICK:**  They didn't move for summary judgment
15   as to the other three, Your Honor.
16           **THE COURT:**  I agree.
17           **MR. FREDERICK:**  They only moved as to Mr. Hayter.  And
18   so I think that, coming to you now, the issue --
19           **THE COURT:**  There is -- I agree.  There is no motion
20   in front of me, but it is inconceivable to me that you all
21   didn't think that you had to run it as to your own clients.
22           **MR. FREDERICK:**  I think that, Your Honor, the question
23   is are these representative plaintiffs.
24           **THE COURT:**  Right, and if --
25           **MR. FREDERICK:**  If they are --
```

```
1                    CERTIFICATE OF REPORTER
2         I certify that the foregoing is a correct transcript from
3    the record of proceedings in the above-entitled matter.
4
5    DATE:   October 17, 2025
6
7                  _____
8                      April Wood Brott, CSR No. 13782
9
10
...
25
```