# EXHIBIT B

HIGHLY CONFIDENTIAL

1         UNITED STATES DISTRICT COURT
2         NORTHERN DISTRICT OF CALIFORNIA
3         OAKLAND DIVISION
4
   _____
5  In re Apple iPhone Antitrust    CASE NO.
6  Litigation                      4:11-cv-06714-YGR
7  _____
8
9             HIGHLY CONFIDENTIAL
10
11      Videotaped deposition of MINJAE SONG, Ph.D.,
12  held at the offices of Gibson, Dunn & Crutcher LLP,
13  1700 M Street, N.W., Washington, D.C., before Misty
14  Klapper, Registered Merit Reporter, Certified
15  Shorthand Reporter, Registered Professional
16  Reporter, Realtime Systems Administrator and Notary
17  Public, commencing at 9:13 a.m. EDT, June 4, 2025.
18
19
20
21  JOB No. 7337086
22  PAGES 1 - 285

Page 1

|    |    |
|----|----|
| 1  | identify my transaction record in the |
| 2  | transactions data. |
| 3  | Q.   All right.  Could you turn to |
| 4  | page 44 of your expert report.  I want to ask |
| 5  | about Figure 13. |
| 6  | Figure 13 presents estimates of |
| 7  | class-wide damages and numbers of harmed and |
| 8  | unharmed class members using Professor |
| 9  | McFadden's model as implemented by you, |
| 10 | correct? |
| 11 | A.   Correct.  Correct. |
| 12 | Q.   It has the -- the two scenarios |
| 13 | with and without price tiers, correct? |
| 14 | A.   Correct. |
| 15 | Q.   Okay.  With the price tier |
| 16 | simulation, about 10.98 million class members |
| 17 | are unharmed; is that right? |
| 18 | A.   That's what I see in the table. |
| 19 | Q.   Okay.  And when -- well, do you |
| 20 | have an explanation as to why more class |
| 21 | members are unharmed when you implement the |
| 22 | price tier simulation? |

1   A.  I believe Professor McFadden
2   explained that in his earlier reports.  My
3   recollection is that with price tiers, apps
4   or items prices are less likely to change in
5   the presence of commission changes.  So that
6   could be the main reason to see higher --
7   slightly higher numbers for unharmed payors.
8   Q.  And you find lower class-wide
9   damages when you apply the price tier
10  simulation, correct?
11  A.  I have a lower number, a slightly
12  lower number, for net harm under the price
13  tier scenario than flexible but-for pricing
14  scenario.
15  Q.  Do you have an explanation for
16  why that is?  Is it the same explanation?
17  MR. RIFKIN:  Objection to form.
18  THE WITNESS:  I think that is
19  part of the explanations.
20  BY MR. SWANSON:
21  Q.  Do you have an opinion about
22  whether any of the named plaintiffs in this

Page 262

1            case were injured by Apple's conduct?
2                   A.     Again, for the -- the reason
3            that -- that I explained, I -- I -- I -- I
4            didn't check it.
5                   Q.     You haven't calculated what the
6            named plaintiffs' damages, if any, would be
7            under your model?
8                          MR. RIFKIN:   Objection to form.
9                          THE WITNESS:   Again, I -- I
10                  have not found ways in which I can
11                  identify named plaintiffs in the
12                  transactions data.
13                         BY MR. SWANSON:
14                  Q.     Well, don't you have their
15           transactions?
16                  A.     But, again, having transactions
17           from somebody is not enough to find their
18           transactions in the transactions data.
19                  Q.     Well, you don't have to find it.
20           You can use your model, can't you, to see
21           what the prices of those transactions would
22           be in the but-for world?

