THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CAELI A. HIGNEY, SBN 268644
  chigney@gibsondunn.com
JULIAN W. KLEINBRODT, SBN 302085
  jkleinbrodt@gibsondunn.com
DANA L. CRAIG, SBN 251865
  dcraig@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

CYNTHIA E. RICHMAN, D.C. Bar No. 492089*
  crichman@gibsondunn.com
HARRY R. S. PHILLIPS, D.C. Bar No. 1617356*
  hphillips@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Apple Inc.*

*admitted pro hac vice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | No. 4:11-cv-06714-YGR<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION FOR RENEWED REQUEST FOR EVIDENTIARY HEARING RE: APPLE'S FRE 702 AND *DAUBERT* OBJECTIONS TO DARRYL THOMPSON'S OPINIONS**<br><br>The Honorable Yvonne Gonzalez Rogers |

Almost a week after the hearing on Apple's motion to exclude Plaintiffs' expert Darryl Thompson, Plaintiffs filed what they deceptively call an "unopposed" request for a four-hour evidentiary hearing to allow Thompson to further explain his opinions. Dkt. 1065-2 at 4. Plaintiffs say they are merely "join[ing] and renew[ing]" Apple's request for an evidentiary hearing made as part of its *Daubert* motion, *id*. at 1, but in reality Plaintiffs filed an unconditional opposition over six weeks ago, submitting a Thompson declaration instead of advocating for live testimony, Dkts. 1031-5, 1031-6. Plaintiffs cannot "renew" a request for a hearing that they knowingly waived. *See Power v. Hewlett-Packard Co.*, 2023 WL 2705237, at *13 (W.D. Pa. Mar. 30, 2023) (denying request for "testimonial *Daubert* hearing" where plaintiff did not make request "prior to [motion] hearing"). For its part, Apple requested a *Daubert* hearing to aid the Court's understanding of Thompson's analysis. Dkt. 1002-1 at 40. But the Court's comments at oral argument make clear that it understands exactly what Thompson did, and failed to do, here. The Court recognized—and Plaintiffs do not dispute—that Thompson made "glaring errors" as part of his analysis. Dkt. 1062 (Oct. 14, 2025 Hr'g Tr. ("Tr.")) at 33:19–34:9, 35:14–20; *see also id.* at 47:21–25 (noting Rob/Robert and King Salmon issues); Dkt. 1065-2 at 2 (Plaintiffs acknowledging errors). While Plaintiffs say they now need a testimonial hearing to explain "why" he made these errors, Dkt. 1065-2 at 1–2, the "why" of his errors at this late juncture is irrelevant.

Plaintiffs "[i]n the alternative" seek to file a supplemental report "to update [Thompson's] analysis." *Id.* at 4. But, even if this were appropriate (it is not), a significant "part of the problem" is his lack of expertise: he "has never done this for trial." Tr. at 33:19–34:9. He cannot remedy his lack of qualification with another report. And there is neither good cause nor sufficient time for such supplementation. Plaintiffs' motion should be denied because it is an improper, eleventh-hour request to introduce new expert opinions over three months past the close of expert discovery. A hearing or supplement would not aid the Court in resolving Apple's motions, and a supplement would make the current schedule unworkable. The rest of the motion is improper sur-reply and should be stricken.

**1.** Plaintiffs' request for an evidentiary hearing or supplemental report are improper pleas to redo Thompson's unreliable work well after expert discovery has closed. The Court should not "reward plaintiffs for their failure to identify a reliable [statistics] expert by imposing significant costs on" Apple (as well as on the Court). *In re Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and*

*Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 350 (6th Cir. 2024). Plaintiffs have known since 2022 that they would need to identify class-wide and individual damages before trial. Dkt. 630 at 26. In mid-2024, Thompson reviewed a sample of Apple's payor data and opined that the data could be "deduplicated/rolled up in order for an accurate total transaction amount to be determined" for each payor. Dkt. 906-2 ¶ 4, 6. Thompson then had ample opportunity to explain what he did to identify class members—in his March 7 declaration (later designated an expert report), Dkt. 1003-35, his untimely April 16 supplemental report, Dkt. 1003-36, and his September 2 declaration, Dkt. 1031-6, submitted in opposition to the motion to exclude him. As this Court has made clear, experts cannot wait until after the close of discovery to provide "further explanation" for their analyses. Tr. 88:3–17. Thompson "has to have it in his report," "[h]e can't just make it up at trial," or—as Plaintiffs propose— at a belated evidentiary hearing. *Id.* That Thompson's methods, in Plaintiffs' telling, require further explication "at this late stage" only underscores they would not assist a jury. Dkt. 1065-2 at 3.

