# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Case No. 4:11-cv-06714-YGR

-----------------------------------x

IN RE APPLE iPHONE ANTITRUST LITIGATION

-----------------------------------x

December 15, 2022

9:08 a.m.

Videotaped Deposition of ROSA ABRANTES-METZ, Ph.D., taken by Defendant, pursuant to Notice, held at the offices of Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, New York, before Todd DeSimone, a Registered Professional Reporter and Notary Public of the State of New York.

Page 1

conduct by one type of players, they should be considered independently of whether or not economists classify that as a true multisided platform.

Q. Do grocery stores experience indirect network effects?

A. I have never measured them, but in the general broad sense, indirect network effects tends to be defined and applied only in the context of multisided platforms, but more generally what refers to is whether the value of that business, in this case a grocery store, to one side, depends on how many people exist on the other side.

So if you apply that concept more broadly, consumers like to go to grocery stores that have a lot of variety in general. So consumers will value how many suppliers there is on the other side, and the suppliers want to go to a place where selling in a grocery store where there is a lot of consumers.

So, you know, if you apply that general concept of indirect network effects

Page 102

more broadly, one finds that there are a variety of businesses where those types of interactions do happen.

Q. In your opinion, is the Apple App Store a two-sided transaction platform?

A. So I have not put forward an opinion on that because it is not necessary for the opinion I'm providing, for the methodology that I put forward in order to determine the but-for commission rate. It applies whether at the end of the day the Court finds that we are in the presence of a multisided platform or not.

Q. Well, whether or not you put the opinion forward, do you have an opinion as to whether the Apple App Store is a two-sided transaction platform as an economist?

A. I'm not going to put forward an opinion. I was not asked to put forward that opinion and I'm not going to put it forward.

Q. Well, I'm asking you if you have that opinion. If you don't want to answer that, we are going to have the Court

Page 103

have you answer it.

A. No, I don't have that opinion, because typically one has to consider several things that I have not considered here.

I did consider the possibility that it is, and therefore I developed a methodology based on economic principles that can sustain whether the Court decides at the end of the day that it is a multisided platform or whether it decides it is not.

Q. And do you discuss that in your report where you offer a methodology that does not depend on whether or not the App Store is a multisided transaction platform?

A. The methodology itself stands whether it is or is not, and I will be happy to explain to you why that is the case.

Q. Are you aware that in the Epic Games case Dr. Evans concluded that the App Store was a two-sided transaction platform?

A. I don't particularly recall, no.

Page 104

Q. You don't recall reading that testimony?

A. No, I don't recall reading his testimony. I read -- with respect to that part -- I read his testimony with respect to other parts. I did read the Epic decision when it came out.

Q. And do you recall that the Court in that decision ruled that the App Store is a two-sided transaction platform?

A. I believe I recall that, yes.

Q. When you read that, do you recall whether you agreed or disagreed with that conclusion?

MR. RIFKIN: Objection to the form of the question.

A. So I didn't conduct any of the analysis, and I did not necessarily agree or disagree. What is important is that the methodologies developed -- whether the methodologies developed do stand if the Court decides that it is a multisided platform or not.

For example, in Sabre, I was asked to assume it was a multisided

Page 105

27 (Pages 102 - 105)

platform because that was the reason the whole case was being redone. So I was asked to assume. Here I was not asked to provide an opinion.

Q.    If you had been asked to provide an opinion, how would you go about determining whether the App Store is a two-sided transaction platform?

A.    Similarly to what I have done, for example, in Sabre, the type of analysis that I conducted in Sabre, even though I was told to assume it was a multisided platform, I did conduct analysis that at the end of the day were consistent with the view of the Court that the case had to be redone using -- in the context of a multisided platform.

Q.    Do you agree that both users and developers consume App Store transactions?

MR. RIFKIN:  Objection to the form of the question.

A.    They use the App Store to sell and acquire apps, and the App Store is the place where such transaction occurs. They

Page 106

actually are buying and selling the apps.

Q.    So do you agree there are two sides here?

A.    Yes, there are two sides.

Q.    So do you agree there is a platform here?

A.    There is a digital marketplace, yes.

Q.    And that fits the definition of a platform that you use?

A.    Most broadly, yes.

Q.    So it is a platform with two sides, so is the only thing you haven't studied whether it is a transaction platform?

A.    Typically a transaction platform, as the Court decided in AMEX, is important in the view of the Court to consider the two sides, because typically indirect network effects are present that are important to consider, when you look at one side you should consider the effect that side's conduct may have on the other side.

