# EXHIBIT 8

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Case No. 4:11-cv-06714-YGR

- - - - - - - - - - - - - - - - - - x

In re: Apple iPhone Antitrust
Litigation

- - - - - - - - - - - - - - - - - - x

                    May 23, 2025
                    9:05 a.m.


        CONFIDENTIAL VIDEO RECORDED DEPOSITION of
ROSA ABRANTES-METZ, Ph.D., an Expert Witness for
the Plaintiffs herein, taken by the Defendant,
held at the offices of Gibson Dunn & Crutcher
LLP, 200 Park Avenue, New York, New York, before
Sara K. Killian, a Registered Professional
Reporter, Realtime Certified Reporter and Notary
Public.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL

R. Abrantes-Metz, Ph.D.

respect to those arguments. 09:25:50

Q.  Okay. 09:25:57

Are any of the court's class 09:25:59 certification -- strike that. 09:26:02

Are any parts of the court's 09:26:05 class certification opinion relevant to your 09:26:07 economic opinions? 09:26:11

A.  I didn't use them to come up 09:26:17 with my economic opinions. A vast majority 09:26:19 of my report already existed before that 09:26:26 order. I am just pointing as to the court's 09:26:28 view with respect to arguments, particular 09:26:32 arguments back and forth between the two 09:26:35 sides. 09:26:38

Q.  Just to clarify, a vast 09:26:39 majority of your merits report already 09:26:42 existed before February 2024? 09:26:45

MR. RIFKIN:  Objection to form. 09:26:49

A.  A vast majority of my merits 09:26:50 report, probably 70, 80% is a combination of 09:26:53 my two class reports. Those were produced 09:26:59 before the class. 09:27:02

What I do now that is new is 09:27:03 updating numbers. So that's what I meant to 09:27:06

Page 22

R. Abrantes-Metz, Ph.D.

say, that a vast majority of what the 09:27:12 content of these reports was already in 09:27:15 place before the decision. 09:27:17

Q.  Understood. 09:27:20

Why don't we look at an example 09:27:23 of how you've used the court's decision? 09:27:25

If you go to page 12, there's a 09:27:28 block quote in paragraph 28. 09:27:34

And you say the arguments -- 09:27:41 the line -- the sentence before the block 09:27:43 quote -- the argument that: My model is 09:27:46 merely an accounting equation was also 09:27:49 rejected by the court in the class 09:27:52 certification order, approving my 09:27:54 methodology. 09:27:56

Do you see that? 09:27:57

A.  Yes. 09:27:58

Q.  Is it your view that the court 09:27:59 approved your methodology in her class 09:28:01 certification opinion? 09:28:06

A.  To the extent that the 09:28:10 methodology was able to be presented at the 09:28:11 merits stage, yes. 09:28:14

Q.  Is anything in this quote from 09:28:22

Page 23

R. Abrantes-Metz, Ph.D.

the class certification decision relevant to 09:28:24 your economic opinions? 09:28:28

A.  Only to the extent that 09:28:34 confirms my economic opinions that I 09:28:35 previously had. 09:28:38

Q.  Okay. Thank you. 09:28:52

Do you agree, 09:28:59 Dr. Abrantes-Metz, that it's necessary to 09:29:02 define a relevant market in order to offer 09:29:04 an opinion about market pricing? 09:29:08

MR. RIFKIN:  Objection to form. 09:29:13

A.  I know that is what courts 09:29:21 expect. As an economist, no, I don't think 09:29:23 it is always necessary to define a relevant 09:29:28 market. 09:29:31

Q.  Do you think it is necessary to 09:29:32 determine whether the relevant market is one 09:29:35 or two sided in order to offer an opinion 09:29:39 about market pricing? 09:29:42

MR. RIFKIN:  Objection to form. 09:29:44

A.  In what context? 09:29:46

Q.  In the context of determining a 09:29:50 but-for commission rate, for example? 09:29:53

A.  In this particular case where I 09:29:57

Page 24

R. Abrantes-Metz, Ph.D.

am testifying on and all the parts that 09:29:59 relate to what I did, I didn't have to form 09:30:01 an opinion on whether we have a one- or 09:30:05 two-sided platform in order to form my 09:30:11 opinion of the but-for commission rate 09:30:13 because it wouldn't impact the commission 09:30:16 rate. It was not necessary. 09:30:21

Q.  So your testimony is that it is 09:30:31 not necessary to define a relevant market or 09:30:33 determine whether the relevant market is one 09:30:36 or two sided in order to offer an opinion 09:30:38 about market pricing? 09:30:42

MR. RIFKIN:  Objection to form. 09:30:44

A.  That is not what I said. 09:30:45

Q.  Okay. 09:30:47

Why don't you try it again? 09:30:47

A.  What I said -- and I may say it 09:30:50 in somehow different words -- but is that 09:30:55 courts do expect a market definition 09:30:57 analysis. 09:31:00

Economists -- some of them -- 09:31:03 think that not always one has to have a 09:31:05 market definition analysis, but Professor 09:31:08 Stiglitz did undertake the market definition 09:31:10

