# EXHIBIT 9

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

Case No. 4:11-cv-06714-YGR


- - - - - - - - - - - - - - - - - - x


In re: Apple iPhone Antitrust

Litigation

- - - - - - - - - - - - - - - - - - x

May 23, 2025

9:05 a.m.




    CONFIDENTIAL VIDEO RECORDED DEPOSITION of

ROSA ABRANTES-METZ, Ph.D., an Expert Witness for

the Plaintiffs herein, taken by the Defendant,

held at the offices of Gibson Dunn & Crutcher

LLP, 200 Park Avenue, New York, New York, before

Sara K. Killian, a Registered Professional

Reporter, Realtime Certified Reporter and Notary

Public.

Page 1

CONFIDENTIAL

R. Abrantes-Metz, Ph.D.

am testifying on and all the parts that                     09:29:59

relate to what I did, I didn't have to form                09:30:01

an opinion on whether we have a one- or                    09:30:05

two-sided platform in order to form my                     09:30:11

opinion of the but-for commission rate                     09:30:13

because it wouldn't impact the commission                  09:30:16

rate.  It was not necessary.                               09:30:21

    Q.    So your testimony is that it is    09:30:31

not necessary to define a relevant market or               09:30:33

determine whether the relevant market is one               09:30:36

or two sided in order to offer an opinion                  09:30:38

about market pricing?                                      09:30:42

    MR. RIFKIN:  Objection to form.             09:30:44

    A.    That is not what I said.          09:30:45

    Q.    Okay.                             09:30:47

    Why don't you try it again?                 09:30:47

    A.    What I said -- and I may say it   09:30:50

in somehow different words -- but is that                  09:30:55

courts do expect a market definition                       09:30:57

analysis.                                                  09:31:00

    Economists -- some of them --               09:31:03

think that not always one has to have a                    09:31:05

market definition analysis, but Professor                  09:31:08

Stiglitz did undertake the market definition               09:31:10

Page 25

R. Abrantes-Metz, Ph.D.

analysis.    09:31:12

With respect to what is    09:31:13
relevant and needed for the opinion I put    09:31:16
forward, I addressed whether it would make a    09:31:20
difference whether we have one or two sides    09:31:23
in this platform.    09:31:28

More specifically, whether it    09:31:34
is or not a multi-sided platform given    09:31:35
traditional concepts of multisided platform    09:31:39
and I determined that for more assignment,    09:31:42
that didn't make a difference and therefore    09:31:45
I did not have to take a position on that.    09:31:47

Q.    Okay.    09:31:51

Do you remember at your last    09:31:53
deposition you testified it was not    09:31:54
necessary to define a relevant market at the    09:31:56
class certification phase?    09:31:59

MR. RIFKIN:  Objection to form.    09:32:00

A.    I have a recollection of saying    09:32:04
something that -- of the type that a    09:32:06
relevant market was put forward, but my    09:32:13
understanding was that the more specific    09:32:17
issues and the debate of relevant market    09:32:20
will happen later on at the merit stage.    09:32:23

