# EXHIBIT 72

** HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER **

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE APPLE iPHONE ANTITRUST LITIGATION ) Civil Action No. 4:11-cv-06715YGR

ZOOM VIDEOTAPED DEPOSITION OF
TRYSTAN KOSMYNKA, VOLUME I
Taken on
Tuesday, February 2, 2021

Reported by:
LORI M. BARKLEY, CSR No. 6426

PAGES 1 - 215

MS. MOYE: Object to the form.

THE WITNESS: Can you repeat the question?

MS. FORREST: Sure.

Q. During the time that you've been at Apple, have you ever looked at any studies -- strike that.

Are you aware of any studies that Apple has performed looking at security issues of side-loaded apps onto Android phones?

A. I don't recall any studies that Apple has performed. I think that certainly there -- there is studies that are available that undoubtedly I've read or have seen.

Q. Well, let's first talk -- let's break that down.

Are you aware of any studies that Apple has performed as to any security issues relating to side-loaded apps on Android phones?

A. I don't recall any studies.

Q. Do you recall the names of any studies that you have read that relate to security issues for any side-loaded apps onto Android phones?

A. No.

Q. Have you ever jailbroken an iPhone?

MS. MOYE: Object to the form.

THE WITNESS: Yes.

BY MS. FORREST:

Q. Okay. When did you do that?
A. 2000 -- pre-Apple, 2008, maybe.
Q. And did you load any apps onto the jailbroken phone in -- that you had jailbroken in approximately 2008?
A. No.
Q. Are you aware that there are individuals who jailbreak their iPhones today?
MS. MOYE: Object to the form.
THE WITNESS: I don't know people who have jailbroken their iPhones today.
BY MS. FORREST:
Q. In connection with your duties and responsibilities, have you become aware that there are some individuals who claim to have jailbroken their iPhones?
A. Yes.
Q. Has Apple ever undertaken a study as to whether there are any security issues with regard to the apps that are loaded onto jailbroken phones?
A. I don't have personal knowledge of that.
Q. Apart from any -- when you say personal knowledge, I want to make sure that I exhaust any knowledge that you have from any source.
Are you aware of, from any source, as to whether

Apple has performed any security studies as to the apps that have been placed onto a jailbroken phone?

MS. MOYE: Object to the form.

THE WITNESS: I don't have any personal knowledge of that.

BY MS. FORREST:

Q. Are you on any committees in connection with your duties and responsibilities at Apple today?

MS. MOYE: Object to the form.

THE WITNESS: Can you restate that? What do you mean by committees?

BY MS. FORREST:

Q. Are you on any committees or part of any groups, other than just holding your title?

Sometimes people might be on the ERB. Others might be part of some other group. And I just want to get a sense as to what groups you may be part of.

I, of course, am not within Apple, so I don't have exactly the right terminology to ask you about what groups you may be part of, so bear with me a little bit, but I want to get a sense as to what groups you might be part of.

A. Thank you.

MS. MOYE: Object to the form.

THE WITNESS: So, specifically with my role, I

am part of ERB, the Executive Review Board.

BY MS. FORREST:

Q. How long have you been part of the ERB?

A. Since I started in this role.

Q. And when you say since you started in this role, are you talking about becoming senior director of App Review in 2016, or some other position?

MS. MOYE: Object to the form.

THE WITNESS: Director of App Review in 2016.

BY MS. FORREST:

Q. All right, I see. So, you were director of App Review in 2016, and then senior director of App Review in 2017. Do I have that now correct?

A. I believe so.

Q. And when you became director of App Review in 2016, you joined the ERB; is that right?

A. Yes.

Q. And what is the role of the ERB within App Review, or in connection with App Review?

A. The ERB sets policy for the App Store. And specifically within App Review, we escalate out to ERB for a ruling. And ERB's role is, to App Review, is to provide feedback and ultimately decisions on those apps.

Q. And how are the decisions made? Are they made by majority vote, consensus, or in some other way?

at all that reviews apps being directly downloaded from websites onto a Mac?