Page 263

1        A.    The -- oftentimes the -- the
2    names of apps and items that we know of are
3    not necessarily the same as the names of apps
4    and items recorded in the transactions data.
5    Names change.  Also, developers use different
6    descriptions or names for the transactions
7    data, or developers or Apple.
8              So knowing the name is not enough
9    to know the but-for prices of those apps and
10   items that we know of.
11       Q.    So if plaintiffs win this case
12   and there's a need to prove up individual
13   recoveries after trial, how are class members
14   going to prove how much of the damages they
15   should get if these problems are so
16   insuperable?
17             MR. RIFKIN:  Objection to form.
18             THE WITNESS:  Well, I don't
19        think it's -- it's my assignment to
20        make a judgment.  But I believe Apple
21        has their information, for either
22        E-mail address or credit card

1      information, which I -- I don't have.
2                BY MR. SWANSON:
3       Q.     Yes, but you have the named
4  plaintiffs' transaction information.  You
5  don't need it from Apple.
6                MR. RIFKIN:  Objection to form,
7       asked and answered.
8                THE WITNESS:  Again, let me
9       give you an example.
10               Say -- okay.  Say I spent 9 --
11      $9.99 on, say, Spoti- -- I'm sorry,
12      let me pick a different one -- some
13      game app.
14               BY MR. SWANSON:
15      Q.     Um-hmm.
16      A.     Okay.
17               Finding that transaction in the
18  transactions data, even though I know which
19  apps I bought and which items I bought, are
20  not necessarily a straightforward exercise.
21               BY MR. SWANSON:
22      Q.     You --

1    A.    But I believe Apple has my E-mail
2    address.  So they can check.  They can check
3    how much I spent on what.
4    Q.    Did you review Professor Prince's
5    declaration submitted in connection with the
6    motion to redefine the class?
7    A.    I did read his declarations --
8    declaration.
9    Q.    And you responded to it at least
10   in part, correct?
11   A.    Correct.
12   Q.    Did you investigate his finding
13   regarding Mr. Hayter and whether or not he
14   suffered damages according to your model?
15   A.    I did not investigate that.
16   Q.    Okay.  Do you have any reason to
17   disagree with Professor Prince's opinion that
18   Mr. Hayter was not injured, according to your
19   model?
20         MR. RIFKIN:  Objection to form.
21         THE WITNESS:  I did not look
22   into that.

Page 266

1       BY MR. SWANSON:
2       Q.      Okay.  Did you -- do you think
3   that there is some -- that Professor Prince
4   was unable to identify the apps that
5   Mr. Hayter had purchased?
6               MR. RIFKIN:  Objection,
7       foundation.
8               THE WITNESS:  Again, I -- I --
9       I haven't looked into that.
10              BY MR. SWANSON:
11      Q.      Do you plan to do that at any
12  point before trial, look at the damages of
13  the named plaintiffs?
14      A.      If asked and if I have all the
15  information that I need, I can.
16      Q.      Okay.  Well, let's assume you
17  have all the information you need.  Do you
18  need to be asked in order to do that?
19      A.      I -- I have to think about it.
20      Q.      Okay.  Let's turn to Appendix F.2
21  of your report, page 109.
22              In this appendix you present an

Page 267

HIGHLY CONFIDENTIAL

1    analysis concerning Apple's introduction of
2    new price tiers in March 2023, correct?
3         A.   Correct.
4         Q.   Did you assume that developers
5    responded to the change in prices very
6    promptly?
7         A.   The -- the Figure 31 shows -- or
8    summarizes how -- how they reacted in some
9    ways.
10        Q.   And you believe that that is
11   reliable information?
12        A.   Well, Figure 31 and analysis
13   describes in F -- Appendix F.2 is my analysis
14   of Apple's transactions data.
15        Q.   Do you draw any conclusions in
16   your report from the analyses in
17   Appendix F.2?
18        A.   I believe I explained what I did
19   and what I found in this appendix section.
20        Q.   Are -- are those findings
21   important to any of your opinions about
22   damages?

Page 268

```
 1                    CERTIFICATE OF NOTARY

 2              I, MISTY KLAPPER, the officer before

 3      whom the foregoing deposition was taken, do

 4      hereby certify that the witness whose testimony

 5      appears in the foregoing deposition was duly

 6      sworn by me; that the testimony of said witness

 7      was taken by me in shorthand and thereafter

 8      reduced to typewriting by me; that said deposition

 9      is a true record of the testimony given by said

10      witness; that I am neither counsel for, related

11      to, nor employed by any of the parties to the

12      action in which this deposition was taken; and,

13      further, that I am not a relative or employee

14      of any attorney or counsel employed by the

15      parties hereto, nor financially or otherwise

16      interested in the outcome of this action.

17

18

19

20

21              Misty Klapper, RMR, CSR, RPR,

22              RSA and Notary Public
```

Page 281