Plaintiffs were on "notice of the exacting standards" of *Daubert* and were not entitled to "present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455–56 (2000). Instead, as Judge Corley instructed the parties in *In re Qualcomm Antitrust Litigation*, at the close of expert discovery, the "Defendant was entitled to a *complete* disclosure of all opinions—not a sneak preview of a moving target." 2023 WL 7393012, at *3 (N.D. Cal. Nov. 7, 2023), *affirmed in pertinent part sub nom. Key v. Qualcomm Inc.*, 129 F.4th 1129 (9th Cir. 2025). The Federal Rules do not allow a litigant "who wishes to revise her disclosures in light of her opponent's challenges" to "add to them to her advantage after the court's deadline for doing so has passed." *Id.* "Litigation requires choices," and Plaintiffs' reliance here on Thompson "was a strategic choice that ultimately proved unsuccessful." *Id.* at *4. It does not warrant "a do-over [that] would result in even more years of overly expensive litigation." *Id.* As this Court previously noted, "We've been at this since 2011 . . . . We [a]ren't doing this again." Dkt. 980 at 3:10– 17. An evidentiary hearing would serve no purpose, and the motion to hold one should be denied.

**2.** Plaintiffs' justifications for an evidentiary hearing or supplement also fail on their own terms. Plaintiffs first say a hearing is needed so that Thompson can explain why he was unaware that he had data reflecting full credit card numbers. To be clear, it is undisputed that Apple produced *more*

1  data than Plaintiffs requested, than Thompson deemed sufficient to perform his analyses, and than Apple was ordered to produce. Dkt. 1061-2 at 2. Plaintiffs have not identified *any* misleading statements by Apple. The only purpose of a hearing would be for Thompson to explain his own failure to adequately analyze the data he had—apparently because the produced credit card values were hashed. Dkt. 1065-2 at 1 (citing Dkt. 1031-6 ¶ 7(g)). That hashing was thoroughly discussed at the October 14 hearing and in the supplemental submissions. *See* Dkt. 1061-2; Dkt. 1062. And the relevant values were hashed when Apple's expert Prof. Stodden reviewed them and recognized they *could not* represent only the last four credit card digits. *See* Dkt. 1047-17 at 82:6–83:2, 92:11–21. Thompson's lack of expertise—not the hashing—prevented him from understanding and effectively using the data.

Nor can Thompson's misunderstanding of the credit card numbers explain away the errors stemming from his methods. Plaintiffs say he "could have avoided the 'Kim' problem" if he had known "he had complete payment card numbers," but that is nonsense. Dkt. 1065-2 at 1. Believing that he had only four credit card digits would lead to *under*-aggregation. His Kim-type errors are *over*-aggregation based on faulty matching criteria having nothing to do with credit cards. (And even with only four digits, he could have checked for the red flag that "Kim" used thousands of different cards.) Increased use of credit card data for matching could identify *more* matches but would do nothing to untangle the Kim error. Plaintiffs say Thompson "can explain [these issues] in person better than can be conveyed in writing," *id.*, but he was never able to explain the Kim issue—either "in person" at deposition, Dkt. 1003-17 (Thompson Dep.) 148:10–153:16, or in a written declaration three months later, Dkt. 1031-6 ¶ 37. The same goes for errors like identifying Cynthia Richman and her daughter as two separate payors, both using Ms. Richman's credit card. He testified—live and in person—that he *recognized* their use of the same credit card but was confident that they were separate payors due to his faulty notion that a payor need not be the person who actually paid. Dkt. 1003-17 (Thompson Dep.) 156:2–164:9. That legally erroneous definition of "payor"—now embraced by Plaintiffs, *see* Dkt. 1031-5 at 12–14—wouldn't change with a better understanding of the credit card data. More fundamentally, no better grasp of the credit card data would change the fact that Thompson "has never done this for a trial" and is unqualified to do so now. Tr. 33:19–34:24.

**3.** Granting Plaintiffs' untimely request for an evidentiary hearing would unduly and

unnecessarily burden the Court. In the October 14 hearing, the Court heard multiple hours of argument that focused largely on Thompson's analysis. No one at the hearing, including Plaintiffs' counsel or the Court, requested another evidentiary hearing so that Thompson could explain that analysis. Indeed, the extra time needed to schedule, prepare for, and hold an evidentiary hearing at this stage would delay resolution of the parties' pending motions and further compress the time needed to prepare for trial.