So there are analyses that

Page 107

could be conducted to test for the strength of those network effects, and they could be both qualitative and quantitative, and I haven't conducted any of those. I conducted those for Sabre, I conducted those for SIBS, and I have not conducted those analyses here.

Q.    Do you agree that the relevant App Store product is transactions?

A.    Transactions of apps, yes.

Q.    Do you agree that the App Store cannot sell transactions to either consumers or developers individually and separately?

A.    Individually or separately, well, I agree that if the transaction is going to happen, it needs to have a buyer and a seller, so that's when the transaction is executed.

Q.    The transaction must take place simultaneously with both a consumer and a developer, correct?

MR. RIFKIN:  Objection to the form of the question.

A.    The purchase and sale of apps

Page 108

does happen simultaneously.

Q.    Do you agree that to optimize sales the App Store must find the balance of pricing that encourages the greatest number of matches between consumers and developers?

A.    Typically the economist thinks of the problem the platform solves as maximizing profits and not optimizing sales.

Q.    Fair enough. Do you agree that to maximize profits the App Store must find the balance of pricing that encourages the greatest number of matches between consumers and developers?

MR. RIFKIN:  Can I ask to have that question read back again? I'm sorry, I apologize.

(The record was read.)

A.    In order to maximize profits, it's not necessarily the case that -- well, let me strike that.

It is not necessarily the case that maximizing the transactions maximizes profits. So the platform will maximize the

Page 109

28 (Pages 106 - 109)

profits, and, yes, it may do so by maximizing what we call the net price, which is the price to one side minus the price to the other, and that's really -- you can interpret that as what the platform gets to keep. And after that decision is taken, the economist can think of these things sequentially. Once the net price is taken then the platform will allocate how much will go to each of the sides.

Q. Do you have an understanding as to whether the plaintiffs in this case define the market as one-sided or two-sided?

A. My understanding is that that is not an opinion that -- my understanding is that that opinion would be rendered at the merits stage. I do believe as of now that the understanding of plaintiffs is that the App Store is seen more as a retailer.

Q. A one-sided business?

A. Yes.

Q. Do you have an understanding as to what the plaintiffs allege the relevant

product is in this case?

A. The purchase and sale of iOS apps and in-app.

Q. Is that the same as transactions?

A. I'm sorry, I don't understand the question.

Q. Is that the same as transactions?

A. Transactions of apps.

Q. So the answer is yes?

A. Yes.

MR. RIFKIN: Objection to the form of the question.

A. Well, transactions of apps, yes. So the purchase and the sale is a transaction of apps.

Q. If you could turn to paragraph 20 again, page 7. I want to ask you a question about the first sentence. You say "As Professor McFadden explains in his opening report, the App Store commission is effectively the 'price' that Apple charges for selling iOS apps and in-app content." Is that your opinion as well as

Professor McFadden?

A. My opinion is that the net price that Apple, and as I refer to Apple, I'm referring to Apple App Store, that Apple charges is net of the two sides, and it is conceptually a commission rate minus a subsidy, the commission rate being paid by the developer and the subsidy, for example, that would be paid to the consumer, or you can also think of the price that is paid by the developer and you could potentially think of the price that a consumer would be paid.

We don't see in the actual world that consumers are paying a positive price in that specific transaction. We also don't observe subsidies to consumers typically at the transaction level. There is a few loyalty programs, but typically loyalty programs, you accumulate points that you may use later in different apps or in different products. So typically loyalty programs influence more where you purchase rather than whether you make that specific purchase.

So we don't tend to see subsidies to consumers, and in the but-for world I put forward with two competitors at least and multi-homing of everybody, it is unlikely that subsidies would happen. So from that point of view, and as I put forward, the net price that I calculate is the price charged to the developers, because I find that it is unlikely that subsidies would exist to any meaningful extent.

And that is also why, if I may say that that is why my methodology stands whether one thinks of these as a one-sided market or a two-sided market. If it is a one-sided, then, you know, we are really just computing the commission directly in my methodology. If it is a two-sided, I'm computing a net price, but given that I believe that there wouldn't necessarily be meaningful subsidies, it still stands that the price I calculate is the commission.

Q. In your opinion, does Apple charge a price to the consumer side of the App Store platform?

29 (Pages 110 - 113)

Veritext Legal Solutions
866 299-5127