Page 25

7 (Pages 22 - 25)

CONFIDENTIAL

R. Abrantes-Metz, Ph.D.

analysis.          09:31:12

With respect to what is    09:31:13 relevant and needed for the opinion I put    09:31:16 forward, I addressed whether it would make a    09:31:20 difference whether we have one or two sides    09:31:23 in this platform.          09:31:28

More specifically, whether it    09:31:34 is or not a multi-sided platform given    09:31:35 traditional concepts of multisided platform    09:31:39 and I determined that for more assignment,    09:31:42 that didn't make a difference and therefore    09:31:45 I did not have to take a position on that.    09:31:47

Q.    Okay.          09:31:51

Do you remember at your last    09:31:53 deposition you testified it was not    09:31:54 necessary to define a relevant market at the    09:31:56 class certification phase?          09:31:59

MR. RIFKIN:  Objection to form.    09:32:00

A.    I have a recollection of saying    09:32:04 something that -- of the type that a    09:32:06 relevant market was put forward, but my    09:32:13 understanding was that the more specific    09:32:17 issues and the debate of relevant market    09:32:20 will happen later on at the merit stage.    09:32:23

Page 26

R. Abrantes-Metz, Ph.D.

Q.    Okay.          09:32:25

It's your understanding that    09:32:27 there has been an opinion offered about the    09:32:28 relevant market in this case?          09:32:31

A.    Yes.          09:32:32

Q.    Okay.          09:32:33

And who do you understand    09:32:33 offers that opinion?          09:32:35

A.    Professor Stiglitz.          09:32:36

Q.    Okay.          09:32:37

Does Professor McFadden address    09:32:38 that issue?          09:32:40

MR. RIFKIN:  Objection to form.    09:32:42

A.    My recollection is that at this    09:32:43 stage, Professor McFadden discusses just    09:32:45 damages.          09:32:49

Q.    Okay.          09:32:49

So I think we're all on the    09:32:52 same page then that you believe that at the    09:32:55 merits phase it's appropriate for an    09:33:01 economist to offer an opinion about the    09:33:04 relevant market definition.          09:33:07

Is that correct?          09:33:09

A.    No.  I didn't put any opinion    09:33:10

Page 27

R. Abrantes-Metz, Ph.D.

forward.  I didn't state that it is    09:33:13 appropriate or not appropriate.          09:33:15

Commonly, that's been my    09:33:21 experience, that at the merit stage, that's    09:33:22 where markets do get defined.          09:33:25

Q.    Okay.          09:33:27

Just to be clear, are you    09:33:30 offering an opinion about the relevant    09:33:32 market in this case?          09:33:34

MR. RIFKIN:  Objection to form.    09:33:35

A.    No.          09:33:36

MR. RIFKIN:  Sorry.  I    09:33:38 apologize for interrupting.          09:33:39

I just wanted to make sure my    09:33:40 objection was on the record.          09:33:42

BY MS. RICHMAN:          09:33:45

Q.    Are you relying on Professor    09:33:45 Stiglitz's opinion of the relevant market?    09:33:49

A.    I rely on Professor Stiglitz's    09:33:57 opinion that but for the conduct, there    09:33:59 would have been entry in this market.    09:34:04

Q.    So you're not relying on    09:34:14 Professor Stiglitz's definition of the    09:34:18 relative market as a market for the sale of    09:34:19

Page 28

R. Abrantes-Metz, Ph.D.

iOS apps and in-app content?          09:34:19

A.    I believe I do cite in my    09:34:22 report that that is the market I consider.    09:34:24 So since he defined that market, I would say    09:34:26 that I am relying on him.          09:34:30

Q.    Okay.          09:34:32

Do you have an understanding as    09:34:35 to whether Professor Stiglitz concludes that    09:34:36 the relevant market is one or two sided?    09:34:38

MR. RIFKIN:  Objection to form.    09:34:41

A.    Could you please repeat?    09:34:42

Q.    Sure.          09:34:44

Do you have an understanding as    09:34:44 to whether Professor Stiglitz concluded or    09:34:45 offers an opinion that the relevant market    09:34:50 is one or two sided?          09:34:52

MR. RIFKIN:  Objection to form.    09:34:54

A.    My recollection is that he said    09:34:55 that it wouldn't make a difference even if    09:34:59 he concluded that it was multisided.    09:35:01

Q.    Have you done any economic    09:35:06 analysis to test Professor Stiglitz's    09:35:08 conclusion about the relevant market    09:35:13 definition?          09:35:15

Page 29

8 (Pages 26 - 29)

R. Abrantes-Metz, Ph.D.

A.    No.  That was not part of my assignment.

Q.    So you're just assuming that his opinions are valid.

Is that correct?

A.    Yes.

Q.    Can we take a quick look at your report?

If you go to page seven, paragraph 20, in this paragraph, you explain that you conduct a benchmark analysis using empirical data from a functionally similar, yet relatively more competitive market, the sale of Windows PC game apps and in-app content.