Page 26

R. Abrantes-Metz, Ph.D.

Q.      Okay.                                              09:32:25

It's your understanding that                              09:32:27

there has been an opinion offered about the               09:32:28

relevant market in this case?                             09:32:31

A.      Yes.                                               09:32:32

Q.      Okay.                                              09:32:33

And who do you understand                                 09:32:33

offers that opinion?                                      09:32:35

A.      Professor Stiglitz.                                09:32:36

Q.      Okay.                                              09:32:37

Does Professor McFadden address                           09:32:38

that issue?                                               09:32:40

MR. RIFKIN:  Objection to form.                           09:32:42

A.      My recollection is that at this                    09:32:43

stage, Professor McFadden discusses just                  09:32:45

damages.                                                  09:32:49

Q.      Okay.                                              09:32:49

So I think we're all on the                               09:32:52

same page then that you believe that at the               09:32:55

merits phase it's appropriate for an                      09:33:01

economist to offer an opinion about the                   09:33:04

relevant market definition.                               09:33:07

Is that correct?                                          09:33:09

A.      No.  I didn't put any opinion                     09:33:10

Page 27

R. Abrantes-Metz, Ph.D.

report where you analyze the comparability          09:39:34

of the Windows PC market to the iOS market?         09:39:40

    A.      Yes.                                     09:39:46

    Q.      Are you relying on any other             09:39:51

expert analysis for that conclusion in              09:39:53

addition to your own work?                          09:39:57

            MR. RIFKIN:  Objection to form.          09:40:00

    A.      Not that I recall, aside from,           09:40:02

as I mentioned earlier, I believe Professor         09:40:05

Economides had also looked into this market,        09:40:09

but I didn't really rely on him.  I looked          09:40:14

at what I did and I undertook my own                09:40:17

analysis.                                            09:40:21

    Q.      If the jury were to reject               09:40:27

Professor Stiglitz's market definition              09:40:30

opinions, can it still use your opinions to         09:40:34

estimate the but-for world commission rate?         09:40:40

    A.      I believe so.                            09:40:45

    Q.      So if, for example, the jury             09:40:49

adopted the same relevant market that the           09:40:53

court did in the Epic v. Apple litigation,          09:40:56

which was mobile game transactions, if the          09:41:03

jury adopted that market definition, the            09:41:07

commission rate -- your but-for commission          09:41:10

Page 33

R. Abrantes-Metz, Ph.D.

rate would still be the appropriate one?        09:41:13

MR. RIFKIN:  Objection to form.        09:41:15

A.        I can't recall the details of        09:41:18
how the court decided the relevant market.        09:41:20
My recollection is that it didn't really        09:41:26
accept either of the sides market        09:41:30
definitions exactly.        09:41:33

To what is relevant to me and        09:41:35
to the estimation of this but-for commission        09:41:38
rate is that competition that the app store        09:41:41
would have would put competitive pressure to        09:41:46
bring down the commission rate.        09:41:48

So while I have not directly        09:41:51
addressed your question in this report, my        09:41:56
belief is that that competitive pressure        09:42:02
coming from potentially different directions        09:42:06
would be the source of pricing pressure to        09:42:11
bring the benchmark -- the but-for rate        09:42:16
down.        09:42:22

Q.        If there is competitive        09:42:22
pressure on Apple in the actual world, is        09:42:24
your but-for commission rate of 13.63% still        09:42:29
the correct one for the jury to apply?        09:42:38

MR. RIFKIN:  Objection to form.        09:42:42

Page 34

R. Abrantes-Metz, Ph.D.

A.    Well, even a monopolist is sometimes facing competitive pressure because it cannot charge everything it wants, so I think we have to be precise with competitive pressure.

The way I modeled it was entry. So long as there's entry -- meaningful entry -- and clear alternatives, that will put competitive pressure on the commission rate to come towards a more competitive level.

Q.    Yes.  I think we're talking past each other a little bit.

So my question is if you assume that there are alternatives to the app store in the actual world, whether your commission rate of 13.63% is still the appropriate commission rate in the but-for world without the challenged restrictions?

MR. RIFKIN:  Objection to form.

A.    I'm sorry.  I didn't follow your question.

Q.    Okay.  Let me try it again.  I think it's not too tricky.

Page 35

R. Abrantes-Metz, Ph.D.

If you assume that there are alternatives to the app store in the actual world so that Professor Stiglitz's market definition is not correct and there is a broader market with other participants that place competitive pressure on Apple, is 13.63% still the appropriate commission rate in the but-for world without the challenged restrictions?

MR. RIFKIN:  Same objection.

A.    In your hypothetical where I'm going to assume there is competitive pressure, that is inconsistent with the profit margins I observe for Apple.  So I would have some difficulty in understanding why Apple has such high profit margins for so many years, is facing competitive pressure and is able to sustain those high profit margins.