A. I think we need to restate the question. This is -- there's a lot in there.

We -- I'm not aware of a tool that reviews an app downloaded from a website.

Q. So, let me restate it differently because I may be using some terminology that's getting us sort of boxed into something.

And what I'm really trying to figure out is, is there any technological process that occurs where, when a user who's going to download, or who does download an app directly from a website onto their Mac machine, whether there's any technology that's actually scanning that app for any purpose at all, that Apple utilizes?

MS. MOYE: I object to the form. I think this is asked and answered.

THE WITNESS: On Mac, developers can choose to notarize their apps, and there's tooling there.

BY MS. FORREST:

Q. And what if we remove the word "tools" and we just ask whether or not there's any technological process that Apple actually utilizes to scan an app for malware that is being directly downloaded from a website onto a Mac?

A. I think there's more than just website, in terms of how to get apps on a Mac. The tool or the technology, I would say, would be notarization.

Q. Anything else that you can think of?

A. No.

Q. Okay. You're aware that in the app review guidelines there's a provision under Section 3.1.1 for in-app purchases, where it's an in-app purchase of a consumable item within the app, a digital consumable item, that there's a requirement that IAP be used; you're aware of that?

MS. MOYE: Are you referring as to the document?

MS. FORREST: Well, no, I'm actually just sort of -- I think that he's aware that IAP is required for digital apps where they're going to be -- let me actually put it differently.

Q. Are you aware of a requirement that IAP be utilized in connection with apps for purchases in the App Store where there's going to be an item consumed within the app?

MS. MOYE: Object to the form.

THE WITNESS: The guidelines do require that digital goods and services in-app, if it's sold, should use an app purchase.

BY MS. FORREST:

Q. Okay. And if I refer to in-app purchase as IAP, would that be acceptable to you?

A. Yes.

Q. And are you aware that there are, from time to time, apps which are submitted which do not -- which ought to contain IAP, but which do not, and are therefore rejected?

A. Can you repeat that? Sorry, Katherine.

Q. Sure.

Are you aware that there are sometimes apps which should include IAP, they do not, and they are rejected on that basis?

A. Yes.

Q. And in fact, over time, there have been thousands of such apps. Would you agree with that?

MS. MOYE: Objection, form.

THE WITNESS: I agree that we've rejected thousands of apps, yes.

BY MS. FORREST:

Q. And you've rejected thousands of apps for failing to have IAP when they were otherwise required to do so under the App Review Guidelines, correct?

MS. MOYE: Object to the form.

THE WITNESS: I would say that we've rejected thousands of apps for failing to meet the App Review

numbers.

UNIDENTIFIED SPEAKER: These are not marked yet. We'll do it now.

MS. FORREST: Okay, the first one is Stoney Gamble to CK Haun. It is -- the subject is, forward Mac Game Store iOS app rejected, off topic, inside Mac Games Forum, sent on 1/20/2016. It bears the Bates numbers 00039036, running consecutively through 39042.

(Exhibit 306 was marked for identification by the court reporter and is attached hereto.)

MS. FORREST: The second document is CK Haun to Stoney Gamble, subject Mac game store iOS app rejected off topic inside Mac games forum, dated January 20th, 2016, bearing the Bates numbers 04647322 through 24.

(Exhibit 307 was marked for identification by the court reporter and is attached hereto.)

MS. FORREST: So, do we have an exhibit number for the first one?

UNIDENTIFIED SPEAKER: Yes, these are marked 306 and 307.

MS. FORREST: Okay. So, PX306 will be the 1/20/2016, time-stamped 12:52:30.

And 307 will be 1/20/16, time-stamped 5:22:41.

Q. When you've had an opportunity to review these, if you would let me know, Mr. Kosmynka.

A. I've reviewed 306.

And the other one, 307?