Plaintiffs' alternative request—that Thompson be granted six weeks to redo his analysis—is utterly incompatible with the trial date the Court recently reaffirmed and would require the parties and Court to redo nine months of expert discovery, briefing, and pretrial preparations in a matter of weeks. Thompson's deduplication analysis is only the first in a series of steps that would be necessary for Plaintiffs to prepare revised damages analyses in an effort to meet their burden under Rule 23(b)(3). Once Thompson prepares a new potential class member list, Apple would need to match that list to the produced transaction data, and Dr. Song would need to use the revised transaction data to adjust the output of Prof. McFadden's model. *See* Dkt. 1003-30 (Stodden Reb. Rep.) ¶ 13 n.11; Dkt. 1052-25 (Song Opening Rep.) ¶¶ 68–70. Apple's experts would need to rebut these "previously undisclosed opinions" with new reports. *See Padilla v. United States*, 2019 WL 13107441, at *2 (S.D. Cal. July 31, 2019). Even if Apple's experts only did the bare minimum (which would be unacceptably prejudicial in a case of this magnitude, where Plaintiffs seek $60 billion in trebled damages), and even assuming conservative time estimates, the new analyses could not be completed until after the January 9, 2026 final pretrial conference. *See* Dkt. 940 at 3.[1] The parties and Court would be left with just three weeks to re-brief, re-argue, and decide Apple's decertification and *Daubert* motions—as well as any other pretrial issues impacted by Thompson's new work—prior to the first day of trial on February 2, 2026. There is not nearly enough time before trial for Thompson to start over at square one.

Plaintiffs opposed Apple's motion to continue the trial, arguing that with Thompson's analysis, they had "identified all potential [class] members," and that trial needed to move forward without delay. Dkt. 1009 at 3–5. Since that motion was denied, Apple has been working diligently to prepare for the February 2026 trial in line with the Court's clear preference.

---

[1] The above estimates assume six weeks for Thompson to prepare a new potential class list; two weeks of Apple machine time to match that list to transactions; and (an insufficient) four weeks for Apple's experts to load the new transaction data, re-run analyses, troubleshoot any issues, and write up results.

**4.** The remainder of Plaintiffs' administrative motion is an unauthorized sur-reply aimed at Apple's decertification and *Daubert* arguments and should be stricken. Plaintiffs' argument that "it would be legal error to decertify the class" based on Thompson's failures, Dkt. 1065-2 at 3 n.3, has nothing to do with the propriety of an evidentiary hearing. It is an attempt to further argue certification without leave to do so, N.D. Cal. L.R. 7-3(d), with arguments that should have been raised in their opposition brief, *see Holley v. Gilead Scis., Inc.*, 2020 WL 13557961, at *1 n.1 (N.D. Cal. 2020).

Regardless, since Plaintiffs have raised the issue, they are wrong that Thompson's failings have nothing to do with class certification or can be addressed during "post-trial claims administration." Dkt. 1065-2 at 3. In fact, they said the opposite just last week: When the Court made "clear" that "if [Thompson's] analysis doesn't come in, there is no class—the class has to be de-certified," Plaintiffs *agreed*—"That is correct. We don't dispute that." *See* Tr. at 31:16–32:15. The Court has consistently emphasized over the last three and a half years that "Plaintiffs are not representing a settlement class" and cannot wait until "*after* trial" to proffer "a common approach to measuring damages." Dkt. 630 at 26. The Court certified the present class based on Plaintiffs' representations that they could and would reliably "calculate both aggregate and individual damages *before trial*," Dkt. 789 at 24 n.17, and Thompson was engaged specifically for that purpose. Plaintiffs did not live up to their promise. They attempt to frame the issue as not being "[]able to identify class members . . . with 100% certainty," Dkt. 1065-2 at 3 n.3, but the problem is far worse than that: There is no evidence that Plaintiffs were anywhere close to "certainty" because they did not calculate an error rate. *See* Dkt 1003-30 (Stodden Reb. Rep.) ¶¶ 94–97; Tr. at 8:1–9. Plaintiffs' failure to prove they have satisfied predominance is fatal. *See Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–54 (2011).

*Briseno* and *Levya* say nothing different. The *Briseno* court simply declined to impose an additional "administrative feasibility" requirement under Rule 23, ruling instead that "definitional deficiencies" like a class's inclusion of "some members who were not injured" should be resolved under "predominance." *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) (citation omitted). And in *Levya v. Medline Industries*, 716 F.3d 510, 514 (9th Cir. 2013), the evidence showed the defendant's payroll "database would enable the court to accurately calculate damages" for each individual. Because Thompson's methodology failed to do that, this case lacks what *Levya* had.

| | | |
|---|---|---|
| 1 | DATED: October 23, 2025 | GIBSON, DUNN & CRUTCHER LLP |
| 2 | | By: */s/ Cynthia E. Richman* |
| 3 | | Theodore J. Boutrous Jr. |
| 4 | | Daniel G. Swanson<br>Cynthia E. Richman |
| 5 | | Caeli A. Higney<br>Julian W. Kleinbrodt |
| 6 | | Dana L. Craig |
| 7 | | Eli M. Lazarus<br>Harry R. S. Phillips |
| 8 | | *Attorneys for Defendant Apple Inc.* |