Do you see that Professor Abrantes-Metz?

A.    Yes.

Q.    What do you mean by functionally similar in that sentence?

A.    That this market is also distributing game apps, though in a different operating system.  This one is Windows, while Apple's is iOS.

Page 30

R. Abrantes-Metz, Ph.D.

Q.    When you say functionally similar, what is it functionally similar to?

A.    That they have a very similar product, game apps, only that one -- distribution of game apps -- one operating in Windows and the other in iOS.

Q.    So you're comparing Window PC game apps and iOS game apps.

Is that correct?

A.    Yes.

Q.    So is the Windows PC -- strike that.

Is the functionally similar, yet relatively more competitive market that you're referring to here, is that functionally similar to the market that Professor Stiglitz has defined?

A.    Professor Stiglitz has defined more than one market.  Which market are we disusing?

Q.    What markets do you understand he has defined?

A.    There's relevant markets for tablets and -- so the markets that happen,

Page 31

R. Abrantes-Metz, Ph.D.

it's called the foremarket and there's the aftermarket.  Here, I'm just focusing on the aftermarket, apps and in-apps purchases.

Q.    I'm just trying to understand what you mean by functionally similar and whether you are talking about a market that is functionally similar to one that Professor Stiglitz has defined.

A.    Yes.

Q.    The answer to that question is yes?

A.    Yes, the apps and in-app purchases.

Q.    Okay.

And what analysis did you conduct to conclude that the Windows PC game apps and in-app purchases are functionally similar to the relevant market in this case.

MR. RIFKIN:  Objection to form.

A.    Well, it is described in my report, starting on page 91:  Sales of Window PC game apps in 2019 is an appropriate benchmark.

Q.    So this is the section of your

Page 32

R. Abrantes-Metz, Ph.D.

report where you analyze the comparability of the Windows PC market to the iOS market?

A.    Yes.

Q.    Are you relying on any other expert analysis for that conclusion in addition to your own work?

MR. RIFKIN:  Objection to form.

A.    Not that I recall, aside from, as I mentioned earlier, I believe Professor Economides had also looked into this market, but I didn't really rely on him.  I looked at what I did and I undertook my own analysis.

Q.    If the jury were to reject Professor Stiglitz's market definition opinions, can it still use your opinions to estimate the but-for world commission rate?

A.    I believe so.

Q.    So if, for example, the jury adopted the same relevant market that the court did in the Epic v. Apple litigation, which was mobile game transactions, if the jury adopted that market definition, the commission rate -- your but-for commission

Page 33

9 (Pages 30 - 33)

CONFIDENTIAL

CERTIFICATION

I, SARA K. KILLIAN, RPR, RCR, CCR, do hereby certify that ROSA ABRANTES-METZ, Ph.D., the witness whose examination under oath is hereinbefore set forth, was duly sworn, and that such deposition is a true record of the testimony given by such witness.

I FURTHER CERTIFY that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 27th day of May, 2025.

SARA K. KILLIAN, RPR, RCR, CCR

Page 126

---

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: in re: Apple iPhone
DATE OF DEPOSITION: 5/23/2025    Job No. CA7336839
WITNESS' NAME: ROSA ABRANTES-METZ, Ph.D.

PAGE/LINE(S)/   CHANGE        REASON
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____
___/_____/_____/_____

ROSA ABRANTES-METZ, Ph.D.

SUBSCRIBED AND SWORN TO
BEFORE ME THIS_____DAY
OF _____, 2025.

_____
    NOTARY PUBLIC
MY COMMISSION EXPIRES_____

Page 128

---

I N D E X

WITNESS        EXAMINATION BY      PAGE
Dr. Abrantes-Metz Ms. Richmond        6
        Mr. Rifkin        123

E X H I B I T S
EXHIBITS        DESCRIPTION        PAGE
Exhibit DX100   Expert report of Rosa M.    10
        Abrantes-Metz, Ph.D.,
        March 7, 2025
Exhibit DX101   Expert report of Rosa M.    10
        Abrantes-Metz, Ph.D.
        errata sheet
Exhibit DX102   Article entitled        74
        "Understanding the
        Economics of Platforms"
        by Rosa Abrantes-Metz,
        Michael Cragg, Albert
        Metz and Minjae Song

Page 127

---

MARK C. RIFKIN, ESQ.

Rifkin@whafh.com

                    May 27, 2025

RE: In Re Apple Iphone Antitrust Litigation

5/23/2025, Rosa M. Abrantes-Metz, Ph.D., (#7336839).

The above-referenced transcript has been completed by Veritext Legal Solutions and review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext to schedule a time to review the original transcript at a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, noting the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Code of Civil Procedure. Contact Veritext when the sealed original is required.

__ Waiving the CA Code of Civil Procedure per Stipulation of Counsel - Original transcript to be released for signature as determined at the deposition.

__ Signature Waived – Reading & Signature was waived at the time of the deposition.

Page 129

33 (Pages 126 - 129)