The way I postulate things happening based on Professor Stiglitz is that there would be entry and so long as there is entry and a clear, viable, comparative alternative to Apple, to the app

Page 36

R. Abrantes-Metz, Ph.D.

in-app purchases?                                09:46:17

        MR. RIFKIN:  Objection to form.        09:46:19

   A.    Yes.                            09:46:21

   Q.    And is that because, as you      09:46:23

just said, it's 13.63% regardless?               09:46:25

   A.    Regardless of what?  I'm sorry.   09:46:33

   Q.    Is that because, as you just     09:46:36

said, the commission rate in the but-for         09:46:37

world is 13.63% regardless of whether the        09:46:40

market is broader than iOS apps and in-app       09:46:45

purchases?                                       09:46:49

   A.    Yes.  Because you can conceive    09:46:52

a larger market where for iOS, Apple still       09:46:55

has market power and that could potentially      09:47:01

be, let's say, a sub market.  So long as         09:47:06

there is entry in that market, the but-for       09:47:09

commission rate would be the same.               09:47:12

   Q.    Okay.                            09:47:21

        So if the jury concluded that    09:47:25

the relevant market includes Google Play,        09:47:27

video game consoles like Playstation and         09:47:32

Xbox, is the -- is your opinion that the         09:47:36

commission rate in the but-for world is          09:47:46

13.63%?                                          09:47:50

Page 38

R. Abrantes-Metz, Ph.D.

MR. RIFKIN:  Objection to form.          09:47:54

A.        I have not conducted an          09:47:58
analysis that would include consoles and all          09:47:59
of the other periods, the products that, as          09:48:03
I explain in my report, are not comparable.          09:48:06

Q.        I wasn't asking you about          09:48:12
whether they were comparable.  I was asking          09:48:13
what would happen if the jury concluded that          09:48:16
they were part of the relevant market.          09:48:18

A.        With respect to my commission          09:48:23
rate?          09:48:24

Q.        Correct.          09:48:24

A.        Again, the issue here is that          09:48:25
there is no competition for in-app -- for          09:48:29
apps and in-app purchases in the iOS system          09:48:33
and there's also issues with blocking          09:48:37
payment systems and steering and so long as          09:48:40
at least one of those is found illegal, even          09:48:45
if in the context of a broader market, my          09:48:48
commission rate would apply because entry          09:48:52
would happen for other options in the iOS          09:48:55
system.          09:48:58

Q.        Okay.          09:49:01

Do you have an opinion on          09:49:04

Page 39

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

R. Abrantes-Metz, Ph.D.

whether Apple has monopoly power?                    09:49:06

A.      I did not put forward an                     09:49:09

opinion on that.                                     09:49:11

Q.      Okay.                                         09:49:12

Are you relying on another                           09:49:12

expert for the proposition that Apple is a           09:49:15

monopolist?                                           09:49:22

A.      Professor Stiglitz puts forth                09:49:24

that opinion.                                         09:49:26

Q.      Is it relevant to your                       09:49:26

calculation of a but-for world commission            09:49:28

rate whether Apple is a monopolist?                  09:49:31

A.      Yes, because in the actual                   09:49:36

world, Apple is the only player and I                09:49:37

postulate a but-for world that is                    09:49:40

conservative with a second smaller player.           09:49:43

Q.      If Apple did not have monopoly               09:49:51

power in the relevant market in the actual           09:49:58

world, would that obviate a need to                  09:50:01

calculate a but-for world commission rate?           09:50:04

A.      The need by whom?  I don't                   09:50:14

understand the question.                             09:50:16

Q.      Well, by you.  Let me try                    09:50:17

again.                                               09:50:21

Page 40

CONFIDENTIAL

R. Abrantes-Metz, Ph.D.

whether that is through a company like Cydia type or another app store more recently or different payment system.

Q.    I'm just asking about how Apple implements the restriction.

Is it through technological means?

A.    I'm not the right person to answer that question.

Q.    Okay.

Do you know whether plaintiffs are challenging contractual restrictions on sideloading?