Q. 307.

A. Okay.

Q. All right, let's start with PX306.

There's a reference in the first page at the top e-mail, second bullet down, to a server side change, and let me just reference -- I'll just read it into the record. (As read):

"They also threw Amazon Mobile under the bus for allowing purchasing of digital content (their iPad version didn't have it, which is what we review apps on, but they did a server side change to allow purchasing on iPhone).

"Thus, the e-mail to Bill below, that we work with Amazon (and Rayburn) to come back into compliance ASAP."

And then it goes on.

What is the situation that is being referenced here in PX306?

A. Looks like, as part of our process, if a developer reports an app that's in violation of the App Review Guidelines, we would investigate that.

And so, it looks here as though that's what

occurred and we investigated the Amazon app as another developer had reported potential guideline violations then.

Q. Is there a reference sometimes within the App Store to throwing somebody under a bus, is that sort of a term of art when one developer or one third party sort of rats on another one?

A. Good question. Yes, it is. It was also the name of a process. So, we call that the UTB process, and we investigate any -- any type of inquiry, whether that comes from a customer, a developer, the press, etc., and that would enter the UTB process. That process has since been renamed to the ARC process.

Q. And was there an investigation of the situation here relating to Amazon Mobile?

A. Sorry, I didn't understand the question.

Q. It looks like there was a developer who raised an issue with Amazon Mobile for allowing purchasing of digital content, that's at least what the e-mail seems to suggest.

A. Yes.

Q. And what I'm wondering is whether or not, when this issue was raised, whether there was in fact an investigation as to whether Amazon Mobile had any issues that are reflected here in this e-mail, PX306.

A. Yes, there would have been an investigation here.

Q. And what was the result of the investigation that's -- that is alluded to in PX306?

A. That we informed Amazon of the guideline violation and they resolved the issue.

Q. What was the guideline violation?

A. They had digital goods and services that were available for sale without in-app purchase.

Q. Do you have any understanding as to how long they had had digital goods services available without IAP prior to the issue being raised with Apple?

A. No specifics.

Q. Was Amazon terminated as a result of this situation, this server side change?

MS. MOYE: Objection to the form.

THE WITNESS: Amazon was not terminated.

BY MS. FORREST:

Q. Do you -- strike that.

Did Apple receive any security complaints as a result of the server side change that allowed purchases without IAP?

MS. MOYE: Object to the form.

THE WITNESS: We received a complaint from the -- another developer that the app was in violation

of the guidelines.

BY MS. FORREST:

Q. Apart from -- and that's the complaint that's referenced here in PX306; is that right?

A. Yes.

Q. Okay. Apart from that complaint, are you aware of any other complaints arising from the server side change that Amazon Mobile had put in place?

MS. MOYE: Object to the form.

THE WITNESS: No, I'm not aware.

BY MS. FORREST:

Q. Did you ever learn that Amazon's, the method that Amazon had used to implement a non-IAP payment processing solution was not a server side change?

MS. MOYE: Object to the form.

THE WITNESS: Can you repeat that?

MS. FORREST: Sure.

Q. Did you ever learn that Amazon had implemented its payment processing solution in a manner that was not server side?

MS. MOYE: Objection to form.

THE WITNESS: Yes, Amazon did not implement payment processing in this app with a server side change.

BY MS. FORREST:

STATE OF CALIFORNIA ) ss.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, CSR No. 6426, do hereby certify:

That the foregoing deposition testimony taken before me at the time and place therein set forth and at which time the witness was administered the oath;

That the testimony of the witness and all objections made by counsel at the time of the examination were recorded stenographically by me, and were thereafter transcribed under my direction and supervision, and that the foregoing pages contain a full, true and accurate record of all proceedings and testimony to the best of my skill and ability.

I further certify that I am neither counsel for any party to said action, nor am I related to any party to said action, nor am I in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have subscribed my name this 4th day of February 3, 2021.