A.    I know there are challenges on contractual restriction, yes.

Q.    But you're not sure about the technological restrictions?

A.    I don't exactly know how everything fits on sideloading or not.  The steering -- for example, the steering allegations could be related to that.  There would be other options that you could sideload the app store and obtain your apps in a different way.

Page 47

CONFIDENTIAL

R. Abrantes-Metz, Ph.D.

I don't know if technically or                09:58:49
legally that falls into the bucket exactly    09:58:50
that you're asking me -- that you're calling  09:58:53
sideloading.                                  09:58:56

Q.     You can flip back to page six.         09:59:00
17B.                                          09:59:16

In this paragraph, you say:                   09:59:22
Absent Apple's anti-competitive conduct,      09:59:22
Apple -- Apple's App Store would have         09:59:28
charged a single but-for commission rate      09:59:31
that would not have exceeded 13.63%           09:59:34
throughout the class action period.           09:59:38

We looked at this paragraph                   09:59:40
before.                                       09:59:41

Do you see it?                                09:59:42

A.     Yes.                                   09:59:42

Q.     So in this paragraph, what do          09:59:47
you mean by Apple's anti-competitive          09:59:48
conduct?                                      09:59:52

A.     The conduct that I described           09:59:53
that plaintiffs alleged that falls broadly    09:59:55
into three categories.                        09:59:59

Q.     Okay.                                  10:00:01

Would all the conduct that                    10:00:02

Page 48

R. Abrantes-Metz, Ph.D.

falls into the three categories be absent in        10:00:05

the but-for world?        10:00:08

A.        Only the conduct that is        10:00:11

determined to be illegal.        10:00:13

Q.        Okay.        10:00:15

Can the jury adjust your model        10:00:19

to calculate the but-for commission rate of        10:00:22

some but not all of the alleged conduct if        10:00:25

unlawful?        10:00:28

MR. RIFKIN:  Objection to form.        10:00:30

A.        The jury could, but my opinion        10:00:30

is that so long as some entry exists in any        10:00:33

of the different type of conduct that is        10:00:39

alleged, that will put pressure for the        10:00:41

but-for commission rate to come down.        10:00:45

Q.        How would the jury adjust your        10:00:49

commission -- strike that.        10:00:55

How would the jury adjust your        10:00:56

model to calculate the but-for world        10:00:58

commission rate if it concluded that some,        10:01:01

but not all, of the alleged conduct is        10:01:03

unlawful?        10:01:06

MR. RIFKIN:  Objection to form.        10:01:06

A.        So as I said earlier, the jury        10:01:08

Page 49

CONFIDENTIAL

CERTIFICATION

I, SARA K. KILLIAN, RPR, RCR, CCR, do hereby certify that ROSA ABRANTES-METZ, Ph.D.,  the witness whose examination under oath is hereinbefore set forth, was duly sworn, and that such deposition is a true record of the testimony given by such witness.

I FURTHER CERTIFY that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 27th day of May, 2025.

SARA K. KILLIAN, RPR, RCR, CCR

Page 126

CONFIDENTIAL

                          ERRATA SHEET
         VERITEXT/NEW YORK REPORTING, LLC

         CASE NAME: in re: Apple iPhone
         DATE OF DEPOSITION: 5/23/2025    Job No. CA7336839
         WITNESS' NAME: ROSA ABRANTES-METZ, Ph.D.