______________________________

LORI M. BARKLEY, CSR No. 6426

**TRYSTAN KOSMYNKA ERRATA SHEET**

*In re Apple iPhone Antitrust Litigation, Case No. 4:11-cv-06714-YGR;*
*Cameron v. Apple Inc., Case No. 4:19-cv-03074-YGR;*
*Epic Games, Inc. v. Apple Inc., Case No. 4:20-cv-05640-YGR*

Deposition of Trystan Kosmynka

Taken February 2-3, 2021

| PAGE | LINE | CHANGE | REASON FOR CHANGE |
|---|---|---|---|
| 11 | 14 | "06715-YGR" to "06714-YGR" | Clarification |
| 19 | 3 | "manifold" to "Manifold" | Typographical Error |
| 20 | 4-5 | "MS. FORREST" to "Ms. Forrest" | Typographical Error |
| 23 | 21 | "engineering building" to "engineering—building" | Clarification |
| 29 | 10 | "there is" to "there are" | Clarification |
| 32 | 22 | "to App Review" to "for App Review" | Clarification |
| 43 | 12 | "TVOS" to "tvOS" | Typographical Error |
| 52 | 24 | "an app purchase" to "in-app purchase" | Typographical Error |
| 58 | 25 | "lead for" to "need for" | Clarification |
| 63 | 2 | "Apple products don't" to "Apple Products: Don't" | Clarification |
| 63 | 13 | "site" to "cite" | Typographical Error |
| 71 | 6 | "an" to "in" | Clarification |
| 74 | 16 | "has went" to "has gone" | Clarification |
| 75 | 9 | "Apple products don't" to "Apple Products: Don't" | Clarification |
| 79 | 24 | "was guideline issues" to "were guideline issues" | Clarification |
| 91 | 21 | Remove "not" | Clarification |
| 110 | 13 | "Ingestment" to "Ingest" | Clarification |
| 115 | 11 | "introspect" to "inspect" | Typographical Error |

| | | | |
|---|---|---|---|
| 120 | 3 | “App Import system” to “App ingest system” | Clarification |
| 120 | 17 | “who” to “you” | Typographical Error |
| 143 | 2 | “is apps” to “are apps” | Clarification |
| 150 | 19 | “assassin’s Creed” to “Assassin’s Creed” | Typographical Error |
| 158 | 12 | “Do I do” to “Do I now” | Clarification |
| 179 | 17 | “8/24” to “April 24” | Clarification |
| 185 | 4 | “App Store connects” to “App Store Connect” | Typographical Error |
| 188 | 9 | “exists in” to “existing in” | Clarification |
| 202 | 8 | “There’s always” to “We’re always” | Clarification |
| 206 | 7 | “Had folks” to “We had folks” | Clarification |
| 216 | 9 | “06715-YGR” to “06714-YGR” | Clarification |
| 217 | 8 | “06715-YGR” to “06714-YGR” | Clarification |
| 243 | 23 | “provide” to “provider” | Clarification |
| 246 | 22 | “box” to “doc” | Clarification |
| 249 | 5 | “that the” to “that’s the” | Clarification |
| 251 | 24 | “My presence would be you not the spend 10” to “My preference would be for you not to spend 10” | Typographical Error |
| 253 | 11 | “in is” to “it is” | Typographical Error |
| 255 | 6 | “minute or to do” to “minute or two to” | Typographical Error |
| 255 | 17 | “is in a document” to “is it a document” | Typographical Error |
| 259 | 11 | “spans” to “received” | Typographical Error |
| 273 | 5 | “asked” to “idea” | Typographical Error |
| 297 | 12 | “app Reviewers” to “app reviewers” | Typographical Error |
| 298 | 21 | “store’s benefits” to “store’s benefit” | Typographical Error |
| 308 | 8 | “manager to” to “manager do” | Typographical Error |

| | | | |
|---|---|---|---|
| 346 | 10 | "Mr. Schiller" to "Mr. Kosmynka" | Typographical Error |

Under penalties of perjury under the laws of the United States, I declare that I have read my deposition transcript, and it is true and correct subject to any changes in form or substance entered here.

03 / 04 / 2021

Date

Trystan Kosmynka