         PAGE/LINE(S)/      CHANGE            REASON

| PAGE | LINE(S) | CHANGE | REASON |
|------|---------|--------|--------|
| 9 | 20 | Replace "parts" with "and" | Clarification |
| 11 | 15 | Replace "It" with "He" | Clarification |
| 11 | 22 | Replace "zenning" with "Zening" | Transcript error |
| 18 | 11 | Replace with "Yes, but I didn't work with him directly." | Clarification |
| 18 | 23 | Replace "winning" with "winner" | Clarification |
| 18 | 24 | Replace "in the shell" with "and industrial" | Transcript error |
| 26 | 11 | Replace "more" with "my" | Transcript error |
| 31 | 21 | Replace "disusing" with "discussing" | Transcript error |
| 34 | 7 | Replace "sides" with "side's" | Transcript error |
| 41 | 6-7 | Replace "super competitive" with "supra-competitive" | Transcript error |
| 41 | 10 | Replace "super competitive" with "supra-competitive" | Transcript error |
| 41 | 14 | Replace "super competitive" with "supra-competitive" | Transcript error |
| 41 | 19-20 | Replace "super competitive" with "supra-competitive" | Transcript error |
| 44 | 13 | Replace "effective effect" with "effect" | Clarification |
| 44 | 23 | Replace "price steers" with "price tiers" | Transcript error |
| 44 | 25 | Replace "price steers" with "price tiers" | Transcript error |
| 50 | 15 | Replace "in" with "and" | Clarification |
| 50 | 16 | Replace "that" with "is found" | Clarification |
| 52 | 10 | Replace with "one at least app" with "one at least" | Clarification |
| 52 | 25 | Replace "some or not all" with "some and not all" | Clarification |
| 54 | 18 | Replace "ain't" with "anti" | Transcript error |
| 55 | 10 | Replace "score" with "store" | Transcript error |
| 58 | 9 | Replace "super competitive" with "supra-competitive" | Transcript error |
| 58 | 10 | Replace "there" with "that" | Transcript error |
| 62 | 16 | Delete "the side of" | Clarification |
| 65 | 4 | Replace "why" with "while" | Transcript error |

                    _____
                        ROSA ABRANTES-METZ, Ph.D.


         SUBSCRIBED AND SWORN TO
         BEFORE ME THIS_____DAY
         OF _____, 2025.


         _____
             NOTARY PUBLIC
         MY COMMISSION EXPIRES_____

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL

                        ERRATA SHEET
        VERITEXT/NEW YORK REPORTING, LLC

        CASE NAME: in re: Apple iPhone
        DATE OF DEPOSITION: 5/23/2025    Job No. CA7336839
        WITNESS' NAME: ROSA ABRANTES-METZ, Ph.D.

        PAGE/LINE(S)/      CHANGE              REASON

| PAGE | LINE(S) | CHANGE | REASON |
|------|---------|--------|--------|
| 70 | 9 | Delete word "efficient" | Clarification |
| 79 | 24 | Replace word "charge" with "cost" | Clarification |
| 85 | 7 | Replace "such as in the case of Sabre" with ", such as in the case of Sabre," | Clarification |
| 87 | 14 | Replace "write it" with "are right" | Transcript error |
| 88 | 13 | Replace "any pricing" with "any price in" | Transcript error |
| 93 | 5 | Replace "the group" with "a group" | Clarification |
| 93 | 11 | Replace "could" with "couldn't" | Clarification |
| 98 | 5 | Replace "975" with "9.75%" | Clarification |
| 104 | 18 | Replace "you" with "it" | Clarification |
| 105 | 6-7 | Replace "average weight" with "weighted average" | Clarification |
| 105 | 19-20 | Replace "average weight" with "weighted average" | Clarification |
| 111 | 5 | Replace "There's" with "That's" | Transcript error |
| 113 | 22 | Replace "it is" with "as is" | Clarification |
| 114 | 7 | Replace "conversions" with "converging" | Transcript error |
| 117 | 12 | Replace "bench model" with "model" | Clarification |
| 122 | 19 | Replace "it would" with "I would" | Clarification |

        _____/_____/_____/_____
        _____/_____/_____/_____
        _____/_____/_____/_____
        _____/_____/_____/_____
        _____/_____/_____/_____
        _____/_____/_____/_____
        _____/_____/_____/_____


                    _____    Dated: 6/26/25
                    ROSA ABRANTES-METZ, Ph.D.

        SUBSCRIBED AND SWORN TO
        BEFORE ME THIS_____DAY
        OF _____, 2025.

        _____
            NOTARY PUBLIC
        MY COMMISSION EXPIRES_____

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127